## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL PARGA, RICHARD FELTZ, TARA O'DONLEY, AND CHRISTOPHER WOOD, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 18-CV-0298-CVE-JFJ ) |
| BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA; VIC REGALADO, Tulsa County Sheriff, in his official capacity; TERRY H. BITTING, TAMMY BRUCE, MARTHA RUPP CARTER, STEPHEN R. CLARK, THERESA DREILING, OWEN EVENS, JAMES W. KEELEY, DEBORAH LUDI LEITCH, J. ANTHONY MILLER, DAWN MOODY, MILLIE OTEY, KIRSTEN PACE, APRIL SEIBERT, CLIFFORD SMITH, AND SARAH SMITH, in their capacities as Tulsa County Special Judges; AND WILLIAM MUSSEMAN, in his capacity as Tulsa County District Court Judge, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

Now before the Court is the motion to dismiss and brief in support (Dkt. # 24) of defendants

Tulsa County District Judge William Musseman and Tulsa County Special Judges Terry H. Bitting,

Tammy Bruce, Owen Evens, James W. Keeley, J. Anthony Miller, Dawn Moody, Kirsten Pace,

April Seibert, Sarah Smith, Martha Rupp Carter, Stephen R. Clark, Theresa Dreiling, Deborah Ludi

Leitch, Millie Otey, and Clifford Smith.[1] On June 6, 2018, plaintiffs filed a class action complaint

---

[1] Defendants Board of County Commissioners of the County of Tulsa and Tulsa County Sheriff Vic Regalado do not join in the motion to dismiss. Board of County Commissioners and Regalado each filed an answer to the amended complaint on November 2, 2018. Dkt. ## 38, 39.

(Dkt. # 2) and a motion for class certification (Dkt. # 3). On August 8, 2018, defendants Musseman, Bitting, Bruce, Evens, Keeley, Miller, Moody, Pace, Seibert, and S. Smith filed a motion to dismiss the complaint (Dkt. # 24). Plaintiffs filed a response to the motion to dismiss on August 29, 2018 (Dkt. # 25), and moving defendants filed a reply on September 12, 2018 (Dkt. # 26). On October 19, 2018, defendants Carter, Clark, Dreiling, Leitch, Otey, and C. Smith were added to the motion to dismiss as additional moving parties (Dkt. # 31). Plaintiffs filed an amended complaint on October 22, 2018 (Dkt. # 32).[2]

## I.

In this putative class action, plaintiffs seek declaratory and injunctive relief[3] for alleged violations of their equal protection and due process rights, their right to pretrial liberty, and their Sixth Amendment right to counsel. Id. at 30-33. Plaintiffs' amended complaint sets out eighty-five numbered paragraphs of factual allegations. Id. at 8-24, ¶¶ 23-107. The vast majority of these allegations are generalized; only fourteen of the eighty-five paragraphs contain factual allegations relating to the four named plaintiffs. Id. at 8-10, ¶¶ 23-36.

The Court first reviews plaintiffs' generalized allegations. Plaintiffs claim that defendants have a policy and practice of imposing secured financial conditions of release on almost all

---

[2]     The amended complaint was filed at the Court's direction to correct the name of defendant Board of County Commissioners of the County of Tulsa. Dkt. # 33.

[3]     Plaintiffs expressly state that they sue the special judges for declaratory relief only. Dkt. # 32, at 7, ¶ 20. Therefore, despite the ambiguous phrasing of certain of plaintiffs' requests for injunctive relief (e.g., id. at 33, ¶ 143.c), the Court assumes that all requests for injunctive relief apply to defendants Musseman (in his administrative capacity), Regalado, and Board of County Commissioners only. In any case, to the extent plaintiffs seek injunctive relief against the special judges (or against Musseman for judicial acts), such claims are barred under 42 U.S.C. § 1983, which expressly provides that when a judge is sued in his or her judicial capacity, as here, "injunctive relief shall not be granted . . . ."

individuals arrested in Tulsa County, usually in reliance on a pre-determined, offense-based bond schedule, which is promulgated by Musseman. Id. at 11, 13.  As plaintiffs note, an individual can be arrested with or without an arrest warrant for an offense that is or is not covered by the bond schedule. Id. at 13-14.  Plaintiffs allege that when an individual is arrested on a warrant, a special judge determines the conditions of release prior to the individual's arrest and specifies those conditions in the warrant. Id. at 14.  Plaintiffs claim that, for any warrant that lists an offense covered by the bond schedule, the special judge will require secured financial conditions of release and rely on the bond schedule to determine the secured bond amount. Id.  Plaintiffs allege that, when an individual is arrested without a warrant for an offense that is not covered by the bond schedule, a special judge imposes a bond amount at the probable cause determination, which takes place within 48 hours of the individual's arrest. Id. at 15.  Plaintiffs allege that, when an individual is arrested without a warrant for an offense that is covered by the bond schedule, an intake officer consults the bond schedule upon booking the individual into jail and informs the individual of the bond amount. Id.  Plaintiffs claim that a special judge then reviews that imposed bond amount at the probable cause determination. Id. at 14-15.  Plaintiffs allege that the special judges rarely, if ever, alter bond amounts imposed by intake officers. Id. at 7.  Plaintiffs claim that, in all cases–whether the arrest is made with or without a warrant, and whether the offense does or does not appear on the bond schedule–special judges make bond determinations without inquiring into the individual's ability to pay or the necessity of pretrial detention. Id. at 15.  Further, plaintiffs allege that, although state law provides two forms of non-financial pretrial release–(1) a pretrial release program, and (2) personal recognizance release–special judges routinely ignore these alternative options. Id. at 19-20.

Plaintiffs allege that, as a result of these practices, individuals who cannot afford to pay the financial conditions of release must remain in jail for days, weeks, or months–but, in all instances, at least until his or her initial arraignment, which takes place at least six days after arrest. Id. at 2, 5, 11.   Plaintiffs allege that, prior to the arraignment, the special judge presiding over the arraignment receives a pauper's affidavit, which elicits financial information to determine the individual's eligibility for a public defender. Id. at 21.  If the special judge determines the individual to be indigent, he or she will appoint a public defender at the arraignment; however, plaintiffs allege that individuals are not permitted to meet with this appointed counsel until after the arraignment has concluded. Id. at 12.  Therefore, plaintiffs allege that these individuals are not appointed counsel prior to the arraignment and that no lawyer appears for them at the arraignment.  Id. at 21. Moreover, plaintiffs claim that it is the policy and practice of the special judges to refuse to address conditions of release, or to hear evidence or make findings concerning necessity or ability to pay at the arraignments.  Id.   Finally, plaintiffs allege that the only opportunity for an individual to challenge the financial conditions of release is by having his or her appointed counsel file a bail-reduction motion with a special judge after the arraignment. Id. at 22.  However, plaintiffs claim that, as a matter of routine practice, special judges refuse to make findings concerning ability to pay, alternative conditions of release, or necessity of pretrial detention when hearing such motions. Id. Therefore, plaintiffs allege that, even when a special judge reduces the financial conditions of release, the individual still cannot afford to pay the bond amount. Id.

The factual allegations relating to the four named plaintiffs are significantly limited in comparison to plaintiffs' generalized allegations.  Each named plaintiff–Michael Parga, Richard Feltz, Tara O'Donley, and Christopher Wood–alleges that he or she was arrested between May 31,

2018 and June 4, 2018. Id. at 8-10. Further, each named plaintiff alleges that, after arriving at Tulsa County jail, an officer from the Tulsa County Sheriff's Office informed him or her of the bond amount.[4] Id. Plaintiffs allege that none of the named plaintiffs was asked whether he or she is able to pay the bond amount. Id. Moreover, each named plaintiff alleges that he or she is, in fact, unable to afford the bond amount and that, as a result, each named plaintiff was still in jail as of the filing of the initial complaint on June 6, 2018, and would remain in jail at least until his or her initial arraignment before a judicial officer on June 11, 2018. Id.

According to plaintiff's response to the motion to dismiss (Dkt. # 25) and defendant Regalado's answer to the initial complaint (Dkt. # 22), all four named plaintiffs paid their bonds and were released from jail before their initial arraignments took place on June 11, 2018. Specifically, plaintiffs Parga and Feltz paid their bonds through commercial surety companies one and three days, respectively, after the civil complaint was filed in this case. Dkt. # 22, at 5-6. In addition, plaintiffs O'Donley and Wood paid their bonds through non-profit organizations one day after the complaint was filed; thereafter, both O'Donley and Wood failed to appear in court, and, as a result, had warrants issued for their arrests. Id. at 6.

## II.

In their motion to dismiss (Dkt. # 24), moving defendants assert six bases for dismissal: (1) lack of Article III standing; (2) jurisdictional issues based on federalism and comity; (3) failure to challenge bail requirements through a writ of habeas corpus; (4) failure to state a claim for injunctive relief; (5) failure to state a claim that can be cured through declaratory relief; and (6) judicial

---

[4]     Parga, Feltz, O'Donley, and Wood were informed of the following bond amounts, respectively: $2,000, $50,000, $500, and $1,000. Dkt. # 32, at 9-10.

immunity.  However, in light of the fact that all four named plaintiffs paid their bonds and were released from jail in the days following the filing of the complaint, the Court must first address mootness, a threshold jurisdictional issue which the Court may raise sua sponte.  Colorado Off Highway Vehicle Coal. v. U.S. Forest Serv., 357 F.3d 1130, 1133 (10th Cir. 2004).

Under Article III of the U.S. Constitution, federal jurisdiction is limited to certain "cases" and "controversies." U.S. CONST. art. III, § 2.  The mootness doctrine is a corollary to this case-and-controversy requirement; thus, when an action is moot, the federal court is deprived of subject-matter jurisdiction over it.  Schell v. OXY USA, Inc., 814 F.3d 1107, 1114 (10th Cir. 2016).  The mootness doctrine provides that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Genesis HealthCare Corp. v. Symczyk, 569 U.S. 66, 71 (2013) (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997)).  A case becomes moot "when a plaintiff no longer suffers 'actual injury that can be redressed by a favorable judicial decision.'" Rhodes v. Judiscak, 676 F.3d 931, 933 (10th Cir. 2012) (quoting Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983)).  Here, it is immediately clear that none of the four named plaintiffs continues to suffer an injury that can be redressed by this litigation, as none of them remains detained due to an inability to pay bond.  Rather, all four plaintiffs paid their bonds and were released from jail in the few days after the complaint was filed, and before their initial arraignments took place.  Further, where, as here, a party seeks equitable relief only, past exposure to allegedly illegal conduct is insufficient to show that a plaintiff has a personal stake in the outcome of the litigation; rather, "the party must 'demonstrate a good chance of being likewise injured in the future.'" McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996) (quoting Beattie v. United States, 949 F.2d 1092, 1093 (10th Cir. 1991)).  Therefore, the named plaintiffs' allegations

6

that they were previously detained and unable to pay their bonds does not establish a live controversy warranting prospective equitable relief. Moreover, the Court assumes that plaintiffs will "conduct their activities within the law and so avoid [arrest] as well as exposure to the challenged course of conduct said to be followed by [defendants]." O'Shea v. Littleton, 414 U.S. 488, 497 (1974). Therefore, there is no "reasonable expectation" or "demonstrated probability" that these same named plaintiffs will be subjected to new bond amounts.[5] Murphy v. Hunt, 455 U.S. 478, 482 (1982). Therefore, the Court finds that the four named plaintiffs' claims are moot.

The mootness of the named plaintiffs' claims, however, does not end the Court's inquiry. Rather, federal courts have identified certain exceptions to the mootness doctrine in the class action context. One exception to the mootness doctrine, as identified by the Supreme Court in Sosna v. Iowa, 419 U.S. 393 (1975), occurs when the named plaintiff's claim becomes moot after the district court has ruled on the motion for class certification. Id. at 399 ("When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant. We are of the view that this factor significantly affects the mootness determination."). However, the Supreme Court left open the issue of whether an entire class action is moot when, as here, the named plaintiffs' claims become moot before the district court rules on a motion for class certification. In addressing the issue, the vast majority of lower federal courts, including the Tenth Circuit, have held that the entire action is moot if the named plaintiffs' claims become moot any time before a ruling on class certification. See William B. Rubenstein, 1 Newberg on Class Actions § 2:11 n.9 (5th ed.) (compiling case law).

---

[5]   The Court assumes that, if a pretrial releasee violates bond conditions and fails to appear (as two named plaintiffs here did), it is highly unlikely a new bond amount will be set.

Specifically, in Clark v. State Farm Mut. Auto. Ins. Co., 590 F.3d 1134 (10th Cir. 2009), the Tenth

Circuit held that, "[a]s a general rule, a suit brought as a class action must be dismissed for mootness

when the personal claims of the named plaintiffs are satisfied and no class has been properly

certified."[6] Id. at 1138 (quoting Reed v. Heckler, 756 F.2d 779, 785 (10th Cir. 1985)).  However,

the Tenth Circuit identified three possible situations in which the entire class action may not be moot

despite the mooting of the named plaintiff's claim prior to the district court's certification decision:

(1) when the plaintiff's claim is capable of repetition, yet evading review; (2) when the plaintiff's

claim is inherently transitory such that the trial court will not have enough time to rule on a motion

for class certification before the proposed representative's individual interest expires; and (3) when

the defendant moots the named plaintiff's claims by making a full offer of judgment before the

named plaintiff has a reasonable opportunity to file a motion for class certification.  Id. at 1138-39.

As discussed, the Court finds that all four named plaintiffs' claims are moot.  Moreover, no class

has been certified in this case.  Therefore, the general rule adopted by the Tenth Circuit would

require this Court to dismiss the entire action as moot, unless one of the three possible exceptions

applies.  The Court turns to whether any of these three exceptions applies here.

---

[6]      One difference between Clark and the present case is that, in Clark, the named plaintiffs had
not yet filed their motion for class certification by the time their claims became moot.  In the
present case, the named plaintiffs filed the complaint and the motion for class certification
on the same day.  Therefore, even though all named plaintiffs' claims became moot just one
to three days after the action was initiated, their claims were not moot at the time the motion
for class certification was filed.  The Court finds, however, that whether the claims became
moot before or after the motion for class certification was filed is irrelevant to the Court's
analysis.  Rather, the focus of the mootness inquiry is whether the named plaintiff had a live
controversy at the time the class was certified by the Court.  This is consistent with the
Supreme Court's determination that "the fact that a putative class acquires an independent
legal status once it is certified under Rule 23" was "essential to [its] decision[] in Sosna . .
. ."  Genesis HealthCare, 569 U.S. at 75.

The "capable of repetition, yet evading review" exception applies "where the claim may arise again with respect to that plaintiff" or "the litigant faces some likelihood of becoming involved in the same controversy in the future." U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 398 (1980). It applies "only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983).  In order for the named plaintiffs to become involved in the same controversy in the future, they would need to be arrested again for another offense and then subjected to a bond that they are unable to pay.  However, as discussed above, because the Court assumes that plaintiffs will "conduct their activities within the law," there is no reasonable expectation that these same named plaintiffs will be arrested again.  O'Shea, 414 U.S. at 497. Therefore, the Court finds that the "capable of repetition, but evading review" exception to the mootness doctrine does not apply.

The "inherently transitory" exception applies when, due to the nature of the claim, the trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires.  Sosna, 419 U.S. at 402 n.11.  In such instances, the certification "relates back" to the filing of the complaint.  Id.  In Gerstein v. Pugh, 420 U.S. 103 (1975), the Supreme Court held that the plaintiffs' claims challenging pretrial detention conditions[7] were "inherently transitory," because "[i]t [wa]s by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class."

---

[7]     The named plaintiffs in Gerstein were members of a class of persons detained without a probable cause determination.  Gerstein, 420 U.S. at 110 n.11.  The record before the Supreme Court did not indicate whether any of the named plaintiffs was still in custody awaiting trial at the time the district court certified the class.  Id.

Id. at 110 n.11.  It is certainly relevant to this inquiry that the claims in Gerstein, like the claims here, involve a challenge to pretrial detention.  However, the inquiry does not end there.[8]  Rather, as the Supreme Court explained in Sosna, "whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."  Sosna, 419 U.S. at 402 n.11. Here, the entire basis of plaintiffs' claims is that defendants "have a policy and practice of refusing to release arrested people from custody unless they pay money," and that the putative class members remain detained because "they do not have enough money to purchase their pretrial release."  Dkt. # 32, at 2-3.  Moreover, the Court finds it significant that plaintiffs allege that defendants routinely ignore the two forms of non-financial pretrial release available in Tulsa County.  Id. at 19.  In Gerstein, one of the Supreme Court's bases for finding the claim to be inherently transitory was that there were numerous ways in which plaintiffs could be released from jail before class certification, including release on recognizance.  Gerstein, 420 U.S. at 110 n.11.  Here, the crux of plaintiffs'

---

[8]     If this Court were to conclude that the present claims challenging pretrial detention are "inherently transitory" solely because the Supreme Court found the claims in Gerstein to be inherently transitory, it would be interpreting Gerstein as creating an exception to the mootness doctrine in all class actions challenging pretrial detention.  Such an interpretation would contradict the Supreme Court's classification of Gerstein as belonging to a "narrow class of cases."  Gerstein, 420 U.S. at 110 n.11.  Rather, the "inherently transitory" analysis requires the Court to do more than simply determine that the claims fit into the broad category of claims challenging pretrial detention.

claims is that there is no way for them to obtain pretrial release; their only option is to pay the bond amount, which none of the putative class members can afford to do.[9]  Therefore, the specific claims involved in this case are inextricably intertwined with the allegations that the putative class members are subject to extended and continuous detention with no ability to obtain release.  Accordingly, the Court finds that plaintiffs' claims are not inherently transitory.

Finally, the Court finds that the third possible exception identified by the Tenth Circuit in Clark is inapplicable.  First, defendants have not made a full offer of judgment to plaintiffs.  Second, the named plaintiffs' claims were mooted by plaintiffs' own actions.  Third, plaintiffs have already filed their motion for class certification.  Therefore, the Court finds that none of the possible exceptions identified by the Tenth Circuit is applicable in this case.

Accordingly, pursuant to the general rule adopted by the Tenth Circuit, the mooting of the named plaintiffs' claims prior to a ruling on class certification moots the entire class action.  Because the Court finds that the entire class action is moot, it need not address the six arguments raised in moving defendants' motion to dismiss (Dkt. # 24).

**IT IS THEREFORE ORDERED** that moving defendants' motion to dismiss (Dkt. # 24) is **declared moot**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for class certification (Dkt. # 3) is **declared moot**.

---

[9]     Based on plaintiffs' allegations, a significant number of putative class members should remain in jail at least until their trials take place.  The assumption is that anyone who is released from jail prior to that time would not be a class member because he or she was able to pay for his or her release.  Moreover, plaintiffs do, in fact, allege that at least some of the putative class members remain in jail for several months.

**IT IS FURTHER ORDERED** that plaintiffs' amended complaint (Dkt. # 32) is **dismissed without prejudice as moot**.  A separate judgment is entered herewith.

**DATED** this 19th day of November, 2018.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE