# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL PARGA, RICHARD FELTZ, TARA O'DONLEY, and CHRISTOPHER WOOD, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA; VIC REGALADO, Tulsa County Sheriff, in his official capacity; TERRY H. BITTING, TAMMY BRUCE, MARTHA RUPP CARTER, STEPHEN R. CLARK, THERESA DREILING, OWEN EVENS, JAMES W. KEELEY, DEBORAH LUDI LEITCH, J. ANTHONY MILLER, DAWN MOODY, MILLIE OTEY, KIRSTEN PACE, APRIL SEIBERT, CLIFFORD SMITH, and SARAH SMITH, in their capacities as Tulsa County Special Judges; and WILLIAM MUSSEMAN, in his capacity as Tulsa County District Court Judge,<br><br>　　　　　Defendants. | Case No. 18-CV-0298-CVE-JFJ |

## OPINION AND ORDER

Now before the Court is the motion to alter or amend judgment or for relief from judgment (Dkt. # 42) filed by plaintiffs Michael Parga, Richard Feltz, Tara O'Donley, and Christopher Wood. On June 6, 2018, plaintiffs filed a class action complaint (Dkt. # 2) alleging that defendants violate: plaintiffs' equal protection and due process rights by jailing them because they cannot afford a monetary payment (count one); plaintiffs' right to pretrial liberty by jailing them without procedural due process (count two); and plaintiffs' right to counsel by not providing them with counsel adequate

to challenge their wealth-based pretrial detention (count three). Id. at 30-31. That same day, plaintiffs filed a motion for class certification (Dkt. # 3). Defendants Tulsa County District Judge William Musseman and Tulsa County Special Judges Terry H. Bitting, Tammy Bruce, Owen Evens, James W. Keeley, J. Anthony Miller, Dawn Moody, Kirsten Pace, April Seibert, Sarah Smith, Martha Rupp Carter, Stephen R. Clark, Theresa Dreiling, Deborah Ludi Leitch, Millie Otey, and Clifford Smith moved to dismiss the claims against them. Dkt. # 24; see Dkt. # 31.[1] Plaintiff filed a response (Dkt. # 25), and moving defendants filed a reply (Dkt. # 26). On October 22, 2018, plaintiffs filed an amended complaint (Dkt. # 32). On November 19, 2018, this Court issued an opinion and order (Dkt. # 40) and judgment (Dkt. # 41) dismissing without prejudice plaintiffs' amended complaint as moot. Plaintiffs now move to alter or amend the judgment or for relief from judgment. Dkt. # 42. Defendants Board of County Commissioners of the County of Tulsa and Tulsa County Sheriff Vic Regalado filed a response in opposition to the motion (Dkt. # 43). Defendants Musseman and Tulsa County Special Judges separately filed a response in opposition to the motion (Dkt. # 44). Plaintiffs filed a reply in support of the motion (Dkt. # 47).

**I.**

A motion to alter or amend the judgment, sometimes referenced as a motion "to reconsider," filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, is warranted where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d

---

[1] The motion to dismiss was originally filed by defendants Musseman, Bitting, Bruce, Evens, Keeley, Miller, Moody, Pace, Seibert, and S. Smith only. Dkt. # 24. Defendants Carter, Clark, Dreiling, Leitch, Otey, and C. Smith were subsequently added to the motion to dismiss as additional moving parties. Dkt. # 31. Defendants Board of County Commissioners and Regalado did not join in the motion to dismiss.

1005, 1012 (10th Cir. 2000). Thus, a party may ask a district court to reconsider a final ruling or judgment when the district court has "misapprehended the facts, a party's position, or the controlling law." Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009). Relying on the third potential basis for moving to alter or amend the judgment, plaintiffs' counsel argues that reconsideration is necessary to correct clear error and prevent manifest injustice, because the Court's conclusion in its November 19, 2018 opinion and order is based on "a misapprehension of Plaintiffs' claims and a misconstruction of Supreme Court precedent." Dkt. # 42, at 3.

In the November 19, 2018 opinion and order, this Court determined that it had an obligation to address sua sponte[2] whether plaintiffs' amended complaint had been rendered moot as a result of all four named plaintiffs paying their bonds and being released from jail prior to their initial arraignments. Dkt. # 40, at 5. The Court began by reviewing plaintiffs' allegations in the amended complaint. The Court read the amended complaint as identifying two relevant time periods and two corresponding putative subclasses. See id. at 2-4. First, plaintiffs allege that "[p]eople who are arrested and are unable to pay preset cash deposits to secure their release must remain in jail cells for six or more days before an arraignment, which is the first appearance in front of a judicial

---

[2] As noted in the opinion and order, federal courts lack subject matter jurisdiction to hear claims that are moot. Dkt. # 40, at 6. Moreover, Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). Plaintiffs' counsel asserts that defendants "did not argue that this case became moot when Named Plaintiffs were released from jail." Dkt. # 42, at 4. However, as the Tenth Circuit recently noted, the Court "can raise issues of standing and mootness *sua sponte* because we 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" Collins et al. v. Daniels et al., Nos. 17-2217 & 18-2045, 2019 WL 908645, at 16-17 (10th Cir. Feb. 25, 2019) (quoting Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006)). Accordingly, mootness is not a mere "technical barrier" to plaintiffs' claims.

officer." Dkt. # 32, at 2. Accordingly, the Court determined that the first time period, which plaintiffs refer to as the "initial period of wealth-based detention," id., begins with the individual's arrest and continues until his or her initial arraignment, which is at least six days after arrest. The corresponding putative subclass, therefore, would include all arrested individuals who are forced to remain in jail at least until their initial arraignments solely because they cannot afford their bond amounts. Accordingly, the Court interpreted the amended complaint as excluding from this putative subclass any individual who is released from jail prior to his or her initial arraignment, and, therefore, is not forced to remain in jail for at least six days. Dkt. # 40, at 4 ("Plaintiffs allege that, as a result of these practices, individuals who cannot afford to pay the financial conditions of release must remain in jail for days, weeks, or months–but, in all instances, at least until his or her initial arraignment, which takes place at least six days after arrest." (emphasis added)).

The Court interpreted the second time period as beginning with the individual's initial arraignment. Plaintiffs allege that "[p]eople detained solely because of their inability to pay have no opportunity at the first appearance to raise any legal or factual challenges to their wealth-based pretrial detention." Dkt. # 32, at 12. Plaintiffs assert that written bail-reduction motions, which cannot be filed until after the initial arraignment, "are the only mechanism for challenging pretrial detention." Id. However, plaintiffs allege that the "judges hearing such motions refuse, as a matter of routine practice, to make findings concerning ability to pay, alternative conditions or [sic] release, or the necessity of pretrial detention. As a result, even if and when a financial condition of release is reduced, often weeks after an arrest, it is frequently reduced to amounts that remain unaffordable." Id. at 22. Based on these allegations, the Court interpreted the amended complaint as alleging that individuals who are detained solely because they cannot afford bond do not have an adequate

4

opportunity to challenge their bond amounts at any point during pretrial detention, including at their bond-reduction hearings. Accordingly, the Court determined that the second time period continues for the remainder of the individual's pretrial detention (i.e., until trial or other case resolution that results in his or her release). The corresponding putative subclass would consist of all individuals who continue to be detained after their initial arraignments solely because they cannot afford to pay their bond amounts, including individuals for whom no findings concerning ability to pay were made at their initial arraignments or at their bond-reduction hearings.

The Court determined that because the named plaintiffs were released "before their initial arraignments took place," Dkt. # 40, at 6, their claims were moot and they were not members of either putative subclass. Accordingly, because the named plaintiffs could not represent the putative subclasses or demonstrate to the Court that the putative class claims are inherently transitory, the Court dismissed the amended complaint as moot. Nonetheless, in footnote 9 of the opinion and order, this Court acknowledged that the two putative subclasses do exist, and implicitly told plaintiffs' counsel to find those putative class members (i.e., those individuals who were detained since their arrests until their initial arraignments, and have continued to be detained following their initial arraignments and bond-reduction hearings, solely because they cannot afford to pay their bond amounts), and to name those individuals as class representatives. Id. at 11 n.9.

Plaintiffs' counsel now makes clear that this Court misread the amended complaint in two ways. First, plaintiffs' counsel clarifies that the first time period need not continue until the individual's initial arraignment. Rather, the corresponding putative subclass consists of all individuals who are detained solely because they cannot afford their bond amounts, even if such individuals are released prior to their initial arraignments or just hours after their arrests. Second,

plaintiffs' counsel clarifies that plaintiffs "do not seek relief beyond the point in time at which class members are given counsel and an opportunity to be heard on bail reduction motions," and that plaintiffs' "claims would necessarily become moot for *any* class member within six to 10 days." Dkt. # 42, at 10-11. Because plaintiffs' claims necessarily become moot upon their bond-reduction hearings, it must be the case that putative class members are provided due process at their bond-reduction hearings. The Court finds that it misread the amended complaint by interpreting it as alleging that putative class members are denied due process at their bond-reduction hearings and continue to have live claims throughout the entirety of their pretrial detentions. Rather, the second time period begins with the individual's initial arraignment, but it necessarily ends when the individual has his or her bond-reduction hearing. The corresponding putative subclass consists of all individuals who are detained during that time period solely because they cannot afford to pay their bond amounts, including all individuals for whom no findings were made concerning ability to pay at their initial arraignments. Because the Court misread plaintiffs' amended complaint,[3] the Court finds that the motion to alter or amend judgment should be granted.[4] Further, the Court finds that the amended complaint (Dkt. # 32), the motion for class certification (Dkt. # 3), and the motion to

---

[3]  Because the Court finds that the motion should be granted on the basis of the Court misreading the amended complaint, the Court need not address plaintiffs' argument that the Court misconstrued Supreme Court precedent.

[4]  The Court notes that plaintiffs have now had several chances to clearly delineate the nature and extent of their claims–through the complaint, the amended complaint, the response to the motion to dismiss, the motion to alter or amend judgment, and the reply in support of the motion to alter or amend judgment. Therefore, to the extent plaintiffs disagree with the Court's revised interpretation of the time periods and putative subclasses as outlined in this opinion, plaintiffs may file a motion for leave to file a second amended complaint that clearly alleges the relevant time periods, the putative subclasses that correspond with each time period, and the specific claims of each putative subclass.

dismiss (Dkt. # 24) should be reinstated.

## II.

The Court now turns to moving defendants' motion to dismiss (Dkt. # 24). Moving defendants assert six bases for dismissal: (1) lack of Article III standing; (2) jurisdictional issues based on federalism and comity; (3) failure to challenge bail requirements through a writ of habeas corpus; (4) failure to state a claim for injunctive relief; (5) failure to state a claim that can be cured through declaratory relief; and (6) judicial immunity.

### A. Proposition I: Lack of Article III Standing

To have Article III standing, the plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561. It is well-settled that the district court must determine that at least one named class representative has Article III standing to raise each class subclaim. See Colo. Cross Disability Coal. v. Abercrombie & Fitch Co., 765 F.3d 1205, 1214 (10th Cir. 2014) (citing Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279-80 (11th Cir. 2000)).

#### 1. Injury-in-Fact As to Count Three

Moving defendants argue that named plaintiffs lack Article III standing as to count three, in which plaintiffs allege that defendants violate their Sixth Amendment right to counsel. The amended complaint contains numerous general allegations that defendants have a practice of violating putative class members' rights to counsel; such allegations, however, do not establish that any individual named plaintiff was or will be denied counsel. "[E]ven named plaintiffs who represent a class 'must

7

allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976) (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975)). Moreover, as the Court noted in its November 19, 2018 opinion and order, only fourteen paragraphs in the amended complaint contain allegations relating to the four named plaintiffs. Dkt. # 40, at 2. The right to or denial of counsel is not mentioned or referenced even once in those fourteen paragraphs. There is not a single allegation in the amended complaint that any individual named plaintiff was or will imminently be denied counsel. See Dkt. # 32, at 8-10. Accordingly, the Court finds that count three of the amended complaint should be dismissed because the amended complaint fails to allege facts sufficient to show that any of the named plaintiffs has Article III standing to bring the claim alleged in that count.[5]

## 2. Injury Fairly Traceable to the Actions of Moving Defendants

In addition, moving defendants argue that plaintiffs fail to demonstrate that the alleged injuries are fairly traceable to the challenged actions of defendant Musseman and defendant special judges, because plaintiffs have not alleged that they have had any contact with any of those defendants. The Court considers the "fairly traceable" element of standing with respect to counts one and two only. Because the Court finds that plaintiffs fail to sufficiently allege an injury-in-fact

---

[5] In addition, plaintiffs explicitly allege that the "right to counsel attaches once they have been stripped of their liberty by virtue of the charges against them and appear before a judicial officer to be informed of the charges lodged against them and have bail set or reviewed." Dkt. # 32, at 31. Plaintiffs allege that, at the time the complaint was filed, none of the named plaintiffs had had his or her first appearance before a judicial officer. Id. at 9-10, ¶¶ 26, 30, 33, 36. Further, plaintiffs repeatedly refer to the arraignment as the first appearance in front of a judicial officer. Id. at 2, 11, 12. Therefore, at the time the complaint was filed, the right to counsel had not yet attached for any of the named plaintiffs, and, according to plaintiffs' allegations, the right does not attach for any member of the first putative subclass.

8

as to count three, the Court need not address whether the injury alleged in count three is fairly traceable to the challenged actions of moving defendants.

Count one alleges that defendants violate plaintiffs' equal protection and due process rights by jailing them solely because of their inability to pay monetary payments. Count two alleges that defendants violate plaintiffs' rights to pretrial liberty by jailing them without providing them with procedural due process at their hearings. Plaintiffs allege that, as of the filing of the complaint, they were being detained pursuant to secured financial conditions of release, but they have not had their first appearances before a judicial officer (i.e., their initial arraignments) as yet. However, plaintiffs allege that their initial arraignments were scheduled to take place five days after the filing of the complaint. Accordingly, as to count one, named plaintiffs allege that they are suffering an ongoing actual injury. As to count two, named plaintiffs allege that they will imminently suffer an actual injury. The Court first considers whether the actual injuries alleged in count one are fairly traceable to the challenged actions of defendant Musseman, and then considers whether the future injuries alleged in count two are fairly traceable to the challenged actions of defendant Musseman. The Court will then conduct the same analysis with respect to defendant special judges.

### i. Defendant Musseman

As to defendant Musseman, plaintiffs allege in the amended complaint that "Defendant Musseman has general administrative, rulemaking, and supervisory authority over the District Court for Tulsa County. Defendant Musseman promulgates the secured money-bail schedule that is used to determine the financial condition of release for almost all people arrested in Tulsa County. Defendant Musseman also promulgates the Local Criminal Rules, which specify the procedures by which bail is set and probable cause determined, the timing and conduct of arraignments, and the

appointment of counsel." Dkt. # 32, at 7-8. Each named plaintiff alleges that, upon arriving at the Tulsa County Jail, a sheriff's officer informed him or her of the bond amount. Further, each named plaintiff alleges that he or she cannot afford the bond amount and, therefore, will remain in jail at least until his or her first appearance before a judicial officer. Id. Because plaintiffs allege that they are suffering actual injuries as a result of the secured money-bail schedule and/or the procedural rules for setting bail, both of which are promulgated by defendant Musseman, the Court finds that plaintiffs have sufficiently alleged actual injuries that are fairly traceable to defendant Musseman's actions with respect to count one. In addition, each named plaintiff alleges that he or she will suffer a future injury upon having their initial arraignments. Further, because plaintiffs allege that defendant Musseman has supervisory authority over the Tulsa County District Court and promulgates the rules that specify the timing and conduct of arraignments, the Court finds that plaintiffs have sufficiently alleged future injuries that are fairly traceable to defendant Musseman's actions with respect to count two.

### ii. Defendant Special Judges

As to defendant special judges, plaintiffs allege that the special judges "are authorized by state law to perform the duties of a magistrate in criminal cases . . . includ[ing] making probable cause determinations and bail determinations. . . . Defendant Special Judges specify conditions of release for the person whose arrest is authorized by each warrant[,] . . . determine conditions of release for anyone who is arrested without a warrant on a charge that is not included in Tulsa County's secured bail schedule[,] . . . and review the monetary amounts that have been imposed according to the secured bail schedule and have the authority and ability to adjust those money bail amounts or impose alternative release conditions. Defendant Special Judges rarely, if ever, alter

monetary amounts[, and], when making bail determinations, . . . do not conduct inquiries into or make findings concerning people's ability to pay money bail or the necessity of pretrial detention." Dkt. # 32, at 6-7.

In terms of count one, each named plaintiff alleges that he or she cannot afford the bond amount and, therefore, will remain in jail at least until his or her first appearance before a judicial officer. Id. at 7-8. Therefore, plaintiffs allege that they are suffering an ongoing actual injury. The issue, however, is that the amended complaint lacks any allegation that would suggest that the actual injury of any individual named plaintiff is fairly traceable to the actions of any defendant special judges. First, named plaintiffs do not specify whether their bond amounts were determined according to the secured-bond schedule or, instead, by a defendant special judge. Due to the fact that a sheriff's officer informed each named plaintiff of his or her bond amount upon arriving at the jail, the most reasonable assumption is that the bond amounts were set pursuant to the bond schedule. Second, although plaintiffs allege that defendant special judges have the ability to review and adjust money bail amounts or other conditions of release at probable cause determinations, none of the named plaintiffs alleges that his or her probable cause determination has taken place or will imminently take place. Therefore, none of the individual named plaintiffs has alleged facts sufficient to show that his or her actual injury, as alleged in count one, is fairly traceable to any actions by defendant special judges. Accordingly, the Court finds that count one should be dismissed as to defendant special judges only.

As to count two, as already noted, each named plaintiff alleges that he or she will suffer a future injury upon having his or her initial arraignment. Plaintiffs allege that defendant special judges "do not provide adequate hearings: they do not provide notice of the critical issues at the

hearing, an opportunity to be heard or to confront evidence, findings by any legal or evidentiary standard, or an explanation of reasons on the record." Id. at 7. Further, plaintiffs allege that the defendant special judge "presiding over arraignments refuses to hear arguments concerning conditions of release at the arraignments." Id. at 12. The Court finds that named plaintiffs have alleged future injuries that are fairly traceable to the challenged actions of defendant special judges.

### B. Proposition II: Federalism and Comity

Moving defendants argue that the Court should decline to exercise its jurisdiction over the defendants due to concerns of federalism and comity. Defendants rely on the Anti-Injunction Act, 28 U.S.C. § 2283, and Younger v. Harris, 401 U.S. 37 (1971). First, defendants argue that the Anti-Injunction Act prevents this Court from issuing any kind of injunction or order directing the state court judges to stay any of the plaintiffs' pending cases. The Anti-Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. In Mitchum v. Foster, 407 U.S. 225 (1972), the Supreme Court held that 42 U.S.C. § 1983 "is an Act of Congress that falls within the 'expressly authorized' exception of" the Anti-Injunction Act. Id. at 243. Accordingly, the Anti-Injunction Act does not apply to § 1983 claims. Because plaintiffs bring their claims pursuant to § 1983, the Court finds that the Anti-Injunction Act does not bar this Court from issuing an injunction or order directing the state court judges to stay any of plaintiffs' pending cases.

Moving defendants next argue that the Court should abstain from deciding plaintiffs' claims pursuant to the Younger doctrine. The Younger doctrine requires a federal court to abstain from exercising jurisdiction over a case where "(1) state judicial proceedings are ongoing; (2) [that]

implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues." Winnebago Tribe of Neb. v. Stovall, 341 F.3d 1202, 1204 (10th Cir. 2003). Here, the third prong is not met. Plaintiffs challenge the alleged wealth-based detention system and the legality of pretrial detention procedures and practices. Those issues cannot be raised in defense of any plaintiff's criminal prosecution. Gerstein v. Pugh, 420 U.S. 103, 108 n.9 (1975). Moreover, the injunction requested here is not directed at the state criminal proceedings. Accordingly, the Court finds that the Younger doctrine is inapplicable in this case.

### C. Proposition III: Failure to Challenge Bail Through Writ of Habeas Corpus

Next, defendants argue that the amended complaint should be dismissed because "[h]abeas corpus is the exclusive remedy for prisoners challenging the fact or duration of their confinement." Dkt. # 24, at 22. In Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Id. at 500. Defendants argue that plaintiffs are barred from seeking relief under § 1983 because the "core of the injunctive relief sought requires a speedier release of Plaintiffs and potential class members through transformation of the bail and counsel appointment process for indigent arrestees." Dkt. # 24, at 22. In response, plaintiffs argue that "they seek an injunction requiring constitutionally adequate practices to determine post-arrest release or detention going forward. . . . Plaintiffs understand that success on their claims would not guarantee that any particular arrestee would be released from custody." Dkt. # 25, at 27.

The amended complaint seeks two forms of injunctive relief against defendant Musseman,

defendant Board of County Commissioners, and defendant Regalado.[6] First, plaintiffs seek to enjoin defendants from "using secured financial conditions of release to detain Plaintiffs and class members without ensuring an inquiry into and findings concerning alternatives," necessity of detention, and appointment of counsel. Dkt. # 32, at 32. This injunction would not necessitate the immediate or speedier release from imprisonment of any named plaintiff or class member. Rather, the injunction would simply require defendants to ensure that certain inquiries and findings are made when using secured financial conditions of release. Defendants would still be able to detain arrested individuals using alternative conditions of release, or using secured financial conditions of release so long as they ensure that the requested inquiries and findings are made. Second, plaintiffs seek to enjoin defendants from "depriving people who are arrested of speedy, individualized release hearings with notice, counsel, the opportunity to be heard and to confront evidence, and findings on the record that the government met its burden" of showing that no alternative conditions of release would be sufficient. Id. at 33. Similarly, this injunction would not necessitate the immediate or speedier release of any named plaintiff or class member. Rather, the injunction would require defendants to provide the hearings, opportunities, and findings requested for all arrested individuals. Therefore, the Court finds that plaintiffs do not seek an injunction ordering their immediate or speedier release. Accordingly, the Court finds that plaintiffs are not barred from seeking the requested relief pursuant to § 1983.

### D. Proposition IV: Failure to State a Claim for Injunctive Relief

Next, moving defendants argue that plaintiffs cannot meet the requirements for the injunctive

---

[6] As discussed in more detail below, plaintiffs do not seek injunctive relief against defendant special judges.

relief sought. "Where a plaintiff seeks equitable relief, a mere showing that he maintains a personal stake in the outcome of the controversy is insufficient." Jordan v. Sosa, 654 F.3d 1012, 1024 (10th Cir. 2011) (internal citations omitted). "Rather, a plaintiff must *additionally* demonstrate 'an adequate basis for equitable relief'–that is, '[a] likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.'" Id. (quoting O'Shea v. Littleton, 414 U.S. 488, 499 (1974)) (alteration and emphasis in original). To state a claim for injunctive relief, a plaintiff must demonstrate the likelihood that he is susceptible to a continuing injury that will have immediate adverse effects. Id.

Plaintiffs allege that, as of the filing of the complaint, they were suffering ongoing actual injuries (i.e., violations of their rights to equal protection and due process), because they were being detained pursuant to secured financial conditions of release that they could not afford to pay. In addition, plaintiffs allege that they faced imminent threats of future injuries (i.e., violations of their rights to pretrial liberty), because their initial appearances were scheduled to take place five days after filing the complaint. As discussed, the Court finds that such allegations are sufficient to show that plaintiffs are susceptible to immediate and continuing injuries. Moreover, "[m]ost courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." Free the Nipple-Fort Collins v. City of Forth Collins, Colo., 916 F.3d 792 (10th Cir. 2019). Accordingly, the Court finds that plaintiffs have sufficiently alleged a likelihood of substantial and immediate irreparable injury.

Defendants argue that there are other adequate remedies at law to compensate plaintiffs. This argument relates back to the Younger doctrine. As the Court noted above, the Younger doctrine does not bar plaintiffs' claims for injunctive relief, because plaintiffs cannot raise the alleged issued in

defense of any of their criminal prosecutions. Therefore, the Court finds that there are no adequate alternative remedies at law. The Court finds that plaintiffs have sufficiently alleged claims for injunctive relief.

### E. Proposition V: Failure to State a Claim for Declaratory Relief

Moving defendants argue that named plaintiffs fail to state a claim for declaratory relief, because their claims are too speculative. A declaratory judgment is sustainable only if the court is able to resolve an actual case or controversy rather than providing an advisory opinion. Jordan, 654 F.3d at 1025. Thus, a plaintiff seeking declaratory judgment must demonstrate that the Court's ruling will settle a dispute that affects the behavior of the particular defendant named in the complaint toward the plaintiff. Id.

Plaintiffs seek three forms of declaratory relief. First, plaintiffs seek a declaration that all defendants "violate Plaintiffs' and class members' constitutional rights by requiring secured financial conditions of release without inquiry into ability to pay and by issuing and enforcing de facto orders of wealth-based pretrial detention without consideration of alternatives and without findings that such detention is necessary to serve a compelling interest." Dkt. # 32, at 32. As discussed, the Court finds that, as to count one, plaintiffs have sufficiently alleged an ongoing actual injury that is fairly traceable to the actions of defendant Musseman. See supra Section II.A.2. Therefore, the Court finds that this requested declaratory relief, if awarded, would affect the behavior of defendant Musseman toward named plaintiffs. Accordingly, the Court finds that plaintiffs have sufficiently alleged a claim for declaratory relief as to defendant Musseman. However, because the Court also determines that plaintiffs have failed to show that their alleged ongoing actual injuries are fairly traceable to the actions of defendant special judges, see supra Section II.A.2, the Court finds that

16

plaintiffs have failed to state a claim for the declaratory relief requested in connection with count one against defendant special judges. Accordingly, the Court finds that the claim for declaratory relief requested in paragraph 143.a of the amended complaint should be dismissed as to defendant special judges only.

Second, plaintiffs seek a declaration that all defendants "violate Plaintiffs' and class members' right to procedural due process under the Fourteen Amendment by depriving people who are arrested of speedy, individualized release hearings with notice, counsel, the opportunity to be heard and to confront evidence, and findings on the record that the government met its burden to demonstrate by clear and convincing evidence that no alternative condition or combination of conditions would be sufficient to serve its compelling interests." Dkt. # 32, at 32. As discussed, plaintiffs sufficiently allege that, at the time the complaint was filed, they faced an imminent threat of future injury that is fairly traceable to the actions of defendant Musseman and defendant special judges. See supra Section II.A. Accordingly, the Court finds that the requested declaratory relief would affect the behavior of defendant Musseman and defendant special judges toward named plaintiffs. Therefore, the Court finds that plaintiffs have sufficiently alleged a claim for this particular form of declaratory relief against defendant Musseman and defendant special judges.

Finally, plaintiffs seek a declaration that defendants violate plaintiffs' and class members' rights to counsel by failing to provide counsel to indigent people at an individualized bail determination hearing. Dkt. # 32, at 33. Because this Court finds that named plaintiffs fail to allege a violation of their rights to counsel, the Court finds that plaintiffs fail to state a claim for the requested declaratory relief against all defendants.

### F. Proposition VI: Judicial Immunity

Finally, moving defendants argue that the Court should dismiss the claims against defendant state judges, because defendant state judges are entitled to absolute judicial immunity from suit for allegations involving judicial actions. In their response to the motion to dismiss, plaintiffs clarify that they do not seek injunctive relief against defendant special judges. Dkt. # 35, at 29 n.5. Rather, plaintiffs seek declaratory relief only against defendant special judges. Plaintiffs do, however, seek both injunctive and declaratory relief against defendant Musseman, as well as defendant Regalado and defendant Board of County Commissioners.

Section 309(c) of the Federal Courts Improvement Act of 1996 ("FCIA"), Pub. L. No. 104-317, 10 Stat. 3847 (1996), bars injunctive relief in any § 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." Judicial immunity applies to judicial acts, but not to "acts that simply happen to have been done by judges." Forrester v. White, 484 U.S. 219, 227 (1988). Here, plaintiffs seek injunctive relief against defendant Musseman, who is a judicial officer. Plaintiffs argue, however, that they seek injunctive relief against defendant Musseman for his administrative acts only, and not for his judicial acts.

"[A]n act may be administrative or ministerial for some purposes and still be a 'judicial' act for purposes of immunity . . . ." Martinez v. Winner, 771 F.2d 424, 434 (10th Cir. 1985). "[F]actors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." Stump v. Sparkman, 435 U.S. 349, 362 (1978). Here, plaintiffs seek injunctive relief with respect to defendant Musseman's administrative, rulemaking, and supervisory authority over the Tulsa County District Court, his promulgation of the

18

secured money-bail schedule, and his promulgation of certain Local Criminal Rules. Dkt. # 32, at 7-8. The Court finds that those acts are not considered functions normally performed by a judge. Moreover, in performing these functions, defendant Musseman does not deal with any parties. Therefore, there is no expectation that any person is dealing with defendant Musseman in his judicial capacity when performing such acts. The Court finds that plaintiffs seek injunctive relief against defendant Musseman for his administrative acts only. Therefore, judicial immunity does not bar plaintiffs from seeking injunctive relief against defendant Musseman.

The Court turns to plaintiffs' request for declaratory relief against defendant Musseman and defendant special judges. " Judicial immunity generally does not bar declaratory relief." Deelan v. Fairchild, No. 05-3458, 2006 WL 2507599, at *4 (10th Cir. Aug. 31, 2006)[7] (citing Schepp v. Fremont Cty., Wyo., 900 F.2d 1448, 1452 (10th Cir. 1990)). Accordingly, the Court finds that judicial immunity does not bar plaintiffs from seeking declaratory relief against defendant Musseman and defendant special judges.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to alter or amend judgment or for relief from judgment (Dkt. # 42) is **granted**; the Opinion and Order (Dkt. # 40) and the Judgment of Dismissal (Dkt. # 41) are **vacated**; and this case is **reopened**.

**IT IS FURTHER ORDERED** that the amended complaint (Dkt. # 32), the motion for class certification (Dkt. # 3), and the motion to dismiss (Dkt. # 24) are **reinstated**.

---

[7] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss (Dkt. # 24) is **granted in part and denied in part** as follows:

- Count One - The motion is **granted** as to defendants Tulsa County Special Judges Terry H. Bitting, Tammy Bruce, Owen Evens, James W. Keeley, J. Anthony Miller, Dawn Moody, Kirsten Pace, April Seibert, Sarah Smith, Martha Rupp Carter, Stephen R. Clark, Theresa Dreiling, Deborah Ludi Leitch, Millie Otey, and Clifford Smith for lack of Article III standing. The motion is **denied** as to defendant Tulsa County District Judge William Musseman.

- Count Two - The motion is **denied** as to all defendants, subject to plaintiffs' limitation on the type of relief sought against defendant special judges only (i.e., declaratory relief only), as discussed herein.

- Count Three - The motion is **granted** as to all defendants.

**DATED** this 15th day of March, 2019.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE