## CASE NO. CIV-18-298-CVE-JFJ

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**MICHAEL PARGA, RICHARD FELTZ, TARA O'DONLEY,
AND CHRISTOPHER WOOD, on behalf of themselves and all others similarly situated,**

**Plaintiffs,**

**v.**

**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA; VIC
REGALDO, Tulsa County Sheriff, in his official capacity; TERRY H. BITTING, TAMMY
BRUCE, MARTHA RUPP CARTER, STEPHEN R. CLARK, THERESA DREILING,
OWEN EVENS, JAMES W. KEELEY, DEBORAH LUDI LEITCH, J. ANTHONY
MILLER, DAWN MOODY, MILLIE OTEY, KIRSTEN PACE, APRIL SEIBERT,
CLIFFORD SMITH, and SARAH SMITH, in their capacity as Tulsa County Special
Judges; WILLIAM MUSSEMAN, in his capacity as Tulsa County District Court Judge,**

**Defendants.**

## DEFENDANT STATE JUDGES' RESPONSE TO PLAINTIFFS' MOTION FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
## AGAINST DEFENDANT TULSA COUNTY SHERIFF AND BRIEF IN SUPPORT

**Stefanie E. Lawson**
**Erin M. Moore**
**Devan A. Pederson**
**Assistant Attorneys General**
**Oklahoma Attorney General's Office**
**313 NE 21st Street**
**Oklahoma City, Oklahoma 73105**
**Tele: (405) 521-3921   Fax: (405) 521-4518**
**Email: Stefanie.lawson@oag.ok.gov**
**Erin.Moore@oag.ok.gov**
**Devan.Pederson@oag.ok.gov**
*Attorneys for Special Judges*

**April 10, 2020**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

DEFENDANT STATE JUDGES' RESPONSE TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
AGAINST DEFENDANT TULSA COUNTY SHERIFF AND BRIEF IN
SUPPORT ........................................................................................................................... 1

BACKGROUND ................................................................................................................. 2

        *Court Operations During COVID-19* ......................................................................... 7

ARGUMENT AND AUTHORITY ..................................................................................... 8

    A. *Standard for TRO/Preliminary Injunction* ........................................................... 8

    B. *Plaintiff cannot seek a preliminary injunction for claim not contained in the
         Amended Complaint* ............................................................................................. 8

    C. *Plaintiff cannot establish the elements for a Temporary Restraining Order or
         Preliminary Injunction* ...................................................................................... 11

    D. *Plaintiff cannot establish irreparable harm* ..................................................... 12

        1. *Equal Protection is Satisfied* ........................................................................ 13

        2. *Due Process is Satisfied* ............................................................................... 16

CONCLUSION ................................................................................................................. 20

CERTIFICATE OF SERVICE ......................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Bell v. Wolfish,*
  441 U.S. 520 (1920) ............................................................................................. 17-18

*Concrete Works of Colo., Inc. v. City and County of Denver,*
  321 F.3d 950 (10th Cir. 2003) ...................................................................................14

*Craig v. Eberly,*
  164 F.3d 490 (10th Cir. 1998) ...................................................................................10

*Darnell v. Pineiro,*
  849 F.3d 17 (2d Cir. 2017) ...........................................................................................9

*Dawson v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.,*
  732 Fed. Appx. 624 (10th Cir. 2018) (unpublished) ..................................................18

*De Beers Consol. Mines Ltd. v. United States,*
  325 U.S. 212 (1945) .....................................................................................................8

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,*
  356 F.3d 1256 (10th Cir. 2004) ...........................................................................11, 13

*Ex parte McClellan,*
  97 P. 1019 (Okla. Crim. 1908) ...................................................................................17

*Gaylor v. Does,*
  105 F.3d 572 (10th Cir. 1997) ...............................................................................17-18

*General Motors Corp. v. Urban Gorilla, LLC,*
  500 F.3d 1222 (10th Cir. 2007) .................................................................................11

*Heideman v. S. Salt Lake City,*
  348 F.3d 1182 (10th Cir. 2003) .................................................................................13

*Kan. Hosp. Ass'n v. Whiteman*,
   835 F. Supp. 1548 (D. Kan. 1993)…...................................................................................8

*Lewis v. Casey*,
   518 U.S. 343 (1996)..............................................................................................................14

*Little v. Jones*,
   607 F.3d 1245 (10th Cir. 2010).............................................................................................9

*Lorillard Tobacco Co. v. Engida*,
   213 F. App'x 654 (10th Cir. 2007) ......................................................................................11

*Matthews v. Eldridge*,
   424 U.S. 319 (1976)..............................................................................................................19

*Meechaicum v. Fountain*,
   696 F.2d 790 (10th Cir. 1983) .............................................................................................17

*O'Donnell v. Harris County*,
   892 F.3d 147 (5th Cir. 2018) ..........................................................................................15, 19

*Omega World Travel, Inc. v. Trans World Airlines*,
   111 F.3d 14 (4th Cir. 1997)................................................................................................8-9

*Penn v. San Juan Hosp., Inc.*,
   528 F.2d 1181 (10th Cir. 1975)............................................................................................9

*Peoples v. Gilman*,
   109 F. Appx. 381 (10th Cir. 2004).....................................................................................10

*Petrella v. Brownback*,
   787 F.3d 1242 (10th Cir. 2015)..........................................................................................14

*Porter v. Nussle*,
   534 U.S. 516 (2002)..............................................................................................................10

*Powers v. Harris*,
 379 F.3d 1208 (10th Cir. 2004) ................................................................................ 13

*Prairie Band of Potawatomi Indians v. Pierce*,
 253 F.3d 1234 (10th Cir. 2001) ............................................................................... 13

*Prince v. Turn Key Health Clinics, LLC*,
 No. 18-cv-0282-CVE-JFJ, 2019 WL 238153 (N.D. Okla. Jan. 1, 2019) ..................... 9

*Pugh v. Rainwater*,
 572 F.2d 1053 (5th Cir. 1978) .................................................................................. 19

*Ross v. Moffitt*,
 417 U.S. 600 (1974) .................................................................................................. 15

*San Antonio Independent School District v. Rodriguez*,
 411 U.S. 1 (1973) ................................................................................................ 14-15

*Save Palisade FruitLands v. Todd*,
 279 F.3d 1204 (10th Cir. 2002) ........................................................................... 13, 14

*Schall v. Martin*,
 467 U.S. 253 (1984) .................................................................................................. 17

*Schrier v. Univ. of Colo.*,
 427 F.3d 1253 (10th Cir. 2005) ................................................................................ 12

*Stouffer v. Eulberg*,
 No. CIV-09-320-C, 2010 WL 567998 (W.D. Okla. Feb. 11, 2010) .......................... 8-9

*Temco, Inc. v. National Center for Health Educ.*,
 No. 91-4104-R, 1991 WL 150858 (D. Kan. Jul. 3, 1991) ......................................... 12

*TLX Acquisition Corp. v. Telex Corp.*,
 679 F. Supp. 1022 (W.D. Okla. 1987) ........................................................................ 8

iv

*Trujillo v. Williams*,
  465 F.3d 1210 (10th Cir. 2006) .................................................................................................13

*United States v. Salerno*,
  481 U.S. 739, 107 S. Ct. 2095 (1987) ............................................................................ 16-17, 18

*United States v. Virginia*,
  518 U.S. 515 (1996) ...................................................................................................................14

*Utah Gospel Mission v. Salt Lake City Corp.*,
  425 F.3d 1249 (10th Cir. 2005) .................................................................................................11

*Walker v. City of Calhoun, GA*,
  901 F.3d 1245 (11th Cir. 2018) .................................................................................................18

## STATUTES

22 O.S. § 1105.2(D) .........................................................................................................................5

22 O.S. § 1105.3 ...............................................................................................................................5

42 U.S.C. § 1997e(h) ......................................................................................................................10

U.S. Const. amend. XIV ........................................................................................................6, 13, 16

## RULES

Tulsa County Local Criminal Rule 2 .................................................................... 2-4, 5, 7, 15, 18

Fed. R. Civ. P. 25(d) .........................................................................................................................1

Fed. R. Civ. P. 65 .......................................................................................................................8, 12

## OTHER

11A Wright, et al., Fed. Prac. & Proc. Supplemental Service § 2951 (3d ed. 2013) ......................8

v

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL PARGA, RICHARD FELTZ, TARA O'DONLEY and CHRISTOPHER WOOD, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 18-cv-00298-CVE-JFJ ) |
| BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA; VIC REGALADO, Tulsa County Sheriff, in his official capacity; TERRY H. BITTING, TAMMY BRUCE, MARTHA RUPP CARTER, STEPHEN R. CLARK, THERESA DREILING, OWEN EVENS, JAMES W. KEELEY, DEBORAH LUDI-LEITCH, J. ANTHONY MILLER, DAWN MOODY, MILLIE OTEY, KIRSTEN PACE, APRIL SEIBERT, CLIFFORD SMITH and SARAH SMITH, in their capacity as Tulsa County Special Judges; WILLIAM MUSSEMAN, in his capacity as Tulsa County District Court Judge, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## STATE JUDGES' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANT TULSA COUNTY SHERIFF AND BRIEF IN SUPPORT

Defendant State Judges William LaFortune,[1] in his official capacity as Presiding

---

[1] Judge LaFortune became presiding judge on January 1, 2020, and was automatically substituted for Judge Musseman pursuant to Fed. R. Civ. P. 25(d); however, all references will be to Judge Musseman when discussing events that happened between January 1, 2018 and December 31, 2019, as Judge Musseman was the presiding judge during that time period and the allegations in the Amended Complaint refer to his personal actions.

Judge, and Terry H. Bitting, Tammy Bruce, Martha Rupp Carter, Stephen R. Clark, Theresa Dreiling, Owen Evens, James W. Keeley, Deborah Ludi-Leitch, J. Anthony Miller, Dawn Moody, Millie Otey, Kirsten Pace, April Siebert, Clifford Smith and Sarah Smith, in their capacity as Special Judges, by and through the undersigned counsel, respectfully request that the Court deny Plaintiff's request for a temporary restraining order.. In support of their request, State Judges show the Court the following:

## BACKGROUND

On August 22, 2019, Local Criminal Rule 2 was adopted states as follows:

Per the authority vested upon the District Court of Tulsa County, State of Oklahoma; and in accordance with the jurisdiction granted by the Oklahoma Legislature over certain misdemeanor and felony criminal matters by 22 O.S. § 1105; in accordance with the applicable Oklahoma District Court Rules regarding criminal procedure; and all other applicable rules and/or policies adopted by the District Court of Tulsa County, State of Oklahoma, established by 20 O.S. §23, the Court hereby issues the following Rule regarding a pre-established schedule for bail pursuant to 22 O.S. § 1105.2 and for the initial appearance for persons arrested for certain misdemeanor and felony statutory criminal charges.

### I.      Rights of bail for persons accused of statutory criminal offenses.

The United States Supreme Court has established the accused is not entitled to bail as a constitutional right. *See U.S. v. Salerno,* 481 US 739, 754, 107 S. Ct. 2095, 95 L.E.2d 697 (1987) (citing the original source for Eighth Amendment in English Bill of Rights, the majority finds the very language of the Amendment "fails to say all arrests *must* be bailable" [emphasis added]). The accused is protected by both Article II, Sections 8 & 9 of the Constitution of The State of Oklahoma (1988 and 1907) with regard to excessive bail, and the Eighth Amendment, as applied to the States by virtue of the Fourteenth Amendment of the United States Constitution.

The foremost consideration when fixing bail is the probability that the accused, if free, will appear at trial, and the conditions of release are within the sole discretion of the trial court and will not be overturned absent a clear abuse of discretion. *Bowman v. State*, 1978 OK CR 115, 585 P.2d 1373, *cert. denied* 440 U.S. 920 (1979). Some of the other factors considered when establishing bail include the

seriousness of the crime charged against the defendant, his or her reputation and his or her financial condition. *See Brill v. Gurich*, 1998 OK CR 49, 965 P.2d 404; Rule CR 10.5 of the Local Rules of Tulsa County District Court (2003); Rule1.14, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2003).

In accordance with 22 O.S. § 1101, the trial court may only deny bail upon the appropriate findings. *See Brill v. Gurich*, 1998 OK CR 49, 965 P.2d 404 and Art. II, Sec. 8 of the Oklahoma Constitution. The Oklahoma Court of Criminal Appeals has noted that "[b]ail is not to be deemed excessive simply because the particular person charged cannot give the bail required." *Ex Parte McClellan*, 1908 OK CR 29, 97 P. 1019, 1020.

Pursuant to 22 O.S. §§ 1105 and 1105.2 and Rule 1 of the Local Rules of the Tulsa County District Court, the District Court of Tulsa County, State of Oklahoma, for certain offenses hereby adopts and affirms the written and established bail schedule found in Appendix A to these Rules. The provisions of said Appendix are hereby incorporated by reference to this Rule as if fully set forth herein.

Any party, defendant, accused, or other person required or permitted by law to give or post bail as surety or security in a criminal matter may discharge this requirement by cash, surety, property, or personal recognizance depending upon the conditions of release set forth in the bail schedule.

The purpose of the bail schedule is to permit the posting of bail without a delay associated with the "First Appearance" within 48 hours of being confined to the David L. Moss Criminal Justice Center, as mandated by 20 O.S. § 55. It is the opinion of the Court that the employ of such a schedule, as authorized by state law, "provides speedy and convenient release for those who have no difficulty in meeting its requirements[.]" *Pugh v. Rainwater,* 572 F.2d 1053, 1057 (5th Cir. 1978).

In particular, this schedule, authorized by 22 O.S. § 1105, shall apply to certain arrests without warrants as permitted by 22 O.S. § 196, or other applicable code. For offenses not listed on the schedule, conditions of release may only be determined after the individualized hearing described below.

## II.     Scheduling of "First Appearance" for individuals not otherwise capable of posting bail pursuant to the schedule established in accordance with 22 O.S. § 1105

For those individuals who do not obtain release pursuant to the pre-set bail schedule as outlined above, within forty-eight (48) hours from their arrest, they shall then be brought before the Court for a "first appearance" in accordance with 20 O.S. § 55.

In addition to those obligations established by this Rule, the accused shall be represented by court appointed counsel, if he or she does not have retained counsel for this hearing, for the limited purpose of determining the appropriate conditions of release. At this time the accused will be given the opportunity to object to the bail amount/conditions of release set for him or her.

The staff of the David L. Moss Criminal Justice Center shall inform the Tulsa County Court staff of any such accused in a timely fashion and shall additionally facilitate his/her appearance via video transmission or teleconference at a time to be set by the Court.

To the extent an accused is claiming to be indigent and not just unable to meet the conditions of release pursuant to the pre-set bail schedule, the Court in exercising its discretion in setting the conditions of release as allowed by law may consider various factors, including but not limited to the seriousness of the charge and criminal and appearance history.

To the extent an accused is claiming to be indigent and the charge is not on the pre-set bail schedule, the Court in exercising its discretion in setting the condition of release as allowed by law may consider various factors including but not limited to the seriousness of the charge and criminal and appearance history.

*See* Rule CR2, Ex. 1.

In his Motion, Plaintiff Feltz complains that the process outlined above does not meet constitutional requirements such that the Court should order the Sheriff to disregard orders issued by the judges of the Tulsa County District Court and release arrestees that Plaintiff characterizes as only being detained because they are unable to pay the monetary bond. Specifically, Plaintiff requests that "Sheriff Regalado [be enjoined] from enforcing any secured financial condition of release imposed on a person unless that person has had a swift, due-process-compliant hearing to determine the necessity of detention." [Doc. 158 at p. 3] However, as articulated in Defendant State Judges' Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 157], the process embodied in Local Criminal Rule 2 is

constitutional such that the request for temporary restraining order and preliminary injunction should be denied.

The process in Local Criminal Rule 2 ensures that all eligible criminal defendants are "provided with an individualized determination of bail". Arrestees are to appear on the bond docket via video link within 48 hours of booking into the Tulsa County Jail. *See* Doc. 157-4; *see also* Ex. 1. A Public Defender is available to represent a defendant at the bond docket for the purposes of setting bail and presenting evidence of ability to pay if the defendant does not have private counsel. *See Id.* Administrative Order 2018-10 formally establishes a standing pretrial release program for misdemeanors pursuant to 22 O.S. § 1105.3. The standing pretrial release program outlines the "criteria for cases that may automatically be evaluated for pretrial release" without prior judicial approval when certain circumstances are met.[2] *See* Ex. 2.

Prior to the Court's ruling on Plaintiffs' Motion to Alter or Amend the Judgment [Doc. 42], Plaintiffs sought prospective injunctive relief against all Defendants. Specifically, Plaintiffs sought "[a] declaration and permanent injunction that the Defendants violate Plaintiffs' and class members' right to procedural due process under the Fourteenth Amendment by depriving people who are arrested of speedy, individualized release hearings with notice, counsel, the opportunity to be heard and to confront evidence,

---

[2] 22 O.S. § 1105.2(D) allows for a pretrial program to be used except when a private bond has been secured (When a pretrial program exists in the judicial district where the person is being held, the judge may utilize the services of the pretrial release program when ordering pretrial release, except when private bail has been furnished) Plaintiffs Feltz and Parga secured private bond and would not have been eligible for pretrial release program under state law.

and findings on the record that the government met its burden to demonstrate by clear and convincing evidence that no alternative condition or combination of conditions would be sufficient to serve its compelling interests" [Doc. 32, ¶ 143(c)]. Plaintiffs also sought declaratory relief against all Defendants generally requesting an order declaring that Plaintiffs and class members Fourteenth Amendment rights are violated through the bail procedure. [Doc. 32, ¶ 143(d)].

Based upon Plaintiff Feltz's Motion for Temporary Restraining Order and for Preliminary Injunction against the Sheriff, Plaintiff wants "[i]ndividuals who are in jail solely because they cannot afford imposed money bail [to] be released unless and until they are given a due-process compliant hearing." [Doc. 158 at p. 2-3]

However, based upon the Court's Order on Plaintiffs' Motion to Alter Judgment [Doc. 48], the remaining claims against the Defendant State Judges are as follows:

Count One is against Judge Musseman in his presiding judge capacity only and seeks a declaration and injunction that he in his administrative presiding judge capacity violates "Plaintiffs' and class members' constitutional rights by requiring secured financial conditions of release without inquiry into ability to pay and by issuing and enforcing de facto orders of wealth-based pretrial detention without consideration of alternatives and without findings that such detention is necessary to serve a compelling interest."

Count Two is against Judge Musseman in his presiding judge capacity and the Special Judges in their official capacities and seeks a declaration that all these defendants "violate Plaintiffs' and class members' right to procedural due process under the Fourteenth Amendment by depriving people who are arrested of speedy, individualized

6

release hearings with notice, . . . the opportunity to be heard and to confront evidence, and findings on the record that the government met its burden to demonstrate by clear and convincing evidence that no alternative condition or combination of conditions would be sufficient to serve its compelling interests." The Court also noted that injunctive relief would only be available on this Count as to Judge Musseman in his presiding judge capacity. [Doc. 48 at p. 20].

### Court Operations During COVID-19

The daily bond dockets are continuing uninterrupted even while the courthouse is closed to most proceedings.[3] AO-2020-4, Ex, 3; Guten Decl., dated April 9, 2020, Ex. 4. In-custody arraignments are also continuing to occur, which provide another chance for arrestees to request a bond modification or reduction. Affidavit of Steve Kunzweiler, para. 7, Ex. 5. The District Attorney's office and the Public Defenders are working to identify defendants that are eligible for expedited proceedings in order to reduce the jail population and the Court is hearing these matters and accepting pleas. Guten Decl., Ex. 4, Aff. of Kunzweiler, Ex.5. Specific to the determination of conditions of release, public defenders and attorneys from Still She Rises are submitting requests for bond reduction/modification/reconsideration to the judge and the state informally in an effort to expedite the process. Guten Decl., Ex. 4. The Court is accepting these requests without the

---

[3] Defendant State Judges would note for the Court that other than Ex. 6 of Plaintiff's Motion for Temporary Restraining Order [Doc. 158] (the jail roster for April 2, 2020), the Plaintiff relies on is stale at best, as the NF docket sheets and the PD reports are all prior to the adoption and implementation of LCR2. Based on Plaintiff's own exhibits, the jail population has been reduced significantly by almost twenty-five percent (a reduction from 1402 to 1077).

parties having to file a motion. Guten Decl., Ex. 4. As an example, over the course of four days, the Court considered 21 requests for reduction or modification submitted directly to the court. Guten Decl., Ex. 4.

## ARGUMENT AND AUTHORITY

### A.   Standard for TRO/Preliminary Injunction

Rule 65 of the Federal Rules of Civil Procedure provides for how and what is required when requesting a preliminary injunction, Rule 65(a), or a temporary restraining order, Rule 65(b). Although styled as a request for a temporary restraining order ("TRO"), Plaintiff's request is properly viewed as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) rather than a TRO under Federal Rule of Civil Procedure 65(b). Rule 65(b) generally contemplates that a TRO would be issued only for a short term and "without written or oral notice to the adverse party or its attorney." *See* Fed. R. Civ. P. 65(b)(1). Because Defendants here had notice of Plaintiff's request, the Court should treat the request for a TRO as superseded by the alternative request for a preliminary injunction. *See, e.g., Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993); *TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022, 1028 (W.D. Okla. 1987); *see also* 11A Wright *et al.,* Fed. Prac. & Proc. Supplemental Service, § 2951 (3d ed. 2013).

### B.   Plaintiff cannot seek a preliminary injunction for claim not contained in the Amended Complaint.

A preliminary injunction grants intermediate relief of the same character as that which may be finally granted. *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945). The Court may not enter a preliminary injunction when the movant seeks

8

intermediate relief beyond the claims of the complaint. *See Stouffer v. Eulberg*, No. CIV–09–320–C, 2010 WL 567998, at *1, *2 n.3 (W.D. Okla. Feb. 11, 2010) (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ( "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action.")). Thus, "the movant must establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (quotations omitted); *see also Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) ("[T]he movant [must] establish his right to such relief ... by clear proof that he will probably prevail when the merits are tried, so to this extent there is a relation between temporary and permanent relief.").

Plaintiff Feltz (who is not in custody and has already pled guilty to his criminal charges) now seeks to make this case into a cruel and unusual punishment conditions of confinement case in his present Motion. Nowhere in his claims is a conditions of confinement cruel and unusual punishment claim as he makes no mention of conditions at the Tulsa County jail that harmed him. The elements of the new claim he is raising in his Motion are a "deliberate indifference to the challenged conditions." *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Prince v. Turn Key Health Clinics, LLC*, No. 18-cv-0282-CVE-JFJ, 2019 WL 238153 (N.D. Okla. Jan. 1, 2019) ("Because plaintiff was a pretrial detainee, the Due Process Clause governs his claim of unconstitutional [conditions of confinement]; however, the Eighth Amendment standard provides the benchmark for such

9

claims. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). Therefore, the Court considers whether plaintiff has sufficiently alleged a claim under the Eighth Amendment."). Plaintiff's sleight of hand arguments cannot turn the case pled over 18 months ago into an Eighth Amendment COVID-19 conditions of confinement deliberate indifference case at this time. There is no nexus between the pled claims and the alleged claim in the Motion such that the Motion should be denied.

Additionally, Plaintiff must show compliance with the PLRA prior to filing suit on a conditions of confinement deliberate indifference case. Plaintiff has not done so such that this claim fails and no TRO or preliminary injunction may issue. *See Peoples v. Gilman*, 109 F. App'x. 381, 383 (10th Cir. 2004) ("Mr. Peoples contended below that the § 1997e(a) exhaustion requirement was inapplicable because his claims did not relate to prison conditions. But the exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983 (2002). Mr. Peoples' claims fall well within the ambit of 'suits about prison life' because they implicate conditions of confinement and the effects of actions by government officials on the lives of persons confined in prison. The exhaustion requirement extends to pretrial detainees because the definition of a prisoner includes 'any person ... detained in any facility who is accused of . . . violations of criminal law.' 42 U.S.C. § 1997e(h). At the time of the alleged incident, Mr. Peoples was an inmate at the Denver County Jail. Therefore, Mr. Peoples was required to exhaust administrative remedies.").

## C.   *Plaintiff cannot establish the elements for a Temporary Restraining Order or Preliminary Injunction.*

Assuming *arguendo* that the Court rejects Defendant State Judges' argument in Section B, *supra*, Plaintiff is not entitled to a temporary restraining order or a preliminary injunction because the four factors for determining whether to enter an injunction all weigh in favor of denying Plaintiff's request. It is well-settled that injunctive relief "is an extraordinary remedy" which should not be routinely granted. *See Lorillard Tobacco Co. v. Engida*, 213 F. App'x 654, 656 (10th Cir. 2007); *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). In order to obtain a temporary restraining order or a preliminary injunction, the movant must demonstrate: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.[4] *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004); *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1262–63 (10th Cir. 2005). Plaintiff has not, and cannot, establish any of the prerequisites for the drastic relief they seek.

---

[4] Pursuant to the Court's Order of April 6, 2020 [Doc. 160], Defendant State Judges are only addressing the "irreparable harm" element of Plaintiff's Motion. Defendant State Judges however believe that Plaintiff's request does not meet the requirements under the other three elements or the heightened standard discussed in the next paragraph. It also appears that Plaintiff may be attempting to circumvent the unavailability of injunctive relief against the Special Judges by seeking an injunction against the enforcement of bond determination orders. Defendant State Judges therefore reserve the right to address these other issues in additional briefing should the Court request or allow additional briefing.

In addition, the Tenth Circuit has identified three types of injunctions which are specifically disfavored: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005). "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* Plaintiff's request for injunctive relief here falls into all three disfavored categories. Notably, Plaintiff is looking to alter, rather than maintain, the status quo, wants a mandatory preliminary injunction and wants all the relief it could recover after a full trial on the merits. *See Temco, Inc. v. National Center for Health Educ.*, No. 91–4104–R, 1991 WL 150858, at *5 (D. Kan. Jul. 3, 1991) ("Ordering specific performance of a contract or prohibiting a defendant's continuing breach of a contract makes an injunction a mandatory one."). Plaintiff also cannot satisfy the more demanding standard required for these disfavored injunctions.

Additionally, Rule 65(c) states that "[t]he court may issue a preliminary injunction or a temporary restraining order **only if** the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security." Fed. R. Civ. P. 65(c) (emphasis added).

### D. Plaintiff cannot establish irreparable harm.

Notably, "courts have consistently noted that because a showing of probable

12

irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered*." Dominion Video Satellite, Inc. v. Echostar Satellite Corp*., 356 F.3d 1256, 1260 (10th Cir. 2004) (alteration and quotations omitted). To meet the "irreparable harm" requirement, the plaintiff must establish that an injury is both imminent and not theoretical. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Such an injury must be beyond "merely serious or substantial" and, generally, one for which an adequate monetary remedy is unavailable. *See id.*; *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001). Plaintiff cannot establish irreparable harm because the system set forth and in practice is constitutionally compliant under equal protection and due process analysis.

### 1.  *Equal Protection is Satisfied*

The Fourteenth Amendment directs that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006). That directive is aimed at the State: "equal protection only applies when the state treats two groups, or individuals, differently." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004).

Strict scrutiny is only applied when a classification targets a suspect class or a fundamental right. *See Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002). To survive strict scrutiny, the government must show that its classification is

narrowly tailored to achieve a compelling government interest. *See id*. Intermediate scrutiny applies to such things as gender-based classifications. *See Concrete Works of Colo., Inc. v. City and County of Denver*, 321 F.3d 950, 959 (10th Cir. 2003). These types of classifications will survive an equal protection challenge if there is "an 'exceedingly persuasive justification' for those measures." In other words, if the government can show that the challenged classification serves an important governmental interest and is substantially related to achieving that objective, it will survive under intermediate scrutiny. *Id. (quoting United States v. Virginia*, 518 U.S. 515, 524, 116 S. Ct. 2264 (1996)). Finally, if a classification does not target a suspect class, involve a fundamental right, or implicate intermediate scrutiny, then "the statute need only be rationally related to a legitimate government purpose." *Todd*, 279 F.3d at 1210. Wealth, or lack thereof, is not considered a suspect class under equal protection. *See Lewis v. Casey*, 518 U.S. 343, 347, 116 S. Ct. 2174 (1996); *Petrella v. Brownback*, 787 F.3d 1242, 1266 (10th Cir. 2015).

The Supreme Court analyzed differential treatment by wealth under equal protection in *San Antonio Independent School District v. Rodriguez*, which considered a wealth-based equal protection challenge to Texas's system of apportioning school funds based principally on local tax bases. 411 U.S. 1, 93 S. Ct. 1278 (1973). The Court concluded that wealth-based distinctions were impermissible if "because of their impecunity[, the indigent] were completely unable to pay for some desired benefit, and as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit." *Id.* at 20, 93 S. Ct. 1278, 1290. An equal protection claim will fail when a benefit is simply diminished rather than denied altogether. "[A]t least where wealth is involved, the Equal

14

Protection Clause does not require absolute equality or precisely equal advantages." *Id.* at 24, 93 S. Ct. 1278, 1291. *See also Ross v. Moffitt,* 417 U.S. 600, 616, 94 S. Ct. 2437 (1974) ("The duty of the State . . . is not to duplicate the legal arsenal that may be privately retained by a criminal defendant . . ., but only to assure the indigent defendant an adequate opportunity to present his claims fairly.").

Equal Protection under the Fourteenth Amendment, therefore, does not require the relief Plaintiffs' requested in their Amended Complaint. Plaintiffs appear to request a declaration that arrestees cannot ever be incarcerated if they cannot afford to pay a secured bond. Wealth-based detention is not *per se* unconstitutional. *O'Donnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018). It is not the law that any monetary bail for an indigent arrestee is too much. An individualized hearing is an integral part of the determination of whether an arrestee is being detained solely based on financial resources. Under LCR2, every arrestee, regardless of indigence, has the opportunity for an individualized hearing. [Doc. 157-5, ¶5]. No one is denied the benefit of pretrial release simply by virtue of his or her indigence.

Ability to pay is considered at the initial appearance (or bond docket) for everyone that appears. *Id.* at ¶¶5, 6. [Doc. 157-1, ¶6]. That information is generally presented to the court by the public defender on staff and the court can and does make further inquiry when necessary. [Doc. 157- 5, ¶¶3,6]. The court considers the resources available to an arrestee, along with other factors, to determine appropriate conditions of release. [Doc. 157- 1, ¶6], [Doc 157-5, ¶5-7].

Each arrestee, regardless of financial status, has the opportunity to appear on the

bond docket and present information to the court for consideration of the conditions of release. [Doc. 157-5, ¶¶3, 5]. Bond modification are available by request and are also considered at various stages of proceedings, including arraignment and preliminary hearings. [Doc. 157-1, ¶7]. Arrestees are receiving multiple opportunities for review of their conditions of release and to seek bond modifications or reductions. Modification and reduction requests can be presented to the court informally during this time and do not require a formal motion to be filed or placement on the bond docket for review. Guten Decl., Ex. 4, Aff. of Kunzweiler, Ex. 5. Arrestees therefore have multiple opportunities for the court to consider conditions of release, including whether money bail is appropriate. Conditions of release are being reviewed on a nearly continuous basis through informal requests to the court for review. These individualized assessments are sufficiently rationally related to the government's interest in ensuring that arrestees will appear and maintain lawful behavior as well as making sure no one is detained strictly by virtue of poverty.

### 2. *Due Process is Satisfied*

The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law...." The Due Process Clause protects individuals against two types of governmental action: (1) "substantive due process" prevents the government from engaging in action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty," and (2) "procedural" due process ensures that government action is implemented in a fair

16

manner. *See United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095 (1987) (internal quotations omitted) (discussing Fifth Amendment Due Process Clause).

The United States Supreme Court has established that an arrestee is not entitled to bail as a constitutional right. *See U.S. v. Salerno*, 481 U.S. 739, 754, 107 S. Ct. 2095 (1987) (citing the original source for the Eighth Amendment in English Bill of Rights, the majority finds the very language of the Amendment "fails to say all arrests must be bailable" (emphasis added)). The Oklahoma Court of Criminal Appeals has noted that "[b]ail is not to be deemed excessive simply because the particular person charged cannot give the bail required." *Ex parte McClellan*, 97 P. 1019, 1020 (Okla. Crim. 1908). The Tenth Circuit, however, has clearly stated, in the context of the right to bail for criminal offenses bailable under state law, "the right of an accused to freedom pending trial is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment." *Meechaicum v. Fountain*, 696 F.2d 790, 791-92 (10th Cir. 1983).

Based on the Supreme Court's evaluation of pretrial detention schemes in *U.S. v. Salerno*, 481 U.S. 739 (1987) and *Schall v. Martin*, 467 U.S. 253 (1984), the Tenth Circuit applies the substantive due process test from *Bell v. Wolfish*, 441 U.S. 520 (1920), to determine whether conditions or restriction of pretrial detention amount to punishment of the detainee. The Tenth Circuit quoted *Bell v. Wolfish*:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee....
> ....
> A court must decide whether the disability is imposed for the purpose of

punishment or whether it is but an incident of some other legitimate governmental purpose.... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

*Gaylor v. Does*, 105 F.3d 572, 576 (10th Cir. 1997) (quoting *Bell*, 441 U.S. at 535, 537, 538–39).

*Salerno* is not a framework for determining the minimum due process required under the Fourteenth Amendment in any bail setting. In fact, the Tenth Circuit has noted that the Court in *Salerno* "refused to 'categorically state that pretrial detention offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental'". *Dawson v. Bd. of Cnty. Comm'rs of Jefferson Cnty. Colo.*, 732 Fed. Appx. 624, 631 (10th Cir. 2018) (unpublished) (quoting *Salerno*, 481 U.S. at 751) (internal quotations omitted). In other words, *Salerno* does not stand for the proposition that pretrial liberty in all circumstances is a fundamental right of which restrictions require some heightened review.

In the Amended Complaint Plaintiff challenges the bail setting procedures as insufficient to protect due process. A bail schedule promotes a legitimate governmental interest in processing arrestees in an efficient manner and in and of itself does not violate substantive due process. *See Walker v. City of Calhoun, GA*, 901 F.3d 1245 (11th Cir. 2018). Money bail is not automatically or mechanically imposed under the process in place under LCR 2. Various alternatives can be considered in any case, including no contact

orders; GPS monitoring; a SCRAM device; urinalysis testing; curfew; surrender of firearms; surrender of passports; limitations or restrictions on driving privileges; and/or house arrest. [Doc 157- 5, ¶8]. Consideration of alternatives is directly related to whether bail practices are constitutional. *See Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978).

Under a procedural due process analysis, a court must consider whether the procedures in place "adequately protect" an arrestee's interests. *O'Donnell*, 892 F.3d at 158. Procedural due process requires the balancing of three familiar factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893 (1976). As the Fifth Circuit instructed in *O'Donnell*, "the quality of procedural protections owed a defendant" is on a "spectrum" based on a "case-by-case evaluation" of the competing liberty and government interests. 892 F.3d at 159.

In Tulsa County, every arrestee has the opportunity to appear before a judge for consideration of bond within 48 hours of arrest. An arrestee with the ability to meet the preset bond for the charges of arrest on the bond index has the option to post a bond prior to appearing on the bond docket, but an arrestee with means to meet the preset bond prior to the initial appearance is not required to do so. Any arrestee has the ability to appear on the bond docket, have representation for purposes of bond determination, and present

information for the consideration of bond. The court considers multiple factors when setting a bond, including the seriousness of the offense, potential threat to community, criminal history, appearance history, and available resources to meet conditions of release. [Doc. 157-5, ¶7].

Each arrestee's counsel, either private counsel or the public defender, has the opportunity to present to the court an arrestee's ability to meet any conditions of release. [Doc. 157-5, ¶¶3, 6]. These hearings allow the court to consider both the interests of the arrestee to be free of pretrial detentions and the interests of the state to ensure participation in the criminal case and continued lawful behavior. Bond determinations continue to be reviewed for pretrial detainees. Aff. of Kunzweiler, Ex. 5. Public defenders and attorneys with Still She Rises are requesting bond modifications and reductions directly from the court with notice to the district attorney's office. Aff. of Kunzweiler, Ex. 5, Guten Decl., Ex. 4. Those requests are being considered without formal placement back on the bond docket or requiring a motion to be filed. The Court is continuing the work with defense attorneys and district attorneys to reduce the jail population as much as possible during this time. Arrestees are receiving multiple layers of adequate due process in order to protect both personal and community safety.

## CONCLUSION

For the reasons set forth above and in the other Defendants' Response to Plaintiff Feltz's Motion, Plaintiff's request for temporary restraining order and for preliminary injunction should be denied.

20

Respectfully submitted,

 s/ Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA#22422**
**ERIN M. MOORE, OBA #20787**
**DEVAN A. PEDERSON, OBA #16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
Tele: (405) 521-3921 Fax:  (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
          erin.moore@oag.ok.gov
          devan.pederson@oag.ok.gov
*Attorneys for Defendant State Judges*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of April, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and I further certify that on this date a true and correct copy of the foregoing was served on following who are ECF registrants:

Hayley Horowitz
Kristina Saleh
Still She Rises, Tulsa
567 E. 36th Street North
Tulsa, OK 74106
hayleyh@stillsherises.org
kristinas@stillsherises.org
*Attorneys for Plaintiff Feltz*

Charles Gerstein
Ryan Downer
Laura Gaztambide Arandes
Alexandria Twinem
Civil Rights Corps
1601 Connecticut Ave. NW
Suite 800
Washington, DC 20009
charlie@civilrightscorps.org
ryan@civilrightscorps.org
laura@civilrightscorps.org
alexandria@civilrightscorps.org
*Attorneys for Plaintiff Feltz*

21

Douglas Allen Wilson
DA Office Tulsa-900
500 S Denver Ave Ste 900
Tulsa, OK 74103-3832
*Attorney for Defendant Regaldo and*
*Board of County Comm'rs of County of Tulsa*

 s/Stefanie E. Lawson
**Stefanie E. Lawson**