## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RICHARD FELTZ, on behalf of himself and all others similarly situated,[1]** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-298-CVE-JFJ** |
| | ) | |
| **BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA; VIC REGALADO, Tulsa County Sheriff, in his official capacity; TERRY H. BITTING; TAMMY BRUCE; MARTHA RUPP CARTER; STEPHEN R. CLARK; THERESA DREILING; OWEN EVENS; JAMES W. KEELEY; DEBORAH LUDI LEITCH; J. ANTHONY MILLER; DAWN MOODY; MILLIE OTEY; KIRSTEN PACE; APRIL SEIBERT; CLIFFORD SMITH; SARAH SMITH, in their capacity as Tulsa County Special Judges; and WILLIAM MUSSEMAN, in his capacity as Tulsa County District Court Judge,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are several pending motions for protective orders and motions to quash filed by Defendants (ECF Nos. 89, 90, 96, 97, 98, 99, 100, 101).  The motions are fully briefed, and the Court conducted oral argument via phone conference.

### I.    Background

On June 6, 2018, Plaintiff filed this class-action lawsuit challenging the policies and practices governing pretrial detention of arrestees detained in the Tulsa County Jail.  Named Defendants include Tulsa County Sheriff Vic Regalado ("Sheriff"), in his official capacity; Board

---

[1] Based on an Opinion and Order filed April 24, 2020, Richard Feltz is the only remaining named Plaintiff.  *See* ECF No. 174.

of County Commissioners of County of Tulsa County ("County"); numerous Tulsa County Special Judges ("Special Judges"); and Tulsa County District Judge William Musseman ("Judge Musseman") (collectively, "Judges").   On October 4, 2018, Judge Musseman signed two Administrative Orders related to pretrial detention that took effect October 15, 2018 ("AOs").   On October 22, 2018, plaintiffs filed a First Amended Complaint ("FAC") solely for the purpose of a name correction of County.   ECF No. 32.[2]

Plaintiff alleges that Defendants violate: his equal protection and due process rights by jailing them because they cannot afford a monetary payment (count one); his right to pretrial liberty by jailing them without procedural due process (count two); and his right to counsel by not providing them with counsel adequate to challenge their wealth-based pretrial detention (count three).   Plaintiff summarizes his claims as follows:

> Named Plaintiffs are currently confined in Tulsa County jail cells solely because they do not have enough money to purchase their pretrial release. They are jailed pursuant to Tulsa County's wealth-based detention scheme, which jails people who are unable to meet secured financial conditions of release. No official has conducted any inquiry into any Plaintiffs' ability to pay or made any inquiry into or findings concerning alternative conditions of pretrial release or the necessity of pretrial detention. Because they cannot access the payments Defendants require for their release, the presumptively innocent Plaintiffs will be detained in the Tulsa County Jail for days, weeks, or months.   On behalf of themselves and all others similarly situated, the named Plaintiffs seek declaratory and injunctive relief against the Defendants. After arresting a person, Defendants require secured financial conditions of release, almost always according to a predetermined chart of offenses and corresponding dollar amounts. They do not provide any process for assessing a person's ability to pay or determining the necessity of imposing monetary conditions of release in any individual case. People who are arrested and are unable to pay preset cash deposits to secure their release must remain in jail cells for six or more days before an arraignment, which is the first appearance in front of a judicial officer. Those who cannot afford private counsel are not appointed counsel during the initial period of wealth-based detention, and no lawyer appears with them at arraignment. Defendants refuse to address conditions of release at arraignments.

---

[2] The substantive allegations in the Complaint and FAC are identical.

FAC at ¶¶ 3-4.  The "pre-determined chart of offenses" is a secured money bail schedule that was in place at the time of Plaintiff's arrest.  FAC at ¶ 6.  Plaintiff alleges that County, Sheriff, and Judges maintain policies and practices that result in these violations of Plaintiff's constitutional rights.  *Id.* ¶¶ 18-20.[3]  Plaintiff seeks certification of the following class, pursuant to Federal Rule of Civil Procedure 23(b)(2): "All people who are or will be detained in the Tulsa County Jail because they are unable to pay a secured financial condition of release."  FAC at ¶ 112.  Plaintiff seeks only prospective injunctive and declaratory relief.

On March 15, 2019, the district judge ruled on a motion to dismiss filed by Defendant Judges.  The district judge's ruling clarifies that the putative class consists of all individuals who are detained for any length of time solely because they cannot afford their bond amounts, even if they are released just hours after their arrests.  *Parga v. Bd. of Cty. Comm'rs of Cty. of Tulsa*, No. 18-CV-0298-CVE-JFJ, 2019 WL 1231675, at *3 (N.D. Okla. Mar. 15, 2019).  Further, Plaintiff does not seek relief past the time class members are given counsel and an opportunity to be heard on bail reduction motions.  *Id.*

With respect to standing, the court held that injuries alleged in counts one and two were fairly traceable to Judge Musseman based on his promulgation of and/or supervisory authority over the secured money bail schedule, procedural rules for setting bail, and rules that specify the timing and conduct of arraignments.  *Id.*  The court held that actual injuries alleged in count one, inequities flowing from the money bail schedule, were not fairly traceable to actions of special judges.  *Id.*  The court held that future due process injuries suffered at the time of any initial arraignment were fairly traceable to the actions of special judges. *Id.*  The court held that no named

---

[3] Plaintiff alleges Sheriff is a final policymaker for post-arrest jailing policies and practices, and that he "is named separately from the County as a defendant in the event that the Court concludes that he acts on behalf of the state in this capacity, and thus is subject to prospective relief.  If the Court, however, agrees that he is a final policymaker for the County, naming him individually is redundant of a suit against the County."  FAC at n.3.

plaintiff alleged he "was or will imminently be denied counsel" and therefore had not alleged an injury in fact as to count three. The court further held Judge Musseman was not entitled to judicial immunity, because "plaintiffs seek injunctive relief against defendant Musseman for his administrative acts only." *Id.* at *8. Because judicial immunity does not extend to declaratory relief, the only relief sought against Special Judges, the Court also denied Special Judges' motion to dismiss on grounds of judicial immunity. *Id.* Sheriff and County did not file dispositive motions, and all claims remain against them as pled.

In sum, count one remains pending only against Judge Musseman, Sheriff, and County; count two remains pending against all Defendants; and count three has been dismissed. Injunctive relief remains as an available remedy against Judge Musseman in his role as presiding judge. *Id.* at *8.[4] Declaratory relief is the only requested remedy against Special Judges. *Id.* at *9.[5]

During a scheduling conference held by the district judge on June 24, 2019, the parties agreed to attempt to reach factual stipulations and obviate or reduce the need for fact discovery. The district judge ordered discovery to be conducted in phases, with written discovery only during the first phase to completed by July 15, 2019; and depositions, expert discovery, and any additional written discovery to be completed by January 24, 2020. The district judge also set a dispositive motion deadline of February 4, 2020. *See* ECF Nos. 68-70. There is no dispute this was a global discovery period governing all class certification and merits issues.

Effective August 19, 2019, Tulsa County District Judges enacted a revised version of Tulsa County District Court Local Criminal Rule 2 ("Rule 2"), which relates to pretrial detention

---

[4] Judge William D. LaFortune became the presiding judge of Tulsa County on January 1, 2020. The parties agree that he is automatically substituted for Judge Musseman pursuant to Federal Rule of Civil Procedure 25. *See* ECF No. 121; ECF No. 157 n.1.

[5] There have been various changes to the status of Special Judges. ECF No. 157 at n.2. Although Plaintiffs contend the caption should reflect only the current special judges, this appears to be disputed. *See* ECF No. 128.

4

procedures.  For ease of reference, the Court refers to policies in place at the time of Plaintiff's arrest in June of 2018 as the "pre-suit policies" and the new policies, including the AOs and Rule 2, as the "post-suit policies."  On October 15, 2019, Judges moved for a settlement conference before a magistrate judge, which was granted.

Meanwhile, discovery was ongoing.  Due to various objections and disagreements as to precise wording, the parties reached very few factual stipulations. *See, e.g.*, ECF Nos. 98-5, 98-6, 98-12.  Plaintiff did not issue interrogatories or requests for admission to any particular Defendant.  Plaintiff made an omnibus document request of all parties, and document productions are ongoing.  Plaintiff did not file any motions to compel or seek rulings on objections raised in the stipulations.  Prior to the relevant phase II deadline, Plaintiff requested seven depositions: (1) Federal Rule of Civil Procedure 30(b)(6) deposition of Sheriff, in his official capacity of administering the Tulsa County Jail; (2) Rule 30(b)(6) deposition of County, in its official capacity of administering a pretrial release program authorized by state statute, *see* Okla. Stat. tit. 22, § 22-1105.3; (3) Judge Musseman (Defendant); (4) Judge Moody (Defendant), (5) Judge Ludi-Leitch (Defendant); (6) Judge Hiddle (non-party), and (7) Judge Guten (non-party).  All Defendants moved for protective orders that are the subject of this Opinion and Order.

The Court stayed ruling on the pending discovery motions and struck the remaining deadlines pending the court-ordered settlement conference.  The Court found a limited stay warranted to determine whether the parties could reach agreed prospective relief prior to engaging in phase II discovery.  The parties did not settle, and there is no clear end date for settlement negotiations.  The Court therefore lifted the stay and scheduled oral argument on April 3, 2020.

On April 2, 2020, Judges filed a motion to dismiss on grounds of constitutional and prudential mootness.  ECF No. 157.  Essentially, Judges argue their voluntary conduct has mooted the controversy and that Rule 2's procedures satisfy constitutional requirements.  Judges raise a

factual attack on jurisdiction, attaching affidavits of Judge Musseman and Judge Guten explaining Rule 2 and its implementation.  Plaintiff argues that the post-suit policies do not render the controversy moot or cure the alleged constitutional violations and that discovery is necessary to prove allegations in the FAC and to address mootness.  On April 3, 2020, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction.  ECF No. 158.  Both motions remain pending.

## II.      Legal Standard – Motions for Protective Orders

All Defendants seek protective orders pursuant to Federal Rules of Civil Procedure 26(b)(1)(C) and 26(c)(1).  Rule 26(b)(1)(C) provides that a court must limit the frequency or extent of discovery otherwise allowed under the rules "if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Rule 26(b)(1) permits discovery "of any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  The proportionality considerations include the importance of the issues at stake in the action; the amount in controversy; the parties' relative resources; the importance of discovery in resolving the issues; and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1).  Rule 26(c)(1) permits a court, upon a showing of good cause by the movant, to issue protective orders to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

## III.     Sheriff's and County's Motions for Protective Orders

Plaintiff seeks Rule 30(b)(6) testimony regarding the policies, practices, and procedures used by Sheriff in relation to pretrial detention of arrestees at Tulsa County Jail, and used by County in relation to its administration of the pretrial release program, from January 1, 2015, to the present.  Sheriff and County make blanket relevance objections as to all Rule 30(b)(6) topics

and argue that, if the depositions are permitted, the notices are facially overbroad, unduly burdensome, and should be limited in time and subject matter.[6]

### A.      Legal Standard – Rule 30(b)(6) Depositions

Rule 30(b)(6) permits a party to "notice a corporation as a deponent so long as the notice describes with reasonable particularity the matters for examination." *Pipeline Prods., Inc. v. Madison Companies, LLC*, No. CV 15-4890-KHV, 2019 WL 1940282, at *4 (D. Kan. May 1, 2019) (internal quotations and alteration omitted). The party seeking the deposition "must provide [the Rule 30(b)(6) deponent] with enough information so that they are on notice of the areas of inquiry" that will be explored in the deposition. *Id.* If the Rule 30(b)(6) notice describes with reasonable particularity the matters for examination and complies with Rule 26(b)(1), the entity must designate one or more individuals to testify on its behalf as to all matters reasonably available to it. *Id.* The entity must make a "conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Id.* (internal quotations omitted). Accordingly, Rule 30(b)(6) notices may not be overly broad or subject the Rule 30(b)(6) deponent to an "impossible task" in preparing for the deposition. *Id.*

### B.      Sheriff's Blanket Relevance Objection to Rule 30(b)(6) Testimony

Sheriff argues that he is required by law to follow the directives of Tulsa County judges in relation to pretrial detention. Sheriff has stipulated he does not have policies of collecting financial information or inquiring whether arrestees can afford secured money bail amounts established by the judiciary. ECF No. 98-5 at 4. Sheriff argues that, while he might be a proper party for purposes of injunctive relief, he has no relevant information regarding policies and practices.

---

[6] Sheriff and County correctly asserted during oral argument that they raised a global undue burden objection in their motions.

The Court finds that Sheriff, as policymaker for Tulsa County Jail, possesses relevant information and must testify or designate others to testify pursuant to Rule 30(b)(6).  First, Plaintiff is entitled to explore any policies and procedures promulgated by Sheriff that relate to his office's role in pretrial detention and/or release of arrestees, such as those attached to Plaintiff's response brief.  *See* ECF No. 110-2.  Plaintiff asserts claims against Sheriff, and those claims remain in the case.  Further, Plaintiff is entitled to discovery on Sheriff's practices regarding day-to-day execution of relevant policies promulgated by Judges.  *See Knight v. Sheriff of Leon Cty.*, No. 4:17CV464-RH/CAS, 2018 WL 2138532, at *3 (N.D. Fla. May 9, 2018) (permitting Rule 30(b)(6) deposition regarding sheriff's carrying out state-court bail decisions in significant respects and "actual working of the system").  Here, it is not disputed that Plaintiff was informed of his bail amount by a Sheriff's deputy and jailed by a Sheriff's deputy.  Sheriff has relevant information regarding his deputies' practices in carrying out pretrial release and detention policies. Finally, Sheriff maintains and possesses relevant data regarding the number of people who are detained for inability to afford money bail, the amount of time they have spent detained, and the timing of their court appearances.  Accordingly, Sheriff's blanket relevance objection is overruled.[7]

### C.    County's Blanket Relevance Objection to Rule 30(b)(6) Testimony

Plaintiff seeks to depose County regarding its administration of the pretrial services program.  County argues that Plaintiff challenges only wealth-based "detention" procedures rather than pretrial release and that Feltz did not interact with any County employees.

---

[7] During the hearing conducted April 3, 2020, the Court orally denied Sheriff's motion to stay the deposition pending a determination of whether Sheriff acts as an agent of the State of Oklahoma or Tulsa County with respect to pretrial detention (ECF No. 105).  As stated at the hearing, this legal issue was not (and still is not) pending in any properly filed motion.  Further, Plaintiffs "seek factual information about what policies and practices the Sheriff has put in place - not legal conclusions about the entity on behalf of which he enacted those policies."  ECF No. 110 at 24. No postponement is warranted.

The Court finds that County, as administrator of the pretrial release program, possesses relevant information and must designate a witness to testify. First, policies and practices related to the pretrial release program, while not expressly challenged, are relevant to Plaintiff's constitutional claims. The FAC alleges that the "Tulsa County Board operates and administers a pretrial release program that is run by Tulsa County Court Services" and that it is one of only two forms of non-financial pretrial release used in Tulsa County. FAC ¶ 83. Plaintiff also alleges "Defendants routinely ignore alternative options under state law that would protect federal constitutional rights against wealth-based pretrial detention." *Id.* ¶ 85. Putative class members who are detained on unaffordable money bail were, by definition, not identified for or released under the pretrial release program. Feltz's lack of interaction with County officials is not dispositive of relevance, because Feltz alleges this option was ignored for him and other putative class members. To illustrate the relevance of the pretrial release program, Plaintiff offered an affidavit of Plaintiff's counsel explaining her observation of the bond docket in September of 2018:

> On September 24, approximately 26 people appeared on the bond docket. Among them were at least eight people for whom money bail was set and was the sole basis for their detention, whom the presiding judge explicitly referred to pretrial services for review, and [who] . . . continued to be detained on money bail as of October 9.

ECF No. 110-4 at ¶ 3. In the notice, Plaintiff seeks testimony regarding which pretrial detainees are referred to this program, by whom they are referred, when they are referred, how they are selected, and whether and how quickly this referral typically results in release, which are relevant to Plaintiff's understanding of pretrial detention procedures.

Second, discovery regarding this program is relevant to mootness. During the pendency of the lawsuit, Judge Musseman signed an AO establishing criteria for cases "that may automatically be evaluated for pretrial release by Tulsa County Court Services." ECF No. 157-3. Plaintiff is entitled to explore what role the pretrial release program plays in remedying the

constitutional violations alleged in the FAC.  Accordingly, County's blanket relevance objection is overruled.[8]

The Court sustains one aspect of County's general relevance objection.  The Court finds that policies and practices County employs for selecting or recommending specific *types* of release conditions – such as GPS monitoring, drug testing, or curfews – for particular arrestees are not relevant or proportional to the needs of the case.  County need not prepare its Rule 30(b)(6) witness(es) for any detailed questioning regarding why specific release conditions are recommended or utilized in a given case.  Plaintiff has indicated that due process is satisfied at the point of an individualized bail hearing with counsel present, and County also need not prepare its witnesses for detailed questioning regarding the role of pretrial services at individualized bail hearings.  Plaintiff may, however, question the witness generally as to the practices governing the general role of pretrial services in recommending release with conditions, drafting orders of release, entering orders of release, and the timing of these events in relation to individualized bail hearings.  These limits apply to all categories of Topic 1, and particularly Topic 1(d) and (e).

### D.      Objection to Five-Year Time Span

The time span for all topics in the notices is January 1, 2015, to the present.  This includes testimony regarding policies and practices, as well as certain detention/release data.  Sheriff and County argue this time frame is irrelevant, not proportional, and unduly burdensome.  They urge the Court to limit questioning to two discrete times: (1) the limited time period Feltz was detained in June of 2018; and (2) the present.  Plaintiff argues the information is relevant because they "seek to prove that they, and all putative class members, are victims of long-standing customs, not simply an isolated sequence of events."  ECF No. 110 at 17.

---

[8] For the same reasons, the Court overrules Defendants' objections to the definitions of "bail conditions" and "pretrial release conditions" in the notices.  With the relevance limits explained above, these definitions are not overbroad and are relevant to the legal challenges presented.

The Court finds the entire requested time span not relevant or proportional to the needs of the case.  The Court limits the time span of these notices from March 1, 2018, to the present, or three months prior to the alleged constitutional injury.  Sheriff does not dispute that Feltz was detained pursuant to a long-standing money bail schedule that had been in place since at least 2015 and offered to stipulate to this fact during oral argument.  Sheriff has already stipulated that he does not have a policy of collecting financial information from arrestees or inquiring whether arrestees can afford the amounts set by the judiciary and did not have that policy at the time of Feltz's arrest.  ECF No. 98-5 at 4.   County's pretrial services policies, while relevant to issues presented, are not directly challenged or subject to any "pattern and practice" requirement.  Under these circumstances, the Court finds historical information possessed by these Defendants of marginal relevance.  Considering the large number of arrests per day in Tulsa County, the Court finds a three-month snapshot of testimonial and statistical evidence proportional to the needs of the case for the purpose of establishing that Feltz and putative class members were subject to a pattern and practice, rather than an "isolated sequence of events" on the day of their arrests.

With respect to the time period after Feltz's arrest, the Court finds that the entire period after filing of the FAC through the present is relevant.  Defendants contend Rule 2 moots the controversy and satisfies constitutional requirements.  However, Rule 2 cannot be viewed in a vacuum, as it was preceded by the two AOs executed by Judge Musseman in October of 2018.  Plaintiff is entitled to discovery regarding the overall evolution of events that allegedly moot the controversy.  This includes policies, practices, and statistical information during the interim period prior to Rule 2.

### E.      Objection to Definition of "Pretrial Detainee"

In the notices, pretrial detainee is defined as "any person who is arrested, booked, and/or detained in connection with a matter pending, or expected to be pending, before the Tulsa County

District Court, including but not limited to open criminal charges that have been, or are anticipated to be filed with the court; open applications for revocation or acceleration; and allegations of failure to pay court costs and fines." ECF No. 98-1 at 5. Sheriff and County seek to limit this definition to "people arrested on open state charges and detained in the Tulsa County Jail in connection with a matter pending, or expected to be pending, before the Tulsa County District Court." ECF No. 116 at 11. Sheriff and County argue this definition is overbroad, because those at the "back end" of the criminal justice system are not similarly situated to those at the "front end" arrested on open charges, and because Feltz was arrested on open charges. During oral argument, Plaintiff argued these types of pretrial detainees are included within their proposed class definition and that they are similarly situated for purposes of the alleged constitutional claims.

The Court finds this discovery relevant to Plaintiff's allegations and motion for class certification. Plaintiff seeks to certify the class defined in the FAC, which extends to "people who are or will be detained in the Tulsa County Jail because they are unable to pay a secured financial condition of release." FAC ¶ 112. Feltz asserts his own claims and putative class claims for being jailed solely because of inability to pay monetary payments (count one) and based on deprivation of his rights to pretrial liberty by being jailed without adequate procedural due process at hearings (count two). Feltz seeks to prove at the class certification stage that, regardless of the reason for their arrest, individuals are detained pursuant to a secured money bail schedule without considerations of ability to pay, do not receive adequate process, and therefore fit into the proposed class for purposes of counts one and/or two of the FAC. Although Defendants will dispute this class definition and whether Feltz may adequately represent other types of arrestees, the Court permits the discovery. To avoid any potential vagueness, the Court deletes the phrase "including but not limited to" and expressly limits the definition to the listed types of pretrial detainees.

**F.      Objection to Definition of "Employee" and "Governmental Entity"**

The Court agrees with Defendants that the instruction regarding "governmental entity" and the definition of "employee" are overly broad and impose an unreasonable burden on the Rule 30(b)(6) witness in preparing.  These definitions are stricken, and the Court adopts Defendants' proposal set forth at page 18 of their reply.  *See* ECF No. 116 at 18.  To the extent the term "employees" and the names of listed governmental entities are used in the noticed topics, they shall be given their ordinary meaning and interpreted in light of the noticed topic.

**G.      Objection to Topic 1(a) - Booking Procedures (Sheriff only)**

As written, Topic 1(a) in the notice to Sheriff extends to all policies and practices related to booking, including fingerprinting and other technical aspects of the booking process that are not related to pretrial detention.  Topic 1(a) is therefore overbroad and shall be limited to booking policies that specifically relate to pretrial detention, such as administering the challenged bail schedule, assigning bail amounts, releasing or detaining arrestees, and transitioning to housing after completing the booking process.

**H.      Objection to Topic 1(f) - Assignment of Public Defender**

Defendants seek to limit testimony on any policies or procedures used by the Sheriff or County for determining when and whether arrestees or pretrial detainees are "assigned a public defender," which are Topic (1)(f) in both notices.  Defendants contend that dismissal of count three renders this information irrelevant, as the district judge held the FAC did not contain "a single allegation . . . that any individual named plaintiff was or will imminently be denied counsel."  ECF No. 48 at 8.

The Court finds that, to the extent Sheriff or County have policies or play any role in determining when a public defender is assigned, this information is relevant to count two.  In count two, Plaintiff alleges he is deprived of his right to pretrial liberty when jailed without due process.

FAC ¶ 135.  He alleges that due process requires that the person "must be represented by counsel and have the opportunity to present and confront evidence and to be heard concerning the issue of pretrial release or detention." *Id.*  Plaintiff adequately alleged a due process "injury in fact" as to count two, and the requested information regarding when and how counsel is generally assigned (to the extent these entitles have any policies or information) is relevant to the overall procedural due process claim.  Although count 3 has been dismissed for lack of adequate standing allegations, this does not render general practices regarding appointment of counsel irrelevant to count 2.

**I.      Objection to Topic 2(b) - Communications Among Entities**

Topic 2(b) in each notice requests all communications between numerous governmental entities about the long list of activities in Topic 1.  This deposition topic is overly broad and would require these officials to review a massive and burdensome amount of email and other communications in preparation for the depositions.  *See* ECF No. 99-11 (affidavit of County official estimating necessary review of over 400,000 emails to prepare for topic as worded).  Even with the time limits imposed by the Court, the Court finds it unreasonable to require witnesses to locate, review, and prepare to testify regarding specific communications.  Topic 2(b) is stricken, and the Court finds the relevant and proportional information already covered by Topic 1(j) (County) and Topic 1(i) (Sheriff).[9]

**J.      Objection to Topic 2(f) (County), Topic 3 (Sheriff) - Databases**

The Court finds Plaintiff's requests for information regarding databases used by Defendants to track information related to pretrial detainees to be relevant and not overly burdensome, with the limits imposed by the Court.  To avoid overbreadth and vagueness of these

---

[9] In their briefs, Plaintiffs agreed not to ask questions under Topic 2(c) regarding the identities of specific employees and will seek the information in another way should the need arise.  ECF No. 110 at 21 n. 6.  Defendants need only prepare as to general organizational structure and general titles of the employees involved in the relevant activities with respect to Topic 2(c).

topics, the Court strikes the phrase "including but not limited to information relating to" and limits the topic to electronic databases used to track the five categories listed.

### K.    Objection to Topics 3 and 4 (County), Topic 4 (Sheriff)

With the time limits imposed by the Court, Topics 3 and 4 would require County to calculate various numbers for three different periods of time: March 1, 2018 to October 14, 2018; October 15, 2018 to August 21, 2019, and August 22, 2019 to present.  Topic 4 would require Sheriff to calculate two numbers for those same periods of time.  Plaintiff seeks to compare and contrast these numbers under the pre-suit and post-suit policies.  With the time limits imposed by the Court, the requested data is relevant and proportional to the needs of the case.  If Defendants are unable to prepare certain calculations or lack data to do so, they shall be prepared to explain that during the deposition.

## IV.    Judges' Motions for Protective Orders

Plaintiff seeks depositions of Judges Ludi-Leitch, Moody, Hiddle, and Guten, the Special Judges who conducted the relevant pretrial dockets referred to as the "arraignment docket" or "bond docket" at particular times.  Following are the times each Special Judge conducted the pretrial docket: Judge Ludi-Leitch (2015 to August 2017); Judge Moody (August 2017 to Aug. 19, 2019); Judge Hiddle (August 20, 2018 to February 11, 2019); and Judge Guten (February 11, 2019 to present).  Plaintiff also seeks the deposition of Judge Musseman, who was the presiding district judge at the time of Feltz's arrest.  Musseman signed the AOs and, along with other judges, codified Rule 2.

Judges move for two forms of protection.  First, Judges request a protective order based on the deliberative process privileges and request that the Court limit their testimony to "non-deliberative process subjects."  Second, Judges request protection from oral depositions, urging the Court to mandate use of written depositions, or other forms of written discovery, in the first

instance.  Judges seek to avoid excessive privilege objections during an oral deposition, and to avoid unnecessary disruption of the state judicial system.  The Court first addresses whether Judges have shown good cause for a privilege-based protective order in advance of the requested depositions, and then whether Judges have shown good cause for a protective order as to Plaintiff's selected methods of discovery.

A.      **Privilege**

"The party seeking to assert a privilege has the burden of establishing its applicability." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995).  Privileges are "in derogation of the search for the truth," and they are "not lightly created nor expansively construed."  *United States v. Nixon*, 418 U.S. 683, 710 (1974).  Because Plaintiff asserts federal claims arising under § 1983, the Court applies federal common law to determine the scope and existence of the privilege.  *See Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990) ("Where federal law provides the governing substantive law in a lawsuit, the federal common law of privileges will govern.").

All Judges assert a judicial deliberative process privilege, and Judge Musseman also asserts a legislative deliberative process privilege as applied to his rulemaking actions.  Plaintiff argues he does not intend to seek any "deliberative process" information, and provided the Court with general topics of questioning.  Plaintiff alternatively argues that, if the Court finds any of their proposed topics to invade privilege, he has shown need to overcome the qualified privilege.

1.      **Judicial Deliberative Process Privilege (All Judges)**

The United States Supreme Court has indicated that examination of a judge's "mental processes" regarding a judicial proceeding "would be destructive of judicial responsibility" and that a judge "cannot be subjected to such a scrutiny."  *United States v. Morgan*, 313 U.S. 409, 422 (1941).  Applying this language, lower federal courts have held that "a judge may not be compelled

16

to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties." *United States v. Roth*, 332 F. Supp. 2d 565, 567 (S.D.N.Y. 2004). *See Auguste v. Sullivan*, No. 03-CV-02256-PABKLM, 2009 WL 790135, at *1 (D. Colo. Mar. 20, 2009) (same); *Ciarlone v. City of Reading*, 263 F.R.D. 198, 202 (E.D. Pa. 2009) ("The decision making process of a judge is usually not a discoverable matter."). The privilege extends to: (1) the judge's internal mental processes, *see Morgan*, 313 U.S. at 422; and (2) the judge's deliberative communications with staff and other judges, *see Matter of Certain Complaints Under Investigation by an Investigating Comm. of Judicial Council of Eleventh Circuit*, 783 F.2d 1488, 1520 (11th Cir. 1986).[10]  The privilege generally serves three underlying purposes: (1) ensuring the finality of legal judgments; (2) protecting the integrity and quality of decision-making "that benefits from the free and honest development of a judge's own thinking . . . in resolving cases before them"; and (3) protecting independence and impartiality and permitting judges to decide cases without fear or favor.  *See Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 7156071, at *3 (E.D. La. Dec. 8, 2016) (quoting *In re Enforcement of Subpoena*, 463 Mass. 162, 168-69, 171-72, 174 (Mass. 2012)).

There is scant case law applying the judicial deliberations privilege.  But the Court has gleaned two limitations on the privilege.  First, the privilege "primarily protects judicial decision-making in the context of adjudicating particular cases."  *Cain*, 2016 WL 7156071, at *3 (finding this limit consistent with underlying purposes of privilege).  Accordingly, the judicial deliberative process privilege generally does not extend to deliberations regarding administrative or executive acts performed by judges.  *See id.* (permitting depositions of judges regarding "administrative or

---

[10] Generally, a "deliberative process" privilege protects oral or written communications during a deliberative process, while a "mental process" privilege protects uncommunicated motivations for a policy or decision. *See Irons v. Sisto*, No. CIV S-05-0912 RRBKJM, 2007 WL 4531560, at *3-4 (E.D. Cal. Dec. 18, 2007).

executive matters" but prohibiting questioning straying into "adjudicative deliberations"); *Sykes v. Okla. Police Dep't*, No. CIV-13-1060-M, 2014 WL 1612680, at *2 (W.D. Okla. Apr. 22, 2014) (distinguishing between judicial and administrative actions for purposes of applying judicial deliberations privilege to court clerk).  Second, the judicial deliberative process privilege does not extend to "matters of fact" that "do not probe into the mental processes employed in formulating the judgment in question."  *United States v. Roebuck*, 271 F. Supp. 3d 712, 719 (D.V.I. 2003).  However, "[s]imply putting the word 'factually' before a request for information does not make that information discoverable under the case law."  *Id.* at 721.  Instead, a court must scrutinize whether factual inquiries seek the foundation for a judge's decision-making process on a particular matter. *Id.* at 719. *See also N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (explaining that factual material "may be so interwoven with deliberative material" that it deserves protection).

The judicial deliberations privilege is qualified, but it can be overcome only in rare circumstances and on a showing of substantial need.  *See Matter of Certain Complaints Under Investigation by an Investigating Comm. of Judicial Council of Eleventh Circuit*, 783 F.2d at 1520 (privilege overcome where circuit judicial committee had substantial need for communications to investigate whether judge had accepted bribe in return for official act); *Roebuck*, 271 F. Supp. 2d at 718 (explaining that judicial deliberations privilege is overcome "only in the most extraordinary of cases, such as a strong showing of bad faith or improper behavior by a judge").

### a.    Judge Musseman

Plaintiff seeks to question Judge Musseman regarding:

the court's policies and practices for adopting, implementing and enforcing local rules and administrative orders generally, and those relevant to this case specifically.  This includes the historical circumstances of Administrative Order 2018-9's adoption and that of Local Criminal Rule 2; the court's general policies and practices for training, disciplining, and overseeing special judges, especially in their roles operating arraignment and bail dockets, issuing probable cause

determinations and warrants, and setting and reviewing bail conditions; the legal authorities that special judges are trained and required to rely on, and the procedures and substantive standards that they are trained and required to use, in imposing pretrial release conditions; the procedures used for determining who will appear on the courts' arraignment and bail dockets and when; the procedures used for determining who will be appointed counsel and when; and other matters pertaining to the bailsetting policies and practices of the court.

ECF No. 114 at 11-12.  Plaintiff argues that, "because these questions pertain to Judge Musseman acting as an administrator, not a judge, the judicial deliberations privilege does not apply." *Id.* at 12.

Judge Musseman has not identified any topics that appear to invade the judicial deliberations privilege and has not shown good cause for a protective order.  Judge Musseman is sued in his official capacity as presiding judge based on his rulemaking and supervisory authority at relevant times.  The topics inquire as to factual information regarding the administrative policies and procedures employed by Tulsa County District Court and are far afield from Judge Musseman's adjudicative duties in deciding cases.  *See Cain*, 2016 WL 7156071, at *6 (denying motion for protective order because questions to judges were regarding "administrative or executive matters," but prohibiting questioning straying into any specific "adjudicative deliberations"); *Irons v. Sisto*, No. CIV S-05-0912 RRB KJM, 2007 WL 4531560, at *4 (E.D. Cal. Dec. 18, 2007) (holding that plaintiff could question parole board members acting in quasi-judicial capacity regarding general practices and policies but could not probe reasons for the decisions they made).[11]

### b.   Special Judges

Plaintiff seeks to inquire the following of Special Judges: (1) how the judges generally conducted their arraignment/bond dockets; (2) who appears on dockets and when; (3) the types of

---

[11] In some respects, these factual topics overlap with those in the affidavit now submitted by Judge Musseman in support of the motion to dismiss.  ECF No. 157-1 (explaining nature of "bond index").

authorities that establish and limit their authority in setting bail; (4) training they receive on conducting arraignments, bail determinations, and other relevant procedures; (5) general practices in receiving and/or considering financial information in setting bail; and (6) general practices in creating records of proceedings.  Plaintiff disavows intent to inquire as to any Special Judges' adjudicative mental processes or reasoning for formulating official decisions.

In their reply brief, after reviewing the proposed topics, Special Judges offered little explanation of how these topics invade the judicial deliberations privilege.  *See* ECF No. 117 at 7. Special Judges argued that training information and collection of financial information are not privileged but "ripe for interrogatory."  *Id.* at 3.  During oral argument, Special Judges' counsel conceded that inquiries into general practices would not invade the deliberative process privilege, but expressed concern regarding the slippery slope from "what do you usually ask" to "why do you think that's important."

Special Judges have not identified any topics that appear to invade the judicial deliberations privilege and have not shown good cause for a protective order.  Although the questions relate to their duties as Special Judges, the questions are aimed at factual procedures that were observable during public proceedings or on public dockets; what policies or authority they generally follow; and any training they received in conducting the docket.  These lines of questions are factual inquiries that do not appear to probe mental processes or specific adjudications.  Nor do they appear to be disguised "factual" inquiries aimed at uncovering judicial adjudicative reasoning.  *Cf. Roebuck*, 271 F. Supp. 2d at 719 (applying privilege to preclude factual questions that went to the heart of the judge's thought processes regarding his reasons for recusing from a particular case). *See Irons*, 2007 WL 4531560, at *4 (holding that plaintiff could question parole board members acting in quasi-judicial capacity regarding general policies governing their decision but could not probe reasons for decisions made). These topics seek to discover what the actual practices were

for purposes of an across-the-board constitutional challenge.  Further, these topics do not appear to jeopardize the integrity or impartiality of the judicial officer, or implicate judicial reasoning underlying any specific detention decision.  *Cf. Roebuck*, 271 F. Supp. 2d at 722 (allowing inquiry into judge's factual reasons for recusing from a case would "establish a dangerous precedent which would erode the Court's foundation").

Plaintiff is cautioned that any "why" questions of Special Judges regarding general practices, such as why a judge makes a written record in one case but not another, would likely invade the privilege.

### 2.     Legislative Deliberative Process Privilege (Judge Musseman only)

In his motion, Judge Musseman invoked the "deliberative process" privilege, and cited cases involving both judicial and legislative forms of the privilege.  In his reply, Judge Musseman more clearly explained that he intended to assert a *legislative* deliberative process privilege as to his policymaking actions and cited new cases addressing this privilege.  *See* ECF No. 117 at 4 (arguing that "a legislative deliberative process privilege protects [Judge Musseman's] thoughts and considerations in the creation of proposed or promulgated rules and AO's") (citing *Collins v. Daniels*, 916 F.3d 1302, 1317-19 (10th Cir. 2019) (discussing absolute legislative immunity applied to judges in a rule-making capacity)).  During oral argument, Plaintiff requested additional briefing on this privilege if the Court intended to enter a protective order.

Generally, a legislative deliberative privilege applies to governmental agencies or legislators, and protects pre-decisional "advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated."  *N. Pacifica, LLC*, 274 F. Supp. 2d at 1120-21.  *See also In re United States*, 542 F. App'x 944, 947 (Fed. Cir. 2013) (finding deliberative process privilege applied to proposed inquiry into "Federal Reserve's deliberative processes or Chairman Bernanke's mental processes" regarding the federal

bailout, and holding that "high officials should rarely be compelled to testify regarding the deliberative process used to arrive at a decision within the scope of their government duties"); *United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 525 (N.D. Ind. 2005) (privilege "protects communications that are part of the decision-making process of a governmental agency") (quotation omitted). Like the judicial deliberative process privilege, this privilege is qualified and generally can be overcome with a showing of "extraordinary need." *See In re United States*, 542 F. App'x at 947. Courts have also held, in the context of legislative privileges, that privilege may be overcome if the government's intent and motivations are at issue, such as a discriminatory personnel decision. *See Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. at 526.

Judge Musseman has not shown good cause for a protective order based on the legislative deliberative process privilege. Plaintiff's listed topics do not appear to extend to motivation or intent questions or otherwise invade Judge Musseman's deliberative mental processes in policymaking. The only questionable topic is "historical circumstances of Administrative Order 2018-9's adoption and that of Local Criminal Rule 2." But even that appears to seek factual information rather than privileged deliberative processes or communications related to *formulation* of the relevant policy. *See Irons*, 2007 WL 4531560, at *4 (denying motion for protective order, where plaintiff was "not seeking to question the [parole] board members about the *formulation* of the policy, but rather about its existence") (emphasis added). In an affidavit submitted in support of the motion to dismiss, Judge Musseman stated that the review process leading to the AOs "included members of the judiciary, district attorneys, public defenders and others, including members of [Plaintiffs' counsel's organization]." ECF No. 157-1. It is unclear whether these types of deliberations involving members of the public would be subject to a legislative deliberative process privilege.

The Court lacks adequate information or briefing to enter a protective order or offer guidance as to permissible questions at this time.  However, the Court cautions that questions aimed at Judge Musseman's own pre-decisional deliberative thoughts and considerations in creation of court policies likely invades a deliberative process privilege, whether deemed judicial or legislative.

Because the Court agrees with Plaintiff's arguments that his proposed topics for these witnesses do not clearly invade any privilege, the Court does not reach Plaintiff's alternative argument that he has overcome the privilege by showing adequate need.  *See* ECF No. 114 at 15. In the event the Court deems a challenged question privileged, the Court will address the "need" argument at that time.[12]

The Court denies Judges' motions for any privilege-based protective order in this pre-deposition posture and reserves ruling on all privilege objections.  Judges may assert privileges in good faith, and refuse to answer any question under the relevant rules for any questions deemed to cross into adjudicative or legislative deliberative processes.  *See Spilca v. Maryland Cas. Co.*, No. CV 13-360 GBW/LFG, 2013 WL 12158977, at *5 (D.N.M. Nov. 26, 2013), *objections overruled*, No. 13-CV-360 GBW/CG, 2014 WL 12617286 (D.N.M. Feb. 28, 2014) (court was "unable to grant a protective order as it cannot set hypothetical boundaries for a deposition that has not occurred").  The Court cautions Plaintiff to consider the reasoning of this Opinion and Order in questioning witnesses and to avoid any topics concerning the mental processes used in formulating official judgments, or the reasons that motivated a judicial officer in the performance of his official duties.

---

[12] Plaintiff's response brief posed analytical difficulty, as noted by Judges in their reply.  First, Plaintiff argued he did not seek privileged information.  Alternatively, he argued, if the Court deems their proposed topics privileged, he has shown adequate need because Judges' deliberative information is at issue.  The Court will address whether Plaintiff can overcome the privilege in relation to specific questions if necessary.

### B.    Limits on Method of Discovery

Even as to non-privileged, factual information possessed by Judges, lower courts have indicated that a judge's testimony is disfavored.  *See United States v. Roth*, 332 F. Supp. 2d 565, 568 (S.D.N.Y. 2004) (even as to factual information, a party seeking testimony must show judge's factual knowledge is "highly pertinent" to the jury's task and that he is "only possible source" of testimony) (quashing trial subpoena issued to judge in criminal matter, where defendant sought testimony of judge as fact witness regarding acceptance of a criminal plea in another case).  *See generally Knight v. Sheriff of Leon Cnty.*, No. 4:17CV464-RH/CAS, 2018 WL 2138532, at *3 (N.D. Fla. May 9, 2018) (permitting three-hour deposition of judge in case challenging bail procedures, where judge did not object, but stating in dicta that "a judge's deposition may be taken only as a last resort").  Further, the Supreme Court has implied that a court may consider that "testifying takes time and energy that otherwise might be devoted to judicial duties," and it may consider whether its rulings will cause "undue interference with the [] judicial system."  *Dennis v. Sparks*, 449 U.S. 24, 31 n.7 (1980).

Based on these admonitions, the Court proceeds with caution in analyzing the requests for five oral depositions of state judicial officers, even as to any non-privileged topics.  The Court is also mindful that important interests are at stake regarding alleged unconstitutional practices that impact pretrial detainees in Tulsa County.

### 1.    Judge Musseman and Judge Guten

Judge Musseman and Judge Guten have not met their burden for a protective order preventing their oral depositions, and Plaintiff has shown adequate need for oral testimony.  Judge Musseman was the presiding judge at relevant times, and Judge Guten currently presides over the bond docket created by Rule 2.  These two Judges offered affidavits in support of Judges' motion to dismiss on mootness grounds.  ECF No. 157-2, 157-3.  Submission of factual affidavits that

pertain to the proposed deposition topics weighs in favor of permitting oral depositions of these judicial officers.  Plaintiff cannot ask any other third party about these factual averments, and Judges injected certain factual testimony into the case.  Further, as presiding judge at relevant times, Judge Musseman possesses highly pertinent information regarding the relevant money bond schedules, the pre-suit policies, and the post-suit policies.  Judge Guten, as the special judge implementing the bond docket, possesses factual information regarding implementation of Rule 2.

Although Judges argue the "policies speak for themselves," Plaintiff makes an as-applied challenge and seeks information regarding actual practices in carrying out the policies.  Plaintiff's counsel submitted an affidavit stating that, based on her observations at certain times, post-suit policies were not being implemented as written.  Both depositions are highly pertinent to the pending motion to dismiss for lack of subject matter jurisdiction and any prospective relief entered by the Court that would further alter policies or practices.  To avoid undue disruption to the state judicial system, the Court limits the depositions to three hours each.  Judges may assert privilege and refuse to answer pursuant to the applicable rule.

### 2. Judges Moody and Hiddle

Judges Moody and Hiddle have met their burden for a protective order preventing an oral deposition at this time.  Judge Moody conducted the arraignment docket pursuant to the challenged policies at the time of Feltz's arrest and for a substantial period of time before his arrest.  Judge Hiddle conducted the bond docket for a limited time under the pre-suit policies and the AOs.  While they both have relevant and non-stale information, written interrogatories and/or written depositions are a proportional and reasonable "first resort" for discovery of these judicial officers.

First, Special Judges' general practices are a topic of Judge Musseman's factual testimony, and these additional oral depositions are somewhat cumulative.  Second, implementation of post-suit policies will be generally covered by Judge Guten, and Judge Hiddle's testimony regarding

implementation of the AOs would be somewhat cumulative.  Third, to the extent these judges have unique factual testimony, such testimony is well-suited for written discovery to avoid disruption of their daily dockets and to permit assertion of privilege where necessary.  Fourth, the policies in place at the time of Plaintiff's arrest are no longer applied, and the focus of the requested prospective relief will be geared toward post-suit policies.  Finally, Plaintiff sought factual stipulations but did not seek individualized written discovery.  These judges have requested that relevant factual information be gathered by written discovery and/or written depositions, and the Court finds good cause for such request.

### 3.    Judge Ludi-Leitch

The Court finds good cause for a protective order preventing further oral or written discovery from Judge Ludi-Leitch on grounds of lack of relevance and proportionality to the needs of the case.  She last presided over the arraignment docket over ten months prior to Feltz's arrest. For the same reasons the Court did not require Sheriff and County to prepare for questions or compile statistics regarding past practices dating back to 2015, the Court finds that facts possessed by this special judge regarding how she historically conducted the arraignment docket from 2015 to 2017 to be of only marginal relevance and not proportional to the needs of the case.  Although the Court agrees with Plaintiff that he is entitled to discovery of Special Judges other than those who personally interacted with Feltz, the majority of information sought from Judge Ludi-Leitch is stale and not important to resolving the issues currently presented in the case. To the extent Judge Ludi-Leitch has weekend duty on the current bond docket, the Court finds her testimony cumulative to Judges Guten and Hiddle and of minor importance to the issues at stake.

### V.    Conclusion

Judge Ludi-Leitch's Motion for Protective Order (ECF No. 89) is GRANTED.

Judges Hiddle and Guten's Motion for Protective Order (ECF No. 90) is GRANTED in part and DENIED in part, as explained above.

Judge Musseman's Motion for Protective Order (ECF No. 96) is GRANTED in part and DENIED in part, as explained above.

Judge Moody's Motion for Protective Order (ECF No. 97) is GRANTED in part and DENIED in part, as explained above.

Sheriff's Motion to Quash 30(b)(6) Deposition Notice and for Protective Order (ECF No. 98, 100) are GRANTED in part and DENIED in part, as explained above.

County's Motion to Quash and for Protective Order (ECF No. 99, 101) are GRANTED in part and DENIED in part, as explained above.

The parties shall confer regarding these rulings and attempt to reach agreement on a new discovery deadline, a new dispositive motion deadline, and any other deadlines the parties deem necessary at this juncture.  Plaintiff shall submit a report to the Court regarding these deadlines no later than one week from the date of this Order, or later by agreement.

**SO ORDERED** this 28th day of April, 2020.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**