**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

RICHARD FELTZ, on behalf of himself and
others similarly situated,

              Plaintiffs,

     v.

BOARD OF COUNTY COMMISSIONERS
OF TULSA COUNTY, et al.,

             Defendants.

Case No. 18-cv-0298-CVE-JFJ

**PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH A SUBPOENA AND
<u>OPENING BRIEF IN SUPPORT OF MOTION</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

PROCEDURAL POSTURE ...........................................................................................2

COMPLIANCE WITH RULE 45'S GEOGRAPHICAL LIMITAIONS.......................................4

ARGUMENT ...............................................................................................................5

I.      Legal Standard ...............................................................................................5

II.     The Data Plaintiff Seeks Is Relevant and Proportional to the Needs of the Case. ..............7

        A.      The Data Is Central to Plaintiff's Case. .................................................7

        B.      Alternative Sources of Adequate Data Do Not Exist.............................9

        C.      Plaintiff's Request Poses no Undue Burden on the Director. ...............11

III.    State Law Provides No Shield Against Discovery in Federal Question Cases.................15

IV.     Sovereign Immunity Does Not Shield States from Compliance with Third-Party Subpoenas. ...............................................................................................18

CONCLUSION................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Symetra Life Ins. Co.*,
No. 19-MC-401-EFM-ADM, 2020 WL 489523 (D. Kan. Jan. 28, 2020)................................4

*Ali v. Carnegie Inst. of Washington*,
306 F.R.D. 20 (D.D.C. 2014), *aff'd,* 684 F. App'x 985 (Fed. Cir. 2017)...............................19

*Allen v. Woodford*,
543 F. Supp. 2d 1138 (E.D. Cal. 2008)...................................................................................20

*Arista Records LLC v. Does 1-14*,
No. 7:08CV00205, 2008 WL 5350246 (W.D. Va. Dec. 22, 2008) ........................................19

*Barnes v. Black*,
544 F.3d 807 (7th Cir. 2008) ..................................................................................................19

*Bonnet v. Harvest Holdings Inc.*,
741 F.3d 1155 (10th Cir. 2014) ..............................................................................................19

*CCA Recordings 2255 Litig. v. United States*,
No. 19-CV-2491-JAR, 2020 WL 4284222 (D. Kan. July 27, 2020).......................................7

*Charleston Waterkeeper v. Frontier Logistics, L.P.*,
No. 2:20-CV-1089-DCN, 2020 WL 5629717 (D.S.C. Sept. 21, 2020)..................................19

*Club v. Two Elk Generation Partners, Ltd. P'ship*,
No. 09-CV-022-D, 2009 WL 10677070 (D. Wyo. Apr. 20, 2009) ...........................15, 17, 18

*Cook v. Atchison, Topeka & Santa Fe Ry. Co.*,
816 F. Supp. 667 (D. Kan. 1993)..............................................................................................5

*Edelman v. Jordan*,
415 U.S. 651 (1974)................................................................................................................18

*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*,
No. 05-CV-329-TCK-SAJ, 2006 WL 8430477 (N.D. Okla. May 31, 2006) ..........................6

*Feltz v. Tulsa County*,
Case No. 5:20-mc-12-SLP (W.D. Okla. Nov. 23, 2020), ECF No. 1 .......................................3

*Gottlieb v. Wiles*,
143 F.R.D. 235 (D. Colo. 1992) ..............................................................................................16

*Halvorsen v. Credit Adjustments Inc.*,
    No. 15-CV-6228, 2016 WL 1446219 (N.D. Ill. Apr. 11, 2016) ................................................9

*Jackson v. AFSCME Local 196*,
    No. CIV. 3:07CV0471 (JCH), 2008 WL 1848900 (D. Conn. Apr. 25, 2008) ........................20

*Jackson v. Cnty. of Sacramento*,
    175 F.R.D. 653 (E.D. Ca. 1997) ........................................................................................16

*Kerr v. U.S. Dist. Court for N. Dist. of California*,
    511 F.2d 192 (9th Cir. 1975), *aff'd,* 426 U.S. 394 (1976) ................................................6, 16

*Lehman v. Kornblau*,
    206 F.R.D. 345 (E.D.N.Y. 2001) ........................................................................................6

*Lessley v. City of Madison, Ind.*,
    No. 4:07-CV-136-DFH-WGH, 2009 WL 500515 (S.D. Ind. Feb. 27, 2009) ...................15, 17

*Maine Cmty. Health Options v. Walgreen Co.*,
    No. 18-MC-0009, 2018 WL 6696042 (W.D. Wis. Dec. 20, 2018) ........................................5

*Mason v. Stock*,
    869 F. Supp. 828 (D. Kan. 1994) ......................................................................................16

*In re Missouri Dept. of Nat. Res.*,
    105 F.3d 434 (8th Cir. 1997) ............................................................................................19

*Morgan v. Ramsey*,
    No. 11-CV-451-TCK-PJC, 2012 WL 12837281 (N.D. Okla. Oct. 26, 2012) ........................6

*ODonnell v. Harris Cty., Texas*,
    251 F. Supp. 3d 1052 (S.D. Tex. 2017), *aff'd as modified,* 882 F.3d 528 (5th
    Cir. 2018) .........................................................................................................................9

*Ott v. City of Milwaukee*,
    682 F.3d 552 (7th Cir. 2012) ............................................................................................19

*Premier Election Solutions, Inc. v. Systet Labs, Inc.*,
    No. 09-CV-01822-WDM-KMT, 2009 WL 3075597 (D. Colo. Sept. 22, 2009) ......................5

*In the Matter of Pub. Access to Elec. Case Info.*,
    271 P.3d 775 (Okla. 2009) ....................................................................................15, 17, 18

*RSUI Indem. Co. v. Nat'l Rifle Ass'n of Am.*,
    No. MC-20-6-D, 2020 WL 4194526 (W.D. Okla. July 21, 2020) ........................................4

*United States ex rel. Sanchez v. AHS Tulsa Regional Medical Ctr. LLC,*
    Case No. 05-CV-442-TCK-PJC, 2010 WL 11693225 (N.D. Okla. Aug. 6
    2010) ..................................................................................................................12, 13

*Schultz v. State,*
    330 F. Supp. 3d 1344 (N.D. Ala. 2018) ...........................................................................9

*SCM Corp. v. Xerox Corp.,*
    76 F.R.D. 214 (D. Conn. 1977)..........................................................................................5

*St. Clair v. Washington,*
    No. C05-341JLR, 2006 WL 8454842 (W.D. Wash. Jan. 30, 2006) .............................15, 17

*Tighe v. Honolulu,*
    520 P.2d 1345 (Haw. 1974) .............................................................................................17

*Tsosie v. United States,*
    No. 13 CV 132 ....................................................................................................................5

*Univ. of Texas at Austin v. Vratil,*
    96 F.3d 1337 (10th Cir. 1996) ........................................................................................19

*Vermeer Mfg. Co. v. Toro Co.,*
    No. CIV-19-855-D, 2020 WL 1236312 (W.D. Okla. Mar. 13, 2020) ........................4

*Virginia Off. for Prot. & Advocacy v. Stewart,*
    563 U.S. 247 (2011)..........................................................................................................18

*Watts Constructors, LLC v. Boneso Bros. Constr., Inc.,*
    No. 20-MC-00211-EFM, 2020 WL 6544590 (D. Kan. Nov. 6, 2020) ......................5

*Weerheim v. JR Simplot Co.,*
    No. CV-05-20-E-BLW, 2007 WL 2121925 (D. Idaho Jul. 23, 2007)........................5

*Wilson v. Venture Fin. Grp., Inc.,*
    No. C09-5768BHS, 2010 WL 4512803 (W.D. Wash. Nov. 2, 2010) .......................19

*Ex parte Young,*
    209 U.S. 123 (1908)..........................................................................................................18

*Zubulake v. UBS Warburg LLC,*
    217 F.R.D. 309 (S.D.N.Y. 2003) .....................................................................................13

**Statutes**

California Public Records Act ..............................................................................................16

Okla. Stat. Ann. tit. 51 §§ 24A.3, 24.A5.............................................................................15

**Other Authorities**

Sixth Amendment ..................................................................................................7

Eleventh Amendment ...........................................................................................19

Cal. Const., art. 1, sec. 1 ....................................................................................16

*Civil Litigation*, 15 SEDONA CONF. J. 171 (2014),
    https://thesedonaconference.org/publication/ .................................................13

Federal Rule of Civil Procedure 26 ...................................................................6, 7

Federal Rules of Civil Procedure 45 ............................................................ *passim*

Local Rule 37.1 ......................................................................................................3

Richard Feltz ("Plaintiff"), through counsel and pursuant to Federal Rules of Civil Procedure 45, on behalf of himself and others similarly situated, hereby moves the Court to compel the Administrative Director of the Oklahoma Court System (the "Director") to comply with a subpoena served on her on October 15, 2020.  In support of this motion, Plaintiff states as follow.

## PRELIMINARY STATEMENT

This putative class action challenges the constitutionality of pretrial bail practices in Tulsa County, alleging that defendants systematically detain arrestees in violation of equal protection and due process, solely because of their inability to afford monetary bond amounts, and without due process-compliant hearings and individualized determinations that detention is necessary.  As part of discovery in this case, Plaintiff sought data from the county, the sheriff, and the judicial defendants that is necessary to show that the current money bail system systematically strips putative class members of their liberty based on their access to wealth and hampers their ability to defend their criminal cases, all without serving the governmental interests that defendants claim. Specifically, Plaintiff seeks data reflecting the nature and timing of bail and pretrial detention determinations and their impact on later criminal case proceedings and outcomes, such as data showing: (1) when and how bond is imposed and changes over the course of criminal cases; (2) the relative criminal case outcomes for defendants who are and are not detained due to an inability to afford money bail; (3) how many defendants are detained because they are unable to afford bail and  how long they spend in jail; and  (4) the relative impact of money bail and other pretrial release conditions on failure to appear and re-offense rates.

During the course of extensive communications between counsel for Plaintiff and for the Director since the subpoena was served, the Director has raised several objections to the subpoena:  (1) the subpoena requests information that is not relevant and/or proportional to the needs of the case because no class has been certified yet, and extraction and review of the data would be burdensome; (2) state law prohibits public distribution of the aggregated court data Plaintiff requested; and (3) sovereign immunity protects the Director from subpoena.

The Director's objections are without merit.  First, the data that Plaintiff seeks is central to the case, and it is maintained in an active database from which it can be extracted with minimal burden. Second, state law does not shield documents from production in a federal civil rights lawsuit.  And third, sovereign immunity is not a defense to compliance with a subpoena issued to a public official under Rule 45 of the Federal Rules of Civil Procedure.

Plaintiff therefore seeks the Court's intervention to compel the Director to produce the requested data pursuant to Rule 45(d)(2)(B)(i).

## **PROCEDURAL POSTURE**

Plaintiff initially requested the production of relevant data from judicial defendants on June 2, 2020, and spent the ensuing months negotiating the scope of the original requests. In that time, plaintiff obtained substantial information about the form in which the data is maintained, and was able to narrow the original data request to one specifying the precise fields of relevant data that should be produced.  After months of negotiation, the judicial defendants represented for the first time on October 6, 2020 that they could not produce the court data because it was maintained by, and would have to be requested from, the Office of Court Administration.[1]

---

[1]      Plaintiff does not concede that judicial defendants do not have access to the requested data because Plaintiff lacks access to the information which would be necessary to make that determination.  If the Director, who is part of the same judicial system and knows what information the judicial defendants have access to, can establish that the judicial defendants can

2

Plaintiff immediately prepared the instant subpoena, dated October 9, 2020 (the "Subpoena"), requesting relevant case data which is stored on computer systems under the Director's control.  A copy of the Subpoena is attached as **Exhibit A**.  Following service of the subpoena on October 15, 2020, Plaintiff engaged in extensive communications with counsel for the Director regarding Plaintiff's need for the requested information and the Director's objections to its production.  Between October 30 and November 20, the parties continuously conferred by telephone and email in an effort to identify a mutually agreeable response to the subpoena.  Plaintiff and the Director ultimately agreed that court intervention was necessary. At the conclusion the parties' most recent telephone conference on Friday afternoon, November 20, Plaintiff's counsel clearly stated an intent to file a motion to compel in this Court this week; counsel for the Director indicated support for that approach in light of the parties' differences.[2]

However, on Monday morning, November 23, without providing any notice to Plaintiff, the Director filed a motion to quash the Subpoena in the United States District Court for the Western District of Oklahoma.  *See* Mot. to Quash, *Feltz v. Tulsa County*, Case No. 5:20-mc-12-SLP (W.D. Okla. Nov. 23, 2020), ECF No. 1 at 1-2, attached as **Exhibit B**.  In the motion to quash, the Director provided no justification for initiating a new action in a different jurisdiction, where the court not only is unfamiliar with the matters at issue in this litigation, but, under the Federal Rules of Civil Procedure, has no jurisdiction to resolve the parties' dispute. Only this court has that authority.  Under Rule 45(d)(3), only "the court for the district where compliance is required" may quash a subpoena.  Fed. R. Civ. P. 45(d)(3)(A) & (B).  In this Circuit, "compliance is required" with a subpoena for the production of documents in the place for

provide Plaintiff with the requested information, then the judicial defendants should be compelled to produce the discovery instead.

[2]     Given the parties' extensive but ultimately unsuccessful attempt to negotiate a mutually agreeable response to the subpoena, Plaintiff's counsel certifies under Local Rule 37.1 that a good faith effort has been made to resolve the discovery matters at issue.

production listed on the subpoena.  *RSUI Indem. Co. v. Nat'l Rifle Ass'n of Am.*, No. MC-20-6-D, 2020 WL 4194526, at *1 (W.D. Okla. July 21, 2020); *see also Vermeer Mfg. Co. v. Toro Co.*, No. CIV-19-855-D, 2020 WL 1236312, at *2 (W.D. Okla. Mar. 13, 2020) (subpoena calling for production and testimony in Oklahoma City had a place of compliance in the Western District of Oklahoma); *Adams v. Symetra Life Ins. Co.*, No. 19-MC-401-EFM-ADM, 2020 WL 489523, at *2 (D. Kan. Jan. 28, 2020) (finding and concurring with strong majority authority that place of compliance means location where compliance is listed in subpoena).  In this case, that place for compliance is the offices of counsel for Plaintiff, Still She Rises, located at 567 East 36th Street North, in Tulsa, which is located in the Northern District.

On Monday afternoon, November 23, Plaintiff's counsel emailed counsel for the Director explaining this jurisdictional flaw and urging him to withdraw the Western District motion and litigate the issue in this Court, so as not to waste the resources of the parties and the courts. Plaintiff's counsel has received no response.  Plaintiff will therefore move as quickly as possible to dismiss the Western District action, or transfer the motion to this Court.  In the interests of time, Plaintiff also submits this motion to compel, as the parties originally discussed.  Fact discovery is scheduled to end in this case on January 11, 2021, and Plaintiff's expert reports, for which this data is needed, are due on February 12, 2021.  Awaiting a ruling from the Western District dismissing or transferring the motion to quash could add months before the merits of the Plaintiff's and Director's dispute are addressed, delaying the underlying litigation.  Plaintiff therefore submits this motion to compel while simultaneously moving to dismiss or transfer the motion to quash in the Western District of Oklahoma.

## **COMPLIANCE WITH RULE 45'S GEOGRAPHICAL LIMITAIONS**

The Director's motion to quash filed in the Western District asserts a meritless argument never once raised with Plaintiff's counsel during their weeks of communication: that it requires production of documents more than 100 miles away from her place of business. The 100-mile language found in Rule 45(c)(2)(A) does not apply to requests for production where the custodian is not required to produce documents in person. *See Premier Election Solutions, Inc. v. Systet Labs, Inc.*, No. 09-CV-01822-WDM-KMT, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009); *see also Watts Constructors, LLC v. Boneso Bros. Constr., Inc.*, No. 20-MC-00211-EFM, 2020 WL 6544590, at *2 (D. Kan. Nov. 6, 2020). In any event, Still She Rises, the place designated for production, is within 100 miles of the Director's office as well as her counsel's office, as demonstrated by the maps attached as **Exhibit C**. When the 100-mile rule applies, 100 miles is appropriately measured "by a straight line on a map." *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993); *see also, e.g.*, *Tsosie v. United States*, No. 13 CV 132 JAP/LFG, 2013 WL 12136383, at *4 (D.N.M. July 17, 2013); *Maine Cmty. Health Options v. Walgreen Co.*, No. 18-MC-0009, 2018 WL 6696042, at * 3 (W.D. Wis. Dec. 20, 2018); *Weerheim v. JR Simplot Co.*, No. CV-05-20-E-BLW, 2007 WL 2121925, at *1 (D. Idaho Jul. 23, 2007); *SCM Corp. v. Xerox Corp.*, 76 F.R.D. 214, 215 (D. Conn. 1977).

## ARGUMENT

The Director should be compelled to produce the data responsive to the Subpoena because the data is central to Plaintiff's claims, the production of data is not unduly burdensome, and the Director's objections are without merit.

### I.   Legal Standard

Federal Rule of Civil Procedure 45 permits a party to seek documents from non-parties to the extent they are relevant and do not place an undue burden on the non-party. "Subpoenas are also governed by Rule 26's limits on scope of discovery. Rule 26 limits discovery to any non-

privileged matter that is relevant to the claim or defense of any party." *Morgan v. Ramsey*, No. 11-CV-451-TCK-PJC, 2012 WL 12837281, at *2 (N.D. Okla. Oct. 26, 2012) (internal citations omitted). Relevancy is "broadly construed," and "[a] discovery request should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *Id.* at *3 (internal citations and quotations omitted). When the evidence sought by a subpoena "appears relevant," the burden is on the opposing party to establish the lack of relevance. *Id.* Objections to subpoenas must be stated specifically—"a mere recitation of the familiar litany of overly broad, vague or burdensome, is not sufficient." *Id.* These standards apply to any objection to the production of documents under Rule 45 "whether in the guise of a motion to quash, a motion to compel, or an objection." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, No. 05-CV-329-TCK-SAJ, 2006 WL 8430477, at *2 (N.D. Okla. May 31, 2006).

Critically, federal law, not state law, governs disputes over discovery in federal question cases. *See Lehman v. Kornblau*, 206 F.R.D. 345, 348 (E.D.N.Y. 2001) ("[I]t should be emphasized that . . . [s]tate law does not govern discoverability and confidentiality in federal civil rights actions, and state privacy rules should never be permitted to frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983."); *see also Kerr v. U.S. Dist. Court for N. Dist. of California*, 511 F.2d 192, 197 (9th Cir. 1975), *aff'd,* 426 U.S. 394 (1976) (in federal question cases "[t]he state's interest is that of a litigant, and not, as in diversity cases, that of a sovereign whose law is being applied in a foreign forum"); *United States v. Hudson*, No. CRIM.A. No. 13-20063-01-JWL, 2013 WL 4768084, at *1 (D. Kan. Sept. 5, 2013) (noting "federal common law" resolves privilege questions in federal cases and collecting cases finding state open records acts do not control federal discovery).

## II.    The Data Plaintiff Seeks Is Relevant and Proportional to the Needs of the Case.

The discovery Plaintiff seeks is relevant and proportional to the needs of the case. Federal Rule of Civil Procedure 26(b)(1), which also applies to subpoenas under Rule 45, states that discovery requests must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Plaintiff has worked extensively to ensure that he has requested only the data he needs, in a form that is available and reasonably accessible to the Director.

### A.    The Data Is Central to Plaintiff's Case.

The information requested by Plaintiff is not only relevant but crucial to Plaintiff's claims that pretrial procedures in Tulsa County systematically violate putative class members' equal protection and due process rights.[3]  Because "both significant public policy and personal rights are at stake," and the personal rights at stake involve the loss of liberty—"a highly protected right in the American legal system"—Plaintiff's interest in obtaining the information is "of the utmost importance," and a factor that "strongly weighs in favor" of production. *CCA Recordings 2255 Litig. v. United States*, No. 19-CV-2491-JAR, 2020 WL 4284222, at *3 (D. Kan. July 27, 2020).

In order to prove wide-spread harm and support each of his claims, Plaintiff needs data regarding all arrests, pretrial detention times and conditions, and criminal case events and outcomes over the relevant discovery period, as outlined in the subpoena.  For example, Plaintiff's equal protection claim turns on establishing that defendants routinely jail people solely on money bond, and that they do so without a sufficiently compelling interest to overcome

---

[3]    Plaintiff also alleged that Tulsa County is systematically violating the putative class's Sixth Amendment rights.  The Court dismissed this claim, so Plaintiff does not address it here.

putative class members' injuries.  Defendants claim that money bail is necessary to ensure return to court and public safety.  The data will allow Plaintiff to test this defense by conducting a statistical analysis to assess whether money bail does in fact lead to lower failure to appear and re-offense rates among similarly situated individuals.  Conversely, Plaintiff is entitled to the data to prove the extent of harm to putative class members who are detained illegally, including the impact that initial pre-trial detention has on case outcomes, like rates of dismissal and post-conviction incarceration.   The data is also central to Plaintiffs' due process claims—and defendants' defense that they have cured all due process violations—as it will show the lack of individualized consideration of bail amounts and the degree to which people are detained despite the absence of judicial findings that detention serves a valuable purpose.  For example, anecdotal evidence already in the record indicates—and the data is needed to show—that people are systematically detained because of uniform, non-individualized bond amounts, that  the creation of a bond docket in October 2018 for the ostensible purpose of individualized bail hearings has left the vast majority of pre-set bond amounts unchanged, that many people never appear for bond hearings or do so only after delay, and that a substantial number of people are eventually released on findings that their detention is not necessary, but only after they have spent multiple days, if not weeks, unconstitutionally detained.

Indeed, federal courts considering similar claims have often ***relied*** on expert witness analysis of exactly this kind of data.  *See Schultz v. State*, 330 F. Supp. 3d 1344, 1364-65 (N.D. Ala. 2018) (discussing expert data analysis and underlying data to find money bail system arbitrary and unreasonable);  *ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d 1052, 1096-96, 1105-06 (S.D. Tex. 2017), *aff'd as modified,* 882 F.3d 528 (5th Cir. 2018), and *aff'd as modified sub nom. ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018) (discussing use of court

administrative data to show deficiencies of county money bail system and impact of money bail system on detainees).

The Director claims the data is not relevant or is too broad for an individual claim where the class has not been certified yet, and suggests that only data pertaining to Mr. Feltz is relevant at present.  But Mr. Feltz's claims are not limited to his personal experience; the only question at issue in this suit is whether defendants routinely violate arrestees' rights.  "The mere fact that the class in this case is only a putative class does not justify denying discovery.  A request is not overly broad and unduly burdensome merely because a class action has not yet been certified." *Halvorsen v. Credit Adjustments Inc.*, No. 15-CV-6228, 2016 WL 1446219, at *2 (N.D. Ill. Apr. 11, 2016).  Whether the class should be certified turns substantially on whether Defendants continue to engage in systemic equal protection and due process violations similar to those that injured Mr. Feltz.  Because the discovery relevant to the merits and class certification questions in this case are so closely related, the Court has not bifurcated merits and class certification discovery.  ECF No. 183, at 4 ("There is no dispute this was a global discovery period governing all class certification and merits issues.").  The data plaintiff requests is central to answering both questions.  Indeed, the court has already held that data pertaining to defendants' pretrial detention policies, as applied to all putative class members and not just Mr. Feltz, is relevant and an appropriate subject of discovery pending resolution of the class certification motion.  ECF No. 183, at 14-15.

**B.     Alternative Sources of Adequate Data Do Not Exist.**

Given the judicial defendants' representation that they cannot access the data requested, no source other than the Director is available to provide the information Plaintiff requires.  In response to the subpoena, the Director has argued that Plaintiff can forgo aggregate data and rely

instead on a set of docket sheets already produced in PDF form by Judicial Defendants, and case records available on the Oklahoma State Courts Network ("OSCN"), the Oklahoma courts' public website, but both options are insufficient because they do not allow access to data suitable for statistical analysis.  The offer incomplete information about limited numbers of cases, stored in a form that makes data extremely difficult to extract.

The relevant PDFs were produced by the judicial defendants in discovery. When Plaintiff initially requested court data from the judicial defendants, and despite his request for electronic data, they turned over a sample of "NF" docket sheets in PDF form, essentially printouts from the court records database.  NF, or not-filed, dockets are created when a judicial event occurs before a case is charged; they therefore contain the minutes for bond docket proceedings in all cases where bond docket occurs before the District Attorney has filed charges.  They are not publicly available.

The PDFs produced represent only a small portion of cases, and they provide information about only the most preliminary proceedings.  Even if data in the PDFs could be usefully extracted, *but see infra* at __, the NF dockets can tell Plaintiff nothing about the downstream effects of money-bail even in the individual cases represented in the sample.  They offer no insight into whether money bail improves appearance or re-offense rates, as defendants claim, or into the relative costs of detention on money bail, including higher conviction rates and longer sentences.  Plaintiff cannot fill the enormous gaps left by the PDF documents using public court records because (1) the missing NF documents are not available to the public at all, and (2) for the later stages of arrestees' cases, the court's website, OSCN, will list only 500 cases total at any given time, and a link to each docket sheet must be clicked and every docket sheet individually examined.  Given that over 10,000 criminal cases were filed in Tulsa County just

last year, and the discovery period is approximately two-and-a-half-years long, searching manually through dockets in this way will not feasibly allow Plaintiff to access the information he needs. Indeed, this limited access was the very reason the judicial defendants gave for their own inability to comply with Plaintiff's discovery request, and the need to subpoena the Director, who, they claim, is the only party with reasonable access to the complete data.

Moreover, possessing a limited number of PDF NF dockets and electronic case files is useless to Plaintiff unless he can extract usable data from those resources to run statistical analyses. PDFs are difficult to scrape for raw data, and any scraping technique would be prone to create errors in the data that would require extensive efforts to correct or else potentially corrupt any analysis based on the scraped data. PDFs have been created by taking data from a database, where they are often in a form using various codes and turning them into words on a page. This means that Plaintiff would not only have to scrape the PDFs for the words on the page, but also guess at and recreate the coding used by the database from scratch for the data to be useful. Rather than extracting the data directly from the database as it is presently structured, Plaintiff would be working backwards to try to reconstruct the database that the Director already has.

Using OSCN data would similarly require either copying words into a data set one at a time or writing a computer program to pull data form each case on the site to recreate an approximation of the Director's data, either of which would be extremely time consuming and generate the same workload problems and errors.

## C. Plaintiff's Request Poses no Undue Burden on the Director.

Plaintiff has worked for months to ensure that he is requesting data in as specific and accessible a form as possible. When Plaintiff initially requested the data from the judicial defendants, Plaintiff did not know what data the court maintained or in what form it was stored,

so the requests were phrased in terms of the matters that Plaintiff intended to prove, rather than the items of data required to prove them. *See* Pl.'s Second Req. for the Produc. of Docs., Req. 30, attached as **Exhibit D**. Since then, however, Plaintiff has met and conferred multiple times, first with the judicial defendants and then with the Director, to understand exactly what data is kept and the Director's capabilities to produce it. Before counsel for the judicial defendants represented in October that they have no access to the data, they walked Plaintiff's counsel through a multipage PDF and sample pages from the judicial database to show what data fields the judicial defendants have access to. Following this meeting, Plaintiff distilled his data requests to identify the precise fields in the court's database that contain information relevant to his claims. Plaintiff has continued the conversation with the Director, in an effort to understand exactly how the relevant data is stored and the tools available for its extraction. During this time, Plaintiff repeatedly requested non-conclusory explanations for the Director's claim that a data pull would require substantial effort but received no information about specific factors that would make production unusually difficult. The data requested is readily accessible.

"Whether electronic data is accessible or not generally turns on the type of medium on which it is stored." *United States ex rel. Sanchez v. AHS Tulsa Regional Medical Ctr. LLC*, Case No. 05-CV-442-TCK-PJC, 2010 WL 11693225 at *3 (N.D. Okla. Aug. 6 2010) (citing *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 323 (S.D.N.Y. 2003)). This Court in *Sanchez* described the five most common types of media, "ranging from most accessible to least accessible" as "(1) active, online data; (2) near-line data; (3) offline storage/archives; (4) backup tapes; and (5) erased fragmented or damaged data." *Id*. The first three categories are considered to be "accessible" and thus presumed to be producible because "[a]lthough the time it takes to actually

access the data ranges from milliseconds to days, the data does not need to be restored or otherwise manipulated to be usable." *Zubulake*, 217 F.R.D. at 320.

Given the nature of the databases used by the Director, the data Plaintiff seeks falls into the first category of information. Active online data is defined as data "used in the very active stages of an electronic records['] life—when it is being created or received and processed, as well as when the access frequency is high and the required speed of access is very fast, *i.e.,* milliseconds." *Zubulake*, 217 F.R.D. at 318. This is so because the Director uses what is called an SQL database for its backend architecture and further enhances retrieval using a piece of software called dtSearch Engine for interactions between the database and the OSCN website. Decl. of Michael Kearney, dated November 25, 2020 (the "Kearney Decl."), at ¶ 6. "Most database engines, even those that do not have sophisticated reporting functionality, support exporting database information into either text delimited files or fielded tables." The Sedona Conference, *Database Principles: Addressing the Preservation and Production of Databases and Database Information on Civil Litigation*, 15 SEDONA CONF. J. 171, 198 (2014), https://thesedonaconference.org/publication/ Database Principles. SQL databases in particular were designed to enable rapid data queries and manipulation and for the express purpose of accessing multiple records with single commands. dtSearch is software that specializes in text retrieval and facilitates the retrieval of information from databases. Kearney Decl. at ¶¶ 6-7. The Director also likely has the capacity to run data pulls using other scripting languages, including Python. Kearney Decl. at ¶ 8. Python is a programming language widely used within many organizations, such as Google, and enables programmers to access, copy, and obtain information about data sets using relatively simple instructions. *Id*. Pulling requested data from an SQL database using such options as SQL queries, dtSearch, and other scripting languages like Python

is not a difficult or time-consuming task for an employee knowledgeable about the system. Kearney Decl. at ¶ 9.  Absent additional factors which the Director has never mentioned to Plaintiff, it should take a knowledgeable employee no more than a few hours to write a script to pull the data.  *Id.*  It appears that the Director has such employees.  Kearney Decl. at ¶ 11. Finally, the Director has confirmed she has the technological capacity to transfer the requested data, once identified, to a hard drive for production.  Kearney Decl. at ¶ 13.

The Director has expressed concerns about the need to redact certain sensitive information like social security numbers and credit card numbers, but there is no reason to believe that such information is likely to be included in the columns of data requested by Plaintiff, and any stray information can be addressed with a protective order.  Plaintiff has requested only data pertaining to basic case information like parties, charges, and judges; dates of key events like filing and various appearances; and docket entry information.  The Director has confirmed that the database is already designed to exclude sensitive information from the records, which are generally prepared so that they may appear on the public-facing OSCN, but expressed concern that sensitive information is sometimes "inadvertently" included in the data fields requested.

The possibility that the requested data contains stray pieces of sensitive information does not make the production disproportionate.  Attorneys handle that kind of data all the time as officers of the court.  The proper way to handle such information is through a protective order, not an objection to proportionality based on a need to review to ensure that information is redacted before production.  *See  Lessley v. City of Madison, Ind.*, No. 4:07-CV-136-DFH-WGH, 2009 WL 500515, at *4 (S.D. Ind. Feb. 27, 2009) (protective order adequately covered defendant police officers' privacy concerns about production of documents which could contain their social

security number); *Club v. Two Elk Generation Partners, Ltd. P'ship*, No. 09-CV-022-D, 2009 WL 10677070, at *3 (D. Wyo. Apr. 20, 2009) (protective order provided necessary protection for sensitive data); *St. Clair v. Washington*, No. C05-341JLR, 2006 WL 8454842, at *2 (W.D. Wash. Jan. 30, 2006) (protective order is solution to privacy concern for records purportedly shielded by inapplicable state open records act).  Plaintiff is not opposed to entering a carefully drafted, agreed-upon protective order to assuage any concerns the Director has regarding production of potentially sensitive data.

The Director actively maintains data that is relevant and, in fact, central to Plaintiff's case.  While there may be some minor burden in pulling data from a large database, the Director has failed to offer a non-conclusory reason to Plaintiff as to why the burden would be substantial, let alone undue in light of Plaintiff's need and lack of alternative, feasible methods for obtaining the information that is centrally important to litigating a question of major public policy and the constitutional rights of thousands.

## III.    State Law Provides No Shield Against Discovery in Federal Question Cases.

The Director claims that an Oklahoma Supreme Court administrative rule governing the *form* in which data may be provided to the public prohibits it from producing data that is both discoverable under the Federal Rules of Civil Procedure, and deemed public records under the state's Open Records Act.  Okla. Stat. Ann. tit. 51 §§ 24A.1-24A.29.  While state open records laws and state supreme court rules alike require that electronic court records be made available to the public, Okla. Stat. Ann. tit. 51 §§ 24A.3, 24.A5; *In the Matter of Pub. Access to Elec. Case Info.*, 271 P.3d 775 (Mem) (Okla. 2009) (the "Administrative Order"), court rules prohibit the "bulk distribution" of court records to the public.  Administrative Order, 271 P.3d 775.  The Oklahoma Supreme Court's administrative directive does not permit the Director to shield highly

relevant, public evidence from federal court litigants—especially where the administrative limitation is intended to protect criminal defendants, like putative class members, *who are seeking this information about themselves*.

State law does not create privileges against discovery in federal cases.  *See Kerr*, 511 F.2d 197 (finding the purpose of a freedom of information law "was to expand the access of the public to official records" and did not create a privilege for the requested documents); *Jackson v. Cnty. of Sacramento*, 175 F.R.D. 653, 654-55 (E.D. Ca. 1997) (finding that the California Public Records Act did not create a litigation privilege); *Mason v. Stock*, 869 F. Supp. 828, 832 (D. Kan. 1994) ("[I]n federal question cases, privilege determinations depend solely on the application of **federal** statutes and general principles of common law as interpreted by **federal** courts.") (emphasis in original). Even state constitutions have been found to fall short of creating disclosure privileges in federal court.  *See e.g., Gottlieb v. Wiles*, 143 F.R.D. 235, 237 (D. Colo. 1992) ("To the extent that Cal. Const., art. 1, sec. 1 creates a state privilege against disclosure, it would not be entitled to legal recognition in a federal question case pending in federal court."). And critical to the Court's analysis here, "in cases involving alleged civil rights violations by local governmental entities, federal courts must be particularly wary of privileges or other discovery impediments created by state lawmakers. . . .  It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state or local authorities."  *Mason*, 869 F. Supp. at 832.

That the Oklahoma Supreme Court purports to shield bulk data from access by *the general public* does not mean that it may shield such data from *litigants*.  Courts across the country have confirmed that documents protected from disclosure to the general public under

16

state open records laws are not, as a result, shielded from discovery in a federal lawsuit.  *See e.g.,*

*Lessley*, 2009 WL 500515, at \*4-5 (state disclosure law did not prohibit federal discovery); *Club*,

2009 WL 1067707, at \*2 ("The fact that certain documents may not be open to inspection under

a state open records act does not automatically blanket those documents with certain protections

which are beyond the reach of the procedures contained in civil litigation discovery rules."); *St.*

*Clair*, 2006 WL 8454842 (collecting cases).

The Administrative Order does not even purport to shield documents from public

disclosure, let alone discovery in a lawsuit.  The Administrative Order applies only to the ***form*** in

which the public may have "access to electronic case information of the district courts."

Administrative Order, 271 P.3d 775.  Public access is defined as "the process whereby a person

may inspect and copy electronic case information concerning a particular court case via the

internet through the Oklahoma State Courts Network at oscn.net or KellPro's On Demand Court

Records at odcr.com."  *Id.*  But Plaintiff is not seeking to use the internet to view particular court

cases for inspection and copying; he seeks data regarding the putative class he represents

pursuant to a subpoena for state records.  Even if the Administrative Order applied on its face, it

could not limit discovery access here; state and local laws which govern general public access

generally do not apply to limit discovery in civil litigation.  *See United States v. Hudson*, No.

CRIM.A. 13-20063-01-JWL, 2013 WL 4768084, at \*6 (D. Kan. Sept. 5, 2013) (citing *Tighe v.*

*Honolulu*, 520 P.2d 1345, 1348 (Haw. 1974) for the proposition that "broad discovery granted to

litigants under civil rules cannot be said to be limited by terms of charter provision directed

toward regulation of entirely different situation of general exploration of public records by

citizen during general business hours."); *Club*, 2009 WL 10677070, at \*2.  Due to its

inapplicability, the Administrative Order poses no legitimate reason for objecting to the subpoena.

The Director's arguments that state law would create categories of data they could not produce or that complying with these state laws would increase the effort needed to produce the data fall flat.

## IV. Sovereign Immunity Does Not Shield States from Compliance with Third-Party Subpoenas.

The Director's reliance on sovereign immunity to avoid production is misplaced. Sovereign immunity protects the state from suit. Rule 45 allows parties to command any "*person*" to produce documents, Fed. R. Civ. P. 45(a)(1)(A)(iii), and Plaintiff has subpoenaed the person of the Director. The Director's invocation of sovereign immunity suggests that, because the Director has been subpoenaed in her official capacity, the subpoena should be treated as a subpoena against the state, but "[t]he state cannot . . . impart to the official immunity from responsibility to the supreme authority of the United States." *Ex parte Young*, 209 U.S. 123, 167 (1908). An action against a state official is considered suit against the state only if its aim is "to obtain an injunction requiring the payment of funds from the State's treasury, or an order for specific performance of a State's contract." *Virginia Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 256-267 (2011) (citing *Edelman v. Jordan*, 415 U.S. 651, 666-667 (1974)). That is not the case here.

The Tenth Circuit has accordingly noted that, "under *Ex parte Young* . . . neither a state nor a tribe would appear to be immune from a discovery request served on the appropriate agency *official*," even as it left open the question of whether a subpoena against a state *agency* implicates the Eleventh Amendment. *Bonnet v. Harvest Holdings Inc.*, 741 F.3d 1155, 1162 n.1 (10th Cir. 2014) (emphasis added); *see also Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337,

1340 (10th Cir. 1996) (noting in dicta support in case law for the proposition that "the Eleventh Amendment does not shield nonparty state entities from discovery," where Rule 45 "specifically provides a procedure applicable to nonparties"); *see also Ott v. City of Milwaukee*, 682 F.3d 552, 556 (7th Cir. 2012) (holding a subpoena can issue against a state agency, because a plaintiff "could have demanded the same documents by issuing a subpoena to the correct employee in each agency").

Virtually every court to consider the issue has found that the Eleventh Amendment does not provide state officials with immunity against non-party subpoenas. *Id.* at 556 ("No state sovereign immunity issues are triggered by this subpoena because no ultimate relief is being sought from [the state]."); *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008) ("[A]n order commanding a state official who is not a party to a case between private persons to produce documents in the state's possession during the discovery phase of the case . . . because they do not compromise state sovereignty to a significant degree, do not violate the Eleventh Amendment."); *In re Missouri Dept. of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997) ("There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court."); *see also Charleston Waterkeeper v. Frontier Logistics, L.P.*, No. 2:20-CV-1089-DCN, 2020 WL 5629717, at *6 (D.S.C. Sept. 21, 2020); *Ali v. Carnegie Inst. of Washington*, 306 F.R.D. 20, 30 n.8 (D.D.C. 2014), *aff'd,* 684 F. App'x 985 (Fed. Cir. 2017), and *aff'd,* 684 F. App'x 985 (Fed. Cir. 2017); *Wilson v. Venture Fin. Grp., Inc.*, No. C09-5768BHS, 2010 WL 4512803, at *1 (W.D. Wash. Nov. 2, 2010); *Arista Records LLC v. Does 1-14*, No. 7:08CV00205, 2008 WL 5350246, at *4 (W.D. Va. Dec. 22, 2008); *Allen v. Woodford*, 543 F. Supp. 2d 1138, 1145 (E.D. Cal. 2008); *Jackson v. AFSCME Local 196*, No. CIV. 3:07CV0471 (JCH), 2008 WL 1848900, at *3 (D. Conn. Apr. 25, 2008).

State sovereign immunity does not permit a state official to avoid answering non-party subpoenas served under Federal Rule of Civil Procedure 45.

## **CONCLUSION**

For the foregoing reason, Plaintiff respectfully requests that this Court (1) grant his Motion to Compel; (2) order Defendants to provide the information requested in the Subpoena no later than two weeks after issuance of the Court's order granting the Motion to Compel; and (3) grant any other relief that the Court may deem appropriate.

Dated: November 25, 2020

Respectfully submitted,

/s/ Hayley Horowitz
Hayley Horowitz
Kristina Saleh
STILL SHE RISES, TULSA
567 E. 36th Street North
Tulsa, OK 74106
hayleyh@stillsherises.org
(918) 392-0867

Charles Gerstein*
Alexandria Twinem*
Ryan Downer*
CIVIL RIGHTS CORPS
1601 Connecticut Avenue NW, Suite
    800
Washington, DC 20009
charlie@civilrightscorps.org
alexandria@civilrightscorps.org
ryan@civilrightscorps.org
(202) 844-4975

Allison Holt Ryan*
Michelle Kisloff*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004

allison.holt-ryan@hoganlovells.com
michelle.kisloff@hoganlovells.com
(202) 637-5600

Vassi Iliadis*
HOGAN LOVELLS US LLP
1999 Avenue of the Arts, Suite 1400
Los Angeles, CA 90067
vassi.iliadis@hoganlovells.com
(310) 785-4600

*Attorneys for Plaintiff*

*\*Admitted to practice pro hac vice*