CASE NO. 18-cv-298-CVE-JFJ

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**RICHARD FELTZ**, on behalf of himself and all others similarly situated,

Plaintiff,

v.

**TULSA COUNTY**, *et al.*,

Defendants.

## NON-PARTY JARI ASKINS' RESPONSE IN OBJECTION TO
## PLAINTIFF'S MOTION TO COMPEL AND BRIEF IN SUPPORT

**JEB JOSEPH, OBA#19137**
**Assistant Attorney General**
**Oklahoma Attorney General's Office**
**Litigation Division**
**313 NE 21st Street**
**Oklahoma City, Oklahoma 73105**
**Telephone: (405) 521-3921   Facsimile: (405) 521-4518**

*Attorney for Non-Party Jari Askins*

**December 31, 2020**

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS**................................................................................i

**TABLE OF AUTHORITIES** .....................................................................iii

**NON-PARTY JARI ASKINS' RESPONSE IN OBJECTION TO PLAINTIFF'S MOTION TO COMPEL**.............................................................................1

**PRELIMINARY STATEMENT** .................................................................1

**STATEMENT REGARDING PRE-MOTION COMMUNICATIONS**.......................3

**STANDARD OF REVIEW** .........................................................................4

**ARGUMENT AND AUTHORITY** ..............................................................6

**PROPOSITION I:**

    **SOVEREIGNTY AND IMMUNITY PRECLUDE PLAINTIFF'S DEMANDS**.......................................................................................6

**PROPOSITION II:**

    *EX PARTE YOUNG* CANNOT JUSTIFY PLAINTIFF'S SUBPOENA ........10

**PROPOSITION III:**

    **IN THIS MATTER ASKINS HAS NO DISCREATION FOR THIS COURT TO COMMAND OR COMPEL** ..............................................................12

**PROPOSITION IV:**

    **PLAINTIFF'S DEMANDED PRODUCTION LACKS NECESSARY RELEVANCE**............................................................................14

**PROPOSITION V:**

    **PROPORTIONALITY OF THE SUBPOENA'S DEMAND IS LACKING**..16

    a.  Duplicative nature of demand vitiates proportionality of Subpoena ......................16

    b.  Probative value of production sought vitiates proportionality of Subpoena .........18

**PROPOSITION VI:**

    **THE BURDEN IMPOSED BY THE SUBPOENA IS UNDUE**......................19

**PROPOSITION VII:**

    **THE OKLAHOMA SUPREME COURT'S POLICY CONSIDERSATIONS AND ADMINISTRATIVE DECISIONMAKING MUST BE PROTECTED** ........................................................................................................21

**CONCLUSION** ........................................................................................................23

**CERTIFICATE OF SERVICE** ..................................................................................24

# TABLE OF AUTHORITIES

## CASES

*Allen v. Woodford,*
543 F.Supp.2 1138 (E.D. Cal. 2008) ............................................................................... 11

*Barnes v. Black,*
544 F.3d 807 (7th Cir. 2008) ......................................................................................... 11,

*Becker v. Kroll,*
494 F.3d 904 (10th Cir. 2007) ..................................................................................... 9, 12

*Belknap v. Schild,*
161 U.S. 10 (1896) ........................................................................................................... 8

*Bonnett v. Harvest (U.S.) Holdings, Inc.,*
741 F.3d 1155 (10th Cir. 2014) .......................................................................... 7, 8, 9, 12

*Copeland v. C.A.A.I.R., Inc.,*
2020 WL 972754 (N.D. Okla. Feb. 28, 2020) ................................................................. 5

*Estate of Gonzalez v. Hickman,*
466 F.Supp.2d 1226 (E.D. Cal. 2006) ........................................................................... 12

*Ex parte Young,*
209 U.S. 123 (1908) ............................................................................................ 10, 12, 13

*Exxon Shipping Co. v. United States Department of Interior,*
34 F.3d 774 (9th Cir. 1994) ..................................................................................... 19, 20

*Franchise Tax Bd. of California v. Hyatt,*
139 S. Ct. 1485 (2019) ............................................................................................. 6, 7, 9

*Home Depot U.S.A., Inc. v. Jackson,*
139 S. Ct. 1743, *reh'g denied,* 104 S. Ct. 17 (2019) ....................................................... 6

*In re Pub. Access to Elec Case Info*
271 P.3d 775 (Okla. 2009) ................................................................................... 3, 13, 21

*In re Missouri Department of Natural Resources,*
105 F.3d 434 (8th Cir. 1997) ........................................................................................ 12

*In re Subpoena of Daniel Drasin,*
2014 WL 585814 (D. Md. Feb. 12, 2014) ...................................................................6

*In re Subpoena Duces Tecum,*
228 F.3d 341 (4th Cir. 2000) .......................................................................................8

*Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC,*
227 F.R.D. 421 (M.D.N.C. 2005) ..............................................................................6

*Koch v. Koch Indus., Inc.,*
203 F.3d 1202 (10th Cir. 2000) ................................................................................15

*Kona Spring water Distrib., Ltd. v. World Triathlon Corp.,*
2006 WL 905517 (M.D. Fla. Apr. 7, 2006) .............................................................4

*Larson v. Domestic & Foreign Commerce Corp.,*
337 U.S. 681 (1949) ....................................................................................................8

*Laxalt v. McClatchy,*
116 F.R.D. 455 (D. Nev. 1986) ............................................................................5, 14

*Lewis v. N.M. Dep't of Health,*
261 F.3d 970 (10th Cir. 2001) ...............................................................................7, 10

*Moore v. Oklahoma Employment Sec. Comm'n,,*
2013 OK CIV APP 46 ..............................................................................................21

*New Mexico Oncology v. Presbyterian Healthcare Servs.,*
2016 WL 3452757 (D.N.M. May 10, 2016) ............................................................20

*Nycal Offshore Dev. Corp. v. United States,*
148 Fed. Cl. 1, 14-15 (2020) ..................................................................................7, 9

*Ott v. City of Milwaukee,*
682 F.3d 552 (7th Cir. 2012) ...................................................................................10

*Oyenik v. Corizon Health Inc.,*
2014 WL 12787872 (D. Ariz. Nov. 20, 2014) ........................................................14

*Perez v. Boecken,*
2019 WL 5080932 (W.D. Tex. Oct. 10, 2019), *aff'd,*
2020 WL 96907 (W.D. Tex. Jan. 8, 2020) ...............................................................18

*Premier Election Sol, Inc. v. Systest Labs, Inc.,*
2009 WL 3075597 (D. Colo. Sept. 22, 2009)................................................................14

*R. Prasad Indus. v. Flat Iron Envtl., Solutions Corp.,*
2014 WL 2804276 (D. Ariz., June 20, 2014).................................................................5

*Reichard v. United of Omaha Life Ins. Co.,*
805 F.App'x 111 (3d Cir. 2020) .............................................................................. 18, 19

*Rice v. United States,*
164 F.R.D.556 (N.D. Okla. 1995) ................................................................................4

*Schaaf v. SmithKline Beecham Corp.,*
233 F.R.D. 451 (E.D.N.C. West. Div. Dec. 22, 2005) ..............................................5, 6

*Smith v. Secretary of New Mexico Department of Corrections,*
50 F.3d 801 (10th Cir. 1995) ......................................................................................14

*Speed-Trac Tech v. Estes Exp. Lines, Inc.,*
2008 WL 2309011 (D. Kan. June 3, 2008) ...................................................................5

*Sperry v. Corizon Health Inc.,*
2020 WL 5642343 (D. Kan. Sept. 22, 2020) ................................................................4

*Spraggins v. Reg'l Med. Ctr.,*
2010 WL 5137439 (D. Kan. Dec. 10, 2020) .................................................................4

*Spring v. Bd. of Trustees of Cape Fear Cmty. Coll.,*
2016 WL 4204153 (E.D.N.C. Aug. 8, 2016) ................................................................6

*Triple-I Corp. v. Hudson Assocs. Consulting, Inc.,*
2008 WL 11383395 (D. Kan. Aug. 7, 2008) .................................................................5

*United States v. Murdock Mach. & Eng'g Co. of Utah,*
81 F.3d 922 (10th Cir. 1996) ..............................................................................8, 9, 12

*W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.,*
2014 WL 1257762 (D. Colo. Mar. 27, 2014) .............................................................19

*Will v. Mich. Dept. of State Police,*
491 U.S. 58 (1989) ......................................................................................................13

*Zukoski v. Philadelphia Elec. Co.,*
1994 WL 637345 (E.D. Pa. Nov. 14, 1994) ...............................................................14

## STATUTES

OKLA. STAT. tit. 20, § 16.1 ................................................................................................ 2

42 U.S.C. § 1983 ...............................................................................................................

## RULES

Fed. R. Bank. P. 401 ........................................................................................................ 8

Fed. R. Bank. P. 601 ........................................................................................................ 8

Fed. R. Civ. P. 26 ........................................................................................................... 16

Fed. R. Civ. P. 26(b) ........................................................................................................ 5

Fed. R. Civ. P. 26(b)(1) .............................................................................................. 4, 18

Fed. R. Civ. P. 26(b)(2)(C) ............................................................................................ 16

Fed. R. Civ. P. 34 ............................................................................................................ 5

Fed. R. Civ. P. 45 ............................................................................................................ 5

Fed. R. Civ. P. 45(d)(1) ................................................................................................. 20

Fed. R. Civ. P. 45(d)(3) ................................................................................................. 20

Fed. R. Civ. P. 45(d)(3)(A)(iv) ....................................................................................... 5

Fed. R. Evid. 401 .......................................................................................................... 15

Fed. R. Evid. 402 .......................................................................................................... 15

## OTHER

OKLA. CONST. art. IV, § 1 ............................................................................................... 2

OKLA. CONST. art. VII, § 6 .............................................................................................. 2

U.S. CONST. art. III, § 2 .................................................................................................. 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

RICHARD FELTZ, On behalf of himself
and all others similarly situated,

               Plaintiff,

v.

TULSA COUNTY, *et al.,*

               Defendants.

**Case No. 18-cv-298-CVE-JFJ**

**NON-PARTY JARI ASKINS' RESPONSE IN OBJECTION TO**
**PLAINTIFF'S MOTION TO COMPEL**

The Administrative Director of the Courts, Jari Askins, ("Askins"), (a nonparty to this action) on behalf of the Administrative Office of the Courts for the Supreme Court of Oklahoma (also a nonparty to this action), (collectively "the AOC"), by and through counsel, Assistant Attorney General Jeb Joseph, and pursuant to this Court's Order [Doc. 232], hereby presents its response[1] in objection to Plaintiff's "Motion to Compel Compliance with a Subpoena" [Doc. 210] (hereinafter "Motion"). The subpoena in question ("Subpoena")[2] issued by Plaintiff, Richard Feltz, ("Plaintiff"), seeks State materials belonging to Askins' employer, AOC and the Supreme Court of Oklahoma.

**PRELIMINARY STATEMENT**

The AOC, as part of the State of Oklahoma judicial branch, is a sovereign entity, and an unwilling and uninterested party to these proceedings. Contrary to the AOC's repeated

---

[1] Named Defendants "State Judges" filed a response in opposition to Plaintiff's motion to compel on December 30, 2020. [Doc. 233]. Nonparty State hereby adopts by reference the entirety of the arguments and authority presented therein, as if set forth fully herein.

[2] *See Subpoena*, as served upon AOC [Doc. 201-1, pp. 1-10].

written and verbally expressed objections to Plaintiff's Subpoena, Plaintiff asks this Court to force the State into the unwanted role of "litigant." [Doc. 210, p. 12 of 27]. Fundamentally, Plaintiff demands the State of Oklahoma's sovereign operation of its Supreme Court (and related administration) be subjugated to a foreign court's decision in a discovery matter (wherein State is not a party) concerning information that is largely already available to Plaintiff and other members of the public. Plaintiff's demands against the State are unwarranted in light of his claims against the actual named Defendants; the burden Plaintiff seeks to impose on the State is undue; Congress has not abrogated the State's sovereignty, nor has the State waived its sovereignty and attendant immunity. Plaintiff's Subpoena is an attempt to manipulate the federal judicial system into usurping the legitimate and lawful exercise of the Oklahoma Supreme Court's administrative authority.

The Judicial branch of the State of Oklahoma is one of three (3) separate and distinct Departments of the State. OKLA. CONST. art. IV, §1. The Supreme Court of Oklahoma possesses general superintending control and administrative authority over all courts in the State. The Oklahoma Constitution provides that the:

> [G]eneral administrative authority over all courts in this State, . . . is hereby vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules. The Supreme Court *shall appoint an administrative director and staff, who shall serve at its pleasure to assist the Chief Justice in his administrative duties* . . . .

OKLA. CONST. art. VII, § 6 (emphasis added).

The Administrative Director of the Courts and the staff of the AOC serve at the pleasure of the Supreme Court to assist the Chief Justice in performance of administrative duties. OKLA. STAT. tit. 20 §16.1. The duties include establishment and maintenance of the

Oklahoma Court Information System and the management of electronic case data within that system.

The Subpoena also seeks to command the AOC to extract and release bulk data from tens of thousands of cases filed in Tulsa County District Court, in direct violation of an Oklahoma Supreme Court Administrative Directive prohibiting the AOC from releasing such data. *In re Pub. Access to Elec. Case Info.*, 271 P.3d 775 (Okla. 2009). The Oklahoma Supreme Court already provides sweeping public access to electronic case information on its official website, the Oklahoma State Courts Network (www.OSCN.net). The Subpoena seeks to require the AOC to compile and release court data intended for internal use only, (which does not constitute the official court record), and which Oklahoma's Supreme Court has determined should not be publicly distributed. The Court should reject Plaintiff's demands, and issue an order protecting the State from Plaintiff's Subpoena and any similar future subpoenas.

## STATEMENT REGARDING PRE-MOTION COMMUNICATIONS

Plaintiff's Motion gives an inaccurate and incomplete recitation of the events surrounding counsel's attempts to confer about the impropriety of the Subpoena. Overall, counsel had clear and collegial ongoing communication via telephone and electronic mail. But part of Plaintiff's Motion in this regard is in error. In particular, throughout discussions, AOC acknowledged that Plaintiff might decide, eventually, that a motion to compel were needed, but AOC never agreed -- verbally, in writing, or otherwise -- that a motion to compel was the only appropriate means for resolving the eventual impasse. The Rules provide for parties to file motions to compel, or motions to quash, and nothing about the parties' communications altered that. Plaintiff also misconstrues one particular element of counsel's dialogue. Plaintiff's

motion inaccurately suggests a breakdown in communication, stating that Plaintiff's counsel "received no response" to the November 23, 2020 email about which judicial district were appropriate for resolution of this matter. [Doc. 10, p. 10 of 27]. However, the undersigned had in fact responded via electronic mail earlier in the day of November 25, 2020. Nonetheless, the matter is now squarely before this Court.

## STANDARD OF REVIEW

As an initial matter, Fed. R. Civ. P. 26(b)(1) states, in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and **whether the burden or expense of the proposed discovery outweighs its likely benefit**.

(Emphasis added.)

"In other words, considerations of both **relevance _and_ proportionality** now expressly govern the scope of discovery." *Sperry v. Corizon Health, Inc.*, No. 18-3119-EFM-ADM, 2020 WL 5642343, at *2 (D. Kan. Sept. 22, 2020) (Emphasis added.).

Rule 45 subpoenas are considered discovery within the meaning of the Federal Rules of Civil Procedure. *Rice v. United States*, 164 F.R.D. 556, 556-57 (N.D. Okla. 1995). A subpoena is therefore subject to Rule 26(b)(1)'s requirements and must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case. *See Spraggins v. Reg'l Med. Ctr.*, 2010 WL 5137439, at *1 (D. Kan. Dec. 10, 2010) ("A subpoena must be within the proper scope of discovery ....); *Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, No. 8:05-CV-119-T-23TBM, 2006 WL 905517, at *2 (M.D. Fla. Apr. 7, 2006) ("[A] court must examine whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant

information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production."). This relevance standard is heightened in the context of nonparty subpoenas. *See Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for nonparty discovery ... <u>require a **stronger showing** of relevance</u> than for simple party discovery.") (Emphasis added.)

"A subpoena must also avoid subjecting a third party to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv)." *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2020 WL 972754, at *2 (N.D. Okla. Feb. 28, 2020). "In determining whether undue burden exists, the Court balances the need for discovery against the burden imposed on the person ordered to produce the documents; the status of a person as a non-party is a factor that weighs against disclosure." *Id.* *citing, Speed-Trac Tech. v. Estes Exp. Lines, Inc.*, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008) (internal quotation omitted). "The Court considers the relevance of the documents, the requesting party's need for the documents, the breadth of the request, the time period covered, the particularity of the request, and the burden imposed." *Id.* Moreover, "[t]o obtain discovery from a nonparty, [the requesting] party must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure." *R. Prasad Indus. v. Flat Iron Envtl. Solutions Corp.*, 2014 WL 2804276, at *2 (D. Ariz. June 20, 2014) (citation omitted).

"Non-parties responding to a Fed. R. Civ. P. 45 subpoena are generally offered heightened protection from discovery abuse." *Triple-I Corp. v. Hudson Assocs. Consulting, Inc.*, No. 06-2195-KHV, 2008 WL 11383395, at *2 (D. Kan. Aug. 7, 2008). A subpoena served on a non-party receives some level of heightened scrutiny, wherein courts "will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. Dec. 22,

2005)(quoting *Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005)). <u>Undue burden may be found where a subpoena is directed at *information held by a non-party* and the *information is available from another source*</u>. *See Spring v. Bd. of Trustees of Cape Fear Cmty. Coll.*, No. 7:15-CV-84-BO, 2016 WL 4204153, at * 1 (E.D.N.C. Aug. 8, 2016) (emphasis added) (citing *In re Subpoena of Daniel Drasin*, No. 13-CV-00304, 2014 WL 585814, at *6 (D. Md. Feb. 12, 2014)).

## ARGUMENT AND AUTHORITY

## I.   SOVEREIGNTY AND IMMUNITY PRECLUDE PLAINTIFF'S DEMANDS.

The State of Oklahoma was a sovereign entity prior to its admission to the United States of America. It continues to be so. As such, and consistent with the United States Constitution, the State retains certain powers and immunities which it has consistently held since pre-statehood. Plaintiff's Subpoena is an improper attempt to undo part of the State's sovereignty, and this Court should deny that attempt.

As the United States Supreme recently put it, "[w]e have often explained that '[f]ederal courts are courts of limited jurisdiction.' . . . . Article III, § 2, of the Constitution delineates '[t]he character of the controversies over which federal judicial authority may extend.' . . . . And lower federal-court jurisdiction 'is further limited to those subjects encompassed within a statutory grant of jurisdiction.' Accordingly, 'the district courts may not exercise jurisdiction absent a statutory basis.' *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746, reh'g denied, 140 S. Ct. 17 (2019) (internal citations omitted). The High Court recently also reaffirmed the fundamental precept that, "[a]n integral component of the States' sovereignty [is] their immunity from private suits." *Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1493

(2019) (cleaned up). That includes, "prevent[ing] States from being amendable to ***process*** in any court without their consent." *Id.* (Emphasis added.)

The United States Court of Federal Claims recently examined the meaning of "process" in federal statutory language. Earlier this year, that court dealt with a case involving claims arising from the alleged improper cancellation of mineral leasehold interests. Analyzing relevant statutory language to determine whether the court had jurisdiction, the Court of Federal Claims discerned, *inter alia*, that "'suit' refers to a party's prosecution of a claim or interest, and 'process' refers to the course of proceedings in that suit." *Nycal Offshore Dev. Corp. v. United States*, 148 Fed. Cl. 1, 14–15 (2020).

The United States Court of Appeals for the Tenth Circuit has announced that a subpoena *duces tecum* is itself a "suit." Addressing the issue of "whether a subpoena *duces tecum* served on a non-party Tribe and seeking documents relevant to a civil suit in federal court is itself a 'suit' against the Tribe triggering tribal sovereign immunity," the Tenth Circuit said, "we hold the answer is yes." *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1156 (10th Cir. 2014). Further, the Court of Appeals found that a district court's denial of the sovereign Tribe's motion to quash was "immediately appealable." *Id.* at 1157. It is well settled that the Eleventh Amendment prohibits citizens from suing states in federal court. *Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001).

In *Bonnet*, a petroleum landman (named Robert Bonnet) and his company entered into a business contract with the "Energy and Minerals Department" of the Ute Indian Tribe of the Uintah and Ouray Reservation." After the contract terminated, Bonnet sued various companies and individuals involved, (but not the Tribe) in federal court. During the discovery phase of the case, Bonnet issued a non-party subpoena *duces tecum* to the Tribe. After the

district court's failure to grant Tribe's motion to quash the subpoena *duces tecum*, the Tribe appealed to the Tenth Circuit. That court correctly observed Tribe's status as a sovereign, and found that the subpoena to a non-party was a "suit" for purposes of triggering sovereign immunity. The *Bonnet* court said, "[o]ur precedent . . . leads to the logical conclusion that a subpoena duces tecum served directly on a tribe is a 'suit' triggering tribal sovereign immunity." *Id.* at 1159.

> As the *Bonnet* court continued:
>
> In *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922 (10th Cir.1996), we concluded "the term 'suit' embodies the broad principle that the government is not subject to 'legal proceedings, at law or in equity' or 'judicial process' without its consent." *Id.* at 931 (emphasis added) (quoting *Belknap v. Schild*, 161 U.S. 10, 16, 16 S.Ct. 443, 40 L.Ed. 599 (1896)). We reasoned that "[i]nterpreting the term 'suit' broadly comports with the core notion of sovereign immunity that in the absence of governmental consent, the courts lack jurisdiction to 'restrain the government from acting, or to compel it to act.' " *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)). We therefore held sovereign immunity rendered the United States immune from the automatic stays provided by Rules 401 and 601 of the Bankruptcy Act of 1898. *Id.* at 932. Furthermore, in *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007), we acknowledged that " '[t]he issuance of a subpoena initiates an adversary process that can command the production of documents and things only after judicial process is afforded.' " *1160 Id.* at 922 (emphasis added) (quoting *In re Subpoena Duces Tecum*, 228 F.3d 341, 348 (4th Cir.2000)).

*Id.* at 1159-1160.

Although *Bonnet* dealt directly with a Native American tribe, (and not any of the fifty states), the same reasoning applies to a sovereign state such as Oklahoma. In fact, *Bonnet* noted that the Tribe's immunity was *more <u>limited</u>* than the immunity held by a state, (because the Tribe's immunity is a matter of federal common law, subject to congressional control and modification). The *Bonnet* court then observed that, "under our binding precedent—namely,

*Murdock* and *Becker*—the Eleventh Amendment may well shield a state agency from discovery in federal court." *Id.* at 1161.

Under *Hyatt*, *Nycal*, and *Bonnett*, Plaintiff's Subpoena to State is clearly precluded in light of this Court's limited jurisdiction, and the State is immune to the Subpoena's demands. Whether this Court construes the Subpoena as a "suit" or as "process," both tracks are precluded. Plaintiff's Motion makes clear his intention and the practicality of his action against the State: to force the State of Oklahoma into the role of "litigant," even portraying the State as such multiple times in his Motion. [Doc. 210, pp. 12 and 22 of 27]. Equally clear is that the State has not consented to suit by Plaintiff herein. The State of Oklahoma has not waived its sovereign immunity, nor has Congress abrogated the State of Oklahoma's sovereign immunity, with regard to this matter. The State's immunity is intact, and is effective.

Moreover, the Tenth Amendment confirms that the power of the federal government is subject to certain limits that reserve power to the states. The State of Oklahoma (through its Supreme Court) has not waived its power to regulate its own internal operations, nor has Congress abrogated the State of Oklahoma's right to do so. The Tenth Amendment recognizes and reaffirms this. The Plaintiff's subpoena seeks to command the Supreme Court of the State of Oklahoma to act in a manner that it has specifically determined is not appropriate. Under *Hyatt*, *Nycal*, and *Bonnett*, Plaintiff's Subpoena to State is clearly precluded in light of this Court's limited jurisdiction, and the State is immune to Plaintiff's subpoena, is protected by both the Tenth and Eleventh Amendments to the United States Constitution. This Court should deny Plaintiff's attempt to compel State's compliance with the Subpoena.

## II.   *EX PARTE YOUNG* CANNOT JUSTIFY PLAINTIFF'S SUBPOENA.

The Eleventh Amendment prohibits citizens from suing states in federal court. *Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001). However, the Supreme Court carved out an exception in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908), which "permit[s] citizens to seek prospective equitable relief for violations of federal law committed by state officials in their official capacities." *Lewis*, 261 F.3d at 975. Plaintiff contends that in this case, the Director is in essence the target of an *Ex Parte Young* lawsuit seeking injunctive relief. But the Director is not accused of violations of federal law, nor is the AOC. Plaintiff's comparison is faulty. Citing the *Ott* case, Plaintiff argues that "[v]irtually every court to consider the issue" has found that the Eleventh Amendment does not shield State actors against nonparty subpoenas. [Doc. 210, p. 25 of 27]. However, Plaintiff's argument here misses the mark. In *Ott*, the Seventh Circuit noted that, "[n]o state sovereign immunity issues are triggered by this subpoena because no ultimate relief is being sought from them." *Ott v. City of Milwaukee*, 682 F.3d 552, 556 (7th Cir. 2012). But, Plaintiff's analogy to *Ott* crumbles under close review. In that case, the Plaintiff wanted records that were not otherwise available to him as he pursued his civil rights lawsuit. Here, the vast majority of the records demanded by the Subpoena are already available to Plaintiff (either through the Tulsa County Court Clerk or OSCN) and/or the records have been offered to Plaintiff by the named Defendant Judges. [Doc. 233, p. 2 and 4 of 9]. Additionally, the state agencies in *Ott* apparently did not raise state sovereign immunity or the Tenth and Eleventh Amendments in their opposition to those subpoenas.

Plaintiff argues that he seeks no "ultimate relief" from the State, but the State does not see it that way. Plaintiff seeks nothing less than total access to the electronic collections of

State's judicial records and materials, despite already having access to most (if not all) of the information legitimately applicable to this lawsuit. Plaintiff wants to commandeer the State's digital repository of court materials, regardless of whether the files contain, for example, confidential informants' names, unredacted versions of official records, materials relating to sexual crimes against minors, or witness and juror information. Such sweeping access by Plaintiff would be unprecedented and significant, and the State opposes such a scenario strenuously.

In this vein, Plaintiff also cites to the *Barnes v. Black* case, (again from the Seventh Circuit, and not the Tenth Circuit), in support of "commanding a state official" who is not a party to a case to produce documents in discovery in that case because it does not "compromise state sovereignty to a significant degree." The State finds no federal court in Oklahoma, nor any Tenth Circuit case, citing *Barnes*. Plaintiff's assertion that virtually all courts agree with his position on this point is mistaken. In fact courts are in conflict on this issue. For example, Plaintiff cites the California case of *Allen v. Woodford*, for his general proposition. In *Allen v. Woodford*, 544 F. Supp. 2d 1074 (E.D. Cal. 2008), the plaintiff prisoner asserted § 1983 medical treatment claims against, inter alia, various state officials in their personal capacities. Plaintiff made a motion to compel compliance with subpoenas compelling state officials, who were custodians of state agency records, to provide records pertaining to the provision of medical services to prison inmates. The state officials asserted the Eleventh Amendment in response to the motion. The federal district court held that because neither the state nor the custodian employees were parties to the federal court suit, the Eleventh Amendment did not bar enforcement of the subpoenas. The enforcement of the subpoenas

would not have any effect on the state treasury. The court, however, acknowledged that the federal district court in *Estate of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226 (E.D. Cal. 2006), reached the opposite result, finding that enforcement of a subpoena is retrospective relief and not within the *Ex parte Young* exception for prospective relief.

Similarly unavailing is Plaintiff's citation to *In re Missouri Department of Natural Resources*, which the Tenth Circuit considered and expressly rejected in *Bonnet*, finding *Missouri* to be both inapplicable and nonbinding. 105 F.3d 434 (8th Cir. 1997). The *Bonnet* court noted that, "because, unlike Eleventh Amendment immunity, 'tribal immunity is a matter of federal common law, not a constitutional guarantee, [and] its scope is subject to congressional control and modification.'" *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1161 (10th Cir. 2014) (citation omitted). The Tenth Circuit also observed that, "we are not bound by *Missouri DNR*. Rather, under our binding precedent—namely, *Murdock* and *Becker*—the Eleventh Amendment may well shield a state agency from discovery in federal court." *Id.* The Court should deny Plaintiff's Motion to compel.

## III.   IN THIS MATTER, ASKINS HAS NO DISCRETION FOR THIS COURT TO COMMAND OR COMPEL.

Fundamentally, what Plaintiff seeks in the present lawsuit is injunctive relief against Tulsa County judges and officials in their official capacities. The State, Askins, and AOC are not implicated in any alleged malfeasance, civil rights violations, or any wrongful or unlawful activity at all. If the Court were to indulge Plaintiff's invitation to engage in a charade by ordering Askins to comply with the Subpoena, the Court would simply be supplanting the decision-making and policy setting of the Oklahoma Supreme Court with its own. In fact,

Askins is already bound by the State Supreme Court's express directives, and those directives prohibit the requested action.

Bulk distribution of electronic case information (such as that demanded by Plaintiff's Subpoena) is specifically prohibited by order of the Oklahoma Supreme Court. *In re Pub. Access to Elec. Case Info.*, 271 P.3d 775 (Okla. 2009). As an employ of the AOC, Askins is bound by this order. In *In re Pub. Access*, the Oklahoma Supreme Court sets forth that large-scale dissemination of electronic case data is not allowed. In pertinent part, that order states:

> 1. Public access to electronic case information is available on a case-by-case basis via the internet through the Oklahoma State Courts Network at oscn.net or KellPro's On Demand Court Records at odcr.com.
> 2. Bulk distribution of electronic case information is not allowed.

*In re Pub. Access to Elec. Case Info.*, 2009 OK 78, 271 P.3d 775

In the case at bar, Askins is named in her official capacity as "Director." But, as federal courts consistently have observed, "[s]uits against state officials acting in their official capacities similarly fall within the [Eleventh] amendment's proscription because 'a suit against a state official in his or her official capacity ... is no different than a suit against the State itself.'" *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304 (1989). Plaintiff urges this Court to ignore the fact that Askins' only access to the State materials is by virtue of her official position within the State Supreme Court's organization, and Plaintiff asks this Court to, therefore, compel Askins to act as though she is a named defendant in an *Ex Parte Young* civil rights claim. Askins is not such a defendant; nor is the State, nor is AOC, nor is the Oklahoma Supreme Court. Askins is bound, in particular, by the Oklahoma Supreme Court's order regarding access to electronic case information. Pursuant to the State Supreme Court's order,

case-by-case access to information is already available to Plaintiff.[3] Bulk distribution is prohibited, and Askins is barred from providing such bulk access. Her hands in this matter are tied. This Court should reject Plaintiff's attempt to compel Askins, and should deny Plaintiff's Motion to Compel in its entirety.

## IV. PLAINTIFF'S DEMANDED PRODUCTION LACKS NECESSARY RELEVANCE.

"While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, **discovery from third-parties in particular must, under most circumstances, be closely regulated**." *Premier Election Sol., Inc. v. Systest Labs, Inc.*, No. 09-cv-01822-WDM-KMT, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009) (Emphasis added.). Some courts have recognized an elevated relevance analysis when dealing with non-parties. For example, in the Eastern District for Pennsylvania, a court there observed, "[i]t is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery.") *Zukoski v. Philadelphia Elec. Co.*, No, CIV. A. 93–4780, at *3 1994 WL 637345 (E.D.Pa. Nov. 14, 1994). Similarly, the United States District Court for Arizona said, "[t]his relevance standard is heightened in the context of nonparty subpoenas." *Oyenik v. Corizon Health Inc.*, No. CV1301597PHXSPLBSB, 2014 WL 12787872, at *1 (D. Ariz. Nov. 20, 2014). *See also Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for nonparty discovery ... require a stronger showing of relevance than for simple party discovery.").

---

[3] *See Statement of Mike Siscoe*, [Doc. 210-2, p. 24, ¶¶4 and 5].

As to relevance, generally, "Federal Rule of Evidence 401 defines relevant evidence as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" Fed. R. Evid. 401. Federal Rule of Evidence 402 bars the introduction of any evidence that is not relevant." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1227 (10th Cir. 2000). It is unclear how Plaintiff's Subpoena meets the relevance criterion. Plaintiff's case takes issue with bail offered (or not offered) to him as a criminal defendant in Tulsa County. Nothing about the Subpoena seeks information from AOC tending to make any fact of consequence in the litigation more or less probable.

Additionally, Plaintiff already has public access to much of the information demanded (albeit it not in the format demanded). Further, according to Defendant Judges' response brief ([Doc. 233]) much of the information sought by Plaintiff's Subpoena has already been provided and/or offered to Plaintiff by the Judges. Thus, the subpoenaed information cannot make the existence of any facts as to claims or defenses "more or less probable than it would without the evidence," (Fed .R. Evid. 401) because the substantive information is already at Plaintiff's disposal.

Plaintiff's Motion argues at length that "data" is central to Plaintiff's case, ([Doc. 210, pp. 13-15]), but Plaintiff has put the proverbial cart before the horse. As the Judges' Response ([Doc. 233, p. 6 of 9]) notes, it is not necessary to permit "discovery of marginally relevant information." Plaintiff represents his own interests, and should have access to information about his own criminal cases; the demanded data regarding tens of thousands of other cases across multiple years in Tulsa County are irrelevant. And again, to the extent Plaintiff truly believes the information is relevant, much of it is already available via the Court Clerk's Office

and OSCN. If the Court has already ruled that Plaintiff is entitled to general data about detention practices and that is "relevant and an appropriate subject of discovery pending resolution of the class certification motion. ECF No. 183, at 14-15," there is nothing stopping Plaintiff from obtaining that data from OSCN or the Tulsa County Court Clerk's Office. In either case, the Subpoena to AOC's relevance to the claims and defenses is lacking, and fails to meet the bar set by Rule 26. The Court should quash the Subpoena.

## V.      PROPORTIONALITY OF THE SUBPOENA'S DEMAND IS LACKING.

Discovery must be proportional to the needs of the case. Fed. R. Civ. P. 26. Plaintiff's Subpoena demands a great deal of AOC, but provides little or nothing in terms of helping the factfinder herein decide whether Tulsa County District Courts were offering appropriate bonds or bail to Plaintiff when he was a detainee or criminal defendant. As the Defendant Judges have already noted, "[a]lthough Plaintiff has limited his claims to the six to 10 day period after arrest, the information requested in Plaintiff's subpoena seeks data covering time period occurring well after this period and is therefore not proportional to the needs of the case." [Doc. 233, p. 7 of 9].

### a. Duplicative nature of demand vitiates proportionality of Subpoena.

Plaintiff's Subpoena also appears to demand some information which is duplicative of information which is either already available online to the Plaintiff (and the general public), or is duplicative of information which Plaintiff already possesses. "'Cumulative evidence' is defined as evidence 'which goes to prove what has already been established by other evidence.'" *Smith v. Secretary of New Mexico Department of Corrections*, 50 F.3d 801, 829 (10th Cir. 1995) (quotation omitted). And while Rule 26(b)(2)(C), Fed. R. Civ. P. permits the Court to limit discovery, which is otherwise allowed by the Federal Rules of Civil Procedure, if the

Court "determines that ... the discovery sought is ... cumulative or duplicative[,]" id. (emphasis added), the Court may do so only if "th[at] discovery ... is unreasonably cumulative or duplicative[.]" *id.* Plaintiff's Subpoena fails this metric.

For example, under the "First Category" of materials demanded, Plaintiffs' Subpoena requests a "flat file format . . . or Excel file . . . for cases in Tulsa County District Court, Criminal Division." Under numbered item 1 of that category, the Subpoena then seeks: "(a) County," "(b) case number, "(c) Plaintiffs' names," and (d) "Judge assigned." All cases sought are from Tulsa County, so repeatedly pulling that information for each case is patently duplicative. As for the case number, presumably the Plaintiff in this current civil action has access to his own case numbers from personal knowledge, the personal knowledge of his attorneys (if any), or a simple public search of www.oscn.net. As for "Plaintiffs' names," presumably any Plaintiff knows his or her own name. To the extent the Subpoena meant to ask for the "Plaintiff" in the various criminal actions, those would be the State of Oklahoma. Finally, as to the judge assigned in each case, that information is already available to any Plaintiff in the same manner as would be the various case numbers. Forcing the AOC to compile all of this information is absurd, and manifestly not proportionate to the needs of the instant case.

The "First Category" number 2 of Plaintiff's Subpoena fares no better under close inspection. There, Plaintiff seeks to for AOC to compile, "(a) case number," "(b) case type," "(c) case filed/case creation date," "(d) closed date," and "(e) judge." Two of these subcategories seek exactly the same information as do parts of number 1 ("case number" and "judge"). And, once again, the "case type" and "filed/creation date" would be manifest from the Plaintiff's (or Plaintiff's counsel) underlying knowledge of the criminal prosecutions.

Alternatively, Plaintiff and his counsel could perform their own searches of the publicly available information at www.oscn.net. These types of demands in Plaintiff's Subpoena are unjustified, and unreasonably duplicative. Even if the information sought might, theoretically, be relevant, forcing non-party AOC to gather it is not proportional to the needs of Plaintiff's case against Defendants. Additionally, AOC has no duty to produce materials which are already available to the public.[4]

### b. Probative value of production sought vitiates proportionality of Subpoena.

As one federal court in Texas recently observed, "even if [the requested] information does have some attenuated relevance, permitting its discovery is not proportional to the needs of the case under these circumstances. Under Rule 26(b)(1), not only must evidence be relevant to be discoverable, it must be 'proportional to the needs of the case.'" *Perez v. Boecken*, No. SA-19-CV-00375-XR, 2019 WL 5080392, at *4 (W.D. Tex. Oct. 10, 2019), aff'd, No. SA-19-CV-00375-XR, 2020 WL 96907 (W.D. Tex. Jan. 8, 2020). Similarly, the Third Circuit recently noted that, "[t]he District Court's underline denial of discovery was reasonable. Discovery must always be 'proportional to the needs of the case.' Fed. R. Civ. P. 26(b)(1)." *Reichard v. United of Omaha Life Ins. Co.*, 805 F.App'x 111, 116 (3d Cir. 2020). (Emphasis added.) In *Reichard*, the plaintiff sued her insurance company over denial of coverage, stemming from the company's doctor's assessment of the plaintiff. To wit, *Reichard* "sought information about [the reviewing doctor's] 'batting average': the fraction of benefits denials he affirmed on appeal. In other words, she wanted access to other appeals for which he had served as the medical reviewer. Presumably, she wanted to use evidence of a high denial rate to show that his business-side duties were

---

[4] In addition, some or all of the demanded information has, apparently, already been offered and/or provided to Plaintiff by the named-Defendants in this litigation.

biasing his medical judgment." *Id.* In affirming the trial court's denial of Reichard's access to United of Omaha's data, the Third Circuit said:

> there was evidence that combing its databases for *117 this information would have imposed a substantial burden on United of Omaha. Plus, the information's value to Reichard would have been minimal at best. A low reversal rate would not prove bias or a conflict of interest. Rather, Reichard would have to show that each of those decisions was unreasonable based on the evidence in each file. Doing so would require a mini-trial on each of these other appeals.

*Id.*

In the present case, Plaintiff wants to force non-party AOC to do precisely the same type of database search, retrieval, and production that was denied by the courts in *Reichard* (in a conflict between parties). If Plaintiff if seeking to find "trends" or the "batting average" of one or more Tulsa County judges, then this is inappropriate. The probative value of Plaintiff's Subpoena's requests fails to justify the burden imposed on non-party AOC.

Plaintiff contends that that he will use AOC's data to "test [Defendants'] defense by conducting a statistical analysis to assess whether money bail does in fact lead to lower failure to appear and re-offense rates among similarly situated individuals." [Doc. 210, p. 14 of 27]. Plaintiff argues that "no source other than the Director is available to provide the information Plaintiff requires." *Id.* at 15 of 27. But Plaintiff does have other sources, like the Court Clerk's office and OSCN. And, the type of statistical analysis contemplated by the Subpoena's sweeping demands is precisely the type of thing precluded by the *Reichard* analysis.

## VI.   THE BURDEN IMPOSED BY THE SUBPOENA IS UNDUE.

"It is generally recognized that a non-party involuntarily embroiled in civil litigation should not be subjected to undue burden or significant expense merely by virtue of having received a subpoena." *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, No. 11-CV-01611-MSK-CBS, 2014 WL 1257762, at *21 (D. Colo. Mar. 27, 2014) (*citing Exxon Shipping Co. v.*

*United States Department of Interior*, 34 F.3d 774, 779 (9th Cir.1994) ("The Federal Rules ... afford nonparties special protection against the time and expense of complying with subpoenas."). "In addition to the requirements of relevance and proportionality, discovery requests to third parties are subject to additional restraints." *New Mexico Oncology v. Presbyterian Healthcare Servs.*, No. 12-526 MV/GBW, 2016 WL 3452757, at *1 (D.N.M. May 10, 2016). First, the requesting party has the affirmative duty to "take reasonable steps to avoid imposing undue burden or expense" on the subpoenaed party. Fed. R. Civ. P. 45(d)(1). If the subpoena nonetheless "subjects a person to undue burden," then the court must quash or modify it. Fed. R. Civ. P. 45(d)(3). The Subpoena here fails to meet the relevance and proportionality requirements, and it fails to meet the restriction against undue burden.

Plaintiff's Subpoena seeks materials across more than thirty (30) categories and subcategories from non-party, AOC, with no benefit to AOC.[5] The Subpoena seeks a variety of unspecified materials such as "*[a]ny* references" or "tie-ins" to "*any* docket entries to underlying … data." [Doc. 210-2, pp. 30-32]. (Emphasis added.) The Subpoena also seeks to command AOC to format its materials in certain ways, such as "delimited flat file" or "Excel file extraction," (regardless of how AOC might store those materials in the usual course of business), and that any production should be parceled into "of reasonable size to open for analysis." (*I*)*d.* The Subpoena fails to define what "reasonable" means, or to define the analysis, by whom, using which system(s), expertise, or review tool(s).

---

[5] The Subpoena includes two broad categories of materials sought, one of which by itself has at least thirty-two (32) parts and subparts, spanning a nine hundred and fifty-nine (959) day time span. (March 1, 2018 to "present," with October 15, 2020 being the "present" date of service upon AOC).

The burden Plaintiff seeks to have this Court impose on AOC is great. Plaintiff's Subpoena asks AOC to produce an enormous amount of data, pulled from tens of thousands of criminal files in Tulsa County. According to the sworn[6] statement of Ms. Mike Siscoe, AOC does not maintain the data in the format demanded by the Subpoena, and does not have an existing process for compiling, reviewing, and producing such records due to the Oklahoma Supreme Court's prohibition against bulk data distribution. AOC would be required to divert scarce resources to determine methods and processes to comply with the Subpoena. AOC has limited resources to do so, and certainly not in the time limit set forth. The demand on State resources would be significant. (*See generally*, *Statement of Mike Siscoe*, [Doc. 210-2, pp. 25-26].)

## VII.   THE OKLAHOMA SUPREME COURT'S POLICY CONSIDERATIONS AND ADMINISTRATIVE DECISIONMAKING MUST BE PROTECTED.

Plaintiff's Subpoena would also have the AOC defy a specific directive of the Oklahoma Supreme Court. Bulk distribution of electronic case information (such as that demanded by Plaintiff's Subpoena) is prohibited by order of the Oklahoma Supreme Court. *In re Pub. Access to Elec. Case Info.*, 271 P.3d 775 (Okla. 2009). The Oklahoma Supreme Court's prohibition against release of bulk data involves significant policy considerations. The criminal case file information on the OSCN website, and the criminal court files maintained by the Tulsa County Court Clerk, are as easily accessed by the public. Meanwhile, each district court performs ongoing management of its case information, such as matters that are confidential,

---

[6] By contrast, Plaintiff feebly offers the non-notarized "declaration" of Michael Kearney. Mr. Kearney labels himself as a "litigation attorney" in online social media profiles and is apparently an attorney with one of the law firms supporting Plaintiff's underlying litigation. Counselor Kearney's statement would not be admissible at trial, as it is hearsay. Further, as the Oklahoma Court of Civil Appeals has observed, "(unsworn statements of counsel have no probative value)."*Moore v. Oklahoma Employment Sec. Comm'n*, 2013 OK CIV APP 46, ¶ 9, 301 P.3d 885, 888.

sealed, expunged, reduced, and dismissed. Criminal justice principals and statutory mandates require that matters which are publicly available at one point may later be affected by expungement, dismissal, acquittal, reduction of charges, etc. The case type known as "NF" consists of "not filed" cases. This case type includes arrests where no charges are filed. To maintain accurate public information regarding those involved in the criminal justice system, each district court must regularly update its data and properly manage the court record. The bulk data sought by the Subpoena undermines this important, ongoing obligation of the judiciary to the citizens of Oklahoma in this regard.

Additionally, criminal case data often may include personal identifiers, addresses, financial information, and information regarding victims, witnesses, jurors, and other sensitive material that cannot be easily identified or segregated, and which the Oklahoma Supreme Court has determined should NOT be distributed in bulk electronic format. The bulk data sought by Plaintiff's Subpoena undermines the ongoing obligation of the judiciary to the citizens of Oklahoma in this regard.

Plaintiff's Subpoena seeks the release of an extraordinary amount of electronic case information spanning almost a three-year period. This includes the names of all criminal defendants; all counts; all dispositions; criminal cases that are not filed; the dates, codes and text of *every docket entry* entered in thousands of cases; thousands of traffic citation cases, and presumably an electronic copy of *every document filed* in tens of thousands of Tulsa County criminal cases. Thus, temporal limits, data volume restrictions, personnel limitations, finite AOC resources, and the Oklahoma Supreme Court's directive against such production would converge to place undue burden upon the AOC.[7]

---

[7] *See, generally, Statement of Mike Siscoe,* [Doc. 210-2, pp. 25-26].

## CONCLUSION

Neither Askins, nor the Administrative Office of the Courts, nor the State of Oklahoma is a party to this litigation. The State did not set, deny, offer, revoke, or limit any of the Plaintiff's bail. Plaintiff's Subpoena seeks much data that is already publicly available online or at court clerk offices, and is made available free of charge at Oklahoma taxpayer expense. Plaintiff's Subpoena seeks information which has already been provided, or offered, by the named Defendant Judges. Plaintiff's Subpoena also seeks data that is irrelevant to the claims and defenses in this lawsuit. Plaintiff's Subpoena fails in its demands to meet the most basic proportionality analysis. Plaintiff's Subpoena also seeks data that is protected, sensitive, and has been determined by the Oklahoma Supreme Court to be unfit for dissemination. Plaintiff's Subpoena seeks to impose an undue burden on AOC resources. Finally, as the Judicial Department of the sovereign State of Oklahoma, the Supreme Court and its AOC are immune to Plaintiff's subpoena. The Administrative Office of the Courts, Askins, and the State of Oklahoma respectfully asks this Court to quash Plaintiff's Subpoena, and enter an order prohibiting similar subpoenas in the future.

Respectfully submitted,

*/s/* Jeb Joseph
**JEB JOSEPH, OBA # 19137**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 N. E. 21st Street
Oklahoma City, Oklahoma 73105
Telephone:    (405) 521-3921
Facsimile:     (405) 521-4518
Email: Jeb.Joseph@oag.ok.gov
*Attorney for non-parties, Askins and Administrative*
*Office of the Courts*

~ 23 ~

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day December 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the Court's ECF System to all registered parties.

*/s/* Jeb Joseph
Jeb Joseph