IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD FELTZ, on behalf of himself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY, et al.,<br><br>Defendants. | Case No. 18-cv-0298-CVE-JFJ |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO JUDICIAL DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Judicial Defendants seek an order barring Plaintiff from discovery into two important, discrete matters that arose late in the discovery process. Judicial Defendants filed their motion for a blanket protective order against further discovery while the meet and confer process was ongoing; most of the discovery requests that they describe in their motion have been resolved by the parties. Only two issues remain. The first concerns Plaintiff's entitlement to ask for information that he had no reason to believe existed before he deposed a defense witness several days before the disputed request was served. The second concerns Plaintiff's ability to determine whether the Judicial Defendants possess data that Plaintiff has sought for months.

Judicial Defendants ask the Court to bar inquiry into either topic because Plaintiff served a final set of discovery thirty-two, rather than thirty-three, days before the close of fact discovery due to a good-faith miscalculation by Plaintiff's counsel. The Court should not allow Judicial Defendants to hide behind a non-prejudicial technicality to avoid producing relevant information that Plaintiff has diligently sought.

1

### I.     Factual and Procedural Background

Named Plaintiff Richard Feltz filed this putative class action in June 2018 alleging that Judicial Defendants' detention practices violate both the Due Process and Equal Protection clauses of the United States Constitution. ECF No. 2 Counts One, Two. Over the following two years, the case proceeded in fits and starts due to the dismissal and reinstatement of the original complaint, *see* ECF Nos. 40, 48; the entry of extended stays, requested by Judicial Defendants or ordered *sua sponte*, *see* ECF Nos. 19, 61, 64, 118; and a litigated dispute over plaintiff's entitlement to conduct noticed depositions, *see* ECF No. 183.

After two years of delays, the Court entered a scheduling order on June 1, 2020, under which fact discovery would proceed until November 2, 2020. Between June 2018 and June 2020, Judicial Defendants had amended their pretrial detention procedures multiple times. ECF No. 226-1 ¶ 5. Updated discovery requests necessarily followed. The time for fact discovery was subsequently extended three times, until January 25, 2021, without objection from any party. The extra time was needed to accommodate deposition scheduling difficulties due to COVID-19 and scheduling conflicts for one of the Judicial Defendants, as well as to allow for defendants Tulsa County Commissioners and the Sheriff ("County Defendants") to complete their production of documents and for plaintiff to review those documents. *See* ECF Nos. 199, 207, 215. The parties were finally able to accommodate COVID-19 and scheduling difficulties and conduct depositions between December 16 and 18, 2020 and between January 19 and 22, 2021.[1]

On December 24, 2020, three business days after Plaintiff's counsel completed their first set of depositions, and 32 days before the close of fact discovery, Plaintiff served all defendants

---

[1] Defense counsel have yet to take Mr. Feltz's deposition. That is currently scheduled for February 19, when Mr. Feltz has agreed to appear even though fact discovery has concluded. Defense counsel scheduled Mr. Feltz's deposition for the very end of fact discovery, in January 2021, but he fell ill, and he is now in quarantine for COVID-19 exposure.

with his Fourth Discovery Requests by both U.S. mail and email. ECF No. 235-7. Each of the requests sought limited information that recent deposition testimony and/or briefing with the Court had revealed to be missing from defendants' productions to date. Several of the requests sought information from Judicial Defendants, while others sought information from the County Defendants. In serving the requests, Plaintiff inadvertently failed to account for the additional three days required for service by mail under Fed. R. Civ. P. 6(d), and so served the requests one day late. Had the requests been served one day earlier, on December 23, responses would have been due 33 days later, on January 25, 2021, before the close of discovery.[2]

On December 30, 2020, defense counsel notified Plaintiff's counsel by email that they objected to the requests on the grounds of untimeliness. The parties conferred by telephone on Friday, January 8, 2021. At the conclusion of the conference, defense counsel agreed to determine whether any outstanding documents could be produced, and Plaintiff's counsel agreed to determine whether to forego any of the requests. In the following days, Plaintiff's counsel and counsel for the County Defendants successfully negotiated a mutually agreeable response to each request relevant to those defendants. By contrast, on the first business day after the parties' telephone conference, Monday, January 11, 2021, Judicial Defendants filed their motion for a blanket protective order. ECF No. 235.

After the motion was filed, Plaintiff and Judicial Defendants continued their discussion via email correspondence, and the dispute has been substantially narrowed. Of the requests, which judicial defendants have copied into their motion in their entirety, ECF No. 235, at 4-6, only the

---

[2] Judicial Defendants take umbrage with the fact that Plaintiff issued his request on December 24 by asserting that December 24 and 25 were state holidays, followed by the weekend, and so they did not receive the discovery request until December 28, 2020. ECF No. 235 at 7. This is immaterial; Rule 6(a) specifically provides that, for purposes of computing time "intermediate Saturdays, Sundays, and legal holidays" should be counted. Fed. R. Civ. P. 6(a)(1)(B).

3

first two Interrogatories, Requests for Production Nos. 37, 39, 41, and 42, and two Requests for Admission were directed at the Judicial Defendants. In email correspondence following the parties' meet and confer, Plaintiff stated that he would not pursue his two requests to admit. Further, based on Judicial Defendants' representations that they had previously fully responded to Requests for Production Nos. 37 and 39 and Interrogatory 2, Plaintiff notified Judicial Defendants that he did not intend to further pursue these requests. Therefore, the only requests left unresolved are Plaintiff's Interrogatory No. 1 and Request for Production No. 42. *See* ECF No. 235-7. The Court should allow the completion of discovery with respect to each.

## II. Argument

### A. Interrogatory No. 1

Judicial Defendants should be required to respond to Interrogatory 1. The request is not burdensome. It asks the judicial defendants to supplement incomplete testimony given by Judge William Musseman at his deposition on December 16, 2020. In that deposition, Judge Musseman was asked about his experience creating a pre-set bond schedule for Tulsa County, which dictates how much monetary bond is required for a person who has been arrested to purchase his release from jail, based solely on the offenses alleged by the arresting officer. This bond schedule, and its reliance on monetary amounts, is at the heart of plaintiff's equal protection challenge. Judge Musseman was asked whether he had included on the bond schedule personal recognizance as the preset release condition for any offense. He testified he did not because he believes that there is an Oklahoma statute that limits the ability of a presiding judge to set bond schedule amounts that default to personal recognizance. Musseman Deposition at 143:16-144:9.[3] When asked what that

---

[3] Q: When you were presiding judge over the bond schedule and revising the bond schedule at that time, were there any offsnese where personal—being released on personal recognizance was the default? A: I don't tink so. Q: And why is that the case? A. That has been a topic of discussion. And one fo the things that – we've looked to other states that have done that. California is a good

limiting statute was, he responded that he did not know in that moment, without the statutes at hand. *Id.*[4] Plaintiff's Interrogatory therefore asks defendants to identify any such statutes or other legal authority. It is designed to elicit the information that Judge Musseman alluded to but could not provide at his deposition.

Plaintiff is entitled to know what Judge Musseman was referring to in his testimony. This is a factual question regarding the circumstances that Judge Musseman perceived himself to be operating within during his time as presiding judge, responsible for issuing the bond schedule. *See Alvarez v. S. Ko*, 2018 WL 340234, at *2 (S.D. Cal. Jan. 9, 2018) (ordering party to answer interrogatory asking the party to identify "any statute, ordinance, rule or policy or regulation that support[ed]" the party's contention that the party was not the supervisor of another defendant); *Jones v. City of Albuquerque*, 2005 WL 8163702, at *6 (D.N.M. Oct. 24, 2005) (ordering party to respond to interrogatory near the end of fact discovery seeking identification of "the

---

example. And those states have enabling statutes that allow for it. We could not find that in Oklahoma. We found the pretrial rlease in Section 11—or I think it was Section 1105, if I – if I recall correctly. And that at least allows for the presiding judge by standing orer to characterize a classification of charges to be considered for pretrial, which is the closest I could find as a way to get to PR, because we're looking at conditions other than monetary release. . . . Musseman Tr. 50:9-51:7. Q: So it's your – is it fair to say that you do not believe that the presiding judge of Tulsa County has the authority to have standing PRs for certain categories fo offense on the bond schedule? A: Yes, ma'am. . . . Q: And what is that belief based on? A: What I just explained. Q: So your evaluation of the statute; is that fair? A: Yes ma'am. *Id.* at 53:15-54:2.

[4] Q: When I say "bail schedule," what does that mean to you? I going to make sure we're using the same language. A: I might get my statutes wrong. I don't have anything in front of me. Bt we have—I think bail schedule is the preset bails – bail schedule. I think the statuteory authorization is something like 1105. . . ." Musseman Tr. at 35:2-15. *See also id.* at 143:16-144:9 ("Q: So— and just to go back to that from earlier today, it's your understanding that this state, which I'll check on the statute number, but we together today have been referring to as 1105, limits the presiding judge's ability to have certain offenses be default PRs on the bond schedule? A: I—I'm not confident saying that. I—I think you used the word 'PR' where I would use pretrial. I think 1105 is pretrial. Q: So is there any statute which limits the ability of the presiding judge to set bond schedule amounts that are default PRs? A: Yes, there is. Q: And what is that? A. I have no idea right now. I --- sorry. I couldn't tell you, Q: We can—I'm sure there's some other method of discovery. We can do a follow up question.").

specific statutes, policies, case law, and other legal standards" the city was using to justify its position that it could refuse to return money to plaintiff when he was the only identified claimant).

Plaintiff issued the interrogatory with due diligence. Judge Musseman's deposition occurred on Wednesday, December 16. During that week, Plaintiff completed five depositions, finishing on the evening of Friday, December 18. Plaintiff's counsel then spent three business days—Monday, December 21 through Wednesday, December 23—reviewing the testimony from five depositions and comparing it to the information already produced. On Thursday, December 24, having concluded that the information that Judge Musseman was unable to provide at his deposition had not previously been provided, Plaintiff issued Interrogatory No. 1. Judicial Defendants fault Plaintiff for not having issued the interrogatory earlier in discovery, but Plaintiff could not have anticipated Judge Musseman's testimony. Nothing in Judicial Defendants' prior filings or discovery responses suggested that Judge Musseman failed to authorize standing non-monetary release conditions because he believed there were limitations on his authority to do so. In fact, some later-produced discovery shows system actors working to add personal recognizance conditions to the bond schedule as if it was fully within the district court's authority to do so. Plaintiff was not previously aware of Judge Musseman's position, previous discovery gave no indication of it, and Plaintiff could not reasonably have asked for this information sooner.

Plaintiff tried in good faith to serve the interrogatory within the thirty-day discovery response time period, and his inadvertent failure to do so makes no meaningful difference and causes no prejudice. Courts have excused the lateness of such requests in similar instances. *See Lykins v. CertainTeed Corp.*, 2012 WL 3578911, at *3 (D. Kan. Aug. 17, 2012) (excusing the "slight delay" caused by a discovery request which was two-days untimely under Rule 6(d)); *Citgo Petroleum Corp. v. Bulk Petroleum Corp.*, 2010 WL 11693082, at *2 (N.D. Okla. March 31, 2010)

(denying a motion for protective order and noting that "[h]istorically, the view in this District has been that written discovery should be served 30 days before the discovery deadline); *Bell v. City of Topeka, Kansas*, 2007 WL 1237921, at * 3 (D. Kan. Apr. 26, 2007) (granting untimely discovery request where a party learned of an apparently relevant document during a deposition which occurred seven days before the close of discovery). The Court should follow their example here and require discovery of important information.

### B. Request for Production No. 42

Judicial defendants should likewise not be excused from answering Document Request 42, as this is not a last-minute request, but a continuation of an effort that Plaintiff has been engaged in for months: namely, to retrieve data relevant to the Tulsa District Court's pretrial detention policies, practices, and procedures and their effect on individuals in Tulsa County's criminal justice system. The Document Request is designed to test Judicial Defendants' claim, first made in October 2020, that they do not have access to the data Plaintiff seeks. On June 2, 2020, Plaintiff requested court data from Judicial Defendants that is necessary for establishing plaintiff's due process and equal protection claims. ECF No. 210-4, at 2-3; *see also* ECF Nos. 210, at 7-9, and 237, at 1-5 (explaining importance of data). Judicial Defendants responded to the data request on July 1, 2020; they objected on several grounds, including that the data would be burdensome to produce—but they did *not* assert that the data was beyond their possession, custody or control. Def. State Judges' Resps. to Pl.'s Second Set of Reqs. for Produc. of Docs. to All Defs., attached as **Exhibit A**, at 5-6.

Plaintiff negotiated the data request in good faith with Judicial Defendants from July 2020 until October 2020. During that time, Plaintiff obtained from defense counsel a detailed understanding of the data maintained and the form in which it was maintained and was able to

7

substantially narrow and better define the information he sought. According to defense counsel's representations, they negotiated with Plaintiff in consultation with the Administrative Office of the Courts ("AOC"), which essentially serves as the Judicial Defendants' information technology provider.[5] In early October, however, defense counsel abruptly ended this collaborative process, announced that their clients could not access their own court's data, and took the position that Plaintiff could obtain the data only by subpoenaing the AOC. Plaintiff accordingly subpoenaed AOC's Director, Jari Askins, and began once again a good faith negotiation for access to the data, this time with a new lawyer from the Office of the Oklahoma Attorney General, now acting as Ms. Askins's counsel. After attempting to resolve the matter through further discussions with Ms. Askin's counsel, and after learning more about the manner in which court data is maintained to ensure that Plaintiff's request was properly tailored, Plaintiff's counsel moved on November 25, 2020, to compel production in accordance with the subpoena. That motion is currently pending. *See* ECF Nos. 210, 233, and 237. To Plaintiff's surprise, in addition to raising arguments about burden and proportionality, Ms. Askins has argued that she is a distant third party, somehow protected by sovereign immunity, and should not have a subpoena enforced against her. *See generally* ECF No. 234.

Plaintiff now finds himself in the unenviable position of having conferred with Judicial Defendants and the AOC for several months in good faith, only to be caught in the crossfire of

---

[5] The Tulsa County District Court's presiding judge, a defendant, is responsible for maintaining court records. 20 O.S. Ch. 1, App'x 2, Rule 2. He carries out this duty by using the data management system provided by the Oklahoma Court Information System ("O.C.I.S."), which the Director of AOC is statutorily required to maintain. 20 O.S. § 1315(A)(1), (2); *see also* 20 O.S. Ch. 18, App'x 2, Rule 1 (O.C.I.S. rules are "designed to establish and maintain a court information system for the purpose of providing data processing services to courts"); Rule 2 (Director of AOC supervises the state courts' Management Information Services to "establish, manage, operate, and maintain the Oklahoma Court Information System," including the Oklahoma Supreme Court Networks [O.S.C. N.] and "a case-tracking system for District Courts . . . of the State of Oklahoma").

both AOC and Judicial Defendants' assertions that *neither* entity should be required to provide the necessary data *even if* it is relevant and proportional and can be produced with minimal burden. Plaintiff therefore served Document Request No. 42 to clarify and reiterate his right to probe the relationship between AOC and Judicial Defendants, and the extent of Judicial Defendants' access to their own data, in the event that the Court absolves AOC of any obligation to produce the data unquestionably within its possession and control.

Judicial Defendants' compliance with Request No. 42 may be unnecessary. If Ms. Askins will be ordered to produce any data found to be relevant and proportional, Plaintiff has no reason to contest Judicial Defendants' representation that they do not have access to the data. In that case, discovery into the validity of that representation will be unnecessary. However, if the Court intends to deny Plaintiff's motion to compel Ms. Askins' compliance with the subpoena in light of her asserted status as a third party or her invocation of sovereign immunity, Plaintiff should not be required to accept Judicial Defendants' assertion that they cannot obtain and produce the data themselves without further inquiry into the relationship between the defendants and AOC. *See Buckley v. Starwood Hotels & Resorts Worldwide, Inc*., 2009 WL 3531647, at *4, n.6 (E.D. Mo. Oct. 27, 2009) (noting on motion to dismiss based partially on access to evidence, that plaintiff had shown at least plausible relationship of some kind between defendant and other entity such that discovery into nature of relationship was proper); *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 519-21 (D. Kan. 2007) (holding custody includes the right to demand access to a document); *Resolution Tr. Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 109-11 (D. Colo. 1992) (holding party had custody or control over documents notwithstanding claim by defendant that regulations forbade it from turning over the documents because defendant was entitled to demand access to the documents).

Plaintiff is entitled to the discovery necessary to evaluate and enforce responses to a document request issued months ago in light of the contentions made by the AOC at the end of December. Plaintiff's ability to pursue essential data that he has diligently fought for months should not be hamstrung by a good-faith technical error that, itself, has caused no prejudice.

### III. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Judicial Defendants' Motion for Protective Order. ECF No. 235.

Dated: February 1, 2021

Respectfully submitted,

/s/ Hayley Horowitz
Hayley Horowitz
Phoebe Kasdin
STILL SHE RISES, TULSA
567 E. 36th Street North
Tulsa, OK 74106
hayleyh@stillsherises.org
(918) 392-0867

Charles Gerstein*
Alexandria Twinem*
Ryan Downer*
CIVIL RIGHTS CORPS
1601 Connecticut Avenue NW
Suite 800
Washington, DC 20009
charlie@civilrightscorps.org
alexandria@civilrightscorps.org
ryan@civilrightscorps.org
(202) 844-4975

Allison Holt Ryan*
Michelle Kisloff*
Stevie DeGroff*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW

Case 4:18-cv-00298-CVE-JFJ   Document 246 Filed in USDC ND/OK on 02/01/21   Page 11 of 12

Washington, DC 20004
allison.holt-ryan@hoganlovells.com
michelle.kisloff@hoganlovells.com
stevie.degroff@hoganlovells.com
(202) 637-5600

Vassi Iliadis*
HOGAN LOVELLS US LLP
1999 Avenue of the Arts, Suite 1400
Los Angeles, CA 90067
vassi.iliadis@hoganlovells.com
(310) 785-4600

Gary L. Yeung*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
gary.yeung@hoganlovells.com

*Attorneys for Plaintiff*

*\*Admitted to practice pro hac vice*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of February 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the Court's ECF System to all registered parties.

/s/ Hayley Horowitz
Hayley Horowitz
