**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1) Richard Feltz, and<br>2) Ashton Lee Dennis, on<br>behalf of themselves and all others similarly<br>situated,<br><br>           Plaintiffs,<br><br>  vs.<br><br>1) Board of County Commissioners of the<br>County of Tulsa; 2) Vic Regalado, Tulsa<br>County Sheriff, in his Official Capacity;<br>3) Tammy Bruce, 4) Stephen Clark, 5) Julie<br>Doss, 6) Theresa Dreiling, 7) Owen Evans,<br>8) Mary Ann Godsby, 9) David Guten, 10) Bill<br>Hiddle, 11) Ann Keele, 12) James Keeley,<br>13) Deborah Ludi Leitch 14) Anthony J. Miller,<br>15) Kevin C. Morrison, 16) Kirsten Pace,<br>17) Wilma Palmer, 18) April Seibert,<br>19) Rodney B. Sparkman, and 20) Tanya Wilson,<br>in their capacities as Tulsa County Special<br>Judges; and 21) William LaFortune, in his<br>capacity as  Presiding Tulsa County District<br>Court Judge,<br><br>           Defendants. | Case No. 18-cv-00298-CVE-JFJ<br><br>**SECOND AMENDED<br>CLASS ACTION COMPLAINT** |

**Introduction**

1.     In 1980, Tulsa County concluded that "it violated a defendant's 14th

Amendment rights to be held in jail if they were too poor to post bail."[1]

---

[1] Tulsa County Court Services, History,
https://www.tulsacounty.org/Tulsacounty/dynamic.aspx?id=642 (last visited, June 4, 2018)

2.      In 2018, hundreds of people are detained in the Tulsa County Jail every day solely because they cannot afford to purchase their liberty.

3.      At the time their respective initial complaints were filed, Named Plaintiffs are or were confined in Tulsa County jail cells solely because they do or did not have enough money to purchase their pretrial release. They are or were jailed pursuant to Tulsa County's wealth-based detention scheme, which jails people who are unable to meet secured financial conditions of release. No official has made findings concerning any Plaintiffs' ability to pay or made any findings concerning alternative conditions of pretrial release or the necessity of pretrial detention. Because they cannot or could not access the payments Defendants require for their release, the presumptively innocent Plaintiffs will be or were detained in the Tulsa County Jail for days or longer.

4.      On behalf of themselves and all others similarly situated, the named Plaintiffs seek declaratory and injunctive relief against the Defendants. After arresting a person, Defendants require secured financial conditions of release, almost always according to a predetermined chart of offenses and corresponding dollar amounts. They do not provide any process for assessing a person's ability to pay or determining the necessity of imposing monetary conditions of release in any individual case. At the time the initial complaint was filed, people who were arrested and were unable to pay preset cash deposits to secure their release had to remain in jail cells for six or more days before an arraignment, which was the first appearance in front of a judicial officer. Those who could not afford private counsel were not appointed counsel during the initial period of wealth-based detention, and no lawyer appeared with them at arraignment. Defendants refused to address conditions of release at arraignments.

5.      In response to the filing of the initial complaint in this lawsuit, the Defendant

Presiding Judge of the Tulsa County District Court created a "bond docket" in October 2018, allowing some people to appear before a Special Judge after their arrests and before their arraignments. Despite creation of the bond docket, Defendants continue to detain putative class members from arrest to arraignment without offering a due process-compliant forum where they are able to consult with counsel, where they can present evidence concerning their ability to pay and the necessity of their detention, and where judicial officers make findings based on the evidence either that any pretrial conditions imposed will allow for immediate release, or that their ongoing detention serves a compelling governmental interest that no other conditions can satisfy.  People who are detained on unaffordable money bail continue to be jailed up to six or more days before an arraignment. People who appear on the bond docket have counsel momentarily assigned to them for purposes of that appearance, but they are not guaranteed and routinely are not given an opportunity to communicate with those lawyers.  The representation lasts no more than several minutes at most, and arrestees are otherwise without access to appointed counsel during the initial, pre-arraignment period of wealth-based detention.

6.     Defendants' routine practice of requiring people to pay unattainable amounts of money to secure their release is the equivalent of issuing orders of detention against them, but without any of the substantive findings or procedural safeguards constitutionally required for orders of detention. As a result of Defendants' policies, people too poor to pay for their release are jailed for days, weeks, or months. This automatic pretrial detention of poor people has devastating consequences: people who are arrested lose their jobs, are evicted from their homes, endure separation from their children and loved ones, and face pressure to plead guilty as soon as possible because that is often the quickest way to terminate their unlawful confinement. Plaintiffs seek an order declaring that this wealth- based detention scheme violates the Sixth and

Fourteenth Amendments to the United States Constitution and an order enjoining Defendants from continuing its operation.

## Nature of the Action[2]

7.     Defendants have a policy and practice of refusing to release arrested people from custody unless they pay money. The amount of money required is predetermined in almost all cases by an offense-based, secured money-bail "schedule." Defendants require payment of a generic, predetermined amount without considering a person's ability to pay or the necessity of imposing secured money bail, and without making the substantive findings or providing the procedural safeguards that the United States Constitution and Oklahoma law require to ensure that pretrial detention is necessary to further a compelling government interest.

8.     This policy and practice results in the systemic wealth-based detention of arrested people who are too poor to pay financial conditions of release. As a result, the majority of people incarcerated in the Tulsa County Jail are pretrial detainees: A substantial majority of people incarcerated in the Tulsa County Jail on an average day are awaiting adjudication of state misdemeanor or felony charges. They are presumptively innocent.

9.     As a result of the Defendants' wealth-based pretrial detention policies and practices, as of August 2017, Tulsa County's pretrial detention rate was 18 percent higher than the statewide rate and 83 percent higher than the national average.

10.     Individuals who are living in poverty bear the weight of this systemic illegal detention. Women and people of color, who are more likely to be poor, are most profoundly affected. The disproportionate incarceration of people of color in Tulsa and the unusually high

---

[2] Plaintiffs make the allegations in this Complaint based on personal knowledge as to matters in which they have had personal involvement and on information and belief as to all other matters.

rates of incarceration for women derive in part from Defendants' decision to automatically condition release on monetary payment.

11.     People detained before trial face worse case outcomes than those able to pay for their freedom, including higher rates of conviction and longer sentences. They also endure overwhelming effects on their personal lives—on their families, their employment, and their physical and mental health.

12.     Tulsa County's finances have been burdened by Defendants' pretrial detention policies. The jail costs taxpayers more than $30 million a year. To fund jail operations and jail expansion, the County imposes two different sales taxes, and provides additional funding.

## Jurisdiction and Venue

13.     This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, et seq., and the Sixth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

14.     Venue in this Court is proper under 28 U.S.C. § 1391.

## Parties

### Plaintiffs

15.     Plaintiff Richard Feltz is a 48-year-old man. He lives in Tulsa County.

16.     Plaintiff Ashton Lee Dennis is a 34-year-old man.  He lives in Tulsa County.

### Defendants

17.     Defendant Board of Commissioners of the County of Tulsa ("Tulsa County Board") is a municipal corporation organized under the laws of the State of Oklahoma. The Tulsa County Board maintains policies of jailing people who are unable to pay generic money bail

amounts, usually predetermined by the County's bail schedule. The Tulsa County Board also maintains a policy of delaying the appointment of counsel for people who are unable to pay generic money bail amounts and denying counsel at legal proceedings where pretrial release and pretrial detention determinations are made.

18.     Defendant Vic Regalado is the Tulsa County Sheriff. The Tulsa County Sheriff is a County official, the head of the Tulsa County Sheriff's Office, and the keeper of the County Jail. The Tulsa County Sheriff is the final policymaker for the jail in Tulsa County. The Sheriff's Office detains arrested people who cannot pay a predetermined secured money bail prior to any individualized hearing. The Sheriff's Office continues to detain arrested people who cannot pay a secured money bail amount after an individualized hearing, even though there has been no inquiry into or findings concerning ability to pay, consideration of alternatives conditions of release, or findings concerning the necessity of pretrial detention. Defendant Regalado is sued in his official capacity.[3]

19.     Tammy Bruce, Stephen Clark, Julie Doss, Theresa Dreiling, Owen Evans, Mary Ann Godsby, David Guten, Bill Hiddle, Ann Keeley, Deborah Ludi Leitch, Anthony Miller, Kevin C. Morrison, Kirsten Pace, Wilma Palmer, April Seibert, Rodney B. Sparkman, and Tanya Wilson are Defendant Special Judges for the District Court of Tulsa County. Defendant Special Judges are appointed by Tulsa County district court judges. They are authorized by state law to perform the duties of a magistrate in criminal cases. Defendant Special Judges' magistrate duties include making

---

[3] The Tulsa County Sheriff is a final policymaker for Tulsa County's post-arrest jailing policies and practices. Defendant Regalado is named separately from the County as a defendant in the event that the Court concludes that he acts on behalf of the state in this capacity, and thus is subject to prospective relief. If the Court, however, agrees that he is a final policymaker for the County, naming him individually is redundant of a suit against the County.

probable cause determinations and bail determinations. Defendant Special Judges make bail determinations in three contexts. First, Defendant Special Judges review and approve arrest warrants. As part of this process, Defendant Special Judges specify conditions of release for the person whose arrest is authorized by each warrant. Second, Defendant Special Judges determine conditions of release for anyone who is arrested without a warrant on a charge that is not included in Tulsa County's secured bail schedule. Third, Defendant Special Judges review the monetary amounts that have been imposed according to the secured bail schedule and have the authority and ability to adjust those money bail amounts or impose alternative release conditions. Defendant Special Judges rarely, if ever, alter monetary amounts. In all of these contexts, when making bail determinations, Defendant Special Judges do not routinely conduct any inquiries into, and do not make any findings concerning, people's ability to pay money bail or the necessity of pretrial detention. They do not provide adequate hearings: they do not provide notice of the critical issues at the hearing, an opportunity to be heard or to confront evidence, findings by any legal or evidentiary standard, or an explanation of reasons on the record. They also do not provide counsel before the hearings. Defendant Special Judges are sued in their capacity as Special Judges for declaratory relief only.

20.     In addition to those duties, the arraignment Special Judge preside over arraignments. People who are arrested and jailed pretrial and who cannot afford to purchase their release are detained in jail cells until they appear at arraignment six or more days after arrest. The arraignment Special Judge refuses to address conditions of release at arraignment and she does not conduct any inquiry into or make any findings concerning a person's ability to pay money bail or the necessity of pretrial detention.

21.     Since a bond docket was created in October 2018, the Special Judges preside over

bond docket appearances according to a rotating schedule. People who are arrested and jailed pretrial and who cannot afford to purchase their release may appear on the bond docket, usually within one or two days after an arrest. The bond docket Special Judge does not notify people appearing on bond docket of the importance of the hearing or their entitlement to present argument and evidence; they do not offer them an opportunity to consult with an attorney before or during their appearances; and they make no findings concerning the necessity of detention before imposing monetary conditions of release that result in continued detention.

22.      Defendant William LaFortune is a district court judge for the District Court for Tulsa County and the Presiding Judge for Oklahoma's 14th Judicial District, which encompasses Tulsa County. The Presiding Judge, has general administrative, rulemaking, and supervisory authority over the District Court for Tulsa County. The Presiding Judge promulgates the secured money-bail schedule that is used to determine the financial condition of release for almost all people arrested in Tulsa County. The Presiding Judge also promulgates the Local Criminal Rules, which specify the procedures by which bail is set and probable cause determined, the timing and conduct of arraignments, and the appointment of counsel. The Presiding Judge created the bond docket by administrative order, effective October 2018. The Presiding Judge is sued in his capacity as a district court judge for the District Court for Tulsa County and the presiding judge for Oklahoma's 14th Judicial District.[4]

**Factual Allegations**

---

[4] In 2016, Tulsa County sought the assistance of the Vera Institute of Justice ("Vera")—a national policy and research organization that partners with local governments to improve their criminal legal processes—to examine drivers of growth and overcrowding at the Tulsa County jail and devise strategies consistent with the County's public safety goals to reverse that growth. Three of the named Defendants— Sheriff Vic Regaldo, Special Judge Dawn Moody, and District Court Judge William Musseman—along with a number of other Tulsa County leaders and officials participated in the process. Vera concluded that Defendants base pretrial release decisions, whether someone is incarcerated or at liberty while their case is proceeding, largely around money: whether someone can afford the bail amount or not.

**A. The Named Plaintiffs Are in Jail Because They Are Unable to Pay the Financial Condition Required for Their Release**

23.     Plaintiff Richard Feltz is a 48-year-old man.  He lives in Tulsa County.  He is currently unemployed.

24.     Mr. Feltz was arrested on Saturday, June 2, 2018, for an alleged felony offense. Upon arrest, he was taken to the Tulsa County Sheriff's Office, where a Tulsa County Sheriff's Officer mistakenly told him that he would have to pay $75,000 to be released from jail.

25.     Mr. Feltz was transferred to the Tulsa County Jail a few hours later.  At the jail, a Tulsa County sheriff's officer told him that he would have to pay $50,000 to be released from jail.  No one asked him if he could afford to pay that amount.

26.     Mr. Feltz could not afford to purchase his release from jail. Therefore, at the time of filing, he expected to remain in jail at least until his first appearance before a judicial officer, which was scheduled for June 11, 2018, 9 days after his arrest.

27.     Plaintiff Ashton Lee Dennis is a 34-year-old man. He lives in Tulsa County. He is unemployed. His only income comes from Social Security disability payments of well under $1000 each month.

28.     Mr. Dennis was arrested on Tuesday, December 15, 2020, for alleged felony offenses.  Upon arrest, he was taken to the Tulsa County Jail. At the jail, a sheriff's officer told him his bond would be $51,000.  No one asked him if he could afford to pay that amount. He could not.

29.     On being booked into jail, Mr. Dennis was provided with a piece of paper that set out the charges alleged by the officers who arrested him, the $51,000 bond amount, and the

date of his next court appearance.  No one provided Mr. Dennis with any further information about the appearance.  No one offered Mr. Dennis the opportunity to speak with a lawyer.  Mr. Dennis cannot afford to hire an attorney.

30.     On the morning of December 16, 2020, a detention officer woke Mr. Dennis and told him he had a court appearance.  He brought Mr. Dennis to a room in the jail with a video feed to a courtroom.  In that room, a different detention officer told him for the first time that he would appear for a bond hearing at which the judge would review his charges and his bond amount.

31.     Special Judge Tanya Wilson presided over the bond docket on December 16, 2020.  Mr. Dennis waited while multiple other people spoke from the jail with the judge over the video feed.  When Mr. Dennis's turn came, he stepped up to the camera and microphone. The judge informed him that the proceeding was a bond hearing, and a public defense attorney was present in the courtroom to represent him at the hearing.  Mr. Dennis was not offered an opportunity to speak with the attorney, and could not see anyone other than the judge.  Mr. Dennis could hear the judge speaking clearly, but could not make out the words of anyone else in the courtroom.  Mr. Dennis observed the judge speaking with others in the courtroom whom he could not see, but assumed to be an assistant public defender and an assistant district attorney.  He could not clearly hear the conversation, and was not able to understand its substance. No one asked Mr. Dennis if he could hear or understand what was being said.  Mr. Dennis understood only that multiple people in the courtroom were discussing the charges alleged against him.  After their conversation was over, the judge told Mr. Dennis that two of the four offenses that the officer who arrested him believed he had committed would be "dropped," and his bond would be changed to $4,000.

32.     No one asked Mr. Dennis if he could afford to pay $4,000.  No one provided

Mr. Dennis with any explanation for setting that amount of bond.  Mr. Dennis did not hear

anyone mention the risk of his not returning to court or the risk of him presenting a safety risk

if released. No one asked Mr. Dennis about either of those things.  Mr. Dennis does not know

the facts that have been alleged against him, and he does not know what, if any, criminal

history was attributed to him during the bond hearing.  Mr. Dennis was not informed that he

could provid testimony, witnesses, or evidence; if he had been, he would not have been able to,

because he did not understand what was being considered at the hearing, and had no way to

contact witnesses or gather evidence.  Since being booked into the jail, Mr. Dennis has not had

access to his telephone, where the contact information of all his family and friends are stored;

he does not have any money on his commissary account, which he understands is necessary to

make phone calls; and he has been informed that he will not receive materials for writing and

sending letters unless and until he has been jailed for thirty days.

33.     After his bond hearing, Mr. Dennis was provided with a form to request

assistance from The Bail Project.  Mr. Dennis did not know exactly what The Bail Project was,

but believed it to be an organization that might help him get out of jail.  The Bail Project is a

non-profit organization in Tulsa that posts bonds on behalf of some people held in pre-trial

detention at the Tulsa County Jail.  Mr. Dennis immediately completed an application for The

Bail Project.  Mr. Dennis has not received a response.

34.     Mr. Dennis cannot afford to pay a bond of $4,000. Therefore, he expects to

remain in jail at least until his next appearance before a judicial officer.  Mr. Dennis's next

appearance, his arraignment, is scheduled for December 21, 2020.  At that time, Mr. Dennis

will have been in jail for six days.  He still does not have an attorney to represent him on his

criminal case.

**B. Defendants' Wealth-Based Detention Scheme Detains People Who Cannot Afford to Pay and Releases People Who Can**

35.     Defendants, as a matter of policy and practice, impose secured financial conditions of release on almost all people arrested in Tulsa County on misdemeanor and felony offenses, usually in reliance on a chart of predetermined dollar amounts that they refer to as a "schedule."

36.     Under this system, people who are arrested and brought to the Tulsa County Jail are released immediately by Tulsa County Sheriff's deputies if they can afford to pay the monetary amounts that correspond to their booking charges, or if they can afford the premiums and fees required by for-profit bail-bond companies to secure the full money- bail amounts.

37.     Some charges are not covered by the money-bail schedule. For these charges, the Special Judges impose money-bail amounts when they make probable cause determinations. As a matter of common practice at the time the initial complaint was filed, the Special Judges had no information about, and conducted no inquiry into, a person's ability to pay when they imposed money-bail amounts on people arrested on charges not covered by the money-bail schedule. They did not consider non-financial alternative conditions of release.

38.     Those who could not access enough money to pay the amounts required by either the bail schedule or the Special Judges were jailed.

39.     At the time the initial complaint was filed, people who were assigned money bail amounts upon arrest remained in custody at least until their first court appearances, arraignments, which did not occur until at least six days after arrest.

40.     During that period, they were not provided counsel.

41.     Since creation of the bond docket in October 2018, people who remain in jail after arrest may or may not appear before a Special Judge for a bond docket appearance, usually but

not necessarily between one and two days after arrest. The Special Judge presiding at the bond docket sets conditions of release on charges not covered by the bond schedule, and may review preset bond amounts. The Special Judges who set or review bond amounts when issuing warrants, presiding at bond docket, or making probable cause determinations do not systematically obtain information about or conduct an inquiry into a person's ability to pay when they impose or review money-bail amounts during a person's bond docket appearance. They do not systematically consider non-financial alternative conditions of release. When they impose money bail amounts that result in a person's incarceration, they make no findings about the need for detention.

42.     Since creation of the bond docket in October 2018, people who are detained on unaffordable money bond are provided counsel only if they appear on bond docket and only for the duration of their brief appearances. They have no opportunity to communicate with bond docket counsel, except in open court during their bond docket appearances. Even then, because they are not physically in the courtroom with their lawyers and appear by video feed from the jail, they cannot see and often cannot hear their lawyers and can directly communicate only with the presiding Special Judge. People who appear on bond docket are otherwise not assigned counsel for the period that they are detained between arrest and arraignment.

43.     Most people who are detained because they cannot afford to pay the amounts required by either the bail schedule or the Special Judges cannot afford private counsel and thus are not are not represented by counsel during their arraignments.

44.     Clerks from the district attorney's office and public defender's office attend every arraignment, but no attorneys representing either office appear.

45.     The Defendant Special Judge presiding over arraignments refuses to hear

arguments concerning conditions of release at the arraignments.

46.     People who are deemed indigent, based on "paupers' affidavits" completed prior to their arraignments, are formally appointed public defenders at their arraignments. But indigent arrested people are not permitted to meet with their lawyers from the public defender's office until after their arraignments have concluded.

47.     People detained solely because of their inability to pay have no opportunity at the arraignment to raise any legal or factual challenges to their wealth-based pretrial detention.

48.     Written bail-reduction motions filed by counsel and, for some arrestees since October 2018, bond docket appearances are the only mechanisms for challenging pretrial detention.

49.     Appointed counsel's first opportunity to file a motion challenging the secured money-bail condition is after she has met with her client following the conclusion of the first court appearance at which she is appointed, which is a week into her client's detention.

50.     A written motion challenging secured money-bail conditions of release, once prepared by counsel, routinely takes at least 48 hours to be docketed and heard by a judge.

51.     That means that people who cannot afford to either pay the money Defendants demand for their release or hire an attorney are detained without any opportunity to contest their detentions in a due process-compliant forum—with adequate notice, an opportunity to consult with counsel., an opportunity to present evidence, and an evidence-based determination that their ongoing detention is necessary—for a minimum of eight days after arrest.

52.     As a result of Defendants' policies and practices, presumptively innocent people are jailed for days before arraignment solely because they could not afford to make monetary payments or hire counsel, while arrested people with access to money are released immediately.

*a.   Arrest, Initial Money-Bail Setting, and Bond Docket*

53.    When a person is arrested in Tulsa County, the person is brought to the Tulsa County Jail and "booked" by an intake officer.

54.    For almost everyone arrested, what happens next is determined by Tulsa County's secured money-bail schedule.

55.    The secured money-bail schedule is promulgated by Defendant Presiding District Court Judge.

56.    The schedule is a list of offenses and dollar amounts. It predetermines secured financial conditions of release for all but a select few offenses for which individualized conditions of release must be determined by a judge.

57.    For anyone arrested without a warrant for an offense covered by the bail schedule, an intake officer, who is employed by the Tulsa County Sheriff's Office, consults the money-bail schedule to determine how much money is required for the immediate release of the booked individual.

58.    If a person has been arrested on a warrant, the warrant specifies bail conditions, which are set by Defendant Special Judges. For warrants on charges covered by the bail schedule, Defendant Special Judges exclusively use secured financial conditions of release, and they determine the secured amounts using the schedule.

59.    If the schedule covers the arrest charges, regardless of whether arrests are made with or without warrants, Defendants have a policy of "stacking bail" for people whose booking charges include at least one "stacking-eligible" offense. Stacking is the practice of computing a person's secured financial condition of release by adding the money-bail amounts for each offense on which the person is booked. The person must pay the cumulative amount before being

released from jail. The "stacking-eligible" offenses that trigger stacking are determined by administrative directive, issued by Defendant Presiding District Court Judge and subject to amendment at his discretion.

60.    If a person has been arrested on a charge covered by the schedule, or on a warrant specifying a money-bail amount, an intake officer tells the person what offense she has been arrested for and "how much it will cost to get out of jail before seeing a judge."[5]

61.    After informing a person of the financial condition of release, the intake officer allows the person to make a phone call to arrange for the payment of money to secure her release.

62.    "[I]f they are unable to post a bond, the person will remain in custody until their court date." She will be forced to exchange her clothing for a jail uniform and housed in the jail, where she will remain for days, weeks, or months. *See* Sheriff's Office Video.

63.    "[I]f the person is able to pay their bond they will be allowed to be bonded out by a certified Tulsa County certified bondsman," or by payment of cash bail. "[T]hey are also told their court date," and allowed to keep their clothes. "[T]heir property is returned to them, and they are free to go." *See id.*

64.    Working in rotation, Defendant Special Judges review the arrest charges for anyone arrested without a warrant and in detention within 48 hours of arrest. Based on police reports, Defendant Special Judges make probable-cause determinations, review money-bail amounts previously assessed according to the bail schedule, and impose money-bail amounts for those arrested on charges not covered by the bail schedule. Defendant Special Judges carrying

---

[5] The Tulsa County Sheriff's Office's website contains a video that demonstrates the "inmate booking process" for all people arrested in Tulsa County. *See* Tulsa County Sheriff's Office, Booking Process Video, http://tcso.org/resources/inmate-bookings/ (last visited June 6, 2018) ("Sheriff's Office Video").

out these duties make their bail determinations without determining anyone's ability to pay or making findings about whether pretrial detention is necessary in each case.

65.     At the time the initial complaint was filed, arrested people did not appear before Defendant Special Judges making probable cause determinations and reviewing the bail imposed by schedule. No defense attorneys were present, and there was no opportunity to be heard.

66.     Since creation of a bond docket in October 2018, some people appear before the Defendant Special Judges making probable cause determinations and reviewing the bail imposed by schedule Defense attorneys are present an appointed for the seconds- or minutes-long duration of the person's bond docket appearance; they have no opportunity to communicate with their clients before or during the hearing, and the representation does not continue after the appearance is over. Defendant Special judges do not routinely offer people appearing on the bond docket the opportunity to be heard, they provide no opportunity to present evidence, and they make no findings when imposing money bail about whether the bail will lead to the person's continued detention and. If so, whether that detention is necessary.

67.     In all cases—whether arrests are made with or without warrants, whether charges do or do not appear on the secured money-bail schedule, and whether a person does or does not appear on bond docket—money bail is the default pretrial-release decision-maker. Cash amounts are required of nearly all people who are booked into the jail, except those charged with the most severe offenses, for whom no conditions of release are set.

68.     In each case, money bail is required without any evaluation of the individual circumstances of the arrested person, other than the charges on which she has been booked and, sometimes, prior felony convictions and the contents of the police report.

69.     Even "low" monetary bail amounts are unaffordable for poor people.

Significant percentages of people detained on monetary amounts at the bottom end of the bail schedule are unable to pay their way out of jail.

70.     Money bail serves as a detention mechanism not a release mechanism for the indigent.

71.     For many people, bail orders therefore operate as de facto detention orders. But these de facto orders of detention are issued and enforced without the substantive findings or procedural safeguards required by federal law before the government may detain a presumptively innocent person: (1) a finding that pretrial detention is necessary because no less restrictive alternatives are available to meet a compelling government interest, and (2) robust procedural safeguards to ensure the accuracy of that substantive finding.

72.     For wealthy people arrested in Tulsa County, money-bail orders operate as orders of release without supervision of any kind no matter how significant the government's assessment of the risks that the wealthy person poses.

73.     But for poor people arrested in Tulsa County, money-bail orders operate as orders of detention even if their release would pose no risk at all and even if simple and less restrictive alternatives exist to mitigate any risk.

74.     Defendants routinely issue de facto detention orders without any assessment of the risk a person may pose, and without considering non-monetary bail conditions that might sufficiently mitigate any risks. And they issue these de facto detention orders without any meaningful process, let alone the detailed procedures required by due process, including notice of the critical issues to be decided; the assistance of counsel; the right to present evidence and to confront the evidence offered by the government; application of specific legal and evidentiary standards; and an on-the-record statement of reasons for any decision to detain.

    b. *Defendants' Wealth-Based Detention Scheme Is Not Mandated by Oklahoma Law and Is Contrary to Its Purposes*

  75.  74. These policies and practices enforced in Tulsa County are not required by state law, which instead offers many opportunities for release which are enshrined as a right under the Oklahoma constitution for nearly all people who are arrested.

  76.  In addition to the federal constitution rights that Defendants' policies violate, the Oklahoma Constitution guarantees the right to bail to an accused person in a criminal case subject to limited exceptions. Okla Const. art. II, § 8. State law provides that "[e]xcept as otherwise provided by law, bail, by sufficient sureties, shall be admitted upon all arrests in criminal cases where the offense is not punishable by death ....... " Okla. Stat. Ann. tit. 22, § 1101 (A).

  77.  As a matter of history and practice, "bail" is "a process of conditional release," meant "to effectuate and maximize release."[6] The same is true under Oklahoma law: "Bail" is a "means of procuring . . . release" while "insuring [a person's] future attendance in court, and compelling him to remain within the jurisdiction of the court." *Manning v. State ex rel Williams*, 120 P.2d 980, 981 (Okla. 1942).

  78.  "Bail" is not equivalent to "money bail." Bail conditions can include both financial and non-financial conditions of release. "Money bail" refers to those conditions of release that are financial and describes the practice of requiring a defendant to forfeit money if she does not appear for trial. Money bail can be either secured or unsecured. Secured money bail requires people who are arrested to deposit money before they are released; unsecured money

---

[6] "There is 'bail'—i.e., a process of release—and there is 'no bail[]'—a process of detention." U.S. Dep't of Just. Nat'l Inst. Of Corr., *Fundamentals of Bail: A Resource Guide for Pretrial Practitioners and a Framework for American Pretrial Reform* (2014), http://www.clebp.org/images/2014-11- 05_final_bail_fundamentals_september_8,_2014.pdf.

bail allows them to be released without depositing any money but requires them to pay if they fail to appear.

79.     In Oklahoma, "the denial of bail is allowed under very limited circumstances," and only after extensive procedural safeguards have been satisfied. *Brill v. Gurich*, 965 P.2d 404, 406 (Okla. 1998).

80.     For anyone taken into custody on almost any other offense, Oklahoma law permits Defendants to release the person "on his personal recognizance subject to such conditions as the court or magistrate may reasonably prescribe to assure his appearance when required." Okla. Stat. Ann. tit. 59, § 1334; see also Okla. Stat. Ann. tit. 22, § 1108.1.

81.     A personal recognizance release is "[t]he release of a [person] in a criminal case in which the court takes the [person's] word that he or she will appear for a scheduled matter or when told to appear. [] This type of release dispenses with the necessity of the person's posting money or having a surety sign a bond with the court." BLACK'S LAW DICTIONARY (10th ed. 2014), Westlaw.

82.     In lieu of jailing people upon arrest, Oklahoma law permits law enforcement officials to issue citations to people arrested on misdemeanor offenses or violations of city ordinances. *See* Okla. Stat. Ann. tit. 22, § 209.

83.     State law further authorizes Tulsa County to "establish and fund a pretrial program" to facilitate the release of people who have committed all but a handful of serious offenses and, for all other people, allows release with or without secured money bail by order of a judge under any "conditions prescribed by the judge." 22 Okla. Stat. Ann. § 1105.3.

84.     The Tulsa County Board operates and administers a pretrial release program that is run by Tulsa County Court Services. The pretrial release program is one of only two forms of

non-financial pretrial release used in Tulsa County, the other being personal recognizance release.

85.     Tulsa County releases fewer than 500 people each year to the Court Services' pretrial release program. In 2016, 500 people amounted to less than two percent of the 25,704 people admitted into the Tulsa County Jail.

86.     Defendants routinely ignore alternative options under state law that would protect federal constitutional rights against wealth-based pretrial detention.

>    *c. Initial Appearances*

87.     Once a financial condition of release is imposed, anyone who cannot access the money required for release, and who therefore remains jailed, does not see a judicial officer until the first appearance.

88.     At the time this case was filed, a person's first appearance was their arraignment. In response to the original complaint filed in this lawsuit, in October 2018, the Defendant Presiding Judge directed that some arrestees detained on unaffordable money bail, or detained without any prescribed conditions of release, would have their first appearances at a "bond docket," newly created for the purpose of reviewing pre-determined bond amounts in cases where they have been assigned, and assigning them in cases where they have not. Many people appear at bond docket one or two days after arrest, but not all; some appear after a longer delay, and some never appear.

89.     Defendant Special Judges preside over the bond docket in rotation. Arrestees appear by video feed from the jail. An attorney is appointed to make arguments on arrestees' behalf, but the arrestee cannot contact the attorney before the appearance and they are not able to communicate with the attorney during their appearance, except publicly, over the courtroom

video feed.  In the courtroom, only the presiding Special Judge is equipped with a microphone and camera, so the arrestees who appear on the docket cannot see or often hear anyone else in the courtroom, including the attorneys who represent them.

90.     Jail staff and Defendant Special Judges do not provide people appearing on the bond docket with notice of the critical issues to be decided at the hearing. For example, arrestees are not informed that information bearing on their economic circumstances or community ties will be considered in deciding whether they will stay imprisoned, and the arrestees are given no reason or opportunity to secure testimony or information from family members, employers or community members in advance of the hearing. Defendant Special Judges make no findings on the record by any evidentiary standard about the necessity of pre-trial detention. Most people's bonds remain unchanged as a result of their appearance on bond docket; the offense-based bond schedule' pre-determined amounts continue to control in the large majority of cases. Among the few monetary bail amounts that are reduced at bond docket, many are reduced to numbers that remain unaffordable, keeping arrestees in jail, without any finding that detention is necessary.

91.     A person who cannot afford the monetary conditions of release imposed at the time of arrest and/or following an appearance on the bond docket remains jailed without any individualized determination that detention is necessary. Tulsa County District Court rules mandate that the arraignment happen no later than six days after arrest.

92.     In practice, arraignments often occur more than six days after arrest.

93.     At the time the initial complaint was filed, during their six- or more-day detentions, people who could not afford to pay for their release and could not afford to hire attorneys were not appointed counsel. Since the adoption of the bond docket, people who cannot afford to pay for their release and cannot afford to hire attorneys are appointed counsel only if

they appear on bond docket, and even then only for the seconds or minutes during which they appear before the judge for their bond docket appearances. Otherwise, throughout their pre-arraignment detention, they are held without access to a lawyer or ability to challenge the conditions of their confinement.

94.     A Defendant Special Judge presides over arraignments. Each of the Special Judges follows the same policies and practices in all respects that are material to Plaintiffs' claims.

95.     Arraignments are conducted via video-link. The Special Judge conducts the arraignments from the courtroom, while people in custody appear on screen from the Tulsa County Jail.

96.     Prior to each arraignment, the judge receives "paupers' affidavits" for the people who are being arraigned. The pauper's affidavit is designed to elicit a person's financial information and is meant to be used to determine each person's eligibility for a public defender.

97.     The initial arraignments are rote exercises, and each routinely lasts less than 30 seconds. No counsel is present on either side and there is no opportunity to challenge the secured money-bail conditions previously imposed.

98.     If the prosecutor has not made a charging decision by the time of the initial arraignment, the judge either releases the person or postpones the arraignment for about a week.

99.     Presumptively innocent people whose arraignments have been postponed and who cannot afford to pay to purchase their liberty are jailed for another week while they wait to be arraigned. They are not assigned counsel until after they are arraigned and so remain unrepresented in the interim unless they can afford to hire their own attorneys.

100.    For everyone being arraigned, the Special Judge reads the charges that the

prosecutor has chosen to file, enters a plea of not guilty, and assigns a public defender if the judge determines that the person is financially eligible for one.

101.     As a matter of policy and practice, Defendant Special Judges refuse to address conditions of release at arraignments. They do not make findings concerning whether any person has the ability to pay the money-bail amounts that have previously been set, and do not hear evidence or making findings concerning alternative conditions of release or the necessity of detention.

### d. Post-Arraignment Detention

102.     The only opportunity for a person to request modification of her conditions of release is by filing a bail-reduction motion, with one of the Special Judges, through her attorney.

103.     For anyone who is jailed because she cannot afford to pay for her release, and who cannot afford to hire an attorney, the first opportunity to file a bail-reduction motion comes six or more days after arrest when attorneys are first appointed.

104.     Tulsa County District Court policy directs Special Judges not to set a bond-reduction hearing fewer than 48 hours after a motion is filed by an attorney. During that waiting period, the arrested person remains confined in jail.

105.     The judges hearing such motions refuse, as a matter of routine practice, to make findings concerning ability to pay, alternative conditions or release, or the necessity of pretrial detention. As a result, even if and when a financial condition of release is reduced, often weeks after an arrest, it is frequently reduced to amounts that remain unaffordable.

### C. People Jailed Because They Are Poor Suffer Devastating Consequences

106.     People who cannot pay a secured money bail amount to secure their release after arrest are significantly more likely to be convicted of a crime—and more likely to be convicted

of a more serious crime—than people arrested on the same charges but able to pay to secure their

release.[7] Even one day of pretrial detention notably increases a person's likelihood of

conviction.[8] And detention until disposition of a case is the single greatest predictor of criminal

conviction.[9]

107.    Being detained pretrial for any length of time decreases a person's plea

bargaining power and increases the likelihood of a plea to time served, even if the person is

innocent. Anyone detained at the time of a plea offer faces enormous pressure to plead guilty

just to get out of jail.

108.    Jailing people after arrest hampers their ability to prepare their defenses for trial.

For example, a jailed person without counsel cannot preserve and gather surveillance video that

may disappear within hours or days of an alleged crime. A jailed person without counsel cannot

take witness statements, and witnesses become more difficult to find each day after arrest. And

jailed people, even once they are appointed counsel after a week of incarceration, cannot

effectively meet with that counsel and prepare the defense, including by assisting the attorney in

finding evidence and witnesses or building a mitigation case that would support community-

based or treatment-based alternatives at sentencing.

---

[7] Will Dobbie, Jacob Goldin & Crystal S. Yang, *The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, 20-21, 27 (2017), https://www.princeton.edu/~wdobbie/files/bail.pdf.

[8] Mary T. Philips, New York City Crim., Just. Agency, Inc., *Pretrial Detention and Case Outcomes, Part I: Nonfelony Cases*, 26 (2007), http://www.nycja.org/lwdcms/doc-view.php?module=reports&module_id=669&doc_name=doc.

[9] Christopher T. Lowenkamp, Marie VanNostrand & Alexander Holsinger, *Investigating the Impact of Pretrial Detention on Sentencing Outcomes*, 10-11 (2013), http://www.arnoldfoundation.org/wp-_content/uploads/2014/02/LJAF_Report_state-sentencing_FNL.pdf

109.    Pretrial detention of any length also has devastating personal consequences: Even one day in jail can "imperil [a person's] job, interrupt his source of income, and impair his family relationships." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Because of the havoc that just days in jail can cause, even those released after an initial period of detention are less likely to mount defenses to their cases, and are more likely to miss court dates, violate terms of release, and otherwise suffer worse outcomes in their criminal cases.

110.    Even a few days in jail significantly increases the risk of job loss, eviction from housing or homeless shelter, exposure to trauma in custody, and broken family connections, especially for people with very young children.

111.    A large body of empirical evidence shows that "low risk" people who are jailed for just two or three days after arrest because they cannot pay money bail are much more likely to commit crimes in the future and to not appear in court in the future because of the de-stabilizing effects of even short periods in jail.

**Class Action Allegations**

112.    The named Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

113.    A class action is a superior means, and the only practicable means, by which the named Plaintiffs and unknown Class members can challenge the Defendants' unlawful wealth-based post-arrest detention scheme.

114.    This action is brought and may properly be maintained as a class action pursuant to Rule 23(a)(1)–(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

115.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

116.    The Plaintiffs propose one class seeking declaratory and injunctive relief: All people who are or will be detained in the Tulsa County Jail because they are unable to pay a secured financial condition of release.

*a. Numerosity (Fed. R. Civ. P. 23(a)(1))*

117.    Every person arrested in Tulsa County who is not lawfully preventatively detained is subjected to the Defendants' wealth-based detention scheme in which arrested people either pay for their liberty or, regardless of their ability to pay or personal circumstances, remain confined in a jail cell.

118.    There are hundreds of people subject to these policies at any given time.

119.    Sheriff's Department records show that on June 6, 2018, 1,665 people were detained in the Tulsa County Jail. A majority of them were held pretrial, on money bail amounts, and none or almost none of them were detained under explicit detention orders, issued according to the procedures required by Oklahoma law for orders of detention. Most of them were in jail on de facto orders of pretrial detention: money-bail orders entered without following any of the procedures required for valid orders of detention. They would be released immediately if they could afford to pay.

120.    Joinder is impracticable because the class is both too numerous and too fluid for the Court to feasibly hear their independent claims.

121.    Joinder is also impracticable because the members of the class are too poor to hire lawyers to bring independent claims.

*b. Commonality (Fed. R. Civ. P. 23(a)(2))*

122.    The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the Class. The named Plaintiffs seek relief declaring

that the Defendants' policies, practices, and procedures violate the rights of the Class members and mandating the Defendants to change their policies, practices, and procedures so that the constitutional rights of the Class members will be protected in the future.

123.     These common legal and factual questions arise from one central scheme and set of policies and practices: the Defendants' wealth-based post-arrest detention process. The Defendants operate this scheme openly and in materially the same manner every day. The material components of the scheme do not vary from Class member to Class member, and the resolution of these legal and factual issues will determine whether the members of the class are entitled to the constitutional relief that they seek.

124.     Among the most important common questions of fact are:

- Whether Defendants have a policy and practice of determining the amount of money necessary to secure post-arrest release without inquiry into ability to pay at a due process-compliant hearing;

- Whether Defendants implement their post-arrest detention scheme without consideration of ability to pay, without findings as to ability to pay, and without consideration of non-financial conditions;

- Whether Defendants require that pre-determined amounts of money be paid upfront before they will release a person from jail; and

- How long arrested people must wait, in jail and without the assistance of counsel, after arrest before they have an opportunity to raise their inability to pay for their release.

125.     Among the most important common question of law are:

- Whether the Defendants' wealth-based post-arrest detention scheme, which requires that arrested people pay money upfront to be released and which does not consider ability to pay or non-financial conditions of release, violates the Fourteenth Amendment's Due Process and Equal Protection clauses;

- Whether it is lawful to impose a secured financial condition of release that operates as a de facto order of pretrial detention because of a person's

inability to pay without complying with the substantive findings, legal standards, and procedures required for issuing and enforcing a transparent order of preventive detention; and

- Whether delaying meaningful access to counsel for at least a week after detaining a person pursuant to an unaffordable secured financial condition of release and until after the initial arraignment violates the Sixth Amendment's Right to Counsel Clause.

### c. Typicality (Fed. R. Civ. P. 23(a)(3))

126.    The named Plaintiffs' claims are typical of the claims of the other members of the Class, and the named Plaintiffs have the same interests in this case as all other members of the Class. Each of them suffers the same injuries because Defendants refuse to comply with basic constitutional requirements: The named Plaintiffs, at the time of filing their respective initial complaints, and all of the Class members are or will be confined in jail because they cannot or will not be able to afford to pay the Defendants' secured financial condition of release. They also cannot and will not be able to afford retained counsel, and they have not been, and will not be, appointed counsel to represent them at a due process-compliant hearing until after their arraignment is over. The answer to whether the Defendants' policies and practices are unconstitutional will determine the claims of the named Plaintiffs and every other Class member.

### d. Adequacy (Fed. R. Civ. P. 23(a)(4))

127.    The named Plaintiffs are adequate representatives of the Class because their interests in the vindication of the legal claims that they raise are entirely aligned with the interests of the other Class members. The named Plaintiffs are members of the class, and their interests do not conflict with those of the other class members.

128.    There are no known conflicts of interest among members of the proposed Class, all of whom have a similar interest in vindicating their constitutional rights.

129.    Plaintiffs are represented by attorneys from Civil Rights Corps, Still She Rises,

and Hogan Lovells, who have experience in litigating class actions and complex civil rights matters in federal court and knowledge of both the details of the Defendants' scheme and the relevant constitutional and statutory law.

130.    The efforts of Class counsel have so far included investigation of Defendants' money-based pretrial detention system, interviews of jail inmates and attorneys practicing in the area, consultation with local and national experts, research regarding the legality of Defendants' secured money-bail regime, and litigation of this matter to date.

131.    Class counsel have studied post-arrest detention systems in other cities and counties in order to investigate the wide array of lawful options in practice for government entities.

132.    Class counsel also have experience litigating similar challenges in other jurisdictions and years of experience litigating class actions and other complex and important cases in federal courts.

133.    As a result, counsel have undertaken significant efforts toward becoming intimately familiar with the Defendants' scheme and with all of the relevant state and federal laws and procedures that do, can, and should govern it. The interests of the members of the Class will be fairly and adequately protected by the named Plaintiffs and their attorneys.

*e. Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(2))*

134.    Class action status is appropriate because the Defendants, through the policies, practices, and procedures that make up their post-arrest detention scheme, have acted in the same unconstitutional manner with respect to all class members. Defendants have created and applied a simple scheme of wealth-based post-arrest detention and release: Defendants release those who can pay and detain those who cannot. They do so without offering constitutional process or

providing counsel to challenge the lawfulness of impecunious people's detention or the necessity and effectiveness of the money-bail orders underlying their detention.

135.    The Class therefore seeks declaratory and injunctive relief to enjoin the Defendants from continuing in the future to detain people who are arrested and cannot afford to pay to secure their release. Because the putative Class challenges the Defendants' scheme as unconstitutional through declaratory and injunctive relief that would apply perforce to every member of the Class, Rule 23(b)(2) certification is appropriate and necessary.

**Claims for Relief**

**Count One: Defendants Presiding Judge LaFortune, Tulsa County Board, and Tulsa County Sheriff Violate Plaintiffs' Equal Protection and Due Process Rights Against Wealth-Based Detention by Jailing Them Because They Cannot Afford A Monetary Payment.**

136.    Plaintiffs incorporate by reference the allegations in paragraphs 1–130.

137.    The Fourteenth Amendment's Due Process and Equal Protection clauses have long prohibited jailing people solely because of their inability to make monetary payments. Separately, Plaintiffs have a fundamental right to pretrial liberty. Neither the right against wealth-based detention nor the right to pretrial liberty may be infringed unless the government demonstrates that detention is necessary. Defendants violate Plaintiffs' rights by placing and keeping them in jail because they cannot afford to pay monetary bail amounts required without inquiry into and findings concerning ability to pay and without consideration of and findings concerning alternative conditions of release and the necessity of wealth-based pretrial detention.

**Count Two: Defendants Violate Plaintiffs' Right to Pretrial Liberty by Jailing Them Without Procedural Due Process.**

138.    Plaintiffs incorporates by reference the allegations in paragraphs 1–132.

139.   The Due Process Clause requires the government, before depriving anyone of the fundamental right to pretrial liberty, to provide notice of the critical issues to be decided at the hearing. The person must be represented by counsel and have the opportunity to present and confront evidence and to be heard concerning the issue of pretrial release or detention. Any transparent or de facto order of pretrial detention must be accompanied by findings on the record by clear and convincing evidence explaining why no combination of conditions could sufficiently serve the government's compelling interests.

140.   Defendants violate Plaintiffs' procedural due process rights by depriving them of their fundamental right to pretrial liberty without providing these necessary safeguards to ensure the accuracy of the substantive finding of necessity.

## Request for Relief

141.   WHEREFORE, Plaintiffs and the other Class members request that this Court issue the following relief:

    a.   An order and judgment preliminarily and permanently enjoining Defendants the Tulsa County Board, Sheriff Regalado, and the Tulsa County District Court Presiding Judge LaFortune from using secured financial conditions of release to detain Plaintiffs and class members without ensuring a due process-compliant  inquiry into and findings concerning a person's ability to pay, without due process-compliant consideration of and findings concerning alternatives, without findings concerning the necessity of detention, and without appointing counsel to assist at due process-compliant bail hearings and meaningfully challenge pretrial detention;

    b.   A declaration that the Defendants violate Plaintiffs' and class members' constitutional rights by requiring secured financial conditions of release without findings concerning ability to pay and necessity of detention, and by issuing and enforcing de facto orders of wealth-based pretrial detention without consideration of alternatives and without findings that such detention is necessary to serve a compelling interest;

    c.   A declaration that the Defendants violate Plaintiffs' and class members' right to procedural due process under the Fourteenth Amendment by depriving

people who are arrested of speedy, individualized release hearings with notice, counsel, the opportunity to be heard and to confront evidence, and findings on the record that the government met its burden to demonstrate by clear and convincing evidence that no alternative condition or combination of conditions would be sufficient to serve its compelling interests;

d.  An order certifying the class defined above;

e.  An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

f.  Any other relief this Court deems just and proper.

Dated: February 3, 2021

Respectfully Submitted,

/s/ Hayley Horowitz
Hayley Horowitz
Phoebe Kasdin
Still She Rises, Tulsa
567 E. 36th Street North
Tulsa, OK 74106
hayleyh@stillsherises.org
phoebek@stillsherises.org
918-392-0867

Civil Rights Corps
Alexandria Twinem*
Ryan Downer*
D.C. Bar No. 1033346
Civil Rights Corps
1601 Connecticut Avenue NW
Suite 800
Washington, DC 20009
202-844-4975
ryan@civilrightscorps.org
alexandria@civilrightscorps.org

Hogan Lovells US LLP
Allison Holt Ryan*
Michelle Kisloff*
555 13th Street NW

Washington, DC 20004
202-637-5600
allison.holt-ryan@hoganlovells.com
michelle.kisloff@hoganlovells.com

Vassi Iliadis*
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
310-785-4600
Vassi.iliadis@hoganlovells.com

*Admitted to practice pro hac vice

Attorneys for Plaintiffs

**Certificate of Service**

I hereby certify that on the 3rd day of March, 2021, I caused a copy of the foregoing

document to be served on all parties by the Electronic Case Filing System for the United States

District Court for the Northern District of Oklahoma.

/s/ Hayley Horowitz
Hayley Horowitz