**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| RICHARD FELTZ and ASHTON LEE | ) | |
| DENNIS, on behalf of themselves and | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 18-cv-00298-CVE-JFJ |
| | ) | |
| TULSA COUNTY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SPECIAL JUDGES'**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

Dated March 31, 2021.

Respectfully submitted,

s/ Stefanie E. Lawson
STEFANIE E. LAWSON, OBA #22422
ERIN M. MOORE, OBA #20787
DEVAN A. PEDERSON, OBA # 16576
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:      (405) 521-3921
Facsimile:      (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
erin.moore@oag.ok.gov
devan.pederson@oag.ok.gov
Attorneys for Defendant State Judges

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

DEFENDANT SPECIAL JUDGES' MOTION TO DISMISS
AND BRIEF IN SUPPORT ................................................................................. 1

INTRODUCTION ............................................................................................... 1

    A.  *Plaintiffs' factual backgrounds and Second Amended Complaint* ..................................... 1

    B.  *Special Judges* ........................................................................... 5

    C.  *Bond Docket* .............................................................................. 7

ARGUMENT AND AUTHORITIES ................................................................... 8

Rule 12(B)(1) Standard of Review ..................................................................... 8

PROPOSITION I: PLAINTIFFS DO NOT HAVE A LIVE CASE OR CONTROVERSY
                AGAINST SPECIAL JUDGES ................................................. 9

    A.  *Plaintiff Feltz has no traceable injury to seventeen of the Special Judges.* ................... 12

    B.  *Plaintiff Feltz's claim against Judge Doss, the substituted official for
        Judge Moody, is moot.* ............................................................. 12

    C.  *Plaintiff Feltz and Dennis have no injury traceable to warrant arrests or arrests for
        charges not on the pre-set bond schedule.* ............................................. 15

    D.  *Plaintiff Dennis has no injury traceable to seventeen of the Special Judges for
        his bond docket appearance nor is it redressable by them.* ........................... 15

    E.  *Ex Parte Young does not apply to Plaintiff Dennis' claim against
        Special Judge Wilson as any declaration would be retrospective
        in nature and is barred by the Eleventh Amendment.* ................................ 16

CONCLUSION .................................................................................................. 19

CERTIFICATE OF SERVICE .......................................................................... 20

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Allee v. Medrano*,
416 U.S. 802 (1974)................................................................................................11

*Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*,
859 F.3d 1243(10th Cir. 2017) ............................................................................10

*Brown v. Buhman*,
822 F.3d 1151 (10th Cir. 2016) .....................................................................11, 14

*Cressman v. Thompson*,
719 F.3d 1139 (10th Cir. 2013) ............................................................................16

*City of Albequerque v. Soto Enterprises, Inc.*,
864 F.3d 1089 (10th Cir. 2017) ..............................................................................8

*City of Los Angeles v. Lyons*,
461 U.S. 95, 103 S. Ct. 1660 (1983)...............................................................13, 18

*Collins v. Daniels*,
916 F.3d 1302 (10th Cir. 2019) ...................................................................... 13-14

*Cressman v. Thompson*,
719 F.3d 1139 (10th Cir. 2013) ............................................................................16

*Crowe & Dunlevy, P.C. v. Stidham*,
640 F.3d 1140 (10th Cir. 2011) ............................................................................16

*Disability Law Ctr. v. Millcreek Health Ctr.*,
428 F.3d 992 (10th Cir. 2005) ..............................................................................11

*Ex Parte Young.*,
209 U.S. 123 (1908).........................................................................................16, 17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)...............................................................................................10

*Habecker v. Town of Estes Park, Colo.*,
518 F.3d 1217 (10th Cir. 2008) ............................................................................11

*Hobby Lobby Stores, Inc. v. Sebelius*,
723 F.3d 1114 (10th Cir. 2013) (en banc) (*aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014)) .............................................................................. 9-10

*Holt v. U.S.*,
     46 F.3d 1000 (10th Cir. 1995) ............................................................................9

*Hunnicutt v. Zeneca, Inc.*,
     Case No. 10-CV-708-TCK-TLW, 2012 WL 4321392 (N.D. Okla. Sept. 19, 2012).........10, 11

*Jordan v. Sosa*,
     654 F.3d 1012 (10th Cir. 2011) ..........................................................................12

*Kokkonen v. Guardian Life Ins. Co.*,
     511 U.S. 375 (1994)...........................................................................................9

*Lippoldt v. Cole*,
     468 F.3d 1204 (10th Cir. 2006) ..........................................................................11

*Lujan v. Defenders of Wildlife*,
     504 U.S. 555 (1992)...........................................................................................10

*Meiners v. Univ. of Kan.*,
     359 F.3d 1222 (10th Cir. 2004) ..........................................................................16

*McKesson Corp. v. Hembree*,
     No. 17-CV-323-TCK-FHM, 2018 WL 4621833 (N.D. Okla. Sept. 26, 2018).......................13

*NiGen Botech, L.L.C. v. Paxton*,
     804 F.3d 389 (5th Cir. 2015) ..............................................................................17

*Nova Health Systems v. Gandy,*
     416 F.3d 1149 (10th Cir. 2005) ..........................................................................10

*O'Shea v. Littleton*,
     414 U.S. 488, 94 S. Ct. 669 (1974)..............................................................13, 18

*Papasan v. Allain*,
     478 U.S. 265 (1986)...........................................................................................17

*Peterson v. Martinez*,
     707 F.3d 1197 (10th Cir. 2013) ..........................................................................16

*Prison Legal News v. Federal Bureau of Prisons*,
     944 F.3d 868 (10th Cir. 2019) ......................................................................12, 14

*Roberts v. New York*,
     911 F. Supp. 2d 149 (N.D.N.Y 2012) ........................................................... 16-17

*Spomer v. Littleton*,
    414 U.S. 514 (1974)................................................................................12

*Tandy v. City of Wichita*,
    380 F.3d 1277 (10th Cir. 2004) ...........................................................10

*United States v. Ramos*,
    695 F.3d 1035 (10th Cir. 2012) ...........................................................10

*Verizon Maryland, Inc. v. Public Service Com'n of Maryland*,
    535 U.S. 635 (2002)..............................................................................17

*Wheeler v. Hurdman*,
    825 F.2d 257 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)...................9

*Williams v. Life Sav. & Loan*,
    802 F.2d 1200 (10th Cir. 1986) ..............................................................9

## STATE CASES

*Bowman v. State*,
    585 P.2d 1373 (Okla. Crim. App. 1978).............................................5, 6

*Clark v. Hall*,
    53 P.3d 416 (Okla. Crim. App. 2002)......................................................6

*Flandermeyer v. Bonner*,
    152 P.3d 195 (Okla. 2006) ......................................................................5

*Hainey v. State*,
    740 P.2d 146 (Okla. Crim. App. 1987)....................................................6

## CONSTITUTIONS

U.S. CONST. amend. XI............................................................................16

OKLA. CONST. art. 7, § 8 ...........................................................................5

## STATUTES

5 O.S. Ch. 1, App. 1-B................................................................................6

5 O.S. Ch. 1, App. 4-B................................................................................6

20 O.S. § 123 .............................................................................................5

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1)............................................................................................1, 9

Fed. R. Civ. P. 12(h)(3)...............................................................................................9

## STATE RULES

Rule 1 of the Local Rules for the Fourteenth Judicial District ................................ 14-15

Rule CR1 of the Local Rules for the Fourteenth Judicial District ............................... 5-6

Rule CR2 of the Local Rules for the Fourteenth Judicial District ............................. 2-3, 4, 13, 14

## OTHER

15 *Moore's Federal Practice* § 101.94[3] ...................................................................12

1 *Newberg on Class Actions* § 2:5 (5th ed.) ..............................................................11

## DEFENDANT SPECIAL JUDGES'
## MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant Special Judges Tammy Bruce, Stephen Clark, Julie Doss, Theresa Dreiling, Owen Evans, Mary Ann Godsby, David Guten, Bill Hiddle, Ann Keele, James Keeley, Deborah Ludi Leitch, Anthony J. Miller, Kevin C. Morrison, Kristen Pace, Wilma Palmer, April Seibert, Rodney B. Sparkman, and Tanya Wilson, all in their official capacities ("Special Judges"), by and through the undersigned counsel, respectfully request that the Court dismiss Plaintiffs Richard Feltz and Ashton Dennis's Second Amended Complaint [Doc. 259] against them pursuant to Fed. R. Civ. P. 12(b)(1). In support of their request, they show the Court the following:

### INTRODUCTION

#### A.  *Plaintiffs' factual backgrounds and Second Amended Complaint*

On March 3, 2021, the Second Amended Complaint was filed in this matter. [Doc. 259]. The motion to amend the complaint was filed on December 20, 2020 and granted on February 26, 2021. [Docs. 224 & 256]. The Court in its Order granting leave to amend allowed leave to add Plaintiff Dennis and found the motion to intervene (filed the same day as the motion to amend) moot. [Docs. 225 & 256]. In the Second Amended Complaint, there are five (5) paragraphs specifically mentioning Feltz and nine (9) paragraphs specifically mentioning Dennis out of the 141 paragraphs. [Doc. 259 at ¶¶ 15-16 & 27-34].

On June 2, 2018, at approximately 10:30 p.m., Plaintiff Feltz was arrested on four charges, some of which were felony charges, after taking police on a high speed chase through Tulsa. *See* Arrest & Booking Report (Ex. 1). Plaintiff Feltz was a pretrial detainee in the custody of the Tulsa County Jail at the time this suit was originally filed on June 6, 2018. [Doc. 2]. While detained in the Tulsa County Jail, Plaintiff Feltz was given a bail amount pursuant to the pre-set bail schedule. *See* Feltz Dep. at 13:1-22 (Ex. 2). On June 8, 2018, the State of Oklahoma filed the initial criminal felony indictment or information. *See* CF-2018-2339 (Ex. 3). On June 9, 2018, Plaintiff Feltz was

1

released from detention after posting bond set by the pre-set bond schedule via a private surety. *See* Bonds (Ex. 4). On June 11, 2018, Plaintiff Feltz appeared with private counsel at his initial arraignment before Judge Moody[1]. At his initial arraignment, he and his counsel did not request that his bail be reduced or altered as Feltz did not see the point in requesting reduction since he was out of custody. *See* Feltz Dep. at 17:17-23 (Ex. 2). Plaintiff Feltz was not denied appointed counsel in his case as he did not submit paperwork requesting appointed counsel. *See* CF-2018-2339 (Ex. 3). After his initial arraignment, he went to Florida for ninety (90) days to obtain treatment for his addiction. *Id.*; *see* Feltz Dep. at 15-16 (Ex. 2). On August 28, 2018, Plaintiff Feltz resolved the criminal proceeding in Tulsa County by pleading guilty to a plea deal. *Id.*

At the time of his detainment in the Tulsa County Jail, Plaintiff Feltz also had criminal misdemeanor charges pending against him from Rogers County, State of Oklahoma. *See* Rogers County Docket Sheet (Ex. 5). Plaintiff Feltz was also represented by private counsel in this case. *Id.* Plaintiff Feltz was out of custody on these misdemeanor charges pursuant to a personal recognizance bond from the Rogers County court. In the personal recognizance bond, Feltz agreed that he would "not violate City, State, or Federal law" and that if he is arrested "for violation of such laws, [that he] will be subject to immediate confinement in the Rogers County Jail." *See* Personal Recognizance Bond (Ex. 6).

Further, at the time of Plaintiff Feltz's arrest (without warrant)[2] and detention in the Tulsa County jail, Judge LaFortune was not the Presiding Judge and the current version of Rule CR2 of

---

[1] Judge Moody is no longer a party to this case as she is no longer a special judge, but a district judge. Judge Julie Doss has been substituted for Judge Moody as Judge Doss was appointed to Judge Moody's special judge office.

[2] Feltz and Dennis were not arrested for crimes that do not appear on the pre-set bail schedule. There are certain classes of crimes that are not eligible for the pre-set bail schedule, such as domestic abuse. These crimes have their own statutory and local procedures neither of which apply to these Plaintiffs. Similarly, warrants have their own statutory and local procedures which also do not apply to these Plaintiffs. Plaintiffs seek to include in their claims challenges to warrant

the Local Rules for the Fourteenth Judicial District had not been adopted by the district judges of Tulsa County or implemented by the Special Judges. Plaintiff Feltz has generally alleged that there was no process for him to receive bail other than the pre-set bail schedule amount under the policies of then Presiding Judge (Judge Musseman). *See* Feltz Dep. at 26-28, 31-32 (Ex. 2) and Doc. 259 at ¶ 4.

Based upon the allegations in the Second Amended Complaint, Feltz has one generically entitled federal claim against Special Judges: "Count Two: Defendants Violate Plaintiffs' Right to Pretrial Liberty by Jailing Them Without Procedural Due Process." [Doc. 259 at p. 31]. Under this claim, Feltz only seeks declaratory relief against the Special Judges. [Doc. 259 at p. 31 & ¶ 19]. Under this Count Two, Plaintiff alleges:

> 139. The Due Process Clause requires the government, before depriving anyone of the fundamental right to pretrial liberty, to provide notice of the critical issues to be decided at the hearing. The person must be represented by counsel[3] and have the opportunity to present and confront evidence and to be heard concerning the issue of pretrial release or detention. Any transparent or de facto order of pretrial detention must be accompanied by findings on the record by clear and convincing evidence explaining why no combination of conditions could sufficiently serve the government's compelling interests.

> 140. Defendants violate Plaintiffs' procedural due process rights by depriving them of their fundamental right to pretrial liberty without providing these necessary safeguards to ensure the accuracy of the substantive finding of necessity.

[Doc. 259 at ¶¶ 139-140].

Plaintiff Dennis was arrested (without warrant) on December 15, 2020, and detained in the Tulsa County jail. At booking into the Tulsa County jail, Plaintiff Dennis was given a bond amount

---

arrest procedures and arrests that do not have bail amounts on the pre-set bail schedule. They do not have standing to assert these claims.

[3] It should be noted by the Court that Plaintiffs' Second Amended Complaint is riddled with references to the right of representation; however, there is no Sixth Amendment claim. Plaintiffs admit as much in Doc. 245 at p. 4 & n.3. To the extent, Plaintiffs are trying to fold a right to representation or representation issues into their Due Process complaint, Plaintiffs fail to state a claim for relief.

of $51,000.00 for the four arrest charges against him pursuant to the pre-set bail schedule. *See* Dennis Dep. at 13-15 (Ex. 7). At booking, arrestees are generally told about the bond docket and their court appearance on it. *See* Wright Dep. at 95-96 (Ex. 8). On December 16, 2020, Plaintiff Dennis appeared before Defendant Special Judge Tanya Wilson on the bond docket. At this hearing, Judge Wilson reviewed the probable cause affidavit, the bail to be set, and heard argument from Plaintiff Dennis' public defender and the Assistant District Attorney. *See* Dennis NF docket sheet (Ex. 9). Judge Wilson then issued her ruling from the bench which is summarized in a court minute and dismissed two of the counts and set the bail at $4,000.00. *See* Dennis NF docket sheet (Ex. 9). After Dennis' appearance at the bond docket, he remained detained through his initial arraignment. On December 21, 2020, Dennis appeared for his initial arraignment. At this hearing, he was appointed counsel for the remainder of his case after submission of a pauper's affidavit. Judge Guten also addressed his bond after the information or indictment was filed. *See* Dennis CF docket sheet (Ex. 10). On December 23, 2020, Dennis posted bail via the Bail Project and released from the Tulsa County jail. *See* Dennis Order of Release (Ex. 11). On February 23, 2021, the criminal charges against Dennis were dismissed. *See* Dennis CF docket sheet (Ex. 10).

At the time of Plaintiff Dennis' arrest (without warrant) and detention in Tulsa County jail, Judge LaFortune was (and still is) the Presiding Judge and the current version of Rule CR2 was in effect (as adopted by the district judges of Tulsa County on August 28, 2019) and implemented. *See* Rule CR2 (Ex. 12).

Based upon the allegations in the Second Amended Complaint, Dennis also has one generically entitled claim against the Special Judges (same as Feltz) that is described as "Count Two." [Doc. 259 at p. 31]. Under this claim, Dennis also only seeks declaratory relief against the Special Judges. [Doc. 259 at p. 31 & ¶ 19].

Plaintiffs Feltz and Dennis then in their "Request for Relief" ask for the following against the Special Judges:

b. A declaration that the Defendants violate Plaintiffs' and class members' constitutional rights by requiring secured financial conditions of release without findings concerning ability to pay and necessity of detention, and by issuing and enforcing de facto orders of wealth-based pretrial detention without consideration of alternatives and without findings that such detention is necessary to serve a compelling interest;

c. A declaration that the Defendants violate Plaintiffs' and class members' right to procedural due process under the Fourteenth Amendment by depriving people who are arrested of speedy, individualized release hearings with notice, counsel, the opportunity to be heard and to confront evidence, and findings on the record that the government met its burden to demonstrate by clear and convincing evidence that no alternative condition or combination of conditions would be sufficient to serve its compelling interests; ….

[Doc. 259 at 32-35]. The crux of Plaintiffs' claims against all the Special Judges appears to be that the "bond docket" hearings are not constitutionally compliant hearings. These are "as applied" procedural due process challenges to how each Special Judge individually operates on the bond docket.

### B. Special Judges

The special judge position is a constitutionally created position under the laws of the State of OKLA. CONST., art. 7, § 8. This position has limited jurisdiction unlike district and associate district judges. *Id.*; 20 O.S. § 123. In general, lawyers who are special judges may hear all misdemeanors and some felonies that involve driving under the influence. 20 O.S. § 123. Special judges may also act as magistrates. *Id.* In this case, all of the Special Judges are lawyers and act as magistrates. Further, special judges have general discretionary control over their individual dockets and in individual proceedings. *See Flandermeyer v. Bonner*, 152 P.3d 195, 200-201, n. 18-21 (Okla. 2006). The discretion afforded a judge means that they can structure and conduct proceedings how they choose. *Id.* Additionally, the judge is also afforded discretion in making bail determinations. *See Bowman v. State,* 585 P.2d 1373, 1377–78 (Okla. Crim. App. 1978), cert denied 440 U.S. 920, 99 S. Ct. 1243 (1979); Rule CR 1 of the Local Rules for the Fourteenth Judicial District. Further, Rule CR1 explicitly states that the preset bond schedule "shall not …

affect the discretion of a Judge … to raise or lower the bond initially set." Again, the law does not require individual proceedings to be conducted in exactly the same manner.

Special Judges have mandatory judicial continuing legal education that they must do annually. 5 O.S. Ch. 1, App. 4-B. Further, as lawyers (prior to becoming special judges), they had continuing legal education requirements. 5 O.S. Ch.1, App. 1-B. Special judges are subject to a code of ethics and to appellate court review such that there are processes in place to review and correct judicial conduct and decisions in the State of Oklahoma. In particular, the individual orders issued by a particular judge in regards to bail conditions for a particular criminal defendant may be reviewed a number of ways. First, a criminal defendant can file motions at the district level court requesting a reduction or change in bail conditions. *See* Guten Dep. at 79-80 (Ex. 13); *see also*, Guten Dep. at 115-116 (reconsiderations via phone/email during pandemic) (Ex. 13). Second, a criminal defendant can file writs with the appropriate appellate court, the Court of Criminal Appeals. *See Clark v. Hall*, 53 P.3d 416 (Okla. Crim. App. 2002) (writ of habeas corpus used by pretrial detainee to get individualized hearing on bail amount). Third, a criminal defendant could preserve the issue for appeal and appeal it. *See Bowman*, 585 P.2d 1373; *Hainey v. State*, 740 P.2d 146 (Okla. Crim. App. 1987). None of these methods were used by either Plaintiff.

In this case, there are eighteen (18) Special Judges at the district courthouse in Tulsa County. These Special Judges have held office for various lengths of time and serve at the pleasure of the District and Associate District Judges that are elected in Tulsa County. *See* AO-2019-3 (Ex. 14); AO-2019-9 (Ex. 15); AO-2020-9 (Ex. 16); AO-2020-21 (Ex. 17). Below is a chart of the seven (7) Special Judges who have been substituted out of this matter, who replaced them after they left their Special Judge position, and when those replacements occurred:[4]

---

[4] Special Judges Martha Rupp Carter, Sarah Smith, Millie Otey, and Terry Bitting all retired from the bench. Judge Clifford Smith is now the Associate District Judge and Judges Dawn Moody and James Huber are now District Judges.

| Judge Martha Rupp Carter* | Judge Ann Keele | 2/4/2019 |
| Judge Clifford Smith* | Judge David Guten | 2/11/2019 |
| Judge Dawn Moody* | Judge Julie Doss | 3/4/2019 |
| Judge Sarah Smith* | Judge Kevin Morrison | 6/10/2019 |
| Judge Millie Otey* | Judge James Huber | 8/1/2019 |
| Judge Terry Bitting* | Judge Tanya Wilson | 7/1/2020 |
| Judge James Huber | Judge Mary Ann Godsby | 1/4/2021 |

*See* AO-2019-3 (Ex. 14); AO-2019-9 (Ex. 15); AO-2020-9 (Ex. 16); AO-2020-21 (Ex. 17).

### C. Bond Docket

The "bond docket" operates seven (7) days a week such that there are two rotations of Special Judges currently covering this docket. There is the week day coverage (Monday through Friday) of this docket that is currently being overseen by three Special Judges (Guten, Siebert and Wilson). These three judges rotate coverage of the weekday bond dockets on a weekly basis. *See* Wright Dep. at 233-34 (Ex. 8); *see also*, Guten Dep. at 13-14 (Ex. 13). Then there is the "weekend" coverage of the weekend bond dockets by all eighteen Special Judges. Wright Dep. at 233-34 (Ex. 8). The "weekend" coverage generally requires each special judge to work four weekends over the course of a year. *See* Duty Phone Schedule (Ex. 18).

The bond docket has been operating seven days a week since September of 2019. *See* Wright Dep. at 186 (Ex. 8). The public defender has been staffing the bond docket this entire time. The public defender has been making monthly reports on the bond docket and jail population. These reports are from August 2019 to August 2020, and have been produced during discovery in this matter. *See* PD Reports (Ex. 19). For instance, the August 2020 public defender report shows that during the month July: (1) there were 621 pretrial detainees in the jail; (2) there were 1189 new bookings at the jail; (3) there were 871 newly arrested detainees that appeared on the bond docket; (4) there were 91 detainees released on their own recognizance; (5) there were 49 detainees released under pre-trial services; (6) there were 496 detainees that posted cash bonds; and (7) there were on average 28 detainees on the daily bond docket. *Id*.

In addition to the public defender's reports, Court Services also has quarterly reports on the number of individuals that are considered and then released under their supervision during pre-trial. Those reports are publicly available on OSCN under Case number CV-2002-34 for Tulsa County. Since October 1, 2019 to September 30, 2020, the numbers for pre-trial releases are as follows:

| Time Period | Interviewed | Released | Failed to Appear | Failed to Appear and Returned to Custody |
|---|---|---|---|---|
| October 1, 2019 to December 31, 2019 | 523 | 230 | 69 | 34 |
| January 1, 2020 to March 31, 2020 | 437 | 229 | 92 | 21 |
| April 1, 2020 to June 30, 2020 | 78 | 79 | 11 | 8 |
| July 1, 2020 to September 30, 2020 | 459 | 235 | 64 | 9 |
| Total | 1,497 | 773 | 236 | 72 |

*See* Pre-Trial Release Reports (Ex. 20).

At the bond docket hearings, each judge handles matters on the docket, in general, differently. *See* Wright Dep. at 174-76; 232-55 (Ex. 8); *see also*, Guten Dep. at 130 (each judge has discretion on how to weigh factors) (Ex. 13). Additionally, each judge, depending on the circumstances for each criminal defendant, handles each matter differently but they all inquire into ability to pay. *See* Wright Dep. at 174-76; 232-55 (Ex. 8). These facts make any declaratory relief advisory in nature as it would not be dispositive of a concrete controversy as Plaintiffs rely upon unnamed putative class members to argue that relief is appropriate against all the Special Judges.

### ARGUMENT AND AUTHORITIES

### Rule 12(B)(1) Standard of Review

As a court of limited jurisdiction, this Court has "an independent obligation to address [its] own subject-matter jurisdiction and can dismiss a case *sua sponte*" on that basis. *City of Albequerque v. Soto Enter., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). This obligation is not

discretionary. By rule, a federal court "must dismiss" an action "if it determines at any time it lacks subject matter jurisdiction," Fed. R. Civ. P. 12(h)(3), "even [if] the parties fail to raise the issue," *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986).

"Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.*

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*; *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987), *cert. denied*, 484 U.S. 986, 108 S. Ct. 503 (1987). "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Holt*, 46 F.3d at 1003 (citing *Wheeler*, 825 F.2d at 259 n. 5). Plaintiffs have the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Special Judges bring a factual challenge to the Court's subject matter jurisdiction as to Plaintiffs' claims.

## PROPOSITION I: PLAINTIFFS DO NOT HAVE A LIVE CASE OR CONTROVERSY AGAINST SPECIAL JUDGES.

"Article III of the Constitution limits federal judicial power to 'Cases' and 'Controversies.' A party that cannot present a case or controversy within the meaning of Article III does not have standing to sue in federal court." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th

Cir. 2013) (en banc) (*aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014)). To have standing, a party must have suffered an injury—"an invasion of a legally protected interest"— that is caused "by the conduct complained of" and redressable by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, . . . the federal court must dismiss the case for lack of subject matter jurisdiction." *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012) (quoting *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011)).

To establish Article III standing, each plaintiff must establish that (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of each defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S. Ct. 693 (2000); *Tandy v. City of Wichita,* 380 F.3d 1277, 1283 (10th Cir. 2004); *Hunnicutt v. Zeneca, Inc.*, No. 10-CV-708-TCK-TLW, 2012 WL 4321392, *2-*3 (N.D. Okla. Sept. 19, 2012) ("Where there are multiple defendants, the named plaintiff must establish standing with respect to each defendant."). "Each plaintiff must have standing to seek each form of relief in each claim." *Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1250 (10th Cir. 2017) (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007)).

The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of standing. *Lujan,* 504 U.S. at 561. If any one of these three elements—injury, causation, and redressability— is absent, then plaintiff has no standing under Article III to assert his claim. Article III standing is determined as of time at which plaintiff's complaint was filed. *See Nova Health Sys. v. Gandy,* 416 F.3d 1149, 1154–55 (10th Cir. 2005).

In the Tenth Circuit, the matter of standing must be determined before any class certification determination may proceed, which includes any proposed application of the juridical link doctrine. *Hunnicutt*, Case No. 10-CV-708-TCK-TLW, 2012 WL 113680, *6 (N.D. Okla. Jan. 13, 2012) (citations omitted). Special Judges have not been able to find case law wherein the Tenth Circuit, in the context of class certification, has adopted the juridical link doctrine. However, this doctrine cannot be substituted for standing analysis. *Hunnicutt*, Case No. 10-CV-708-TCK-TLW, 2012 WL 4321392, *3 n.3 (N.D. Okla. Sept. 19, 2012); *see Allee v. Medrano*, 416 U.S. 802, 828-829 (1974) ("Standing cannot be acquired through the back door of a class action.") (citations omitted); *see also*, 1 *Newberg on Class Actions* § 2:5 (5th ed.) ("In multidefendant class actions, the named plaintiffs must show that each defendant has harmed at least one of them. Generally, class representatives do not have standing to sue defendants who have not injured them even if those defendants have allegedly injured other class members.") (footnotes omitted).

This burden of a live case or controversy exists "at all times throughout the litigation," *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006), though the terminology changes depending on the stage of litigation. "[M]ootness '[is] the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22, 117 S. Ct. 1055 (1997)). The existence of a live case or controversy is a constitutional prerequisite and therefore mootness is a threshold issue to Federal court jurisdiction. *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005). "'Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious.'" *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008) (quoting *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007)).

### A.  Plaintiff Feltz has no traceable injury to seventeen of the Special Judges.

Plaintiff Feltz's Count Two against seventeen of the Special Judges (this proposition does not include Judge Doss who is substituted for Judge Moody) cannot be traced to them. These Special Judges did not handle the initial arraignment docket on which Feltz appeared. They did not make any decisions about Feltz's detainment, and were not in a position to make a decision about his detainment. Therefore, there is no traceable injury to these seventeen Special Judges at the time of the filing of the original complaint, such that Feltz lacks standing to pursue declaratory relief against these named officials. Further, these seventeen judges cannot redress a harm done by another's practices and any declaration against these seventeen judges by this Court would be advisory in nature. Feltz's claim for declaratory relief against these seventeen Special Judges should be dismissed for lack of subject matter jurisdiction.

### B.  Plaintiff Feltz's claim against Judge Doss, the substituted official for Judge Moody, is moot.

A claim for declaratory relief that does not "'settl[e] … some dispute which affects the behavior of the defendant toward the plaintiff' is moot, *Rio Grande Silvery Minnow [v. Bureau of Reclamation]*, 601 F.3d [1096,] at 1110 [(10th Cir. 2010)] (quotations omitted), because it fails to 'seek[] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant,' *Jordan [v. Sosa]*, 654 F.3d [1012,] 1025 [(10th Cir. 2011)]." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019). Another instance where mootness occurs is when there is a change in government official during the pendency of the action and the actions alleged were personal to that particular defendant or because the defendant can no longer comply with the remedy that may be ordered by the court. *Jordan v. Sosa*, 654 F.3d 1012, 1027 n.16 (10th Cir. 2011); 15 *Moore's Federal Practice* § 101.94[3]; *Spomer v. Littleton*, 414 U.S. 514, 520-523 (1974).

Plaintiff Feltz's Count Two against Judge Doss is moot as the official who had discretionary control over his proceeding is no longer a special judge - Dawn Moody. To the extent Judge Doss participates in the bond docket created, she does so pursuant to Rule CR2, which informs her discretion in how to conduct the docket or an individual proceeding as they are presented to her. There is no evidence that Judge Doss does not consider "ability to pay" along with the other permissible factors listed in *Brill* that inform her discretion on bail determinations. Additionally, there is no evidence or allegation that Judge Doss has adopted the practice or policy attributed individually to former Special Judge Moody. Feltz alleged that former Special Judge Moody had adopted a practice or policy of "refusing" to consider bail at initial arraignments.

Plaintiff Feltz has no allegations or evidence that he is likely to be harmed by Rule CR2 as the law assumes he will act in law abiding manner in the future (and will not come in contact with the Rule). Plaintiff Feltz's claim against Judge Doss cannot be salvaged with an exception to the mootness doctrine. "To constitute an exception to the mootness doctrine, it is not enough that an issue will escape review because of limited duration. It is also necessary that there be a reasonable expectation that the same complaining party [will] be subjected to the same action again." *McKesson Corp. v. Hembree*, No. 17-CV-323-TCK-FHM, 2018 WL 4621833, *2 (N.D. Okla. Sept. 26, 2018) (quoting *United States v. Seminole Nation of Okla.*, 321 F.3d 939, 944 (10th Cir. 2002) (internal quotations and citation omitted)). However, courts generally presume that people will operate within the law and not be subject to arrest. *See O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S. Ct. 669 (1974) ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners."). "[T]o establish an actual controversy ..., [Feltz] would [need] ... to allege that [he will] ... have another encounter with the police." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 103 S. Ct. 1660 (1983); *Collins v. Daniels*, 916 F.3d 1302, 1314-1315 (10th Cir. 2019) (Plaintiff's claim for prospective relief is moot as she is no longer subject to pretrial

13

supervision and there is no appreciable risk of future arrest and subsequent arraignment under the Rules and Arnold Tool.).

Plaintiff Feltz has indicated that he believes his claims are not moot because of the voluntary cessation exception to the mootness doctrine. "The voluntary cessation exception does not apply, and a case is moot, 'if the defendant carries "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."'" *Prison Legal News*, 944 F.3d at 881 (footnotes and citations omitted). However, "[c]ourts may accord 'more solicitude' to government officials' claims that their voluntary conduct moots a case." *Id.* (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1116 n.15). "'[G]overnment self-correction provides a secure foundation for mootness so long as it seems genuine.' *Brown [v. Buhman]*, 822 F.3d [1151,] 1167-68 [(10th Cir. 2016)] (alterations and quotations omitted). And absent evidence the voluntary cessation is a sham, the mere possibility a successor official may shift course does not necessarily keep a case live. *See Id.* at 1175 (explaining 'hypothetical' that a future government official could change a policy 'does not breathe life into an otherwise moot case')." *Prison Legal News*, 944 F.3d at 881.

The voluntary cessation exception does not save Plaintiff Feltz's claim from mootness. Rule CR2 is a policy that applies to all the Special Judges who conduct bond docket proceedings and provides that they may not operate under an individual policy or practice that does not have a bond hearing (the harm alleged by Feltz). Non-party District and Associate District Judges promulgated the policy embodied in Rule CR2 to inform the discretion of the Special Judges. While these non-parties do not sit in review of the decisions on bail made by the Special Judges, they are the body responsible for appointing the Special Judges. The Special Judges serve at their pleasure and are not likely to change the policy implemented in under Rule CR2, as the Special Judges have no authority to amend or repeal the Local Rules. The Local Rules may only be modified by a majority of the District and Associate District Judges. *See* Rule 1 of the Local Rules

for the Fourteenth Judicial District. As such, Plaintiff Feltz's complaint about having no process to review his bail is moot. Therefore, the Court should dismiss Plaintiff Feltz's claim under Count Two against the Special Judge for lack of subject matter jurisdiction.

### C.   Plaintiffs Feltz and Dennis have no injury traceable to warrant arrests or arrests for charges not on the pre-set bond schedule.

Plaintiffs Feltz and Dennis were both arrested for open charges that appear on the pre-set bond schedule. Plaintiffs have no injury from any alleged policy or practice of the Special Judges with regards to warrants or arrests for charges that do not appear on the pre-set bond schedule. Warrants and charges that are not eligible for a pre-set bond have their own statutes regarding issuance and appearance that are not applicable to Plaintiffs. Further, the pre-set bond schedule, which is the impetus for Plaintiffs' claims that they were detained because they were too poor, does not apply to warrant arrests or those charges not on the pre-set bond schedule. Therefore, there is no traceable injury to Plaintiffs by any alleged policy, or by any particular Special Judge in how warrants are issued. Further, there is no nexus between Plaintiffs and any policy or practice by any of the eighteen Special Judges, such that any declaration would be advisory in nature. Therefore, Plaintiffs lack standing to assert claims for themselves about those procedures and this Court lacks subject matter jurisdiction to address warrant arrests and arrests for charges not on the pre-set bond schedule.

### D.   Plaintiff Dennis has no injury traceable to seventeen of the Special Judges for his bond docket appearance nor is it redressable by them.

Plaintiff Dennis' Count Two against seventeen of the Special Judges (this proposition does not include Judge Wilson) cannot be traced to them. These Special Judges did not handle the bond docket on which Dennis appeared. They did not make any decisions about Dennis' bail and were not in a position to make a decision about his bail. Therefore, there is no traceable injury to these seventeen Special Judges, such that Dennis lacks standing to pursue declaratory relief against these named officials. Further, any alleged injury to Dennis is done by a particular judge according to

15

that judge's practices. These seventeen judges cannot redress a harm done by another's practices and any declaration by this Court would be advisory in nature. Therefore, Dennis' claim for declaratory relief against these seventeen Special Judges should be dismissed for lack of subject matter jurisdiction.

### E. Ex Parte Young does not apply to Plaintiff Dennis' claim against Special Judge Wilson as any declaration would be retrospective in nature and is barred by the Eleventh Amendment.

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. As interpreted by the Supreme Court, "[t]he Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013). Plaintiff Dennis argues his claims fall within the Eleventh Amendment exception of *Ex parte Young*, 209 U.S. 123 (1908), which permits suits against state officials in their official capacity "seeking to enjoin alleged ongoing violations of federal law." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011).

To come under *Ex parte Young*, "the plaintiff must be '(1) suing state officials rather than the state itself, (2) alleging an ongoing violation of federal law, and (3) seeking prospective relief.'" *Cressman v. Thompson*, 719 F.3d 1139, 1146 n. 8 (10th Cir. 2013) (quoting *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012)). It is well established that official capacity "claims for . . . , monetary damages, and *retroactive declaratory relief* are barred by the Eleventh Amendment." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004) (emphasis added). Specifically, "declaratory relief is not permitted under *Ex parte Young* when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." *Roberts v. New York*, 911 F. Supp. 2d 149, 163-64

16

(N.D.N.Y. 2012) (citing in part *Green v. Mansour*, 474 U.S. 64, 74 (1985) (as "holding that a request for a declaratory judgment holding that portions of a statute are unconstitutional is 'nothing more than an indirect way of forcing the State to abide by its obligations as they existed before the enactment of the Act and therefore, essentially a request for specific performance' and, thus, not permitted")). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted). "It is true that a complaint must allege that the defendant is violating federal law, not simply that the defendant has done so." *NiGen Botech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (citing *Green v. Mansour*, 474 U.S. 64, 71-73 (1985)).

The Supreme Court has emphasized and explained this element's importance to this immunity exception:

> *Young*'s applicability has been tailored to conform as precisely as possible to those specific situations in which it is "necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst [State School and Hospital v. Halderman, 465 U.S. 89]*, supra, at 105, 104 S. Ct., at 910 [(1984)] (quoting *Young*, *supra* 209 U.S., at 160, 28 S. Ct., at 454). Consequently, *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 426, 88 L.Ed.2d 371 (1985) (citation omitted).

*Papasan v. Allain*, 478 U.S. 265, 277–78 (1986).

Plaintiff Dennis appeared on the bond docket and received a ruling on his bond among other things from Judge Wilson. This bond docket appearance happened before Plaintiff sought to be added to this case or was granted leave to be added to this case. Therefore Plaintiff Dennis is requesting a retrospective declaration in regards to how the discretionary aspects of the bond docket hearing were conducted by Judge Wilson and the ruling made by Judge Wilson on his bond docket appearance. A declaratory judgment in this case about Judge Wilson's conduct in conducting the bond docket hearing would not redress Dennis's harm as it is retrospective. Stated another way, a declaratory judgment in this case would only state the Dennis's rights had been violated in the past. Further, there are no allegations about future imminent harm that would allow Plaintiff Dennis to request prospective relief as to bond docket appearances. *See O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S. Ct. 669 (1974) ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners."). "[T]o establish an actual controversy ..., [Dennis] would [need] ... to allege that [he will] ... have another encounter with the police." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 103 S. Ct. 1660 (1983).

Plaintiff may attempt to say the relief is prospective because of the unnamed putative class members that will be arrested in the future are having their rights declared. However, this argument contains a logical fallacy. The proceedings are individualized hearings that must be examined by a court on an individual basis after the hearing has occurred to determine if a particular hearing was not constitutionally compliant. This case now depends on a case-by-case analysis and can only be retrospective in nature and any relief for unnamed putative class members is appropriately pursued under state remedies. For these reasons, federal subject matter jurisdiction is lacking.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant Special Judges request that the Court dismiss Plaintiffs' claims against them for lack of subject matter jurisdiction and grant them all other relief deemed just and equitable.

Respectfully submitted,

s/ Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA #22422**
**ERIN M. MOORE, OBA #20787**
**DEVAN A. PEDERSON, OBA # 16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:     (405) 521-3921
Facsimile:     (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
         erin.moore@oag.ok.gov
         devan.pederson@oag.ok.gov
*Attorneys for Defendant State Judges*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of March, 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and I further certify that on this date a true and correct copy of the foregoing was served on following who are ECF registrants:

Kristina Saleh
Hayley Horowitz
Phoebe Kasdin
Still She Rises, Tulsa
567 E. 36th Street North
Tulsa, OK 74106
kristinas@stillsherises.org
hayleyh@stillsherises.org
phoebek@stillsherises.org
*Attorneys for Plaintiff*

Alexandria Twinem
Ryan Downer
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, DC 20009
alexandria@civilrightscorps.org
ryan@civilrightscorps.org
alexandria@civilrightscorps.org
*Attorneys for Plaintiff*

Allison Holt Ryan
Michelle Kisloff
Gary Yeung
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004
allison.holt-ryan@hoganlovells.com
michelle.kisloff@hoganlovells.com
gary.yeung@hoganlovells.com
*Attorneys for Plaintiff*

Vassi Iliadis
Hogan Lovells US LLP
1999 Avenue or the Arts, Suite 1400
Los Angeles, CA 90067
vassi.iliadis@hoganlovells.com
*Attorney for Plaintiff*

Douglas Allen Wilson
DA Office Tulsa-900
500 S Denver Ave Ste 900
Tulsa, OK 74103-3832
*Attorney for Defendant Regaldo and*
*Board of County Comm of County of Tulsa*

Jeb Joseph
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
Jeb.Joseph@oag.ok.gov
*Attorney for Non-party Jari Askins*

 s/ Stefanie E. Lawson
**Stefanie E. Lawson**

20