CASE NO. 18-cv-298-CVE-JFJ

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

RICHARD FELTZ and ASHTON DENNIS,
on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF TULSA, *et al.,*

Defendants.

DEFENDANT PRESIDENT JUDGE'S
MOTION TO DISMISS AND BRIEF IN SUPPORT

STEFANIE E. LAWSON, OBA#22422
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518

*Attorney for Defendant President Judge William LaFortune*

March 31, 2021

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................. i

**TABLE OF AUTHORITIES** .......................................................... ii

**DEFENDANT PRESIDING JUDGE'S MOTION TO DISMISS** ........................................... 1

**INTRODUCTION** ....................................................................... 1

    *A.  Plaintiffs' backgrounds and Second Amended Complaint* ............................................. 1

    *B.  President Judge* ................................................................. 5

    *C.  Oklahoma's Bail Scheme* ................................................ 7

**ARGUMENT AND AUTHORITIES** ............................................. 9

    **RULE 12(b)(1) STANDARD OF REVIEW** .................................... 9

    **RULE 12(b)(6) STANARD OF REVIEW** .................................... 10

**PROPOSITION I:**

    **PLAINTIFFS DO NOT HAVE A LIVE CASE OF CONTROVERSY AGAINST LaFORTUNE** ...................... 11

    *A.  A declaratory judgment cannot redress Plaintiffs' alleged injuries* ............................ 14

    *B.  Because prospective injunctive relief cannot redress Plaintiffs' purported harms, Plaintiff's lack either standing or have moot claims under Count One or Two against LaFortune* ............................................................. 15

    *C.  Ex Parte Young does not apply to Plaintiffs' claims against LaFortune and are barred by the Eleventh Amendment* ............................................... 17

**PROPOSITION II:**

    **PLAINTIFFS' HAVE FAILED TO STATE A CLAIM AGAINST PRESIDING JUDGE LaFORTUNE** .................. 19

**CONCLUSION** ......................................................................... 23

**CERTIFICATE OF SERVICE** ........................................................ 24

## TABLE OF AUTHORITIES

### CASES

*Albright v. Oliver,*
510 U.S. 266 (1994)...........................................................................................................22

*Allee v. Medrano,*
416 U.S. 802 (1974)...........................................................................................................12

*Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1,*
859 F.3d 1243 (10th Cir. 2017) .........................................................................................11

*Arizonans for Official English v. Arizona,*
520 U.S. 43 (1997).............................................................................................................12

*Bell Atlantic v. Twombly,*
550 U.S. 544 (2007)...........................................................................................................10

*Bennett v. Passic,*
545 F.2d 1260 (10th Cir. 1976) .........................................................................................10

*Broker's Choice of Am. v. NBC Universal, Inc.,*
861 F.3d 1081 (10th Cir. 2017) .........................................................................................10

*Bronson v. Swensen,*
500 F.3d 1099 (10th Cir.2007) ..........................................................................................11

*Bowman v. State,*
585 P.2d 1373 ......................................................................................................................8

*Brown v. Buhman,*
822 F.3d 1151 (10th Cir.2012) ..........................................................................................12

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983).......................................................................................................15, 16

*Clark v. Hall,*
53 P.3d 416 (Okla. Cr. 2002)...............................................................................................8

*Collins v. Daniels,*
916 F.3d 1302 (10th Cir. 2019) .........................................................................................19

*Collins v. City of Harker Heights,*
503 U.S. 115 (1992)...........................................................................................................22

*Conn v. Gabbert,*
526 U.S. 286 (1999)................................................................................22

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998)................................................................................22

*Cox v. Phelps Dodge Corp.,*
43 F.3d 1345 (10th Cir. 1994) ...............................................................13

*Cressman v. Thompson,*
719 F.3d 1139 (10th Cir. 2013) .............................................................17

*Crowe & Dunlevy, P.C. v. Stidham,*
640 F.3d 1140 (10th Cir. 2011) .............................................................17

*Dawson v. Board of county Commissioners of Jefferson County Colorado,*
732 F.App'x 624 (10th Cir. 2018) ..........................................................21

*Dennis v. Sparks,*
449 U.S. (1980)......................................................................................16

*Disability Law Ctr v. Millcreek Health Ctr.,*
428 F.3d 992 (10th Cir. 2005) ...............................................................13

*Ex parte McClellan,*
97 P. 1019 (Okla. Crim. App. 1908)........................................................8

*Ex parte Young,*
209 U.S. 123 (190)......................................................................17, 18, 19

*Exikson v. Pawnee County Bd. of County Comm'rs,*
263 F.3d 1151 (10th Cir. 2001) .............................................................10

*Facio v. Jones,*
929 F.2d 541 (10th Cir. 1991) ...............................................................13

*Flandermeyer v. Bonner,*
152 P.3d 195 (Okla. 2006).....................................................................14

*Fla. Wildlife Fed'n Inc. v. S. Fla. Water Mgmt. Dist.,*
647 F.3d 1296 (11th Cir.2011) ..............................................................11

*Franklin v. Massachusetts,*
505 U.S. 788 (1992)................................................................................13

*Friends of the Earth Inc. v. Laidlaw Envtl Servs (TOC), Inc.,*
528 U.S. 167 (2000)...................................................................................................11

*Graham v. Connor,*
490 U.S. 386 (1989)...................................................................................................22

*Green v. Mansour,*
474 U.S. 64 (1985).............................................................................................17, 18

*Habecker v. Town of Estes Park Colo.,*
518 F.3d 1217 (10th Cir. 2008) ................................................................................13

*Hainey v. State,*
740 P.2d 146 (Okla. Cr. 1987) ....................................................................................8

*Hall v. Bellmon,*
935 F.2d 1106 (10th Cir. 1991) ................................................................................10

*Halley v. Huckaby,*
902 F.3d 1136 (10th Cir. 2018) ................................................................................22

*Hobby Lobby Stores, Inc. v. Sebelius,*
723 F.3d 114 (10th Cir. 2013) (en banc)(*aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.,* 134
S.Ct. 2751 (2014)......................................................................................................11

*Holt v. U.S.,*
46 F.3d 1000 (10th Cir. 1995) .....................................................................................9

*Hubber v. State,*
45 P.3d 96 (Okla. Crim. App. 2002)............................................................................9

*Hunnicutt v. Zeneca, Inc.,*
2012 WL 4321392 (N.D. Okla. Sept. 19, 2012) ..................................................11, 12

*Hyland v. Davis,*
149 F.3d 1183 (6th Cir. 1998) ..............................................................................6, 16

*Kokkonen v. Guardian Life Ins. Co.,*
511 U.S. 375 (1994)......................................................................................................9

*Lippoldt v. Cole,*
468 F.3d 1204 (10th Cir. 2006) ............................................................................12, 15

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)..................................................................................................11, 12

*Lundahl v. Zimmer,*
296 F.3d 936 (10th Cir. 2002) ................................................................16

*Mann v. Conlin,*
22 F.3d 100 (6th Cir.) cert denied, 513 U.S. 870 (1994) ..........................6, 16

*Meiners v. University of Kansas,*
359 F.3d 122 (10th Cir. 2004) ................................................................17

*Mink v. Suthers,*
482 F.3d 1244 (10th Cir. 2007) ..............................................................13

*Muscogee (Creek) Nation v. Pruitt,*
669 F.3d 1159 (10th Cir. 2012) ..............................................................17

*NiGen Boitech L.L.C. v. Paxton,*
804 F.3d 389 (5th Cir. 2015) ..................................................................18

*Nova Health Systems v. Gandy,*
416 F.3d 1149 (10th Cir. 2005) ...........................................................12, 13

*Ohio Nat'l Life Ins. Co. v. U.S.,*
922 F.2d 320 (6th Cir. 1990) ....................................................................9

*O'Donnell v. Goodhart,*
900 F.3d 220 (5th Cir. 2018) ..................................................................21

*O'Shea v. Littleton,*
414 U.S. 488 (1974)...........................................................................15, 18

*Papasan v. Allain,*
748 U.S. 265 (1986)................................................................................18

*Peters v. Grisham,*
594 F.3d 723 (10th Cir. 2010) ................................................................10

*Peterson v. Martinez,*
707 F.3d 1197 (10th Cir. 2013) ..............................................................17

*Petition for Humphrey,*
1979 OK CR 97 .......................................................................................9

*Portunondo v. Agard,*
529 U.S. 61 (2000)..................................................................................22

*Pugh v. Rainwater,*
572 F.2d 1057 (5th Cir. 1978) .................................................................8, 21

*Robbins v. Oklahoma,*
519 F.3d 1242 (10th Cir. 2008) .................................................................10

*Roberts v. New York,*
911 F.Supp.2d 149 (N.D.N.Y. 2012) .........................................................17

*Stone v. Albert,*
338 F.App'x 757 (10th Cir. 2009) ..............................................................10

*Stump v. Sparkman,*
435 U.S. 349 (1978)....................................................................................16

*Tandy v. City of Wichita,*
380 F.3d 1277 (10th Cir. 2004) .................................................................11

*Unified Sch. Dist. No. 259, Sedgwick Cnty. Kan. V. Disability Rights Ctr. of Kan.,*
491 F.3d 1143 (10th Cir. 2007) .................................................................13

*United States v. Lanier,*
520 U.S. 259 (1997).....................................................................................22

*United States v. Ramos,*
695 F.3d 1035 (10th Cir. 2012) .................................................................11

*U.S. v. Salerno,*
481 U.S. 739 (1987)................................................................................20, 21

*Utah Animal Rights Coalition v. Salt Lake City Corp.,*
371 F.3d 1248 (10th Cir. 2004) .................................................................13

*Verizon Maryland, Inc. v. Public Service Comn of Maryland,*
535 U.S. 635 (2002)....................................................................................18

*Walker v. City of Calhoun Ga.,*
910 F.3d 1245 (11th Cir. 2018) .........................................................21, 22, 23

*Walker v. United Parcel Serv. Inc.,*
240 F.3d 1268 (10th Cir. 2001) .................................................................13

*Wheeler v. Hurdman,*
825 F.2d 257 (10th Cir.) cert denied, 484 U.S. 986 (1987) ...........................9

*Wiggins v. New Mexico State Sup. Ct. Clerk,*
664 F.2d 812 (10th Cir. 1981) ...................................................................16

## STATUTES

20 O.S. § 23 ...........................................................................................5

22 O.S. § 55 ...........................................................................................8

20 O.S. Ch. 1 Appx 2 Rule 1 .................................................................5

20 O.S. Ch. 1 Appx 2 Rule 2 .................................................................5

20 O.S. Ch. 1 Appx 2 Rule 3 .................................................................5

20 O.S. Ch. 1 Appx. 2 Rule 6 ................................................................5

22 O.S. § 1101 .......................................................................................7

22 O.S. § 1102 .......................................................................................7

22 O.S. § 1103 .......................................................................................7

22 O.S. § 1104 .......................................................................................7

22 O.S. § 1105.1 ....................................................................................7

22 O.S. § 1105.2 .............................................................................7, 8, 23

22 O.S. § 1105.2(c) ................................................................................7

22 O.S. § 1105.3 ................................................................................2, 7

22 O.S. § 1108.1 ....................................................................................7

59 O.S. § 33 ...........................................................................................7

59 O.S. § 33A ........................................................................................7

59 O.S. § 1334 .......................................................................................7

18 U.S.C. § 3141-3150 .........................................................................20

42 U.S.C. § 1981a .................................................................................13

42 U.S.C. § 1983 ...................................................................................16

**RULES**

Rule CR 1..................................................................................................................8

Rule CR 2..........................................................................................................3, 8, 15

Fed. R. Civ. P. 12(b)(1)...........................................................................................9

Fed. R. Civ. P. 12(b)(6).........................................................................................10

Fed. R. Civ. P. 12(h)(3)...........................................................................................9

**OTHER**

Okla. Const. art. II § 8...........................................................................................

U.S. Const. amend XI.............................................................................................17

Federal Court Improvement Act, 96 Stat. 25.........................................................16

Newberg on Class Actions § 2-5 (5th Ed.) ............................................................12

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

RICHARD FELTZ, on behalf of himself and
all others similarly situated,

     Plaintiff,

v.

                        **Case No.: 18-cv-298-CVE-JFJ**

TULSA COUNTY, *et al.,*

     Defendants.

## DEFENDANT PRESIDING JUDGE'S MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant Presiding Judge and District Judge William LaFortune ("LaFortune"), by and through the undersigned counsel, respectfully requests the Court dismiss Plaintiffs Richard Feltz and Ashton Dennis's Second Amended Complaint [Doc. 259] against him pursuant to Fed. R. Civ. P. 12(b). In support of his request, LaFortune shows the Court the following:

### INTRODUCTION

#### A. *Plaintiffs' backgrounds and Second Amended Complaint*

On March 3, 2021, the Second Amended Complaint was filed in this matter. [Doc. 259]. The motion to amend the complaint was filed on December 20, 2020 and granted on February 26, 2021. [Docs. 224 and 256]. In the Second Amended Complaint, there are five (5) paragraphs specifically mentioning Feltz and nine (9) paragraphs specifically mentioning Dennis out of the 141 paragraphs. [Doc. 259 at ¶¶ 15-16 and 27-34].

Plaintiff Feltz was a pretrial detainee in the custody of the Tulsa County Jail at the time this suit was filed on June 6, 2018. While detained in the Tulsa County Jail, Plaintiff Feltz was given a bail amount pursuant to the pre-set bail schedule. On June 9, 2018, Plaintiff Feltz was released from detention after posting bond via a private surety. On June 11, 2018, Plaintiff Feltz

then appeared at his initial arraignment before Judge Moody[1] with private counsel. After his initial arraignment, Plaintiff Feltz went to Florida for ninety (90) days to obtain treatment. Plaintiff Feltz has resolved the criminal proceedings for which he was a pretrial detainee except for the post-conviction payment of costs and fines. *See Feltz Criminal Docket Sheet*, attached as Exhibit 1.

At the time of Plaintiff Feltz's arrest (without warrant)[2] and detention in the Tulsa County jail, LaFortune was not the Presiding Judge and Rule CR2 of the Local Rules for the Fourteenth Judicial District had not been adopted by the district judges of Tulsa County. Plaintiff Feltz has generally alleged there was no process for him to receive bail other than the pre-set bail schedule bail amount under the policies of the then Presiding Judge (Judge Musseman). [Doc. 259 at ¶ 4].

Based upon the allegations in the Second Amended Complaint, Feltz has two generically entitled federal claims against LaFortune: "Count One: Defendants Presiding Judge LaFortune, Tulsa County Board, and Tulsa County Sheriff Violate Plaintiffs' Equal Protection and Due Process Rights Against Wealth-Based Detention by Jailing Them Because They Cannot Afford A Monetary Payment." [Doc. 259 at p.31] and "Count Two: Defendants Violate Plaintiffs' Right to Pretrial Liberty by Jailing Them Without Procedural Due Process." [Doc. 259 at p.31]. However, he really has six federal claims for relief against LaFortune as he seeks: (1) declaration of violation of equal protection under Count One; (2) injunctive relief for the equal protection claim under Count One; (3) declaration of violation of substantive due process under Count One; (4) injunctive

---

[1] Judge Moody is no longer a party to this case as she is no longer a special judge, but a district judge. Judge Julie Doss has been substituted for Judge Moody as Judge Doss was appointed to Judge Moody's special judge office.

[2] Feltz and Dennis were arrested for crimes that appear on the pre-set bail schedule. There are certain classes of crimes that are not eligible for the pre-set bail schedule such as domestic abuse. *See* 22 O.S. § 1105.3. These crimes have their own statutory and local procedures neither of which apply to these Plaintiffs. Similarly, warrants have their own statutory and local procedures, which also do not apply to these Plaintiffs. Plaintiffs seek to include in their claims challenges to warrant arrest procedures and arrests that do not have bail amounts on the pre-set bail schedule. They do not have standing to assert these claims.

relief for the substantive due process claim under Count One; (5) declaration of violation of procedural due process under Count Two; and (6) injunctive relief for the procedural due process violation under Count Two.

Plaintiff Dennis was arrested (without warrant) on December 15, 2020 and detained in the Tulsa County jail. At booking into the Tulsa County jail, Plaintiff Dennis was given a bond amount of $51,000.00 for the four arrest charges against him pursuant to the pre-set bail schedule. On December 16, 2020, Plaintiff Dennis appeared before Defendant Special Judge Tanya Wilson on the bond docket. At this hearing, Judge Wilson reviewed the probable cause affidavit, the bail to be set, heard argument from Plaintiff Dennis' public defender and the Assistant District Attorney. Judge Wilson then issued her ruling from the bench, which dismissed two of the counts and set the bail at $4,000.00. *See Dennis NF Docket Sheet*, attached as Exhibit 2. After Dennis' appearance at the bond docket, he remained detained through his initial arraignment on December 21, 2020, where he was appointed counsel by Judge Guten for his remainder of his case and his bond was addressed again. *See Dennis CF Docket Sheet*, attached as Exhibit 3. On December 23, 2020, Dennis posted bail via the Bail Project and released from the Tulsa County jail. On February 23, 2021, the criminal charges against Dennis were dismissed. *See* Ex. 3.

At the time of Plaintiff Dennis' arrest (without warrant) and detention in Tulsa County jail, LaFortune was (and still is) the Presiding Judge and Rule CR2 was in effect (as adopted by the district judges of Tulsa County). *See Rule CR2,* attached as Exhibit 4.

Based upon the allegations in the Second Amended Complaint, Dennis also has the two generically entitled claims against LaFortune (same as Feltz) [Doc. 259 at p.31]) that are really six federal claims for relief: (1) declaration of violation of equal protection under Count One for wealth based detention; (2) injunctive relief for the equal protection claim for wealth based detention under Count One; (3) declaration of violation of substantive due process under Count One; (4) injunctive relief for the substantive due process claim under Count One; (5) declaration

of violation of procedural due process under Count Two as relates to the bond docket hearing process; and (6) injunctive relief for the due process violation under Count Two as relates to the bond docket hearing process.

Plaintiffs Feltz and Dennis then in their "Request for Relief" ask for the following:

a. An order and judgment preliminarily and permanently enjoining Defendants the Tulsa County Board, Sheriff Regalado, and the Tulsa County District Court Presiding Judge LaFortune from using secured financial conditions of release to detain Plaintiffs and class members without ensuring a due process-compliant inquiry into and findings concerning a person's ability to pay, without due process-compliant consideration of and findings concerning alternatives, without findings concerning the necessity of detention, and without appointing counsel to assist at due process-compliant bail hearings and meaningfully challenge pretrial detention;

b. A declaration that the Defendants violate Plaintiffs' and class members' constitutional rights by requiring secured financial conditions of release without findings concerning ability to pay and necessity of detention, and by issuing and enforcing de facto orders of wealth-based pretrial detention without consideration of alternatives and without findings that such detention is necessary to serve a compelling interest;

c. A declaration that the Defendants violate Plaintiffs' and class members' right to procedural due process under the Fourteenth Amendment by depriving people who are arrested of speedy, individualized release hearings with notice, counsel, the opportunity to be heard and to confront evidence, and findings on the record that the government met its burden to demonstrate by clear and convincing evidence that no alternative condition or combination of conditions would be sufficient to serve its compelling interests; ….

[Doc. 259 at p.32-35].

**B. Presiding Judge**

The Presiding Judge is a statutorily created position under the laws of the State of Oklahoma. *See* 20 O.S. §23[3], 20 O.S. Ch. 1 Appx 2 Rule 1.[4] This position is limited to certain administrative and executive level tasks for the district courts in the judicial district over which the position sits. Rule 1(A). By Rule, each presiding judge performs administrative supervisory duties to ensure efficient operation of court business. Mandatory duties include "general administrative authority and supervision" over assignment of cases, the work and operation of courts, and any other duties assigned by the Chief Justice. Rule 1(D). Discretionary duties include assisting and counseling other judges in their *administrative* responsibilities, coordinate and assign court personnel, make assignments to balance workloads of court personnel and other duties to carry out the purpose of the rules. Rule 1(E)(emphasis added). Rules 2, 3, and 6 further outline the administrative and executive functions of the presiding judge. Rule 2 provides for general administration and supervision of court personnel, specifically the assignments and schedules necessary for personnel management. 20 O.S. Ch. 1 Appx 2 Rule 2. Rule 3 provides for administrative oversight and control for the assignment of judges and court personnel. 20 O.S. Ch. 1 Appx 2 Rule 3. Rule 6 provides for the assembly of presiding judges to "discuss methods of improving the administration of justice." 20 O.S. Ch. 1 Appx 2 Rule 6.

---

[3]"The Supreme Court is authorized by rule or order to:…(2) Fix the administrative powers of the presiding judge, including but not limited to rules under which the presiding judge may assign judges to hold court outside of their own district but within the administrative district. Where not inconsistent with the rules of the Supreme Court, the presiding judge of the judicial administrative district may adopt rules that are calculated to bring about a more speedy and efficient administration of justice within his administrative district, including the appropriate times and places of holding court."

[4]Title 20 Ch. 1, Appx 2 Rules on Administration of the Courts Rule 1 Presiding Judges and Chief Judge

The presiding judge, therefore, is an administrative or executive office for the particular judicial administrative district, not an independent source of review for any particular decision on a case or docket. It was created to ensure the efficient function of the courts and personnel through docket assignments, schedules, workflow, etc. For example, presiding judges have the authority to issue administrative orders to implement specific Supreme Court orders or directives, such as such as deciding and directing which dockets were suspended for in person proceedings, and how to maintain critical dockets during courthouse closures due to the pandemic. This position does not have judicial review functions over the cases generally heard by the courts such that the Presiding Judge does not correct decisions made in individual proceedings. Nor is it a function of the Presiding Judge to monitor the daily proceedings of the other judges in the judicial district as the Presiding Judge has a full docket of individual proceedings to decide too.[5]

The initial creation of the bond docket via Administrative Order occurred under former Presiding Judge Musseman's authority to ensure the efficient operation of the criminal courts of Tulsa County. Less than a year later, the district judges and the associate judge in the judicial district codified the current version of Rule CR2 in accordance with Rule 1 of the Local Rules for the Fourteenth Judicial District[6,] thus establishing the permanence of the bond docket. The Presiding Judge does not have the authority to unilaterally amend or suspend the local rules.

---

[5]*See Hyland v. Davis*, 149 F.3d 1183, 1998 WL 384556, *2 (6th Cir. 1998) (unpublished table decision)("Providing direction on the enforcement of a court rule, although somewhat administrative in nature, is still a judicial act for which the judge is immune because the parties' rights and liabilities are thereby affected.") (*citing Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir.), cert. denied, 513 U.S. 870 (1994)).

[6]AMENDED GENERAL RULES
Adopted 7-13-2011
RULE 1. Official Court Rules - Adoption, Amendments, Supplements, Repeal The Local Rules of the Tulsa County District Court may be amended by a majority vote of the District and Associate District Judges of Tulsa County. Amendments to the Local Rules shall become effective immediately upon adoption by the District and Associate District Judges. Notice of changes shall

### C. *Oklahoma's Bail Scheme*

The Oklahoma Legislature has codified a bail scheme at 22 O.S. Chapter 19 Bail. It is made up of the Bail Act at 22 O.S. § 1101 to § 1105, the Pretrial Release Act at 22 O.S. § 1105.1 to § 1114.5A, and the State and Municipal Traffic, Water Safety, and Wildlife Bail Bond Procedure Act at 22 O.S. § 1115 to § 1115.5. There are also limited directives in Title 59 Chapter 33 and 33A, which regulate and license bail bondsmen. The Bail Act set out offenses for which bail may be denied and sets an evidentiary standard for denial of bail for those offenses ( 22 O.S. § 1101) and sets out bail setting and release requirements for certain domestic offenses (22 O.S. § 1105). The Pretrial Release Act expands the statutory framework for determining the release of arrestees. The Legislature delegated the authority to each presiding judge to establish a bail schedule for felony and misdemeanor offenses subject to certain statutory exceptions and exclusions. 22 O.S. § 1105.2(c) requires that pretrial bail be set in a numerical dollar amount and provides that failures to appear may result in the authorizing judge rescinding bail and entering a judgment in a dollar amount of pretrial bail if a private bail was not given at the time of release. The Presiding Judge otherwise has discretion, with consultation with the courts and district attorney of the judicial district, to set the specific amounts on the bond schedule. 22 O.S. § 1105.2 also gives judges discretion to use pretrial services where such program exists pursuant to 22 O.S. § 1105.3. Recognizance bonds are allowed by statute following an appearance before a judge. *See* 59 O.S. § 1334 "person in custody before the court" or authorized by judge; 22 O.S. § 1108.1 "final order of forfeiture by authorizing and issuing judge".

While the Presiding Judge has the statutory authority to establish a bail schedule to be published and reviewed by the courts and the district attorney of the judicial district (22 O.S. §

---

be posted at the Courthouse and on the Court's website. The local rules shall be available for access via the internet from the Court's website at www.tulsacountydistrictcourt.org

1105.2), the presiding judge does not enforce the use of the schedule as bonds are set individually by the judge hearing any particular case. *See* Rule CR1.[7]  The bail schedule is in place to allow for the efficient pre-hearing release for those that choose to utilize it. It acts as a standing order of release for those that meet the requirements and choose to abide by its terms. Once a criminal defendant appears before a judge acting as a magistrate for the purpose of setting conditions of release, the bail schedule is not binding. *See* Rule CR2[8]. The review authority for a bond setting, even pursuant to the bail schedule, exists through a motion to modify/reduce bond before a magistrate and/or the district judge hearing the case, depending on whether felony or misdemeanor charges have been filed, and then through a writ of habeas corpus.[9]

Finally, under Oklahoma Court of Criminal Appeals precedent, "[b]ail is not to be deemed excessive simply because the particular person charged cannot give the bail required." *Ex Parte McClellan*, 97 P. 1019, 1020 (Okla. Crim. App. 1908). "[P]ersonal financial resources are only one factor determining whether an accused is confined prior to trial. The gravity of the offense,

---

[7]LCR1 "A Criminal and Traffic Bond Index has been prepared and will be periodically reviewed under the direction of the Presiding Judge. This listing of bonds shall be for the purpose of expediting releases from the Tulsa County Jail and as a guide for judges to follow in order to provide consistency in bond settings. It shall not, however, affect the discretion of a Judge initially to set a higher or lower bond without a hearing or to raise or lower a bond initially set in a case, provided a proper hearing is held with all parties present."

[8]The purpose of the bail schedule is to permit the posting of bail without a delay associated with the "First Appearance" within 48 hours of being confined to the David L. Moss Criminal Justice Center, as mandated by 20 O.S. § 55. It is the opinion of the Court that the employ of such a schedule, as authorized by state law, "provides speedy and convenient release for those who have no difficulty in meeting its requirements[.]" *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978)

[9]A criminal defendant can file motions at the district level court requesting a reduction or change in bail conditions. *See Guten Depo.* at pp. 79-80, 115-116, attached as Exhibit 5. A criminal defendant can also file writs with the appropriate appellate court, the Court of Criminal Appeals. *See Clark v. Hall*, 53 P.3d 416 (Okla.Cr. 2002) (writ of habeas corpus used to by pretrial detainee to get individualized hearing on bail amount). Finally, a criminal defendant could preserve the issue for appeal and appeal it. *See Bowman v. State*, 585 P.2d 1373; *Hainey v. State*, 740 P.2d 146 (Okla. Cr. 1987). None of these methods were used by either Plaintiff.

the accused's contacts in the community, his previous record, and his ability to receive assistance from friends and family are equally important factors, and are not related to indigency. In some cases, bail may be denied regardless of the defendant's financial status. *Hubbard v. State*, 45 P.3d 96, 101 (Okla. Crim. App. 2002) (citing OKLA. CONST. art. II, § 8; *Petition of Humphrey*, 1979 OK CR 97, ¶ 14, 601 P.2d 103, 108).

## ARGUMENT AND AUTHORITIES

### RULE 12(b)(1) STANDARD OF REVIEW

"Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990)). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.*

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*; *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503 (1987). "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Holt*, 46 F.3d at 1003 (citing *Wheeler*, 825 F.2d at 259 n. 5). Plaintiffs have the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). LaFortune brings a factual challenge to the Court's subject matter jurisdiction as to Plaintiffs' claims. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

**RULE 12(b)(6) STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure empowers a court to dismiss a complaint for failure to state claims upon which relief may be granted. Motions to dismiss are properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and those factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, at 1965, 1974 (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. A court is not required to accept as true allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Finally, "dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Broker's Choice of Am. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017) (citing *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010)).

Plaintiffs' Second Amended Complaint does not comply with the pleading standards and in the context of a civil rights complaint specificity in pleading is essential. A complaint must clearly state what each defendant--typically, a named government employee--did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating personal participation of each named defendant is essential allegation in civil-rights action). "To state a claim, a complaint must 'make clear exactly who is alleged to have done what to whom.'" *Stone v. Albert*, 338 F.App'x 757, 759 (10th Cir. 2009) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)).

**PROPOSITION I:   PLAINTIFFS DO NOT HAVE A LIVE CASE OF CONTROVERSY AGAINST LAFORTUNE.**

"Article III of the Constitution limits federal judicial power to 'Cases' and 'Controversies.' A party that cannot present a case or controversy within the meaning of Article III does not have standing to sue in federal court." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013) (en banc) (*aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014)). To have standing, a party must have suffered an injury—"an invasion of a legally protected interest"— that is caused "by the conduct complained of" and redressable by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, . . . the federal court must dismiss the case for lack of subject matter jurisdiction." *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012) (quoting *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011)).

To establish Article III standing, each plaintiff must establish that (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of each defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693 (2000); *Tandy v. City of Wichita,* 380 F.3d 1277, 1283 (10th Cir. 2004); *Hunnicutt v. Zeneca, Inc.*, Case No. 10-CV-708-TCK-TLW, 2012 WL 4321392, *2-*3 (N.D. Okla. Sept. 19, 2012) ("Where there are multiple defendants, the named plaintiff must establish standing with respect to each defendant."). "Each plaintiff must have standing to seek each form of relief in each claim." *Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1250 (10th Cir. 2017) (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007)).

The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130 (1992). If any one of these three elements—injury, causation, and redressability— is absent, then plaintiff has no standing under Article III to assert his claim. Article III standing is determined as of time at which plaintiff's complaint was filed. *See Nova Health Systems v. Gandy,* 416 F.3d 1149, 1154–55 (10th Cir. 2005).

In the Tenth Circuit, the matter of standing must be determined before any class certification determination may proceed which includes any proposed application of the juridical link doctrine. *Hunnicutt v. Zeneca, Inc.*, Case No. 10-CV-708-TCK-TLW, 2012 WL 113680, *6 (N.D. Okla. Jan. 13, 2012) (citations omitted). LaFortune has not been able to find case law wherein the Tenth Circuit, in the context of class certification, has adopted the juridical link doctrine. However, this doctrine cannot be substituted for standing analysis. *Hunnicutt v. Zeneca, Inc.*, Case No. 10-CV-708-TCK-TLW, 2012 WL 4321392, *3 n.3 (N.D. Okla. Sept. 19, 2012); *see Allee v. Medrano*, 416 U.S. 802, 828-829 (1974) ("Standing cannot be acquired through the back door of a class action.")(citations omitted); *see also* 1 *Newberg on Class Actions* § 2:5 (5th ed.) ("In multidefendant class actions, the named plaintiffs must show that each defendant has harmed at least one of them. Generally, class representatives do not have standing to sue defendants who have not injured them even if those defendants have allegedly injured other class members.") (footnotes omitted).

This burden exists "at all times throughout the litigation," *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006) though the terminology changes depending on the stage of litigation. "[M]ootness '[is] the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22, 117 S.Ct. 1055 (1997)). The existence of a live

case or controversy is a constitutional prerequisite and therefore mootness is a threshold issue to Federal court jurisdiction. *Disability Law Ctr. v. Millcreek Health Ctr*., 428 F.3d 992, 996 (10th Cir. 2005). "'Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious.'" *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008) (quoting *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007)).

Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuits. *See Unified Sch. Dist. No. 259, Sedgwick Cnty. Kan. v. Disability Rights Ctr. of Kan.*, 491 F.3d. 1143, 1147 (10th Cir. 2007) As the Tenth Circuit noted in *Cox v. Phelps Dodge Corp*., "[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an *advisory opinion* is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." 43 F.3d 1345, 1348 (10th Cir. 1994) (brackets, en dash, and internal quotation marks omitted and emphasis added), superseded by statute on other grounds, Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1071, 1072 (codified at 42 U.S.C. § 1981a), as recognized in *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001).

The Tenth Circuit determined that a declaratory judgment is a means to proclaim liability for a past act, but to define the legal rights and obligations of the parties in anticipation of some future conduct. *See Utah Animal Rights Coalition v. Salt Lake City Corp*., 371 F.3d 1248, 1266 (10th Cir.2004) *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir.1991) ("plaintiff cannot maintain a declaratory… action unless he or she can demonstrate a good chance of being likewise injured in the future"). "Redressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power." *Gandy*, 416 F.3d at 1159 (*quoting Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J, concurring)).

### A.   A declaratory judgment cannot redress Plaintiffs' alleged injuries.

The crux of Plaintiffs' claims against Presiding Judge LaFortune stem from the presiding judge's authority to promulgate the bail schedule (]Doc. 259 at ¶¶ 22, 55]), the initial creation of the bond docket via administrative order (*id.* at ¶¶ 5, 88), and the general authority to issue administrative orders (*id.* at ¶¶ 22, 59). Plaintiffs' assertion that the Presiding Judge has authority to promulgate local rules (*id.* at ¶ 22) is incorrect, as well as the allegation that "stacking" is a Presiding Judge created policy.[10] (*id.* at ¶ 59).

Plaintiff Feltz was advised by the jail staff of the bond pursuant to the bond schedule and bonded out via private surety before appearing before a judge. He did not seek reduction of his bond, either prior to or after posting the bond. The bond schedule did not delay his release. Feltz does not allege, and it is not the case, that any action by any presiding judge, beyond the discretionary determination of the amount generally adequate to ensure appearance for any particular offense prior to a bond hearing before a judge violated his rights. The creation of a bail schedule, as opposed to the application of the schedule, is too attenuated to establish the necessary causation – Rule 2 reiterates to the Special Judges that the judges hearing the bond docket have the discretion to set conditions of release outside the bail schedule. As for his claims for procedural due process, the adoption of Rule 2[11] by a majority of the district and associate judges of Tulsa County has mooted his claims. Feltz alleges that prior to the bond docket, he received no process at all. Should Feltz again be subject to criminal charges in Tulsa County, he would be subject to the Rule 2 procedures.

---

[10] AO 2017-6 was issued by former Presiding Judge Nightengale prohibited stacking except for particular enumerated violent offenses. AO 2017-6 was superceded by the adoption of LCR2. *See* AO 2019-10.

[11] Rule 2 provides arrestees notice and opportunity to be heard on the issue of conditions of release. *See Flandermeyer v. Bonner*, 152 P.3d 195, 198 (Okla. 2006).

Plaintiff Dennis similarly cannot sustain a claims against Judge LaFortune that would be redressable by this court. Dennis was arrested for charges that appear on the bond schedule. As soon as he appeared before Judge Wilson on the bond docket, the bond schedule no longer applied and he was subject to the discretion of Judge Wilson. A declaratory judgment against Judge LaFortune will not redress the discretionary decisions of a judge that LaFortune has no authority to overrule or direct. Additionally, LaFortune has no authority to dictate the contours of Rule CR2, as it can only be amended by majority vote of non-parties. Therefore, neither Plaintiff has a live case or controversy for declaratory relief against Judge LaFortune for these claims because their alleged injuries are not fairly traceable to his actions, nor would he be able to affect the requested relief. These claims should be dismissed.

### B. Because prospective injunctive relief cannot redress Plaintiffs' purported harms, Plaintiffs lack either standing or have moot claims under Count One or Two against LaFortune.

A plaintiff cannot sustain a claim for prospective injunctive relief that is based on "speculative future harm." *Lippoldt v. Cole*, 468 F.3d 1204, 1218 (10th Cir. 2006). Plaintiff Feltz has never suggested that he faces an appreciable risk of future arrest and subsequent proceedings under Rule CR 2. Plaintiff Dennis also would need to allege that he faces an appreciable risk of future arrest and subsequent proceedings under Rule CR2 at the bond docket hearing. "[T]o establish an actual controversy ..., [Feltz or Dennis] would [need] ... to allege that [he will] ... have another encounter with the police." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 103 S.Ct. 1660 (1983); *see also O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S.Ct. 669 (1974) ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners."). "Absent a sufficient likelihood that [he] will again be wronged in a similar way, [Feltz or Dennis] is no more entitled to an injunction than any other citizen of [Oklahoma]; and a

federal court may not entertain a claim by any or all citizens who no more than assert that [a state's rules and policies] ... are unconstitutional." *Lyons*, 461 U.S. at 111, 103 S.Ct. 1660.

Furthermore, to the extent Plaintiffs base their claims against LaFortune on the incorrectly alleged supervisory authority over the Special Judges, injunctive relief would be barred under Sec. 1983. The Tulsa County Presiding Judge does not sit in review of the Special Judges' dockets or rulings. However, if the Presiding Judge had authority to review the Special Judges' docket management or rulings, that function would be judicial in nature. *See Hyland v. Davis*, 149 F.3d 1183, 1998 WL 384556, *2 (6th Cir. 1998) (unpublished table decision) ("Providing direction on the enforcement of a court rule, although somewhat administrative in nature, is still a judicial act for which the judge is immune because the parties' rights and liabilities are thereby affected.") (*citing Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir.), cert. denied, 513 U.S. 870 (1994)). The United States Supreme Court has held that "judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980), *See also*, *Wiggins v. New Mexico State Sup. Ct. Clerk,* 664 F.2d 812, 814-15 (10th Cir.1981)*; Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002)(citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)). In fact, an amendment to § 1983, the Federal Court Improvement Act of 1996 ("FCIA") extends judicial immunity to injunctive relief and forbids injunctive relief unless a declaratory decree has been violated or declaratory relief is otherwise unavailable. 42 U.S.C. § 1983 ("any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.") As the injunctive relief requested aims to direct judicial decisions, the Court lacks the jurisdiction to issue that type of relief and those claims should be dismissed.

### C.  *Ex Parte Young does not apply to Plaintiffs' claims against LaFortune and are barred by the Eleventh Amendment*

Plaintiffs' claims for injunctive relief must also fail under the Eleventh Amendment. The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. As interpreted by the Supreme Court, "[t]he Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013). Plaintiffs argue their claims fall within the Eleventh Amendment exception of *Ex parte Young*, 209 U.S. 123 (1908), which permits suits against state officials in their official capacity "seeking to enjoin alleged ongoing violations of federal law." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011).

To come under *Ex parte Young*, "the plaintiff must be '(1) suing state officials rather than the state itself, (2) alleging an ongoing violation of federal law, and (3) seeking prospective relief.'" *Cressman v. Thompson*, 719 F.3d 1139, 1146 n. 8 (10th Cir. 2013)(quoting *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012)). It is well established that official capacity "claims for . . . , monetary damages, and *retroactive declaratory relief* are barred by the Eleventh Amendment." *Meiners v. University of Kansas*, 359 F.3d 1222, 1232 (10th Cir. 2004)(emphasis added). Specifically, "declaratory relief is not permitted under *Ex parte Young* when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." *Roberts v. New York*, 911 F. Supp. 2d 149, 163-64 (N.D.N.Y 2012) (citing in part *Green v. Mansour*, 474 U.S. 64, 74 (1985) (as "holding that a request for a declaratory judgment holding that portions of a statute are unconstitutional is 'nothing more than an indirect way of forcing the State to abide by its obligations as they existed before the enactment of the Act and therefore, essentially a request for specific performance' and, thus, not

permitted")). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted). "It is true that a complaint must allege that the defendant is violating federal law, not simply that the defendant has done so." *NiGen Botech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (citing *Green v. Mansour*, 474 U.S. 64, 71-73 (1985)).

The Supreme Court has emphasized and explained this element's importance to this immunity exception:

> *Young*'s applicability has been tailored to conform as precisely as possible to those specific situations in which it is "necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst [State School and Hospital v. Halderman, 465 U.S. 89]*, supra, at 105, 104 S.Ct., at 910 [(1984)] (quoting *Young*, *supra* 209 U.S., at 160, 28 S.Ct., at 454). Consequently, *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985) (citation omitted).

*Papasan v. Allain*, 478 U.S. 265, 277–78 (1986).

Further the Supreme Court has held that "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future criminal trials" is inappropriate. *O'Shea, infra*. Plaintiffs' requested relief as to claims raised against the Presiding

Judge and supported by allegations regarding the bails schedule and sufficiency of the bond hearing, essentially seeking to control how judges set bail, is improper.[12]

The promulgation and existence of the bail schedule is not an ongoing constitutional violation by the Presiding Judge. Enjoining the promulgation of the bails schedule, a discrete, past act, is also improper under *Ex Parte Young*. Plaintiffs have not alleged that they fear being subject to future arrest on a charge which appears on the bail schedule. *See Collins v. Daniels*, 916 F.3d 1302, 1314-1315 (10th Cir. 2019)(Plaintiff's claim for prospective relief is moot as she is no longer subject to pretrial supervision and there is no appreciable risk of future arrest and subsequent arraignment under the Rules and Arnold Tool.). As noted above, the Presiding Judge lacks authority to direct or enforce any particular outcome under the bail schedule. Injunctive relief which prohibits the creation of a bond schedule would be retrospective in nature and prevents these Plaintiffs from having a live case or controversy for this Court to consider. Thus such injunctive relief is unavailable under *Ex Parte Young*. Plaintiffs' claims against the Presiding Judge should be dismissed.

**PROPOSITION II:  PLAINTIFFS  HAVE  FAILED  TO  STATE  A  CLAIM  AGAINST PRESIDING JUDGE LAFORTUNE**

In Count One, Plaintiffs assert in the claim for relief that their equal protection and due process rights are violated because their fundamental right to pretrial liberty and prohibition on wealth based detention is infringed. They allege that the Presiding Judge does not "demonstrate that detention is necessary", and detains them "without inquiry into and findings considering ability to pay and alternative condition of release, nor the necessity of wealth based pretrial

---

[12] To the extent Plaintiffs are seeking to lessen the burden of judicially imposed conditions of release via the amounts on the bail schedule rather than reforming procedures used to determine conditions imposed at hearings (which the Presiding Judge does not control) requires analysis under the specific constitutional clause, in this case the Eighth Amendment. *See Graham v. Connor, supra.*

detention. In Count Two Plaintiffs allege that the Presiding Judge violated their rights to pretrial liberty by jailing them without procedural due process by failing to provide notice of the critical issues to be decided, and failing to provide counsel to present evidence which results in "de facto detention" not accompanied by findings on the record under a clear and convincing evidentiary standard that detention is necessary to serve a compelling government interest.

Again, Plaintiffs' specific claims with respect to the Presiding Judge are that he promulgates the bail schedule and maintains administrative and supervisory control over the Special Judges. Plaintiffs are correct that the Presiding Judge exercised his statutorily given discretion to develop and establish the bail schedule in accordance with the statute. However, as explained above, Plaintiffs misapprehend the type and nature of the "control" the Presiding Judge has to exercise over the Special Judges, but they misapprehend the actual control that the Presiding Judge has over how a Special Judge conducts a docket or makes rulings. The promulgation of the bail schedule, in and of itself, does not create a due process or equal protection claims. Plaintiffs cannot maintain a claim against Presiding Judge LaFortune based on the Special Judges' application (if any) of the bail schedule because he does not have the authority to dictate the use or review their decisions.

The contours of the right to pretrial liberty Plaintiffs assert to support their claims likely come from *U.S. v. Salerno*. Plaintiffs read *Salerno* too broadly. Plaintiffs' overly broad reading of *Salerno* to support their due process claims is misplaced. 481 U.S. 739 (1987). *Salerno* does not stand for the proposition that bail decision must meet heightened scrutiny or require written findings on the record regarding ability to pay, flight risk, or danger to the community. The *Salerno* Court interpreted a specific federal statute – *The Bail Reform Act* 18 U.S.C. §3141-3150 – and its provisions and requirements. That statute sets out various procedures for criminal defendants charged with serious felonies and found, after an adversarial hearing, to pose a threat which no condition of release could overcome. *Salerno* at 751. *Salerno* is not a framework for determining

~ 20 ~

the minimum due process required under the Fourteenth Amendment in any bail setting. In fact, the Tenth Circuit has noted that the Court in *Salerno* "refused to 'categorically state that pretrial detention offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Dawson v. Board of County Commissioners of Jefferson County Colorado*, 732 F.App'x 624, 631 (10th Cir. 2018)(unpublished)(quoting *Salnero,* at 751)(internal quotations omitted). In other words, *Salerno* does not stand for the proposition that pretrial liberty in all circumstances is a fundamental right of which restrictions require some heightened review. The United States Supreme Court has established the accused is not entitled to bail as a constitutional right. *See U.S. v. Salerno,* 481 US 739, 754, 107 S.Ct. 2095 (1987) (citing the original source for the Eighth Amendment in English Bill of Rights, the majority finds the very language of the Amendment "fails to say all arrests *must* be bailable" (emphasis added)).

Circuit Courts that have considered the issue repeatedly observed that bail schedules are not per se constitutionally problematic. *See, e.g., O'Donnell v. Goodhart*, 900 F.3d 220, 224 (5th Cir. 2018) (explaining that "the precise constitutional defect in the process afforded was the automatic imposition" of cash bail and was remediable with "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decisionmaker") (quotations omitted); *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc) (approving use of a master bond schedule listing out presumptive cash bond amounts); *accord Walker v. City of Calhoun, Ga.*, 901 F.3d 1245, 1260-61 (11th Cir. 2018) (discussing favorably *Rainwater*'s approval of master bond schedules), pet. denied, 139 S.Ct. 1446 (2019)

Plaintiffs are also attempting to improperly frame an Eighth Amendment claim for excessive bail, as it relates to the bail schedule, a discrete act, as substantive due process claims.[13] Multiple courts have found that "if a constitutional claim is covered by a specific constitutional

---

[13] Plaintiffs are also improperly attempting to reframe a previously dismissed Sixth Amendment claim based on the adequacy of representation at the bond docket as a due process claim.

provision, such as the ... Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' *Walker v. City of Calhoun, Ga*., 901 F.3d 1245, 1259 (11th Cir. 2018)); *see also Graham*, 490 U.S. at 389*; Albright v. Oliver*, 510 U.S. 266, 273 (1994) A plaintiff cannot invoke substantive due process to seek relief that can be addressed by more specific constitutional guarantees. *Graham v. Conno*r, 490 U.S. 386, 395 (1989); *accord Portuondo v. Agard*, 529 U.S. 61, 74 (2000); *Conn v. Gabbert*, 526 U.S. 286, 293 (1999); *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). This accords with the Court's longstanding "reluctan[ce] to expand the concept of substantive due process." *Collins v. City of Harker Heights,* 503 U.S. 115, 125 (1992).

The Tenth Circuit in *Halley v. Huckaby*, 902 F.3d 1136 (10th Cir. 2018), recently considered the contours of a substantive due process analysis:

> The Supreme Court has identified substantive due process cases that turn on whether the government has infringed a right that is "fundamental." *Washington v. Glucksberg*, 521 U.S. 702, 721-22, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (examining an asserted right to assistance in committing suicide). Other times, the legal test simply asks if the government action deprives a person of life, liberty, or property in a manner that is so arbitrary it shocks the judicial conscience. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (examining a high-speed police chase). There is uncertainty about when we apply these various tests, *see Moya v. Garcia*, 887 F.3d 1161, 1174 (10th Cir. 2018) (McHugh, J., concurring in part and dissenting in part), but as explained in recent cases, our circuit has coalesced around a solution: we apply the fundamental-rights approach when the plaintiff challenges legislative action, and the shocks-theconscience approach when the plaintiff seeks relief for tortious executive action. *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1079 (10th Cir. 2015); *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009); *Dawson*, at 635-37 (Tymkovich, J., concurring).

*Halley*, at 1153. The Presiding Judge is a statutorily created administrative position operating in an executive capacity. The bail schedule issued by the presiding judge, as delegated by the Legislature as part of the statutory scheme, promotes the basic function of a Presiding Judge's duties, i.e. efficient operation of the courts and its dockets to allow those eligible to bypass a formal

bond setting procedure and go straight to arraignment. The Tulsa County bail schedule meets all of the elements required by the Legislature (numerical amounts, capable of reduction to judgment), issued by a presiding judge and subject to review by the district court and the district attorney. 22 O.S. § 1105.2. That the Presiding Judge issued the bail schedule in accordance with the legislatively enacted bail scheme is in no way conscience shocking for purposes of a due process analysis. Any individual bond for a particular offense on the schedule is subject to review by the District Court and the District Attorney of the judicial district, or in individual cases upon appearance before a judge. A bail schedule promotes a legitimate governmental interest in processing arrestees in an efficient manner and in and of itself does not violate substantive due process. *See Walker v. City of Calhoun, Ga.*, 901 F.3d 1245 (11th Cir. 2018). Plaintiffs, therefore, have not stated a due process claim against Presiding Judge LaFortune, and this action should be dismissed against him.

## **CONCLUSION**

For the reasons set forth above, Presiding Judge LaFortune requests that the Court dismiss Plaintiffs' claims, including class allegations, against him for lack of subject matter jurisdiction and failure to state a claim and grant Presiding Judge LaFortune all other relief deemed just and equitable.

Respectfully submitted,

/s/ Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA#22422**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Unit
313 NE 21st St.
Oklahoma City, OK 73105
Telephone:    405.521.3921
Facsimile:    405.521.4518
Email: Stefanie.lawson@oag.ok.gov
*Attorney for Presiding Judge William LaFortune*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of March 2021, a true and correct copy of the foregoing document was served via the Court's ECF system to all registered counsel for the litigants herein.

/s/ Stefanie E. Lawson
Stefanie E. Lawson