**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Richard Feltz and Ashton Lee Dennis, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) ) | |
| Board of County Commissioners of the County of Tulsa; Vic Regalado, Tulsa County Sheriff, in his official capacity; Tammy Bruce, Stephen Clark, Julie Doss, Theresa Dreiling, Owen Evans, Mary Ann Godsby, David Guten, Bill Hiddle, Ann Keele, James Keeley, Deborah Ludi Leitch, Anthony J. Miller, Kevin C. Morrison, Kirsten Pace, Wilma Palmer, April Seibert, Rodney B. Sparkman, and Tanya Wilson, in their capacities as Tulsa County Special Judges; and William LaFortune, in his capacity as Presiding Tulsa County District Court Judge, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 18-cv-00298-CVE-JFJ |
| | ) | |
| Defendants. | ) | |

---

**SHERIFF VIC REGALADO'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

---

**Douglas Wilson, OBA No. 13128**
Assistant District Attorney
Tulsa County District Attorney's Office
218 W. 6th St. Suite 933
Tulsa, OK 74119
(918)596-8795
douglas.wilson@tulsacounty.org

**Mike Shouse, OBA No. 33610**
Assistant District Attorney
Tulsa County District Attorney's Office
218 W. 6th St. Suite 935
Tulsa, OK 74119
(918)596-4825
mshouse@tulsacounty.org

**ATTORNEYS FOR DEFENDANT VIC REGALADO, TULSA COUNTY SHERIFF,**
**IN HIS OFFICIAL CAPACITY**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ii-vi

I.    PRELIMINARY STATEMENT ...........................................................................1

II.   SUMMARY OF THE SECOND AMENDED COMPLAINT .....................................2

III.  STANDARD OF REVIEW ....................................................................................3

IV.   ARGUMENTS AND AUTHORITIES.........................................................................4

      A.    REGALADO DOES NOT POSSESS AUTHORITY TO RELEASE AN
            ARESTEE FROM THE TULSA COUNTY JAIL .................................................4

      B.    STATE JUDGES ARE THE ONLY OFFICIALS WITH THE
            AUTHORITY TO RELEASE AN ARRESTEE FROM A COUNTY JAIL .........7

      C.    NO TULSA COUNTY POLICY WAS THE MOVING FORCE BEHIND
            PLAINTIFFS' ALLEGED HARMS ....................................................................11

            1.   Under Oklahoma Law, a State District Court Judge or Special Judge
                 are the Final Policymakers as to Who Gets Released from Jail and
                 under what Conditions ....................................................................................13

      D.    REGALADO ACTS AS AN ARM OF THE STATE DISTRICT COURT
            WHEN HE DETAINS OR RELEASES AN ARRESTEE....................................20

      E.    PLAINTIFFS DO NOT HAVE STANDING TO BRING SUIT AGAINST
            THE BOCC........................................................................................................24

      CONCLUSION ................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page**

### **CASES**

*Allen v. Town of Colcord*, 874 F. Supp. 2d 1276 (N.D. Okla. 2012)...............................................4

*Bd. of Cty. Commisioners of Sweetwater Cty. v. Geringe,* 297 F.3d 1108 (10th Cir. 2002) ...23, 24

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397 (1997) ...............................11, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................................................4

*Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716 (7th Cir. 1998) ...............16

*Brill v. Gurich*, 1998 OK CR 49, 965 P.2d 404...............................................................................9

*Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487 (10th Cir. 1998) ........................21

*Canton v. Harris,* 489 U.S. 378 (1989) .........................................................................................12

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) ..................................................................12

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ...................................................................13

*Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992) ......................................................12

*Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010)...............................................................6, 7

*Ex parte Young,* 209 U.S. 123 (1908) .......................................................................3, 20, 21, 22

*Frobe v. Village of Lindenhurst*, No. 11 C 1722, 2014 WL 902878 (N.D. Ill. March 7, 2014) ...16

*Gray v. University of Colorado Hospital Authority*, 672 F.3d 909 (10th Cir. 2012) ..................19

*Hill v. Kemp*, 478 F.3d 1236 (10th Cir. 2007) ............................................................................20

*Hindman v. Thompson*, 557 F.Supp.2d 1293 (N.D. Okla. 2008) ..................................................14

*Humphries v. Milwaukee County*, No. 10-CV-99-JPS, 2011 WL 5506676 (E.D. Wisc. Nov. 10, 2011) ..............................................................................................................................................16

*In re Benzene Litig.*, No. CIV.A.05C-09-020-JRS, 2007 WL 625054 (Del. Super. Ct. Feb. 26, 2007) ..............................................................................................................................................18

*Jamison v. City of Forsyth, Georgia*, No. 506-CV-399 CAR, 2007 WL 1231663 (M.D. Ga. April 26, 2007) ...............................................................................................................18

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) ...................................................13

*Johns v. Stewart,* 57 F.3d 1544 (10th Cir. 1995) .......................................................21

*Kentucky v. Graham*, 473 U.S. 159 (1985) .................................................................15

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) ....................................4

*Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183 (10th Cir. 2003) ...........................15

*Los Angeles Cty., Cal. v. Humphries,* 562 U.S. 29 (2010) ....................................12, 14

*Lujan v. Defs. of Wildlife,* 504 U.S. 555 (1992) ....................................................24, 25

*Magic City Amusement Co. v. Hastings*, 1941 OK 220, 116 P.2d 709.........................21

*McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991 (6th Cir. 2019) .............................15

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)...........11, 15

*Moya v. Garcia,* 895 F.3d 1229 (10th Cir. 2018) .............................................16, 17, 18

*Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313 (10th Cir. 1998) ..............12

*North Side State Bank v. Board of County Comm'rs of Tulsa County*, 1994 OK 34, 894 P.2d 1046....................................................................................................................13, 21

*ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018) .............................................15

*Pan Am. Petroleum Corp. v. Bd. of Tax-Roll Corr. of Tulsa Cty,* 1973 OK 52, 510 P.2d 680 ...5, 6

*Parker v. Brush Wellman*, 377 F.Supp.2d 1290  (N.D. Ga. 2005) .............................18

*Pembaur v. Cincinnati,* 475 U.S. 469 (1986)  .........................................12, 13, 18, 24

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984) .............................20

*Robbins v. Okla.,* 519 F.3d 1242 (10th Cir. 2008) ....................................................18

*Robinson v. City of Tupelo, Mississippi*, No. 1:17-CV-55-SA-DAS, 2018 WL 2348666

(N.D. Miss. March 23, 2018) ..................................................................................15

*Schneider v. Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013) ..........................12, 13

*Shepp v. Fremont County, Wyo.*, 900 F.2d 1448 (10th Cir. 1990) ...............................................15

*Speight v. Presley*, 2008 OK 99, 203 P.3d 173...........................................................................21

*State v. Price*, 2012 OK 51, 280 P.3d 943 ...............................................................................5, 8

*Strong v. State ex rel. The Oklahoma Police Pension & Ret. Bd.,* 2005 OK 45, 115 P.3d 889 ....20

*Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788 (7th Cir. 1991) ....................15

*The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098 (10th Cir. 2016)..................4

*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998) ...............................................19

*Tulsa Exposition & Fair Corp. v. Board of County Comm'rs*, 1970 OK 67, 468 P.2d 501..........19

*U.S. v. Marion*, 404 U.S. 307 (1971) ...........................................................................................6

*Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989) .................................22, 23

*VanZandt v. Okla. Dep't of Human Servs.*, 276 Fed.Appx. 843 (10th Cir. 2008) .......................19

*Whitesel v. Sengenberger*, 222 F.3d 861 (10th Cir. 2000) ...........................................................15

## **CONSTITUTION**

Okla. Const. Art. 2, § 8 ...................................................................................................8

Okla. Const. Art. 7 .....................................................................................................13, 14

Okla. Const. Art. 7, § 7 .................................................................................................14

## **STATUTES**

19 O.S. § 401 ..............................................................................................................14

20 O.S. § 22 ................................................................................................................14

20 O.S. § 23 ................................................................................................................14

20 O.S. § 92.1-27 ................................................................................................................14

20 O.S. § 92.15d .................................................................................................................8

21 O.S. § 345 ......................................................................................................................5

21 O.S. § 532 ......................................................................................................................5

21 O.S. § 533 ......................................................................................................................5

22 O.S. § 1101 ....................................................................................................................8

22 O.S. § 1101.1 .................................................................................................................8

22 O.S. § 1105 ..............................................................................................................7, 8, 9

22 O.S. § 1105.2 ..............................................................................................................8, 9

22 O.S. § 1105.3 ..............................................................................................................7, 9

22 O.S. § 1109 ....................................................................................................................9

22 O.S. § 1115.3 ..............................................................................................................8, 9

22 O.S. § 1181 ....................................................................................................................5

22 O.S. § 186 ......................................................................................................................6

22 O.S. § 209 ......................................................................................................................6

22 O.S. § 231 ......................................................................................................................9

22 O.S. § 458 ......................................................................................................................9

22 O.S. § 60.9 .....................................................................................................................8

22 O.S. § 457 ......................................................................................................................8

22 O.S. § 458 ......................................................................................................................8

28 U.S.C. § 2201 ...............................................................................................................23

42 U.S.C. § 1983 ..........................................................................2, 11, 12, 14, 15, 21, 22, 23

57 O.S. § 47 ........................................................................................................................4

57 O.S. § 48 ..............................................................................................................4, 5

57 O.S. § 49 ..............................................................................................................4, 5

57 O.S. § 55 ...................................................................................................................5

59 O.S. § 1334 ...............................................................................................................8

## **RULES**

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 3, 4

Fed. R. Civ. P. 21 ......................................................................................................1, 4

Fed. R. Civ. P. 65(d)(2)(C) ....................................................................................22, 23

Local Rule CR 1 .............................................................................................................9

## **OTHER AUTHORITIES**

1980 OK AG 1 ........................................................................................................5, 6, 7

1985 OK AG 27 ........................................................................................................7, 21

1999 OK AG 23 ........................................................................................................7, 21

2004 OK AG 17 ..............................................................................................................6

George B. Fraser, "Oklahoma's New Judicial System," *Okla. L. Rev*. 373, 375 (1968)..............14

Karen M. Blum, "Support Your ~~Local~~ Sheriff: Suing Sheriffs Under § 1983," 34 Stetson L. Rev. 623, 630, fn. 46 (Spring 2005) ...................................................................................13

In accordance with Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 21, Defendant, Sheriff Vic Regalado, in his official capacity as the Tulsa County Sheriff ("Regalado"), moves this Court for an order dismissing Plaintiffs' claims against him with prejudice on the grounds that he is an improper party to this suit in his capacity as a Tulsa County officer, and Plaintiffs' Second Amended Complaint ("SAC") fails to state a claim upon which relief can be granted.

## I.
## PRELIMINARY STATEMENT

Plaintiffs' claims cannot lie against Tulsa County or any of its officers in their capacity as county actors. Plaintiffs complain that the named Defendants, Tulsa County District Court Presiding Judge ("Presiding Judge"), the Tulsa County Special Judges, the Board of County Commissioners of Tulsa County ("BOCC"), and Regalado, have violated Plaintiffs' rights by (1) operating a wealth-based detention scheme, and (2) by detaining them without ensuring they received a prompt due process complaint hearing. However, Regalado does not have authority to cure the alleged constitutional violations, nor was he responsible for them.

In Oklahoma, arrestees are only released from jail by order of a state court judge or by satisfying bail conditions set by a state court judge. The county sheriff's role in releasing arrestees from county jail is purely ministerial; Oklahoma law requires that he follow the rules and directions of the district court judge with respect to those in his custody. Further, all bail hearings in Oklahoma are conducted by the state court, and all bail determinations are made by state court judges. The county sheriff plays no role in bail hearings or bail determinations. Regalado releases arrestees who satisfy the conditions of bail set by the state court because it is his duty to do so. It is not a county sheriff's place to sit in judgment on the proceedings of state court judges.

Therefore, Regalado's actions were taken at the direction and control of Oklahoma state district court or special judges and pursuant to Oklahoma law. When a county sheriff acts as an

1

arm of the state district court, he is a state, rather than county, actor. Moreover, adherence to Oklahoma law and judicial orders is a matter of state, not county policy. As such, Plaintiffs failed to allege that a Tulsa County policy or custom was the moving force behind their alleged harms. Therefore, Plaintiffs' claims against Regalado should be dismissed, or in the alternative, Regalado should be dismissed in his capacity as a county actor.

## II.
## SUMMARY OF THE SECOND AMENDED COMPLAINT

Plaintiffs seek prospective declaratory and injunctive relief under 42 U.S.C. § 1983 against a number of state court judges and the County Defendants based on allegations that "Defendants" impose – absent eleven (11) constitutionally required procedural safeguards – secured money bail as a condition of release on arrestees who are unable to pay such bail awaiting trial. Dkt. # 259, at ¶¶ 17-22, 24-26, 28-34, 37, 45-50, 53-74, 87-105, 116, 124-25, 137-41. It is alleged that Plaintiffs/arrestees Richard Feltz, Ashton Lee Dennis, and the putative class members cannot afford to make bail, and that the imposition of money bail under such circumstances is unconstitutional. *Id.* at ¶¶ 6, 26, 29, 34, 69-73, 117. Plaintiffs request an order enjoining the County Defendants and the Presiding Judge from detaining any arrestee in the county jail unable to pay his or her secured bail amount **unless**: (1) he or she is given a speedy, (2) individualized bail determination hearing that (3) includes a due process complaint inquiry into and (4) findings concerning a person's ability to pay, (5) consideration of and (6) findings concerning alternatives to secured financial conditions of release, (7) preceded by sufficient notice of the matters to be determined, (8) accompanied by appointment of counsel, (9) with the opportunity to be heard and to confront evidence, and (10) findings concerning the necessity of detention, i.e., prior to entering a pretrial detention order, which includes orders imposing secured financial conditions of release on a detainee unable to pay such amount, findings on the record that the government has met its

burden to demonstrate that no alternative condition or combination of conditions would be sufficient to serve its compelling interests, with (11) such proof to be by clear and convincing evidence. *Id.* at ¶ 141. Plaintiffs also request an order declaring the judicial practices in place at the time of Plaintiffs' pretrial detentions unconstitutional, and the above-referenced eleven (11) procedural safeguards constitutionally required. *Id.*

Plaintiffs' specific allegations against the Presiding Judge and other state court special judges differ significantly from their particular allegations against Regalado. Plaintiffs expressly allege that one (1) or more defendant judges of the Fourteenth Judicial District of the State of Oklahoma are responsible for promulgating the secured money bail schedule (*id.* at ¶¶ 19-22, 55), making individual bail determinations (*id.* at ¶¶ 19, 37, 41, 58-59, 64), promulgating court rules governing bail (*id.* at ¶ 22, 35-38, 53-67) and implementing the eleven (11) procedural safeguards articulated by Plaintiffs. *Id.* at ¶¶ 19-22, 24-26, 28-34, 37, 45-50, 53-74, 87-105, 116, 124-25, 137-41. Conversely, Plaintiffs specifically allege that arrestees taken to the county jail are detained by Regalado and released only upon payment of bail as approved by the court or upon court order. *Id.* at ¶¶ 18-18, 53-67, 80, 83.

Alternatively, Plaintiffs seek prospective relief against Regalado under the fictions of *Ex parte Young* as an agent of the state who may be sued to prevent enforcement of an unconstitutional state law. *See id.* at ¶ 18 n.3.

### III.
### STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) should be granted when, as here, a complaint fails to make allegations sufficient to support a right to relief. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief," but a complaint must "contain enough facts to state a claim for relief that is plausible on its face." *Allen v. Town of Colcord*, 874 F. Supp. 2d 1276, 1282 (N.D. Okla. 2012) (citation and quotation omitted). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Under Rule 21, the Court may drop an improper party upon motion or *sua sponte*.

## IV.
## ARGUMENTS AND AUTHORITIES

### A. REGALADO DOES NOT POSSESS AUTHORITY TO RELEASE AN ARRESTEE FROM THE TULSA COUNTY JAIL

In Oklahoma, a county sheriff is required to conform, in all respects, to the state standards for county jails and the rules and directions of the district judge regarding those in his custody:

> The sheriff, or such person designated by law in his place, shall have charge of the county jail of his county and of all persons by law confined therein, and such *sheriff or other officer is hereby required to conform, in all respects, to the rules and directions promulgated pursuant to Section 192 of Title 74 of the Oklahoma Statutes and of the district judge* and communicated to him by the proper authority.[1]

57 O.S. § 47 (emphasis added). A county sheriff must comply with the rules and directions of the district court judge with respect to those in his custody; he may be criminally prosecuted, held in contempt of court and/or removed from office if he neglects or fails in his duty. *See* 21 O.S. § 345 (criminalizing willful failure or refusal to perform official duty); 21 O.S. § 532 (criminalizing

---

[1] 57 O.S. § 48 requires Regalado to keep a Jail Register of each person in his custody, and he is required to furnish the Jail Register to the district court "upon the request of the presiding judge." 57 O.S. § 49.

willful or careless release of person lawfully held in custody); 21 O.S. § 533 (criminalizing willful neglect or refusal to receive prisoner into custody); 22 O.S. § 1181 (removal from office for willful neglect of duty); 57 O.S. §§ 48-49 (sheriff required to maintain jail register and furnish a copy to the district court upon the request of the presiding judge); 57 O.S. § 55 (criminalizing sheriff's neglect or refusal to comply with any of the rules and regulations regarding detainees in his jail established by the district judge, state regulations, or statutes).

It a felony for a county sheriff to allow persons lawfully held by him in custody "to escape or go at large, except as may be permitted by law." 21 O.S. § 532. If a sheriff releases an arrestee from custody without statutory authority and in the absence of judicial authorization, the sheriff faces criminal penalties and removal from office. *See State v. Price*, 2012 OK 51, ¶¶ 4 n.3, 20, 29, 37, 280 P.3d 943, 946, 950, 952-53 (sheriff was accused of "the release of a female prisoner to the custody of her mother without prior court approval. . . . A sheriff who discharges a prisoner without proper authority flagrantly violates a sheriffs' duties. The release of a person on personal recognizance is a judicial function. . . . The trial court's removal of the sheriff of Pawnee County is affirmed.").

Furthermore, Oklahoma's Attorney General has formally opined that "[a] sheriff cannot release an arrestee without bond to return at a later time." 1980 OK AG 1, ¶ 26(3). The Attorney General's advice on this issue is important because "it is the duty of [county] officers . . . with notice thereof to follow the opinion of the Attorney General until relieved of such duty by a court of competent jurisdiction or until [the Oklahoma Supreme] Court should hold otherwise." *Pan Am. Petroleum Corp. v. Bd. of Tax-Roll Corr. of Tulsa Cty*, 1973 OK 52, ¶ 10, 510 P.2d 680, 681. The Attorney General noted an exception when "the sheriff himself is the arresting officer and the arrest has been made without a warrant, the offense is a misdemeanor, or a violation of a city

ordinance, and a citation has been issued pursuant to . . . 22 O.S. § 209." 1980 OK AG 1, at ¶ 13. Plaintiffs do not allege that Regalado was personally involved in any of their arrests. *See* Dkt. # 259.

Plaintiffs complain that Regalado "detains arrested people who cannot pay a predetermined secured money bail prior to any individualized hearing," and continues to detain those persons after they receive an individualized bond hearing in front of a state judge, "even though there has been no inquiry into or findings concerning ability to pay, consideration of alternatives conditions of release, or findings concerning the necessity of pretrial detention." *Id*. at ¶ 18.

However, Regalado plays no role in the bail setting or bond hearing process. Regalado simply detains arrestees, pursuant to Oklahoma law, so that he or she may be "held to answer for a public offense." 22 O.S. § 186. "To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. . . . [A] defendant who has been arrested [is then] held to answer."[2] *U.S. v. Marion*, 404 U.S. 307, 320-21 (1971). Regalado exercises no discretion nor does he have control over what system is used by the judiciary to ensure that arrestees appear in court.

Once an arrestee satisfies the conditions of bail set forth by the state court, a county sheriff is obligated to release him or her by law. In *Dodds v. Richardson*, 614 F.3d 1185, 1202-03 (10th Cir. 2010), the Tenth Circuit held that under Oklahoma law, once bail has been set by the court, a county sheriff is obligated to accept such bail when tendered and release the arrestee; failure to do so subjects the sheriff to liability.

> Oklahoma law charged Defendant as sheriff with the responsibilities of running the county jail and accepting bail from all arrestees not charged with death-penalty eligible crimes.  *See* 57 Okla. Stat. § 47 ("The sheriff . . . shall have charge of the county jail of his county and of all persons by law confined therein, and such sheriff . . . is hereby required to conform, in all respects, to the rules and directions

---

[2] *See* 2004 OK AG 17 (sheriff's obligation to accept prisoners).

promulgated pursuant to [74 Okla. Stat. § 192] and of the district judge and communicated to him by the proper authority."); 22 Okla. Stat. § 1101(A) ("Except as otherwise provided by law, bail . . . shall be admitted upon all arrests in criminal cases where the offense is not punishable by death and in such cases it may be taken by and of the persons . . . authorized by law to arrest, [and] to imprison offenders . . . ."); Okla. Att'y. Gen. No. 69–138 (1969) ("In criminal cases except cases punishable by death . . . a sheriff is required to accept bail, under the terms of [22 Okla. Stat. § 1101 (1961)], for those persons jailed at times other than the normal working hours of the Court, provided proper bail has been set as provided by law.").

*Id*. at 1203.

Therefore, Regalado has neither the authority to release an inmate nor the power to detain him or her once bail conditions are satisfied according to Oklahoma law or ordered by a special or district court judge. A county sheriff has no oversight responsibilities with respect to the state judiciary and cannot sit in judgment on their rulings. On the contrary, "[t]he sheriff is an officer of the court and is subject to its orders and direction." 1999 OK AG 23, ¶ 9. "It is not only the power, but the duty, of sheriffs in their various jurisdiction . . . [to] carry out the mandates, orders and directions of the courts." 1985 OK AG 27, ¶ 2.

## B. STATE JUDGES ARE THE ONLY OFFICIALS WITH THE AUTHORITY TO RELEASE AN ARRESTEE FROM A COUNTY JAIL

State law and local court rules vest exclusive authority in the state judiciary regarding the terms and conditions of an arrestee's release from jail. *See* 22 O.S. § 1105.3(B) (only a judge is authorized to grant or deny pretrial release); 1980 OK AG 1 (sheriff cannot release an arrestee other than by court order or upon posting bond in an amount approved by the court); 22 O.S. § 1105(A) (*court may prescribe by rule* the conditions under which the sheriff or his deputy may prepare and execute an order of release *on behalf of the court*); *Price*, 280 P.3d at 952 (release of an arrestee on personal recognizance is a judicial function).

District court or special judges are directed to release an arrestee from detention "upon the allowance of bail and the execution of the requisite recognizance, bond, or undertaking to the state

. . . ." 22 O.S. § 1105(A). Pursuant to 22 O.S. § 1105.2(B), "[e]very judicial district may, upon the order of the presiding judge for the district, establish a pretrial bail schedule for felony or misdemeanor offenses [certain offenses excluded]." Plaintiffs allege that the Presiding Judge for Judicial District No. 14[3] "promulgates the secured money-bail schedule that is used to determine the financial condition of release for almost all people[4] arrested in Tulsa County[, and] the Local Criminal Rules, which specify the procedures by which bail is set."[5] Dkt. # 259, at ¶¶ 22, 55. In Oklahoma, some judicial determinations of bail are mandated by state statute.[6] An arrestee may also be released from custody pending trial on his personal recognizance at the "discretion of the court." 59 O.S. § 1334(A).

Moreover, The local District Court Criminal Rules for Tulsa County, promulgated by the District Court, not Regalado, delineate three (3) specific conditions, one (1) of which must be met before an "Order of Release of any prisoner in the Tulsa County Jail may be issued by the Sheriff of Tulsa County or the Court Clerk of Tulsa County." Criminal Rule ("CR") 1(D) (available at http://www.tulsacountydistrictcourt.org/files/DistrictCourtRulesCriminal.pdf). Those conditions require (1) the verbal order of a Judge, (2) the written order of a Judge, or (3) the posting of bond

---

[3]The counties of Tulsa and Pawnee comprise Oklahoma Judicial District No. 14. *See* 20 O.S. § 92.15d.

[4]A judge or magistrate may set the applicable bond when issuing a warrant for someone's arrest. *See, e.g.*, 22 O.S. §§ 457-58. Those accused of certain crimes, *e.g.*, domestic violence, must wait until their initial appearance to have bond specially set by a judge or magistrate. 22 O.S. § 60.9. Some offenses are nonbailable. Okla. Const. Art. 2, § 8; 22 O.S. § 1101.

[6]*See, e.g.,* 22 O.S. § 1101.1 ("Bail, by sufficient sureties, may be admitted upon all arrests for violations of Sections 1028, 1029, 1030, or 1081 of Title 21 of the Oklahoma Statutes and shall be in an amount of not less than Fifteen Thousand Dollars ($15,000.00). Bail on personal recognizance bond for such offenses shall not be admitted."); 22 O.S. § 1115.3(E) (every year, "the Administrative Office of the Courts shall prepare a schedule of amounts to be received as bail" for traffic, wildlife and water safety related offenses). The Uniform Oklahoma Bond Schedule is published at: http://www.oscn.net/static/schedules/SCaD2019-0088.pdf).

"in an amount approved by a Judge." *Id*. at CR l(D)(2), (3), (5).

As a matter of state law, bail determinations are made by the judges of the District Court. *See* 22 O.S. § 1105(B) (setting forth the circumstances to be considered by the judge regarding the determination of bond and other conditions of release); 22 O.S. § 1105.3(E) (judge conducts hearings concerning the amount and type of bail appropriate for pretrial release); 22 O.S. §§ 231, 458, 1109, 1115.3(A) (court sets the amount of bail); 22 O.S. § 1105.2(A) (in Pretrial Release Act, bail is set by the court); *Brill v. Gurich*, 1998 OK CR 49, ¶ 4, 965 P.2d 404, 406 (setting forth bail determination guidelines required to be followed by "the judges of this State").

Here, Plaintiffs confirm the judiciary's control over the detention and release of inmates in the Tulsa County Jail. Plaintiffs allege that secured money bail[7] is imposed on arrestees in the Tulsa County Jail by three (3) different *judicial* means. Initially, for warrantless arrests involving a crime listed on the state court's preset bond schedule, *secured money bail is set by the court's predetermined chart of offenses with corresponding bail amounts*. *See* Dkt. # 259, at ¶¶ 4, 7, 17-18, 22, 35, 55. As above, predetermined bail can also be a matter of state statute.[8] For any crime not listed on the state court's preset bond schedule, *secured money bail is set by a state court judge* while making probable cause determinations within forty-eight (48) hours of arrest. *See id*. at ¶¶ 3, 64. Finally, when a warrant is issued for someone's arrest, *secured money bail is specified on the arrest warrant and set by the state court judge* who issues the arrest warrant. *See id*. at ¶ 58.

Plaintiffs allege that the Presiding Judge[9] of Oklahoma's Fourteenth Judicial District,

---

[7]"Secured money bail requires people who are arrested to deposit money before they are released . . . ." *Id*. at ¶ 78.

[8]*See* statutes cited *supra* note 6.

[9]Plaintiffs allege that the presiding judge "has general administrative, rulemaking, and supervisory authority over the District Court for Tulsa County." *Id*. at ¶ 22.

"which encompasses Tulsa County[,] . . . *promulgates the secured money-bail schedule that is used to determine the financial condition of release for almost all people arrested in Tulsa County.*" *Id*. at ¶¶ 22, 55 (emphasis added). Plaintiffs allege that this schedule is a "predetermined chart of offenses and corresponding dollar amounts," *id*. at ¶¶ 4, 7, 35, that "detains people who cannot afford to pay and releases people who can." *Id*. at p. 12, heading B (initial caps reduced to lower case).

Plaintiffs further allege that *the presiding judge of Oklahoma's Fourteenth Judicial District also "promulgates the Local Criminal Rules, which specify the procedures by which bail is set* and probable cause determined, the timing and conduct of arraignments, and the appointment of counsel." *Id*. at ¶ 22. Plaintiffs further allege that "*[i]f a person has been arrested on a warrant, the warrant specifies bail conditions, which are set by Defendant Special Judges.*[10] For warrants on charges covered by the bail schedule, Defendant Special Judges exclusively use secured financial conditions of release, and they determine the secured amounts using the [bail] schedule." *Id*. at ¶ 58 (emphasis added). And as the third means of setting secured money bail, Plaintiffs allege that "[s]ome charges are not covered by the money-bail schedule. For these charges, *the Special Judges impose money-bail amounts when they make probable cause determinations.*" *Id*. at ¶ 37 (emphasis added). Probable cause determinations are made within forty-eight (48) hours of arrest.

---

[10]"Defendant Special Judges are appointed by Tulsa County district court judges. They are authorized by state law to perform the duties of a magistrate in criminal cases. Defendant Special Judges' magistrate duties include making probable cause determinations and bail determinations. Defendant Special Judges make bail determinations in three contexts. First, Defendant Special Judges review and approve arrest warrants. As part of this process, Defendant Special Judges specify conditions of release for the person whose arrest is authorized by each warrant. Second, Defendant Special Judges determine conditions of release for anyone who is arrested without a warrant on a charge that is not included in Tulsa County's secured bail schedule. Third, Defendant Special Judges review the monetary amounts that have been imposed according to the secured bail schedule and have the authority and ability to adjust those money bail amounts or impose alternative release conditions. Defendant Special Judges rarely, if ever, alter monetary amounts." *Id*. at ¶ 19.

*See id*. at ¶ 64. Therefore, it is undisputed that state court judges are the only persons with the authority to set forth conditions that would permit an arrestee to be released from jail.

### C. NO TULSA COUNTY POLICY WAS THE MOVING FORCE BEHIND PLAINTIFFS' ALLEGED HARMS

The Civil Rights Act of 1871 is a federal statute, numbered 42 U.S.C. § 1983, that provides a remedy to someone deprived of his or her constitutional rights by a person acting under color of state law. Section 1983 proclaims:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

(Emphasis added). A local municipality that is not considered part of the state for Eleventh Amendment purposes, thus, a county, is a "person" for purposes of § 1983 liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.54 (1978); *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). In *Monell,* 436 U.S. at 689, and subsequent cases, the United States Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Brown*, 520 U.S. at 403 (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 480–481 (1986); *Canton v. Harris,* 489 U.S. 378, 389 (1989). Assuming that a constitutional deprivation took

place,[11] municipal liability exists under Section 1983 only when "execution of a municipal policy inflict[s] the [constitutional] injury." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992). To hold the municipality liable under Section 1983, "plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation." *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998). *Monell's* "policy or custom" requirement applies to § 1983 claims against a municipality for prospective declaratory or injunctive relief. *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 39 (2010).

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, 520 U.S. at 403-04. "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483-84 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)) ("'policy' generally implies a course of action consciously chosen from among various alternatives"). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal

---

[11]Plaintiffs allege a deprivation of their right to equal protection and due process by jailing them (i.e., not releasing them following probable cause for their arrest and detention) because they cannot afford a monetary payment, and a deprivation of their right to pretrial liberty by jailing them (i.e., not releasing them following probable cause for their arrest and detention) without procedural due process. *See id.* at ¶¶ 137, 140, 148. Plaintiffs, however, do not allege an Eighth Amendment claim for excessive bail.  *See id.*

policymaker,[12] or deliberately indifferent training or supervision." *Schneider v. Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

"In a series of cases, the Supreme Court has consistently held that the question of who is a final policymaker for purposes of attributing liability to a government entity under § 1983 is a question of state law." Karen M. Blum, "Support Your ~~Local~~ Sheriff: Suing Sheriffs Under § 1983," 34 Stetson L. Rev. 623, 630 n.46 (Spring 2005) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).

> The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms. . . . Without attempting to canvass the numberless factual scenarios that may come to light in litigation, we can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business. . . . *[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.*

*Praprotnik*, 485 U.S. at 124-25 (emphasis added).

1. **Under Oklahoma Law, a State District Court Judge or Special Judge are the Final Policymakers as to Who Gets Released from the Jail and under what Conditions**

Each district court in Oklahoma is an extension of the State of Oklahoma's judicial branch. *See* Okla. Const., Art. 7; *North Side State Bank v. Board of County Comm'rs of Tulsa County*, 1994 OK 34, ¶ 15, 894 P.2d 1046, 1052 (distinguishing between the state district court and the county); *Hindman v. Thompson*, 557 F.Supp.2d 1293 (N.D. Okla. 2008) (state liable for torts committed by district court judge). Each county is required to provide a court room and an office

---

[12]Plaintiffs allege that Regalado "is the final policymaker for the jail," Dkt. # 259, at ¶ 18, and that he "is a final policymaker for Tulsa County's post-arrest jailing policies and practices," *id*. at 6 n. 3, but Plaintiffs do not allege that he personally participated in their arrest and/or detention or that he personally made a final decision that directly caused their constitutional deprivations.

for the *judge of the district court*, but each judge serves his or her judicial district, *not the county*. 19 O.S. § 401; George B. Fraser, "Oklahoma's New Judicial System," 21 Okla. L. Rev. 373, 375 (1968); Okla. Const., Art. 7. Oklahoma's seventy-seven (77) counties are divided into twenty-six (26) judicial districts, each with its own district court and at least one (1) district court judge; these judicial districts are then divided into nine (9) judicial administrative districts, each with its own presiding administrative judge. 20 O.S. §§ 22-23, 92.1–92.27; Okla. Const. Art. 7, § 7.

As above, the judges of the Fourteenth Judicial District of the State of Oklahoma are the officials authorized under state law to establish bail policies and conditions of release for arrestees in the Tulsa County Jail. Because the state court's policy of using secured bail for arrestees at the county jail is a formal policy promulgated by state court judges through publication of a bail schedule, and imposing secured bail on arrest warrants and during probable cause determinations for crimes not on the bail schedule, Plaintiffs cannot make out a case that the county creates, promulgates, or implements an informal custom or practice of wealth based detention. *See supra* Section IV.B. The policy at issue is promulgated by the state and Regalado does nothing more than follow state law and obey state court judicial orders regarding when an arrestee can be released from jail. Regalado has no authority to release an arrestee absent payment of bond or receipt of a court order of release. *See supra* Section IV.A.

An injunction or declaratory judgment against Regalado cannot issue under § 1983 based on respondeat superior or Regalado being responsible for carrying out the statutes, policies, rules, or directives created or issued by the state legislature or state judiciary. *See Humphries,* 562 U.S. at 30-31 (plaintiff seeking injunctive relief against municipality under § 1983 must show that his

injury was caused by a *municipal* policy or custom). The County[13] cannot be subject to a 42 U.S.C. § 1983 action because it implements state law. W*hitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000) (board of county commissioners "cannot be liable for merely implementing a policy created by the state judiciary"); *Ledbetter v. City of Topeka, Kan*., 318 F.3d 1183, 1190 (10th Cir. 2003) (collecting cases) (acts of a municipal judge *in performing a state judicial function* do not establish municipal policy); *Shepp v. Fremont County, Wyo*., 900 F.2d 1448, 1456-57 (10th Cir. 1990) (denial of bail was the responsibility of state judge and could not be attributed to the county); *See also ODonnell v. Harris Cty*., 892 F.3d 147, 156 (5th Cir. 2018) (sheriff is not a municipal policymaker when following judicial orders); *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) (sheriff acts for state when he detains "probationers under judge-set bail amounts"); *Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality."); *Robinson v. City of Tupelo, Mississippi*, No. 1:17-CV-55-SA-DAS, 2018 WL 2348666, *6 (N.D. Miss. March 23, 2018) (County could not be held liable for charging $25 fee mandated by state law when releasing someone on bail. "Here, Plaintiff has not identified any policy or custom attributable to Lee County that was the moving force behind the alleged violation. Though generally the Sheriff acts as a policymaker within the County, and often the Sheriff's actions may justifiably be considered to constitute county policy under *Monell*, the Sheriff's actions here are

---

[13]Plaintiffs' Section 1983 suit against Regalado, in his official capacity as the Tulsa County Sheriff, is a suit against Tulsa County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell v. Department of Soc. Servs*., 436 U.S. 658, 690 n.55 (1978).

more fairly 'characterized as the effectuation of the policy of the State' of Mississippi. This is especially true considering the Sheriff's inability to exercise discretion in assessing the fee under the statute.") (internal citation omitted); *Humphries v. Milwaukee County*, No. 10-CV-99-JPS, 2011 WL 5506676, *6 (E.D. Wisc. Nov. 10, 2011) ("a municipality 'cannot be held liable under section 1983 for acts that it did under the command of state or federal law'") (quoting *Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998); *Frobe v. Village of Lindenhurst*, No. 11 C 1722, 2014 WL 902878, *9 (N.D. Ill. March 7, 2014) ("the state law is a state law, not municipal policy").

The United States Court of Appeals for the Tenth Circuit (Tenth Circuit) addressed similar circumstances in *Moya v. Garcia,* 895 F.3d 1229, 1231 (10th Cir. 2018). In *Moya*, two (2) detainees brought suit against the sheriff, other local jail authorities, and the local board of commissioners, asserting that they were wrongly detained because their arraignments were delayed. The Tenth Circuit determined the "sheriff and wardens did not cause the arraignment delays" because the "scheduling of the arraignments lay solely with the state trial court." *See id.* at 1233. The *Moya* court observed that the sheriff notified the court that the plaintiffs were in custody and their "overdetentions were caused by the court's failure to schedule and conduct timely arraignments rather than a lapse by the sheriff or wardens." *Id.* at 1233-34. The Tenth Circuit rejected the *Moya* plaintiffs' argument that the sheriff had a duty to take some action to mitigate the overdetention by requesting the court to schedule arraignments or by taking other similar action to notify the court of the problem. *See id* at 1234. Relying on an analysis of relevant state law, the *Moya* court determined that "New Mexico law required the court (not the sheriff or wardens) to schedule timely arraignments." *Id.* at 1236. The *Moya* court also rejected the dissenting decision's approach, arguing that the "jail officials could have simply released" the

*Moya* plaintiffs. *Id.* at 1238. The Tenth Circuit explained that the plaintiffs based their arguments on the arraignment delays and "never argued that Defendants should have unconditionally released them from jail." *Id.* The Tenth Circuit further explained that the "dissent's theory would create a Catch-22 for jailers" since New Mexico law establishes that "jailers commit a misdemeanor and must be removed from office if they deliberately release a prisoner absent a court order," thus, leave a jailer "forced to choose between committing a crime and facing civil liability under § 1983." *Id.* The *Moya* court ultimately held that the district court did not err when it dismissed the plaintiffs' complaint because the sheriff, wardens, and county did not cause the injury the plaintiffs asserted. *See id.* at 1239.

Like the situation in *Moya*, Plaintiffs did not argue that Regalado should have immediately released Plaintiffs or other similarly situated people immediately upon their inability to pay the bail set for them under the bail schedule. Rather, Plaintiffs repeatedly argue that the local bail procedure and hearings are unconstitutional. *See id.* at 1238; Dkt. # 259, at ¶¶ 3-9, 18-19, 35-39, 47-57, 60-68, 71, 74, 101, 103, 105, 137, 139-40, 141 For example, at ¶¶ 139-40, Plaintiffs provide the following explanation of their claims for relief:

> The Due Process Clause requires the government, before depriving anyone of the fundamental right to pretrial liberty, to provide notice of the critical issues to be decided at the hearing. The person must be represented by counsel and have the opportunity to present and confront evidence and to be heard concerning the issue of pretrial release or detention. Any transparent or de facto order of pretrial detention must be accompanied by findings on the record by clear and convincing evidence explaining why no combination of conditions could sufficiently serve the government's compelling interests.
>
> Defendants violate Plaintiffs' procedural due process rights by depriving them of their fundamental right to pretrial liberty without providing these necessary safeguards to ensure the accuracy of the substantive finding of necessity.

Also, since Oklahoma law criminalizes a sheriff's release of detainees without proper authority such as a court order, as discussed above in § IV.A, Regalado would also be placed in

17

the same "Catch-22" situation, discussed in *Moya*, to any extent Plaintiffs do assert that individuals, who cannot pay the monetary amount set for them by the pre-set bail schedule, should be immediately released. *Moya*, 895 F.3d at 1238. Most importantly, and again analogous to the situation in *Moya*, Regalado did not cause Plaintiffs' alleged injury, that they were detained "without having had a hearing of any kind . . . for no other reason than their inability to pay a secured money-bail amount," since Regalado had no control or policy making authority over the setting of bail, bail hearings, or release on bail, because all of these issues were governed by Oklahoma state statutes or by the procedures and orders of the District Court, as discussed in detail in § IV.A-C above. *See Moya*, 895 F.3d at 1239; *Pembaur*, 475 U.S. at 481, 483.

The role allegedly played by Regalado in this "wealth-based detention scheme" is that he jails arrestees brought by law enforcement to the county jail and will only release them upon payment of secured bail in an amount approved by the court or upon order of the district court. *See* Dkt. # 259, at ¶¶ 18, 36, 57, 80. Plaintiffs' use of the plural word, "Defendants," in several paragraphs of their pleading overly blame everyone for a generalized scheme of wealth-based detention, and in doing so, fail to articulate sufficient facts to place Regalado on proper notice of the grounds for Plaintiffs' claims against him. *See id*. at ¶¶ 3-7, 9-10, 12, 35, 51-52, 59, 74, 76, 80, 86, 113, 117, 122-26, 129-30, 133-135, 137, 140. Each defendant is entitled to fair notice of each claim asserted and the factual basis for such claim. *See Robbins v. Okla.,* 519 F.3d 1242, 1248 (10th Cir. 2008). "[I]n multiparty litigation, 'the Federal Rules do not permit a party to aggregate allegations against several defendants in a single, unspecific statement, but instead require the pleader to identify (albeit generally) the conduct of each defendant giving rise to [his] claims.'" *Jamison v. City of Forsyth, Georgia*, No. 506-CV-399 CAR, 2007 WL 1231663, *1 (M.D. Ga. April 26, 2007) (citing *Parker v. Brush Wellman*, 377 F.Supp.2d 1290, 1294 (N.D. Ga. 2005); *see*

*also In re Benzene Litig.*, No. CIV.A.05C-09-020-JRS, 2007 WL 625054, *7 (Del. Super. Ct. Feb. 26, 2007) ("defendants are entitled at the pleading stage to isolate the wrong they are alleged to have committed, and to distinguish their behavior, if appropriate in the facts, from the behavior of the other defendants"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532–33 (10th Cir. 1998) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants – "despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"—and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim"); *Gray v. University of Colorado Hospital Authority*, 672 F.3d 909, 921 n.9 (10th Cir. 2012) (the defendants lacked notice because the plaintiffs' claim and the facts supporting it used the collective term "defendants" and "d[id] not specify what acts [we]re attributable to whom"); *VanZandt v. Okla. Dep't of Human Servs.*, 276 Fed.Appx. 843, 848-49 (10th Cir. 2008) (the court held that even though the plaintiffs were referring to three (3) named defendants working for the same employer, their use of the collective term "Defendants" was still improper because "the burden rests on the plaintiffs to provide fair notice of the grounds for the claims against each of the defendants").

Here, Plaintiffs' generalized allegations against all Defendants, plural, should be ignored or understood in the context of their particularized factual allegations as to the separate roles played by the state court judges and the County Defendants. Importantly, in Oklahoma "[c]ounties have only such authority as is granted by statute[, and p]ublic officers possess only such authority as is conferred upon them by law and such authority must be exercised in the manner provided by law." *Tulsa Exposition & Fair Corp. v. Board of County Comm'rs*, 1970 OK 67, ¶ 26, 468 P.2d 501, 507-08 (citations omitted). Regalado's authority is limited to the above statutes, none of which

19

grant him the authority to set bail procedure, act as a special or state district court judge, grant bail hearings, or sit in judgment of judicial actions. *See supra* Section IV.A-B. If Regalado did as Plaintiffs allege[14]—operate a wealth based detention scheme, without due process—he has exceeded his statutory authority and committed an *ultra vires* act. "Public officials performing acts which exceed their authority may not bind a public entity. Rather, they lack authority to expand their powers and are bound by mandatory law." *Strong v. State ex rel. The Oklahoma Police Pension & Ret. Bd.,* 2005 OK 45, ¶ 9, 115 P.3d 889, 893. If Plaintiffs' allegations are taken as true, those actions cannot bind Tulsa County because Regalado had no authority to do so. Therefore, Plaintiffs have failed to state a claim against Regalado in his official capacity as a Tulsa County actor.

## D.  REGALADO ACTS AS AN ARM OF THE STATE DISTRICT COURT WHEN HE DETAINS OR RELEASES AN ARRESTEE

Alternatively, Plaintiffs seek prospective relief against Regalado under the fictions of *Ex parte Young* as an agent of the state who may be sued to prevent enforcement of an unconstitutional state law.[15] *See* Dkt. # 259, at ¶ 18 n.3. "Defendant Regalado is named separately from the County as a defendant in the event that the Court concludes that he acts on behalf of the state in this capacity, and thus is subject to prospective relief." *Id*. A state and state actors are generally entitled to Eleventh Amendment Immunity in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101-102 (1984). However, a narrow exception applies when a plaintiff seeks to prospectively enjoin state officials in their official capacities. *See Ex parte Young,* 209 U.S. 123 (1908). This exception "may not be used to obtain a declaration that a state officer has violated a

---

[14] *See* Dkt. # 259*,* at ¶¶ 3-7, 9-10, 12, 35, 51-52, 59, 74, 76, 80, 86, 113, 117, 122-26, 129-30, 133-135, 137, 140.

[15]*See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007) (explaining the various fictions involved in applying the doctrine of *Ex parte Young*).

plaintiff's federal right in the past." *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998). The Eleventh Amendment bars such relief. *See Johns v. Stewart,* 57 F.3d 1544, 1553 (10th Cir. 1995).

Regalado acts not as a county actor when he releases an inmate from custody or detains them prior to trial, but a state actor as an arm of the state district court. *See, e.g, Magic City Amusement Co. v. Hastings*, 1941 OK 220, ¶ 8, 116 P.2d 709, 711 (county sheriff who conducts mortgage foreclosure sale does so as an agent or officer of the state court); *Speight v. Presley*, 2008 OK 99, ¶¶ 13 & 14, 203 P.3d 173, 176-77 (county court clerk's ministerial duties were carried out as an agent of the state court system); *North Side State Bank v. Board of County Comm'rs of Tulsa County*, 1994 OK 34, 894 P.2d 1046 (in making payment from court fund, court clerk was acting as an agent for the state); 1999 OK AG 23, ¶ 9 ("The sheriff is an officer of the court and is subject to its orders and direction."); 1985 OK AG 27, ¶ 2 ("It is not only the power, but the duty, of sheriffs in their various jurisdictions . . . [to] carry out the mandates, orders and directions of the courts.").

As above, Tulsa County is not responsible for Regalado's actions when he follows state law and judicial orders. This is not simply a technical matter. It makes a difference as to who statutorily represents Regalado and whether the County or State is liable and possibly the payment of attorneys' fees and costs.

Moreover, even if an injunctive or declaratory relief under *Ex parte Young* is available against Regalado, it should not be granted. The Civil Rights Act of 1871 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, *except that in any action brought*

> *against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*

(Emphasis added). Plaintiffs may be entitled to a declaratory judgment against the Presiding Judge and the Special Judges in their official capacities, and these judges are likewise entitled to the fruits of such a declaratory judgment regarding Plaintiffs' claims. If Plaintiffs prevail, and the Presiding Judge and special judges adhere to the declaratory judgment, all is well. If not, enjoin them. But don't enjoin their help to disobey them. An injunction issued against Regalado in this case impermissibly enjoins the judges because an injunction applies to all "other persons who are in active concert or participation with [Regalado]." Fed. R. Civ. P. 65(d)(2)(C).

Because Plaintiffs have sued state court judges to get them to change their allegedly unconstitutional procedures and actions, and because a sheriff is duty-bound in Oklahoma to obey the district court as to those in his custody, this Court should dismiss Plaintiffs' request to proceed against Regalado under *Ex parte Young* and instead accommodate the state's interest in a stable, judicial command structure between district court and county sheriff. It is simply unnecessary and would only confuse matters to order Regalado to *make sure* the judges do as they are ordered. Regalado should not be instructed to act as a pseudo-appellate court reviewing the orders and decrees of state court judges he must obey. Although it involved a claim for money damages, the Tenth Circuit's opinion in *Valdez v. City and County of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989) is instructive:

> To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable. Officials must not be called upon to answer for the legality of decisions which they are powerless to control. We explained in [*T & W Inv. Co., Inc. v. Kurtz*, 588 F.2d 801, 802 (10th Cir.1978)], that it is simply unfair to spare the judges who give orders while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a "lightning rod

for harassing litigation aimed at judicial orders." *Id*. . . .

Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both. *Kurtz,* 588 F.2d at 802. Officials employed to implement facially valid court orders could choose: They may disregard the judge's orders and face discharge, or worse yet criminal contempt, or they may fulfill their duty and risk being haled into court. . . . ***Officials such as the defendants must not be required to act as pseudo-appellate courts scrutinizing the orders of judges***. [*Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir.1986)]. The public interest demands strict adherence to judicial decrees.

(Emphasis added). *Valdez* provides sound justification for denying to take up this case under the Declaratory Judgment Act, 28 U.S.C. § 2201.

No injunction can issue forcing compliance with the Constitution until the Court first declares what the Constitution requires. That being the case, the matter should proceed under 42 U.S.C. § 1983 with a declaratory judgment against the state court judges. Injunctive relief may then be granted if the declaratory decree is violated. 42 U.S.C. § 1983. This also comports with Fed. R. Civ. P. 65(d)(2)(C). Plaintiffs should not be allowed to employ an end run around Fed. R. Civ. P. 65(d)(2)(C) and 42 U.S.C. § 1983, nor permit Regalado to sit in judgment of a judge whom he is obligated by state law to obey. Thus, Tulsa County cannot be liable for the complained of actions and Regalado should be dismissed from this action, or at the very least, be dismissed in his capacity as a county actor.

## E. PLAINTIFFS DO NOT HAVE STANDING TO BRING SUIT AGAINST THE BOCC

Standing "is a 'threshold issue in *every* case. *Bd. of Cty. Commisioners of Sweetwater Cty. v. Geringer,* 297 F.3d 1108, 1111 (10th Cir. 2002) (emphasis in original). "Constitutional standing derives from Article III of the U.S. Constitution, which restricts federal courts' jurisdiction to suits involving an actual case or controversy." *Id.* A plaintiff must demonstrate the following three (3)

elements to satisfy the requirements of constitutional standing:

> (1) 'injury in fact'-meaning 'the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) 'a causal relationship between the injury and the challenged conduct' – meaning that the 'injury fairly can be traced to the challenged action of the defendant'; and (3) 'a likelihood that the injury will be redressed by a favorable decision'-meaning that the 'prospect of obtaining relief from . . . a favorable ruling is not too speculative.'

*Id.* at 1112. "The party invoking federal jurisdiction bears the burden of establishing these elements" and these elements are "an indispensable part of the plaintiff's case" throughout the "successive stages of the litigation." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992).

Plaintiffs do not have standing to sue Regalado in his capacity as county actor under § 1983 because they cannot meet their ongoing burden to show that he caused their alleged constitutional injury because Regalado is not a policymaker, final or otherwise, related to their claimed injury of being subject to a wealth-based detention scheme and jailed without having had a due process compliant hearing that inquired into the their ability to pay bail and necessity of detention. Dkt. # 259, at ¶¶ 137, 139-40; *See also Pembaur,* 475 U.S. at 481, 483. Plaintiffs' claims against Regalado, related to their detention without proper bail hearings, are all governed by state statute or district court orders or involved procedures directly established by the district court. *See supra* Section IV.A-B. Further, since Regalado did not cause Plaintiffs' claimed injuries, related to allegedly unconstitutional local bail procedures, Plaintiffs have not met their burden to show that there is a "causal relationship" between their claimed injuries and Regalado's conduct in order to properly establish standing to sue him for these alleged injuries. *Geringer,* 297 F.3d at 1111.

Additionally, an injunction issued against Regalado would not redress Plaintiffs' alleged harms. *See Lujan,* 504 U.S. at 561. As above, Regalado does not have the authority to do what Plaintiffs request. Regalado would violate Oklahoma law, if he were to release an inmate before a

judge orders him to do so. "The short of the matter is that redress of the only injury in fact [Plaintiffs] complain of requires action" by state court judges. *Id*. at 570–71.

Plaintiffs request that Regalado ensure that arrestees have due process compliant bail hearings before he detains them any further but do not explain how this is to occur. If the request is to ensure that records reflect the special judge asked certain questions of the arrestee during the hearing, how does that adequately address the injury? This action would simply show that someone said it happened, regardless of whether it actually occurred. If the request is asking Regalado to make a legal determination of whether constitutional process was given, he is not authorized by law to act as a pseudo-appellate court judging the actions of a special or district court judge. Accordingly, Plaintiffs have not met their ongoing burden to show that they have constitutional standing to bring their claims against Regalado, and therefore, should be dismissed.

## **CONCLUSION**

For these reasons set for forth above, Regalado respectfully requests that this Court dismiss Plaintiffs' claims against him with prejudice, or in the alternative, dismiss him in his capacity as a county actor.

Respectfully submitted,

s/Mike Shouse
Douglas A. Wilson, OK Bar Number 13128
Mike Shouse, OK Bar Number 33610
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 933
Tulsa, OK  74119
douglas.wilson@tulsacounty.org
mshouse@tulsacounty.org
(918) 596-8795
ATTORNEYS FOR
SHERIFF VIC REGALADO

CERTIFICATE OF MAILING & ELECTRONIC NOTICE

I hereby certify that on March 31, 2021, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Alexander Karakatsanis
Alexandria Twinem
Allison Holt
Devan A Pederson
Erin Morgan Moore
Gary Yeung
Hayley Elizabeth Horowitz
Jeb Emmet Joseph
Kristina Michelle Saleh
Laura Gaztambide Arandes
Michelle Anne Kisloff
Phoebe Anne Kasdin
Ryan Downer
Stefanie Erin Lawson
Stevie DeGroff
Vassi Iliadis

s/Mike Shouse
Mike Shouse