## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Richard Feltz and Ashton Lee Dennis, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> vs. <br><br> Board of County Commissioners of the County of Tulsa; Vic Regalado, Tulsa County Sheriff, in his official capacity; Tammy Bruce, Stephen Clark, Julie Doss, Theresa Dreiling, Owen Evans, Mary Ann Godsby, David Guten, Bill Hiddle, Ann Keele, James Keeley, Deborah Ludi Leitch, Anthony J. Miller, Kevin C. Morrison, Kirsten Pace, Wilma Palmer, April Seibert, Rodney B. Sparkman, and Tanya Wilson, in their capacities as Tulsa County Special Judges; and William LaFortune, in his capacity as Presiding Tulsa County District Court Judge, <br><br> Defendants. | Case No. 18-cv-00298-CVE-JFJ |

### BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA'S MOTION TO DISMISS AND BRIEF IN SUPPORT

**Douglas Wilson, OBA No. 13128**
Assistant District Attorney
Tulsa County District Attorney's Office
218 W. 6th St. Suite 933
Tulsa, OK 74119
(918)596-8795
douglas.wilson@tulsacounty.org

**Mike Shouse, OBA No. 33610**
Assistant District Attorney
Tulsa County District Attorney's Office
218 W. 6th St. Suite 935
Tulsa, OK 74119
(918)596-4825
mshouse@tulsacounty.org

### ATTORNEYS FOR DEFENDANT BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 21, Defendant, Board of County Commissioners of the County of Tulsa ("BOCC"), hereby moves this Court for an order dismissing the BOCC from this action. Plaintiffs' Second Amended Complaint ("SAC") is devoid of any allegation against the BOCC that could provide the basis for liability. Furthermore, the BOCC could not be liable for the complained of actions even if Plaintiffs had properly alleged them in their SAC as it does not have final authority over the complained of policies, practices, and procedures, at issue in this case. Therefore, the BOCC respectfully requests that Plaintiffs' claims against it be dismissed as Plaintiffs failed to state a claim upon which relief can be granted and it is an improper party to this suit. In support of its motion, the BOCC submits the following brief:

## I.
## PRELIMINARY STATEMENT

Plaintiffs' claims cannot lie against Tulsa County or any of its officers in their capacity as county actors. Plaintiffs complain that the named Defendants, Tulsa County District Court Presiding Judge ("Presiding Judge"), the Tulsa County Special Judges, the BOCC, and Tulsa County Sheriff Vic Regalado ("Regalado"), violate Plaintiffs' rights by (1) operating a wealth-based detention scheme, and (2) by detaining them without ensuring they receive a prompt due process complaint hearing. However, the BOCC does not have authority to cure the alleged constitutional violations, nor was it responsible for them.

In Oklahoma, arrestees are only released from jail by order of a state court judge or by satisfying bail conditions set by a state court judge. All bail hearings in Oklahoma are conducted by the state court, and all bail determinations are made by state court judges. The BOCC plays no role in detaining or releasing arrestees from the Tulsa County Jail. The BOCC plays no role in bail hearings or bail determinations. Under Oklahoma law, the BOCC has no oversight responsibilities

over the Tulsa County District Court and the District Court is an agency of the State of Oklahoma, not Tulsa County.

Moreover, the Tulsa County Sheriff's Office is the only county office that exercises control over the Tulsa County Jail. The office of county sheriff is created and established by Oklahoma's Constitution and is on par with the office of board of county commissioners (i.e., one does not control the other). The BOCC is not responsible for the acts of Regalado or the District Court.

The SAC is devoid of factual allegations that put the BOCC on notice of what it did specifically that led to the Plaintiffs' alleged harm. Plaintiffs' use of the plural "Defendants" should be ignored as each Defendant has distinct statutory roles. Furthermore, the SAC is bereft of any allegation that a policy or custom of the BOCC caused Plaintiffs' harms. Therefore, Plaintiffs' claims against the BOCC should be dismissed with prejudice as Plaintiffs failed to state a claim upon which relief can be granted and it is an improper party to this suit.

## II.
## SUMMARY OF THE SECOND AMENDED COMPLAINT

Plaintiffs seek prospective declaratory and injunctive relief under 42 U.S.C. § 1983 against a number of state court judges and the County Defendants based on allegations that "Defendants" impose – absent eleven (11) constitutionally required procedural safeguards – secured money bail as a condition of release on arrestees who are unable to pay such bail awaiting trial. Dkt. # 259, at ¶¶ 17-22, 24-26, 28-34, 37, 45-50, 53-74, 87-105, 116, 124-25, 137-41. It is alleged that Plaintiffs/arrestees Richard Feltz, Ashton Lee Dennis, and the putative class members cannot afford to make bail, and that the imposition of money bail under such circumstances is unconstitutional. *Id*. at ¶¶ 6, 26, 29, 34, 69-73, 117. Plaintiffs request an order enjoining the County Defendants and the Presiding Judge from detaining any arrestee in the county jail unable to pay

his or her secured bail amount **unless**: (1) he or she is given a speedy, (2) individualized bail determination hearing that (3) includes a due process complaint inquiry into and (4) findings concerning a person's ability to pay, (5) consideration of and (6) findings concerning alternatives to secured financial conditions of release, (7) preceded by sufficient notice of the matters to be determined, (8) accompanied by appointment of counsel, (9) with the opportunity to be heard and to confront evidence, and (10) findings concerning the necessity of detention, i.e., prior to entering a pretrial detention order, which includes orders imposing secured financial conditions of release on a detainee unable to pay such amount, findings on the record that the government has met its burden to demonstrate that no alternative condition or combination of conditions would be sufficient to serve its compelling interests, with (11) such proof to be by clear and convincing evidence. *Id.* at ¶ 141. Plaintiffs also request an order declaring the judicial practices in place at the time of Plaintiffs pretrial detention unconstitutional, and the above-referenced eleven (11) procedural safeguards constitutionally required. *Id.*

Plaintiffs' specific allegations against the Presiding Judge and other state court special judges differ significantly from their particular allegations against the BOCC. Plaintiffs expressly allege that one (1) or more defendant judges of the Fourteenth Judicial District of the State of Oklahoma are responsible for promulgating the secured money bail schedule (*id*. at ¶¶ 19-22, 55), making individual bail determinations (*id*. at ¶¶ 19, 37, 41, 58-59, 64), promulgating court rules governing bail (*id.* at ¶ 22, 35-38, 53-67), and implementing the eleven (11) procedural safeguards articulated by Plaintiffs. *Id*. at ¶¶ 19-22, 24-26, 28-34, 37, 45-50, 53-74, 87-105, 116, 124-25, 137-41.

Conversely, Plaintiffs specifically allege that:

The Tulsa County Board maintains policies of jailing people who are unable to pay

3

>generic money bail amounts, usually predetermined by the County's bail schedule. The Tulsa County Board also maintains a policy of delaying the appointment of counsel for people who are unable to pay generic money bail amounts and denying counsel at legal proceedings where pretrial release and pretrial detention determinations are made.

*Id*. at ¶ 17. However, the rest of the SAC is devoid of any facts to support these allegations. The SAC only contains one (1) other factual allegation that specifically mentions the BOCC: "[t]he Tulsa County Board operates and administers a pretrial release program that is run by Tulsa County Court Services. The pretrial release program is one of only two forms of non-financial pretrial release used in Tulsa County, the other being personal recognizance release." *Id*. at ¶ 84.

The SAC includes a few generalized mentions of Tulsa County as a governmental entity. *Id.* at ¶¶ 3, 12, 54, 83, 85.

## III.
## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) should be granted when, as here, a complaint fails to make allegations sufficient to support a right to relief. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," but a complaint must "contain enough facts to state a claim for relief that is plausible on its face." *Allen v. Town of Colcord*, 874 F. Supp. 2d 1276, 1282 (N.D. Okla. 2012) (citation and quotation omitted). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly

suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Under Rule 21, the Court may drop an improper party upon motion or *sua sponte*.

## IV.
## ARGUMENTS AND AUTHORITIES

The Civil Rights Act of 1871 is a federal statute, numbered 42 U.S.C. § 1983, that provides a remedy to someone deprived of his or her constitutional rights by a person acting under color of state law. Section 1983 proclaims:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added). A local municipality that is not considered part of the state for Eleventh Amendment purposes, thus, a county, is a "person" for purposes of § 1983 liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.54 (1978); *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). In *Monell,* 436 U.S. at 689, and subsequent cases, the United States Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Brown*, 520 U.S. at 403 (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 480–481 (1986); *Canton v. Harris,* 489 U.S. 378, 389 (1989). Assuming that a constitutional deprivation took place,[1] municipal liability exists under Section 1983 only when "execution of a municipal policy

---

[1] Plaintiffs allege a deprivation of their right to equal protection and due process by jailing them (i.e., not releasing them following probable cause for their arrest and detention) because they cannot afford a monetary payment, and a deprivation of their right to pretrial liberty by jailing them (i.e., not releasing them following probable cause for their arrest and detention) without procedural due process. *See id*. at ¶¶ 137, 140.

inflict[s] the [constitutional] injury." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992). To hold the municipality liable under Section 1983, "plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation." *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998). *Monell's* "policy or custom" requirement applies to § 1983 claims against a municipality for prospective declaratory or injunctive relief. *Los Angeles Cty., Cal. v. Humphries,* 562 U.S. 29, 39 (2010).

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, 520 U.S. at 403-04. "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483-84 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

"In a series of cases, the Supreme Court has consistently held that the question of who is a final policymaker for purposes of attributing liability to a government entity under § 1983 is a question of state law." Karen M. Blum, "Support Your ~~Local~~ Sheriff: Suing Sheriffs Under § 1983," 34 Stetson L. Rev. 623, 630 n.46 (Spring 2005) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Pembaur v. City of*

6

*Cincinnati*, 475 U.S. 469 (1986)).

> The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms. . . . Without attempting to canvass the numberless factual scenarios that may come to light in litigation, we can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business. . . . *[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.*

*Praprotnik*, 485 U.S. at 124-25 (emphasis added).

### A. PLAINTIFFS FAILED TO STATE A CLAIM AGAINST THE BOCC

Plaintiffs' allegations in their SAC against the BOCC are scarce and lack factual support. Plaintiffs' use of the plural word, "Defendants," in several paragraphs of their pleading overly blame everyone for a generalized scheme of wealth-based detention, and in doing so, fail to articulate sufficient facts to place the BOCC on proper notice of the grounds for Plaintiffs' claims against it. *See id.* at ¶¶ 3-7, 9-10, 12, 35, 51-52, 59, 74, 76, 80, 86, 113, 117, 122-26, 129-30, 133-135, 137, 140. Each defendant is entitled to fair notice of each claim asserted and the factual basis for such claim. *See Robbins v. Okla.,* 519 F.3d 1242, 1248 (10th Cir. 2008). "[I]n multiparty litigation, 'the Federal Rules do not permit a party to aggregate allegations against several defendants in a single, unspecific statement, but instead require the pleader to identify (albeit generally) the conduct of each defendant giving rise to [his] claims.'" *Jamison v. City of Forsyth, Georgia*, No. 506-CV-399 CAR, 2007 WL 1231663, *1 (M.D. Ga. April 26, 2007) (citing *Parker v. Brush Wellman*, 377 F.Supp.2d 1290, 1294 (N.D. Ga. 2005); *see also Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532–33 (10th Cir. 1998); *Gray v. University of Colorado Hospital Authority*, 672 F.3d 909, 921 n.9 (10th Cir. 2012).

Here, Plaintiffs' generalized allegations against all Defendants, plural, should be ignored

7

or understood in the context of their particularized factual allegations as to the separate roles played by the state court judges, the BOCC, and Regalado.

Importantly, in Oklahoma "[c]ounties have only such authority as is granted by statute[, and p]ublic officers possess only such authority as is conferred upon them by law and such authority must be exercised in the manner provided by law." *Tulsa Exposition & Fair Corp. v. Board of County Comm'rs*, 1970 OK 67, ¶ 26, 468 P.2d 501, 507-08 (citations omitted). Under Oklahoma law, the BOCC is responsible for, among other things, buying and selling real estate, highway maintenance, contracting on behalf of the county, etc. *See* 19 O.S. § 339 (general powers and duties of the board of county commissioners).

The BOCC's authority is prescribed by statute—none of which grant it the authority to detain arrestees, set bail procedure, act as a special or state district court judge, grant bail hearings, appoint or deny counsel, or sit in judgment of judicial actions. *See* 19 O.S. §§ 321-460.7. Plaintiffs do not allege that the BOCC adopted by majority vote in an open public meeting a formal policy of wealth-based detention that jails people unable to make bail. *See* Dkt. # 259; *see also* 19 O.S. §§ 326-29, and 25 O.S. §§ 301-14. In fact, Plaintiffs allege that the policy of "wealth-based detention" is a policy promulgated and implemented by the state court judiciary. *See* Dkt. # 259, at ¶¶ 19-20, 22 37, 55, 58-59, 64.

Plaintiffs' specific allegation, that the BOCC "operates and administers a pretrial release program that is run by Tulsa County Court Services," *Id*. at ¶ 84, is likewise insufficient to establish liability against the BOCC. State law does indeed authorize the BOCC to "establish and fund a pretrial program" to facilitate the release of people who have committed all but a handful of serious offenses and, for all other people, allows release with or without secured money bail by order of a judge under any "conditions prescribed by the judge." 22 O.S. § 1105.3.

8

While the BOCC may establish and fund a pretrial program to evaluate pretrial detainees for the purpose of making recommendations to the court for their release, its recommendations in this regard are either approved or rejected by a district court judge or magistrate who at all times is the final decision-maker regarding a pretrial detainee's release from jail. *Id.* The BOCC does not control or manage the program. The pretrial release program is "to be utilized by the district court," not the county. *Id.* No one is arrested or detained for violating a county law and there are no county courts in Oklahoma. Moreover, the SAC is devoid of any allegation stating how the BOCC's funding of the pretrial release program caused the alleged constitutional deprivation.

The foregoing allegations against the BOCC are the sort of conclusory formulaic assertions which the Supreme Court found "disentitles them to the presumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009); *see also Patillo v. Larned State Hosp.,* 462 F. App'x 780, 783 (10th Cir. 2012). Since the BOCC does not detain anyone, with or without a bail hearing, had no involvement in the establishment or administration of local bail procedures or hearings, and, in fact, operates a pretrial *release* program; the BOCC is not liable for causing Plaintiffs' asserted injury. Therefore, Plaintiffs have failed to state a claim for municipal liability as no policy or custom of the BOCC caused any of the Plaintiffs' alleged harms.

Furthermore, if the BOCC did as Plaintiffs allege[2]—operate a wealth based detention scheme without due process—it has exceeded its statutory authority and committed an *ultra vires* act. "Public officials performing acts which exceed their authority may not bind a public entity. Rather, they lack authority to expand their powers and are bound by mandatory law."

---

[2] *See* Dkt. # 259*,* at ¶¶ 3-7, 9-10, 12, 17, 35, 51-52, 59, 74, 76, 80, 86, 113, 117, 122-26, 129-30, 133-135, 137, 140.

9

*Strong v. State ex rel. The Oklahoma Police Pension & Ret. Bd.,* 2005 OK 45, ¶ 9, 115 P.3d 889, 893. If Plaintiffs' allegations are taken as true, those actions cannot bind Tulsa County because the BOCC had no authority to do so. Thus, Plaintiffs have failed to state a claim against the BOCC.

### B. STATE JUDGES ARE THE ONLY OFFICIALS WITH THE AUTHORITY TO RELEASE AN ARRESTEE FROM A COUNTY JAIL

State law and local court rules vest exclusive authority in the state judiciary regarding the terms and conditions of an arrestee's release from jail. *See* 22 O.S. § 1105.3(B). The BOCC hereby adopts and incorporates the argument contained in Section IV.B of Regalado's Motion to Dismiss, Dkt. # 272.

#### 1. The BOCC is not Responsible for the Actions of State Court Judges

In Oklahoma, each district court is an agency of the State of Oklahoma, specifically, its judicial branch. The District Court of the State of Oklahoma in Tulsa County is a branch of state government, not county government. *See* Okla. Const. Art. 7, §§ 1, 6, 7, 10-11; 22 O.S. § 4A; 20 O.S. §§ 16.1-16.7, 22-24, 91.1-126; Ch. 1, App. 2, Oklahoma Supreme Court Rules on Administration of Courts; *Speight v. Presley,* 2008 OK 99, ¶¶ 18-19, 203 P.3d 173, 178-79 (board of county commissioners could not be held liable for mismanagement of traffic court files because the responsibility for maintaining traffic files lies with the state court judge or magistrate); *N. Side State Bank v. Bd. of Cty. Comm'rs of Tulsa Cty*, 1994 OK 34, ¶ 15, 894 P.2d 1046, 1051 (actions of county court clerk in collecting and depositing fines, fees and costs in the court fund and disbursing such monies to rightful recipient were acts of the state for which board of county commissioners was not liable); *Hindman v. Thompson*, 557 F.Supp.2d 1293 (N.D. Okla. 2008) (state liable for torts committed by district court judge). The BOCC has no statutory duty to hire, train, supervise, or discipline district court judges. *See* 19 O.S. § 339. Each county is required to

provide a court room and an office for the judge of the district court, but each judge serves his or her judicial district, not the county. *See* 19 O.S. § 401; George B. Fraser, "Oklahoma's New Judicial System," 21 Okla. L. Rev. 373, 375 (1968) ("Fraser"); Okla. Const., Art. 7. Accordingly, the BOCC is not liable for the acts of a state district court or special judge.

### 2. The BOCC is not Responsible for the Actions of Regalado

As provided in Section IV.D of Regalado's Motion to Dismiss, Dkt. # 272, which the BOCC hereby adopts and incorporates, Regalado acts not as a county actor when he releases an inmate from custody or detains them prior to trial, but a state actor as an arm of the state district court. However, even if Regalado acted in his capacity as a county official, the BOCC is still not responsible for his acts.

To the extent Plaintiffs' claims attempt to hold the BOCC responsible for Regalado allegedly detaining people without proper bail hearings, under Oklahoma law, a board of county commissioners "is statutorily separate and distinct from the independently elected sheriff." *Winters v. Board of County Comm'rs of Muskogee County*, 633 F. App'x. 684, 690 (10th Cir. 2015) (unpublished); *Goss v. Board of County Comm'rs of Creek County,* No. 13-CV-374-CVE-TLW, 2014 WL 4983856, *6 (N.D. Okla. Oct. 6, 2014). The authority of the Board of County Commissioners and the Sheriff "may be related, but they are not redundant." *Goss,* 2014 WL4983856, at *6. Pursuant to Oklahoma statutes, the sheriff is in charge of the jail and must comply with the rules and directions of the district court with respect to those in his custody. *See* 57 O.S. § 47. On the other hand, the general powers of Commissioners do not include supervision or control of a jail and do not include incarceration. 19 O.S. § 339.

"Under Oklahoma law, the county sheriff is the final policymaker as to the county jail." *Snow v. Bd. of Cty. Comm'rs of the Cty. of McClain*, No. CIV-14-911-HE, 2014 WL 7335319, at

11

\*2 (W.D. Okla. Dec. 19, 2014) (citing 19 O.S. § 513). Plaintiffs admit as much when they stated that "[t]he Tulsa County Sheriff is a final policymaker for Tulsa County's post-arrest jailing policies and practices." Dkt. # 259, at ¶ 18 n.3. Therefore, Plaintiffs in this case "ha[ve] no basis to proceed with a § 1983 claim against the Board because, as a matter of law, the Board is not a final policymaker for the Sheriff's Office and it cannot be held liable to plaintiff under § 1983 for the acts of employees of the Sheriff's Office." *Nelson v. Glanz,* No. 11-CV-189-CVE-PJC, 2011 WL 2144660, at \*5 (N.D. Okla. May 31, 2011); *see also Jantzen v. Bd. of County Comm'rs of Canadian County*, 188 F.3d 1247, 1259 (10th Cir. 1999); *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988); *duBois v. Payne County Bd. of County Comm'rs,* 543 Fed. Appx. 841, 850 (10th Cir. 2013); *Arnold v. Smallwood,* No. 10-CV-070-GKF-TLW, 2012 WL 1657045, at \*10 (N.D. Okla. May 10, 2012); *Estate of Crowell ex rel. Boen v. Board of County Com'rs of County of Cleveland*, 2010 OK 5, ¶ 23, 237 P.3d 134, 142.

Oklahoma statute 19 O.S. § 4 was amended to provide that "[s]uit may be brought against a county by naming a county officer identified in Section 161 of this title when it is alleged that such officer in his or her official capacity is directly or vicariously liable to plaintiff in an action not arising out of contract." The statute also provides that a court may substitute a county officer listed in 19 O.S. § 161 in his or her official capacity for the BOCC when the county officer is better suited to defend the county under the facts alleged. 19 O.S. § 4. "[C]ounty officer" means "the county clerk, county commissioner, county assessor, district court clerk, county treasurer and county sheriff." 19 O.S. § 161.

To the extent that Plaintiffs have sued the BOCC as "the County" under 19 O.S. § 4, they have already filed suit against "the County" by filing suit against the Regalado in his official capacity. Regalado in his official capacity represents the County and his representation of the

County is complete. *See, e.g., Palmer v. Bd. of Cty. Comm'rs of Sequoyah Cty.,* No. CIV-07-012-RAW, 2007 WL 3407057 (E.D. Okla. Nov. 9, 2007); *Birdwell v. Glanz,* No. 15-CV-304-TCK-FHM, 2016 WL 2726929, at *8 (N.D. Okla. May 6, 2016).

Additionally, Federal District Courts in Oklahoma have applied the amendments to 19 O.S. § 4 and found that:

> After [19 O.S. § 4's] revision, it is clear that actions for alleged failure to properly manage a jail and/or jail staff should be brought against the sheriff of the county rather than the board. Plaintiff's claims against Sheriff Tidwell in his official capacity and those against Defendant Board are duplicative. Defendant Board's request for dismissal will be granted on this issue.

*Bowens v. Bd. of Cty. Commissioners of Custer Cty., Oklahoma*, No. CIV-19-314-C, 2020 WL 2892670, at *2 (W.D. Okla. June 2, 2020); *see also Wirtz v. Regalado,* No. 18-CV-0599-GKF-FHM, 2020 WL 1016445, at *6 (N.D. Okla. Mar. 2, 2020); *Logan v. Regalado*, No. 20-CV-303-GKF-FHM, 2021 WL 796144, at *3 (N.D. Okla. Mar. 2, 2021). Therefore, previous case law that hinged on the pre-amended 19 O.S. § 4 to hold that the BOCC must be sued under a Section 1983 claim to bind Tulsa County is no longer good law. *See e.g.*, *duBois v. Bd. of Cty. Comm'rs of Mayes Cty., Oklahoma*, No. 12-CV-677-JED-PJC, 2014 WL 4810332, at *6 (N.D. Okla. Sept. 29, 2014).

Accordingly, even if this Court were to find that Regalado does not act as an arm of the state district court when he detains or releases arrestees, the BOCC is not responsible for Regalado's actions and should be dropped as a named defendant in this case.

C. **NO POLICY OR CUSTOM OF THE BOCC CAUSED PLAINTIFFS' ALLEGED HARMS**

As above, the judges of the Fourteenth Judicial District of the State of Oklahoma are the officials authorized under state law to establish bail policies and conditions of release for arrestees in the Tulsa County Jail. *See supra* Section IV.B. Because the state court's policy of using secured

13

bail for arrestees at the county jail is a formal policy promulgated by state court judges through publication of a bail schedule, and imposing secured bail on arrest warrants and during probable cause determinations for crimes not on the bail schedule, Plaintiffs cannot make out a case that the BOCC creates, promulgates, or implements an informal custom or practice of wealth based detention.

Accordingly, none of the unconstitutional policies or customs pled by Plaintiffs are those of the BOCC as it does not have policy making authority at the jail or in the district court. Therefore, the SAC is devoid of any factual assertions which would support Plaintiffs' claim that a BOCC policy, practice, or custom actually caused Plaintiffs' harm, and the BOCC should be dismissed.

### D. PLAINTIFFS DO NOT HAVE STANDING TO SUE THE BOCC

Standing "is a 'threshold issue in *every* case." *Board of County Comm'rs of Sweetwater County v. Geringer,* 297 F.3d 1108, 1111 (10th Cir. 2002) (emphasis in original). "Constitutional standing derives from Article III of the U.S. Constitution, which restricts federal courts' jurisdiction to suits involving an actual case or controversy." *Id.* A plaintiff must demonstrate the following three (3) elements to satisfy the requirements of constitutional standing:

> (1) 'injury in fact'-meaning 'the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) 'a causal relationship between the injury and the challenged conduct' – meaning that the 'injury fairly can be traced to the challenged action of the defendant'; and (3) 'a likelihood that the injury will be redressed by a favorable decision'-meaning that the 'prospect of obtaining relief from … a favorable ruling is not too speculative.'

*Id.* at 1112. "The party invoking federal jurisdiction bears the burden of establishing these elements" and these elements are "an indispensable part of the plaintiff's case" throughout the "successive stages of the litigation." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992).

As above, Plaintiffs do not have standing to sue the BOCC under § 1983 because they cannot meet their ongoing burden to show that the BOCC caused their alleged constitutional injury because the BOCC is not a policymaker, final or otherwise, related to their claimed injury of being subject to a wealth-based detention scheme and jailed without having had a due process compliant hearing that inquired into the their ability to pay bail and necessity of detention. Dkt. # 259, at ¶¶ 137, 139-40; *See also Pembaur,* 475 U.S. at 481, 483. Further, since the BOCC did not cause Plaintiffs' claimed injuries, related to allegedly unconstitutional local bail procedures, Plaintiffs have not met their burden to show that there is a "causal relationship" between their claimed injuries and the BOCC's conduct in order to properly establish standing to sue it for these alleged injuries. *Geringer,* 297 F.3d at 1111.

Additionally, an injunction or declaratory judgment issued against the BOCC would not redress Plaintiffs' alleged harms. *See Lujan,* 504 U.S. at 561. As above, the BOCC does not have the authority to do what Plaintiffs request. Enjoining the BOCC would have no effect on the bail system in Tulsa County as they have no authority to enforce any of the challenged actions. "The short of the matter is that redress of the only injury in fact [Plaintiffs] complain of requires action" by state court judges. *Id*. at 570–71. Accordingly, Plaintiffs have not met their ongoing burden to show that they have constitutional standing to bring their claims against the BOCC, and therefore, they should be dismissed

## **CONCLUSION**

For these reasons set for forth above, the BOCC respectfully requests that this Court dismiss Plaintiffs' claims against it with prejudice, or in the alternative, dismiss it as an improper party.

Respectfully submitted,

s/ Mike Shouse
Douglas A. Wilson, OK Bar No. 13128
Mike Shouse, OK Bar No. 33610
Assistant District Attorney
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 933
Tulsa, OK  74119
douglas.wilson@tulsacounty.org
mshouse@tulsacounty.org
(918) 596-8795
ATTORNEYS FOR DEFENDANT BOCC

CERTIFICATE OF MAILING & ELECTRONIC NOTICE

I hereby certify that on March 31, 2021, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

- Alexander Karakatsanis
- Alexandria Twinem
- Allison Holt
- Devan A Pederson
- Erin Morgan Moore
- Gary Yeung
- Hayley Elizabeth Horowitz
- Jeb Emmet Joseph
- Kristina Michelle Saleh
- Laura Gaztambide Arandes
- Michelle Anne Kisloff
- Phoebe Anne Kasdin
- Ryan Downer
- Stefanie Erin Lawson
- Stevie DeGroff
- Vassi Iliadis

s/Mike Shouse
Mike Shouse