IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

RICHARD FELTZ, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY, et al.,

Defendants.

Case No. 18-cv-0298-CVE-JFJ

**PLAINTIFFS' OPPOSITION TO SHERIFF REGALADO'S MOTION TO DISMISS**

Defendant Sheriff Regalado detains hundreds of arrestees a day on unaffordable secured financial conditions of release. Imposed without notice, a meaningful hearing, or a finding that detention is necessary, these conditions operate as unconstitutional detention orders. As the Tulsa County policymaker in matters of detention—or, alternatively, as an official required by state law to enforce conditions of release—Sheriff Regalado carries out the unconstitutional act of detaining Plaintiffs solely because they cannot afford to pay certain sums of money. Either way, this Court can enjoin him to stop.

The Sheriff now seeks dismissal from this suit "in his capacity as a Tulsa County officer." Doc. 272 at 8. He does not deny that he enforces the financial conditions of release that Plaintiffs challenge. Nor does he deny that those conditions of release violate equal protection and due process. He argues only that, because Defendant Judges prescribe those conditions, he cannot be enjoined from enforcing them. That argument ignores long-settled law recognizing the power of federal courts to stop constitutional violations by government actors. Whether or not state law compels the Sheriff to detain Plaintiffs unconstitutionally at the Judges' direction—whether he

acts pursuant to a municipal policy that he makes on behalf of Tulsa County, or solely for the State of Oklahoma—this Court can enjoin him under 42 U.S.C. § 1983 and *Ex parte Young*, 209 U.S. 123 (1908). His motion should therefore be denied.

**I.     This Court Can Enjoin the Sheriff in His Official Capacity Whether He Detains Plaintiffs on Behalf of the County or the State**

Plaintiffs sued the Sheriff in his official capacity. Doc. 259 (Second Amended Complaint) at ¶ 18. Their claims against him do not depend on which governmental entity he serves when he detains them on the challenged conditions of release. Indeed, the very reason Plaintiffs sued the Sheriff in addition to the County was so that they could still obtain prospective relief against him "in the event that the Court concludes that he acts on behalf of the state." *See id.* at 6 n.3. That approach reflects well-settled federal law. If the Sheriff acts for Tulsa County as the policymaking keeper of its jail, then he can be enjoined under § 1983 and *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), as well as under the longstanding, judge-made cause of action arising from the Constitution, recognized in *Ex parte Young*, and applying to officials of all stripes. If, on the other hand, the Sheriff acts for the State of Oklahoma as the enforcer of conditions of release set by State judges, then he can still be enjoined under both § 1983 and the judge-made cause of action, consistent with the Eleventh Amendment exception also recognized in *Ex parte Young*.

The plain text of § 1983 provides for prospective relief against the Sheriff as a "person who, under color of" state law, causes a deprivation of constitutional rights. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (noting that state officials sued in their official capacities for injunctive relief are "persons" within the meaning of § 1983); *Monell*, 436 U.S. at 690 n.55 (noting that local officials sued in their official capacities are "persons" under § 1983); *Monroe v. Pape*, 365 U.S. 167, 184 (1961) (holding that "[m]isuse of power, possessed by virtue

2

of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law"), *overruled on other grounds by Monell*, 436 U.S. at 701. It does not matter, for the purpose of enjoining the Sheriff under § 1983, whether he acts for the State rather than the County. He can be enjoined either way.

At the same time, government officials have an independent obligation not to violate the U.S. Constitution, and federal courts have long-recognized authority to order such violations stopped, whether or not a statutory cause of action like § 1983 is also available. "Federal courts have long exercised the traditional powers of equity, in cases within their jurisdiction, to prevent violations of constitutional rights." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England. . . . It is a judge-made remedy . . . ."); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (equitable relief "has long been recognized as the proper means for preventing entities from acting unconstitutionally"); *Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the state to do." (footnote omitted)); *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) ("To obtain [prospective] relief [against a sheriff enforcing judicial eviction orders], plaintiffs do not need a statutory cause of action. They can rely on the judge-made cause of action recognized in *Ex parte Young* . . . ."), *cert. denied sub nom. Johanknecht v. Moore*, No. 18-1056, 2019 WL 569983 (U.S. May 20, 2019).

This judge-made cause of action applies to state and local officials alike. *See, e.g.*, *Moore*, 899 F.3d at 1103 ("Actions under *Ex parte Young* can be brought against both state and county officials . . . so it is unnecessary for us to resolve the parties' dispute over whether the Sheriff acts on behalf of King County or the State of Washington when he executes writs of restitution. . . . The Sheriff's role in executing those writs makes him a proper defendant . . . ."); *Griffin v. Cty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 228 (1964) (upholding injunction against county officials under *Ex parte Young*); *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 957 (9th Cir. 2002) (reinstating claims against municipal officers because they were "classic *Ex parte Young* defendants"). Here, too, it does not matter which entity the Sheriff represents when he detains Plaintiffs unconstitutionally.

To be enjoined under either cause of action, an official need not be the only actor who bears responsibility for the plaintiffs' constitutional injuries. The mere fact that some other official may have harmed them separately beforehand, even in a way that can be said to have precipitated the defendant's own conduct, does not preclude injunctive relief against the defendant. This is illustrated well by cases enjoining the enforcement of unconstitutional state laws by executive officers who had no role in their enactment. *See, e.g.*, *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (upholding injunction against enforcement of unconstitutional state statute); *Supreme Ct. of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736 (1980) (holding members of Supreme Court of Virginia subject to prospective relief in their enforcement capacities under § 1983); *id.* (noting that "Prosecutors . . . are natural targets for § 1983 injunctive suits since they are the state officers who are threatening to enforce and who are enforcing the law"); *Florida Lime & Avocado Growers, Inc. v. Jacobsen*, 362 U.S. 73 (1960) (facial challenge to California regulatory statute, naming California Director of the Department of Agriculture as defendant);

*Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) ("[T]he essence of an *Ex parte Young* action is seeking relief against the state officials who are responsible for enforcing the violative state laws, not against the state officials who drafted the violative legislation.").

The same is true when a plaintiff seeks to block the enforcement of an unconstitutional policy or order rather than of a statute: federal courts can enjoin the enforcer regardless of who issued the directive. "Indeed, *Ex parte Young* itself was a suit against state officials . . . to enjoin enforcement of a railroad commission's order . . . ." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645–46 (2002) (allowing suit for injunction against state officials "from enforcing an order in contravention of controlling federal law"). Accordingly, federal courts have enjoined the enforcement of unconstitutional directives even when they come from judges. *See, e.g.*, *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995 (6th Cir. 2019) (upholding preliminary injunction of county sheriff's enforcement of unconstitutional financial conditions of release set by judges); *Moore*, 899 F.3d at 1103, 1106 (upholding injunction of county sheriff's enforcement of judicial eviction orders); *ODonnell v. Harris Cty.*, 892 F.3d 147, 165 (5th Cir. 2018) (setting forth model injunction authorizing county sheriff "to decline to enforce orders requiring payment of prescheduled bail amounts as a condition of release . . . if the orders are not accompanied by a record showing that the required individual assessment was made and an opportunity for formal review was provided"); *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 770–71 (M.D. Tenn. 2015) (enjoining county sheriff from enforcing secured money bail amounts as conditions of release following arrest pursuant to misdemeanor violation-of-probation warrants).

Sheriff Regalado is the final policymaker with respect to the Tulsa County Jail. 19 Okla. Stat. § 513 ("The sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable."); *Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999) (holding that, "[u]nder Oklahoma law, a county sheriff is in charge of the jail" and thus "a final policymaker with regard to its jail"), *abrogated in part on other grounds*, *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020).

Plaintiffs' detention injury is therefore "fairly traceable" to the Sheriff for purposes of Article III standing: Were he not to detain them when they cannot pay the bond amounts set by Defendant Judges, Plaintiffs would not be detained in the Tulsa County Jail in violation of their rights against wealth-based detention and detention without due process. *See Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 814 (10th Cir. 2021) (noting that, "at the motion to dismiss stage, a plaintiff can satisfy the 'fairly traceable' requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury" (citing *Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012))).[1] For the same reason, Plaintiffs' detention injury is redressable by an injunction barring the Sheriff from enforcing the unconstitutional conditions of release.[2]

This Court has authority to issue such an injunction no matter whose policy the Sheriff carries out when he detains Plaintiffs on the challenged conditions of release. If state law does not require the Sheriff to enforce plainly *un*lawful orders, then his choice to enforce the challenged conditions of release set by Defendant Judges (even though he can reasonably foresee that his

---

[1] The Sheriff is therefore mistaken to deny Article III causation on the alleged ground that Defendant Judges are *also* but-for causes of Plaintiffs' unlawful detention, Doc. 272 at 31.

[2] The Sheriff is therefore mistaken to deny Article III redressability on the alleged ground that enjoining him would not redress Defendant *Judges'* violations, Doc. 272 at 31–32.

doing so will result in their being detained without the relevant procedures and findings) constitutes a County policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."); *Lopez*, 172 F.3d at 763 (holding that, under Oklahoma law, a "county may be liable on basis that [its Sheriff] is a final policymaker with regard to its jail, such that his actions 'may fairly be said to be those of the municipality' (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997))).[3] The Sheriff's County policy is then a moving force behind Plaintiffs' harm. *See, e.g., Furber v. Taylor*, 685 F. App'x 674, 678 (10th Cir. 2017) (unpub.) (noting that municipal liability requires that "defendants' constitutional violations were both the cause-in-fact and the proximate cause of [plaintiff's] injuries" (citing *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006))); *id.* (analyzing proximate causation in terms of reasonable foreseeability, following *Paroline v. United States*, 572 U.S. 434, 445 (2014)). The Court can then enjoin him, in his official capacity, from enforcing that local policy.

If, on the other hand, state law compels the Sheriff to enforce Defendant Judges' conditions of release come what may (no matter how invalid he knows or should know them to be), then the very state law that forces his hand also subjects him to injunctive relief as a state enforcement actor. Under *Ex parte Young*, federal courts can enjoin defendant officials who "have some connection with the enforcement" of an unconstitutional state act. 209 U.S. at 157. An official has

---

[3] *Cf. McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-CV-00033, 2019 WL 633012, at *15 (M.D. Tenn. Feb. 14, 2019), *aff'd*, 945 F.3d 991 (6th Cir. 2019) ("The custom or policy Plaintiffs challenge . . . is the practice of the Sheriff in *detaining* misdemeanor probation arrestees who cannot satisfy the secured bail amount written on the arrest warrant. As the official in charge of the operation of the county jail, the Sheriff effectuates the detention of these indigent misdemeanor probation arrestees.").

such a connection if he has "a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014). Sheriff Regalado argues that Oklahoma law obligates him to enforce the challenged conditions of release. Doc. 272 at 11–16, 20–27. If that is in fact his duty, it is one that he has consistently exercised by detaining Plaintiffs and putative class members on those conditions. He can then be enjoined from exercising it. As the Sheriff himself has acknowledged:

> It is undisputed that the Tulsa County Sheriff uses the district court's bail schedule . . . . It is also undisputed [that he] detains arrestees brought to the jail until and unless a judge directs otherwise . . . . To the extent that he acts on behalf of the state court, he may be enjoined from doing so consistent with 42 U.S.C. § 1983. Therefore, he may be a proper party subject to injunction.

Doc. 116 at 5. In other words, the purported state-law duty to follow the Defendant Judges illegal directives, which the Sheriff now invokes as a *defense*, would, if it existed, provide the *basis* for enjoining him under *Ex parte Young*.

Oklahoma law provides that "[t]he sheriff . . . shall serve and execute, *according to law*, all process, writs, precepts and orders *issued or made by lawful authorities*." 19 Okla. Stat. § 514 (emphases added). The Sheriff cites no authority—and Plaintiffs have found none—showing that he has a state-law duty to enforce *illegal* court orders. For the reasons given here, this Court can enjoin him regardless.[4]

## II. The Sheriff Can Be *Enjoined* in His *Official* Capacity Regardless of Whether He Would Be Liable for *Damages* in His *Personal* Capacity

To enjoin the Sheriff prospectively in his official capacity is not to hold him personally liable in damages for Plaintiffs' past detention. It is therefore irrelevant that, as the Sheriff notes,

---

[4] Which government entity the Sheriff serves when detaining Plaintiffs—be it the County or the State—will matter only in the event that Plaintiffs prevail in this action and seek attorney's fees as a prevailing party under 42 U.S.C. § 1988. Plaintiffs submit that the Court need not make that determination at this stage of the case. *See Moore*, 899 F.3d at 1103. If the Court concludes that it must decide that question now, they will happily provide further briefing on the relevant state law.

8

the Tenth Circuit has in some cases declined to hold jail officials personally liable in damages for complying with a judge's unlawful orders. *See* Doc. 272 at 23–25 (discussing *Moya v. Garcia*, 895 F.3d 1229 (10th Cir. 2018)); *id.* at 29–30 (discussing *Valdez v. City & Cty. of Denver*, 878 F.2d 1285 (10th Cir. 1989)).

The *Moya* plaintiffs sued prison officials *personally* for *damages* because their arraignments had been unduly delayed while they were detained. *Id.* at 1231–32. The court upheld the dismissal of those claims on the ground that, because it fell to the state court to schedule arraignments, the prison officials "were powerless to cause timely arraignments." *Id.* at 1238. That sufficed to dismiss the plaintiffs' claims because, unlike here, the plaintiffs had challenged only the delay of their court appearances, *not* the illegality of their detentions while awaiting those appearances. *Compare id.* at 1238 & n.11 (determining that plaintiffs had waived any argument based on their right to pretrial liberty and therefore declining to decide whether they had a claim for unlawful detention), *with* Doc. 259 at ¶ 6 (alleging that Defendants' "detention scheme violates . . . the United States Constitution"), ¶ 137 (alleging that "Defendants violate Plaintiffs' rights" to pretrial liberty and against wealth-based detention "by placing and keeping them in jail"). But even if the *Moya* court had reached the unlawful-detention issue and ruled that the prison officials were not *personally* liable *in damages* for having detained the plaintiffs, that would have done nothing to undermine a federal district court's authority, upon finding the detention unconstitutional, to *enjoin* them in their *official* capacities to release the plaintiffs. It is the latter relief, not sought in *Moya*, that Plaintiffs seek here.

In dicta addressing the unlawful-detention issue hypothetically, the *Moya* court reasoned that imposing *personal damages* liability for following unlawful detention orders would create a "Catch-22" for jailers who face criminal liability under New Mexico state law for releasing

9

prisoners absent a court order. 895 F.3d at 1238. By complying with that state law, jailers would risk incurring personal, financial liability that a federal court would only later assess against them. But subjecting such jailers to *prospective* injunctions in their *official* capacity creates no such dilemma. For they would not have to disobey state law without already having a federal injunction (and thus a complete defense to any state prosecution) in hand. Indeed, a jailer thus enjoined could himself bring an action under *Ex parte Young* to *prevent* any prosecution for disobeying state law in compliance with the federal court's injunction. *See Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 906 (10th Cir. 2017) ("Of course, a 'court may not convict a criminal defendant of violating a state law that federal law prohibits.'" (quoting *Armstrong*, 135 S. Ct. at 1384)).

Similarly, the plaintiff in *Valdez* sought personal damages from prison officials who had enforced a state judge's allegedly unconstitutional order that he be jailed for contempt of court. *See* 878 F.2d at 1286. Much as in *Moya*, the *Valdez* court reasoned that the threat of personal liability for executing illegal but facially valid judicial orders would force officers bound by those orders to decide for themselves whether to comply with the orders and risk damages, or disobey them and risk termination or prosecution. *See* 878 F.3d at 1289. As in *Moya*, so in *Valdez*: the rationale for withholding personal damages liability from officers bound by state law does not extend to the prospective relief sought against the Sheriff in his official capacity here.

Plaintiffs ask this Court, not the Sheriff, to do the work of reviewing the constitutionality of detention orders in Tulsa County and to provide instruction to the Sheriff as to the terms on which he can and cannot continue to enforce them. *See infra* note 6. If this Court invalidates the challenged conditions of release and issues a properly tailored injunction, the Sheriff's purported state-law obligation to enforce them under the relevant circumstances will be void by virtue of the Supremacy Clause. *See, e.g., McCulloch v. Maryland*, 4 L.Ed. 579 (1819).

**III.      Enjoining the Sheriff Would Not Circumvent Judicial Immunity**

Sheriff Regalado argues that enjoining him here would amount to an impermissible "end run" around § 1983's bar on enjoining judges in their judicial capacities (unless declaratory relief is unavailable or has been violated). Doc. 272 at 29 ("An injunction issued against Regalado in this case impermissibly enjoins the judges because an injunction applies to all 'other persons who are in active concert or participation with [Regalado].'" (quoting Fed. R. Civ. P. 65(d)(2)(C))). Even supposing for the sake of argument that, contrary to this Court's holding, Doc. 48 at 18–19, Defendant Presiding Judge promulgates the bail schedule judicially rather than administratively,[5] the Sheriff is mistaken. Defendant Judges are not "in active concert or participation with" him when he jails Plaintiffs.

The purpose of Rule 65(d)(2)(C) is to prevent an enjoined party from "thwart[ing] the injunction by operating through others." *Lundahl v. Glob. E. LLC*, 643 F. App'x 752, 753 (10th Cir. 2016) (unpub.) (quoting *ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1215 (10th Cir. 2011)). Accordingly, "injunctions may reach nonparties if: (1) the nonparty aids or abets a named defendant in committing the underlying violation or disobeying the court's order; or (2) the nonparty is captured under the general rubric of privity, includ[ing] nonparty successors in interest and nonparties otherwise legally identified with the enjoined party." *BMW of N. Am., LLC v. Issa*, No. 2:19-CV-220, 2020 WL 1325278, at *5 (D. Utah Mar. 20, 2020) (citations and quotation marks omitted) (citing *Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372, 377 (10th Cir. 1996); *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017)).

Neither requirement would be met by an injunction against Sheriff Regalado here. Any such injunction would direct him not to detain people in the Tulsa County Jail under certain

---

[5] *Cf. ODonnell v. Harris Cty.*, 892 F.3d 147, 156 (5th Cir. 2018) (holding that county judges act as municipal policymakers when they promulgate rules dictating post-arrest policies, including a bail schedule).

11

specified circumstances.[6] As Defendant Judges play no role in carrying out the act of detention itself, they would not be in a position to "aid or abet" the Sheriff in any violation of the injunction. If the Sheriff were to defy such an injunction by detaining Plaintiffs under the relevant circumstances, Defendant Judges would not be liable for contempt on that ground (though of course they may be subject to further relief should they flout any declaratory judgment this Court issues directly against *them*). Nor are the Judges "in privity" with the Sheriff for purposes of Rule 65. Observing that "the Tenth Circuit has not expressly delineated what types of relationships constitute being 'in privity' under Rule 65(d)(2)(C)," the district court in *BMW* looked to "persuasive opinions from other circuits, which have summarized the caselaw to recognize two types of privity relationships: (1) nonparty successors in interest, and (2) nonparties otherwise legally identified with the enjoined party." *BMW*, 2020 WL 1325278 at *7 (quotation marks omitted). The Sheriff offers no argument that Defendant Judges fall into either of these categories. Nor could he.

### IV. The Availability of Relief Against Defendant Judges Does Not Affect the Sheriff's Susceptibility to Injunction

Finally, Sheriff Regalado asserts that Plaintiffs should have sued the Judges alone. Doc. 272 at 29–30. But plaintiffs are the masters of their complaint, and have the right to choose among

---

[6] *See, e.g.*, *McNeil*, 2019 WL 633012, at *16 (preliminarily enjoining county sheriff "from detaining any person on misdemeanor probation . . . based on a secured financial condition of release (*i.e.*, secured bail amount) on a violation of probation warrant if the warrant is not accompanied by a record showing that the condition (*i.e.*, secured bail amount) was imposed after: (1) notice to the arrestee and an opportunity to be heard by an appropriate judicial officer; and (2) findings by that judicial officer concerning the arrestee's ability to pay, alternatives to secured bail, and whether pre-revocation detention is necessary to meet a compelling governmental interest"); *ODonnell*, 892 F.3d at 165 (setting forth model injunction authorizing county sheriff "to decline to enforce orders requiring payment of prescheduled bail amounts as a condition of release . . . if the orders are not accompanied by a record showing that the required individual assessment was made and an opportunity for formal review was provided").

Injunctions like these show how this Court can enjoin Sheriff Regalado without requiring him to "act as a pseudo-appellate court" reviewing the process afforded by Defendant Judges in setting conditions of release. Doc. 272 at 32. Instead the Court can follow those in *McNeil* and *ODonnell* and direct him to look for objective indications that the conditions of release are backed by the requisite procedures and substantive findings. It is of no moment that this safeguard against Plaintiffs' unlawful detention would not redress the Judges' own violations or prevent them from feigning the requisite procedures and fabricating the requisite findings, as Sheriff Regalado implies they could, *id.*

available remedies. *See Mickle v. Wellman Products, LLC*, No. 8-cv-297, 2008 WL 3925266, at *5 (N.D. Ok. Aug. 20, 2008); *accord Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). If a remedy is available against the Sheriff, it cannot be denied because, in his view, it would make more sense to issue a different remedy against another party.

The Sixth Circuit applied this very principle in affirming a preliminary injunction similar to that needed here. *See McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995–96 (6th Cir. 2019). The plaintiffs there, misdemeanor probationers, sued a county sheriff in his official capacity and won a preliminary injunction directing him not to detain them based on secured financial conditions of release appearing on violation-of-probation warrants unless those warrants were accompanied by a record showing that certain procedures had been afforded and findings made regarding the probationer's ability to pay, the necessity of detention, and the alternatives to bail. *Id.* at 993. The defendant sheriff "claim[ed] that his detention of the probationers [wa]s not the real violation," and that "[t]he true problem" was "the way the judges set bail amounts." *Id.* at 995. Writing for the court, Judge Sutton explained that although "the plaintiffs might have employed a different theory and sued the judges, if not immune themselves, for their part in carrying out the alleged harm. . . . , 'the plaintiff is the master of the complaint' and free to choose between legal theories." *Id.* at 996 (quoting *Caterpillar* 482 U.S. at 398–99). "Absent some other bar," the court held, "they are free to sue the sheriff." *Id.* So too here.

**V.     Conclusion**

Sheriff Regalado enforces unconstitutional conditions of release. If state law does not require him to enforce them, then his policy of doing so is a choice he makes for Tulsa County, *see Pembaur*, 475 U.S. at 483, and he is then subject to injunctive relief under § 1983 and the Constitution. If, one the other hand, state law somehow requires the Sheriff's unlawful detention

13

practices, then he can still be enjoined as an enforcement actor. That Defendant Judges might also be subject to prospective relief for setting the release conditions unconstitutionally does not preclude relief against the Sheriff for his own, separate constitutional violations. Whatever relief Plaintiffs might obtain against other officials, this Court has the power to order the Sheriff to stop violating the federal Constitution. As the Supreme Court has explained: "[T]he prohibitions of the Fourteenth Amendment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action, . . . or whatever the guise in which it is taken." *Cooper v. Aaron*, 358 U.S. 1, 17 (1958). For the reasons set forth above, Plaintiffs respectfully ask the Court to deny the Sheriff's motion to dismiss.

Dated: May 5, 2021

*/s/ Hayley Horowitz*
Hayley Horowitz
Phoebe Kasdin
STILL SHE RISES, TULSA
567 E. 36th Street North
Tulsa, OK 74106
(918) 392-0874
hayleyh@stillsherises.org

Ryan Downer*
Alexandria Twinem*
Marco Lopez (*pro hac vice* motion forthcoming)
CIVIL RIGHTS CORPS
1601 Connecticut Avenue NW, Suite 800
Washington, DC 20009
(202) 844-4975
ryan@civilrightscorps.org
alexandria@civilrightscorps.org
marco@civilrightscorps.org

Allison Holt Ryan*
Michelle Kisloff*
Stevie DeGroff*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
allison.holt-ryan@hoganlovells.com

14

michelle.kisloff@hoganlovells.com
stevie.degroff@hoganlovells.com
(202) 637-5600

Gary Yeung*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
gary.yeung@hoganlovells.com

Vassi Iliadis*
HOGAN LOVELLS US LLP
1999 Avenue of the Arts, Suite 1400
Los Angeles, CA 90067
vassi.iliadis@hoganlovells.com
(310) 785-4600


*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiffs' Opposition to Sheriff Regalado's Motion to Dismiss was served on May 5, 2021 via the Northern District of Oklahoma CM-ECF system upon all counsel of record.

*/s/ Hayley Horowitz*