**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RICHARD FELTZ, ASHTON DENNIS, on behalf of themselves and all other similarly situated, | |
| *Plaintiffs*, | |
| v. | |
| BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA, *et al*., | |
| *Defendants*. | Case No. 18-CV-0298-CVE-JFJ |

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS PRESIDING
JUDGE'S AND SPECIAL JUDGES' MOTIONS TO DISMISS**

# TABLE OF CONTENTS

                                                                                                              **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.      Plaintiffs Have Standing to Seek Equitable Relief from the Judicial Defendants .............. 1

        A.      The Court's Ruling that a Named Plaintiff Has Standing Is Law of the Case.......... 2

        B.      Plaintiffs Have Alleged Future Injuries Fairly Traceable to Judicial
                Defendants ......................................................................................................... 3

    1.      Plaintiffs Have Standing to Pursue Their Claims Against the Presiding Judge............... 4

    2.      Plaintiffs Have Standing to Pursue Their Claims Against the Special Judges................ 7

II.     Plaintiffs' Claims Are Not Moot........................................................................................ 9

        A.      The Court Has Held that Plaintiffs' Inherently Transitory Claims Are Not
                Moot.................................................................................................................. 9

        B.      The Adoption of a Bond Docket Has Not Cured the Constitutional
                Violations Alleged by Plaintiff Feltz ................................................................. 11

III.    Plaintiffs State a Claim for Relief Against the Presiding Judge ......................................... 12

        A.      Plaintiffs State a Claim that their Detention without Procedural Protections
                Violates Due Process ........................................................................................ 14

        B.      Plaintiffs State a Claim that Their Wealth-Based Detention Violates Due
                Process and Equal Protection............................................................................. 15

        C.      Plaintiffs States a Claim That Their Jailing Without Any Finding of
                Necessity Violates Substantive Due Process ...................................................... 16

IV.     Conclusion ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977)............................................................................................................1

*Brangan v. Massachusetts*,
  80 N.E.3d 949 (Mass. 2017) ...........................................................................................17

*Buffin v. City & Cty. of San Francisco*,
  No. 15-CV-04959-YGR, 2018 WL 424362 (N.D. Cal. Jan. 16, 2018) ...................................19

*Caliste v.Cantrell*,
  No.17-6197, 2018 WL 1365809 (E.D. La. Mar. 16, 2018) ....................................................19

*Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co.*,
  765 F.3d 1205 (10th Cir. 2014) .........................................................................................2

*County of Los Angeles v. Davis¸*
  440 U.S. 625 (1979)............................................................................................................12

*Davis v. FEC*,
  554 U.S. 724 (2008)............................................................................................................3

*DeVargas v. Mason & Hanger-Silas Mason Co.*,
  844 F.2d 714 (10th Cir. 1988) ...........................................................................................13

*Fuentes v. Shevin*,
  407 U.S. 67 (1972)..............................................................................................................15

*Gonzalez v. Feinerman*,
  663 F.3d 311 (7th Cir. 2011) .............................................................................................8

*Grigsby v. Barnhart*,
  294 F.3d 1215 (10th Cir.2002) ...........................................................................................2

*Halley v. Huckaby*,
  902 F.3d 1136 (10th Cir. 2018) .....................................................................................19, 19

*Hartmann v. Cal. Dep't of Corr. & Rehab.*,
  707 F.3d 1114 (9th Cir. 2013) .............................................................................2, 13 BA_Cite_290E19_000116

*Kitchen v. Herbert*,
  755 F.3d 1193 (10th Cir. 2014) ......................................................................................6, 9

ii

*Lopez-Valenzueloa v. Arpaio*,
    770 F.3d 772 (9th Cir. 2014) ...................................................................................19

*Luckey v. Harris*,
    860 F.2d 1012 (11th Cir. 1988) ................................................................................8

*Major v. Benton*,
    647 F.2d 110 (10th Cir. 1981) ..................................................................................3

*Matthews v. Eldridge*'s.
    424 U.S. 319, 335 (1976)........................................................................................15

*Morrissey v. Brewer*,
    408 U.S. 471 (1972)................................................................................................15

*Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*,
    No. 09-CV-285-TCK-TLW, 2009 WL 10695365 (N.D. Okla. Aug. 10, 2009).....................5

*New Mexico v. Brown*,
    338 P.3d 1276 (N.M. 2014) ....................................................................................17

*O'Donnell v. Goodhart*,
    900 F.3d 220 (5th Cir. 2018) .......................................................................16, 17, 19

*O'Dowd v. Anthem, Inc.*,
    No. 14-CV-02787-KLM, 2016 WL 9735772 (D. Colo. Sept. 23, 2016)..................5

*Parkell v. Danberg*,
    833 F.3d 313 (3d Cir. 2016)......................................................................................8

*Prairie Band Potawatomi Nation v. Wagnon*,
    476 F.3d 818 (10th Cir. 2007) ....................................................................... *passim*

*Riggs v. City of Albuquerque*,
    916 F.2d 582 (10th Cir. 1990) ..................................................................................8

*Rimbert v. Eli Lilly & Co.*,
    647 F.3d 1247 (10th Cir. 2011) ................................................................................2

*Sosna v. Iowa*,
    419 U.S. 393 (1975)..................................................................................................9

*Thompson v. United States*,
    No. 95-C-1112-K, 1996 WL 679675 (N.D. Ok. Sept. 3, 1996) .............................16

*Troutt v. Jones*,
    415 F. App'x 935 (10th Cir. 2011) ...........................................................................2

*Turner v. Rogers*,
   564 U.S. 431 (2011) ..................................................................................15

*United States v. Leathers*,
   412 F.2d 169 (D.C. Cir. 1969) ................................................................17

*United States v. Mantecon-Zayas*,
   949 F.2d 548 (1st Cir. 1991) ...................................................................17

*United States v. Salerno*,
   481 U.S. 739 (1987) ......................................................................14, 15, 18

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
   535 U.S. 635 (2002) ....................................................................................4

*Walker v. City of Calhoun, Ga.*,
   901 F.3d 1245 (11th Cir. 2018) ...............................................................16

*Wolff v. McDonnell*,
   418 U.S.539 (1974) ...................................................................................15

**Other Authorities**

Rule 1(D), (E) .....................................................................................................6

Rule 2 .......................................................................................................7, 11, 12

Rule 12(b)(6) .....................................................................................................13

Rule 25(d) ............................................................................................................3

Defendants Special Judges and Presiding Judge William LaFortune contribute to the enforcement of an unconstitutional detention scheme that, at the time of filing, caused Plaintiffs Richard Feltz and Ashton Dennis ongoing injuries. The Court has already held that at least one of the Plaintiffs, Mr. Feltz, has standing to pursue equitable relief against the Judicial Defendants.  It also has ruled that Plaintiffs' release from ongoing pretrial detention did not moot their putative class action claims, and that Defendants' adoption of new pretrial detention policies raised factual questions about the viability of Mr. Feltz's claims that cannot be resolved except on presentation of a full record. In other words, the standing and mootness defenses that Judicial Defendants raise in their motions to dismiss have all be rejected, and the motions should be denied.  Finally, Plaintiffs identify three sets of constitutional rights that are violated by the pretrial detention scheme in Tulsa County. Because the Presiding Judge has some connection to the enforcement of the illegal policy scheme, Plaintiffs are entitled to injunctive relief against him, even if he is not personally responsible for all of the scheme's harmful aspects  His motion to dismiss for failure to state a claim against him should therefore be dismissed.

I.  **PLAINTIFFS HAVE STANDING TO SEEK EQUITABLE RELIEF FROM THE JUDICIAL DEFENDANTS**

Judicial Defendants move to dismiss the claims against them for lack of standing, ignoring that this Court has already found Mr. Feltz to have standing to sue them for equitable relief.  The Court determined that Mr. Feltz, at the time his complaint was filed, was suffering ongoing and prospective constitutional injuries, traceable to Judicial Defendants enforcement of allegedly unconstitutional policies.  ECF No. 48 at 10, 12.  The standing of one class representative is sufficient to sustain the entire action.  *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977) ("[W]e have at least one individual plaintiff who has demonstrated standing . . . . Because of the presence of this plaintiff, we need not consider whether the other individual .

1

. . plaintiffs have standing to maintain the suit."); *Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1212 (10th Cir. 2014) (where one class representative has standing, "we need not decide whether the other named Plaintiffs . . . have standing to serve as class representatives"). Nothing has changed since the Court found standing to undermine its ruling. The motion to dismiss for lack of standing should therefore be denied.

A.     **The Court's Ruling that a Named Plaintiff Has Standing Is Law of the Case**

Judicial Defendants hope to use the filing of the Second Amended Complaint as an opportunity to relitigate standing, but law of the case precludes reexamination. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir.2002) (same); *O'Dowd v. Anthem, Inc.*, No. 14-CV-02787-KLM, 2016 WL 9735772, at *3 (D. Colo. Sept. 23, 2016) ("because Defendants' present Motion raises many of the same arguments for dismissal as the First Motion to Dismiss, these arguments are subject to the law of the case doctrine.").

To establish standing, Plaintiffs "need only [1] identify the law or policy challenged as a constitutional violation and [2] name the official within the entity who can appropriately respond" to an order of equitable relief. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). The Court has ruled that Mr. Feltz identified prospective injuries traceable to government policies that he therefore has standing to challenge, and that Mr. Feltz properly named as defendants the judicial officials who can correct those violations. *See* ECF No. 48 at 10, 12, 17. In the Second Amended Complaint, Plaintiffs made three changes to the case, none of which affects the Court's ruling on standing. *See* ECF No. 259. "Standing must be analyzed from the facts as they existed at the time the complaint was filed." *Troutt v. Jones*, 415 F. App'x 935, 938 (10th Cir. 2011) (quoting *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004)); *accord*

2

*Davis v. FEC*, 554 U.S. 724, 734 (2008).  The three changes do not alter allegations about the nature of interactions or responsibilities of the Judicial Defendants with respect to Mr. Feltz at the time his claims were filed.

First, the Second Amended Complaint adds a new named plaintiff, which does not affect standing, because only one class representative is required to establish standing.  ECF No. 256 at 5. Second, it was updated to reflect that certain defendants, sued in their official judicial capacities, have been "automatically and continuously substituted by operation of Rule 25(d) with new officials who have come to carry out relevant duties."  ECF No. 256 at 10 (internal quotation marks omitted).  The changes are ministerial, not substantive, and so do not affect the Court's standing analysis.  Finally, the Second Amended Complaint updated Plaintiffs' factual allegations to reflect developments that occurred before and during discovery.  ECF No. 256 at 3.  These changes did not affect the substance of Plaintiffs' claims against the Judicial Defendants.  *See* ECF No. 256 at 6 ("SAC does not alter the class definition, the alleged common questions of fact and law related to counts 1 and 2, or the wording of counts 1 and 2.  The proposed SAC contains only minor changes to the injunctive and declaratory relief requested.").

Because there have been no substantive changes to the factual allegations concerning Mr. Feltz's relationship to Defendants at the time of filing, or the nature of the legal claims, the Court's prior holding that Mr. Feltz has standing remains the law of the case.  *See Major v. Benton*, 647 F.2d 110, 112-13 (10th Cir. 1981) ("When a court enunciates a rule of law in the course of a given case, the law of the case doctrine generally requires the court to adhere to the rule throughout the proceedings," unless "substantially different, new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous").

**B.    Plaintiffs Have Alleged Future Injuries Fairly Traceable to Judicial Defendants**

Even if they could properly be re-considered, Defendants' standing arguments are meritless.  Both Mr. Feltz and Mr. Dennis had standing at the time of filing to seek relief from the Judicial Defendants who both imposed and carried out the policies responsible for their ongoing injuries and could be directed to alleviate those injuries.

### 1. Plaintiffs Have Standing to Pursue Their Claims Against the Presiding Judge

The Presiding Judge can be enjoined if it is shown that he had "some connection" with the enforcement of an unconstitutional state policy. *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007). The Presiding Judge's connection to Tulsa's illegal pretrial detention practices is  at least two-fold: (1) he promulgates the bail schedule that causes arrestees' initial wealth-based detention, and (2) he has general authority to establish and oversee the procedures and substantive standards by which bail is imposed and reconsidered and to supervise and oversee the special judges who carry those procedures out. ECF No. 259 ¶ 22.  At the time of filing, Mr. Feltz was directly suffering as a result of the bond schedule; he was detained on an unaffordable $50,000 that had been imposed according to the schedule.  ECF No. 259 ¶¶ 136-140.[1]

---

[1] The Presiding Judge can pretend that "[t]he bond schedule did not delay" Mr. Feltz's release, ECF No. 270 at 14, only by accepting detention of presumptively innocent arrestees as the default, and ignoring all of Plaintiffs' theories of liability.  Plaintiffs allege that (1) arrestees' due process and equal protection rights are violated when they are detained on unaffordable money bond amounts that allow their financially better-off, but otherwise similarly situated fellow arrestees, to buy their release in violation of equal protection an due process, ECF No. 259 ¶ 137; (2) unaffordable money bond amounts operate as illegal detention orders imposed without a sufficiently compelling state interest in violation of due process, *id*.; and (3) unaffordable money bond amounts operate as illegal detention orders imposed without sufficient procedural protections, *id*. ¶¶ 139-40. By imposing an unaffordable money bond amount on Mr. Feltz, the bond schedule unquestionably delayed his release vis-à-vis his wealthier compatriots and stripped him of his constitutionally protected liberty. In assessing Plaintiffs' standing to seek injunctive relief under *Ex parte Young*, these theories of liability cannot be assumed away: "Ex parte Young does not include an analysis of the merits of the claim. ("An allegation of an ongoing violation of federal law ... is ordinarily sufficient.") *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 646 (2002) (alterations omitted). "Rather, when determining whether *Ex parte Young* applies, the 'question is not whether the state officials

The Presiding Judge is a proper defendant for an equitable challenge to the bond schedule's use. He acknowledges his authority to promulgate the bail schedule, but he tries to distance himself from its enforcement, arguing that the bail schedule's *creation*, as opposed to its *application*, "is too attenuated to establish the necessary causation." ECF No. 270 at 14. The Presiding Judge's attempt to frame the schedule's promulgation as a "discrete, past act" fails in light of its ongoing impact on Mr. Feltz at the time of filling, ECF No. 270 at 19, but the bond schedule operates as standing order, directing the Sheriff to continue imposing the bail schedule's terms on new arrestees every day. The Presiding Judge "clearly ha[s] assisted or currently assist[s] in giving . . . effect" to the policies that caused Mr. Feltz ongoing harm. *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007).

In addition, both named Plaintiffs were suffering from the courts' policy of enforcing unaffordable secured money bail conditions for days without granting access to a meaningful hearing to determine the necessity of detention. ECF No. 259 ¶ 3. When Mr. Feltz sued, he was in jail on such an order, had had *no* interaction with a judge, and was not scheduled to have a judicial appearance until his arraignment, at which he would not be allowed to challenge his bond conditions. ECF No. 259 ¶ 26. Mr. Dennis was also detained on unaffordable bond; he had had a "bond docket" appearance, but he was provided no notice and no opportunity to consult with an attorney or to present argument or evidence, and at no time was consideration given, or findings made, about the necessity of, or alternatives to, his confinement. ECF No. 259 ¶¶ 29-32. Like Mr. Feltz, Mr. Dennis was not scheduled to see a judge again until his arraignment where his bail conditions would likewise go unaddressed. ECF No. 259 ¶ 34. The Presiding Judge is a proper

---

'actually violated federal law,' but is instead 'whether the plaintiffs have stated a 'non-frivolous, substantial claim for relief' under federal law.'" *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, No. 09-CV-285-TCK-TLW, 2009 WL 10695365, at *10 (N.D. Okla. Aug. 10, 2009).

defendant for an equitable challenge to the State's use of unaffordable bail conditions to detain arrestees without process or justification, because his "general administrative, rulemaking, and supervisory authority over the District Court for Tulsa County," gives him "some connection" to the operation of pretrial bond-setting procedures.  ECF No. 259 ¶ 22.

The Presiding Judge disputes his role in overseeing enforcement of the Tulsa County District Court's bond-setting standards and procedures, insisting that he neither promulgates the relevant local rules, or determines the release conditions imposed in individual cases by Special Judges.  ECF No. 270 at 14, 20.  But to be the subject of an official-capacity suit, a government official need not either promulgate the controlling policy or dictate its enforcement outcomes. It is enough that the official "exercise[s] supervisory powers" over the officials who do carry out the policy. *Kitchen v. Herbert*, 755 F.3d 1193, 1202 (10th Cir. 2014).

In *Kitchen*, the Tenth Circuit held that a Governor and an Attorney General could be enjoined from enforcing a legislative ban—that they neither personally enacted nor personally applied—on issuing marriage licenses to same-sex couples that they neither enacted nor applied, because they were "statutorily charged with supervising the official conduct of all executive and ministerial officers" in the state, including the county clerks who administered the challenged law. *Id*. at 1202-03.  The Presiding Judge likewise does not personally carry out bond hearings and arraignments, but he does "have general administrative supervision" over the judges who do, their assignments, and the court's work and operations. 20 O.S. Ch. 1, App'x 2, Rules on Admin. of Courts, Rule 1(D), (E).  The Presiding Judge can determine the timing and nature of processes afforded to arrestees, and can "manage the assignment, duties, and performance of district court personnel" as they administer those processes; he can even "suspend, furlough, or terminate individual district court personnel" to ensure their compliance with his established procedures and

6

standards.  *Id.* at Rule 2; *see also* ECF No. 270 at 6.  The Presiding Judge has demonstrated a "willingness to exercise" these duties as they apply to pretrial detention procedures, *Prairie Band Potawatomi Nation*, 476 F.3d at 828, going so far as to have created a bond docket by administrative order during the pendency of this action.  ECF No. 259 ¶ 22. The Presiding Judge is therefore a proper target for equitable relief declaring that pretrial detention practices in Tulsa are unconstitutional and enjoining him from participating in their enforcement..

      **2.**      **Plaintiffs Have Standing to Pursue Their Claims Against the Special Judges**

The Special Judges are the state actors empowered to carry out all pretrial detention proceedings and oversee all pre-arraignment and arraignment hearings.  ECF No. 259 ¶ 19.  They review money-bail amounts previously assessed according to the bail schedule, and impose money bail amounts where none have been previously imposed.  ECF No. 259 ¶ 19.  The Court has held that declaratory relief can be issued against them based on their role overseeing initial appearances, which, for Mr. Feltz, was his arraignment and had not yet occurred at the time of filing.  ECF No. 48 at 11-12.  Like Mr. Feltz, Mr. Dennis had not yet been arraigned when he sued.  ECF No. 259 ¶ 34.

Plaintiffs' claims for relief against the Special Judges have only gotten stronger since the Court held them subject to equitable relief.  Now, the Special Judges rotate to staff a daily docket at which they impose or adjust monetary bond amounts for arrestees who have not yet been arraigned.  ECF No. 259 ¶¶ 21, 64, 89.  This docket positions them as daily enforcers of the state policies Plaintiffs challenge as unconstitutional—policies of using money bail to detain people based on wealth, without adequate procedures, and absent necessary substantive findings. For putative class members, like Mr. Feltz and Mr. Dennis, whose liberty is stripped by these policies, the Special Judges are among "the state officials who are responsible for enforcing the violative

state [policies]" and whose prospective conduct is therefore subject to declaratory relief. *Prairie Band Potawatomi Nation*, 476 F.3d at 828 (citation omitted).

Even though this Court has held that the Special Judges may be sued for prospective relief, they raise two contradictory objections in an effort to avoid this action: (1) that they cannot be sued for their *future* misconduct because most of them did not personally enforce the challenged policies against Plaintiffs in the *past*, and (2) those who did personally interact the Mr. Feltz or Mr. Dennis cannot be held liable for their past conduct under *Ex parte Young*, which authorizes only prospective relief. *See* ECF No. 269 at 12, 15; ECF No. 270 at 14-15. Plaintiffs do not seek remedies for past misconduct; to pursue prospective equitable relief against the State, they are "not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." *Hartman*, 707 F.3d at 1127; *see also Parkell v. Danberg*, 833 F.3d 313, 332 (3d Cir. 2016) ("Our conclusion that the State Defendants lacked personal involvement in past constitutional violations does not preclude [plaintiff] from obtaining prospective injunctive relief for ongoing violations."); *Gonzalez v. Feinerman*, 663 F.3d 311 (7th Cir. 2011) (if a plaintiff "seek[s] only damages, [an official's] lack of personal involvement would be conclusive, but since [plaintiff here] also seeks injunctive relief it is irrelevant whether the [official] participated in the alleged violations" (citations omitted)); *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988) ("Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity."). Standing for injunctive relief is established by showing ongoing or likely future harm, *see Riggs v. City of Albuquerque*, 916 F.2d 582, 586 (10th Cir. 1990) (standing established for injunctive relief on showing of likely future, not past, harm), stemming from a government policy to which the defendant official has "some" enforcement connection, and so can be directed to adopt some

8

measure of redress.  *Kitchen*, 755 F.3d at 1201.  Both Plaintiffs satisfy this showing with respect

to each of the Special Judges.[2]

## II.    PLAINTIFFS' CLAIMS ARE NOT MOOT

As with their standing arguments, Judicial Defendants attempt to resurrect two mootness

disputes that have been extensively litigated.  The first was unequivocally resolved in Plaintiffs'

favor after two rounds of briefing that Defendants fail to even mention, and the second, at best for

Defendants, turns on factual disputes that the Court has held cannot be resolved without a full

record.  Both mootness arguments must therefore be rejected.

### A.    The Court Has Held that Plaintiffs' Inherently Transitory Claims Are Not Moot

Defendants' first mootness argument was subject to two rounds of briefing at the outset of

this case before it was squarely rejected by this Court. Judicial Defendants observe now, as they

did in their very first motion to dismiss, that Plaintiffs have had their arraignments, are no longer

in custody, and will not foreseeably be subjected to Tulsa County's pretrial detention practices

unless they are rearrested. ECF No. 24 at 4-6; ECF No. 48 at 8-12.  This is true and would

ordinarily moot their claims for prospective relief—except that this Court has already recognized

that Plaintiffs  fall into a category of putative class representatives raising claims so inherently

transitory that "the controversy . . . becomes moot as to them before the district court can

reasonably be expected to rule on a certification motion."  *Sosna v. Iowa*, 419 U.S. 393, 402 n.11

---

[2] Special Judges argue that Plaintiffs have no standing to challeng any of their policies or practices "with regards to warrants or arrests for charges that do not appear on the pre-set bond schedule," because they were not arrested on warrants or for charges that do not appear on the bond schedule. ECF No. 269 at 15. Plaintiffs do not purport to challenge any such policies. They challenge their illegal detentions, and the illegal detentions of all others similarly situated. Whether people who are detained after having been arrested on a warrant or for a charge that does not appear on the bond schedule are sufficiently similarly situated with respect tlo the challenged detention questions is a matter to be litigating in connection with the motion for class certification.

9

(1975). Because the transitory nature of these claims would render certain categories of constitutional violations practically unreviewable, the Supreme Court created the "inherently transitory" exception to mootness. *See* Newberg on Class Actions, §2:13 & n.13, n.2 (5th Ed. 2018). The exception is distinct from the "capable-of-repetition" exception that defendants invoke. ECF No. 269 at 13. To satisfy the capable-of-repetition exception, plaintiffs must show that the challenged action is capable of repetition to *them*. *Id*. § 2:12 & n.4 (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). But to satisfy the inherently transitory-claims exception, plaintiffs need only "show that there will likely be a constant class of persons suffering the deprivation complained of in the complaint." *Id*. § 2:13 & n.3 (quoting *Olson v. Brown*, 594 F.3d 577, 583 (7th Cir. 2010). Then named plaintiff can represent the interest of the class because the court can be assured that there exists an ongoing stream of people subject to the same transitory constitutional violations that the original Plaintiffs can represent.

When Judicial Defendants first presented their mootness argument in 2018, the Court agreed and dismissed the case. ECF No. 40 at 11-12. But Plaintiffs moved for reconsideration, clarifying that their challenge was to equal protection and due process violations suffered only between arrest and the time at which defense counsel has been appointed and can move for and secure a bail reduction hearing. The Court recognized their claims to be inherently transitory and reinstated the case. ECF No. 48 at 5-6. Judicial Defendants do not argue that the reinstatement was erroneous; they simply re-present their mootness argument as though these two rounds of briefing had never occurred. The question has been settled in Plaintiffs' favor: their claims are not moot so long as there is a stream of putative class members, detained because they cannot afford monetary conditions of release that have been imposed without due-process compliant hearings and findings of necessity.

**B.     The Adoption of a Bond Docket Has Not Cured the Constitutional Violations Alleged by Plaintiff Feltz**

For Judicial Defendants' second mootness argument to prevail, the Court would have to assume the Complaint's allegations to be false and resolve multiple factual disputes in Defendants' favor. Judicial Defendants argue that Mr. Feltz's claims—but not Mr. Dennis's—are moot because the Judicial Defendants have changed their post-arrest procedures since Mr. Feltz's arrest and the initial filing of his complaint, culminating in the adoption of Local Rule 2.  ECF No. 269 at 13.  In support of their argument, Judicial Defendants mischaracterize the nature of the harm alleged by Mr. Feltz as a failure to provide any sort of bond hearing; they point to their new Local Rule 2, which purports to ensure some sort of bail hearing for detainees within 48 hours of arrest; and they declare Mr. Feltz's claims no longer relevant.  ECF No. 269 at 14. But Mr. Feltz's claims are not so simply disposed of. Mr. Feltz sued because, as he explained in his original complaint, after his arrest, he was "place[d] and [kept] in jail because [he could] not afford to pay monetary bail amounts required without inquiry into and findings concerning ability to pay and without consideration and findings concerning alternative conditions of release and the necessity of wealth-based pretrial detention," and because he was deprived of his liberty without "notice of the critical issues to be decided at a [hearing] . . . . represent[ation] by counsel and . . .the opportunity to present and confront evidence and to be heard concerning the issue of pretrial release or detention," and without "findings on the record by clear and convincing evidence explaining why no combination of conditions could sufficiently serve the government's compelling interests."  ECF No. 2 ¶¶ 133, 135. Local Rule 2, even if it is faithfully adhered to, does not provide these things.

Local Rule 2 does not cure any, let alone all, of these constitutional violations.  Arrestees continue to have money-bail imposed upon arrest, without individualized assessments of the need for detention, such that those with money can buy their release while putative class members

11

remain jailed only because they are poor. ECF No. 259 ¶ 3. Moreover, not all arrestees eventually appear on bond docket; those who do cannot privately communicate—and often cannot see or hear—their attorneys; are not given notice of the relevant issues to be decided; and have no meaningful opportunity to present evidence. Judges presiding over bond hearings make no findings on the record by any evidentiary standard about the necessity of pre-trial detention. ECF No. 259 ¶¶ 19, 90, 101.

Local Rule 2 does not moot Mr. Feltz's claims unless it has "completely and irrevocably" cured the complained-of violations. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). To find that it has done so, the Court would have to presume Plaintiffs' allegations to be false— allegations that Judicial Defendants do not even specifically refute. They simply argue that Local Rule 2 provides for *some process* so "Plaintiff Feltz's complaint about having *no process* to review his bail is moot." ECF No. 269 at 15. As explained, that is not Plaintiff Feltz's complaint.

In an order denying Plaintiffs' motion for preliminary relief, after reviewing substantial evidence presented by all parties, including evidence by Plaintiffs that Local Rule 2 had not cured the alleged violations, *see, e.g.*, ECF No. 191 at 11-12, the Court concluded that it could not determine "whether plaintiff [Feltz] is likely to succeed on the merits of the bail system claims," because the record, at that point, was "too conflicting and incomplete." ECF No. 191 at 33. Judicial Defendants' motion does not clarify the record. Defendants' constitutional violations cannot be presumed cured, given Plaintiffs' claims—and evidence—to the contrary, and those claims therefore cannot be dismissed as moot.

## III.  PLAINTIFFS STATE A CLAIM FOR RELIEF AGAINST THE PRESIDING JUDGE

His argument that Plaintiffs have failed to state a claim against him, the Presiding Judge repeats many of the misconceptions that underlie Judicial Defendants' standing arguments. The

Presiding Judge endeavors to isolate his own personal, historical activities and to establish that those activities, standing alone, do not violate the Constitution.  ECF No. 270 at 20 (delineating "Plaintiffs' specific claims with respect to the Presiding Judge").  But the point of Plaintiffs' lawsuit is not to lay blame at any particular official's feet or hold individual bad actors liable for personal misconduct.  Plaintiffs' official-capacity suit for injunctive relief aims to establish that the *government's* treatment of arrestees, as a whole, violates the Constitution when it results in their being jailed for bad reasons, for inadequate reasons, and without sufficient procedural protections. Plaintiffs seek to have the unconstitutional portions of the *governmental* pretrial detention policies declared unlawful by the Court, and the particular government officials who contribute to those policies' enforcement enjoined from continuing to do so.  *See DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 718 (10th Cir. 1988) (a plaintiffs suing "a defendant in official capacity only . . . seeks to change the behavior of the *government entity*" (emphasis added)).

The nature of the Presiding Judge's precise role in enforcing the challenged scheme is therefore relevant to determining whether he is a proper defendant under *Ex parte Young*. *See, e.g.*, *Prairie Band Potawatomi Nation*, 476 F.3d at 828 (discussing nature of connection required).  But once the Presiding Judge is established as a proper defendant to be sued in his official capacity, evaluation of Plaintiffs' claims under Rule 12(b)(6) cannot be limited to an analysis of the Presiding Judge's—or any other specific actor's—personal involvement.  Rather, the viability of Plaintiffs' claims must be assessed with reference to the conduct of the government entity as a whole.  *See Hartmann*, 707 F.3d at 1127 (a plaintiff seeking prospective equitable relief government actors "is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation," but must instead "identify the *law or*

13

*policy* challenged as a constitutional violation and name the official within the entity who can appropriately respond") (emphasis added).

The question then is whether Plaintiffs' jailing violates due process and equal protection given the totality of the circumstances surrounding their detention. As discussed, the Court has already held that Plaintiffs alleged due process and equal protection injuries, ECF No. 48 at 9, and found that predicting the likely success of those claims cannot be done on an incomplete record. ECF No. 191 at 33.  The Presiding Judge's present arguments, which are all echoes of arguments previously presented to the court in much greater depth, foreshadow some of the disputes that will arise in applying law to the facts of this case, but they offer no basis for dismissing plaintiffs' claims as a matter of law.

Plaintiffs assert three different claims, and the Presiding Judge makes scattershot attempts to argue for dismissal of each.

A.      **Plaintiffs State a Claim that their Detention without Procedural Protections Violates Due Process**

First, Plaintiffs allege that their procedural due process rights are violated when they are jailed pretrial without a hearing that includes such elements as: (1) notice of the issues to be decided; (2) disclosure of the evidence presented by the government; (3) an opportunity to be heard and present evidence; (4) on-the-record findings about the reasons for their detention, by *any* standard of evidence; and (5) access to an attorney.  ECF No. 259 ¶ 19. The Presiding Judge responds only that the Supreme Court's ruling in *United States v. Salerno*, 481 U.S. 739 (1987), "does not stand for the proposition that bail decision[s] . . . require written findings on the record regarding ability to pay, flight risk, or danger to the community."[3] ECF No. 270 at 20.

---

[3] Plaintiffs do not allege that "*bail decisions*" require written findings, but that *orders resulting in pretrial detention* do.

14

Setting aside the question of whether the Presiding Judge's reading of *Salerno* is correct, Plaintiffs do not rely on *Salerno* alone for their claim that certain classic procedural protections must be satisfied before someone is deprived of their liberty. Plaintiffs' procedural due process analysis has been laid out at length in prior briefing, *e.g.*, ECF No. 158 at 17-19, but in short: the necessary procedures are determined by application of *Matthews v. Eldridge*'s three-part balancing test among "the private interest" at issue, "the risk of an erroneous deprivation" absent the additional safeguard, and the state's interest in not providing it. 424 U.S. 319, 335 (1976). However, this Court need not start from first principles to determine the procedures necessary in this context; decades of case law make clear that the elements identified above are required, but not provided in before people who are presumed innocent, can be stripped of their liberty, and some of the elements listed above are among "the minimum requirements of due process" where arrestees' bodily liberty is at stake."  *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *see also Turner v. Rogers*, 564 U.S. 431, 447 (2011) (requiring notice, opportunity to be heard and findings on the record); *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("Parties whose rights are to be affected are entitled to be heard); *Wolff v. McDonnell*, 418 U.S.539, 564-65, 598 (1974) (requiring a statement of reasons for revocation of good time credits).

When this case is resolved on the merits, Defendants may dispute which among these elements is required by procedural due process, but Plaintiffs' allegations that they are jailed without *any* of them is sufficient to state a claim under the Fourteenth Amendment.

### B.    Plaintiffs State a Claim that Their Wealth-Based Detention Violates Due Process and Equal Protection

Plaintiffs second claim is that, in part as a function of Defendants' use of a bail schedule, arrestees in Tulsa County with the means to pay are released, while those with fewer financial resources, who are otherwise identically situated, remain jailed.  ECF No. 259 ¶ 137. Plaintiffs

have argued at length in prior filings that this type of wealth-based detention is subject to heightened scrutiny under the equal protection and due process clauses, but that, as practiced in Tulsa County, it is unconstitutional discrimination under any standard. *See, e.g.*, ECF No. 187 ¶ 14-21.  The Presiding Judge in his present motion to dismiss makes no argument that wealth-based detention in Tulsa County, as described in Plaintiffs' complaint, is constitutional. Instead, he observes that some courts have held "that bail schedules are not pers se constitutionally problematic," ECF No. 270 at 21, and that they have been held permissible in some circumstances, when they are paired with other protections, such as automatic release after 48 hours, *Walker v. City of Calhoun, Ga.*, 901 F.3d 1245, 1260-61 (11th Cir. 2018), or prompt, robust, due-process compliant hearings, *O'Donnell v. Goodhart*, 900 F.3d 220, 224 (5th Cir. 2018).  *See Id*.

Plaintiffs have elsewhere shown that these cases cited by the Presiding Judge are outliers, and their reasoning is flawed, *see, e.g.*, ECF No. 179 at 4. But even assuming that they are correct, and use of a bail schedule can, in some circumstances, be compatible with due process and equal protection, it does not follow that *Tulsa County's* practice of jailing people based on wealth is necessarily lawful because it also involves a bail schedule.  The Presiding Judge makes no argument to that effect.

"Assertions of violations of due process and equal protection are necessarily fact-intensive," *Thompson v. United States*, No. 95-C-1112-K , 1996 WL 679675, at *2 (N.D. Ok. Sept. 3, 1996), that make poor candidates for resolution on a motion to dismiss.  The Presiding Judge's motion to dismiss is Plaintiffs' wealth-based detention claim unsupported; it must be denied, so that the claim can be evaluated on a full record.

C.     **Plaintiffs States a Claim That Their Jailing Without Any Finding of Necessity Violates Substantive Due Process**

Plaintiffs' final claim is that jailing them, without *any* individual findings that their detention serves a valid state purpose violates substantive due process. ECF No. 259 ¶ 137. The Presiding Judge offers two arguments for this claim's dismissal, neither of which succeeds. First, he argues that Plaintiffs' substantive due process claim is in fact an "improperly framed" Eighth Amendment claim for excessive bail that must be analyzed under the standard specific to that provision. ECF No. 270 at 22. But Plaintiffs' do not complain that their bail has been set too high. Rather, Plaintiffs note that an unattainable financial condition of release is a de facto order of pretrial detention, as has been acknowledged by every appellate court to consider the question. *See O'Donnell*. 892 F.3d at 162; *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969); *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991); *New Mexico v. Brown*, 338 P.3d 1276, 1292 (N.M. 2014); *Brangan v. Massachusetts*, 80 N.E.3d 949, 963 (Mass. 2017). This does not mean that unaffordable money bail is necessarily excessive and cannot be imposed; it means that an unaffordable money bail condition must be treated as an order of detention, and must be adequately justified as an order depriving arrestees of their liberty. The Fourteenth Amendment, and not the Eighth, therefore applies.

Second, the Presiding Judge argues that Plaintiffs' substantive due process claim must be dismissed because promulgation of a bail schedule does not "shock the conscience." ECF No. 270 at 22-23. This argument relies on an incorrect legal standard and an incomplete understanding of the facts underlying defendants' substantive due process claim.

Plaintiffs' substantive due process claim is not limited to challenging the use of a bail schedule. Plaintiffs complain of a pretrial detention scheme that allows Defendants to place and keep arrestees in jail without determining that their jailing serves any purpose. For example, Mr. Dennis was initially detained on a bail amount set by the schedule. But then he appeared on the

bond docket, and a different unaffordable amount of bond was set.  No justification was given for imposing a monetary bail condition that meant Mr. Dennis would remain in jail; it is not even clear whether the judge knew she was issuing a de facto detention order.  No one asked Mr. Dennis if he could afford to pay the bond, and no one provided him with any explanation for the amount set. Mr. Dennis did not hear mention of any risks to public safety or nonappearance if he were allowed to go home. ECF No. 259 ¶ 32**.**

Plaintiffs alleges that Defendants violate substantive due process when they impose monetary conditions in circumstances like these, that place and keep arrestees in jail without any attempt at justification. *Id.* ¶ 137.   The Presiding Judge's argument that use of a *bond schedule* does not violate substantive due process, ECF No. 270 at 22, even if true, is therefore insufficient to defeat Plaintiffs' substantive due process claim, which is based on a broader set of allegations.

The Presiding Judge also applies an inapplicable "shocks the conscience" legal standard to evaluate Plaintiffs' substantive due process claim.  To reach that standard, the Presiding Judge cites a Tenth Circuit case involving familial association claims; in that context, the court used a framework for evaluating substantive due process claims, by which the appropriate inquiry depends on whether the challenged government action is legislative or executive. ECF No. 270 at 22 (citing *Halley v. Huckaby*, 902 F.3d 1136 (10th Cir. 2018)). For executive actions, the court used a "shocks the conscience test"; for legislative actions, the court used a more traditional interests-weighing test. *Halley*, 902 F.3d at 1136.

Defendants do not cite a single case in which such a framework has been used to evaluate challenges to deprivations of physical liberty. Instead, in every case that Plaintiffs have found, courts adjudicating substantive due process challenges to pretrial detention weigh detainees' liberty interest against the states' interest in depriving them of that liberty. *See, e.g., Salerno*, 481

U.S. 739, 751 (1987); *see. e.g.*, *Lopez-Valenzueloa v. Arpaio*, 770 F.3d 772, 780–81 (9th Cir. 2014); *Caliste v.Cantrell,* No.17-6197, 2018 WL 1365809 (E.D. La. Mar. 16, 2018); *Buffin v. City & Cty. of San Francisco*, No. 15-CV-04959-YGR, 2018 WL 424362, at *5 (N.D. Cal. Jan. 16, 2018); *O'Donnell*, 251 F. Supp. 3d at 1135 n.78; *see also* ECF No. 158 at 11-18.

Even if the framework sketched out in *Halley* ever applies in the pretrial detention context, the Presiding Judge is mistaken that the policies challenged by Plaintiffs constitute executive acts as opposed to legislative ones, which, according to the *Halley* court should be evaluated according a more traditional rights-and-interests balancing test.  The Presiding Judge reasons that the challenged conduct must be executive, because the bail schedule is promulgated by him, in his administrative capacity, and according to a legislative grant of power.  But he cites no authority for his conclusion.  Judge Tymkovich, likely the Tenth Circuit's strongest proponent of the framework adopted in *Halley*, suggests that the question of whether a challenged action is legislative or executive "should turn mostly on whether the challenged action is *conduct* by government officials, or instead is a policy that is applicable to more persons.  The number of affected persons is usually part of figuring out when actions are legislative or not, and here, the shocks-the-conscience test is best suited only to the conduct that directly affects the litigants."  Hon. T. Tymkovich et al., A Workable Substantive Due Process, 95 Notre Dame L. Rev. 1961, 2003 (2020).  Plaintiffs here challenge Defendants' broader set of pretrial detention policies.  Therefore even if the *Halley* framework applies, the "shocks the conscience" test does not. The Presiding Judge does not move for dismissal of Plaintiffs' substantive due process claim on the basis of any other legal standard.  The motion to dismiss should therefore be denied.

## IV.    CONCLUSION

For the foregoing reasons, Judicial Defendants' motion  should be denied.


Dated May 6, 2021

<div style="margin-left: 50%;">

/s/ Hayley Horowitz
Hayley Horowitz
Phoebe Kasdin
STILL SHE RISES, TULSA
567 E. 36th Street North
Tulsa, OK 74106
hayleyh@stillsherises.org
(918) 392-0867

Alexandria Twinem*
Ryan Downer*
Marco Lopez (*pro hac vice* motion
forthcoming)
CIVIL RIGHTS CORPS
1601 Connecticut Avenue NW
Suite 800
Washington, DC 20009
alexandria@civilrightscorps.org
ryan@civilrightscorps.org
marco@civilrightscorps.org
(202) 844-4975

Allison Holt Ryan*
Michelle Kisloff*
Stevie DeGroff*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
allison.holt-ryan@hoganlovells.com
michelle.kisloff@hoganlovells.com
stevie.degroff@hoganlovells.com
(202) 637-5600

Vassi Iliadis*
HOGAN LOVELLS US LLP
1999 Avenue of the Arts, Suite 1400
Los Angeles, CA 90067
vassi.iliadis@hoganlovells.com
(310) 785-4600

</div>

Gary Yeung*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
gary.yeung@hoganlovells.com

*Attorneys for Plaintiffs*

*\*Admitted to practice pro hac vice*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 6th day of May 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via the Court's ECF System to all registered parties.

<div align="right">

<u>/s/ Hayley Horowitz</u>
Hayley Horowitz

</div>