IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

RICHARD FELTZ, on behalf of himself and all others similarly situated,

  Plaintiff,
v.

TULSA COUNTY, *et al.,*

  Defendants.

Case No.: 18-cv-298-SPF-JFJ

**DEFENDANT PRESIDING JUDGE LAFORTUNE'S REPLY TO PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendant Presiding Judge William LaFortune, in his official capacity as Presiding Judge, by and through the undersigned counsel, respectfully submits his reply to Plaintiffs' Combined Opposition [Doc. 290] to his Motion to Dismiss [Doc. 270] the Second Amended Complaint. In support, Defendant Judge LaFortune shows the Court the following:

**BACKGROUND**

Plaintiffs Feltz and Dennis claim they were subjected to unconstitutional bail practices in Tulsa County following non-warrant arrests for felony charges in June of 2018 and December 2020 respectively. Defendant State Judges sought dismissal of the original complaint in August 2018. [Doc. 24]. The Court, *sua sponte*, dismissed the First Amended Complaint as moot. [Doc. 40]. The action was reinstated over Defendants' objection following Plaintiffs' Motion for Reconsideration of the dismissal. [Docs. 42, 44, 48]. Defendant State Judges first raised mootness in response to Plaintiffs' Motion for Class Certification and following the creation of the bond docket via Administrative Order. [Docs. 3, 51]. The Motion for Class Certification remained at issue until February 26, 2021, when the order granting Plaintiffs' Motion to Amend and file a Second Amended Complaint mooted several pending motions. [Doc. 256, fn 10] (mooting Doc. 3 - Motion for Class Certification, Doc.

104 - Certain Defendant State Judges Motion to Dismiss for Lack of Subject Matter Jurisdiction, Doc. 157 - Defendant State Judges Motion to Dismiss for Lack of Subject Matter Jurisdiction). Subsequent to the Tulsa County District and Associate Judges' adoption of Local Criminal Rule ("LCR") 2, Defendant State Judges first moved for dismissal under 12(b)(1) for mootness. [Doc. 157]. That motion was also pending and mooted upon the filing of the Second Amended Complaint, the current operative complaint to which Defendant Presiding Judge has filed his Motion to Dismiss.

## ARGUMENT AND AUTHORITY

**A. *Presiding Judge LaFortune's Motion to Dismiss the Second Amended Complaint is a factual challenge to the Court's subject matter jurisdiction to be considered for the first time***

The Second Amended Complaint, and Defendant LaFortune's Motion to Dismiss the same, is not bound by the law of the case doctrine in the way that Plaintiffs assert it. Presiding Judge LaFortune is challenging the Court's subject matter jurisdiction and the factual basis for Plaintiffs' claims as they have alleged them. Plaintiffs base their claims against the Presiding Judge on a misstatement or misunderstanding of the Presiding Judge's duties and authority, especially in light of LCR 2's adoption and implementation by the District and Associate Judges in accordance with the Local Rules.

In their response, Plaintiffs obfuscate the issues raised in the Motion to Dismiss. Defendant Presiding Judge has raised a factual attack on the Second Amended Complaint. Plaintiffs rely on the allegations in the Second Amended Complaint rather than engaging with the facts and supporting evidence in the Motion to Dismiss. Plaintiffs simply restate the allegations from the Second Amended Complaint which the Motion to Dismiss challenges in a factual attack. Plaintiffs further misstate the case history in several arguments in support of their response. As noted above, the judges did not raise mootness in their initial motion to dismiss, the court raised it *sua sponte* in its first order dismissing. [Doc. 40]. Plaintiffs raised the inherently transitory exception to mootness in their Motion to Reconsider. [Doc. 42]. Further, the Court's rationale in the Order Denying the Motion for

Preliminary Injunction was not directed at the judges as the Motion was only made against the Sheriff and applied a different standard and analysis than the one applicable to decide this Motion to Dismiss. [Doc. 191].

Plaintiffs respond that the decisions reinstating the case [Doc. 48], denying the preliminary injunction [Doc. 191], and granting the motion to amend [Doc. 256], finding standing and declining to decide mootness at that stage constitute the law of the case for the Second Amended Complaint and therefore the Motion to Dismiss should be denied. "The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 (10th Cir. 2000) (*quoting United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991)). The doctrine "is not an inexorable command, but is to be applied with good sense." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1101 (10th Cir. 2017) (*quoting Monsisvais*, 946 F.2d at 117). However, the law of the case applies only as to a final decision on a rule of law. *Hook v. U.S.*, 624 Fed. Appx 972, 976 (10th Cir. 2015) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders," and the law-of-the-case-doctrine does not apply "to rulings revisited prior to entry of a final judgment."(citing *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir.2011) (internal quotation marks omitted)). None of the previous decisions are final orders. Nor are the issues raised in the Presiding Judge's current Motion the same issues that have been previously decided. The standing decision on a facial challenge to the First Amended Complaint does not apply to the Second Amended Complaint which introduces new (incorrect) facts and a new Plaintiff, nor a factual challenge. The Court has not actually ruled on any mootness arguments previously raised by any Defendant, either as to the initial administrative creation of the bond docket raised in response to the class certification motion or as to the Court's jurisdiction subsequent to adoption of LCR 2. As the Second Amended Complaint makes specific (incorrect) allegations as to

3

LCR 2, and Defendant Presiding Judge's duties and authorities, Defendant Presiding Judge can and has properly raised a factual challenge to Plaintiffs' standing as to each of their claims and to each type of relief requested.

### B. Plaintiffs have failed to meet their burden of showing subject matter jurisdiction as to the Presiding Judge on their challenge to bond docket proceedings

Article III standing is a distinct issue and requires a particular analysis that cannot be conflated with the analysis concerning sovereign immunity and *Ex Parte Young*. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1354-55 (11th Cir. 2020). Federal courts presume that they "lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, (2006). Plaintiffs bear the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *U.S., ex rel., Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (on motion to dismiss raising factual challenge to subject matter jurisdiction, plaintiff bears the burden of proving truth of such facts by "preponderance of the evidence"). Standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561. When a factual challenge is made regarding matters for which the plaintiff bears the burden of proof, the plaintiff must support his claim with evidence "beyond the pleadings." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Here, in response to the Motions to Dismiss raising a factual challenge, Plaintiffs point to allegations in their Second Amended Complaint, but come forward with no evidence "beyond the pleadings" supporting standing—i.e, no evidence that their injuries are traceable to the Presiding Judge or redressable by judgment against the Presiding Judge.

Under Article III, federal courts only have jurisdiction over actual cases and controversies in which relief can be granted. "With respect to injunctive relief and the question of mootness, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive

relief . . . if unaccompanied by any continuing, present adverse effects.'" *McKesson Corp. v. Hembree*, No. 17-CV-323-TCK-FHM, 2018 WL 4621833, *3 (N.D. Okla. Sept. 26, 2018) (quoting *Beattie v. U.S.*, 949 F.2d 1092, 1094 (10th Cir. 1991) (quotation marks and citation omitted)). The party requesting relief must "demonstrate a good chance of being likewise injured in the future." *Id.* (quoting *Beattie*, 949 F.2d at 1093). "If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed." *Id.* (quoting *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997)). Further, "[t]he court must decide whether a case is moot as to 'each form of relief sought.'" *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019)).

Plaintiffs are correct in the assertion that the Presiding Judge issued the initial Administrative Order ("AO") which created the bond docket. *See* AO-2018-9 (https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=Ao-2018-9) (last accessed May 26, 2021). However, the AO which initially created the bond docket does not provide guidance or instructions for how decisions are to be made or what evidence must be considered. That AO, like most other AOs, is general in nature and simply sets out a new docket for consideration of a particular stage of criminal cases, akin to the creation and assignment of any other docket for a particular stage. *See e.g.* Tulsa County General Rule 2 assigning specific dockets or particular events to the special judges. The Civil docket assignments to Special Judges include asset hearings, defaults, uncontested orders and judgments, and garnishments; the Criminal docket assignments to the Special Judges include arraignments, preliminary hearings, misdemeanor dockets, as magistrate duties in criminal felony matters, and now the bond docket.

This AO, in particular, assigned a Special Judge (Judge Hiddle) to provide an individualized determination of bail. The AO set forth the days the docket would run and eligibility for appearance

and participation. It was up to the Special Judge assigned to the docket to determine how the docket would operate, what evidence would be considered, and to make the individual bond decisions in any given case based on the law and the facts before the court. Dep. of Guten, pg. 13 ln 20 to p. 14 ln 1; p. 17 ln. 8 to 22. [Doc. 275-13]. As with any other judge, either a district judge or a special judge, the presiding judge does not have the authority to direct hearings in another courtroom in a matter to which he is not assigned, which would interfere with the judicial independence of the other judges. OKLA. CONST., art. 7, §§ 1 & 8; *Harper v. Dist. Ct. of Okla. Cty.*, 484 P.2d 891, 896-897 (Okla. Crim. App. 1971) (Presiding Judge has no ability to interfere with the judicial decisions being rendered by Magistrates or Judges as his directives are administrative only.)

In contrast, LCR 2 provides guidance and rationale for decisions, including specifying various considerations for making bond determinations citing to statutes and case law. The Presiding Judge does not have the authority to unilaterally enforce any particular aspect of the local rules. Rule 10 for the Rules on Administration of the Courts, in fact, puts the onus on the district judges to report non-compliance with rules, orders or directives to the presiding judge. 20 O.S. Ch. 1 App. 2, Rule 10. In Tulsa County, under the hierarchy established by 20 O.S. Ch. 1 App. 2 Rule 2(b), the chief district judge of the division would be responsible for reporting non-compliance to the Presiding Judge. The Presiding Judge's duty is to resolve issues concerning supervision or assignment, etc. The Rules do not give the presiding judge the duty or authority to sit in review of how hearings are conducted or decisions are made. Even if the Rules gave the presiding judge that authority, it would be judicial in nature rather than administrative.

In addition to the Rules set forth in Title 20, Tulsa County's Local General Rules set forth the Presiding Judge's specific assignments and duties in Tulsa County. Rule 1 allows for the Presiding Judge to enter orders consistent with the rules for general conduct of business. Rule 4 sets out the specific matters that shall be assigned to the Presiding Judge. These matters are in addition to the

6

regular docket on which the Presiding Judge sits in his District Judge capacity, which currently happens to be Civil Docket C. The assignments do not include review or direction of any docket assigned to a special judge, which would inherently interfere with the judge's independence. *See Harper,* 484 P.2d at 896-897. Special Judges have specific judicial assignments over which the presiding judge does not dictate the terms of review or review how proceedings are conducted or what particular outcome occurs. The office of Presiding Judge is therefore administrative or executive in nature, purely as a mechanism to promote operational efficiency.

Plaintiffs conflate supervision of district court personnel with oversight of a particular docket. While the Presiding Judge has supervision authority over district court personnel in terms of the administration and efficiency of the courthouse, i.e. punctuality, professional dress, personnel interactions, etc., the Presiding Judge does not have authority to supervise how any particular judge conducts their assigned docket or makes their decisions. Plaintiffs' Opposition, on page 4, asserts that the Presiding Judge "has general authority to establish and oversee the procedures and *substantive standards* by which bail is imposed and reconsidered and to supervise and oversee the special judges who carry those procedures out", citing to the Second Amended Complaint. (emphasis added). Plaintiffs fail to provide any support for that statement aside for the bald assertion that it is so. In fact, there is no support for the assertion.

The Presiding Judge does not set, and does not have the authority to set, or even oversee, the substantive standards for any docket. The substantive standard for any proceeding are set by law, not the Presiding Judge. In any case, setting the legal standards for making judicial decisions is a judicial function which would entitle the Presiding Judge to judicial immunity under § 1983.[1] *See Hyland v.*

---

[1] An amendment to § 1983, the Federal Court Improvement Act of 1996 ("FCIA") extends judicial immunity to injunctive relief and forbids injunctive relief unless a declaratory decree has been violated or declaratory relief is otherwise unavailable. 42 U.S.C. § 1983 ("any action brought against

*Davis*, 149 F.3d 1183, 1998 WL 384556, *2 (6th Cir. 1998) (unpublished table decision) ("Providing direction on the enforcement of a court rule, although somewhat administrative in nature, is still a judicial act for which the judge is immune because the parties' rights and liabilities are thereby affected.") (*citing Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir.), cert. denied, 513 U.S. 870 (1994)). The supervisory authority of the Presiding Judge does not extend to review of any judge's decisions or judicial conduct or to set legal or substantive standards for a judge in the district to follow. Therefore, Plaintiffs do not have standing to bring claims against the Presiding Judge seeking relief outside his authority as they claims are not redressable by Judge LaFortune.

### C. *Plaintiffs have failed to establish Presiding Judge LaFortune's authority to redress their alleged harms*

The bail schedule operates as a standing order setting conditions of release[2] in the discrete period of time between a non-warrant arrest and appearance on the bond docket, less than 48 hours by rule, but generally less than 24 hours in practice. The bail schedule and LCR 2 are published as a matter of record, putting the public on notice as to their rights and procedures. The bond docket hearings give arrestees an opportunity to be heard (with the assistance of counsel) on the issue of bail. The minimal requirements of procedural due process are clearly met. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493 (1985) (*quoting Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306,

---

a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.")

[2] The promulgation of the bail schedule may be administrative in nature, but by virtue of its operation as a standing order of the court for conditions of release which may be met prior to a hearing, it is a judicial act and should be subject to judicial immunity. *Martinez v. Winner*, 771 F. 2d 424, 434 (10th Cir. 1985)("[A]n act may be administrative or ministerial for some purposes and still be a 'judicial' act for purposes of immunity…") The bail schedule, by its nature, affects the rights of the parties.

313, 70 S. Ct. 652 (1950)). "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893 (*internal quotation marks omitted*) (*alteration in original*) (*quoting Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593 (1972)). In other words, due process requirements are not rigid; rather, they "call[ ] for such procedural protections as the particular situation demands." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12, 99 S. Ct. 2100 (1979).

Feltz claims he was held without a hearing on amounts imposed by the bail schedule. Feltz was held pursuant to the bail schedule until his release because his schedule set bail was paid prior to his first appearance. The creation of the bond docket by the Presiding Judge, specifically separating a particular criminal issue and stage from the arraignment proceedings, and then adoption of LCR 2 by the District and Associate Judges of Tulsa County were intervening events to Feltz's claim that his pretrial detention pursuant solely on the bail schedule violated his rights. The inherently transitory mootness exception the Court applied in its Opinion reinstating the action [Doc. 48] no longer applies as there are no longer any class of potential plaintiffs that are held pursuant to the bond schedule and until arraignment without judicial review of bail. Therefore Feltz can no longer maintain any due process claims based on the events in 2018.

As for Dennis, the bail schedule applied only for the discrete period of time between his arrest and bond docket appearance. Dennis was only held on the conditions set by the bail schedule until he appeared before Judge Wilson, at which time his bail was reduced. Once his conditions of release were set by Judge Wilson, the bond schedule was superseded and no longer applicable. Elimination of the bail schedule will not provide Dennis any prospective relief under *Ex Parte Young*.[3]

---

[3] To the extent that Plaintiffs assert that conditions of release which are not immediately obtainable offends due process, a claim for excessive bail or conditions of release is properly brought

9

Unlike in *Kitchen*, the Presiding Judge does not supervise the official conduct of the Special Judges, as that conduct is judicial in nature. Contrary to Plaintiffs' assertion, the Presiding Judge cannot "suspend, furlough, or terminate individual district court personnel". [Doc. 290 p. 6.]. That authority belongs to the Chief Justice. 20 O.S. Ch. 1 Appx. 2 Rule 2(E). Similarly, unlike the county clerks in *Kitchen*, the special judges, in conducting bond dockets, are not executive or ministerial officers subject to control by the Presiding Judge in their official duties. The Presiding Judge has the discretion to counsel and assist other judges in the performance of their administrative responsibilities, not of their judicial functions. Conducting a hearing, deciding what evidence to hear and what considerations to credit is a judicial function, not an administrative function. "[F]actors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "Moreover, a judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Whitesel v. Sengenberger*, 222 F.3d at 867 (internal quotation marks omitted).

## CONCLUSION

For the reasons stated above and in their Motion, Defendant State Judges request that the Court dismiss the claims against them as the claims are constitutionally and prudentially moot.

---

under the Eighth Amendment, which Plaintiffs have not done. Due process for purposes of setting some bail does not require any particular outcome. Due process requires a finding on the necessity of detention when the purpose of the hearing is to determine whether detention is the intended result. Bond docket hearings set conditions of release necessary to assure appearance, among other things, which the court assumes will be met. When bail is denied outright, the necessity of detention and therefore denial of bond must be justified. It is a subtle but distinct difference.

Respectfully submitted,

s/ Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA #22422**
**ERIN M. MOORE, OBA #20787**
**DEVAN A. PEDERSON, OBA # 16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:   (405) 521-3921
Facsimile:   (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
         erin.moore@oag.ok.gov
         devan.pederson@oag.ok.gov
*Attorneys for Defendants*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of May, 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and I further certify that on this date a true and correct copy of the foregoing was served on following who are ECF registrants:

| | |
|---|---|
| Kristina Saleh<br>Hayley Horowitz<br>Phoebe Kasdin<br>Still She Rises, Tulsa<br>567 E. 36th Street North<br>Tulsa, OK 74106<br>kristinas@stillsherises.org<br>hayleyh@stillsherises.org<br>phoebek@stillsherises.org<br>*Attorneys for Plaintiff* | Alexandria Twinem<br>Ryan Downer<br>Civil Rights Corps<br>1601 Connecticut Ave. NW, Suite 800<br>Washington, DC 20009<br>alexandria@civilrightscorps.org<br>ryan@civilrightscorps.org<br>alexandria@civilrightscorps.org<br>*Attorneys for Plaintiff* |
| Allison Holt Ryan<br>Michelle Kisloff<br>Gary Yeung<br>Hogan Lovells US LLP<br>555 Thirteenth Street, NW<br>Washington, DC 20004<br>allison.holt-ryan@hoganlovells.com<br>michelle.kisloff@hoganlovells.com<br>gary.yeung@hoganlovells.com<br>*Attorneys for Plaintiff* | Vassi Iliadis<br>Hogan Lovells US LLP<br>1999 Avenue or the Arts, Suite 1400<br>Los Angeles, CA 90067<br>vassi.iliadis@hoganlovells.com<br>*Attorney for Plaintiff* |
| Douglas Allen Wilson<br>Mike Shouse<br>Tulsa County District Attorney's Office<br>218 W. 6th Street., Suite 933<br>Tulsa, OK 74119<br>Douglas.wilson@tulsacounty.org<br>mshouse@tulsacounty.org<br>*Attorney for Defendants Regalado and BOCC* | Jeb Joseph<br>Oklahoma Attorney General's Office<br>313 NE 21st Street<br>Oklahoma City, OK 73105<br>Jeb.Joseph@oag.ok.gov<br>*Attorney for Non-party Jari Askins* |

    s/ Stefanie E. Lawson
**Stefanie E. Lawson**