## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICHARD FELTZ and ASHTON LEE DENNIS, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | Case No. 18-cv-0298-SPF-JFJ |
| VIC REGALADO, Tulsa County Sheriff, in his Official Capacity, et al., | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Plaintiffs Richard Feltz and Ashton Lee Dennis have brought this putative class action challenging Tulsa County's pretrial detention system.   Presently before the court is plaintiffs' motion seeking class certification and appointment of class counsel.   Doc. no. 327.   Defendants, the presiding and special judges of the District Court of Tulsa County, have responded, objecting to the motion.   Doc. no. 334. Defendant, the sheriff of Tulsa County, has adopted the judicial defendants' objection.   Doc. no. 335.   Plaintiffs have replied.   Doc. no. 343.

For the reasons stated in this order, the motion will be granted.

### Background

The operative complaint is the Second Amended Class Action Complaint. Doc. no. 259.   According to that complaint, at the time their respective initial complaints were filed, plaintiffs were confined, after their arrest, in the Tulsa County jail because they did not have enough money to purchase their pretrial release. They were jailed pursuant to Tulsa County's "wealth-based detention scheme" (as

plaintiffs call it), which jails people who are unable to satisfy the secured financial conditions of release (secured money bail).  The secured money bail is usually predetermined by Tulsa County's secured money-bail schedule.  Plaintiffs allege that no official made any findings concerning plaintiffs' ability to pay the secured money bail, as to the necessity of pretrial detention, or as to the feasibility of alternative conditions of pretrial release.

Plaintiffs allege that at the time the initial complaint was filed, people who were arrested on misdemeanor and felony offenses and were unable to pay the preset secured money bail had to remain in jail for six or more days before an arraignment, which was the first appearance in front of a judicial officer, and that defendants refused to address conditions of pretrial release at those arraignments.

Plaintiffs allege that in response to the initial complaint, the presiding judge of Tulsa County District Court created a "bond docket" in October 2018, allowing some persons to appear before a special judge after their arrests and before their arraignments.[1]   The bond docket appearance usually occurs within one or two days after an arrest.   Plaintiffs allege that despite the creation of the bond docket, defendants continue to detain putative class members from arrest to arraignment without offering a due-process compliant opportunity to be heard on the issue of continued detention.   According to the complaint, the putative class members are not notified of the importance of the bond docket or their entitlement to present argument and evidence, they do not have an opportunity to consult with the attorney, momentarily assigned to them, before or during the bond docket, and the special judges make no findings concerning the necessity of detention before imposing monetary conditions of pretrial release that result in continued detention.   Plaintiffs

---

[1]  In addition, the record reflects that in August of 2019, the District Court of Tulsa County issued an amended Local Criminal Rule 2 regarding pre-established bail and initial appearance for individuals not otherwise capable of posting the pre-established bail.   *See*, doc. no. 334-23.

allege that people who are detained on unaffordable money bail continue to be jailed up to six or more days before an arraignment, and they have no opportunity at that arraignment to challenge their pretrial detention.

Plaintiffs allege that written bail-reduction motions filed by counsel and bond docket appearances (for some arrestees since October 2018) are the only mechanisms for challenging pretrial detention. Plaintiffs allege that appointed counsel's first opportunity to file a motion challenging the money bail condition is after counsel has met with the client following the arraignment. Plaintiffs allege that arrestees who cannot afford to pay the money bail or hire an attorney are detained, without any opportunity to contest their pretrial detentions in a due process-compliant forum, for a minimum of eight days after arrest.

Plaintiffs allege that defendants' routine practice of requiring arrestees to pay unattainable amounts of money to secure their pretrial release is the equivalent of issuing orders of detention against them, but without any of the substantive findings or procedural safeguards constitutionally required for orders of detention.

With respect to plaintiffs individually, plaintiffs allege that Mr. Feltz was arrested on Saturday, June 2, 2018, for an alleged felony offense.[2] Upon arrest, he was taken to the Tulsa County sheriff's office where he was mistakenly told he would have to pay $75,000 to be released from jail. A few hours later, he was transferred to the Tulsa County jail, and "a Tulsa County sheriff's officer told him that he would have to pay $50,000 to be released from jail." Doc. no. 259, at 9. No one asked him if he could afford to pay that amount. Mr. Feltz could not afford to purchase his release from jail. At the time of filing his initial complaint, he

---

[2] The record reflects that Mr. Feltz was charged with other offenses.

expected to remain in jail until his first appearance before a judicial officer, which was scheduled for June 11, 2018, nine days after his arrest.[3]

Plaintiffs allege that Mr. Dennis was arrested on Tuesday, December 15, 2020, for alleged felony offenses. Upon his arrest, he was taken to the Tulsa County jail. At the jail, he was told that his bond would be $51,000. No one asked him if he could afford to pay that amount. Mr. Dennis could not afford to pay that amount because he was unemployed, and his only source of income was social security disability benefits.

On the morning of December 16, 2020, a detention officer took Mr. Dennis to a room in the jail with a video feed to a courtroom. In that room, a different detention officer told him for the first time that he would appear for a bond hearing at which the judge would review his charges and his bond amount.

At the bond hearing, the special judge informed him that the proceeding was a bond hearing, and a public defense attorney was present in the courtroom to represent him at the hearing. Mr. Dennis was not offered an opportunity to speak with the attorney, and he could not see anyone other than the judge. Mr. Dennis observed the judge speaking with others in the courtroom whom he could not see but whom he assumed to be an assistant public defender and an assistant district attorney. He could not clearly hear the conversation and was unable to understand its substance. After the conversation was over, the judge told Mr. Dennis that two of his four offenses would be dropped, and his bond would be changed to $4,000. No one asked Mr. Dennis if he could afford to pay $4,000. Mr. Dennis could not afford to pay a bond of $4,000. No one provided an explanation for setting that

_____

[3] Mr. Feltz testified at his deposition that he was released on June 9, 2018, and his initial arraignment was June 11, 2018. *See*, doc. no. 334-2, pp. 15-16. The docket sheet for his criminal case reflects that a surety bond was posted as of June 11, 2018, with respect to each of the offenses charged against him. *See*, doc no. 334-1.

amount.   After the bond hearing, Mr. Dennis completed an application with The Bail Project, a non-profit organization in Tulsa which posts bonds on behalf of some people held in pretrial detention at the Tulsa County Jail.   At the time of the filing of his initial complaint, he expected to remain in jail at least until his next appearance before a judicial officer, which was scheduled for December 21, 2020, six days after his arrest.[4]

Plaintiffs, on behalf of themselves and all others similarly situated, seek an order declaring that the sheriff of Tulsa County and the presiding judge of the District Court of Tulsa County violate plaintiffs' equal protection rights and due process protections against wealth-based detention by detaining and jailing plaintiffs because they cannot afford a monetary payment, and that the sheriff, the presiding judge and the special judges detain and jail plaintiffs without providing procedural due process protections.   They seek an order enjoining the sheriff and the presiding judge from using secured financial conditions of pretrial release without ensuring due process-compliant procedures and findings.

In their complaint and in their motion, plaintiffs request certification of a class, seeking prospective declaratory and injunctive relief, under Rule 23(b)(2), Fed. R. Civ. P.   Plaintiffs also seek the appointment of their counsel as class counsel under Rule 23(g), Fed. R. Civ. P.   In their motion, plaintiffs propose a class defined as follows:

> All people who are or will be detained prior to their initial arraignment in the Tulsa County Jail because they are unable to pay a secured financial condition of release.[5]

---

[4] The record reflects that a cash bond was posted for Mr. Dennis by The Bail Project, and he was released on or about December 23, 2020.   Doc. nos. 334-6 and 334-9.

[5] In their complaint, plaintiffs' proposed class did not include the language "prior to their initial arraignment."

Standard of Decision

The standard for certifying a class action appears in Rule 23, Fed. R. Civ. P. Adamson v. Bowen, 855 F.2d 668, 675 (10th Cir. 1988). Initially, the court must determine whether the four threshold requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy – are met. *Id*. If the court determines that they are, it must then examine whether the action falls within one of the three types of classes set forth in Rule 23(b). *Id*. A court may certify a class if the proposed class satisfies the requirements of Rule 23(a), and the requirements of one of the types of classes in Rule 23(b). DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188 (10th Cir. 2010). The party seeking class certification bears the burden of proving that Rule 23's requirements are satisfied. Shook v. El Paso County (Shook I), 386 F.3d 963, 968 (10th Cir. 2004).

In deciding whether the proposed class meets Rule 23's requirements, the court must accept the substantive allegations of the complaint as true, although it need not blindly rely upon conclusory allegations which parrot Rule 23. Shook I, 386 F.3d at 968. The court may probe beyond the pleadings and examine the facts and evidence in the case. Tabor v. Hilti, Inc., 703 F.3d 1206, 1227-28 (10th Cir. 2013). While the "court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiffs['] underlying claim,' [], Rule 23 grants [the court] no license to engage in free-ranging merits inquiries at the certification stage." Amgen Inc. v. Connecticut Retirement Plans and Trust Funds, 568 U.S. 455, 465-66 (2013) (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011)). "Merits questions may be considered to the extent–but only to the extent– that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. at 466 (citing Wal-Mart Stores, Inc., 564 U.S. at 351, n. 6).

Plaintiffs seek to certify a class under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."   Rule 23(b)(2), Fed. R. Civ. P. "Rule 23(b)(2) 'imposes two independent but related requirements' upon those seeking class certification."   Devaughn, 594 F.3d at 1199 (quoting Shook v. Board of County Commissioners of County of El Paso (Shook II), 543 F.3d 597, 604 (10th Cir. 2008)).   "First, plaintiffs must demonstrate defendants' actions or inactions are 'based on grounds generally applicable to all class members.'"   Id.   "Second, plaintiffs must also establish the injunctive relief they have requested is 'appropriate for *the class as a whole*.'"   Id. (emphasis in original).

According to the Tenth Circuit, these two Rule 23(b)(2) requirements, together, demand "'cohesiveness among class members with respect to their injuries[.]'"   Devaughn, 594 F.3d at 1199 (quoting Shook II, 543 F.3d at 604). And "[t]his cohesiveness, in turn, has two elements."   Id.   "First, plaintiffs must illustrate the class is 'sufficiently cohesive that any classwide injunctive relief' satisfies [the requirement of Rule 65(d), Fed. R. Civ. P.] that every injunction 'state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required.'"   Id. (quoting Shook II, 543 F.3d at 604, quoting Rule 65(d)). "Second, cohesiveness also requires that class members' injuries are 'sufficiently similar' that they can be remedied in a single injunction without differentiating between class members.   Id.   Rule 23(b)(2) therefore demands that "plaintiffs describe in reasonably particular detail the injunctive relief they seek 'such that the district court can at least 'conceive of an injunction that would satisfy [Rule 65(d)'s] requirements,' as well as the requirements of Rule 23(b)(2)."   Id. (quoting Shook II, 543 F.3d at 605, quoting Monreal v. Potter, 367 F.3d 1224, 1236 (10th Cir. 2004)).

Lastly, "'[t]he decision to grant or deny certification of a class belongs within the discretion of the trial court.'"  Monreal, 367 F.3d at 1235 (quoting Reed v. Bowen, 849 F.2d 1307, 1309 (10th Cir. 1988)).

Analysis

Rule 23(a) Requirements

A class may be certified only if the following four threshold requirements are met:  (1) "the class is so numerous that joinder of all members is impracticable" (numerosity); (2) "there are questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and (4) "the representative parties will fairly and adequately represent the interests of the class" (adequacy).  Rule 23(a), Fed. R. Civ. P.

*Numerosity*

To satisfy the numerosity requirement, plaintiffs must establish that "'the class is so numerous as to make joinder impracticable.'"  Trevizo v. Adams, 455 F.3d at 1155, 1162 (10th Cir. 2006) (quoting Peterson v. Okla. City Housing Auth., 545 F.2d 1270, 1273 (10th Cir. 1976)).  "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." Colorado Cross Disability Coalition v. Abercrombie & Fitch Co., 765 F.3d 1205, 1214 (10th Cir. 2014) (quotation marks and citation omitted).   "Plaintiffs must offer 'some evidence of established, ascertainable numbers constituting the class,' but there is 'no set formula to determine if the class is so numerous that it should be so certified.'"  Id. (quoting Rex v. Owens ex rel. Okla., 585 F.2d 432, 436 (10th Cir. 1978)).   In addition, "the numerosity requirement is not 'a question of numbers.'" Id. (citing Horn v. Associated Wholesale Grocers, Inc., 555 F.2d 270, 275 (10th Cir. 1977)).   There are several factors relevant to the impracticability issue, including the nature of the action, the location of the members of the class, the financial

8

resources of class members and the ability of the class members to institute individual lawsuits, the relative ease or difficulty in identifying class members, and judicial economy.  *Id*., *see also*, Colorado Cross-Disability Coalition v. Taco Bell Corp., 184 F.R.D. 354, 355 (D. Colo. 1999); Yazzie v. Ray Vickers' Special Cars, Inc., 180 F.R.D. 411, 415 (D.N.M. 1998).

Plaintiffs suggest several bases upon which they have satisfied the numerosity requirement.  Specifically, they assert that (1) the number of people in the class is well beyond what other courts have found viable for certification; (2) the future stream of class members who will suffer injury absent injunctive relief is indeterminate; (3) class certification is crucial for both the preservation of judicial resources and ensuring that the putative class members' claims can be heard, since the named plaintiffs' claims are moot, but the controversy over the constitutionality of defendants' policies and procedures "remains alive" for thousands of people affected each year; (4) the vast majority of putative class members lack financial resources to bring separate lawsuits; and (5) adjudicating this case through individual lawsuits would strain judicial resources.  Doc. no. 327, ECF pp. 14-19. In their papers, defendants do not take issue with plaintiffs' ability to satisfy the numerosity requirement.  The court concludes, quite readily, that plaintiffs have satisfied the numerosity requirement.

Plaintiffs have presented evidence through the report of their data expert, Dr. Jennifer Copp, which shows that between September 1, 2019 and June 15, 2020, there were over 4,000 bookings into the Tulsa County jail which had secured money bail amounts assigned, and among those bookings, over 800 persons were detained continuously throughout the entirety of the pre-disposition period.  Doc. no. 327-6, ¶ 36.  Plaintiffs have also presented evidence through the deposition testimony of an assistant public defender, Stuart Southerland, that "about 30 people" appear on the Tulsa County bond docket every day.  Doc.no. 327-4, p. 51, l. 23.

Additionally, according to defendants themselves, "there are thousands of pre-trial detainees that flow through Tulsa County every year."   Doc. no. 334, ECF p. 18, n. 6.   Mindful that "the exact number of potential members need not be shown" and the court "may make 'common sense assumptions' to support a finding that joinder would be impracticable," Neiberger v. Hawkins, 208 F.R.D. 301, 313 (D. Colo. 2002), the court finds that the putative class is easily large enough to make joinder impracticable.

In addition to its sufficiently large size, the putative class seeks prospective declaratory and injunctive relief and includes unknown future members who will be detained in the Tulsa County jail because they are unable to pay the secured money bail to obtain their pretrial release.   These unknown future class members make joinder impracticable.   See, Colorado Cross Disability Coalition, 765 F.3d at 1215 ("[J]oinder of unknown individuals is certainly impracticable, and the fact that the class includes unknown, unnamed future members also weighs in favor of certification.") (quoting Pederson v. La. State Univ., 213 F.3d 858, 868 n. 11 (5th Cir. 2000) (other quotation marks and citation omitted)). Also, common sense suggests that the fact that the putative class members are detained in the Tulsa County jail because they are unable to pay their secured money bail makes individual lawsuits by the putative class members unlikely.   See, Neiberger v. Hawkins, 208 F.R.D. 301, 314 (D. Colo. 2002) (the financial situation of institutionalized patients makes individual suits unlikely).   Further, the court concludes that judicial economy will be served by proceeding with one class action, rather than by way of individual lawsuits.   Id.

*Commonality*

To satisfy the commonality requirement, plaintiffs must demonstrate that "there are questions of law or fact common to the class."   Rule 23(a)(2), Fed. R. Civ. P.   In <u>Wal-Mart Stores, Inc. v. Dukes</u>, *supra.*, the Supreme Court explained that Rule 23(a)(2) "requires the plaintiff to demonstrate that class members have suffered the same injury."   564 U.S. at 349-351 (quotation marks and citation omitted).   In addition, the class members' "claims must depend upon a common contention."   *Id*. at 350.   This common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."   *Id*.; *see also*, <u>Menocal v. GEO Group, Inc.</u>, 882 F.3d 905, 914 (10th Cir. 2018) (quoting <u>Wal-Mart Stores, Inc.</u>, 564 U.S. at 350).   "What matters to class certification … is not the raising of common questions–even in droves–but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."   <u>Wal-Mart Stores, Inc.</u>, 564 U.S. at 350 (emphasis in original; quotation marks, alterations and citation omitted).   If it satisfies these requirements, "even a single common question will do."   *Id*. at 359 (quotation marks, alterations and citation omitted); *see also*, <u>Devaughn</u>, 594 F.3d at 1195 ("A finding of commonality requires only a single question of law or fact common to the entire class.").

Plaintiffs contend that the claims asserted on behalf of the class include common questions of fact or law that satisfy the commonality requirement. According to plaintiffs, important common questions of fact include:   (1) whether defendants have a policy and practice of determining the amount of money necessary to secure a person's release following arrest without making an individual determination as to the person's ability to pay; (2) whether defendants implement a pre-arraignment detention scheme without findings as to ability to pay, the adequacy

of non-financial conditions, and the necessity of detention; and (3) whether defendants allow for release of persons following arrest upon upfront payment of predetermined amounts of money, and deny release to people who are unable to pay predetermined amounts of money.   Doc. no. 327, ECF p. 20.   Common questions of law include:   (1) whether it violates due process and equal protection to determine the amount of money necessary to secure a person's release following arrest without an individualized determination of the person's ability to pay and (2) whether an unaffordable secured financial condition of release operates as a de facto order of detention that can be imposed only with the substantive findings and procedures that due process requires before an order of detention can issue.   *Id*. at ECF pp. 20-21.   Plaintiffs contend that the class members' claims stand or fall on the basis of resolution of issues relating to defendants' policies and practices toward all class members.   Resolving plaintiffs' contentions as to those policies and practices, they argue, will resolve an issue that is central to the validity of each of the claims plaintiffs assert (count one and count two in the Second Amended Class Action Complaint) in one stroke.   The court agrees.

The putative class members' claims involve common contentions concerning Tulsa County's pretrial detention system, and the adjudication of the merits of those contentions will resolve issues central to the validity of their claims.   The common questions identified by plaintiffs, the existence of which is not specifically disputed by defendants, will generate common answers to resolve the litigation.

The court additionally finds that the putative class members are at risk of the same constitutional injury–detention for inability to pay the secured money bail without an ability-to-pay determination or due-process compliant procedures and judicial findings.   And while defendants cite differences among class members, *i.e.*, arrested with or without warrants, these differences will have no bearing on the

common questions of fact and law identified by the plaintiffs and found by the court to exist.

The court also concludes that the alleged injuries of the named plaintiffs are the same as the putative class members.  Mr. Feltz was detained after his arrest because he could not pay the secured money bail that was assigned to him without an individualized determination of his ability to pay that amount, and he was without the prospect of any hearing at which due-process compliant procedures would be followed and findings would be made.   Although Mr. Dennis was arrested after the state court's adoption of amended Local Criminal Rule 2, the record shows that Mr. Dennis was detained because he could not pay the secured money bail that was assigned to him without an individualized determination of his ability to pay that amount, and then at his bond docket hearing, held the day after his arrest, Mr. Dennis was not provided the due process-compliant procedures and findings that plaintiffs and the putative class members contend were constitutionally required.

In their papers, defendants assert that plaintiffs' class definition, which includes a class of people detained after arrest because "they are unable to pay a secured financial condition of release," fails the commonality requirement because it encompasses persons who may have never been poor or indigent.   According to defendants, "there is always some individual limit to each person's capacity to pay money, thus eliminating commonality."   Doc. no. 334, ECF p. 21.   Defendants maintain that determining which pretrial detainees are jailed because they are unable to pay would require individualized assessments.   The court disagrees.

Initially, courts have concluded that indigency is not required for an ability-to-pay inquiry.  *See*, <u>Cain v. City of New Orleans</u>, 327 F.R.D. 111, 124 (E.D. La. 2018) ("[A] putative class member's right to an ability-to-pay inquiry does not depend on indigence[.]"); *see also*, <u>Baker v. City of Florissant</u>, 4:16-CV-1693 NAB, 2023 WL 1434261, at *12 (E.D. Mo. Feb. 1, 2023); <u>Fant v. City of Ferguson,</u>

Missouri, 4:15-CV-00253-AGF, 2022 WL 2072647, at *9 (E.D. Mo. June 9, 2022). Nonetheless, the court concludes that the putative class is adequately limited to poor or indigent persons, given that "'most people would not willingly remain incarcerated if their financial circumstances permitted them to avoid it.'"   Webb v. City of Maplewood, Missouri, 340 F.R.D. 124, 139 (E.D. Mo. 2021) (quoting Dixon v. City of St. Louis, No. 4:19-CV-0112-AGF, 2021 WL 616153, at *7 (E.D. Mo. Feb. 17, 2021)); *see also*, Baker, 2023 WL 1434261, at *12; Fant, 2022 WL 2072647, at *9.   Additionally, the court notes that other district courts have certified classes with similar class definitions.   *See*, Dixon, 2021 WL 616153, at *2; Daves v. Dallas County, Texas, 3:18-CV-0154-N, 2018 WL 4537202, at *1 (N.D. Tex. Sept. 20, 2018).   Further, as pointed out by plaintiffs, defendants appear to confuse commonality with ascertainability.   Although ascertainability is not a criterion for a Rule 23(b)(2) class, *see*, Shook I, 386 F.3d at 972, the court concludes that plaintiffs have adequately demonstrated that an inability to pay the predetermined secured money bail is a reliable objective criterion for ascertainability, and that the identities of individuals who remain detained in the Tulsa County jail on secured money bail are ascertainable from defendants' records.

Defendants further contend that the commonality requirement is not met because any alleged deficiency in a bond docket hearing may not be the same for any two criminal defendants appearing before the same special judge or different special judges.   According to defendants, plaintiffs have not submitted evidence that the bond docket hearings are improper on a large scale.   However, the court concludes that plaintiffs have sufficiently demonstrated through evidence in the record that the bond docket hearings do not provide the due-process compliant procedures and findings that they argue are constitutionally required.

*Typicality*

To satisfy the typicality requirement, plaintiffs must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."   Rule 23(a)(3), Fed. R. Civ. P.   The typicality requirement does "not require that every member of the class share a fact situation identical to that of the named plaintiffs."   Colorado Cross Disability Coalition, 765 F.3d at 1216.   Rather, the requirement is met "'so long as the claims of the class representative and class members are based on the same legal or remedial theory.'" Menocal, 882 F.3d at 914 (quoting Colorado Cross Disability Coalition, 765 F.3d at 1216).

Here, plaintiffs have demonstrated that while there may be some factual differences, their claims and those of the putative class members are based on the same legal and remedial theories.

In their papers, defendants contend that Mr. Feltz and Mr. Dennis cannot meet the typicality requirement because their claims are subject to unique defenses.   A unique defense may destroy typicality if that defense "'is likely to become a major focus of the litigation.'"   In re Crocs, Inc. Securities Litigation, 306 F.R.D. 672, 687 (D. Colo. 2014) (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 599 (3d Cir. 2012)).   The reason why a unique defense is detrimental to the class is because the named plaintiffs "'might devote time and effort to the defense at the expense of issues that are common and controlling for the class.'" *Id*. (quoting Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006)).

Initially, defendants assert that Mr. Feltz's claims are subject to the unique defenses of standing and mootness.   The court, however, has previously rejected those defenses.   *See*, doc. no. 306.   With respect to mootness, the court has determined that the inherently transitory exception applies. *Id*.   Defendants have not articulated any reason for the court to revisit its determinations as to standing or mootness.   They have not shown a significant likelihood that those defenses will

become a major focus of the litigation.   The court is not satisfied that Mr. Feltz's claims are subject to any unique defenses.

Defendants also assert that Mr. Dennis's injuries were caused by COVID-19 protocols, which defendants claim were "unique and rare" and not within their control.   However, the record shows no evidence of any practices or procedures that have changed since Mr. Dennis was arrested in 2020.   Therefore, the court cannot conclude that Mr. Dennis will be subject to a unique defense, based upon the state court's COVID-19 protocols, which will become a major focus of the litigation.

In their papers, defendants further contend that Mr. Dennis will have a unique issue because he posted bond pursuant to the secured money-bail schedule in his 2021 criminal case.   However, this court has ruled that this case is subject to the inherently transitory exception to the mootness doctrine, *see*, doc. no. 306, and Mr. Dennis's class certification motion relates back to when his complaint was filed, *i.e.*, at the time of his 2020 pretrial detention, and his fitness to serve as class representative is assessed in light of his circumstances at that time.   *See*, <u>Sosna v. Iowa</u>, 419 U.S. 393, 402 n. 11 (1975); <u>Gerstein v. Pugh</u>, 420 U.S. 103, 110 n. 11 (1975); <u>Lucero v. Bureau of Collection Recovery, Inc.</u>, 639 F.3d 1239, 1249 (10th Cir. 2011).   The court therefore is not persuaded that Mr. Dennis will be subject to a unique defense based upon his 2021 criminal case.

Upon review, the court concludes the interests and claims of Mr. Feltz and Mr. Dennis are sufficiently aligned with the interests and claims of the putative class such that the typicality requirement is satisfied.

*Adequacy of Representation*

To satisfy the adequacy of representation requirement, plaintiffs must demonstrate that the "representative parties will fairly and adequately protect the interests of the class."   Rule 23(a)(4), Fed. R. Civ. P.

The adequacy of representation inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997). Thus, to be an adequate class representative, the "representative must be a part of the class and possess the same interest and suffer the same injury as the class members." Id. at 625-626 (quotation marks and citations omitted).

In Rutter v. Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002), the Tenth Circuit identified two questions that are relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" After that decision, subdivision (g) was added to Rule 23, which deals specifically with the adequacy of counsel. See, Rule 23(g), Fed. R. Civ. P.; see also, Advisory Committee Notes to 2003 Amendments ("Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while this subdivision [Rule 23(g)] will guide the court in assessing proposed class counsel . . . ."). Therefore, the court will consider plaintiffs' adequacy for purposes of satisfaction of Rule 23(a)(4)'s adequacy of representation requirement, and it will address counsel's adequacy when considering the appointment of class counsel.

In their papers, defendants assert that their arguments as to plaintiffs' ability to satisfy the adequacy of representation requirement are the same as those relating to the commonality and typicality requirements. The court concludes that those arguments fail for the reasons previously stated. Moreover, the court discerns no conflict of interest between plaintiffs and the putative class members. The record convinces the court that plaintiffs will prosecute the action vigorously on behalf of the class. Plaintiffs have sat for depositions and have shown they possess a

fundamental understanding of the case.   Thus, the court concludes that plaintiffs have demonstrated the adequacy of representation requirement.

To recapitulate, a class action may be certified only if all four threshold requirements of Rule 23(a)(3) are satisfied.   Adamson, 855 F.2d at 675.   For the reasons stated, the court concludes that plaintiffs have demonstrated that the four threshold requirements of Rule 23(a) are met.

Rule 23(b)(2)

In addition to satisfying the requirements of Rule 23(a), a party seeking certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."   Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). Here, the provision at issue is Rule 23(b)(2).   Rule 23(b)(2) authorizes certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole."   Rule 23(b)(2), Fed. R. Civ. P.   As explained by the Supreme Court, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."   Wal-Mart Stores, Inc., 564 U.S. at 360.   "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id*. (emphasis in original).

The court concludes that plaintiffs have demonstrated that certification under Rule 23(b)(2) is appropriate.   First, plaintiffs have shown that defendants have acted on grounds that apply generally to the class.   Specifically, plaintiffs have shown that defendants detain and jail individuals, post-arrest, because they cannot afford to pay secured money bail amounts that are assigned to them, all without determinations of their ability to pay those amounts, the sufficiency of alternative conditions of release and the necessity of pretrial detention.   They have also shown that defendants detain and jail individuals by imposing unaffordable secured money bail amounts without

a hearing, where counsel is appointed, notice and opportunity to be heard and to confront evidence is given, and findings are made based on clear and convincing evidence that such detention and jail is necessary to serve a compelling interest.

Second, plaintiffs seek only prospective injunctive and declaratory relief, and they have shown that the relief they seek would apply to each member of the class– that secured money bail not be used to detain individuals without determinations of the ability to pay, the sufficiency of alternatives to release, and the necessity of detention, at a hearing where counsel is appointed, notice and opportunity to be heard and to confront evidence is provided, and findings are made on the record based on clear and convincing evidence.

The court rejects defendants' argument that plaintiffs have defined the declaratory and injunctive relief sought at a "stratospheric level."  Doc. no. 334, ECF pp. 25 and 26.   The court concludes that plaintiffs have proposed an injunction that would satisfy Rule 65(d), Fed. R. Civ. P.   The injunction sought, as set forth in the Second Amended Class Action Complaint, *see*, doc. no. 259, ¶ 141(a), is specific and describes in reasonable detail the acts required of defendants.   And the class members' injuries can be remedied with the injunction sought without differentiating between class members.   The same is true of the declaratory relief sought.   Further, the injunctive and declaratory relief sought by plaintiffs is indivisible, as it would benefit all class members at once.   The procedural protections and substantive findings plaintiffs request would apply in every pre-initial arraignment case before an individual could be detained and jailed on secured money bail conditions.

Need for Class Certification Under Rule 23(b)(2)

Defendants also contend that the court should deny Rule 23(b)(2) class certification because plaintiffs have not shown that it is necessary.   According to defendants, "to the extent prospective relief would even be available to the named Plaintiffs, such relief would apply to all putative class members regardless of

whether a class is actually certified, making class based relief unnecessary." Doc. no. 334, ECF p. 28.

The Tenth Circuit, in the Rule 23(b)(2) context, "has recognized the line of authority indicating that a class certification is unnecessary if all the class members will benefit from an injunction issued on behalf of the named plaintiffs." Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Social and Rehabilitation Servs., 31 F.3d 1536, 1548 (10th Cir. 1994) (quotation marks and citations omitted). However, in this case, while plaintiffs' claims have become moot, there is still a live controversy for putative class members. Courts have granted Rule 23(b)(2) certification in these circumstances. Clay v. Pelle, Civil Action No. 10-cv-01840-WYD-BNB, 2011 WL 843920, at *7 (D. Colo. March 8, 2011) (acknowledging the Tenth Circuit's necessity ruling but concluding that "[w]hereas an individual prisoner's claim for injunctive relief may become moot before the court can grant relief, class certification, where proper under Rule 23, ensures the presence of a continuing class of plaintiffs with a live dispute against prison authorities."); see also Jackson v. Ash, No. 13-CV-2504-EFM, 2014 WL 1230225, at *6 (D. Kan. March 25, 2014) (erring on the side of class certification under Rule 23(b)(2) where claims involved "ever-changing jail or prison population.").

Appointment of Counsel

An order certifying a class must also appoint class counsel that will adequately represent the interests of the class. See, Rule 23(c)(1)(B) and Rule 23(g)(1), Fed. R. Civ. P. In appointing counsel, the court must consider "the work counsel has done in identifying or investigating potential claims in the action;" "counsel's experience in handling class actions, other complex litigation, and the types of claims asserts in the action;" "counsel's knowledge of the applicable law;" and "the resources that counsel will commit to representing the class[.]" Rule 23(g)(1)(A)(i)-(iv). Further, the court "may consider any other matter pertinent to

counsel's ability to fairly and adequately represent the interests of the class." Rule 23(g)(1)(B).

In their papers, defendants do not challenge the appointment of plaintiffs' counsel as class counsel for this action. After reviewing the record, the court is well satisfied that plaintiffs' counsel satisfy the criteria of Rule 23(g) and will fairly and adequately represent the interests of the class. Thus, counsel for plaintiffs (the attorneys of record associated with Still She Rises, Inc., Civil Rights Corps, and Hogan Lovells US LLP), will be appointed as class counsel for the action.

Conclusion

For the reasons stated above, the court **ORDERS** as follows:

1.      Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (doc. no. 327 ) is **GRANTED**.

2.      The court **CERTIFIES** a class under Rule 23(b)(2), Fed. R. Civ. P., as follows:

> All people who are or will be detained prior to their initial arraignment in the Tulsa County Jail because they are unable to pay a secured financial condition of release.

3.      Plaintiffs' counsel (the attorneys of record associated with Still She Rises, Inc., Civil Rights Corps, and Hogan Lovells US LLP) are **APPOINTED** as class counsel.

Dated this 16th day of March, 2023.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

18-0298p016.docx