CASE NO. 18-cv-298-SPF-JFJ

---

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

---

**RICHARD FELTZ and ASHTON LEE DENNIS,**
On behalf of themselves and all others similarly situated,

**Plaintiffs,**

v.

**VIC REGALADO,** *et al.,*

**Defendants.**

---

# DEFENDANT STATE JUDGES' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

**STEFANIE E. LAWSON, OBA#22422**
**ERIN M. MOORE, OBA#20787**
**DEVAN A. PEDERSON, OBA#16576**
**Assistant Attorneys General**
**Oklahoma Attorney General's Office**
**Litigation Division**
**313 NE 21st Street**
**Oklahoma City, Oklahoma 73105**
**Telephone: (405) 521-3921   Facsimile: (405) 521-4518**

*Attorneys Defendant State Judges*

**May 26, 2023**

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ...................................................................i

**TABLE OF AUTHORITIES** ........................................................ iii

**DEFENDANT STATE JUDGES' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT** ....................................................1

**STATEMENT OF THE CASE** ......................................................1

    *Oklahoma's Bail Scheme* ...........................................................4

**STATEMENT OF UNDISPUTED FACTS** ..................................6

    *Tulsa County Rules and Available Remedies* .............................6

    *Plaintiff Richard Feltz* ...........................................................10

    *Plaintiff Ashton Dennis* .........................................................11

    *Tulsa County "Bond Docket"* .................................................14

    *Statistics in Tulsa County* .......................................................15

**STANDARD OF REVIEW** ..........................................................17

**SUMMARY OF THE ARGUMENT** ............................................17

**PROPOSITION I:**

    BECAUSE SPECIFIC BILL OF RIGHTS PROVISIONS APPLY TO PLAINTIFFS' CLAIMS, FOURTEENTH AMENDMENT DUE PROCESS IS NOT IMPLICATED ..18

**PROPOSITION II:**

    EVEN IF A FREESTANDING FOURTEENTH AMENDMENT DUE PROCESS CLAIM WERE NOT PRECLUDED BY *ALBRIGHT, GRAHAM, GERSTEIN, BECKER*, AND THEIR PROGENY, TULSA' PRETRIAL RELEASE SYSTEM COMPORTS WITH FREESTANDING DUE PROCESS BECAUSE IT DOES NOT OFFEND PRINCIPLE OF

JUSTICE SO ROTTED IN THE TRADITIONS AND CONSCIENCE OF OUR PEOPLE AS TO BE RANKED AS FUNDAMENTAL ..........................................................21

A. The Medina *test Rather than the* Matthews *balance test applies to Plaintiffs and the class's freestanding Fourteenth Amendment due process claim* 22

B. *Tulsa County's pretrial release system passes the* Medina *test* ...............23

(1) The bail schedule does not violate the due process Clause .................24

(2) Tulsa County's pretrial release system comports with due process for those who do not obtain release pursuant to the pre-set bail schedule ...............................................................................................27

PROPOSITION III:

EQUAL PROTECTION IS SATISFIED ................................................................29

PROPOSITION IV:

INJUNCTIVE RELIEF IS NOT AVAILABLE.........................................................34

A. *All acts on which Plaintiffs base their claims against Defendant Judges are judicial acts and therefore injunctive relief is barred* .....................34

B. *Injunctive relief as requested does not meet 18 U.S.C. § 3626*................38

PROPOSITION V:

THE RELIEF PLAINTIFFS SEEK REQUIRES ONGOING INTERFERENCE IN STATE COURT PROCEEDINGS AND SHOULD THEREFORE, BE BARRED UNDER *O'SHEA* ABSTENTION ....................................................................................39

CONCLUSION...............................................................................................44

CERTIFICATE OF SERVICE ..........................................................................45

# TABLE OF AUTHORITIES

## CASES

*Albright v. Oliver,*
510 U.S. 266 (1994)..................................................................17, 18, 19, 21

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).................................................................................17

*Barker v. Wingo,*
407 U.S. 514 (1972).................................................................................19

*Bearden v. Georgia,*
461 U.S. 660 (1983).................................................................................31

*Becker v. Kroll,*
494 F.3d 904 (10th Cir. 2007) .........................................................18, 21

*Booth v. Galveston County,*
2019 WL 3714455 (S.D. Texas, Galveston Div., Aug. 7, 2019)............42

*Bowman v. State,*
1798 OK CR 115, *cert. denied* 440 U.S. 920 (1979)................7, 9, 10, 27

*Brill v. Gurich,*
1998 OK CR 49.................................................................................7, 27

*Caliste v. Cantrell,*
2020 WL 814860 (E.D. La. Feb. 19 2020) .............................................43

*Caliste v. Cantrell,*
2020 WL 4784068 (E.D. La. Aug. 18, 2020) .........................................43

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986).................................................................................17

*Clark v. Hall,*
53 P.3d 416 (OK CR 2002)....................................................................27

*Coleman v. Governor of Michigan,*
413 F.App'x 866 (6th Cir. 2011) ............................................................36, 37, 38

*Collins v. Daniels,*
2017 WL 11441859 (D.N.M. Dec. 2017).................................................................37

*Compare Ramos v. Louisiana,*
140 S. Ct. 1390 (2020 ................................................................................19

*Cnty. of Riverside v. McLaoughlin,*
500 U.S. 44 (1991)...............................................................................20, 26

*Daves v. Dallas Cnty., Texas,*
22 F.4th 522 (5th Cir. 2022) ......................................................24, 25, 30, 37, 38

*Daves v. Dallas Cnty., Texas,*
64 F.4th 619 (5th Cir. 2023) .........................................................................42, 43

*Dawson v. Board of County Commissioners of Jefferson County, Colo.,*
732 F.App'x 624 (10th Cir. 2018) *cert. denied,* 139 S. Ct. 862 (2019) ............26, 32

*Dist. Attorney's Off. for Third Jud. Dist. v. Osborne,*
557 U.S. 52 (2009).........................................................................20, 22, 23

*Dowling v. U.S.,*
493 U.S. 342 (1990)......................................................................................20

*Doyle v. Elsea,*
658 F.2d 512 (7th Cir. 1981) .........................................................................30, 31

*Doyle v. Oklahoma Bar Ass'n.,*
998 F.2d 1559 (10th Cir. 1993) .......................................................................21

*Elwell v. Byers,*
699 F.3d 1208 (10th Cir. 2012) ......................................................................21

*Estelle v. McGuire,*
502 U.S. 62 (1991)......................................................................................20

*Ex parte McClellan,*
79 P. 1019 (Okla. Crim. App. 1908)........................................................................8

*Fields v. Henry Cnty., Tenn.,*
701 F.3d 180 (6th Cir. 2012) ...................................................................21, 24, 25

*Geddees v. Weber Cnty.,*
2022 WL 3371010 (10th Cir. 2022) .......................................................................18

*Gerstein v. Pugh,*
420 U.S. 103 (1975).................................................. 18, 19, 21, 26, 27, 28

*Graham v. Connor,*
490 U.S. 386 (1989)...............................................................................18, 21

*Griffin v. Illinois,*
351 U.S. 12 (1956)...............................................................................................31

*Hainey v. State,*
704 P.2d 146 (OK CR 1987)............................................................................10, 27

*Hubbard v. State,*
45 P.3d 96 (Okla. Crim. App. 2002)........................................................................6

*Jones v. Governor of Florida,*
972 F.3d 1016 (11th Cir. 2020) *en banc* .................................................................31

*Joseph A. ex rel., Corrine Wolfe v. Ingram,*
(10th Cir. 2002)................................................................................................40, 41

*Kincaid v. Gov't of D.C.,*
854 F.3d 721 (D.C. Cir. 2017) ...............................................................................26

*Luckey v. Miller,*
976 F.2d 673 (11th Cir.) ........................................................................................41

*Maehr v. United States Dep't of State,*
5 F.4th 1100 (10th Cir. 2021) ................................................................................29

*Maher v. Roe,*
432 U.S. (1977) ........................................................................................30

*Martinez v. Winner,*
771 F.2d 424 (10th Cir. 1985) ................................................................35

*Manuel v. City of Joliet, Ill,*
530 U.S. 357 (2017)................................................................................19

*Mathews v. Eldridge,*
424 U.S. 319 (1976)...........................................................................23, 23

*McGinnis v. Royster,*
41 U.S. 363 (1973)..................................................................................30

*Medina v. Allen,*
2023 WL 2743137 (D. Utah. Mar. 31 2023) ..............................21, 28, 29

*Medina v. California,*
505 U.S. 473 (1992)................................................ 17, 20, 22, 23, 24, 28

*Miereles v. Waco,*
502 U.S. 9 (1991)....................................................................................35

*Mitchell v. Doherty,*
37 F.4th 1277 (7th Cir. 2022) .................................................................19

*Morrison v. Lipscomb,*
877 F.2d 463 (6th Cir. 1989) ..................................................................36

*Montana v. Egelhoff,*
518 U.S. 37 (1996)..............................................................................23, 24

*Murray v. United States,*
2021 WL 4772174 (D.N.J. Oct. 13, 2021) ..............................................36

*Nashville Cnty Bail Fund v. Gentry,*
496 F.Supp.3d (M.D. Tenn. 2020)...........................................................35

*O'Donnell v. Goodhart,*
900 F.3d 220 (5th Cir. 2018) ...................................................................30

*O'Donnell v. Harris County,*
892 F.3d 147 (5th Cir. 2018) ...................................................................42

*O'Shea v. Littleton,*
414 U.S. 488 (1974) ................................................. 18, 39, 40, 41, 42, 43

*Petition of Humphrey,*
601 P.2d 103 (OK CR 1979)......................................................................6

*Phelps v. Hamilton,*
122 F.3d 1309 (10th Cir. 1997) ...............................................................40

*Powers v. Harris,*
379 F.3d 1208 (10th Cir. 2004) ...............................................................29

*Pugh v. Rainwater,*
572 F.2d 1053 (5th Cir. 1978) .......................................................8, 24, 31

*Reynolds v. Flynn,*
2022 WL 252327 (D. Colo. Jan. 27, 2022).......................................35, 36

*Riley v. California,*
573 U.S. 373 (2014)................................................................................19

*Rivera v. Illinois,*
556 U.S. 148 (2009)................................................................................20

*Romer v. Evans,*
517 U.S. 620 (1996)................................................................................29

*Ross v. Moffitt,*
417 U.S. 600 (1974)................................................................................30

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
441 U.S. 1 (1973).......................................................................29, 30, 32

*Sattazahn v. Pennsylvania,*
537 U.S. 101 (2003) ............................................................................18

*Shultz v. Alabama,*
42 F.4th 1298 (11th Cir. 2022) ...........................................................31

*Smith v. U.S. Parole Comm'n,*
752 F.2d 1056 (5th Cir. 1985) ........................................................30, 31

*Sosa v. Martin Cnty., Fla.,*
57 F.4th 1297 (11th Cir. 2023) ...........................................................19

*Spencer v. State of Texas,*
385 U.S. 554 (1967)............................................................................24

*Stack v. Boyle,*
342 U.S. 1 (1951) .................................................. 19, 20, 25, 26, 32, 34

*Stump v. Sparkman,*
435 U.S. 349 (1978)........................................................................34, 35

*Timbs v. Indiana,*
139 S. Ct. 682 (2019)..........................................................................25

*Trujillo v. Williams,*
465 F.3d 1210 (10th Cir. 2006) ..........................................................29

*U.S. v. Castillo,*
140 F.3d 874 (10th Cir. 1998) ............................................................26

*U.S. v. Salerno,*
481 U.S. 739 (1987).....................................................................7, 25, 32

*Van de Kamp v. Goldstein,*
555 U.S. 335 (2009)............................................................................35

*Walker v. City of Calhoun, Ga.,*
910 F.3d 1245 (11th Cir. 2018) ..............................................24, 25, 31

*Williams v. Jones,*
583 F.3d 1254 (10th Cir. 2009) ...............................................................23

*Williamson v. Lee Optical of Okla., Inc.,*
348 U.S. 483 (1995).................................................................................29

*Younger v. Harris,*
407 U.S. 37 (1971)..............................................................................40, 41

## STATUTES

20 O.S. § 23.................................................................................................7

20 O.S. § 55.................................................................................................8

22 O.S. § 196...............................................................................................8

22 O.S. § 233.............................................................................................39

22 O.S. § 1101..............................................................................4, 7, 25, 26

22 O.S. § 1105.....................................................................................4, 7, 8

22 O.S. § 1105.1..........................................................................................4

22 O.S. § 1105.2(c) ...............................................................................5, 7, 8

22 O.S. § 1105.3..........................................................................................5

22 O.S. § 1108.1..........................................................................................5

22 O.S. § 1114.5A........................................................................................4

22 O.S. § 1115.............................................................................................4

22 O.S. § 1115.5..........................................................................................4

59 O.S. § 33A..............................................................................................4

59 O.S. § 1334 ..................................................................................................5

18 U.S.C. § 3626 .........................................................................................38, 39

42 U.S.C. § 1983 ............................................................................................34

**RULES**

Fed. R. Civ. P. 56 .........................................................................................1, 44

Fed. R. Civ. P. 56(C) ........................................................................................17

**OTHER**

OKLA. CONST. art. II, § 8 ...........................................................................4, 6, 7, 38

OKLA. CONST. art. II, § 9 ....................................................................................7

OKLA. CONST. art. VII §1 ..................................................................................38

OKLA. CONST. art. VII § 7 .................................................................................38

OKLA. CONST. art. VII § 8 .................................................................................38

U.S. CONST. amend. XIV, § 1 .............................................................................29

*A Workable Substantive Due Process*
95, Notre Dame L. Rev. 1961, 1983 (2020) ............................................................19

*William F. Duker, The Right to Bail: A Historical Inquiry,*
42 Alb. L. Rev. 33 (1977) ..................................................................................25

## DEFENDANT STATE JUDGES'
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendants District Judge Douglas Drummond, as Presiding Judge, and Defendant Special Judges Kasey Baldwin, Tammy Bruce, Stephen Clark, Julie Doss, Theresa Dreiling, Mary Ann Godsby, Rich Hathcoat, Travis Horton, Ann Keele, Deborah Ludi Leitch, Anthony J. Miller, Kevin C. Morrison, Kristen Pace, Wilma Palmer, Loretta Radford, April Seibert, Rodney B. Sparkman, and Tanya Wilson,[1] all in their official capacities (collectively "State Judges"), by and through attorneys of record, Stefanie Lawson, Devan Pederson and Erin Moore, Assistant Attorneys General, respectfully request that under Fed. R. Civ. P. 56, this Court grant summary judgment in their favor. In support thereof, Defendants submit the following brief in support.

## STATEMENT OF THE CASE

Plaintiffs, Richard Feltz and Ashton Dennis are individuals seeking declaratory and injunctive relief against State Judges on behalf of themselves and class members. They claim they (and others similarly situated) were or are denied due process and equal protection after arrest and before arraignment because they are unable to pay secured bond amounts set by either the bail schedule or by a judge at a hearing. They have sued the Presiding Judge and Special Judges in Tulsa County in their official capacities. They have also named the Tulsa County Sheriff in his official capacity as a defendant.

The issues per the Court's Order [Doc. 306] are as follows:

Count 1 is against the Sheriff as state actor and Presiding Judge for alleged equal protection and due process violations due to wealth-based detention by jailing Plaintiffs because they cannot afford a monetary amount. Count 2 is against all Defendants for

---

[1]Defendants have been updated to reflect changes in Special Judges.

allegedly detaining criminal defendants without procedural due process. Plaintiffs seek an injunction against the Presiding Judge and the Sheriff under Count 1 and declaratory relief against all Defendants under Count 2. More specifically, Plaintiffs Feltz and Dennis in their "Request for Relief" ask for the following:

> a. An order and judgment preliminarily and permanently enjoining Defendants the Tulsa County Board, Sheriff Regalado, and the Tulsa County District Court Presiding Judge [] from using secured financial conditions of release to detain Plaintiffs and class members without ensuring a due process-compliant inquiry into and findings concerning a person's ability to pay, without due process-compliant consideration of and findings concerning alternatives, without findings concerning the necessity of detention, and without appointing counsel to assist at due process-compliant bail hearings and meaningfully challenge pretrial detention;
> b. A declaration that the Defendants violate Plaintiffs' and class members' constitutional rights by requiring secured financial conditions of release without findings concerning ability to pay and necessity of detention, and by issuing and enforcing de facto orders of wealth-based pretrial detention without consideration of alternatives and without findings that such detention is necessary to serve a compelling interest;
> c. A declaration that the Defendants violate Plaintiffs' and class members' right to procedural due process under the Fourteenth Amendment by depriving people who are arrested of speedy, individualized release hearings with notice, counsel, the opportunity to be heard and to confront evidence, and findings on the record that the government met its burden to demonstrate by clear and convincing evidence that no alternative condition or combination of conditions would be sufficient to serve its compelling interests; ….

[Doc. 259 at pp. 32-35].

Specific allegations as to each Plaintiff are as follows: Plaintiff Feltz was a pretrial detainee in the custody of the Tulsa County Jail at the time this suit was filed on June 6, 2018. While detained in the Tulsa County Jail, Plaintiff Feltz was given a bail amount pursuant to the pre-set bail schedule. On June 9, 2018, Plaintiff Feltz was released from detention after posting bond via a private surety. On June 11, 2018, Plaintiff Feltz then appeared at his initial arraignment before a Special Judge with private counsel. After his initial arraignment, he went to Florida for ninety (90) days to

obtain treatment. Plaintiff Feltz has resolved the criminal proceedings for which he was a pretrial detainee except for the post-conviction payment of costs and fines.

At the time of Plaintiff Feltz's arrest (without warrant) and detention in the Tulsa County jail, Local Criminal Rule 2 of the Local Rules for the Fourteenth Judicial District ("LCR2") as currently written had not been adopted by the District and Associate Judges of Tulsa County. Plaintiff Feltz has generally alleged that there was no process for him to receive bail other than through the amount set by pre-set bail schedule under the policies of the then Presiding Judge (Judge Musseman). [Doc. 259, ¶ 4].

Plaintiff Dennis was arrested (without warrant) on December 15, 2020 and detained in the Tulsa County jail. At booking into the Tulsa County jail, Plaintiff Dennis was given a bond amount of $51,000.00 for the four arrest charges against him pursuant to the pre-set bail schedule. On December 16, 2020, Plaintiff Dennis appeared before a Special Judge on the bond docket. At this hearing, the Special Judge reviewed the probable cause affidavit, the bail to be set, heard argument from Plaintiff Dennis' public defender and the Assistant District Attorney. The Special Judge then issued her ruling from the bench, which dismissed two of the counts and set bail at $4,000.00. After Dennis' appearance at the bond docket, he remained detained through his initial arraignment on December 21, 2020, where he was appointed counsel by another Special Judge for the remainder of his case and his bail was addressed again. On December 23, 2020, Dennis posted bail via the Bail Project and was released from the Tulsa County jail. On February 23, 2021, the criminal charges against Dennis were dismissed. At the time of Plaintiff Dennis' arrest (without warrant) and detention in Tulsa County jail, LCR2 as currently written was in effect (as adopted by the District and Associate Judges of Tulsa County).

The Court has appointed Plaintiffs Feltz and Dennis as class representatives of the following class:

~ 3 ~

> All people who are or will be detained prior to their initial arraignment in the Tulsa County Jail because they are unable to pay a secured financial condition of release.

[Doc. 357, p. 21]. When appointing Fetlz and Dennis and certifying the class, the Court found that Feltz and Dennis's individual claims were moot but that they could represent the class due to the inherently transitory nature of the claims. [Doc. 357 at pp. 15, 16, 20]. Therefore, Defendants State Judges seek summary judgment as to Plaintiffs and class members' claims.

**_Oklahoma's Bail Scheme_**

Oklahoma statutes and court rules authorize the process and procedures for bail as a mechanism to balance the liberty interest of an accused with the government and community's interest in both an accused appearance at trial and community security. OKLA. CONST. art. II, § 8; 22 O.S. Chapter 19, generally; _Petition of Humphrey_, 601 P.2d 103 (OK CR 1979).

The Oklahoma Legislature has codified a bail scheme at 22 O.S. Chapter 19 Bail. It is embodied in the Bail Act at 22 O.S. § 1101 to § 1105, the Pretrial Release Act at 22 O.S. § 1105.1 to § 1114.5A, and the State and Municipal Traffic, Water Safety, and Wildlife Bail Bond Procedure Act at 22 O.S. § 1115 to § 1115.5. There are also limited directives in Title 59 Chapter 33 and 33A, which regulate and license bail bondsmen. The Bail Act enumerates offenses for which bail may be denied and designates an evidentiary standard for denial of bail for those specific offenses (22 O.S. § 1101)[2] and further establishes out bail setting and release requirements for certain domestic offenses (22 O.S. § 1105). The Pretrial Release Act expands the statutory framework for determining the release of arrestees. The Legislature delegated the authority to each presiding judge to establish a bail schedule for felony and misdemeanor offenses

---

[2]22 O.S. § 1101 has been amended. The amended statute was effective on November 1, 2022. The current statute and the superseded version are attached for the Court's convenience at Exhibit 1.

subject to certain statutory exceptions and exclusions. 22 O.S. § 1105.2(c) requires that pretrial bail be set in a numerical dollar amount and provides that failures to appear may result in the authorizing judge rescinding bail and entering a judgment in a dollar amount of pretrial bail if a private bail was not given at the time of release. The Presiding Judge otherwise has discretion, with consultation with the courts and district attorney of the judicial district, to interpret the statutes to set the specific amounts on the bond schedule. 22 O.S. § 1105.2 also gives judges discretion to use pretrial services where such program exists pursuant to 22 O.S. § 1105.3. Recognizance bonds are allowed by statute following an appearance before a judge. *See* 59 O.S. § 1334 ("person in custody before the court" or authorized by judge); 22 O.S. § 1108.1 ("final order of forfeiture by authorizing and issuing judge").

While the Presiding Judge has the statutory authority to establish a bail schedule to be published and reviewed by the courts and the district attorney of the judicial district (22 O.S. § 1105.2), the Presiding Judge does not enforce the use of the schedule as bonds are set individually by the judge hearing any particular case. (Ex. 2 – LCR1). The bail schedule is in place to allow for the efficient pre-hearing release of those individuals that choose to utilize it, if available. It acts as a standing order of release for those that meet the requirements and choose to abide by its terms. Once a criminal defendant appears before a judge acting as a magistrate for the purpose of setting conditions of release, the bail schedule is not binding. (Ex. 3 – LCR2). The review authority for a bond setting, even pursuant to the bail schedule, exists through a motion to modify or reduce bond before a magistrate and/or the district judge hearing the case, depending on whether felony or misdemeanor charges have been filed, and then through a writ of habeas corpus.

Finally, under common law:

> personal financial resources are only one factor determining whether an accused is confined prior to trial. The gravity of the offense, the accused's contacts in the community, his previous record, and his

ability to receive assistance from friends and family are equally important factors, and are not related to indigency. In some cases, bail may be denied regardless of the defendant's financial status.

*Hubbard v. State*, 45 P.3d 96, 101 (Okla. Crim. App. 2002) (citing OKLA. CONST. art. II, § 8; *Petition of Humphrey*, 1979 OK CR 97, ¶ 14, 601 P.2d 103, 108).

Of particular relevance to Plaintiffs and class members' claims against the State Judges are Oklahoma's statutory scheme and the rules promulgated by the Oklahoma Supreme Court, Court of Criminal Appeals and District Courts, which contemplate and allow for multiple methods by which a criminal defendant's conditions of release may be revisited or reviewed. Plaintiffs, however, seek from this Court an order mandating an outcome determinative process, removal of judicial discretion, and federal oversight into state criminal procedure.

## STATEMENT OF UNDISPUTED FACTS

### *Tulsa County Rules and Available Remedies*

1.    LCR1 of the Local Rules for the Fourteenth Judicial District, which includes Tulsa County has been in effect in its current form since May 2005. *See LCR1*, Exhibit 2.

2.    The version of LCR2 in effect when Feltz was arrested in June 2018 provided:

> All initial arraignments, except felony traffic offenses, shall be held at the times established by the Presiding Judge and judges assigned to the Criminal Division.
>
> When the Courthouse is closed to public business, judicial reviews of Affidavits of Arrest will be conducted by a Magistrate by 7:00 a.m. on designated days at the Tulsa County jail. The dates of the judicial reviews when the courthouse is closed and a list of Magistrates assigned to this duty will be provided by the Presiding Judge.

*See LCR2, effective as of May 2005*, attached as Exhibit 3.

3.    The version of LCR2 in effect when Dennis was arrested in December 2020 provided:

> Per the authority vested upon the District Court of Tulsa County, State of Oklahoma; and in accordance with the jurisdiction granted by the Oklahoma Legislature over certain misdemeanor and felony criminal matters by 22 O.S. § 1105; in accordance with the applicable Oklahoma District Court Rules regarding criminal procedure; and all other applicable rules and/or policies adopted by the District Court of Tulsa County, State of Oklahoma, established by 20 O.S. § 23, the Court hereby issues the following Rule regarding a pre-established schedule for bail pursuant to 22 O.S. § 1105.2 and for the initial appearance for persons arrested for certain misdemeanor and felony statutory criminal charges.

## I.    Rights of bail for persons accused of statutory criminal offenses.

> The United States Supreme Court has established the accused is not entitled to bail as a constitutional right. *See U.S. v. Salerno,* 481 U.S. 739, 754, 107 S. Ct. 2095, 95 L.E.2d 697 (1987) (citing the original source for Eighth Amendment in English Bill of Rights, the majority finds the very language of the Amendment "fails to say all arrests *must* be bailable" [emphasis added]). The accused is protected by both Article II, Sections 8 & 9 of the Constitution of The State of Oklahoma (1988 and 1907) with regard to excessive bail, and the Eighth Amendment, as applied to the States by virtue of the Fourteenth Amendment of the United States Constitution.

> The foremost consideration when fixing bail is the probability that the accused, if free, will appear at trial, and the conditions of release are within the sole discretion of the trial court and will not be overturned absent a clear abuse of discretion. *Bowman v. State*, 1978 OK CR 115, 585 P.2d 1373, *cert. denied* 440 U.S. 920 (1979). Some of the other factors considered when establishing bail include the seriousness of the crime charged against the defendant, his or her reputation and his or her financial condition. *See Brill v. Gurich*, 1998 OK CR 49, 965 P.2d 404; Rule CR 10.5 of the Local Rules of Tulsa County District Court (2003); Rule1.14, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2003).

> In accordance with 22 O.S. § 1101, the trial court may only deny bail upon the appropriate findings. *See Brill v. Gurich*, 1998 OK CR 49, 965 P.2d 404 and Art. II, Sec. 8 of the Oklahoma Constitution. The Oklahoma Court of Criminal Appeals has noted that "[b]ail is not to be deemed excessive

simply because the particular person charged cannot give the bail required." *Ex Parte McClellan*, 1908 OK CR 29, 97 P. 1019, 1020.

Pursuant to 22 O.S. §§ 1105 and 1105.2 and Rule 1 of the Local Rules of the Tulsa County District Court, the District Court of Tulsa County, State of Oklahoma, for certain offenses hereby adopts and affirms the written and established bail schedule found in Appendix A to these Rules. The provisions of said Appendix are hereby incorporated by reference to this Rule as if fully set forth herein.

Any party, defendant, accused, or other person required or permitted by law to give or post bail as surety or security in a criminal matter may discharge this requirement by cash, surety, property, or personal recognizance depending upon the conditions of release set forth in the bail schedule.

The purpose of the bail schedule is to permit the posting of bail without a delay associated with the "First Appearance" within 48 hours of being confined to the David L. Moss Criminal Justice Center, as mandated by 20 O.S. § 55. It is the opinion of the Court that the employ of such a schedule, as authorized by state law, "provides speedy and convenient release for those who have no difficulty in meeting its requirements[.]" *Pugh v. Rainwater,* 572 F.2d 1053, 1057 (5th Cir. 1978).

In particular, this schedule, authorized by 22 O.S. § 1105, shall apply to certain arrests without warrants as permitted by 22 O.S. § 196, or other applicable code. For offenses not listed on the schedule, conditions of release may only be determined after the individualized hearing described below.

## II. Scheduling of "First Appearance" for individuals not otherwise capable of posting bail pursuant to the schedule established in accordance with 22 O.S. § 1105

For those individuals who do not obtain release pursuant to the pre-set bail schedule as outlined above, within forty-eight (48) hours from their arrest, they shall then be brought before the Court for a "first appearance" in accordance with 20 O.S. § 55. In addition to those obligations established by this Rule, the accused shall be represented by court appointed counsel, if he or she does not have retained counsel for this hearing, for the limited purpose of determining the appropriate conditions of release. At this time the accused will be given the opportunity to object to the bail amount/conditions of release set for him or her.

The staff of the David L. Moss Criminal Justice Center shall inform the Tulsa County Court staff of any such accused in a timely fashion and shall additionally facilitate his/her appearance via video transmission or teleconference at a time to be set by the Court.

To the extent an accused is claiming to be indigent and not just unable to meet the conditions of release pursuant to the pre-set bail schedule, the Court in exercising its discretion in setting the conditions of release as allowed by law may consider various factors, including but not limited to the seriousness of the charge and criminal and appearance history.

To the extent an accused is claiming to be indigent and the charge is not on the pre-set bail schedule, the Court in exercising its discretion in setting the condition of release as allowed by law may consider various factors including but not limited to the seriousness of the charge and criminal and appearance history.

*See LCR2, effective as of August 22, 2019*, attached as Exhibit 4.

4.     LCR2 in paragraph 3 is still in effect today.

5.     The Local Rules of the Fourteenth Judicial District are adopted, amended, superseded and repealed by a majority vote of the District and Associate District Judges in Tulsa County. *See Rule 1 of Local Rules for the Fourteenth Judicial District*, attached as Exhibit 5.

6.     Bond amounts can be reconsidered at any time by raising the issue orally or by motion. *See Guten Depo,* attached as Exhibit 6, at p. 79, ln.10-13; *see also Musseman Depo*, attached as Exhibit 7 at p. 19, ln. 15 – p. 20, ln. 13, p. 21, ln. 25 – p. 23, ln. 8; *Southerland Depo*, attached as Exhibit 8 at p. 165, ln. 3-23.

7.     Bond amounts can also be reviewed with a writ of habeas corpus or an appeal. *See Clark v. Hall*, 53 P.3d 416 (OK CR 2002) (writ of habeas corpus used to by pretrial detainee to get individualized hearing on bail amount). *Bowman v. State*,

585 P.2d 1373; *Hainey v. State*, 740 P.2d 146 (OK CR 1987)(preserve issue of bail for appeal).[3]

**Plaintiff Richard Feltz**

7.      On or about November 29, 2017, Feltz was arrested in Rogers County and charged in Case No. CM-17-1037. *See CM-17-1037 Docket Sheet*, attached as Exhibit 10.

8.      On June 2, 2018, Feltz was arrested in Tulsa County for eluding the police, driving under suspension, no turn signal and child endangerment. *See Feltz Depo,* attached as Exhibit 11, at p. 9, ln. 15 – p. 10, ln. 13; *see also Feltz Probable Cause Affidavit,* attached as Exhibit 12.

9.      On or about June 3, 2018, a special judge for the Tulsa County District Court conducted a probable cause review and determined that there was probable cause for the eluding the police, driving under suspension, no turn signal and child endangerment charges. (Ex. 12 – *Feltz Probable Cause Affidavit*).

10.      At the time of Feltz's arrest and pretrial detention in Tulsa County in June, 2018, he was out of custody on a personal recognizance bond from Rogers County for the Case No. CM-17-1037. (Ex. 10 – *CM-17-1037 Docket Sheet*; *see also* Ex. 11 – *Feltz Depo* at , p. 20, ln. 8-10).

11.      The Personal Recognizance bond in the Rogers County case had as a condition that "I will not violate City, State, or Federal Law. I acknowledge that if I am arrested for violation of such laws, I will be subject to immediate confinement in the Rogers County Jail." *See Feltz Personal Recognizance Bond,* attached as Exhibit 13.

12.      On June 8, 2018, the State of Oklahoma filed formal charges against Feltz in Tulsa County. *See CF-18-2339 Docket Sheet*, attached as Exhibit 14 at p. 3.

---

[3]The Court is asked to take judicial notice of cases on the attached search print out from OSCN which represents the habeas bail corpus filings in the Oklahoma Court of Criminal Appeals since this lawsuit was filed. *See List,* attached as Exhibit 9. The list includes 58 unique case numbers arising out of Tulsa County criminal matters.

13.    On June 9, 2018, Feltz posted bail in the Tulsa County case prior to appearing before a judge. (Ex. 11 – *Feltz Depo* at p. 28, ln. 3-6).

14.    On June 11, 2018, Feltz and his private counsel, Ed Lutz, appeared before Special Judge Moody for an initial arraignment. (Ex. 14 – *CF-18-2339 Docket Sheet*, p. 4).

15.    At the initial arraignment, Feltz requested that he be allowed to leave the state to travel to Florida for rehabilitation services at a private facility due to his methamphetamine addiction. The Court granted his request. (*Id.* at June 11, 2018 Docket Entry; *see also* Ex. 11 – *Feltz Depo* at p. 15, ln. 23 – p. 16, ln. 18).

16.    On August 28, 2018, Feltz pled guilty under a plea agreement in the Tulsa County case. (Ex. 14 – *CF-18-2339 Docket Sheet*, p. 9, at Aug. 28, 2018 Docket Entry).

17.    On October 30, 2018, Feltz pled guilty under a plea agreement in the Rogers County Case. (Ex. 14 – *CF-18-2339 Docket Sheet*, p. 4, at Oct. 30, 2018 Docket Entry).

18.    Prior to his arrests in Rogers and Tulsa Counties, Feltz had been unemployed since 2015 due to his addiction issues. (Ex. 11 – *Feltz Depo* at p. 22, ln. 14-21).

19.    At the time of his Tulsa County arrest, Feltz and his wife were living with their son. *Id.* at p. 20, ln. 21 – p. 21, ln. 11.

20.    At the time of his Tulsa County arrest, Feltz had health insurance through his wife's employer. *Id.* at p. 16, ln. 25 – p. 17, 16.

### *Plaintiff Ashton Dennis*

21.    On or about December 15, 2020, Dennis was arrested in Tulsa County. *See NF-20-9170 Docket Sheet,* attached as Exhibit 15.

22.    Dennis has been disabled since birth and receives state assistance due to his disability. He has no other income. *See Dennis Depo*, attached as Exhibit 16 at p. 11, ln. 24 – p. 12, ln. 1.

23.    At the time of his arrest in December 2020, Dennis lived with his sister. *Id.* at p. 9, ln. 19-24.

24.    The probable cause affidavit for Dennis alleged that he was in possession of a stolen vehicle, in possession of a firearm after conviction of a felony, possession of a firearm while in commission of a felony, and concealing stolen property. *See Probable Cause Affidavit*, attached as Exhibit 17.

25.    On or about December 21, 2020, Dennis appeared via video before a Special Judge for his "first appearance." (Ex. 16 – *Dennis Depo* at p. 17, ln. 12 – p. 18, ln. 8; *see also CF-20-5600 Docket Sheet,* attached as Exhibit 18, p. 5, at Dec. 21, 2020 Entry).

26.    At his first appearance, a public defender appeared on behalf of Mr. Dennis. (Ex. 16 – *Dennis Depo* at p. 18, ln. 22-25; *see also* Ex. 18 – *CF-20-2600 Docket Sheet*).

27.    At his first appearance, the Special Judge reviewed the probable cause affidavit and heard argument from the public defender and assistant district attorney. (Ex. 16 – *Dennis Depo* at p. 19, ln. 10 – p. 20, ln. 8).

28.    The Special Judge found that two of the charges in the affidavit lacked probable cause and dismissed those two counts. (Ex. 18 – *CF-20-2600 Docket Sheet*).

29.    The Special Judge also lowered Dennis's bond amount at this hearing. (Ex. 16 – *Dennis Depo* at p. 19, ln. 20 – p. 20, ln. 17; *see also* Ex. 15 - *NF-20-9170 Docket Sheet*).

30.    On December 18, 2020, the State of Oklahoma filed formal charges against Dennis via an Information. (Ex. 18 – *CF-20-2600 Docket Sheet*).

31.     On December 21, 2020, Dennis appeared before another Special Judge for his initial arraignment after formal charges had been filed by the State in an Information. *Id.* at p. 5.

32.     At the initial arraignment, the Special Judge reconsidered Dennis's bond amount based upon the charges in the formal information and other information available to him and raised Dennis's bond. The Special Judge also appointed a public defender to serve as Dennis's counsel for the remainder of the case. *Id.*

33.     On or about December 23, 2020, Dennis was released on bail based on the amount set at the initial arraignment, which was posted by the Bail Project. *See Order of Release from Custody*, attached as Exhibit 20.

34.     During Dennis's pretrial detention in December 2020, Dennis was detained in the David L. Moss Criminal Justice Center. (Ex. 16 – *Dennis Depo* at p. 12, ln. 25 – p. 13, ln. 3).

35.     During the time period of Dennis's pretrial detention, the country was still under the declared national emergency in regards to the COVID-19 pandemic. *See Notice on Continuation of the National Emergency Concerning the Coronavirus Disease 2019 (COVID-19) Pandemic*, attached as Exhibit 21. However, the National Emergency ended on April 10, 2023. *See H.J. Res. 7, Public Law No. 118-3.*

36.     During the time period of Dennis's pretrial detention, the David L. Moss Criminal Justice Center was operating under emergency procedures to mitigate the spread of COVID-19. *See David L. Moss a/k/a Tulsa County Jail in Person Non-contact Attorney Visitation Plan,* attached as Exhibit 22.

37.     Further, during Dennis's period of pretrial detention, the public defender was not in the video courtroom at the David L. Moss Criminal Justice Center but in the courthouse courtroom with the judge due to COVID-19 procedures at the David L. Moss Criminal Justice Center. *See Wright Depo,* attached as Exhibit 23 at pp. 214-220.

38.     On or about February 23, 2021, the case number CF-2020-5600 against Dennis was dismissed by the State. (Ex. 18 – *CF-20-2600 Docket Sheet*, p. 6 at Feb. 23, 2021 Docket Entry).

39.     On or about August 10, 2021, Dennis was arrested in Tulsa County for alleged possession of a firearm after felony conviction. (Ex. 19 – *NF-21-5606 Docket Sheet; see also* Ex. 20 – *Order and Release from Custody*).

40.     On or about August 11, 2021, Dennis posted bail according to the preset bail schedule for this charge and was released from pretrial detention. *Id.; see also NF-2021-5605 Appearance Bond,* attached as Exhibit 24.

41.     Dennis did not appear on the "bond docket" for his August 10, 2021 arrest. (Ex. 19 – *NF-21-5605 Docket Sheet*).

42.     On May 12, 2022, Dennis pled guilty to the possession of a firearm after a felony conviction charge in CF-2021-3359. *See Judgment and Sentence,* attached as Exhibit 25.

### Tulsa County "Bond Docket"

43.      In Tulsa County, the District Court operates a daily docket referred to as the "bond docket." This docket happens every day of the week and even on holidays. (Ex. 6 – *Guten Depo* at p. 119, ln. 18-21*; see also* Ex. 8 – *Southerland Depo* at p. 163, ln. 7-16*; and* Ex. 23 – *Wright Depo* at p. 191, ln. 25 – p. 192, ln. 9, p. 234, ln. 13-16).

44.     On the "bond docket," public defenders represent persons detained in the Tulsa county jail (otherwise known as the David L. Moss Criminal Justice Center) that have not posted bail prior to the docket being called or do not yet have bail set, if the detained accept the representation. (Ex. 8 – *Southerland Depo* at p. 44, ln. 13 – p. 45, ln. 10*; see also* Ex. 23 – *Wright Depo* at p. 114, ln. 10-14; p. 120, ln. 10 – p. 121, ln. 22).

45.     On the "bond docket," assistant district attorneys also appear on behalf of the State to address concerns as to bail determinations for those criminal defendants

appearing on the "bond docket." (Ex. 23 – *Wright Depo* at p. 12, ln. 10 – p. 121, ln. 22).

46.    After being booked and prior to the "bond docket," criminal defendants may post bond according to the bail schedule, if their charges have a monetary amount on the schedule that is not zero and they were not arrested pursuant to warrant. (Ex. 7 – *Musseman Depo*, p. 35, ln. 2 – p. 36, ln. 1; *see also* Ex. 23 – *Wright Depo*, p. 55, ln. 6-24).

47.    If criminal defendants do not post bail prior to the "bond docket," they may appear before the Court and address bail on the "bond docket."

48.    At the "bond docket," the Court is presented with the probable cause affidavit for review; information collected by Court Services including recommendations for the PreTrial Release Program, NCIC reports, and information/argument from the public defender and assistant district attorney. *See Guten Declaration dated Mar. 31, 2020,* attached as Exhibit 13 at ¶¶ 5, 7; *see also* [Doc. 157-5 at pp. 5, 7, and 9]; Ex. 6 – *Guten Depo* at p. 30, ln. 10 – p. 34, ln. 2; p. 45, ln. 23- p. 46, ln. 1; p. 46, ln. 14 -21, and Ex. 23 – *Wright Depo* at p. 236, ln. 25 – p. 237, ln. 4).

49.    All Special Judges consider the financial status and resources of each criminal defendant. (Ex. 8 – *Southerland Depo* at p. 110, ln. 9-13; p. 164, ln. 14 – p. 165, ln. 2*; see also* Ex. 23 – *Wright Depo* at p. 24, ln. 17-24).

50.    The Court announces its ruling from the bench to each criminal defendant and a court minute is entered into the electronic court docket for the criminal defendant reflecting this ruling. (Ex. 6 – *Guten Depo* at p. 6, ln. 12 – p. 57, ln. 8*; see also* Ex. 23 – *Wright Depo* at p. 243, ln. 7-14).

### Statistics in Tulsa County

51.    According to Dr. Tracy Morris, Ph.D., the jail data and the court data show methods of release as follows:

Methods of Release in the final jail data: 1,499 released by Cash/Surety Bond (77.2%); 267 released by Attorney/Personal Recognizance (13.8%); 122 released by PreTrial services (6.3%) and 53 released by Electronic Monitoring Program (2.7%).

Methods of Release in the final dockets data: 3,184 (78.5%) were released on a secured bond; 758 (18.7%) were released on personal recognizance; 320 (7.9%) were released by PreTrial services; and 196 (4.8%) were released with electronic monitoring.

*See Morris Report,* attached as Exhibit 26 at pp. 5-6; *see also Morris Depo Vol. 1,* attached as Exhibit 27 at p. 14, ln. 17 – p. 16, ln. 2; p. 26, ln. 9-15; p. 36, ln. 25 – p. 36, ln. 7.

52.    According to Dr. Tracy Morris, Ph.D., the following is the summary statistics for time (in days) until release:

| Method of Release | n | median | mean | std. dev. | range |
|---|---|---|---|---|---|
| Secured bond | 1499 | 0.4 | 2.2 | 8.8 | 0.01 – 217.0 |
| Personal recognizance | 267 | 0.9 | 3.9 | 16.1 | 0.05 – 159.0 |
| Pre-trial services | 122 | 2.6 | 4.6 | 4.7 | 0.56 – 27.7 |
| Electronic monitoring | 53 | 3.4 | 9.4 | 13.0 | 0.71 – 63.9 |

(Ex. 26 – *Morris Report* at p. 6; *see also* Ex. 27 – *Morris Depo Vol. 1* at p. 14, ln. 17 – p. 16, ln. 2; p. 26, ln. 9-15; p. 36, ln. 25 – p. 36, ln. 7).

53.    According to Dr. Morris, the failure to appear rate for criminal defendants in Tulsa County with secured bail is 12.4%. (Ex. 26 – *Morris Report* at p. 9-10; *see also* Ex. 27 – *Morris Depo Vol. 1* at p. p. 159, ln. 15-22; p. 188, ln. 16 – p. 194, ln. 3).

54.    According to Dr. Morris, the failure to appear rate for criminal defendants in Tulsa County with unsecured bail is 28.8%. *Id.*

55.    According to reports filed with Tulsa County Court Clerk in case number CV-2002-34 for the period between October 1, 2019 to September 30, 2021, PreTrial Services did the following: Number of Persons Interviewed for Release 4,838; Number of Persons Released 1,770; Number of Persons Failed to Appear 668; and Failed to

Appear and Returned to Custody 328. *See CV-2002-34 Pretrial Reports Oct. 1, 2019 to Sept. 30, 2021,* attached as Exhibit 29.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). One of the fundamental functions of the summary judgment rule is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553-54 (1986). Summary judgment may be granted when the moving party demonstrates there is no evidence to support the claims of the nonmoving party or that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(C); *Celotex Corp. v. Catrett*, 477 U.S. at 325, 106 S. Ct. 2548, 2553-54. An issue is "genuine" only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## SUMMARY OF THE ARGUMENT

Defendant State Judges have five propositions for the Court to consider in granting summary judgment in their favor. The first proposition is that the Bill of Rights protects against the types of wrong Plaintiffs and the class are alleging and their attempt to bring freestanding Fourteenth Amendment *due process* claims fail under the holding of *Albright v. Oliver*, 510 U.S. 266 (1994). The second proposition is that Defendant State Judges have not violated due process. More specifically, Plaintiffs cannot show that the relief requested is so deeply rooted in the nation's history that the procedures challenged do meet *Medina v. California,* test. 505 U.S. 437 (1992). The third proposition argues that the procedures currently in place satisfy equal protection. The fourth proposition is that all acts by the Presiding Judge on which Plaintiffs base

their claims are judicial acts, and therefore injunctive relief is barred. Finally, *O'Shea v. Littleton* counsels that the Court should abstain from deciding this matter as it requires ongoing oversight into state court criminal proceedings. 414 U.S. 488 (1974).

**PROPOSITION I:    BECAUSE SPECIFIC BILL OF RIGHTS PROVISIONS APPLY TO PLAINTIFFS' CLAIMS, FOURTEENTH AMENDMENT DUE PROCESS IS NOT IMPLICATED.**

When an amendment in the Bill of Rights provides an explicit textual source of constitutional protection from the type of wrong allegedly suffered, it is that Amendment that governs the right rather than the Due Process Clause. *Graham v. Connor*, 490 U.S. 386, 395 (1989). For this reason, if a plaintiff attempts to bring a Fourteenth Amendment *due process* claim for infringement of a right governed by a provision of the Bill of Rights, the Fourteenth Amendment due process claim is properly dismissed. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Geddes v. Weber Cnty.*, No. 20-4083, 2022 WL 3371010 (10th Cir. 2022) (unpublished); *cf. Sattazahn v. Pennsylvania*, 537 U.S. 101, 116 (2003) ("We decline petitioner's invitation to hold that the Due Process Clause provides greater double-jeopardy protection than does the Double Jeopardy Clause."); *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases, including the detention of suspects pending trial.").

In such cases, judgment in favor of Defendants dismissal is appropriate not only where the alleged due process violation is substantive, but also where it is procedural. *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007) ("we find *Albright*'s reasoning regarding substantive due process equally persuasive with regard to the Fourteenth Amendment's procedural component."). [4]

---

[4]The distinction between "procedural due process" and "substantive due process" is one used in civil cases. In criminal cases, there is only "due process." As Judge

Here, the wrong that Plaintiffs and the class allege is pretrial detention caused by inadequate pretrial release hearings and the use of a pre-set bail schedule. But, three separate Bill of Rights Amendments—the Fourth, the Sixth, and the Eighth—provide explicit textual protection relating to pretrial detention: (1) the Fourth Amendment establishes constitutional standards and procedures for pretrial release. *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 365 (2017); *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Mitchell v. Doherty*, 37 F.4th 1277, 1284 (7th Cir. 2022); (2) the Sixth Amendment ensures a speedy trial in order "to prevent oppressive pretrial incarceration." *Barker v. Wingo*, 407 U.S. 514, 532 (1972); and (3) the Eighth Amendment prohibits pretrial detention caused by "Excessive bail." *Stack v. Boyle*, 342 U.S. 1 (1951). Therefore, since the Bill of Rights provides robust protection from unlawful or unduly extensive pretrial detention, it is the Bill of Rights that governs the process that is due with respect to bail and pretrial detention, not the Due Process Clause of the Fourteenth Amendment. "If a claim can't proceed in its natural textual and doctrinal home, then, it can't proceed." *Sosa v. Martin Cnty., Fla.*, 57 F.4th 1297, 1308 (11th Cir. 2023) (Newsom, Pryor & Lagoa, CJ, concurring) (cleaned up). Since Plaintiffs have elected to assert only a Fourteenth Amendment due process claim, rather than a claim under an applicable Bill of Rights provision, their due process claims fail under the holding of *Albright*.

This approach is in accord with modern criminal-procedure jurisprudence, which construes the Bill of Rights *expansively* and the Due Process Clause *narrowly*. *Compare Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) (expansively construing Sixth Amendment right to jury trial to require a *unanimous* jury for conviction) and *Riley v. California*, 573 U.S. 373 (2014) (expansively construing Fourth Amendment to require

---

Tymkovich has explained: "we reserve the label 'procedural due process' only for civil cases, and refer to due process doctrine in the criminal context simply as 'due process.'" Hon. Timothy M. Tymkovich, Joshua Dos Santos, Joshua J. Craddock, *A Workable Substantive Due Process*, 95 Notre Dame L. Rev. 1961, 1983 (2020).

search warrant for search of cell phone), with *Medina v. California*, 505 U.S. 437, 443 (1992) (holding that Due Process Clause has "limited operation" beyond specific guarantees enumerated in the Bill of Rights and is construed "narrowly"); *Estelle v. McGuire*, 502 U.S. 62, 72–73 (1991) (same); *Dowling v. United States*, 493 U.S. 342, 352 (1990) (same); *see also*, *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009) (Due Process Clause does not require disclosure of exculpatory evidence in post-conviction context); *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) (Due Process Clause not implicated by erroneous denial of peremptory challenge). For example, if there is an unreasonable delay in the time it takes to obtain a neutral probable cause determination justifying pretrial detention, the procedural right infringed is a Fourth Amendment right rather than a due process right. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

When properly construing Plaintiffs and the classes' claim under the Eighth Amendment, the analysis is that of *Stack v. Boyle*. In *Stack v. Boyle*, 342 U.S. 1 (1951), the Supreme Court held that the district court erred in denying petitioners' motion to reduce bail where bail had been "fixed in a sum *much higher than that usually imposed for offenses with like penalties* and yet there ha[d] been no factual showing to justify such action." *Stack v. Boyle*, 342 U.S. 1, 5 (1951) (emphasis added). In construing the Eight Amendment, the Court held that, "If bail in an amount *greater than that usually fixed* for serious charges of crimes is required . . . that is a matter to which evidence should be directed in a hearing so that the constitutional rights of each petitioner may be preserved. *Stack v. Boyle*, 342 U.S. 1, 6 (1951) (emphasis added). The Court went on to hold that, "[t]he proper procedure for challenging bail as unlawfully fixed is by ***motion for reduction of bail*** . . . ." *Stack v. Boyle*, 342 U.S. 1, 6, 72 S. Ct. 1, 4 (1951). The Court nowhere intimated that bail must be "affordable," much less that it be affordable at the initial appearance before the court has had an opportunity to decide a "motion for reduction of bail." Under *Stack*, Plaintiffs and the classes' claims fail as

they have remedies available to them but have elected not to avail themselves of the appropriate remedy.

**PROPOSITION II:** **EVEN IF A FREESTANDING FOURTEENTH AMENDMENT DUE PROCESS CLAIM WERE NOT PRECLUDED BY *ALBRIGHT, GRAHAM, GERSTEIN, BECKER*, AND THEIR PROGENY, TULSA'S PRETRIAL RELEASE SYSTEM COMPORTS WITH FREESTANDING DUE PROCESS BECAUSE IT DOES NOT OFFEND A PRINCIPLE OF JUSTICE SO ROOTED IN THE TRADITIONS AND CONSCIENCE OF OUR PEOPLE AS TO BE RANKED AS FUNDAMENTAL.**

Assuming *arguendo* that Plaintiffs and the class's free-standing Fourteenth Amendment due process theory of relief were not precluded by *Albright v. Oliver*, 510 U.S. 266 (1994); *Graham v. Connor*, 490 U.S. 386 (1989); *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007); and their progeny, Tulsa's pretrial release system passes the Supreme Court's test for freestanding due process claims.

First, if Plaintiffs and the class attempt to argue that they have a federal due process right arising from Oklahoma's pretrial release procedures—a claim they have not made thus far in the litigation—their argument fails because Oklahoma's pretrial release procedures do not guarantee a certain outcome. "Process is not an end in itself." *Elwell v. Byers*, 699 F.3d 1208, 1214 (10th Cir. 2012) (cleaned up). "[W]hen state law creates a mandatory procedure but does not guarantee a particular substantive outcome, it does not confer a protected liberty interest." *Id.* (citations omitted). The mere "expectation of receiving a state afforded process does not itself create an independent liberty interest protected by the Due Process Clause." *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1570 (10th Cir. 1993). This rule applies to processes that are traditionally within the realm of criminal procedure. *See Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 186 (6th Cir. 2012) (no "liberty interest" in right to be examined in a bail hearing); *Medina v. Allen*, No. 4:21-CV-00102-DN-PK, 2023 WL 2743137, at *6 (D. Utah Mar. 31, 2023) (similar).

~ 21 ~

Second, as more fully explained below, a state's criminal justice system will run afoul of the Due Process Clause only if it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Medina v. California*, 505 U.S. 437, 445 (1992), and "transgresses [a] recognized principle of fundamental fairness." *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009).

### A. The **Medina** *test rather than the* **Mathews** *balancing test applies to Plaintiffs and the class's freestanding Fourteenth Amendment due process claim.*

Due process claims are usually measured by one of two tests. In evaluating a state's *civil* administrative procedures, Due Process compliance is measured by the multi-factor balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). In evaluating a state's *criminal* procedures for Due Process compliance, courts use the more deferential test articulated in *Medina v. California*, 505 U.S. 437 (1992).

The *Mathews* test was "conceived to address due process claims arising in the context of administrative law." *Medina v. California*, 505 U.S. 437, 444 (1992). Under the *Mathews* test, courts are required to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Under the more deferential *Medina* due process test, a state's procedure for carrying out its criminal laws is subject to proscription only if it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." 505 U.S. at 446. States are given more deference in their administration of criminal procedure under *Medina* than they are in their civil

administrative procedures for primarily two reasons. First, unlike the civil administrative-law issues for which *Mathews* balancing was formulated, criminal process is grounded in centuries of common-law tradition in which states have considerable expertise. *Medina v. California*, 505 U.S. 437, 445–46 (1992). As the Court noted, "preventing and dealing with crime is much more the business of the States than it is of the Federal Government." *Id.* at 445. Second, because "[t]he Bill of Rights speaks in explicit terms to many aspects of criminal procedure," it is often unnecessary to attach additional criminal procedures to "the open-ended rubric of the Due Process Clause." 505 U.S. at 443. Or, as now-Justice Gorsuch explained it, "because the Bill of Rights speaks in explicit terms to many aspects of criminal procedure, the Supreme Court has set a high bar for us to pass before we may conscript the Due Process Clause into service on behalf of new and unenumerated constitutional rights." *Williams v. Jones*, 583 F.3d 1254, 1259 (10th Cir. 2009) (Gorsuch, Tacha, O'Brien, Tymkovich, C.J., dissenting to denial of rehearing *en banc*).

Here, the procedure at issue is the initial setting of bail and associated pretrial release considerations in criminal cases in Tulsa County. Because the scope of criminal procedure traditionally begins with arrest and ends with trial,[5] and because the setting of bail or of other pretrial release conditions falls within the traditional scope of criminal procedure and has been part of every criminal proceeding in the common-law tradition for hundreds of years, the appropriate due process analysis for Plaintiffs and the class claim is outlined in *Medina*, rather than *Mathews*.

### B.    Tulsa County's pretrial release system passes the Medina test.

As indicated previously, a state criminal procedure will run afoul of the Due Process Clause only if it "offends some principle of justice so rooted in the traditions

---

[5]Although *Medina* applies to post-conviction procedures too. *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009) (applying *Medina*).

and conscience of our people as to be ranked as fundamental." *Medina v. California*, 505 U.S. 437, 445 (1992). Unless the state procedure violates such a "fundamental principle of fairness," it is not proscribed by the Due Process Clause. *Montana v. Egelhoff*, 518 U.S. 37, 55 (1996) (plurality). Further, the Supreme Court has stated that it is not "a rule-making organ for the promulgation of state rules of criminal procedure" and that "a state rule of law 'does not run afoul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar.'" *See Spencer v. State of Texas*, 385 U.S. 554, 564 (1967) (citations omitted). Thus, the issues presented for judicial resolution here are: (1) whether Tulsa County's pretrial release system offends some principle of fairness so rooted in the traditions and conscience of our people as to be ranked as fundamental, and (2) whether the procedures Plaintiffs and the class demand are necessary to vindicate that allegedly deeply rooted principal.

### (1)    The bail schedule does not violate the Due Process Clause.

Plaintiffs' first Due Process criticism of Tulsa's pretrial release system is that Tulsa uses a bail schedule in which bail amounts are set based on the seriousness of offense for which the arrestee is arrested. Plaintiffs and the class assert that use of the bail schedule violates due process because it authorizes financial conditions of release prior to an individualized determination of an arrestee's ability to pay. [Doc. 259, ¶¶ 7, 56-58].

Under the *Medina* test, Plaintiffs and the class must show that the use of a bail schedule "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." 505 U.S. at 445. In light of the fact that bail schedules are widely used and their validity repeatedly affirmed, it is simply not plausible to argue that their use violates some "deeply rooted" fundamental right. *See, e.g., Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 543 (5th Cir. 2022)("*Daves II*") ("There is nothing unconstitutional about the mere promulgation and use of bail

schedules."); *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 184 (6th Cir. 2012); *Walker v. City of Calhoun,* 901 F.3d 1245 (11th Cir. 2018); *Pugh v. Rainwater,* 572 F.2d 1053 (5th Cir. 1978)(approving use of bail schedule).

      The American bail system is patterned on English practices, and bail has historically been intended to give liberty to an accused while the government and community have adequate assurance that the accused will participate in the criminal process. *See e.g. U.S. v. Salerno,* 481 U.S. 739, 754 (1987) ("The bail clause [of the Eighth Amendment] was lifted with slight changes from the English Bill of Rights Act…"); *Stack v. Boyle,* 342 U.S. 1, 7 (1951)(Jackson, dissenting writing separately) "The practice of admission to bails, as it evolved in Anglo-American law, …" These twin goals have been accomplished by a "deposit of money subject to forfeiture" since before the founding. *Stack v. Boyle*, 342 U.S. 1, 5 (1951); *Timbs v. Indiana,* 139 S. Ct. 682 (2019)(Eighth Amendment can "trace lineage" back to Magna Carta). The Eighth Amendment and the Judiciary Act of 1789 provide that non-excessive bail be available in all non-capital cases. *William F. Duker, The Right to Bail: A Historical Inquiry*, 42 Alb. L. Rev. 33, 85 (1977). The Supreme Court noted in *Stack v. Boyle* that the constitution permits monetary bail, as evidenced by the Eighth Amendment prohibition on "excessive" bail. The modern practice of requiring or allowing a bail bond serves as adequate assurance. *Stack,* 342 U.S. at 5. Excessive bail does not necessarily mean unaffordable bail, just as non-excessive bail does not mean bail must be affordable for every defendant. Secured bail is not meant to be an instrument of detention, but rather a liberty promoting mechanism, which assures defendants will appear for trial. *Stack,* 342 U.S. at 5. Again, several circuit courts have found that bond schedules, in and of themselves, are not inherently unconstitutional. No Supreme Court case has addressed bail schedules. *Fields v. Henry Cnty., Tenn.,* 701 F.3d 180 (6th Cir. 2012); *Walker v. City of Calhoun, Ga.,* 910 F.3d 1245 (11th Cir. 2018); *Daves II, supra*. Because bond schedules are based on the severity of the offense in question, it does not discriminate

on the basis of wealth, as similar offenses are treated similarly with the average defendant in mind. Bail is available for most crimes, but there is no guarantee that any particular defendant will be able to meet any particular bail requirement. 22 O.S. § 1101. No accused is detained because they are poor – rather an accused is detained because the government has found probable cause to arrest and/or charge the accused and the government requires adequate assurance of appearance for court proceedings and community security. *Gerstein,* 520 U.S. at 124-125; *Riverside,* 500 U.S. at 58; *Stack,* 342 U.S. at 4. All that is required is an opportunity to meet non-excessive bail. *Stack,* 342 U.S. at 10 (Jackson, J., writing separately). Again, there is no guarantee that every defendant will be able to meet the required security.

Based on the foregoing, Plaintiffs and the class are unable to meet their burden of showing that they have a fundamental "deeply rooted" right not to have the option of paying a preset bond amount to obtain release prior to their first court appearance. *See U.S. v. Castillo*, 140 F.3d 874, 881 (10th Cir. 1998) (burden is on party making due-process challenge to show that principle allegedly violated by state process is "so rooted in the traditions and conscience of our people as to be ranked as fundamental."). *See also Dawson v. Board of County Commissioners of Jefferson County, Colo.,* 732 F.App'x 624 (10th Cir. 2018)(*cert denied* 139 S. Ct. 862 (2019) (no fundamental right to pretrial release).

State Judge's use of the preset bail schedule is fundamentally fair. The bail schedule serves simply to allow arrestees an opportunity to pay the scheduled amount, if available, in lieu of having an individualized bail hearing. No one is thereby *denied* an individualized bail hearing, they merely have the option of paying the preset amount in lieu of an individualized hearing. A procedure such as this that authorizes the payment of money in exchange for allowing a criminal defendant to avoid a hearing does not violate due process. *See Kincaid v. Gov't of D.C.*, 854 F.3d 721, 727–28 (D.C. Cir. 2017) (Kavanaugh, J.). In *Kincaid*, the court held that the District of Columbia's

post-and-forfeit procedure, pursuant to which arrestees could choose to pay and forfeit a fee in exchange for a full and final resolution of their criminal charge, did not deprive arrestees of their money without a hearing in violation of the Due Process Clause. Accordingly, State Judge's preset bail schedule, pursuant to which arrestees can choose to pay a preset bond amount without a hearing, does not violate the Due Process Clause.

> **(2)    State Judge's pretrial release system comports with Due Process for those who do not obtain release pursuant to the pre-set bail schedule.**

Under LCR2, individuals who do not obtain release pursuant to the pre-set bail schedule have their first opportunity for an individualized pretrial release hearing during their first court appearance, which occurs within 48 hours of their arrest (i.e., the "bond docket"). During this first appearance, arrestees are represented by counsel for the purpose of determining their conditions of release. (Ex. 4 – LCR 2). At the hearing, they are given the opportunity to object to their bail amount and/or other conditions of release. To the extent the arrestee claims indigency or inability to pay, the court exercises its discretion in setting the condition of release. In doing so, the court may consider various factors including but not limited to the seriousness of the charge and criminal and appearance history. *See Brill v. Gurich,* 1998 OK CR 49.

If the arrestee is unsatisfied with the release conditions received at the first appearance, he or she also has post-first-appearance procedures available to them. They may file a motion to reconsider or alter the conditions. (Ex. 6 – *Guten Depo* at pp. 79-80, 115-116). The arrestee may also file a writ with the appropriate appellate court, the Court of Criminal Appeals. *See Clark v. Hall*, 53 P.3d 416 (Okla. Cr. 2002) (writ of habeas corpus used to by pretrial detainee to get individualized hearing on bail amount). Finally, a criminal defendant could preserve the issue for appeal and appeal it. *See Bowman v. State*, 585 P.2d 1373; *Hainey v. State*, 740 P.2d 146 (Okla. Cr. 1987). These post-first-appearance procedures cannot be ignored. In determining what process is due at any particular point in a state criminal proceeding, all of the state's available

safeguards for protection of the right at issue must be "viewed as a whole." *Gerstein*, 420 U.S. at 123. This is necessary because "state systems of criminal procedure vary widely [and] [t]here is no single preferred pretrial procedure." *Id.* This approach also promotes the Supreme Court's desire for "flexibility and experimentation by the States." *Id.* Based on these principles, Plaintiff and the class's narrow focus on a single aspect of Tulsa's process, i.e., the initial appearance, without considering the pretrial release system "viewed as whole" is insufficient to answer the legal questions at bar (i.e., does the system violate due Process?).

Plaintiffs and the class claim that this system violates the Due Process Clause because (1) arrestees are allegedly not given prior notice that release conditions will be considered at the first appearance, (2) findings on release conditions are not made on the record showing that secured bail is supported by clear and convincing evidence that the release conditions are the minimum required to support the State's interest, and (3) motions to reconsider or alter release condition cannot be made and heard promptly enough to satisfy due process.

However, none of Plaintiffs' or the class's attacks on Tulsa's pretrial release system is supported by a fundamental principle of justice deeply "rooted in the traditions and conscience of our people." *Medina v. California*, 505 U.S. 437, 437. Defendant State Judges are unaware of any historical sources showing consensus on: (1) the type of notice, if any, an arrestee must be provided prior to their first appearance; (2) whether findings at a first appearance in which release conditions are discussed must be in writing and made based on clear and convincing evidence; (3) the length of time that may pass after arrest before the first individualized pretrial release consideration is made (i.e., hearing); or (4) whether individualized considerations of pretrial release conditions are required at all. *See, e.g., Medina v. Allen*, No. 4:21-CV-00102-DN-PK, 2023 WL 2743137, at *6 (D. Utah Mar. 31, 2023) ("Notice and an

~ 28 ~

opportunity to be heard at the initial bail determination is not required by the Constitution.").

Defendants are similarly unaware of any historical commentaries or other sources showing that "our common-law heritage" required initial appearances in criminal cases to include full-scale bail hearings with all the procedural machinery Plaintiffs and the class seek to impose. *Id.* at 446. Nor have Plaintiffs and the class pointed to any such historical requirements. *See* [Docs. 290 and 334]. As such, Plaintiffs and the class have failed to meet their "burden of demonstrating such rights are fundamental." *Maehr v. United States Dep't of State*, 5 F.4th 1100, 1118 (10th Cir. 2021) (cleaned up). Summary Judgment in favor of Defendants is appropriate.

## PROPOSITION III: EQUAL PROTECTION IS SATISFIED.

The Fourteenth Amendment directs that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006). That directive is aimed at the State: "equal protection only applies when the state treats two groups, or individuals, differently." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004). However, the promise of equal protection "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631, 116 S. Ct. 1620 (1996). Therefore, generally speaking, laws need only bear a rational basis to a legitimate government interest. *See, e.g., Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 491, 75 S. Ct. 461 (1955).

Plaintiffs and the class allege wealth-based discrimination resulting in pretrial detention violates equal protection. The Supreme Court analyzed differential treatment by wealth under equal protection in *San Antonio Indep. Sch. Dist. v. Rodriguez,* which considered a wealth-based equal protection challenge to Texas's system of

apportioning school funds based principally on local tax bases. 411 U.S. 1, 93 S. Ct. 1278 (1973). The Court concluded that wealth-based distinctions were impermissible if "because of their impecunity [ the indigent] were completely unable to pay for some desired benefit, and as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit." *Id.* at 20.

Indigency alone is not a suspect class and does not trigger strict scrutiny. *See, e.g., Maher v. Roe*, 432 U.S. 464, 471, 97 S. Ct. 2376 (1977) ("In a sense, every denial of welfare to an indigent creates a wealth classification as compared to nonindigents who are able to pay for the desired goods or services. But this Court has never held that financial need alone identifies a suspect class for purposes of equal protection analysis."); *Rodriguez*, 411 U.S. at 29, 93 S. Ct. 1278 (noting that "this Court has never heretofore held that wealth discrimination alone provides an adequate basis for invoking strict scrutiny"). "[A]t least where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages." *Id*. at 24, 93 S. Ct. 1278, 1291. *See also Ross v. Moffitt,* 417 U.S. 600, 616, 94 S. Ct. 2437 (1974) ("The duty of the State . . . is not to duplicate the legal arsenal that may be privately retained by a criminal defendant . . ., but only to assure the indigent defendant an adequate opportunity to present his claims fairly.").

The *Rodriguez* framework, requires a rational basis review of the bail system. *See* 411 U.S. at 17, 93 S. Ct. 1278 (providing the "framework for our analysis" requires a court to first determine whether a system "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny," and, if not, to apply rational basis review); *see also McGinnis v. Royster*, 410 U.S. 263, 269–70, 93 S. Ct. 1055 (1973) (good-time-credit scheme that benefitted the wealthy who were able to afford bail did not violate equal protection under rational basis); *O'Donnell v. Goodhart*, 900 F.3d 220, 226 (5th Cir. 2018) ("An Equal Protection Claim that an

indigent 'person spends more time incarcerated than a wealthier person' is reviewed for a rational basis." (*quoting Doyle v. Elsea*, 658 F.2d 512, 518 (7th Cir. 1981)), *abrogated by Daves II*, 22 F.4th 522; *Smith v. U.S. Parole Comm'n*, 752 F.2d 1056, 1059 (5th Cir. 1985) (same); *Doyle,* 658 F.2d at 518 (evaluating a claim that indigents spend more time in prison than the wealthy only for rational basis).

The Supreme Court has indicated that heightened scrutiny may be applied to claims of wealth discrimination in limited contexts, which do not apply here.[6] Two of those contexts include setting the terms of criminal punishment and ensuring access to judicial proceedings. *See Jones v. Governor of Florida*, 972 F.3d 1016, 1030 (11th Cir. 2020)(*en banc*)(*citing Bearden v. Georgia*, 461 U.S. 660, (1983), and *Griffin v. Illinois*, 351 U.S. 12, (1956). Heightened scrutiny is not necessarily required simply because these contexts may be implicated in a given case. For instance, it may appear initially that Plaintiffs and the class members' claims in this case are squarely within the criminal punishment and access to judicial resources contexts. However, unlike the Plaintiffs' claims in this case, the plaintiffs in *Jones* and *Bearden* were challenging matters related to rights and liberty post-conviction. The matter at issue in this case

---

[6]Additionally, the Eleventh Circuit has addressed the question of whether heightened scrutiny should apply in pretrial bail determinations, noting:

> [t]he *sine qua non* of a *Bearden*- or *Rainwater*-style claim ... is that the State is treating the indigent and the non-indigent categorically differently. Only someone who can show that the indigent are being treated systematically worse "solely because of [their] lack of financial resources"—and not for some legitimate State interest—will be able to make out such a claim.

*Walker*, 901 F.3d at 1260 (alteration in original) (*quoting Bearden*, 461 U.S. at 661, 103 S. Ct. 2064). Therefore, heightened scrutiny only applies to a wealth discrimination claim when the claim arises in certain contexts explicitly identified by the Supreme Court, and the indigent has suffered a *total deprivation* of the government benefit based solely on an inability to pay for the benefit. *Shultz v. Alabama,* 42 F.4th 1298 (11th Cir. 2022); *See e.g. Jones*, 975 F.3d at 1055 (Lagoa, J., concurring).

does not involve punishment nor access to judicial resources. Therefore, rational basis applies.

The question for the Court, therefore, is whether Plaintiffs (and class members) are absolutely deprived of the opportunity for pretrial release simply because they are indigent or otherwise unable to meet a secured financial condition of release. As noted previously, the Tenth Circuit has not recognized a right to pretrial release as fundamental. *Dawson v. Board of County Commissioners of Jefferson County, Colo.*, 732 F.App'x 624 (10th Cir. 2018)(*cert denied* 139 S. Ct. 862 (2019). Courts have long held that pretrial release may be "conditioned upon the accused's giving of adequate assurance that he will stand trial and submit to sentence if found guilty". *Stack v. Boyle*, 342 U.S. 1, 4 (1951). In fact, states have a compelling interest in ensuring that people charged with crimes will appear and participate in the proceedings. *U.S. v. Salerno*, 481 U.S. 739, 754, 107 S. Ct. 2095 (1987).

It is undisputed that the State has a compelling interest in assuring that arrestees appear for trial and do not pose a risk to the community while awaiting the adjudication of their charges. *See "Oklahoma's Bail Scheme", supra.* Again, as discussed in *Proposition I, supra*, Plaintiffs and the class try to avoid basing their claims on the financial amount of the bail to avoid Eighth Amendment analysis, but mention affordability and/or ability to pay approximately three dozen times in the Second Amended Complaint. [Doc. 259].

Plaintiffs and the class cannot establish, and in fact the evidence does not show, that arrestees in Tulsa County suffer wealth-based discrimination, i.e. Tulsa County arrestees do not suffer absolute deprivation of an opportunity to obtain pretrial release and are not detained solely on an inability to pay. The Supreme Court has stated that "at least where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages." *Rodriguez*, 411 U.S. at 24, 93 S. Ct. 1278. In Tulsa County, all arrestees have an equal opportunity to meet the requirements

for bail – to establish they will return to court to face charges and not be a danger to society during the course of the proceedings. The first opportunity is to meet the terms of the bail schedule, if available. The next opportunity occurs at the bond docket. Arrestees may appear at the bond docket hearing multiple times if necessary and/or desired. (Ex. 6 – *Guten Depo* at p. 79, ln. 25 – p. 81, ln. 2). The pretrial release program offers further opportunities to meet the requirements for pretrial release for some arrestees. (*Id.* at p. 50, ln. 25 – p. 52, ln. 2; p. 97, ln. 18-25). Finally, a formal, stand-alone bond reduction hearing following the filing of a motion in the district court or filing a writ with the Oklahoma Court of Criminal Appeals seeking release are available to arrestees detained pretrial.

All arrestees are required to meet some condition to assure their appearance and the safety of the community. Again, equal protection does not require the same treatment. Every arrestee in Tulsa County has the opportunity to eschew individualized judicial determination and utilize the bail schedule, if available, to assure appearance and the safety of the community OR to participate in the bond docket hearing for a more individualized assessment to determine the appropriate conditions of release that may or may not include a financial component depending on the relevant factors. *See Oklahoma Bail Scheme, supra.*

While arrestees of different means or resources may not have equal outcomes, they all have an equal opportunity to seek individualized conditions of release that still satisfy the need to assure appearance and the safety of the community. Wealth status or indigence, therefore, is not determinative for the availability of process or range of conditions. Wealth status is not, and cannot be, the single or overriding determinative factor for setting conditions of release. Plaintiffs and the class seek an outcome determinative process whereby ability to pay is weighted more heavily or presumptively determinative for conditions of release. This is not required.. None of the relevant factors are weighted more heavily than any other – the determination for

appropriate conditions of release to assure appearance and the safety of the community varies from case to case and arrestee to arrestee. Bail is inherently meant to balance the arrestees' interest in liberty and the community's interest in security by creating a mechanism by which the arrestee may "deposit…a sum of money subject to forfeiture," which functions as an "assurance of the presence of an accused" at trial. *Stack* 342 U.S. at 5. As with any other condition that may be set, some arrestees will be able to meet the conditions and some will not. That any particular arrestee cannot meet the specific conditions required in any given case does not mean that the system is unconstitutional. The system in Tulsa County created from the statutes, rules and common law for bail determinations satisfies the Equal Protection Clause such that summary judgment in favor of the Defendant State Judges should be granted.

**PROPOSITION IV: INJUNCTIVE RELIEF IS NOT AVAILABLE.**

> ### A. *All acts on which Plaintiffs base their claims against Defendant Judges are judicial acts and therefore injunctive relief is barred.*

Plaintiffs and the class have framed their claims against the Presiding Judge in his administrative capacity around the creation of the bail schedule, AOs and LCR2. The creation and promulgation of the AOs, LCR2 and bail schedule at issue, however, are all judicial acts and therefore injunctive relief against the Defendant Presiding Judge is not available under 42 U.S.C. § 1983 (only declaratory relief is available). Courts consider various factors to determine whether an act by a judge is judicial. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978) ("[F]actors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.") Plaintiffs attempt to avoid immunity for judicial acts by framing them as "administrative." [7] But certain

---

[7] While Judge Eagan determined in her March 15, 2019 order [Doc. 48] that the acts alleged against the Presiding Judge were administrative, the operative complaint she

administrative or standing orders are, in fact, judicial orders. Only a judge may enter them. The fact that they are drafted outside the courtroom or that they involve administrative matters does not mean that they are not judicial. *Cf. Van de Kamp v. Goldstein,* 555 U.S. 335 (2009) (supervising district attorney entitled to absolute prosecutorial immunity for claim that he failed to institute system on information-sharing among deputy district attorney and for failure to adequately train or supervise despite the fact that obligation concerned administrative and management procedures). The relevant acts under consideration at this stage are LCR2 and the bail schedule incorporated in to LCR2, as the AOs have been superseded by the adoption of the LCR2 by non-party District and Associate Judges.[8] Promulgation of both the bail schedule and LCR2 are judicial acts as more fully set out below.[9]

Determining whether a particular act is judicial begins with analyzing a "particular act's relation to a general function normally performed by a judge". *Miereles v. Waco,* 502 U.S. 9, 13 (1991). A judicial act is an act normally performed by a judge in his or her judicial capacity. *Stump, supra* at 362. If an act is not adjudicative in the traditional sense, i.e. resolving a dispute between parties that have invoked a court's jurisdiction, a close analysis is necessary to determine "whether the

---

considered at the time had no mention of the now current operative local rule. Defendant State Judges Motion to Dismiss and Response to Motion to Alter Judgment only addressed the laws and factual allegations in the operative complaints and was only a facial challenge to those complaints. [Docs. 24 and 42]. Later orders which considered the issue relied on Judge Eagan's determination. [Doc. 306, p. 7]. The development of a full record and the procedural posture at summary judgment warrant reconsideration.

[8]Defendant Presiding Judge does not concede AOs were purely administrative acts, but that question is no longer relevant to the claims for prospective relief as the AOs have long since been withdrawn or superseded by adoption of LCR2 by a majority of non-parties to the suit (i.e. District and Associate Judges). (Ex. 7 – *Musseman Depo*).

[9]Neither establishing a bail schedule nor implementing generally applicable rules for the court creates substantive oversight of individual judges, which would create liability for the conduct of the proceedings or the outcomes. (Ex. 7 – *Musseman Depo*).

act of a judge…is sufficiently closely related to judging to warrant immunity." *Reynolds v. Flynn*, 2022 WL 252327 (D. Colo. Jan. 27, 2022)(unpulished)(*quoting Nashville Cnty Bail Fund v. Gentry*, 496 F. Supp 3d, 1112, 1132 (M.D. Tenn. 2020). *See also Martinez v. Winner*, 771 F.2d 424 (10th Cir 1985)(finding that the assignment of cases is a judicial function in the sense that it directly concerns the case deciding process; making decisions with respect to security for the courtroom is a judicial act; and suggesting installation of hidden cameras to investigate allegations of jury intimidation is a judicial act used to maintain order in the courtroom); *Murray v. United States*, 2021 WL 4772174 (D.N.J. Oct. 13, 2021)(unpublished) (administrative orders were judicial acts because the orders addressed and adjudicated a legal issue before the court – the effect of the pandemic on the Speedy Trial rights of detainees in the district). Courts have used *Morrison v. Lipscomb*, 877 F.2d 463 (6th Cir. 1989) for the generally accepted test. Under *Morrison*, various courts have found that some general, standing, and/or administrative orders are judicial acts and some are administrative acts. *See Reynolds, supra* (collecting cases).

A more relevant case for this purpose may be *Coleman v. Governor of Michigan*, 413 F.App'x 866 (6th Cir. 2011) also from the Sixth Circuit. The *Coleman* court found that interpretation of law is inherently a judicial act, and therefore issuing a standing or general order, which interpreted the law was a judicial act. *Id.* The Tulsa County bail schedule is an interpretation of the relevant laws by the Presiding Judge that acts as a standing order applicable to arrestees prior to an appearance on the bond docket. (Ex. 7 – *Musseman Depo* at p. 42, ln. 15 – p. 43, ln. 21; p. 53, ln. 9 – p. 54, ln. 2 p. 55, ln. 6 – p. 56, ln. 15, p. 143, ln. 2 – p. 144, ln. 6). The Oklahoma legislature created a statutory framework to be used by courts for determining which and under what conditions an arrestee should be released or detained pretrial. *See* 22 O.S. Chapter 19, Bail. The legislature did not, however provide for any specific outcome in any particular instance. The creation of a bail schedule pursuant to Oklahoma statutes necessarily

requires the interpretation of Oklahoma law as the legislature created a framework but did not dictate specific values or outcomes. [10] The bail schedule is created in consultation with Oklahoma's criminal statutes. The Presiding Judge considered many factors to determine what the bonds should be on the bail schedule for the average citizen or criminal defendant. (Ex. 7 – *Musseman Depo* at p. 42, ln. 15 – p. 43, ln. 21; p. 53, ln. 9 – p. 54, ln. 2 p. 55, ln. 6 – p. 56, ln. 15, p. 143, ln. 2 – p. 144, ln. 6); (Ex. 23 – *Wright Depo* at p. 50, ln. 5-14). *See e.g. Daves II*, 22 F.4th 522 (5th Cir *en banc* 2022)(promulgation of bail schedule by county judges was a judicial act)

In *Collins v. Daniels*, 2017 WL 11441859 (D.N.M. Dec. 2017) (unpublished), the federal court in New Mexico considered claims brought by an arrestee alleging her constitutional rights were violated after the state of New Mexico abolished the routine consideration of secured monetary bail. The District Court found that the judges implementing the risk assessment tool to use in lieu of secured money bail in accordance with the 2017 New Mexico bail reform was a judicial act, given, among other things, that the New Mexico Supreme Court was tasked under the state constitutional changes to implement rules to effect the new amendment. The Fifth Circuit also recently analyzed whether creation of a bail schedule was a judicial act. The *Daves II* Court found "when judges decide on a procedure for taking what indisputably will be judicial acts in the future, that decision is so intertwined with what will follow as to be a judicial act as well". Also, the "act of creating guidance for setting bail is inextricably linked to the subsequent setting of bail and is judicial act." *Daves II*

---

[10] That the creation of bail schedules in Oklahoma requires interpretation of the Oklahoma Bail Act under the authority given to the Presiding Judges is evidenced by different courts in the state interpreting the Act to create different schedules. For instance, the presiding judge in Oklahoma County, the Chief Judge of Canadian County have promulgated bail schedules under their own interpretations of Oklahoma law. *See Canadian and Oklahoma Counties,* attached as Exhibit 30, for the Court's convenience.

at 539-540. *See also Coleman v. Governor of Michigan*, 413 F.App'x 866 (6th Cir. 2011)(concluding that judicial immunity[11] may apply for claims arising out of the issuance of a generally applicable order where the order interprets the law).

The *Daves II* Court also concluded that, just as in the case here, creation of the bail schedule was an exercise of judicial power granted by the state constitution and state statute. As in Texas, the Oklahoma Constitution grants judges general jurisdiction. *See* OKLA. CONST. art. VII §§1, 7. The Oklahoma Constitution also confers the right to bail for most offenses, further codified by statutes. *See* OKLA. CONST. art. VII § 8; *see also* 22 O.S. Chapter 19, Bail. The bail statutes and the state constitution vests authority to set bail in judges. Given the above analysis, the implementation of LCR2, which on its face interprets law and establishes procedures to comply with legal requirements, is clearly an act performed in the Presiding Judge's judicial capacity. Injunctive relief for the claims alleged against the presiding judge is therefore barred.

## B. *Injunctive relief as requested does not meet 18 U.S.C. § 3626.*

Assuming this Court finds the acts alleged to be administrative rather than judicial, Plaintiffs and the class's request for injunctive relief still fails. The Presiding Judge cannot interpret law in his administrative capacity.

Under the PLRA, pretrial detainees are considered prisoners for the purposes of applying it terms. Section 3626(a)(1) of the Prison Litigation Reform Act provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal

---

[11] While judicial immunity normally applies to individual capacity claims, the FCIA bars injunctive relief "against a judicial officer for an act or omission taken in such officer's judicial capacity", i.e. judicial acts.

justice system caused by the relief.
(B) The court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law, unless--
(i) Federal law requires such relief to be ordered in violation of State or local law;
(ii) the relief is necessary to correct the violation of a Federal right; and
(iii) no other relief will correct the violation of the Federal right.
(C) Nothing in this section shall be construed to authorize the courts, in exercising their remedial powers, to order the construction of prisons or the raising of taxes, or to repeal or detract from otherwise applicable limitations on the remedial powers of the courts.

*See* 18 U.S.C. § 3626(a)(1).

Plaintiffs and the class's request that this Court enjoin Defendant Presiding Judge, in his administrative capacity, by requiring him to abolish the bail schedule and institute specific, prescribed procedures and legal standards or presumptions exceeds his administrative authority. *See* 20 O.S. §233 and *see generally* 20 O.S. Ch. 1 Appx 2. The relief as requested does not comply with the PLRA requirement that prospective relief be narrowly drawn, extend no further than necessary and be the least intrusive means necessary. Injunctive relief should therefore be denied and summary judgment granted in favor of the Defendant Presiding Judge.

**PROPOSITION V:** **THE RELIEF PLAINTIFFS SEEK REQUIRES ONGOING INTERFERENCE IN STATE COURT PROCEEDINGS AND SHOULD THEREFORE, BE BARRED UNDER *O'SHEA* ABSTENTION.**

Plaintiffs on behalf of themselves and the class seek injunctive and declaratory relief which would result in federal oversight of state criminal proceedings, or at the bare minimum result in the creation of an opportunity for any disgruntled criminal defendant to run to federal court any time they feel aggrieved by the outcome of a particular process in a criminal state court proceeding.[12] Plaintiffs' requested relief is

---

[12]"[P]laintiffs seek only prospective injunctive and declaratory relief, and they have shown that the relief they seek would apply to each member of the class– that secured money bail not be used to detain individuals without determinations of the ability to

beyond the scope of allowable relief in this Court. The Supreme Court has held that comity and federalism prohibit federal courts from constant supervision and/or excessive interference with state court procedures. *O'Shea v. Littleton,* 414 U.S. 488 (1974). In *O'Shea* class plaintiffs brought suit against Cairo, IL criminal practices alleging the county magistrate and judge engaged in racial and wealth discrimination by, *inter alia*, setting higher bail and giving harsher sentences to black defendants. The *O'Shea* plaintiffs sought declaratory and injunctive relief. The Supreme Court initially analyzed whether the *O'Shea* plaintiffs had standing to bring the claims. The Supreme Court then went on to consider whether the relief plaintiffs were seeking was even available from federal courts. The Supreme Court relied on *Younger v. Harris,* 407 U.S. 37 (1971) and explained that the relief requested by the plaintiffs in *O'Shea* "would contemplate interruption of state proceedings *to adjudicate assertions of noncompliance*". *O'Shea* at 500 (emphasis added). The Supreme Court further noted that the enforcement of any such injunction would necessarily require "continuous supervision by the federal court over the conduct of" the state judicial officers "in the course of future criminal trial proceedings." *O'Shea* at 501.

The Tenth Circuit has engaged in *O'Shea* abstention in cases similar to the case at bar. In *Phelps v. Hamilton*, 122 F.3d 1309 (10th Cir. 1997), the plaintiffs requested "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future criminal [proceedings]." *Phelps,* at 1317 (*quoting O'Shea* at 500). Much like the Supreme Court in *O'Shea*, the Tenth Circuit determined abstention was appropriate in *Phelps* because the requested relief would have modified future proceedings in state court. Similarly, in *Joseph A. ex rel., Corrine*

---

pay, the sufficiency of alternatives to release, and the necessity of detention, at a hearing where counsel is appointed, notice and opportunity to be heard and to confront evidence is provided, and findings are made on the record based on clear and convincing evidence. [Doc. 357 at p. 19]. The requested relief necessarily requires federal court intrusion into individual proceedings, as any review of these requested procedures would demand analysis of the minutiae of individual bail settings.

*Wolfe v. Ingram*, 275 F.3d 1253 (10th Cir. 2002), the Tenth Circuit relied on *O'Shea* and *Younger* abstention where plaintiffs requested enforcement of a consent decree with terms which specifically prohibited a state agency "from recommending a range of planning options" to the New Mexico Children's Court. The Tenth Circuit concluded that abstention was supported when "federal court oversight of state court proceedings is required. *Joseph A.*, at 1272. Plaintiffs in this case have gone to great lengths to avoid abstention by framing the relief they seek as systemic in nature and not directed at individual proceedings.[13] [Doc. 25, p. 25 - *Pls' Rsp to MTD*]. However, the relief Plaintiffs and the class seek, by its very nature, requires federal court oversight of individual state court proceedings to enforce an injunction or declaration or to confirm implementation of the same. There is no way to assess the adequacy of the individual hearings without review of individual proceedings. Such assessment would require analysis of outcomes – such that Plaintiffs actually seek outcome determinative relief. In other words, adequacy of the hearing would only be raised if the criminal defendant did not agree with or like the ruling which set bail regardless of the procedures employed.

In *O'Shea*, the Supreme Court also noted the existence of legal remedies available to class members during the course of their criminal proceedings, which were adequate to address the complaints of the *O'Shea* plaintiffs. Specifically, the Supreme Court observed that the plaintiffs in *O'Shea* had the ability to engage both state and federal procedures in order to pursue relief from the alleged wrongful conduct. Those state and federal remedies in *O'Shea* included seeking substitution of a particular judge, direct appeal, post-conviction collateral review, disciplinary proceedings against the

---

[13]The Tenth Circuit in deciding *Joseph A.* cited the Eleventh Circuit case, *Luckey v. Miller*, 976 F.2d 675 (11th Cir. 1992), in support of its abstention decision because in the *Luckey*, plaintiffs were challenging the indigent defense system in Georgia and requesting relief that would interfere with every state criminal proceedings. *Jospeh A.*, at 1271.

judicial officer, and finally federal habeas relief. *O'Shea* at 503. The Fifth Circuit recently considered *O'Shea* abstention in *Daves v. Dallas County, Tx.,* 64 F.4th 619 (5th Cir. 2023)("*Daves III*").[14]  The *Daves* litigation is strikingly similar to the case at bar. After having some success in federal court seeking an injunction directing procedures for setting misdemeanor bail in *O'Donnell v. Harris County,* 892 F.3d 147 (5th Cir. 2018), the plaintiffs in *Daves* sought prospective relief to "revise by federal decree the Texas State Court proceedings for felony and misdemeanor pretrial bail." *Daves III,* at 620. Like the Supreme Court in *O'Shea*, the Fifth Circuit found that abstention was warranted when state or Federal procedures provide adequate legal remedies for class members in the course of the criminal proceedings, including, *inter alia*, motions for reduction and habeas petition. *Daves III,* at 629. The *Daves III* court also observed that the *O'Shea* court did not engage in an "extensive factbound review of the adequacy or timeliness of the state procedures" in order to determine whether the available legal remedies were adequate enough to weigh in favor of abstention. *Daves III,* at 627.

Plaintiffs and class members in Tulsa County similarly have multiple avenues available to review bail decisions, including a request for reconsideration, writ in the district court, writ to court of criminal appeals, and direct appeal. *Clark, Bowman, Hainey (Fact #7); see also* Ex. 7 – *Musseman Depo* at p. 19, ln. 15 – p. 23, ln. 8, p. 25, ln. 14 – p. 26, ln. 11; Ex. 6 – *Guten Depo* at p. 79, ln. 3 – p. 80, ln. 9; Ex. 8 – *Sutherland Depo* at p. 165, ln. 3 – 23; and Ex. 23 – *Wright Depo* at p. 175, ln. 11 – p. 176, ln. 6. Just as the plaintiffs in *Daves*, the Plaintiffs here attempt to disregard the state and

---

[14]The *Daves* opinions are not binding in this Circuit, but nonetheless are instructive. The *Daves* court has the benefit of being further along in the litigation, having a more extensive procedural history, and a more developed record with stronger development of the Circuit law. [*O'Donnell v. Harris County,* 892 F.3d 147 (5th Cir. 2018), *Booth v. Galveston County,* 2019 WL 3714455 (S.D. Texas, Galveston Div., Aug. 7, 2019)(unpublished), etc.] The *Daves III en banc* court is the culmination of the review of these issues and provides exhaustive analysis of the issues based on the extensive history across multiple cases.

federal remedies available through the proceedings and argue that the process to determine bail between arrest and arraignment is the only relevant period, which "rests on the incorrect assumption that each moment in erroneous pretrial detention is a constitutional violation". *Daves III,* at 633. The availability of these remedies makes federal court intervention into state criminal proceedings improper. Plaintiffs and the class have the opportunity to challenge bail determinations based on myriad factors, from alleged constitutional violations to simple untimeliness in all manner of proceedings. In general chronological order of a standard criminal proceeding, a criminal defendant can accept the bond schedule recommendation, appear on the bond docket, seek reconsideration or reduction of bond by written or oral motions (at arraignment, at preliminary hearing, etc.), all within the criminal proceedings up to disposition of the charges. Criminal defendants can also seek habeas relief at the district court level or from the Court of Criminal Appeals. Finally, assuming the disposition includes a conviction, the criminal defendant can seek review through direct appeal or post conviction collateral review. Further, Plaintiffs are, in fact asking this Court to engage in "extensive factbound review of the adequacy or timeliness" of the Tulsa County procedures.[15] The principles undergirding *O'Shea,* therefore, dictate that the

---

[15] In *Caliste v. Cantrell,* 2020 WL 814860 (E.D. Louisiana, Feb. 19, 2020)(unpublished); 2020 WL 4784968 (E.D. Louisiana Aug. 18, 2020)(unpublished), a similar bail reform case, the federal oversight issue is apparent. Six months after entering a post summary judgment consent decree, the federal court was tasked with reviewing individual proceedings due to a contempt citation filed by plaintiffs' counsel, who are some of Plaintiffs' counsel in this case. The court reviewed 24 proceedings and made the following observation:

> …the nature of Judge Cantrell's position requires him to make these determinations day in and day out in an efficient manner. While it may be possible for a lawyer, with the clarity of hindsight, to parse the transcript and argue that a different finding would have been justified, Judge Cantrell does not have the same luxury of time as he undertakes the task of dealing with a busy docket." *Id.* at 20.

The court did not hold Judge Cantrell in contempt.

Court abstain from granting the relief Plaintiffs and the class seek. Therefore, summary judgment in favor of Defendants in appropriate.

## CONCLUSION

Defendant State Judges respectfully request that pursuant to Fed. R. Civ. P. 56, this Court grant summary judgment in their favor and against the Plaintiffs and class and additionally grant any and all such relief as the Court may deem appropriate.

Respectfully submitted,

/s/Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA#22422**
**ERIN M. MOORE, OBA#20787**
**DEVAN A. PEDERSON, OBA#16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:  (405) 521-3921
Facsimile:   (405) 521-4518
Email:stefanie.lawson@oag.ok.gov
        erin.moore@oag.ok.gov
        devan.pederson@oag.ok.gov
*Attorneys for Defendants State Judges*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and I further certify that on this date a true and correct copy of the foregoing was served via the ECF System to all counsel who are ECF registrants:

/s/Stefanie E. Lawson
Stefanie E. Lawson