## CASE NO. 18-cv-298-SPF-JFJ

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

**RICHARD FELTZ and ASHTON LEE DENNIS,**
**On behalf of themselves and all others similarly situated,**

**Plaintiffs,**

**v.**

**VIC REGALADO,** *et al.,*

**Defendants.**

## DEFENDANT STATE JUDGES' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

**STEFANIE E. LAWSON, OBA#22422**
**ERIN M. MOORE, OBA#20787**
**DEVAN A. PEDERSON, OBA#16576**
**Assistant Attorneys General**
**Oklahoma Attorney General's Office**
**Litigation Division**
**313 NE 21st Street**
**Oklahoma City, Oklahoma 73105**
**Telephone: (405) 521-3921   Facsimile: (405) 521-4518**

*Attorneys Defendant State Judges*

**June 26, 2023**

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ...................................................................................i

**TABLE OF AUTHORITIES** ..........................................................................iv

**DEFENDANT STATE JUDGES' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** ...........................................................1

**BRIEF IN SUPPORT** ....................................................................................1

*Overview of bail statutes and procedures in Tulsa County*...........................1

**RESPONSES TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS** .4

I.     The Parties and Witnesses......................................................................4

II.    Defendants Jail People who are Unable to Pay, without Individualized Hearings................................................................................................5

       A. Pre-Set bonds determine whether someone will be jailed ...............5

       B. Attorneys are appointed at initial arraignment, six days after arrest ................................................................................................6

III.   The Bond Docket is Established without Clear Legal Standards or Procedures to Ensure a Fair Hearing.....................................................6

       A. The Bond Docket does not allow for Plaintiffs to Defend their Rights ..............................................................................................7

       B. Bond Docket Judges do not make the Substantive Findings Requested to Justify Plaintiffs' Detention .......................................9

          1. Most Plaintiffs who appear will still be detained on unaffordable bond after their appearance.........................................................9

          2. Bond Docket Judges impose bond conditions according to unguided discretion ..................................................................10

IV.   Secured Money Bail Conditions do not Improve Appearance Rates . 11

**ARGUMENT** ...................................................................................12

**PROPOSITION I:**

Because the Excessive Bail Clause of the Eighth Amendment Provides the Explicit textual Source of Constitutional Protection from the Type of Wrong Plaintiffs Allege, their Fourteenth Amendment Due Process Claim Fails ...........................12

**PROPOSITION II:**

Even Assuming a Substantive Due Process Approach Provides the Proper Framework for Analyzing Plaintiffs' Claims, Plaintiffs' Claims Fail Under such Analysis because the Tenth Circuit Categorizes Freedom from Pretrial Detention as a Non-Fundamental Right warranting Only Rational Basis Review ....18

**PROPOSITION III:**

Even if a Freestanding Fourteenth Amendment Due Process Claim were not Precluded by *Albright, Graham, Gerstein, Becker* and their Progeny, Tulsa's Pretrial Release System Comports with Freestanding Due Process because it does not Offend a Principle of Justice so Rooted in the Traditions and Conscience of our People as to be Ranked as Fundamental ...........................................20

A. The Medina *test rather than the* Matthews *balancing test applies to Plaintiffs and the class's freestanding Fourteenth Amendment due process claim* ........................................................................21

B. *Tulsa County's pretrial release system passes the* Medina *test*...............23

(1) The bail schedule does not violate the Due Process Clause ...............23

(2) State Judge's pretrial release system comports with Due Process for those who do not obtain release pursuant to the pre-set bail schedule ..............................................................................26

## PROPOSITION IV:

PLAINTIFFS' WEALTH-BASED DETENTION CLAIM UNDER THE DUE PROCESS AND EQUAL PROTECTION CLAUSES FAILS ....................................................28

## PROPOSITION V:

PLAINTIFFS' PROPOSED ORDER SHOULD BE DENIED AS THE REQUESTED RELIEF IS BEYOND THE SCOPE OF RELIEVE AVAILABLE FROM THIS COURT ......................................................................................................33

## CONCLUSION
CONCLUSION ....................................................................................................34

## CERTIFICATE OF SERVICE
CERTIFICATE OF SERVICE ............................................................................35

# TABLE OF AUTHORITIES

## CASES

*Albright v. Oliver,*
510 U.S. 266 (1994)........................................................................12, 14, 16, 17, 20

*Bearden v. Georgia,*
461 U.S. 660 (1983)........................................................................29

*Becker v. Kroll,*
494 F.3d 904 (10th Cir. 2007) ........................................................12, 14, 20

*Bowman v. State,*
1798 OK CR 115, *cert. denied* 440 U.S. 920 (1979)......................27

*Brill v. Gurich,*
1998 OK CR 49..............................................................................26

*Clark v. Hall,*
53 P.3d 416 (OK CR 2002)............................................................27, 32

*Compare Ramos v. Louisiana,*
140 S. Ct. 1390 (2020)..................................................................15

*Cnty. of Riverside v. McLaughlin,*
500 U.S. 44 (1991)........................................................................16, 25

*Daves v. Dallas Cnty., Texas,*
22 F.4th 522 (5th Cir. 2022) ..........................................................24, 25

*Dawson v. Board of County Commissioners of Jefferson County, Colo.,*
732 F.App'x 624 (10th Cir. 2018)
*cert. denied,* 139 S. Ct. 862 (2019)...............................................25, 29, 30, 31

*Dist. Attorney's Off. for Third Jud. Dist. v. Osborne,*
557 U.S. 52 (2009).........................................................................15, 21, 22

*Douglas v. People of state of Cal.,*
372 U.S. 353 (1963).......................................................................32

*Dowling v. U.S.,*
493 U.S. 342 (1990)................................................................................15

*Doyle v. Oklahoma Bar Ass'n.,*
998 F.2d 1559 (10th Cir. 1993) ............................................................20

*Elwell v. Byers,*
699 F.3d 1208 (10th Cir. 2012) ............................................................20

*Estelle v. McGuire,*
502 U.S. 62 (1991)..................................................................................15

*Fields v. Henry Cnty., Tenn.,*
701 F.3d 180 (6th Cir. 2012) ....................................................21, 24, 25

*Gaylor v. Does,*
105 F.3d 572 (10th Cir. 1997) ........................................................19, 30

*Geddes v. Weber Cnty.,*
2022 WL 3371010 (10th Cir. 2022) ......................................................12

*Gerstein v. Pugh,*
420 U.S. 103 (1975)............................................... 12, 17, 20, 25, 27, 32

*Graham v. Connor,*
490 U.S. 386 (1989).......................................................12, 14, 15, 18, 20

*Griffin v. Illinois,*
351 U.S. 12 (1956)..................................................................................31

*Hainey v. State,*
704 P.2d 146 (OK CR 1987)..................................................................27

*Harris v. McRae,*
448 U.S. 297 (1980)................................................................................32

*Hoang v. Comfort,*
282 F.3d 1247 (10th Cir. 2002) ............................................................31

*Hubbard v. State,*
45 P.3d 96 (Okla. Crim. App. 2002).........................................................................3

*In re Smith,*
10 F.3d 723 (10th Cir. 1993) .................................................................................31

*Kincaid v. Gov't of D.C.,*
854 F.3d 721 (D.C. Cir. 2017)...............................................................................26

*Lemieux v. Kerby,*
931 F.2d 1391 (10th Cir. 1991) .............................................................................30

*Lewis v. Casey,*
518 U.S. 343 (1996).............................................................................................31

*Maehr v. United States Dep't of State,*
5 F.4th 1100 (10th Cir. 2021) ...............................................................................28

*Maher v. Roe,*
432 U.S. (1977)....................................................................................................32

*Matthews v. Eldridge,*
424 U.S. 319 (1976).................................................................................21, 22, 23

*Medina v. Allen,*
2023 WL 2743137 (D. Utah. Mar. 31 2023) .........................................................28

*Medina v. California,*
505 U.S. 473 (1992)........................................... 15, 20, 21, 22, 23, 24, 28

*Montana v. Egelhoff,*
518 U.S. 37 (1996)...............................................................................................23

*O'Shea v. Littleton,*
414 U.S. 488 (1974).............................................................................................33

*Petition of Humphrey,*
601 P.2d 103 (OK CR 1979)...............................................................................1, 3

*Pers. Adm'r of Massachusetts v. Feeney,*
442 U.S. 256 (1979)................................................................................29

*Phelps v. Hamilton,*
122 F.3d 1309 (10th Cir. 1997) ............................................................33

*Pugh v. Rainwater,*
572 F.2d 1053 (5th Cir. 1978) ...............................................................24

*Reno v. Florez,*
507 U.S. 292 (1993)..........................................................................18, 20

*Riley v. California,*
573 U.S. 373 (2014)................................................................................15

*Rivera v. Illinois,*
556 U.S. 148 (2009)................................................................................16

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
441 U.S. 1 (1973)...............................................................................31, 32

*Save Palisade FruitLands v. Todd,*
279 F.3d 1204 (10th Cir. 2002) .......................................................28, 29

*Sattazahn v. Pennsylvania,*
537 U.S. 101 (2003)................................................................................12

*Schall v. Martin,*
467 U.S. 253 (1984)..........................................................................19, 30

*Sosa v. Martin Cnty., Fla.,*
57 F.4th 1297 (11th Cir. 2023) ..............................................................15

*Spencer v. State of Texas,*
385 U.S. 554 (1967)................................................................................23

*Stack v. Boyle,*
342 U.S. 1 (1951)........................................................ 14, 15, 19, 24, 25

*Tate v. Short,*
401 U.S. 395 (1971) ........................................................................29, 30

*Timbs v. Indiana,*
139 S. Ct. 682 (2019) ..........................................................................24

*U.S. v. Castillo,*
140 F.3d 874 (10th Cir. 1998) ............................................................25

*U.S. v. Deters,*
143 F.3d 577 (10th Cir. 1998) ......................................................19, 30

*U.S. v. Salerno,*
481 U.S. 739 (1987)................................................................18, 19, 31

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
429 U.S. 252 (1977)..............................................................................29

*Walker v. City of Calhoun, Ga.,*
910 F.3d 1245 (11th Cir. 2018) ....................................................24, 25

*Washington v. Davis,*
426 U.S. 229 (1976)..............................................................................32

*Washington v. Glucksberg,*
521 U.S. 702 (1997)..............................................................................13

*Weber v. Phu chan Hoang,*
538 U.S. 1010 (2002)............................................................................31

*Williams v. Illinois,*
399 U.S. 235 (1970)..............................................................................29

*Williams v. Jones,*
583 F.3d 1254 (10th Cir. 2009) ....................................................15, 22

# STATUTES

22 O.S. § 1101.................................................................2, 25

22 O.S. § 1105...................................................................2

22 O.S. § 1105.2...............................................................3, 5

22 O.S. § 1105.2(c)............................................................2

22 O.S. § 1105.3................................................................2

22 O.S. § 1108.1................................................................2

59 O.S. § 33A...................................................................2

59 O.S. § 1334..................................................................2

# RULES

Fed. R. Civ. P. 56..............................................................1

# OTHER

Okla. Const. art. II, § 8.....................................................1, 3

*A Workable Substantive Due Process*
95, Notre Dame L. Rev. 1961, 1983 (2020) ............................13

*Measuring Political Power: Suspect Class Determinations and the Poor,*
104 Cal. L. Rev. 323 (2016) ...............................................31

*William F. Duker, The Right to Bail: A Historical Inquiry,*
42 Alb. L. Rev. 33 (1977) ..................................................24

## DEFENDANT STATE JUDGES'
## RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

Defendants District Judge Douglas Drummond, as Presiding Judge, and Defendant Special Judges Kasey Baldwin, Tammy Bruce, Stephen Clark, Julie Doss, Theresa Dreiling, Mary Ann Godsby, Rich Hathcoat, Travis Horton, Ann Keele, Deborah Ludi Leitch, Anthony J. Miller, Kevin C. Morrison, Kristen Pace, Wilma Palmer, Loretta Radford, April Seibert, Rodney B. Sparkman, and Tanya Wilson,[1] all in their official capacities (collectively "State Judges"), by and through attorneys of record, Stefanie Lawson, Devan Pederson and Erin Moore, Assistant Attorneys General, submit this Response to Plaintiffs' Motion for Summary Judgment and Brief in Support [Doc. 368 and 369] and respectfully request that under Fed. R. Civ. P. 56, this Court deny summary judgment to Plaintiffs.

### BRIEF IN SUPPORT

Plaintiffs have misconstrued Oklahoma's statutory scheme and court rules regarding the imposition of bail for criminal defendants. Plaintiffs' Motion fails to establish that they are entitled to the relief requested or to judgment as a matter of law.

### *Overview of bail statutes and procedures in Tulsa County*

Oklahoma statutes and court rules authorize the process and procedures for bail as a mechanism to balance the liberty interest of an accused with the government and community's interest in both an accused appearance at trial and community security. OKLA. CONST. art. II, § 8; 22 O.S. Chapter 19, generally; *Petition of Humphrey*, 601 P.2d 103 (OK CR 1979).

---

[1] Defendants have been updated to reflect changes in Special Judges.

The Oklahoma Legislature has codified a bail scheme at 22 O.S. Chapter 19 Bail. It is embodied in the Bail Act at 22 O.S. § 1101 to § 1105, the Pretrial Release Act at 22 O.S. § 1105.1 to § 1114.5A, and the State and Municipal Traffic, Water Safety, and Wildlife Bail Bond Procedure Act at 22 O.S. § 1115 to § 1115.5. There are also limited directives in Title 59 Chapter 33 and 33A, which regulate and license bail bondsmen. The Bail Act enumerates offenses for which bail may be denied and designates an evidentiary standard for denial of bail for those specific offenses (22 O.S. § 1101)[2] and further establishes out bail setting and release requirements for certain domestic offenses (22 O.S. § 1105). The Pretrial Release Act expands the statutory framework for determining the release of arrestees. The Legislature delegated the authority to each presiding judge to establish a bail schedule for felony and misdemeanor offenses subject to certain statutory exceptions and exclusions. 22 O.S. § 1105.2(c) requires that pretrial bail be set in a numerical dollar amount and provides that failures to appear may result in the authorizing judge rescinding bail and entering a judgment in a dollar amount of pretrial bail if a private bail was not given at the time of release. The Presiding Judge otherwise has discretion, with consultation with the courts and district attorney of the judicial district, to interpret the statutes to set the specific amounts on the bond schedule. 22 O.S. § 1105.2 also gives judges discretion to use pretrial services where such program exists pursuant to 22 O.S. § 1105.3. Recognizance bonds are allowed by statute following an appearance before a judge. *See* 59 O.S. § 1334 ("person in custody before the court" or authorized by judge); 22 O.S. § 1108.1 ("final order of forfeiture by authorizing and issuing judge").

---

[2] 22 O.S. § 1101 has been amended. The amended statute was effective on November 1, 2022. The current statute and the superseded version are attached for the Court's convenience at Exhibit 1.

While the Presiding Judge has the statutory authority to establish a bail schedule to be published and reviewed by the courts and the district attorney of the judicial district (22 O.S. § 1105.2), the Presiding Judge does not enforce the use of the schedule as bonds are set individually by the judge hearing any particular case. (*LCR1*, attached as Exhibit 2). The bail schedule is in place to allow for the efficient pre-hearing release of those individuals that choose to utilize it, if available. It acts as a standing order of release for those that meet the requirements and choose to abide by its terms. Once a criminal defendant appears before a judge acting as a magistrate for the purpose of setting conditions of release, the bail schedule is not binding. (*LCR2*, attached as Exhibit 3). The review authority for a bond setting, even pursuant to the bail schedule, exists through a motion to modify or reduce bond before a magistrate and/or the district judge hearing the case, depending on whether felony or misdemeanor charges have been filed, and then through a writ of habeas corpus.

Finally, under common law:

> personal financial resources are only one factor determining whether an accused is confined prior to trial. The gravity of the offense, the accused's contacts in the community, his previous record, and his ability to receive assistance from friends and family are equally important factors, and are not related to indigency. In some cases, bail may be denied regardless of the defendant's financial status.

*Hubbard v. State*, 45 P.3d 96, 101 (Okla. Crim. App. 2002) (citing OKLA. CONST. art. II, § 8; *Petition of Humphrey*, 1979 OK CR 97, ¶ 14, 601 P.2d 103, 108).

Of particular relevance to Plaintiffs and class members' claims against the State Judges are Oklahoma's statutory scheme and the rules promulgated by the Oklahoma Supreme Court, Court of Criminal Appeals and District Courts, which contemplate and allow for multiple methods by which a criminal defendant's conditions of release may be revisited or reviewed. Plaintiffs, however, seek from

this Court an order mandating an outcome determinative process, removal of judicial discretion, and federal oversight into state criminal procedure.

**RESPONSES TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS**

**I.  The Parties and Witnesses**

1.    Admitted

2.    Admitted, however, Plaintiffs omit that Mr. Dennis had the benefit of a public defender at his bond docket appearance as well. *Dennis Depo* [Doc. 369-8 at p. 18:22-25 and p. 19:10-16].

3.    Admitted

4.    Admitted

5.    Admitted in part and Disputed in part. – Plaintiffs' statement overstates the authority of a Presiding Judge with respect to how and what decisions Special Judges make and conflates logistics with control over judicial decisions and deliberations. Special Judges maintain independent judicial authority and discretion for decision making. *See Musseman Depo* [Doc. 369-1 at p. 111:16-25, p. 131:10-133:13].

6.    Admitted.

7.    Admitted

8.    Admitted in part and disputed in part, as Judge Musseman revamped the dockets such that there was a dedicated docket for bond considerations. However, Defendant State Judges object as to relevance and materiality. (Ex. 3). LCR2 established the current system and superseded the system established by Administrative Order. *See Administrative Orders* [Doc. 369-29]; *see also* (Ex. 3).

9.    Admitted

10.    Admitted

11.     Disputed – Judge Guten was assigned to the week day bond docket. "[P]rimarily oversaw" should not be inferred as having some supervisory authority over how or what decisions other judges made on the docket. Rather, Judge Guten handled the most bond dockets. *See Guten Depo* [Doc. 369-4 at p. 12:21 - 15:2].

12.     Admitted

13.     Admitted, however Ms. Wright's testimony is that she "sets up" the docket (*See Wright Depo* [Doc. 369-3 at p. 33:21]) and she schedules detainees on the appropriate docket. *Id.* at p. 176:25 – 177:10.

14.     Admitted

15.     Admitted

## II. Defendants Jail People who are Unable to Pay, without Individualized Hearings.

### A.     Pre-Set bonds determine whether someone will be jailed.

16.     Admitted, but incomplete. The bond schedule is used to determine the initial bond or the pre-hearing bond in certain cases, before the bond docket hearing can be conducted. *Guten Affidavit* [Doc. 369-25 at ¶¶4-5]; *see also* [Doc. 369-1 at p. 49:3-11].

17.     Admitted.

18.     Disputed – Zero bond on the bond schedule indicates that the detainee must see a judge to determine the proper release conditions. It is not a hold without bond for the duration of the case. [Doc. 369-3 at p. 55:20-24]. "They have to wait to see a judge in order for the judge to set bond." 22 O.S. §1105.2 prohibits certain offenses from being included on the bail schedule. (attached as amended on November 1, 2021).

19.     Admitted – until they see the judge to have bail determined.

20.     Disputed – The bond schedule is used until a detainee is seen by a judge. The bail schedule applies to everyone booked into the jail. The schedule does not

apply once a detainee appears on the bond docket. The relevant statute does not allow for non-monetary bond schedule based on Judge Musseman's interpretation. *See e.g.* [Doc. 369-1 at pp. 143:25-144:3].

21.   Disputed in part. The sheriff will release detainees who can meet the preset conditions of release immediately after booking, if any preset conditions are available.

**B. Attorneys are appointed at initial arraignment, six days after arrest**

22.   This statement is an accurate summary of the cited testimony, but Defendant Judges object as to the relevance and materiality of this statement.

23.   This statement is an accurate summary of the cited testimony, but Defendant Judges object as to the relevance and materiality of this statement.

24.   This statement is an accurate summary of the cited testimony, but Defendant State Judges object as to the relevance and materiality of this statement. The fact that formal appointments for the duration of the case do not occur until the arraignment is immaterial to these claims, as the Sixth Amendment claims were dismissed. *See* [Doc. 48].

25.   This statement is an accurate summary of the cited testimony, but Defendant Judges object as to the materiality of this statement. Post arraignment procedures are not part of the claims, and the Sixth Amendment claim has been dismissed. *Id.*

**III. The Bond Docket is Established without Clear Legal Standards or Procedures to Ensure a Fair Hearing**

26.   Admitted

27.   Disputed – the testimony indicates that Ms. Wright met with Judge Hiddle to establish a "format" for the bond docket. [Doc. 369-3, p. 140:3-8]. Ms.

Wright and Judge Hiddle did not have any input into establishing any part of the bond schedule.

28.    Disputed – LCR2 speaks for itself and states "For those individuals who do not obtain release pursuant to the pre-set bail schedule as outlined above, within 48 hours from their arrest, they shall then be brought before the Court for a "first appearance"… *See* [Doc. 369-25 at ¶¶ 4-5].

29.    Admitted

30.    Admitted

**A.  The Bond Docket does not allow for Plaintiffs to defend their rights**

31.    Admitted

32.    Admitted

33.    Admitted, the appointment of the public defender at bond docket is limited to the bond docket only until a formal appointment may be made at arraignment, after formal charges have been filed.

34.    Admitted, though Plaintiffs' phrasing is imprecise. Detainees are not formally represented by the public defender's office between bond docket and arraignment. A detainee may be represented by private counsel between bond docket and arraignment, however.

35.    Admitted in part and disputed in part, as Public Defenders have chosen at times to appear from the jail with their client(s).

36.    This statement is an accurate summary of the cited evidence. Defendant State Judges object as to relevance and materiality as no Sixth Amendment claims exist. [Doc. 369-4 at pp. 35:23-36:5; 42:9-19; 45:20 – 46:6].

37.    This statement is an accurate summary of the cited evidence. Defendant State Judges object as to relevance and materiality. Plaintiffs' Sixth Amendment claim has been dismissed. The quality of the public defender's representation is not

a material issue. Public defenders have the ability to appear from jail if they choose, as the COVID restrictions at the jail have now been lifted. [Doc. 365-22].

38.    This statement is an accurate summary of the cited evidence. Defendant State Judges object to the relevance and materiality. This statement is not material to the analysis of whether any Fourteenth Amendment rights have been violated. There is no evidence or legal basis for the materiality.

39.    This statement is an accurate summary of the cited evidence. Defendant State Judges object to the relevance and materiality. This statement is not material to the analysis of whether any Fourteenth Amendment rights have been violated. There is no evidence or legal basis for the materiality.

40.    This statement is an accurate summary of the cited evidence. Defendant State Judges object to the relevance and materiality. This statement is not material to the analysis of whether any Fourteenth Amendment rights have been violated. There is no evidence or legal basis for the materiality.

41.    This statement is an accurate summary of the cited evidence. Defendant State Judges object to the relevance and materiality. This statement is not material to the analysis of whether any Fourteenth Amendment rights have been violated. There is no evidence or legal basis for the materiality.

42.    This statement is an accurate summary of the cited evidence. Defendant State Judges object to the relevance and materiality. This statement is not material to the analysis of whether any Fourteenth Amendment rights have been violated. There is no evidence or legal basis for materiality of a legal conclusion presented as fact.

43.    This statement is an accurate summary of the cited evidence. Defendant State Judges object as to relevance and materiality. Bond docket appearances are counseled and no Sixth Amendment claims remain. Quality of the representation is not at issue.

44.     While this statement is an accurate summary of the cited evidence, Plaintiffs are attempting to make an improper inference in their favor with this statement of fact. Defendant State Judges object as to relevance and materiality. Detainees have counsel at the bond docket appearances. Judicial instruction not to discuss the facts of their case as a district attorney is present goes to the detainee's right against self-incrimination [Doc. 369-4, pp. 42:20 – 43:3].

45.     This statement is an accurate summary of the cited evidence. Defendant State Judges object as to relevance and materiality. This statement is not material to the analysis of whether any Fourteenth Amendment rights have been violated.

46.     This statement is an accurate summary of the cited evidence. Defendant State Judges object as to relevance and materiality. This statement is not material to the analysis of whether any Fourteenth Amendment rights have been violated.

**B. Bond Docket Judges do not make the Substantive Findings Required to Justify Plaintiffs' Detention**

**1. Most Plaintiffs who appear will still be detained on unaffordable bond after their appearance**

47.     Admitted.

48.     Admitted

49.     Admitted.

50.     Disputed – This statement mischaracterizes the testimony. Mr. Southerland testified that "…it's not uncommon for the judge to allow the bond to remain. I would say that more often than not the judge will provide some bond relief. So more than 50 percent of the time I think the judge will deviate from the bond schedule and go down..." also "less common for weekend judges – if DA requests remain" [Doc. 369-5 at pp. 109:22-110:8].

51.     Disputed – This statement mischaracterizes Mr. Southerland's testimony. He estimated about one third of detainees have bond set at more than they express they can afford. *Id.* at p. 113:13-17.

52.     This statement is an accurate summary of the evidence cited. Defendant State Judges object as to relevance and materiality. These reports predate the bond docket under LCR2.

53.     This statement is an accurate summary of the evidence cited. Defendant State Judges object to relevance and materiality. These reports were compiled prior to the implementation of LCR2. This statement is not material to the analysis of whether any Fourteenth Amendment rights have been violated.

54.     *Id*.

### 2. Bond Docket Judges impose bond conditions according to unguided discretion

55.     LCR2 speaks for itself. Plaintiffs' commentary on what the rule "emphasizes" is immaterial.

56.     LCR2 speaks for itself. Plaintiffs' commentary on what the rule "allows" is immaterial. Other materials are available for a judge's bond consideration, including case law and statutes. *See Bench Card,* attached as Exhibit 4.

57.     Admitted

58.     LCR2 speaks for itself. Plaintiffs' commentary on what the rule "addresses" is immaterial.

59.     LCR2 speaks for itself. Plaintiffs' commentary on the legal effect of the rule is immaterial.

60.     LCR2 speaks for itself. Plaintiffs' commentary is a conclusion of law being asserted as fact. The Court will decide what the Constitution requires.

61.    Admitted. The many factors are included in a Bench Card, attached as Exhibit 4.

62.    This statement is an accurate summary of the evidence cited. Defendant State Judges object as to relevance and materiality. This statement is not material to the analysis of whether any Fourteenth Amendment rights have been violated.

63.    This statement is an accurate summary of the evidence cited. Defendant State Judges object as to relevance and materiality. This statement is not material to the analysis of whether any Fourteenth Amendment rights have been violated.

64.    Admitted.

65.    Admitted.

66.    Admitted

67.    This statement is an accurate summary of the evidence cited. Defendant State Judges object as to relevance and materiality. This statement is not material to the analysis of whether any Fourteenth Amendment rights have been violated. Without waiving objection, see examples of minutes. *See Court Minutes,* attached as Exhibit 5 at pp. 3, 5, 8-9, 11-12, 15-17, 23, 39, 47, 9, 53, 58-59, 61-63.

**IV.    Secured Money Bail Conditions do not Improve Appearance Rates**

68.    Admitted

69.    This statement is an accurate summary of the evidence cited. Dr. Morris's testimony as to whether a causal relationship can be determined is not material to the issues in this case. Rational basis review does not require direct causation.

70.    Admitted.

71.    This statement is an accurate summary of the cited evidence. Defendant Judges object as to relevance, as this evidence is not material to the legal issues to be decided.

72.    Admitted.

73.    Admitted.

74.    Admitted.

## ARGUMENT

I. **BECAUSE THE EXCESSIVE BAIL CLAUSE OF THE EIGHTH AMENDMENT PROVIDES THE EXPLICIT TEXTUAL SOURCE OF CONSTITUTIONAL PROTECTION FROM THE TYPE OF WRONG PLAINTIFFS ALLEGE, THEIR FOURTEENTH AMENDMENT DUE PROCESS CLAIM FAILS.**

When an amendment in the Bill of Rights provides an explicit textual source of constitutional protection from the type of wrong allegedly suffered, it is that Amendment that governs the right rather than the Due Process Clause. *Graham v. Connor*, 490 U.S. 386, 395 (1989). For this reason, if a plaintiff attempts to bring a Fourteenth Amendment *due process* claim for infringement of a right governed by a provision of the Bill of Rights, the Fourteenth Amendment due process claim is properly dismissed. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Geddes v. Weber Cnty.*, No. 20-4083, 2022 WL 3371010 (10th Cir. 2022) (unpublished); *cf. Sattazahn v. Pennsylvania*, 537 U.S. 101, 116 (2003) ("We decline petitioner's invitation to hold that the Due Process Clause provides greater double-jeopardy protection than does the Double Jeopardy Clause."); *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases, including the detention of suspects pending trial.").

In such cases, *dismissal* is appropriate not only where the alleged due process violation is substantive, but also where it is procedural. *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007) ("we find *Albright*'s reasoning regarding substantive due

process equally persuasive with regard to the Fourteenth Amendment's procedural component.").[3]

In defining the right at issue, the Supreme Court requires a "careful description" of the right asserted. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). In describing the right at the correct level of specificity, courts must "carefully formulat[e] the interest at stake." *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997). For example, in a substantive due process "right to die" case, the court must not formulate the issue at a high level of generality such as "whether there is a liberty interest in determining the time and manner of one's death." *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997). Rather, in order to properly analyze the alleged right, the right must be defined with a high degree of specificity. Thus, there is a fundamental right to "refuse lifesaving hydration and nutrition." *Washington v. Glucksberg*, 521 U.S. 702, 721-723 (1997). But there is no fundamental right "to commit suicide which itself includes a right to assistance in doing so." *Washington v. Glucksberg*, 521 U.S. 702, 723 (1997).

With *Glucksberg's* "careful description" issue framing admonition in mind, the correct formulation of the right at issue here is: the right to freedom from "[pretrial] detention resulting from unaffordable bail." [Doc. 369 at 21]; *see also, e.g.,* [Doc. 259 at ¶5 ("unaffordable money bail"), ¶42 ("unaffordable money bond"), ¶88 ("unaffordable money bail"), ¶125 ("unaffordable secured financial condition of release")].

---

[3]The distinction between "procedural due process" and "substantive due process" is one used in civil cases. In criminal cases, there is only "due process." As Judge Tymkovich has explained: "we reserve the label 'procedural due process' only for civil cases, and refer to due process doctrine in the criminal context simply as 'due process.'" Hon. Timothy M. Tymkovich, Joshua Dos Santos, Joshua J. Craddock, *A Workable Substantive Due Process*, 95 Notre Dame L. Rev. 1961, 1983 (2020).

With the issue properly framed, it is clear that the Bill of Rights—*i.e.*, the Bail Clause of the Eight Amendment—*does* supply the explicit textual source governing the analysis of the type of conduct alleged. The Bail Clause provides that "*Excessive bail* shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." (Emphasis added). Here, Plaintiffs claim that they are detained because the bail amount set either by the bail schedule or at the first appearance is "unaffordable," *i.e.*, excessive. Thus, under the explicit-textual-source rule of *Graham* and *Albright*, their claim arises under the Eighth Amendment's Excessive Bail Clause, not the Due Process Clause. But since they have made no Eighth Amendment claim in this lawsuit, their Due Process claim must be *dismissed* under the rule of *Albright v. Oliver*, 510 U.S. 266 (1994) and *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007).

Even if Plaintiffs had attempted to make a claim under the Bail Clause, their claim would have failed. In construing the Eighth Amendment in *Stack v. Boyle*, 342 U.S. 1 (1951), the Supreme Court held that the district court erred in denying petitioners' motion to reduce bail where bail had been "fixed in a sum much higher than that usually imposed for offenses with like penalties and yet there ha[d] been no factual showing to justify such action." *Stack v. Boyle*, 342 U.S. 1, 5 (1951) (emphasis added). The Court went on to hold that, "If bail in an amount greater than that usually fixed for serious charges of crimes is required . . . that is a matter to which evidence should be directed in a hearing so that the constitutional rights of each petitioner may be preserved. *Stack v. Boyle*, 342 U.S. 1, 6 (1951) (emphasis added). The Court further found that, "[t]he proper procedure for challenging bail as unlawfully fixed is by motion for reduction of bail . . . ." *Stack v. Boyle*, 342 U.S. 1, 6, 72 S. Ct. 1, 4 (1951). The Court nowhere intimated that bail must be "affordable," much less that it be affordable at the initial appearance before the court has had an opportunity to decide a "motion for reduction of bail."

~ 14 ~

Here, Plaintiffs do not claim their bail was set at an amount "higher than that usually imposed for offenses with like penalties" or "greater than that usually fixed"- in fact, initially the same for offenses on schedule. *Stack v. Boyle*, 342 U.S. 1, 5-6 (1951). Nor do they allege the filing of, much less the denial of a motion for reduction of bail. Thus, under *Stack's* Eighth Amendment analysis, any Eighth Amendment claim Plaintiffs could have made would fail. *A fortiori*, their due process claim must also fail. *See Sosa v. Martin Cnty., Fla.*, 57 F.4th 1297, 1308 (11th Cir. 2023) (Newsom, Pryor & Lagoa, CJ, concurring) ("If a claim can't proceed in its natural textual and doctrinal home, then it can't proceed") (cleaned up); *Williams v. Jones*, 583 F.3d 1254, 1259 (10th Cir. 2009) ("because the Bill of Rights speaks in explicit terms to many aspects of criminal procedure, the Supreme Court has set a high bar for us to pass before we may conscript the Due Process Clause into service on behalf of new and unenumerated constitutional rights.") (Gorsuch, Tacha, O'Brien, Tymkovich, C.J., dissenting to denial of rehearing *en banc*).

This approach is in accord with modern (post-*Graham*) criminal-procedure jurisprudence, which construes the Bill of Rights *expansively* and the Due Process Clause *narrowly*. *Compare Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) (expansively construing Sixth Amendment right to jury trial to require a *unanimous* jury for conviction) and *Riley v. California*, 573 U.S. 373 (2014) (expansively construing Fourth Amendment to require search warrant for search of cell phone), with *Medina v. California*, 505 U.S. 437, 443 (1992) (holding that Due Process Clause has "limited operation" beyond specific guarantees enumerated in the Bill of Rights and is construed "narrowly"); *Estelle v. McGuire*, 502 U.S. 62, 72–73 (1991) (same); *Dowling v. United States*, 493 U.S. 342, 352 (1990) (same); *see also*, *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009) (Due Process Clause does not require disclosure of exculpatory evidence in post-conviction context);

*Rivera v. Illinois*, 556 U.S. 148, 158 (2009) (Due Process Clause not implicated by erroneous denial of peremptory challenge). For example, if there is an unreasonable delay in the time it takes to obtain a neutral probable cause determination justifying pretrial detention, the procedural right infringed is a Fourth Amendment right rather than a due process right. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

Plaintiffs in the instant case are no more able to avoid the Eighth Amendment than the plaintiff in *Albright* was able to avoid the Fourth. In both *Albright* and the instant case, the plaintiffs attempted to bring their claims under the Due Process Clause rather than under the Bill of Rights provision providing the explicit textual source of constitutional protection relating to their right.

In *Albright*, the plaintiff attempted to frame his claim as the deprivation of his liberty interest in freedom from initiation of a baseless prosecution. In doing so, he attempted to disclaim any reliance on a Fourth Amendment seizure. 510 U.S. at 289. But, as Justice Souter noted, there was no deprivation of liberty from the mere "initiation of prosecution." The only deprivation of liberty was caused "from the ensuing assertion of custody," *i.e.*, the Fourth Amendment seizure. 510 U.S. at 289 (Souter, J. concurring in the judgment). The same type of analysis applies here.

Here, Plaintiffs attempt to frame their claims as the deprivation of their liberty interest in freedom from "detention resulting from unaffordable bail." [Doc. 396 at 21]; *see also, e.g.,* [Doc. 259 at ¶5 ("unaffordable money bail"), ¶42 ("unaffordable money bond"), ¶88 ("unaffordable money bail"), ¶125 ("unaffordable secured financial condition of release")]. Even assuming Plaintiffs backpedal from this framing and insist that they are *not* claiming that their bail is excessive/unaffordable, but only that the method and/or procedures by which their bail amounts are determined does not comport with due process, such a framing would still fail. Procedure is not an end in itself. Just as the Plaintiff in *Albright* could show no injury or deprivation of liberty from the initiation of the malicious prosecution against him

~ 16 ~

separate from the seizure that followed the initiation of the malicious prosecution, Plaintiffs in the instant case can show no injury or deprivation of liberty caused by the methods or procedures by which bail amounts are determined unless they are unable to pay the actual amount of bail imposed upon them, *i.e.*, unaffordable bail. Just as the plaintiff in *Albright* could show no substantial injury caused by the initiation of the malicious prosecution against him separate from the seizure that ensued, Plaintiffs can point to no substantial injury that is attributable to the method by which their bail amounts were determined, but not to the actual bail amount. Plaintiffs are only injured because they are unable to pay the actual bail amount. Or, framed more broadly, they are only injured because they cannot meet the conditions for pretrial release. The method by which conditions for pretrial release are determined never causes an injury under Plaintiffs' allegations unless it leads to release conditions that cannot be met, *i.e.*, "unaffordable bail." But altering the method by which conditions for pretrial release are determined in the ways Plaintiffs seek (advance written notice of factors to be considered, representation by counsel, written findings, etc.) would not necessarily prevent Plaintiff's loss of liberty. This is true whether the method for setting release conditions is a preset bail schedule or an initial appearance. Thus, Plaintiffs' injury is not caused by the method of determining the conditions of release, but by the conditions of release themselves. Since conditions of release are governed by the Eighth Amendment, it is the Eighth Amendment that governs the analysis of Plaintiff's claims, not the Fourteenth.

Plaintiffs' issue-framing approach to avoiding Eighth Amendment also suffers a more fundamental flaw. In the criminal justice arena, when a Bill of Rights provision supplies a right, it also governs the process protecting that right. For example, the Fourth Amendment provides that a seizure may not be "unreasonable." The procedures to protect that right are found in the Fourth Amendment, not the Fourteenth. *Gerstein v. Pugh*, 420 U.S. 103 (1975). Since the Fourth Amendment is

the source of the procedures necessary to ensure seizures are not "unreasonable," any assertion that the Eighth Amendment is the not the source of the procedures necessary to ensure conditions of pretrial release are not "excessive," is unfounded and unpersuasive.

Finally, Plaintiffs may argue that they can pursue their due process claim separately from the Eighth Amendment because *United States v. Salerno*, 481 U.S. 739 (1987) separately analyzed the constitutionality of the Bail Reform Act under both the Due Process Clause and the Eighth Amendment. But, *Salerno* can hardly be read as holding *both* provisions are viable since (under the facts presented) neither were. Furthermore, Salerno was detained not because his bail was "excessive," but because he had not been granted bail at all. Even if *Salerno* could be interpreted as holding that a plaintiff may opt between an Eighth Amendment challenge to excessive bail and a due process challenge to excessive bail, *Salerno* was decided prior to the Supreme Court's decision in *Graham*, which held that when the Bill of Rights addresses the type of constitutional injury suffered, there is no separate due process claim. Thus, *Graham* is binding on this Court as the Supreme Court's most recent explication of the law governing the issue.

## II. Even Assuming a Substantive Due Process Approach Provides the Proper Framework for Analyzing Plaintiffs' Claims, Plaintiffs' Claims Fail Under Such Analysis because the Tenth Circuit Categorizes Freedom from Pretrial Detention as a Non-Fundamental Right Warranting only Rational Basis Review.

In their Motion for Summary Judgment, Plaintiffs argue that *Reno v. Flores*, 507 U.S. 292 (1993) and *United States v. Salerno*, 481 U.S. 739 (1987) establish freedom from pretrial detention as a "fundamental liberty interest," the infringement of which requires narrow tailoring and a compelling state interest. [Doc. 369 at 18]. *Reno*, however, merely holds that freedom from juvenile detention pending a deportation hearing is *not* a fundamental right. 507 U.S. at 302-303. As for *Salerno*,

the Tenth Circuit has flatly rejected the notion that *Salerno* established freedom from pretrial detention as a fundamental right. *United States v. Deters*, 143 F.3d 577, 583 (10th Cir. 1998) (holding *Salerno* "did not appear to apply the narrowly-tailored-to-serve-a-compelling government-interest test that traditionally governs cases involving fundamental rights."); *Dawson v. Bd. of Cnty. Commissioners of Jefferson Cnty., Colorado*, 732 F. App'x 624, 631 (10th Cir. 2018) (holding that *Salerno* examined the right to be free from pretrial detention under rational basis review).

Based on the Supreme Court's evaluation of pretrial detention schemes in *U.S. v. Salerno*, 481 U.S. 739 (1987) and *Schall v. Martin*, 467 U.S. 253 (1984), the Tenth Circuit applies the *rational basis test* when testing the constitutionality of restrictions on the due process liberty interest in freedom from pretrial detention. *Gaylor v. Does*, 105 F.3d 572 (10th Cir. 1997) (holding that restrictions on freedom from pretrial detention pass constitutional muster if they are "reasonably related to a legitimate governmental objective").

Thus, Plaintiffs' substantive due process claims fail because there are rational reasons for using the bail schedule and for holding quick initial appearances without requiring the type of evidence and testimony one would expect at a post-initial-appearance bail hearing. Those reasons include: efficiency, expediency, conservation of judicial resources, assurance of appearance at court proceedings, protection of the public from potentially dangerous arrestees whom the judge has not had adequate time to evaluate for appropriate conditions of release, etc. In light of *Stack's* endorsement of bail rulings *after* motions for bail reduction have been denied, the State Judge's pre-bail-reduction-motion initial appearance process is certainly not "irrational" under a substantive due process rational basis test.

In any event—whether categorized as substantive or procedural—no due process challenge to pretrial detention procedures will prevail unless the challenged procedure violates some principal of justice "so rooted in the traditions and

~ 19 ~

conscience of our people as to be ranked as fundamental." *See Reno v. Flores*, 507 U.S. 292, 303 (1993) (substantive due process challenge to civil detention pending deportation); *Medina v. California*, 505 U.S. 437 (1992) (due process challenge to state's criminal procedure). Under this standard, as more fully discussed in the following section of this brief, Tulsa's bail procedures certainly pass constitutional muster.

### III: EVEN IF A FREESTANDING FOURTEENTH AMENDMENT DUE PROCESS CLAIM WERE NOT PRECLUDED BY *ALBRIGHT, GRAHAM, GERSTEIN, BECKER*, AND THEIR PROGENY, TULSA'S PRETRIAL RELEASE SYSTEM COMPORTS WITH FREESTANDING DUE PROCESS BECAUSE IT DOES NOT OFFEND A PRINCIPLE OF JUSTICE SO ROOTED IN THE TRADITIONS AND CONSCIENCE OF OUR PEOPLE AS TO BE RANKED AS FUNDAMENTAL.

Assuming *arguendo* that Plaintiffs and the class's free-standing Fourteenth Amendment due process theory of relief were not precluded by *Albright v. Oliver*, 510 U.S. 266 (1994); *Graham v. Connor*, 490 U.S. 386 (1989); *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007); and their progeny, Tulsa's pretrial release system passes the Supreme Court's test for freestanding due process claims.

Preliminarily, it should be noted that Plaintiffs and the class make no attempt to argue that they have a federal due process right arising from Oklahoma's pretrial release procedures. Nor could they since Oklahoma's pretrial release procedures do not guarantee a certain outcome. "Process is not an end in itself." *Elwell v. Byers*, 699 F.3d 1208, 1214 (10th Cir. 2012) (cleaned up). "[W]hen state law creates a mandatory procedure but does not guarantee a particular substantive outcome, it does not confer a protected liberty interest." *Id.* (citations omitted). The mere "expectation of receiving a state afforded process does not itself create an independent liberty interest protected by the Due Process Clause." *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1570 (10th Cir. 1993). This rule applies to

processes that are traditionally within the realm of criminal procedure. *See Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 186 (6th Cir. 2012) (no "liberty interest" in right to be examined in a bail hearing); *Medina v. Allen*, No. 4:21-CV-00102-DN-PK, 2023 WL 2743137, at \*6 (D. Utah Mar. 31, 2023) (similar).

Second, as more fully explained below, a state's criminal justice system will run afoul of the Due Process Clause only if it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Medina v. California*, 505 U.S. 437, 445 (1992), and "transgresses [a] recognized principle of fundamental fairness." *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009).

**A.    The *Medina* test rather than the *Mathews* balancing test applies to Plaintiffs and the class's freestanding Fourteenth Amendment due process claim.**

Due process claims are usually measured by one of two tests. In evaluating a state's *civil* administrative procedures, Due Process compliance is measured by the multi-factor balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). In evaluating a state's *criminal* procedures for Due Process compliance, courts use the more deferential test articulated in *Medina v. California*, 505 U.S. 437 (1992).

The *Mathews* test was "conceived to address due process claims arising in the context of administrative law." *Medina v. California*, 505 U.S. 437, 444 (1992). Under the *Mathews* test, courts are required to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Under the more deferential *Medina* due process test, a state's procedure for carrying out its criminal laws is subject to proscription only if it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." 505 U.S. at 446. States are given more deference in their administration of criminal procedure under *Medina* than they are in their civil administrative procedures for primarily two reasons. First, unlike the civil administrative-law issues for which *Mathews* balancing was formulated, criminal process is grounded in centuries of common-law tradition in which states have considerable expertise. *Medina v. California*, 505 U.S. 437, 445–46 (1992). As the Court noted, "preventing and dealing with crime is much more the business of the States than it is of the Federal Government." *Id.* at 445. Second, because "[t]he Bill of Rights speaks in explicit terms to many aspects of criminal procedure," it is often unnecessary to attach additional criminal procedures to "the open-ended rubric of the Due Process Clause." 505 U.S. at 443. Or, as now-Justice Gorsuch explained it, "because the Bill of Rights speaks in explicit terms to many aspects of criminal procedure, the Supreme Court has set a high bar for us to pass before we may conscript the Due Process Clause into service on behalf of new and unenumerated constitutional rights." *Williams v. Jones*, 583 F.3d 1254, 1259 (10th Cir. 2009) (Gorsuch, Tacha, O'Brien, Tymkovich, C.J., dissenting to denial of rehearing *en banc*).

Here, the procedure at issue is the initial setting of bail and associated pretrial release considerations in criminal cases in Tulsa County. Because the scope of criminal procedure traditionally begins with arrest and ends with trial,[4] and because the setting of bail or of other pretrial release conditions falls within the traditional

---

[4]Although *Medina* applies to post-conviction procedures too. *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009) (applying *Medina*).

scope of criminal procedure and has been part of every criminal proceeding in the common-law tradition for hundreds of years, the appropriate due process analysis for Plaintiffs and the class claim is outlined in *Medina*, rather than *Mathews*.

### B.    Tulsa County's pretrial release system passes the Medina test.

As indicated previously, a state criminal procedure will run afoul of the Due Process Clause only if it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Medina v. California*, 505 U.S. 437, 445 (1992). Unless the state procedure violates such a "fundamental principle of fairness," it is not proscribed by the Due Process Clause. *Montana v. Egelhoff*, 518 U.S. 37, 55 (1996) (plurality). Further, the Supreme Court has stated that it is not "a rule-making organ for the promulgation of state rules of criminal procedure" and that "a state rule of law 'does not run afoul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar.'" *See Spencer v. State of Texas*, 385 U.S. 554, 564 (1967) (citations omitted). Thus, the issues presented for judicial resolution here are: (1) whether Tulsa County's pretrial release system offends some principle of fairness so rooted in the traditions and conscience of our people as to be ranked as fundamental, and (2) whether the procedures Plaintiffs and the class demand are necessary to vindicate that allegedly deeply rooted principal.

### (1)    The bail schedule does not violate the Due Process Clause.

Plaintiffs' first Due Process criticism of Tulsa's pretrial release system is that Tulsa uses a bail schedule in which bail amounts are set based on the seriousness of offense for which the arrestee is arrested. Plaintiffs and the class assert that use of the bail schedule violates due process because it authorizes financial conditions of release prior to an individualized determination of an arrestee's ability to pay. [Doc. 259, ¶¶ 7, 56-58].

Under the *Medina* test, Plaintiffs and the class must show that the use of a bail schedule "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." 505 U.S. at 445. In light of the fact that bail schedules are widely used and their validity repeatedly affirmed, it is simply not plausible to argue that their use violates some "deeply rooted" fundamental right. *See, e.g., Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 543 (5th Cir. 2022)("*Daves II")* ("There is nothing unconstitutional about the mere promulgation and use of bail schedules."); *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 184 (6th Cir. 2012); *Walker v. City of Calhoun,* 901 F.3d 1245 (11th Cir. 2018); *Pugh v. Rainwater,* 572 F.2d 1053 (5th Cir. 1978)(approving use of bail schedule).

The American bail system is patterned on English practices, and bail has historically been intended to give liberty to an accused while the government and community have adequate assurance that the accused will participate in the criminal process. *See e.g. U.S. v. Salerno,* 481 U.S. 739, 754 (1987) ("The bail clause [of the Eighth Amendment] was lifted with slight changes from the English Bill of Rights Act…"); *Stack v. Boyle,* 342 U.S. 1, 7 (1951)(Jackson, dissenting writing separately) "The practice of admission to bails, as it evolved in Anglo-American law, …" These twin goals have been accomplished by a "deposit of money subject to forfeiture" since before the founding. *Stack v. Boyle*, 342 U.S. 1, 5 (1951); *Timbs v. Indiana,* 139 S. Ct. 682 (2019)(Eighth Amendment can "trace lineage" back to Magna Carta). The Eighth Amendment and the Judiciary Act of 1789 provide that non-excessive bail be available in all non-capital cases. *William F. Duker, The Right to Bail: A Historical Inquiry*, 42 Alb. L. Rev. 33, 85 (1977). The Supreme Court noted in *Stack v. Boyle* that the constitution permits monetary bail, as evidenced by the Eighth Amendment prohibition on "excessive" bail. The modern practice of requiring or allowing a bail bond serves as adequate assurance. *Stack,* 342 U.S. at 5. Excessive bail does not necessarily mean unaffordable bail, just as non-excessive bail does not

~ 24 ~

mean bail must be affordable for every defendant. Secured bail is not meant to be an instrument of detention, but rather a liberty promoting mechanism, which assures defendants will appear for trial. *Stack,* 342 U.S. at 5. Again, several circuit courts have found that bond schedules, in and of themselves, are not inherently unconstitutional. No Supreme Court case has addressed bail schedules. *Fields v. Henry Cnty., Tenn.,* 701 F.3d 180 (6th Cir. 2012); *Walker v. City of Calhoun, Ga.,* 910 F.3d 1245 (11th Cir. 2018); *Daves II, supra.* Because bond schedules are based on the severity of the offense in question, it does not discriminate on the basis of wealth, as similar offenses are treated similarly with the average defendant in mind. Bail is available for most crimes, but there is no guarantee that any particular defendant will be able to meet any particular bail requirement. 22 O.S. § 1101. No accused is detained because they are poor – rather an accused is detained because the government has found probable cause to arrest and/or charge the accused and the government requires adequate assurance of appearance for court proceedings and community security. *Gerstein,* 520 U.S. at 124-125; *Riverside,* 500 U.S. at 58; *Stack,* 342 U.S. at 4. All that is required is an opportunity to meet non-excessive bail. *Stack,* 342 U.S. at 10 (Jackson, J., writing separately). Again, there is no guarantee that every defendant will be able to meet the required security.

Based on the foregoing, Plaintiffs and the class are unable to meet their burden of showing that they have a fundamental "deeply rooted" right not to have the option of paying a preset bond amount to obtain release prior to their first court appearance. *See U.S. v. Castillo*, 140 F.3d 874, 881 (10th Cir. 1998) (burden is on party making due-process challenge to show that principle allegedly violated by state process is "so rooted in the traditions and conscience of our people as to be ranked as fundamental."). *See also Dawson v. Board of County Commissioners of Jefferson County, Colo.,* 732 F.App'x 624 (10th Cir. 2018)(*cert denied* 139 S. Ct. 862 (2019) (no fundamental right to pretrial release).

State Judge's use of the preset bail schedule is fundamentally fair. The bail schedule serves simply to allow arrestees an opportunity to pay the scheduled amount, if available, in lieu of having an individualized bail hearing. No one is thereby *denied* an individualized bail hearing, they merely have the option of paying the preset amount in lieu of an individualized hearing. A procedure such as this that authorizes the payment of money in exchange for allowing a criminal defendant to avoid a hearing does not violate due process. *See Kincaid v. Gov't of D.C.*, 854 F.3d 721, 727–28 (D.C. Cir. 2017) (Kavanaugh, J.). In *Kincaid*, the court held that the District of Columbia's post-and-forfeit procedure, pursuant to which arrestees could choose to pay and forfeit a fee in exchange for a full and final resolution of their criminal charge, did not deprive arrestees of their money without a hearing in violation of the Due Process Clause. Accordingly, State Judge's preset bail schedule, pursuant to which arrestees can choose to pay a preset bond amount without a hearing, does not violate the Due Process Clause.

**(2) State Judge's pretrial release system comports with Due Process for those who do not obtain release pursuant to the pre-set bail schedule.**

Under LCR2, individuals who do not obtain release pursuant to the pre-set bail schedule have their first opportunity for an individualized pretrial release hearing during their first court appearance, which occurs within 48 hours of their arrest (i.e., the "bond docket"). During this first appearance, arrestees are represented by counsel for the purpose of determining their conditions of release. (Ex. 3 – LCR 2). At the hearing, they are given the opportunity to object to their bail amount and/or other conditions of release. To the extent the arrestee claims indigency or inability to pay, the court exercises its discretion in setting the condition of release. In doing so, the court may consider various factors including but not limited to the seriousness of the charge and criminal and appearance history. *See Brill v. Gurich,* 1998 OK CR 49.

If the arrestee is unsatisfied with the release conditions received at the first appearance, he or she also has post-first-appearance procedures available to them. They may file a motion to reconsider or alter the conditions. [Doc. 369-4 at pp. 79-80, 115-116]. The arrestee may also file a writ with the appropriate appellate court, the Court of Criminal Appeals. *See Clark v. Hall*, 53 P.3d 416 (Okla. Cr. 2002) (writ of habeas corpus used to by pretrial detainee to get individualized hearing on bail amount). Finally, a criminal defendant could preserve the issue for appeal and appeal it. *See Bowman v. State*, 585 P.2d 1373; *Hainey v. State*, 740 P.2d 146 (Okla. Cr. 1987). These post-first-appearance procedures cannot be ignored. In determining what process is due at any particular point in a state criminal proceeding, all of the state's available safeguards for protection of the right at issue must be "viewed as a whole." *Gerstein*, 420 U.S. at 123. This is necessary because "state systems of criminal procedure vary widely [and] [t]here is no single preferred pretrial procedure." *Id.* This approach also promotes the Supreme Court's desire for "flexibility and experimentation by the States." *Id.* Based on these principles, Plaintiff and the class's narrow focus on a single aspect of Tulsa's process, i.e., the initial appearance, without considering the pretrial release system "viewed as whole" is insufficient to answer the legal questions at bar (i.e., does the system violate due Process?).

Plaintiffs and the class claim that this system violates the Due Process Clause because (1) arrestees are allegedly not given prior notice that release conditions will be considered at the first appearance, (2) findings on release conditions are not made on the record showing that secured bail is supported by clear and convincing evidence that the release conditions are the minimum required to support the State's interest, and (3) motions to reconsider or alter release condition cannot be made and heard promptly enough to satisfy due process.

However, none of Plaintiffs' or the class's attacks on Tulsa's pretrial release system is supported by a fundamental principle of justice deeply "rooted in the traditions and conscience of our people." *Medina v. California*, 505 U.S. 437, 437. Defendant State Judges are unaware of any historical sources showing consensus on: (1) the type of notice, if any, an arrestee must be provided prior to their first appearance; (2) whether findings at a first appearance in which release conditions are discussed must be in writing and made based on clear and convincing evidence; (3) the length of time that may pass after arrest before the first individualized pretrial release consideration is made (i.e., hearing); or (4) whether individualized considerations of pretrial release conditions are required at all. *See, e.g., Medina v. Allen*, No. 4:21-CV-00102-DN-PK, 2023 WL 2743137, at *6 (D. Utah Mar. 31, 2023) ("Notice and an opportunity to be heard at the initial bail determination is not required by the Constitution.").

Defendants are similarly unaware of any historical commentaries or other sources showing that "our common-law heritage" required initial appearances in criminal cases to include full-scale bail hearings with all the procedural machinery Plaintiffs and the class seek to impose. *Id.* at 446. Nor have Plaintiffs and the class pointed to any such historical requirements. *See* [Docs. 290, 334-369]. As such, Plaintiffs and the class have failed to meet their "burden of demonstrating such rights are fundamental." *Maehr v. United States Dep't of State*, 5 F.4th 1100, 1118 (10th Cir. 2021) (cleaned up). Plaintiffs' Motion should be denied.

## IV. PLAINTIFFS' WEALTH-BASED DETENTION CLAIM UNDER THE DUE PROCESS AND EQUAL PROTECTION CLAUSES FAILS.

Courts subject governmental action to strict scrutiny under the Equal Protection Clause only if they target a suspect class or involve a fundamental right. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002). If there is neither a fundamental right nor a suspect class, then the government action is valid

if it is rationally related to a legitimate government purpose. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002). As demonstrated previously in the substantive due process argument outlined earlier, there is no fundamental right involved in this case. *See also*, *Dawson v. Bd. of Cty. Commissioners of Jefferson Cty., Colorado*, 732 F.App'x 624, 630 (10th Cir. 2018) ("Dawson's interest to be free from pretrial detention, having fulfilled the court ordered release conditions within his control and awaiting the fulfillment of court ordered release conditions outside of his control, is a non-fundamental right."). Neither is there a "suspect class." Poverty is not a suspect classification. *Harris v. McRae*, 448 U.S. 297, 323 (1980). Even if it were, however, "[p]roof of [] discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977). Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296 (1979). "It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (cleaned up). Since there is no plausible allegation (nor could there be) that Defendant State Judges took any actions "because of, not merely in spite of, its adverse effects upon [people who cannot afford their bail]," Plaintiffs' disparate-impact-wealth-based equal protection claim fails. *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

Plaintiffs have failed to state an equal protection or due process claim under *Bearden v. Georgia*, 461 U.S. 660 (1983); *Tate v. Short*, 401 U.S. 395 (1971); or *Williams v. Illinois*, 399 U.S. 235 (1970). *Bearden* stands for the proposition that it is "fundamentally unfair or arbitrary" to revoke a probationer's probation simply because he is unable to pay a fine. *Lemieux v. Kerby*, 931 F.2d 1391, 1393 n.4 (10th

Cir. 1991). *Tate* and *Williams* stand for the proposition that a convict may not be sentenced to incarceration simply because he is unable to pay a fine or court costs. Stated more generally, each of these cases stands for the proposition that the State may not *punish* someone for doing something they are incapable of doing.

But Defendants in this case have never argued that the State's interest in pretrial detention is "punishment." A pretrial detention and bail system is not "imposed for the purpose of punishment." *Dawson v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 732 F. App'x 624, 632 (10th Cir. 2018) (unpublished). The State interest here is not punishment, but an efficient pretrial detention and bail system. Thus, it is judged on the rational basis standard, not some form of heightened scrutiny. *Id.*; *Gaylor v. Does*, 105 F.3d 572, 576 (10th Cir. 1997) (unless a policy is "expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on whether an alternative purpose to which the restriction may rationally be connected is assignable for it.") (cleaned up). It is notable that neither Dawson nor Gaylor were "jail conditions" cases. Neither *Dawson* nor *Gaylor* were complaining about the *conditions* of the jail. They were complaining about their *detention* in the jail.

In *Schall v. Martin*, 467 U.S. 253 (1984), Plaintiffs challenged the decision to detain them prior to trial based on the serious risk they would engage in criminal conduct if not detained. There, the Supreme Court applied the rational basis test to their pretrial detention, holding that absent a showing of an "express intent to punish," pretrial detention is judged under the rational basis standard. *Id.* at 269. Thus, pretrial detention is not a fundamental right. *United States v. Deters*, 143 F.3d 577, 583 (10th Cir. 1998) (*Salerno* "did not appear to apply the narrowly-tailored-to-serve-a-compelling government-interest test that traditionally governs cases

involving fundamental rights."); *Dawson v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 732 F. App'x 624, 638 (10th Cir. 2018) (same).[5]

Finally, Plaintiff's reliance on *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278 (1973), is unpersuasive. *Rodriguez* is frequently cited as the case "which served as the foundation for the Court's denial of suspect class status to the poor." Bertrall L. Ross II & Su Li, *Measuring Political Power: Suspect Class Determinations and the Poor*, 104 Cal. L. Rev. 323, 342 (2016) (cleaned up); *see also*, *Lewis v. Casey*, 518 U.S. 343, 373–374 (1996) (Thomas, J., concurring) (describing *Rodriguez* as the case where "[w]e first cast doubt on the proposition that a facially neutral law violates the Equal Protection Clause solely because it has a disparate impact on the poor.").

To understand why *Rodriguez* is remembered in this way, some background is necessary. For a short time, starting in 1956, the Supreme Court issued opinions holding that classifications based on poverty receive the same scrutiny as classifications based on race, religion, or color. *Griffin v. Illinois*, 351 U.S. 12, 17 (1956) ("a State can no more discriminate on account of poverty than on account of religion, race, or color."). Not only could intentionally discriminatory policies be struck down as unconstitutional, but facially neutral ones that had only a disparate impact on a suspect class. *E.g., id.* (charging fee for criminal trial transcript due to

---

[5] While *Hoang v. Comfort*, 282 F.3d 1247, 1257 (10th Cir. 2002) indicates *Salerno* recognized a fundamental liberty interest in freedom from restraint, *Hoang* was vacated *sub nom. Weber v. Phu Chan Hoang*, 538 U.S. 1010 (2003), and *abrogated by Demore v. Kim*, 538 U.S. 510 (2003). In addition, *Hoang* it is at odds with *Deters*, a prior Tenth Circuit panel opinion. A panel cannot overrule a prior panel. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993). Accordingly, *Hoang* has no precedential value. *See also, Dawson v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.o*, 732 F. App'x 624, 638 (10th Cir. 2018) (declining to follow *Hoang* and noting that its finding that *Salerno* delineated a fundamental right was "dicta.").

disparate impact on the poor); *Douglas v. People of State of Cal.*, 372 U.S. 353 (1963) (failure to provide counsel for appeal from criminal conviction).

This all changed in the 1970s. By 1977, the Court was ready to deny that "financial need alone identifies a suspect class." *Maher v. Roe*, 432 U.S. 464, 471 (1977). By 1980, the Court could definitively state that "poverty, standing alone, is not a suspect classification." *Harris v. McRae*, 448 U.S. 297, 323 (1980). And, as for striking facially neutral policies based on disparate impact, the Court ended this practice in 1976 with *Washington v. Davis*, 426 U.S. 229, 242 (1976). There, the Court flatly rejected the concept "that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another." *Id.*

To the extent Plaintiffs claim that they are entitled to relief because "they sustained an absolute deprivation" of their right to freedom from pretrial detention. *Rodriguez*, 411 U.S. at 20, their claim fails. There is nothing absolute about Plaintiffs' pretrial detention. If they are unhappy with their bail, they can file a motion. If they are unsatisfied at that point, they can seek a writ in the Court of Criminal Appeals. *See, e.g., Clark v. Hall*, 2002 OK CR 29, 53 P.3d 416. When evaluating the constitutionality of a state's criminal process, all aspects of the process must be considered, not merely one small part. *See Gerstein v. Pugh*, 420 U.S. 103, n.27 (1975) (noting that that entire criminal process must be considered, not merely a single stage of a state's criminal justice system which is only part of the "elaborate system, unique in jurisprudence, designed to safeguard the rights of those accused of criminal conduct."). Plaintiffs, therefore, cannot meet their burden to establish that the Tulsa County bail procedures violated Equal Protection and their Motion for Summary Judgment should be denied.

## V. PLAINTIFFS' PROPOSED ORDER SHOULD BE DENIED AS THE REQUESTED RELIEF IS BEYOND THE SCOPE OF RELIEF AVAILABLE FROM THIS COURT.

Plaintiffs' proposed order is based on a proposed finding that Defendants' pretrial bond setting procedures violate the Fourteenth Amendment. As argued above, Plaintiffs' claims are actually Eighth, Fourth, and Sixth[6] Amendment claims disguised as more amorphous Fourteenth Amendment claims, and should therefore fail.

Even if Plaintiffs' claims are properly framed under the Fourteenth Amendment, the requested relief is overly broad and outside the scope of available relief from this Court. Plaintiffs' proposed order includes findings that are much more extensive than what would actually be required if the Fourteenth Amendment analysis applied. There is no support for finding that due process requires the specific notice Plaintiffs seek, the evidentiary standard requested, that these Defendants dictate the contours of representation by non-parties, or that the individual decision in any particular case include specific findings or considerations.

On its face, the Plaintiffs' requested relief would require impermissible "interruption of state proceedings to adjudicate assertions of noncompliance." *O'Shea v. Littleton*, at 500. Plaintiffs' proposed order would necessarily invite constant supervision and/or excessive interference with the Tulsa County procedures. Enforcement of such an injunction is outside the scope of remedies available from the federal court. *O'Shea* at 501. The Tenth Circuit has relied on *O'Shea* to deny "an injunction aided at controlling or preventing the occurrence of specific events that might take place in the course of future criminal [proceedings]". *Phelps* at 1317. Because the requested relief would necessarily modify future

---

[6]The Sixth Amendment applies to both right to counsel and right to confront accuser and evidence.

proceedings in state court, it would be an improper exercise of federal court authority and should therefore be denied[7].

Based on the text of the Plaintiffs' proposed order, there is no way to assess the adequacy of any given bail setting, either individually, by judge or generally, without plunging into specific individual proceedings, putting this Court in the position of reviewing decisions about what a particular detainee could "afford", whether and which alternative conditions were adequately considered, whether the contacts between non-party public defenders and detainees were adequate and/or whether the state court properly determined the risk to the community or likelihood of appearance. Furthermore, these issues would only come before the Court for review if the outcome of a particular bail decision has been challenged. Plaintiffs have not, and cannot, establish that this Court should step into the role of overseeing individual bail settings in Tulsa County, especially given that every detainee has myriad avenues for review, including written and oral motions for reduction and habeas writs in both state and federal court. Plaintiffs' proposed order for declaratory and injunctive relief should, therefore, be denied.

## CONCLUSION

For the reasons state above, Plaintiffs have not established that there violations of the Fourteenth Amendment nor that they are entitled to the relief requested as a matter of law. Plaintiffs' motion for summary judgment should therefore be denied and judgment entered in favor of Defendants.

---

[7]Defendants incorporation Proposition V of their Motion for Summary Judgment [Doc. 365] as it more fully sets forth why this Court should abstain in this case.

Respectfully submitted,

 /s/Stefanie E. Lawson
**STEFANIE E. LAWSON, OBA#22422**
**ERIN M. MOORE, OBA#20787**
**DEVAN A. PEDERSON, OBA#16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:  (405) 521-3921
Facsimile:   (405) 521-4518
Email:stefanie.lawson@oag.ok.gov
        erin.moore@oag.ok.gov
        devan.pederson@oag.ok.gov
*Attorneys for Defendants State Judges*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and I further certify that on this date a true and correct copy of the foregoing was served via the ECF System to all counsel who are ECF registrants:

/s/Stefanie E. Lawson
Stefanie E. Lawson

~ 35 ~