IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD FELTZ and ASHTON LEE DENNIS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VIC REGALADO, *et al.*,<br><br>Defendants. | Case No. 18-cv-298-SPF-JFJ |

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs make four main arguments for preserving their substantive Fourteenth Amendment claims from the holding of *Albright*. None are persuasive.

First, recognizing that the Supreme Court is receptive to expansive interpretations of the Bill of Rights, *see* Def. Br. [Doc. 372 at 15], but "reluctant to expand the concept of substantive due process," *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), Plaintiffs argue they "require no such expansion . . . because substantive due process already affords them the relevant protection." Pls.' Br. [Doc. 373 at 12]. It already protects the "[f]reedom from bodily restraint." Pls. Br. [Doc. 373 at 11], citing *Jones v. United States*, 463 U.S. 354 (1983); *Foucha v. Louisiana*, 504 U.S. 71 (1992); and *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010).

The problem with Plaintiffs' reasoning is that the Supreme Court's "reluctant[ance] to expand the concept of due process," includes reluctance to expand the category of rights classified as "fundamental." *See Glucksberg*, 521 U.S. at 720–21 (1997). None of the cases Plaintiffs cite for the proposition that the

Fourteenth Amendment "already affords them the relevant protection" holds that the liberty interest they seek to vindicate is a fundamental right requiring strict scrutiny. "[A] liberty interest [] is not the same thing as a fundamental right." *Foucha*, 504 U.S. at 117 (Thomas, J., dissenting). Reviewing the cases Plaintiffs cite, *Dodds* applied the rational basis test applicable to <u>nonfundamental</u> rights. 614 F.3d at 1192. And although neither *Jones* nor *Foucha* disclosed the standard of review they were applying, neither applied strict scrutiny under the fundamental rights approach to substantive due process. *Jones* held that the indefinite commitment of an insanity acquittee, based on proof of insanity by a "preponderance of evidence," comported with due process. 463 U.S. at 368. Thus, Plaintiffs cannot plausibly assert that granting their request for a declaration that the rights they seek to vindicate are "fundamental" would not "expand the concept of substantive due process" beyond extant Supreme Court precedent.

Second, Plaintiffs argue that *Graham* and *Albright* proscribe Fourteenth Amendment claims *only* when a Bill of Rights provision *already expressly prohibited* the conduct alleged. Pls.' Br. [Doc. 373 at 12]. Plaintiffs cite *County of Sacremento v. Lewis*, 523 U.S. 833, 842 (1998) for this proposition. But *Lewis* merely says that a Bill of Rights provision did not apply in that case because it did not "*cover*" the conduct at issue. But a Bill of Rights provision can "cover" the conduct at issue even if it does not provide relief. *E.g., Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007). *Becker* held that the plaintiff's malicious prosecution claim was not actionable under the Fourth Amendment, but that the plaintiff's due process claims were still barred by *Albright*, because "the Fourth Amendment adequately <u>covers</u> constitutional interests in the pre-trial exercise of government control over a person." *Id.* at 915 (emphasis added).

Third, Plaintiffs argue that their substantive Fourteenth Amendment claims are not barred by *Albright* because the *interest* they seek to protect under the Fourteenth Amendment—"the fundamental right to pretrial liberty"—is "*distinct* from any potential Eighth Amendment claim." Pls.' Br. [Doc. 373 at 12-13].[1] But "the harm the Eighth Amendment aims to prevent is the unnecessary deprivation of pretrial liberty." *Meechaicum v. Fountain*, 696 F.2d 790, 791 (10th Cir. 1983). Thus, the Eighth Amendment *covers* the constitutional interest Plaintiffs seek to pursue under the Fourteenth. *See also, State v. Thomas*, 831 N.W.2d 914 (Minn. Ct. App. 2013) (claims of unaffordable conditions of release must be made under the Eighth Amendment rather than the Fourteenth Amendment's Due Process or Equal Protection Clauses because the Eighth Amendment provides the "explicit textual source of constitutional protection" when a claim is that "the district court assigned bail without sufficient regard for [the detainee's] financial limits.").

Fourth, Plaintiffs argue that their substantive Fourteenth Amendment claims are not barred by *Albright* because the Eighth and Fourteenth Amendments give rise to "*distinct claims.*" Pls.' Br. [Doc. 373 at 13] (emphasis added). Plaintiffs hypothesize that if their bail were not too high for purposes of the Eighth Amendment, but still unaffordable, they may still have a claim under the Fourteenth Amendment if their detention were "unnecessary." *Id.* But part of a Bail Clause analysis is weighing the financial ability of the defendant to give bail. *See State v. Thomas*, 831 N.W.2d 914 (Minn. Ct. App. 2013). In addition, a "distinct claims" argument against the application of *Albright* is never valid in the Tenth Circuit because it is merely a reformulation of the incorrect assertion that the

---

[1] Plaintiffs cite *U.S. v. Salerno*, 481 U.S. 739 (1987) and *Schall v. Martin*, 467 U.S. 253 (1984) for the proposition that pretrial liberty is a "fundamental right," but as shown in Defendants' prior summary-judgment briefing, *e.g.*, [Doc. 372 at 19, 30-31], neither *Salerno* nor *Schall* support this proposition.

Bill of Rights cannot "cover" a plaintiff's claim without "prohibiting" the conduct alleged. *Becker*, 494 F.3d at 915. The "distinct claims" argument is simply another way to use the Fourteenth Amendment as "a fallback to protect interests more specifically addressed by the [Bill of Rights]. *Becker*, 494 F.3d at 919.

Plaintiffs' wealth-based discrimination claim based on the line of cases culminating in *Bearden* fails. In nearly every modern equal protection case, the prevailing equal protection test provides that unless a government policy provokes "strict judicial scrutiny" because it interferes with a "fundamental right" or discriminates against a "suspect class," it will survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose. *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457–58 (1988). This includes equal protection cases based on allegations of wealth-based discrimination. *See, e.g., id.* Claims of unaffordability in wealth-based challenges to government policies are usually rejected where a nonfundamental right is at issue. *See, e.g., id.* at 459 (rejecting wealth-based bussing services on the grounds that "[plaintiff] was denied access to the school bus only because her parents would not agree to pay the same user fee charged to all other families that took advantage of the service."). In *Kadrmas*, plaintiffs cited *Bearden v. Georgia*, 461 U.S. 660 (1983) and demanded "strict equal protection scrutiny." 487 U.S. at 458. In rejecting this request, the Court showed the same reluctance to expand the concept of wealth-based equal protection as it would show in later cases to expanding the concept of substantive due process: "[W]e are evidently being urged to apply a form of strict or 'heightened' scrutiny . . . . Doing so would require us to extend the requirements of the Equal Protection Clause beyond the limits recognized in our cases, a step we decline to take." 487 U.S. at 458. Given the Court's reluctance to "extend the requirements of the Equal Protection Clause" in the context of wealth-based

discrimination involving nonfundamental rights, this Court should decline to extend a *Bearden* analysis to the case at bar.² In addition, since *Bearden* is primarily a due process case,³ the same reluctance to expand the concept of substantive due process should apply to the concept of wealth-based discrimination claims involving nonfundamental rights and which involve liberty interests covered by the Bill of Rights.

The Supreme Court has never applied anything other than a rational basis test to a wealth-based discrimination claim based on deprivation of pretrial liberty caused by unaffordable bail. In fact, even during the 1960's, when wealth-based distinctions were thought to create a suspect classification, the Supreme Court used rational basis

---

² The other cases cited by Plaintiffs in footnote 9 of their brief [Doc. 373 at 15] are distinguishable for the reasons expressed in Doc. 372 at 29-30. In addition, *Griffin v. Illinois*, 351 U.S. 351 U.S. 12 (1956) and *Douglas v. California*, 372 U.S. 353 (1963) dealt with criminal "appellate review," for which the Bill of Rights has no constitutional interest. *See Griffin*, 351 U.S. at 18 (Federal Constitution does not require "appellate courts or a right to appellate review at all."). In contrast, the Bill of Rights is primarily interested in pre-conviction criminal procedural rights, such as the right to pretrial liberty, which is protected in different ways by the Fourth, Sixth, and—as most pertinent here—the Eighth Amendment. *See* Def. Br. [Doc. 365 at 19]. Finally, *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996) is easily distinguishable because it turned on a true fundamental right—the fundamental right of parents to a "relationship with their children." *Id.* at 119. For a more detailed history of the Court's retreat from the cases cited in fn. 9 of Pls.' Br., *see The Troubling Influence of Equality in Constitutional Criminal Procedure: From Brown to Miranda, Furman and Beyond*, 54 Vand. L. Rev. 359, 388-392 (2001).

³ *See Bearden*, 461 U.S. at 667, n.8 holding that treating wealth-based criminal claims under the Equal Protection Clause is "too Procrustean to be rationally accomplished," and that "[t]he more appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of ***due process***." (Emphasis added).

to reject a wealth-based discrimination claim brought by pretrial detainees who were "unable to post the bail imposed by the courts." *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 807 (1969). *See also*, *Schilb v. Kuebel*, 404 U.S. 357 (1971) (similar).

Plaintiffs argue that Tulsa's bail system fails the rational basis test because it may allow the setting of unaffordable bail at an initial appearance. Pls.'s Br. [Doc. 373 at 19]. But Plaintiffs misunderstand the "heavy burden" they face under rational basis review. *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 452 (1988). Under rational basis a governmental policy will only be declared unconstitutional if the policy is "so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." 487 U.S. at 463. The court is "not bound by explanations of the statute's rationality that may be offered by litigants or other courts." *Id.* There is no demand "that a governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification". *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (cleaned up). In other words, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* Regarding the interpretation of empirical data and statistics in assessing bail systems, *see Bellamy v. Judges & Justs. Authorized to Sit in New York City Crim. Ct.*, 342 N.Y.S.2d 137, 144 (1973). Under rational basis, discrimination will not be set aside "if any state of facts reasonably may be conceived to justify it." *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996). Here, Tulsa's bail system is certainly rationally related to legitimate state interests under this deferential standard. *See* Defs.' Br. [Doc. 372 at 19].

Plaintiff's argument that *Medina v. California*, 505 U.S. 437 (1992) does not apply because the right to bail is not part of the "criminal process" since it does not

determine "guilt or punishment" is unpersuasive. First, bail is "a fundament of liberty underpinning our *criminal proceedings*." *Meechaicum v. Fountain*, 696 F.2d 790, 791 (10th Cir. 1983) (emphasis added). Next, Plaintiffs' guilt-or-punishment distinction ignores the *reasons Medina* applies to criminal procedures. It does not apply to criminal process because criminal process deals with guilt and punishment, but rather because criminal process is grounded in centuries of common-law tradition in which the states have considerable expertise and the need for the open-ended rubric of the Due Process Clause is diminished in light of the Bill of Rights. *See* Defs.' Br. [Doc. 372 at 22-23]. The states have considerable experience with bail, and the Bill of Rights speaks explicitly about both bail and pretrial detention. *See id.* Thus, bail, a subject of criminal procedure for centuries and which is explicitly referenced in the Bill of Rights, is undoubtedly part of "the criminal process" under *Medina*.

Plaintiffs' claim that Tulsa's pretrial detention system fails the deferential *Medina* test without the supplemental procedures Plaintiffs propose is without merit as neither the right against wealth-based detention nor the right to pretrial liberty unless the government demonstrates that detention is necessary are "objectively, deeply rooted in this Nation's history and tradition." Medina v. Allen, No. 4:21-CV-00102-DN-PK, 2023 WL 2743137, at *7 (D. Utah Mar. 31, 2023). To the extent Plaintiffs challenge the adequacy of the bail setting procedures by which individualized bail hearings are held within 48 hours of arrest, it should be kept in mind that the Constitution does not even require individualized bail hearings within 48 hours of arrest, *Mitchell v. Doherty*, 37 F.4th 1277 (7th Cir. 2022). If the *Medina* test applies, Defendants prevail in this case.

Plaintiffs' argument that the acts of the Presiding Judge are administrative and not judicial relies upon three cases, all of which are distinguishable. First, *Antoine v.*

*Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993) holds that judicial immunity does not apply to court reporters. It is, therefore, clearly distinguishable from a judge's notetaking, which is based the discretionary decisionmaking of the judge. Second, *Forrester v. White*, 484 U.S. 219, 229 (1988) held that a judge demoting and dismissing an employee was not adjudicatory. It is, therefore, inapplicable to the case at bar. Third, *Opala v. Watt*, 393 F. Supp. 2d 1154, 1164–65 (W.D. Okla. 2005), is about the internal election and selection process of the presiding justice and was found to be administrative because the procedure at issue did not impact individual decisions. But the rules at issue in *Opala* did not apply to individuals in criminal proceedings, which is the case here. Here, the Presiding Judge has entered a statutorily allowed standing bail schedule that allows some individuals to post bail prior to a court appearance where bail and probable cause are reviewed. The Presiding Judge used his authority to manage the assignment and progression of individual criminal proceedings by issuing administrative orders. *Thompson v. Duke*, 882 F.2d 1180, 1184 (7th Cir. 1989) ("In the judicial context, scheduling a case for hearing is part of the routine procedure in any litigated matter. The fact that the activity is routine or requires no adjudicatory skill renders that activity no less a judicial function."), *cert. denied*. "A court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges… are afforded absolute immunity." *Chavez v. City of Albuqurque*, 232 F.3d 900 at *3 (10th Cir. 2000) (unpublished). In the case at bar, the Presiding Judge's actions about which Plaintiffs complain were adjudicative acts as the management of a large court with multiple judges requires the allocation and delegation of certain decisions impacting individual proceedings. But if this were a single judge court, there would be no question that the management of his/her docket and the setting and review of certain acts in a criminal proceeding are judicial. The Presiding Judge

in establishing a bond docket and assigning judges to that docket and establishing a standing bail order schedule are all judicial acts such that Plaintiffs' request for injunctive relief fails as a matter of law.

Plaintiffs also assert there is no basis for abstention because no adequate state remedy exists and the relief they seek does not require this Court to interfere with "coercive state proceedings." The main three cases upon which Plaintiffs rely are either inapplicable or distinguishable. Plaintiffs also conflate the need to find probable cause as a justification for arrest and detention with the separate but related determination of appropriate conditions of release following a probable cause finding. While the Supreme Court has held that probable cause determinations must ordinarily be made within 48 hours, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991), there is no analogous authority suggesting the timing required to determine conditions of release following a probable cause finding or how soon after bail is initially set and when a modification or habeas request must be heard. Probable cause creates the justification for arrest and detention. In Tulsa County, probable cause is determined within 48 hours. Bail setting which determines conditions of release is a separate determination. Pretrial detainees have multiple remedies available to address modifications as necessary, even if Plaintiffs do not like the remedies available.

Contrary to Plaintiffs' insistence, *Gerstein* is distinguishable. The plaintiffs in *Gerstein* were being held pretrial without a probable cause determination or other judicial hearing potentially for thirty days or more. Florida foreclosed the use of habeas relief as a remedy for challenging a probable cause determination (or lack thereof). The Supreme Court held that under the Fourth Amendment, pretrial detention for extended periods without any judicial hearing or determination of probable cause for detention was impermissible. The Court did not suggest an

acceptable time for the probable cause determination. *But see Riverside, supra.* Plaintiffs do not dispute that Oklahoma provides multiple avenues for review and modification of bail conditions, though they argue that these avenues are inadequate because it may take several days to appear before a judge. But Plaintiffs point to no controlling authority setting a specific timeframe between a determination of probable cause, initial bail setting, modification consideration, and/or habeas relief in the course of criminal proceedings.

The circumstances in *Rodgriguez*, a district court case from Tennessee, are also distinguishable from the case at bar. The plaintiffs in *Rodigruez* were post-judgment probationers who were being jailed due to failure to pay probation fees as a means of probation enforcement. The *Rodriguez* court relied on *Gerstein* to avoid abstention, though because the issue was one of post judgment enforcement, there were no ongoing criminal proceedings which would invite abstention under *Younger*. Here, the class members are involved in ongoing criminal proceedings and rely on the potential influence pretrial detention may have on the outcome of their criminal proceedings. As for *Gibson v. Berryhill*, 411 U.S. 564 (1973), the Supreme Court found that abstention was unwarranted because the post administrative-decision judicial review was inadequate because a license revocation "together with attendant publicity" and reputational harm for these professionals was irreparable damage for which no adequate state remedy existed. *Gibson* is distinguishable from this case in several ways, not least of which is that the *Gibson* proceedings were administrative and the board at issue was found to be biased, thus making its determination inherently suspect. Plaintiffs in this case have not asserted or shown bias by the Judicial Defendants. Because the relief Plaintiffs' request would require an improper intrusion into state court criminal proceedings, this Court should abstain.

Respectfully submitted,

s/ Devan Pederson
**STEFANIE E. LAWSON, OBA#22422**
**ERIN M. MOORE, OBA#20787**
**DEVAN PEDERSON, OBA#16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:  (405) 521-3921
Facsimile:   (405) 521-4518
Email:  stefanie.lawson@oag.ok.gov
erin.moore@oag.ok.gov
devan.pederson@oag.ok.gov
*Attorneys for Defendants State Judges*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and I further certify that on this date a true and correct copy of the foregoing was served via the ECF System to all counsel who are ECF registrants:

s/ Devan Pederson
Devan Pederson