## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

RICHARD FELTZ and ASHTON LEE
DENNIS, on behalf of themselves and all
others similarly situated,

             Plaintiffs,

v.

VIC REGALADO, *et al.,*

             Defendants.

**Case No. 18-cv-298-SPF-JFJ**

### JUDICIAL DEFENDANTS' RESPONSE TO PLAINTIFFS'
### SUPPLEMENTAL SUMMARY JUDGMENT BRIEF

For their Response to "Plaintiffs' Supplemental Summary Judgment Brief"
[Doc. 391], Defendant State Judges state the following:

**Background**

On September 27, 2023, Defendants filed a Notice of Expected Changes to
the Tulsa County Bond Docket, [Doc. 388], wherein they advised the Court that
instead of holding the bond docket seven days per week, 52 weeks per year, they
would begin holding the bond docket six days per week, 52 weeks per year.
Plaintiffs then filed their Supplemental Summary Judgment Brief on October 24,
2023 [Doc. 391], arguing that the change in frequency of the bond docket from
seven to six days per week is material to the summary judgment motions currently
before the Court. For the reasons outline below, it is not.

### Argument

**I.      Contrary to Plaintiffs' argument in Section II(B) of their Supplemental Brief, a six-day-per week bond docket does not violate the Fourteenth Amendment.**

In their summary-judgment briefing, Plaintiffs argue that the rights they seek to vindicate are protected under the Fourteenth Amendment rather than the Bill of Rights. Defendants, on the other hand, citing *Albright v. Oliver*, 510 U.S. 266 (1994) and *Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007), maintain that the Fourteenth Amendment does not apply to the rights Plaintiffs seek to vindicate because the extent and duration of pretrial detention are protected by the Bill of Rights via the Fourth, Sixth (speedy trial), and Eighth (Bail Clause) Amendments, which provide the "explicit textual source of constitutional protection" in this area. *Becker*, 494 F.3d at 918.

However, regardless which constitutional provision governs, no precedent of either the Supreme Court or of the circuits holds that a six-day per week bond docket violates the Constitution or that bond dockets must occur 365 days per year. *See Mitchell v. Doherty*, 37 F.4th 1277, 1281 (7th Cir. 2022) ("no [] circuit has imposed a forty-eight [hour] requirement for bail hearings after arrest"). In fact, because "no evidence from history or tradition . . . suggests that a suspect had a right to a bail hearing within forty-eight hours," detentions greater than 48 hours

~ 2 ~

have been found constitutional. *Mitchell*, 37 F.4th at 1286 (failure to hold weekend bail hearings did not violate Constitution). Thus, Tulsa's six-day-a-week bond docket easily passes constitutional muster.

Plaintiffs' citations to *Baker v. McCollan*, 443 U.S. 137 (1979) and *Doe v. Bagan*, 41 F.3d 571 (10th Cir. 1994), Pl.'s Supp. Br. [Doc. 391 at 9] are unpersuasive. *Bagan* is not a criminal case and has nothing to do with the facts of the case at bar. *Baker*, on the other hand, is persuasive. But, as explained below, it makes Defendants' points, not Plaintiffs'.

In *Baker*, the plaintiff, Linnie McCollan, was erroneously arrested on a warrant due to his brother having obtained a duplicate of his driver's license. Despite his continued protests, he was detained in jail for three days over a New Year's weekend before the error was discovered. He then sued the sheriff for violation of his rights under the Due Process Clause of the Fourteenth Amendment. In rejecting his claim, the Court looked to the Bill of Rights to determine the process that was due. Finding that there were no allegations that the warrant was issued without probable cause in violation of the Fourth Amendment, the Court held that there could be no due process violation since the "requirements of the Fourth Amendment" had been met. *Id.* at 144. The Court also pointed out that a person in McCollan's position could not have been detained indefinitely just

because he was arrested with probable cause since the Sixth Amendment guarantees a right to a speedy trial—which can be invoked at the time of arrest, and since the Eighth Amendment's Bail Clause provides yet another opportunity "of release from incarceration by resort to procedures specifically set out in the Bill of Rights." *Baker*, 443 U.S. 137, 144-145 & n.3. Finally, the Court held that even if there were, for the sake of argument, a due process claim for a deprivation of liberty under similar circumstances, "three days over a New Year's weekend does not and could not amount to such a deprivation." *Baker*, 443 U.S. at 145.

The applicability of *Baker* to the case at bar is obvious. Here, as in *Baker*, Plaintiffs are suing for violation of their due process rights based on allegedly unlawful pretrial detention. Here, as in *Baker*, the Fourth, Sixth, and Eighth Amendments all contain an explicit textual source of constitutional protection from the type of harm Plaintiffs allege. And here, as in *Baker*, Plaintiffs make no effort to argue that their rights under any of these provisions—or under any other provision of the Bill of Rights—have been violated. Therefore, here, as in *Baker*, Plaintiffs' claims must be rejected. And finally, even assuming, for the sake of argument, that there could be a due process violation under similar circumstances, holding a few defendants for slightly more than 48 hours on occasion without an individualized adversarial bail hearing would not violate the Due Process Clause of

the Fourteenth Amendment. *Cf. Mitchell v. Doherty*, 37 F.4th 1277, 1281 (7th Cir. 2022); *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

## II. The change in frequency of the bond docket cannot rescue Plaintiffs' case from mootness resulting from the enactment of Tulsa County District Court Rule 2.

The Court has already determined that the applicable timeframe for purposes of the mootness analysis is the time period after the "procedures put in place by CR2," which existed at the time of the filing of the operative complaint. *See* Or. [Doc. 306 at 24-25]. Plaintiffs now argue in their Supplemental Brief [Doc. 391 at II(A)], that the change in frequency of the bond docket from seven days per week to six days per weeks, requires that the applicable timeframe under scrutiny must now shift to the pre-CR2 timeframe when the original complaint was filed, rather than the current timeframe under CR2. However, Plaintiffs cite no authority suggesting that a transition from one process that exceeds constitutional standards to another that also exceeds constitutional standards, requires such a shift.

To the extent Plaintiff is arguing that the bond docket frequency has somehow done away with CR2, they are incorrect. CR2 has not been amended. It is still followed. And it does not conflict with the change in frequency of the bond docket. In addition, no decisionmaker involved in altering the frequency of the bond docket is a party to this action.

Because Plaintiffs have shown no reason that the pertinent timeframe must now shift from the post-CR2 era to the pre-CR2 era, Plaintiffs' invitation to ignore CR2 should be rejected.

### III.    A decision to hold a bond docket six days a week rather than seven days a week has no bearing on whether the decision is judicial or nonjudicial.

Contrary to Plaintiffs' argument in Section II(C) of their Supplemental Brief, a decision to hold a bond docket six days a week rather than seven, has no bearing on whether the decision is judicial or nonjudicial. Decisions regarding the frequency with which certain hearings will be held are judicial decisions, whether the decision is to hold certain types of hearings six days a week or seven. Again, the decision to change the bond docket frequency was made within the parameters of CR2 and was made by the judge in charge of the criminal division, who is not a party to this action.

### Conclusion

For the reasons provided in the summary judgment briefing and in the foregoing brief, Defendant State Judges respectfully request that summary judgment be entered in their favor on all of Plaintiffs' claims.

Respectfully submitted,

s/Devan Pederson

**STEFANIE E. LAWSON, OBA#22422**
**ERIN M. MOORE, OBA#20787**
**DEVAN A. PEDERSON, OBA#16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:  (405) 521-3921
Facsimile:  (405) 521-4518
Email:       stefanie.lawson@oag.ok.gov
            erin.moore@oag.ok.gov
            devan.pederaon@oag.ok.gov
*Attorneys for Defendants State Judges*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of November, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and I further certify that on this date a true and correct copy of the foregoing was served via the ECF System to all counsel who are ECF registrants:

s/ Devan Pederson

Devan Pederson