## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD FELTZ and ASHTON LEE DENNIS, on behalf of themselves and all other similarly situated, | |
| *Plaintiffs*, | |
| v. | Case No. 18-CV-0298-SPF-JFJ |
| VIC REGALADO, *et al*., | |
| *Defendants*. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPOR OF
## THEIR PROPOSED ORDER AND JUDGEMENT

TABLE OF CONTENTS

I.    The Court Should Issue a Combination of Injunctive and Declaratory Relief . 2

II.   The Court Should Adopt Plaintiffs' Proposed Declaratory Relief .................. 2

      A.    The State Must Provide Pretrial Release Hearing Within 48 Hours of
            Arrest ................................................................................................ 3

      B.    The State Must Show that Detention Is Justified by Clear and Convincing
            Evidence ............................................................................................ 5

III.   The Court Should Adopt Plaintiffs' Proposed Injunctive Relief ................. 9

      A.    Plaintiffs Have Succeeded on the Merits and Require an Injunction to
            Address Ongoing Irreparable Harm ...................................................... 10

      B.    Plaintiffs Interests in Injunctive Relief Outweigh the Defendants' Burden
            in Being Subjected to It ....................................................................... 12

            1.    Pretrial Release Hearings within 48 Hours of Arrest ............................. 13

            2.    Advance Notice ...................................................................... 14

            3.    Pre-Hearing Access to an Attorney ........................................... 15

            4.    Non-Enforcement of Illegal de Facto Detention Orders ........................ 15

            5.    Public Records of Pretrial Release Hearing Determinations.................. 17

            6.    Hearing Forum That Allows for Arrestee's Unhindered Participation ... 17

IV.   The Court Should Permit the Parties to Suggest Compliance Timelines and
      Information-Access Requirements After Attempted Mediation ...................... 18

On April 3, the Court held that Tulsa County's pretrial detention system runs afoul of the Fourteenth Amendment's due process and equal protection clauses because it lacks the procedural protections necessary to ensure that arrestees are not subject to prolonged pretrial detention solely because of their inability to pay money bail. Doc. No. 397. Each day, several dozen presumptively innocent people, who were arrested and then jailed rather than released because they could not afford to pay their way out, attend bail hearings characterized by a slew of procedural deficiencies. As described by this Court, "the Tulsa Count bail system provides the arrestee skimpy notice (if any) of the criteria which will govern the pretrial release decision, provides incomplete disclosure of the readily available information bearing on the release decision, rarely entertains the presentation of witnesses and evidence in the usual sense, usually does not produce written findings specifying the justification for the ruling on pretrial release, and precludes effective communication and consultation between the defender and the arrestee before and during the bond docket proceedings." *Id*. at 59. Following their bail hearings, most arrestees return to jail still unable to pay their assigned bonds, and without a judge having found that their detention serves any legitimate purpose.

Meaningful reforms are needed and can be achieved through a carefully constructed judgement that obligates Defendants to correct the failures in their bail system, without this Court taking on a managerial role. Plaintiffs submit a Proposed Order and Judgement, attached as an exhibit, that calls for adoption of: (1) a Declaration giving the legal conclusions in the Court's April 3 Order the effect of a judgment; and (2) a limited injunction that require the Sheriff and Presiding Judge to take responsibility for implementing seven measures that are clearly defined, limited, and purely logistical, but are nonetheless essential for ending the daily disregard of arrestees' constitutionally protected liberty interests in Tulsa County.

## I.      The Court Should Issue a Combination of Injunctive and Declaratory Relief

A federal court has discretion to issue, in a single case, both a declaration defining the parties' respective legal rights and obligations, and an injunction requiring a party to adopt or avoid specifically enumerated behaviors to comply with its legal obligations. *See*, *e.g.*, *Fed. Home Loan Bank Bd. v. Empire*, 778 F.2d 1447, 148 (1985) (affirming district court judgment granting both forms of relief). In this case, both forms of relief are called for, and each will serve a distinct, salutary purpose. Plaintiffs' proposed injunction demands performance of certain administrative tasks to alleviate class members' constitutional injuries that are caused by logistical failings, while a declaration is proposed to promote constitutionally compliant adjudication of pretrial release hearings.

## II.     The Court Should Adopt Plaintiffs' Proposed Declaratory Relief

The Court should enter Plaintiff's requested declaration to give its April 3 legal conclusions "the force and effect of a final judgment." 28 U.S.C. § 2201(a). The Court has "unique and substantial discretion in deciding whether to declare the rights of litigants," and should exercise that discretion in light of "facts bearing on the usefulness of the declaratory judgment remedy." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). A declaration should issue if "there is a substantial likelihood that the favorable court decision will bring about some change." *Atlas Biologicals, Inc. v. Kutrubes,* 50 F.4th 1307, 1329 (10th Cir. 2022) (internal quotation marks omitted).

In this case, a declaration gives effect to the April 3 Order, including all portions defining the constitutional obligations of the Special Judges who adjudicate pretrial release hearings. The court found that Special Judges routinely conduct bail hearings in a way that violates due process and equal protection, but the Special Judges cannot be enjoined to reform their practices. *See* 42 U.S.C. § 1983 (disallowing injunctions against officials in a judicial capacity unless a declaration has issued first). In the absence of an

injunction, a declaration will require all Defendants to adhere to the Court's April 3 Order and its description of applicable constitutional mandates.

Plaintiffs' proposed declaration is well-crafted because it accurately and concisely states class members' legal rights and Defendants' obligations under this Court's opinion. Most of the declaratory judgment's provisions are adopted straight from the Court's April 3 Order. But two provisions require explanation, because they answer questions left open by the Court: (1) whether pretrial release hearings must be provided within 48 hours of arrest, and (2) whether a clear and convincing evidentiary standard is required for factual findings underlying an order of detention. The answer to both questions is yes.

### A.    The State Must Provide Pretrial Release Hearing Within 48 Hours of Arrest

Arrestees are legally entitled to pretrial release hearings within 48 hours of arrest. This Court has already ruled that both due process and equal protection require Defendants to provide pretrial release hearings promptly. Doc. No. 397 at 53-54, 65-66. To define "prompt," the Court looked to Supreme Court case law addressing probable cause hearings and embraced a "48-hour requirement," but it asked the parties to brief whether Defendants are allowed a "measure of flexibility" in meeting that requirement. *Id*. at 70. Planned "flexibility" is not permitted. Delays longer than 48 hours are constitutional only in cases of true exigency. *See Powell v. Nevada*, 511 U.S. 79, 80 (1994) (for probable cause hearings, "absent extraordinary circumstances," any delay longer than 48 hours "violates the Fourth Amendment").

Under *County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991), a probable cause hearing must be held "as soon as is reasonably feasible *and in no event* later than 48 hours after arrest." *Id*. (emphasis added).  A hearing that occurs more than 48 hours after arrest can be justified only by "the existence of a bona fide emergency or other extraordinary circumstance." *McLaughlin*, 500 U.S. at 57. *McLaughlin*'s language leaves no doubt that 48 hours is a ceiling for probable cause hearings.

The exact same considerations that led the Supreme Court to adopt a 48-hour limit for probable-cause hearings apply in the bail-hearing context. Indeed, the *McLaughlin* court implicitly applied its ruling to bail hearings. Justice Scalia would have set 24 hours as the upper limit for a probable-cause determination, *id*. at 500 U.S. at 63-64 (Sclaia, J., dissentin), but the Court allowed greater flexibility to permit jurisdictions the administrative convenience of combining probable cause hearings with other preliminary proceedings "such as bail hearings." *Id*. at 58. The Court's implication was that probable cause hearings and bail hearings alike can be completed within 48 hours.

By creating a 48-hour limit, the Supreme Court sought to balance administrative efficiency against the important constitutional interest in "minimiz[ing] the time a presumptively innocent individual spends in jail." *McLaughlin*, 400 U.S. at 58. If a bail hearing, along with a probable-cause hearing, can be completed within 48 hours as *McLaughlin* implies, there is no reason to allow for greater infringement on the same "vital liberty at stake," *United States v. Montalvo-Murillo*, 495 U.S. 711, 715 (1990), by permitting more flexibility for bail hearingst. Literally, the same liberty interest is at stake for a person awaiting both probable-cause and bail hearings following arrest.

The Fifth Circuit adopted this interpretation of *McLaughlin* in *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018), *overruled on other grounds*, *Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) (en banc), which raised constitutional claims similar to those brought in this case. The district court entered an injunction requiring bail hearings within 24 hours of arrest, but the Fifth Circuit held that "the federal due process right entitles detainees to a hearing within 48 hours." *Id*. at 160. The Fifth Circuit explained that "*McLaughlin* explicitly included bail hearings within this deadline." *Id.*

The framework created by *Gerstein*, *McLaughlin*, and *ODonnell* applies here: bail hearings should happen as soon as practicable, but bail hearings can be delayed up to 48 hours after arrest. Beyond that, the government needs to demonstrate an extraordinary exigency to justify a delay in bail proceedings.

Because delays longer than 48 hours are permitted only in case of emergency, Defendants cannot maintain a scheduling process that allows for some arrestees to wait

4

more than 48 hours for a hearing in the ordinary course. *See McLaughlin*, 500 U.S. at 57. (administrative considerations, such as a desire to improve efficiency by "consolidat[ing] pretrial proceedings" or to avoid weekend hearings "does not qualify as an extraordinary circumstance"). Plaintiffs are entitled to a declaration that bail hearings must be scheduled no more than 48 hours after arrest, except in emergency situations.

### B.    The State Must Show that Detention Is Justified by Clear and Convincing Evidence

Paragraph 2(i) of Plaintiffs' proposed declaration calls for a clear and convincing standard of proof for bail-hearing determinations that detention is necessary and alternative conditions are insufficient to protect public safety and avoid arrestees' flight. In its April 3 Order, the Court suggested that a preponderance of the evidence might suffice. Doc. No. 397 at 51, 70-71.

Allowing the government to jail a presumptively innocent person based on a borderline showing of need would run counter to a long history of Supreme Court precedent finding due process to require at least a "clear and convincing" standard when physical liberty is at risk. For example, in *Addington v. Texas*, 441 U.S. 418 (1979), in reviewing a civil commitment proceeding, the Court explained that "the individual's interest in the outcome of a civil commitment proceeding," and in particular the threatened "[l]oss of liberty," is of "such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." *Id.* at 427. The "clear and convincing" standard enables the government to achieve its interest when it has a convincing basis but rigorously protects the individual right at stake. *See id.* at 424.

Indeed, the clear and convincing standard applies whenever "the individual interests at stake in a state proceeding are both particularly important and more substantial than mere loss of money." *Santosky v. Kramer*, 455 U.S. 745, 756 (1982). The Supreme Court has required the clear and convincing evidence standard in deportation

proceedings, denaturalization proceedings, civil commitment proceedings, parental rights termination, civil fraud proceedings, and in a variety of other proceedings implicating important interests. *See Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 282-83 (1990).

The April 3 order observes that, in the Court's own long experience, the difference between a preponderance and clear-and-convincing standard has never seemed to affect the outcome. Doc. No. 397 at 71 n. 51. The Tenth Circuit has likewise observed that "it may be difficult to articulate the subtle differences between . . . standards of proof, and equally difficult to know how they ultimately affect the decisionmaking." *United States v. Schell*, 692 F.2d 672, 676 (10th Cir. 1982). Even so, the Tenth Circuit concluded, "testing the evidence presented by a given standard of proof 'is more than an empty semantic exercise.'" *Id*. (quoting *Addington*, 441 U.S. at 425). "[I]ncreasing the burden of proof is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate [outcomes] will be ordered." *Addington*, 441 U.S. at 427.

The evidentiary standard "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Id*. at 423. Here, as the April 3 Order emphasizes, the decision of whether to jail someone pretrial is profoundly important. The "liberty interest [at stake] is particularly strong," because the government "proposes to confine an individual who is accused but not convicted," and puts at risk the person's job, income, and relationships. Doc. No. 397, 46.  Because of the importance of physical liberty, the Supreme Court has (to Plaintiffs' knowledge) never found that due process allows for a preponderance standard when a presumptively innocent person's liberty is at stake. *Cf. Vance*, 444 U.S. at 266 (statutory preponderance standard did not violate due process where proceedings at issue "do not threaten a loss of liberty"). A heightened standard has been applied even when the state has a countervailing interest in the public's safety. *See Addington*, 441 U.S. at 426 (need for civil commitment must be shown by clear and convincing evidence, even where state claims risk of dangerousness).

6

While noting that the *Salerno* Court "applauded the drafters of the Bail Reform Act for incorporating a 'clear and convincing' standard," this Court in its April 3 Order observed that that *Salerno* had also found that the BRA's extensive safeguards exceeded constitutional requirements. Doc. No. 397 at 73. But *Salerno*'s rejection of the facial challenge to the BRA relied repeatedly on the statute's clear and convincing evidence requirement, referencing it half a dozen times, including in the opening sentence of the opinion. *See* 481 U.S. at 741, 742, 744, 750-51. Although the Court was not asked to decide whether clear and convincing evidence was constitutionally required, *Salerno*'s pervasive references to the standard in light of *Addington* strongly suggest it is. So does the fact that the Court, in subsequently striking down Louisiana's system for "detention of insanity acquittees who are no longer mentally ill," *Foucha v. Louisiana*, 504 U.S. 71, 81 (1992), repeatedly emphasized the clear and convincing standard, *see id.* at 80-81 (citing *Salerno*).

Lower courts, interpreting *Salerno*, have consistently required the same. In *Lopez-Valenzuela v. Arpaio*, the en banc Ninth Circuit struck down a state pretrial detention statute in part because, unlike the Bail Reform Act, it did not require the government to prove by clear and convincing evidence that detention was necessary. 770 F.3d 772, 784-85 (2014). As the court explained, one of the features that *Salerno* explicitly relied on was that the Act required the government "to prove by 'clear and convincing evidence' that the individual presented 'a demonstrable danger to the community' and that 'no conditions of release c[ould] reasonably assure the safety of the community.'" *Id.* at 785. Most recently, the Supreme Courts of California and Nevada, as well as a federal district court in Louisiana, held under the federal Constitution that "[a]n arrestee may not be held in custody pending trial unless the court has made an individualized determination that . . . detention is necessary to protect victim or public safety, or ensure the defendant's appearance, and there is clear and convincing evidence that no less restrictive alternative will reasonably vindicate those interests." *In re Humphrey*, 482 P.3d 1008, 1022 (Cal. 2021); *see also Valdez-Jimenez v. Eighth Judicial District Court*, 460 P.3d 976, 987 (Nev. 2020) (same); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 313 (E.D. La. 2018).

7

The April 3 Order also notes that federal courts routinely apply a preponderance standard when deciding whether to detain someone as a flight risk under the Bail Reform Act. Doc. No. 397 (70-71). But courts have done so as a matter of statutory interpretation; the cases cited in the April 3 Order do not consider, because they were not asked, whether the standard violates due process. *Cf. Vance*, 444 U.S. at 266 (cases applying statutory standard in cases that "did not purport to be . . . constitutional ruling[s]" irrelevant to analysis of standard required by due process). None of these cases interpreting the BRA "analyze[d] the constitutional ramifications" of a preponderance standard. *United States v. Motamedi*, 767 F.2d 1403, 1412 (9th Cir. 1985) (Boochever, J., concurring in part and dissenting in part). And as a matter of due process, as later courts have explained, there is no reason that the standard should vary based on why an individual is detained. Whatever the basis, the deprivation of the individual's liberty— which is the rationale for the heightened standard—is the same. *Kleinbart v. United States*, 604 A.2d 861, 870 (D.C. 1992). There is no compelling reason that "the degree of confidence our society thinks [it] should have in the correctness of factual conclusions," *Santosky*, 455 U.S. at 755, should be *lower* when the question is whether a person poses a risk of flight than when the question is whether the person poses a risk of danger. *See Motamedi*, 767 F.2d at 1415 (Boochever, J., concurring in part and dissenting in part) (applying *Mathews* and finding that "due process requires that . . . the government must prove the facts supporting a finding of flight risk by clear and convincing evidence"). Moreover, no Supreme Court or Tenth Circuit authority holds that the due process permits a lower evidentiary standard when assessing either dangerousness or risk of flight.

Although the issue should be uncontroversial in light of *Addington* and *Foucha*, the case law on the proper constitutional standard of proof when determining flight risk is surprisingly thin. Only one court appears to have addressed in depth the question of whether the standard of proof for detention based on flight risk is the same as for detention based on safety risk. In *Kleinbart v. United States*, the D.C. Court of Appeals held that the "clear and convincing" evidence standard should apply to determinations

8

about whether to order pretrial detention based on flight risk. The court explained that "[a] defendant's liberty interest is no less—and thus requires no less protection—when the risk of his or her flight, rather than danger, is the basis for justifying detention without right to bail." *Id.* at 870. The court therefore held: "Although the federal Bail Reform Act could be construed—purely as a matter of statutory construction—to require only a preponderance standard in risk of flight cases . . . we believe that *Salerno*'s emphasis on the clear and convincing evidence standard to sustain the constitutionality of that statute as applied to danger necessarily carries over, as a requirement of due process, to risk of flight cases." *Id.* This analysis has been adopted by the American Bar Association's Criminal Justice Standards. *See* ABA Standards for Criminal Justice: Pretrial Release 10-5.8(a) (3d ed. 2007) ("clear and convincing" standard applies to decisions relating to dangerousness and risk of flight).

The holdings and reasoning in *Addington*, *Foucha*, *Salerno*, *Lopez-Valenzuela*, *Humphrey*, and *Kleinbart* demonstrate that the deprivation of the fundamental right to bodily liberty requires a heightened standard of proof by clear and convincing evidence whether detention is being contemplated due to a risk of flight or a risk of danger.

### III.   The Court Should Adopt Plaintiffs' Proposed Injunctive Relief

The terms of injunctive relief that Plaintiffs propose will address the constitutional harms inflicted by the administrative aspects of Tulsa County's pretrial bail system. The proposed injunction will not impose disproportionate hardship on Defendants, undermine the public interest, or require this Court to take on the task of managing the Tulsa County Court system.

Plaintiffs propose seven items of injunctive relief. They ask the Court to order:

- the Sheriff to (1) schedule arrestees for pretrial release hearings within 48 hours after their arrests; (2) provide arrestees with written notice of their pretrial release hearings at the time of booking; (3) facilitate meetings between detainees and their attorneys prior to pretrial release hearings; and (4) stop

detaining arrestees on the basis of money bail conditions once they no longer
bear any indication of having been constitutionally imposed;

- the Presiding Judge to (1) maintain a schedule of pretrial release hearing
  dockets that will allow for all arrestees to appear within 48 hours of arrest; and
  (2) provide a mechanism for making a record of release hearing orders; and

- the Presiding Judge and Sheriff together to provide for an in-person or virtual
  forum for pretrial release hearings that enables arrestees' unhindered
  participation and access to counsel and evidence.

The Court has broad discretion to impose injunctive relief where Plaintiff shows:
"(1) actual success on the merits; (2) irreparable harm unless the injunction is issued;
(3) the threatened injury outweighs the harm that the injunction may cause the opposing
party; and (4) the injunction, if issued, will not adversely affect the public interest." *Sw.
Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009).

Plaintiffs satisfy each element.

### A.     Plaintiffs Have Succeeded on the Merits and Require an Injunction to Address Ongoing Irreparable Harm

The Court should grant injunctive relief because it is necessary to avoid
irreparable loss of pretrial liberty interests to which class members are entitled on the
merits. The proposed injunction safeguards plaintiffs' rights to: (1) prompt pretrial
release hearings, (2) advance notice of issues to be decided at the hearings,
(3) meaningful access to counsel to assist at the hearings, (4) a hearing forum that allows
for meaningful participation, (5) a written record of findings from the hearing, and (6) an
end to Defendants' practice of jailing people who would be released if they had more
money, and who have not had a meaningful release hearing. The Court has held on the
merits that each of these elements is something to which arrestees have a constitutional
right.

Any deprivation of constitutional rights is an irreparable harm, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016), and an unconstitutional deprivation of physical liberty is especially harmful, *United States v. Bogle*, 855 F.2d 707, 710-11 (11th Cir. 1988). In its April 3 Order, the Court "discussed in detail" the importance of a presumptively innocent person's right to "freedom from pretrial restraint," describing it as "no ordinary right." Doc. No. 397 at 67. Plaintiffs are entitled to an injunction to protect this interest.

The second remedy of an injunction is appropriate to protect Plaintiffs from irreparable injury, alongside the declaration that they seek. Plaintiffs presume that, when the Court issues a declaration, Defendants will act in good faith not to violate its terms. But while the declaration details what Tulsa County's pretrial system, as a whole, must provide, it does not assign the execution of specific, defined tasks to particular defendants to carry out necessary changes. *Compare Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989) (a declaratory judgment will "clarify or settle the legal relations in issue"), *with* Fed. R. Civ. P. 65(d) (injunctions must "describe in reasonable detail . . . the act or acts restrained or required").

In some circumstances, a declaration alone is enough to protect a plaintiff's interests. For example, "a district court can generally protect the interests of a federal plaintiff" against prosecution under an unconstitutional statute "by entering a declaratory judgment" declaring the statute illegal. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). But here, more is required to protect class members from daily constitutional injury than refraining from a single forbidden action. Fixing Defendants' pretrial release system requires coordinated, affirmative action by all of the Defendants. Plaintiffs' proposed injunction ensures that the Sheriff and Presiding Judge take the required action.

11

**B.      Plaintiffs Interests in Injunctive Relief Outweigh the Defendants'
Burden in Being Subjected to It**

The severity of arrestees' ongoing constitutional injuries outweighs any harm to
Defendants of being ordered to correct them by means of Plaintiffs' proposed injunction.
The Court reached a closely related conclusion when applying *Mathews* to evaluate the
merits of Plaintiffs' procedural due process claims. The Court observed that "fiscal and
administrative burdens" attend the government's provision of virtually all procedural
protections, Doc. No. 397 at 44 (internal quotation marks omitted); constitutionally
mandated procedural protections in the criminal justice system are, in fiscal and
administrative terms, expensive, *id*. at 56. Plaintiffs acknowledge that each of the
injunctive remedies they seek will cost the public money and the Defendants time. But
the actions that Plaintiffs demand of Defendants are not extreme. As discussed in detail
below, they mostly involve adjustments to practices in which Defendants already engage.
And given that "the liberty interest of an individual who stands accused but not convicted
is especially strong . . . [t]he fiscal and administrative burden of the procedural
safeguards [the Constitution requires] . . . , though not trivial, do not outweigh the
importance, under the Constitution, of the interests to be protected by those safeguards."
*Id*. at 57. The injunction's seven specific administrative requirements will go a substantial
way toward protecting class members' pretrial liberty interests without extreme burden
on the Sheriff and the Presiding Judge.

In addition, Plaintiffs drafted the injunction to guard against the injunction itself
becoming a burden, beyond the burden of the specific actions it requires. The proposed
injunction "state[s] its terms specifically" and "describe[s] in reasonable detail . . . the act
or acts restrained or required," Fed. R. Civ. P. 65(d)(1), leaving no uncertainty about
what is expected. *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("[B]asic fairness
requires that those enjoined receive explicit notice of precisely what conduct is
outlawed."). At the same time, however, the proposed injunction does "not mandate[] . . .
a specific protocol" for complying with its terms. *Courthouse News Serv. v. New Mex.*

*Admin. Off. of Cts.*, 53 F.4th 1245, 1261 (10th Cir. 2022). It tells the Sheriff and Presiding Judge what to do, but not how to do it, giving them discretion to carry out its mandates in the manner most compatible with institutional resources, priorities, and systems. The results demanded by the injunction are simply described and easily evaluated, so that it will not lead to burdensome monitoring obligations or extensive enforcement litigation.

With respect to the Presiding Judge, Plaintiffs have also been mindful of federal courts' unwillingness to issue injunctions that will "require . . . supervision by the federal court over the conduct of" state court proceedings. *O'Shea v. Littleton*, 414 U.S. 448, 501 (1974). Accordingly, Plaintiffs have strictly limited their proposed injunctive relief against the Presiding Judge to a subset of her enjoinable administrative responsibilities: those relating to the logistics of pretrial release hearings, and not their adjudication.

As a result, Plaintiffs' proposed injunctive relief does not raise a specter of future enforcement actions that would require this court to supervise the judicial functions of the Tulsa County district court, thereby "indirectly accomplishing the kind of interference that [*Younger* and *O'Shea*] . . . sought to prevent," through an "ongoing federal audit of state criminal proceedings." *Courthouse News Serv.*, 53 F.4th at 1258 (10th Cir. 2022) (internal quotation marks omitted). Plaintiffs are optimistic that "further proceedings to enforce an injunction would be unlikely" in this matter, because they trust that state officials "would comply with any federal injunction" that sets out specific and measurable obligations, as do the injunctive terms that Plaintiffs propose. *Id*. at 1261. But, as explained in detail below, even if enforcement efforts are needed, they will not lead this Court into "the situation in which a federal court would, on a case-specific basis, direct and monitor state proceedings." Doc. No. 397 at 32.

### 1.  Pretrial Release Hearings within 48 Hours of Arrest

The proposed injunction ensures that all arrestees appear for pretrial release hearings with 48 hours by requiring the Presiding Judge to schedule hearing dockets with sufficient frequency, and requiring the Sheriff to produce each arrestee for their

13

appearance within 48 hours of arrest. Ex. 1 at 4 ¶ 1, 5 ¶ 1. Neither of these is a significantly burdensome task. The Presiding Judge already determines the docket schedule for pretrial release hearings, and as recently as six months ago, maintained a schedule that would have satisfied the injunction. *See* Doc. No. 397 at 10. And the Sheriff already is responsible for scheduling and producing arrestees for pretrial release hearings. Under the terms of the injunction, their responsibilities will not change; only their priorities and considerations with which they carry out those responsibilities will change.

In addition, assessing compliance is uncomplicated. Plaintiffs counsel could easily evaluate the Presiding Judge's compliance using only a copy of the docket schedule. Assessing the Sheriff's compliance requires looking at a spreadsheet of data that the Sheriff already maintains, which shows, among other things, the date and time at which each arrestee was booked into the jail, and the date and time of each of their in-custody court appearances. *See* Doc. No. 369-11 (Rept. of Pl. Expert Dr. Copp, relying on spreadsheet of jail data to determine the number of arrestees who appeared for release hearings within 48 hours), at 2-3 ¶¶ 7, 10-11); Doc. No. 369-12 (Rept. of Def. Expert Dr. Morris, doing same), at 1, 7.

### 2. Advance Notice

The proposed injunction requires the Sheriff to provide arrestees, upon their booking into the Tulsa County Jail, with written notice of their right to a pretrial release hearing and what such a hearing entails. Ex. 1 at 4 ¶ 2. Advance notice of the issues that will be considered at their pretrial release hearing and the manner in which the hearing will be conducted is a core procedural right. *See* Doc. 397 at 51. Notice offers arrestees a "chance to marshal the fact" in their favor. *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974) (discussing prison disciplinary proceedings). Notice should "be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation." *United States v. Watts*, 513 F.2d 5, 6 (1975) (discussing juvenile delinquency proceedings); *see also Cox v. United States*, 345 F. Supp. 2d 1218, 1222-23 (W.D. Okla. 2004) (taxpayer constitutionally entitled to notice in advance of hearing to

determine whether to impose a levy). The Sheriff is best suited to provide advance notice at close to no administrative and fiscal cost, by having booking officers at the jail distribute an additional piece of paper along with the information he already provides to each arrestee the moment they enter the jail. Assessing compliance is also thoroughly uncomplicated and could be accomplished by occasional unscheduled audits by Plaintiffs' counsel or sworn affidavits from Sheriff's Office employees. *See, e.g.*, *Lomax v. Lonmont United Hosp. & Centura Health*, No, 23-CV-2298, 2023 WL 7924735, at *23 (D. Colo. Nov. 16, 2023) (ordering enjoined party to grant prevailing party "reasonable access to its worksite to monitor compliance with [a] . . . requirement" to post information).

### 3.  Pre-Hearing Access to an Attorney

The proposed injunction requires the Sheriff to facilitate meetings between attorneys and in-custody arrestees before their scheduled pretrial release hearings. Arrestees' inability to meet with counsel to prepare for their hearings deprives them of any meaningful right to counsel during the hearings. Doc. No. 397 at 55. Accommodating attorney-client meetings at the jail undoubtedly requires some investment of Sheriff's Office resources, but it is not an especially burdensome investment. Accommodating confidential attorney-client communications is part of the daily business of a jail. And before COVID, it was standard practice for attorneys to meet with arrestees at the jail before their pretrial release hearings. Doc. No. 369-5 (Southerland Dep., 55:17-56:18). Requiring the Sheriff to restore attorneys' access to their clients in advance of a hearing is not a disproportionate demand. Again, Plaintiffs counsel could easily monitor compliance with unscheduled audits or sworn affidavits.

### 4.  Non-Enforcement of Illegal de Facto Detention Orders

The proposed injunction prohibits the Sheriff from enforcing monetary bail conditions that have been imposed in violation of due process or equal protection.[1] Ex 1

---

[11] Plaintiffs maintain that enforcing *any* pre-set bail amount to detain people who cannot pay, while releasing those who can, violates equal protection. But for present

at 5 ¶ 4. The Court held in its April 3 order that a pre-set monetary bail condition becomes illegal once 48 hours have passed, without the arrestee having been afforded "a real bail hearing, with the procedural safeguards required by due process (enabling meaningful consideration and an individualized determination)." Doc. No. 397 at 65. The proposed injunction therefore prohibits the Sheriff from enforcing pre-set monetary bail conditions once 48 hours have passed, unless there are records: (1) of the person having attended a pretrial release hearing, and (2) of a judicial ruling imposing the bail condition, and either finding it affordable, or stating the basis for continued detention. Under the terms of the injunction, if such records exist, the Sheriff is not excused from enforcing the bail condition. If the judicial order is facially sufficient, the Sheriff is not expected or even allowed to evaluate the sufficiency of the factual or legal basis for ruling.

Far from imposing any burdens on the Sheriff, this provision alleviates a burden. Plaintiff's proposed declaratory judgment prohibits the Sheriff from enforcing illegal monetary bail conditions. The Sheriff has expressed trepidation throughout this litigation over the prospect of having to "function as a pseudo-appellate court," making his own determinations about whether orders imposing conditions of release were constitutionally imposed, and facing prosecution should he err. Doc. No. 371 at 12. This injunctive provision, defining precisely when he is and is not prohibited form enforcing a bail condition, lifts that burden from him.

This provision also presents no particular threat to public safety. The only people who might be released under its terms are people who had pre-set bail amounts assigned at booking and would have been immediately released if they had had more money.

As with the other injunctive provisions, assessing compliance is a straightforward matter, achievable by reviewing same jail data referenced above, showing each arrestee's booking date, in-custody appearance dates, release conditions, and release dates.

---

purposes, and without intent to abandon that position, Plaintiffs propose relief based on the Court's ruling.

### 5.  Public Records of Pretrial Release Hearing Determinations

The proposed injunction imposes on the Presiding Judge an obligation to arrange for the creation of publicly accessible records of pretrial release-hearing determinations, findings of fact, and conclusions of law. Ex. 1 at 5 ¶ 2. Like other of the injunctive provisions, this obligation will impose fiscal and administrative burdens on the Presiding Judge and the Tulsa County District Court, but that is not enough to overcome an arrestees' interest in a reasoned determination based on evidence if he is to lose his liberty pending trial. *See supra* Part II.B. It leaves the method of recording up to the Presiding Judge, so that she may choose the approach that is most compatible with the court's available resources.

Also like the other provisions, this one presents no risk of requiring this Court to "examine the administration of a substantial number of individual cases to provide the requested relief." *Courthouse News Serv.*, 53 F.4th at 1260. The injunction does not require the Presiding Judge to ensure that the contents of the orders are constitutionally sufficient, only that they are recorded. Compliance is easily assessed by reviewing docket entries to see whether they contain written opinions, transcripts, or recordings of the bail-hearing judges' determinations and their bases. *See id.* at 1260 (injunction requiring publication of court records was proper because, "to determine whether a state court is making complaints available on the day they are filed, a federal court would not need to engage in an intensive, context-specific legal inquiry").

### 6.  Hearing Forum That Allows for Arrestee's Unhindered Participation

The final element of injunctive relief is directed at both the Sheriff and the Presiding Judge and requires them to create a forum for pretrial release hearings, which eliminates the many logistical barriers that currently prevent arrestees' meaningful participation in their own hearings. Ex. 1 at 6 ¶ 1. Plaintiffs do not ask this Court to

17

prescribe whether the hearing takes place in person or electronically, at the jail or at the courthouse. It leaves those decisions to the discretion of the Presiding Judge and Sheriff, who are in the best position to understand the administrative needs and resources of their respective institutions. The same balance-of-harms analysis applies here as above. Providing hearings with all of the due process-required protections is logistically burdensome and expensive. But it is also required by the Constitution.

As with all other aspects of Plaintiffs' proposed injunctive relief, Defendants' compliance can be assessed by a simple audit: attending hearings and observing how they are conducted, logistically.

*    *    *

The injunctive relief proposed by Plaintiffs will be transformative for class members. The proposed injunction will guarantee that arrestees jailed on unaffordable bonds have prompt access to a forum for which they are prepared, armed with an understanding of the proceedings and the assistance of counsel, and an ability to engage with all relevant arguments and evidence. If they are detained at the pretrial release hearing, they will have access to a court record stating the reasons for their detention, and if no reasons are given, or no hearing has been offered, they will be released. These changes will impose some burdens on Defendants, but they are burdens required by the Constitution.

## IV.   The Court Should Permit the Parties to Suggest Compliance Timelines and Information-Access Requirements After Attempted Mediation

The Judgment in this case should include timelines for Defendants' compliance with the injunction, and it should provide for plaintiffs to have access to the readily available information they need to confirm compliance. However, Plaintiffs do not feel adequately informed to make a concrete proposal on either of these matters. Plaintiffs would benefit from more information both about the available data, and the measures that Defendants propose to take should the Court grant Plaintiffs' requested relief. Plaintiffs welcome the Court's suggestion of mediation on these matters.

18

Date: April 17, 2024

/s/ Hayley Horowitz
Hayley Horowitz
Still She Rises, Inc.
608 E. 46th Street
North Tulsa, OK 74126
hayleyh@stillsherises.org
phoebek@stillsherises.org
918-392-0867

Marco Lopez*
Civil Rights Corps
1601 Connecticut Avenue NW
Suite 800
Washington, D.C. 20009
marco@civilrightscorps.org
202-844-4975

Allison Holt Ryan*
Hogan Lovells US LLP
555 13th Street NW
Washington, D.C. 20004
allison.holt-ryan@hoganlovells.com
202-637-5600

Peter William Bautz*
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
peter.bautz@hoganlovells.com
212-918-3000

*Admitted to practice *pro hac vice*

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiffs' Supplemental Summary Judgment Brief was served on November 14, 2023 via the Northern District of Oklahoma CM-ECF system upon all counsel of record.

/s/ Hayley Horowitz