CASE NO. 18-cv-298-SPF-JFJ

_____

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

_____

**RICHARD FELTZ and ASHTON LEE DENNIS,**
On behalf of themselves and all others similarly situated,

**Plaintiffs,**

**v.**

**VIC REGALADO, *et al.*,**

**Defendants.**

_____

## DEFENDANT STATE JUDGES'
## RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW

_____

STEFANIE E. LAWSON, OBA#22422
ERIN M. MOORE, OBA#20787
DEVAN A. PEDERSON, OBA#16576
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921   Facsimile: (405) 521-4518

*Attorneys Defendant State Judges*

April 29, 2024

## TABLE OF CONTENTS

**TABLE OF CONTENTS** .................................................................................................................. i

**TABLE OF AUTHORITIES** ........................................................................................................ ii

**STATE JUDGES' RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW** .................................................................................................................................... 1

    *Evolution of Bond Docket* ............................................................................................. 1

    *Estimated Timeline of Changes/Adjustments since January 2021* ................. 3

    *Caseload and Judicial Assignments in Tulsa County* ....................................... 4

    *Court Services Capacity* ................................................................................................ 7

**Plaintiffs' Requested Relief as Proposed should be Rejected** ............................ 7

    *Factfinding and Burden of Persuasion* ................................................................... 7

    *Plaintiffs' Requested Injunctive Relief* ................................................................. 11

    *Hearings held within 48 hours of arrest* ............................................................. 13

    *"Affordability" and availability of resources* ................................................... 15

    *Proposed requirements for representation* ......................................................... 16

    *Adequacy of the Record* ............................................................................................. 18

**CONCLUSION** ................................................................................................................................ 19

**CERTIFICATE OF SERVICE** ................................................................................................... 20

## TABLE OF AUTHORITIES

### CASES

*Bearden v. Georgia,*
461 U.S. 660 (1983)..................................................................................10

*Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.,*
824 F.3d 665 (8th Cir. 1987) ....................................................................12

*County of Riverside v. McLaughlin,*
500 U.S. 44 (1991)....................................................................................14

*Ex parte Ramirez-Hernandez,*
642 S.W.3d 970 (Tex. App. 2022)..............................................................9

*Gerstein v. Pugh,*
420 U.S. 103 (1975)..................................................................................18

*Medina v. California,*
505 U.S. 473 (1992)................................................................................8, 9

*Schmidt v. Lessard,*
414 U.S. 473 (1974)..................................................................................12

*State v. Zhukovskyy,*
174 N.H. 430 (2021) .................................................................................10

*U.S. v. Delker,*
757 F.2d 1390 (1985)................................................................................18

*U.S. v. Salerno,*
481 U.S. 739 (1987)..................................................................................17

*U.S. v. Smith,*
79 F.3d 1208 (1996)............................................................................17, 18

*U.S. v. Quapaw,*
2022 WL 3359365 .....................................................................................17

*Winbush v. State,*
2018 OK CR 38............................................................................................11

## STATUTES

12 O.S. § 39............................................................................................4

19 O.S. § 138.5.........................................................................................16

20 O.S. § 92.15(a)....................................................................................4

20 O.S. § 106.1........................................................................................19, 20

20 O.S. § 106.4........................................................................................20

20 O.S. § 122............................................................................................5

20 O.S. § 122(2)(c)....................................................................................5

20 O.S. § 122(4)........................................................................................5

20 O.S. § 123............................................................................................5

22 O.S. §1101............................................................................................4

22 O.S. § 1105.3(A)....................................................................................7

18 U.S.C. § 3142(f)(2)................................................................................14

28 C.R.F. § 20.33......................................................................................2

## RULES

Rules for Tulsa County Rule 11...................................................................2

Fed. R. Civ. P. 65(d) ..................................................................................11, 12

**DEFENDANT STATE JUDGES'**
**RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT**
**AND BRIEF IN SUPPORT**

*Evolution of Bond Docket*

As Judge Musseman described in his deposition, the implementation of a separate bond docket is "a process and not an event"; (*See Musseman Depo,* attached as Exhibit 1 at p. 105, ln 22 - p. 106, ln 8) and has continued to evolve from its inception to the present as course corrections, improvements, and technology upgrades have been made over the years. While Defendant State Judges continue to dispute Plaintiffs' characterization of the bond docket proceedings at the time discovery closed in January 2021, it will serve the Court to understand how the docket has evolved to its current state. The court continues to work toward resolving the tension between consistency, individualization, and efficiency. To that end, there have been various changes and updates to the process since discovery closed.

As has been the case throughout, prior to each docket, the special judge assigned reviews the probable cause affidavits for those arrested without warrant and scheduled to appear. Court services personnel currently collect a pretrial interview questionnaire from arrestees that are scheduled to appear on the docket. *See Pretrial Interview Questionnaire,* attached as Exhibit 2. The questionnaire includes information about employment, wages, disability, residency, mental health, drug use, probation status and military service. The completed questionnaire is then distributed to the court, the state, and the public defender.

The arrestees appear by video through MS Teams from a courtroom at the jail. The judge is in a courtroom in the courthouse during the week and may appear remotely on the weekend or a holiday. The assistant district attorney and defense attorneys have the option to appear from the jail, the courthouse, or remotely. The court, the ADA and the public defender assigned all have copies of the questionnaire,

the probable cause affidavit, and a summary of the criminal history prepared by court services.[1]

The courtroom used for the bond docket is open to the public during the week and the MS Teams link is published on the Tulsa County District Court website. *Tulsa County District Court Website of Bond Docket - https://www.tulsacountydistrictcourt.org/vh_bond.html,* attached as Exhibit 3. The link allows viewers to participate in the proceedings should the need arise, though recording the proceedings is prohibited by Local Rule without the express permission of the judge presiding over the proceedings. Rules for Tulsa County, Rule 11. *See Rule 11,* attached as Exhibit 4.

The bond docket judge calls each arrestee to the podium and announces the charges of arrest and probable cause determination for the offenses of arrest.[2] The docket sheet, also distributed to the PD and ADA indicates the identity, offense(s) of arrest, and preset bond (if any) for each arrestee. The judge then reviews the pretrial packet and asks questions of the arrestee. The PD and the ADA are invited to make argument or present witnesses. The court then announces the conditions of release. The court memorializes its findings and decision on a bond docket findings

---

[1] The NCIC is a federal law enforcement record and its dissemination is restricted by Title 28, Part 20, CFR eCFR :: 28 CFR 20.33 -- Dissemination of criminal history record information. The summary prepared by court services includes information from the NCIC. The arrestee, however, is presumably familiar with his or her own criminal history.

[2] Defendant State Judges have attached an audio only recording of the bond docket proceedings held on Tuesday, April 23, 2024, along with the bond docket sheet and the bond determination findings as Exhibit 5. The audio recording of the bond docket is being filed conventionally per ECF policy. [Doc. 402]. The recording is not an official court record and is provided solely as a demonstration of a typical docket for this Court's convenience. The docket sheets are also not public records. The bail findings forms become public record once they are filed with the Court Clerk.

form. The findings form includes the information considered by the court for each arrestee and the court's decision based on those findings, including employment status, appearance history, and threat assessment. The bond determination order is then filed with the NF[3] case and transferred to the CF or CM in the event the DA files charges (for people arrested without a warrant). *See Blank Bond Determination Order,* attached as Exhibit 6. Those arrested pursuant to a warrant already have a CM or CF file created and the bond findings are filed in the case.

### *Estimated Timeline of Changes/Adjustments since January 2021*

Covid caused significant disruption to the bond docket which is reflected in the record. However, Defendant State Judges have continued to make adjustments to the bond docket.[4]

Beginning in January 2021 the technology upgrades (paid for with Covid relief money) were mostly installed. The upgrades included multiple cameras in the courtroom showing the bench, counsel table, and gallery. Additional microphones were also installed at the counsel table, bench and witness stand. Attorneys have been regularly instructed to remain seated to make argument so that those present remotely could hear the proceedings. While the necessary licenses for MS Teams were being secured, bond dockets were using a mix of personal computers, laptops and a video conferencing system supplied by the PD's office to conduct proceedings. Court services was gathering relevant information about an arrestee prior to the daily docket and disseminating the information to the court, the DA, and the PD via email before the docket.

---

[3]NFs, or "not filed" case numbers and contents (typically the pc affidavit and any bond information) are not publicly available via oscn.

[4]Defendant State Judges will present a witness at the hearing on May 2, 2024, if necessary, to support the timeline.

The bond docket began utilizing the MS Team system in March 2021, including the multiple view camera.

In May 2021, a Bond Docket Findings form was tested for every arrestee to determine whether a written form order was logistically feasible and could efficiently capture the relevant information. These forms were considered judicial notes and not filed of record or disseminated to any of the participants for the duration of the trial period.

By January 2022 a link to the docket became publicly available via the Tulsa County District Court website. (Ex. 3). The jail and attorneys participating remotely use the link. The courtroom is open to the public during the week and allows participation in person for attorneys and witnesses. All judges received training on how to use the system.

In November 2022 an Oklahoma statutory change required written findings for bail decisions on certain offenses. *See* 22 O.S. § 1101. The previously tested Bond Docket Findings form was edited to reflect the statutory language and then implemented.

To alleviate confusion as to how the form orders were to be filed, the Presiding Judge issued an Administrative Order in March 2024 requiring each Bond Docket Findings Order to be filed of record when/if a case is charged. *See AO-2024-8*, attached as Exhibit 7. These orders are available as a pdf on oscn unless prohibited by statute.[5]

### *Caseload and Judicial Assignments in Tulsa County*

The Oklahoma Legislature has determined that Tulsa County should have fourteen (14) District Judges. 20 O.S. § 92.15(a). District judges have general

---

[5]Oklahoma bars certain documents in criminal cases from being posted online. *See* 12 O.S. § 39. All documents in public case files are available from the court clerk.

jurisdiction. The Legislature has also determined that Judicial District 14 should have at least three (3) special judges and has set forth the mechanism by which additional special judges can be allocated/authorized (by request by the majority of district judges and approval of the Chief Justice of the Oklahoma Supreme Court). *See* 20 O.S. §§ 122; 122(2)(c); 122(4). Special Judges have limited jurisdiction. *See* 20 O.S. § 123.

A general breakdown of total case assignments from January 2021 (at the time discovery closed) to April 15, 2024[6] follows:

- Juvenile docket:
  - o One (1) District Judge assigned to the juvenile docket, 866 assigned cases, 233 open cases;
  - o Three (3) special judges assigned to the juvenile deprived and delinquent docket, 4,096 total cases assigned, 1,396 open cases;
  - o One (1) special judge assigned to juvenile family/domestic juvenile docket 2,957 total cases assigned, 1,314 open cases
- Probate/adoptions/guardianships docket:
  - o One (1) District Judge assigned to 7,240 open cases
- Family and Domestic Docket:
  - o One (1) District Judge assigned to docket; 1,704 total cases assigned, 620 open cases; The District Judge on the Family docket also handles the felony domestic violence cases, of which 816 total cases are assigned and 137 cases are open.
  - o Four (4) special judges assigned to the FD Docket; 11,880 total assigned, 4,722 open cases.

---

[6]Assigned cases indicates the total number assigned over the relevant time period. Open/active cases are assigned cases without a final disposition. *See Administrative Office of the Courts Data,* attached as Exhibit 9.

- Criminal Felony Docket:
    - o Five (5) District Judges (special judges do not have jurisdiction to adjudicate felony cases) 21,305 total cases assigned, 12,960 cases open/active
- Civil Division:
    - o Five (5) district judges assigned to the civil division, 16,141 total cases assigned, 3,576 active cases
    - o Three (3) Special Judges cover – 8,315 pending civil cases as well as the name change docket with 108 pending cases and civil mental health docket with 654 pending cases;
    - o small claims has 2,503 pending cases
- Civil docket/veteran's court/re-entry program:
    - o One (1) district judge, 3,186 total assigned cases, 773 open cases
- Protective Order Docket:
    - o One (1) Special judge, 14,268 total assigned cases, 4,627 open cases awaiting disposition
- DUI/Drug Court:
    - o One (1) Special Judge, 604 total assigned cases, 279 active participants
- Preliminary hearings/mental health court:
    - o One (1) special judge; 367 admitted participants to mental health court, 116 active participants
- Criminal Misdemeanor Docket (includes youth drunk driving intervention and misdemeanor diversion):
    - o One (1) Special Judge – 4,176 CMs filed in 2021, 4,354 CMs filed in 2022, 3,910 CMs filed in 2023, and 1,450 CMs filed as of 4/15 in 2024

- Felony preliminary hearings:
    - One (1) special judge, 5,023 CFs filed in 2021; 4,857 CFs filed in 2022; 4,618 CFs filed in 2023, 1,460 CFs filed as of 4/15 in 2024
- Miscellaneous criminal docket (arraignments, bond docket, cost docket, property recovery docket and DPS docket):
    - One (1) Special Judge, 9,199 arraignments (CF +CM) in 2021, 9,211 arraignments (CF + CM) in 2022, 8,528 arraignments (CF + DM) in 2023, 2,910 arraignments in 2024 as of April 15, 2024
    - NFs ("not filed" cases created for documents pertaining to warrantless arrests and bond decisions) – 8,883 NFs filed in 2021; 8160 NFs in 2022; 7,847 NFs in 2023; and 2,501 NFs filed in 2024 as of April 15, 2024

### Court Services Capacity

The Tulsa County Board of County Commissioners established court services pursuant to 22 O.S. § 1105.3(A). It provides resources for all aspects of court programs, not just pretrial release services. For instance, they may have approximately 150 GPS units total available for use, but those units are used in pretrial release, diversion, and post-conviction (probation, deferred, etc.) programs. Court Services is funded through various grants, program and participant fees, and by the Board of County Commissioners. There are approximately 630 active pretrial clients utilizing court services in some fashion. Significant expansion of participants in the pretrial programs through court services would require additional staff and increased funding would need to be secured.

## Plaintiffs Requested Relief as Proposed should be Rejected

### Factfinding and Burden of Persuasion

Plaintiffs' proposed order provides that the State must prove by clear and convincing evidence each of the factual determinations made in support of a bail determination:

2. A pretrial release hearing does not comply with due process unless the following conditions have been met:

f. If an order of detention is entered at the pretrial release hearing—including a de facto order of detention resulting from the imposition of a financial condition of release that the arrestee cannot immediately afford to pay—a ruling stating the reasons for detention, including the evidence on which a finding of danger or flight risk is based, and the reasons that available alternative conditions are insufficient.

g. If a financial condition of pretrial release is imposed at the hearing—whether it is imposed in the first instance, or is imposed as an endorsement of or modification to a financial condition imposed prior to the pretrial release hearing—a ruling that the person can afford the full assigned amount with his own immediately available resources and the evidence on which the ruling is based, or, in the alternative, a ruling as would be required for an order of detention, as described in paragraph 2(f).

h. A public written record of the rulings and findings required by paragraphs 2(f) and 2(g), identifying the evidence on which those determinations were made.

i. Application of a clear and convincing standard of evidence for the findings required in paragraphs 2(f) and 2(g).

But, contrary to Plaintiffs' position, due process does not require the state to prove by clear and convincing evidence each of the factual determinations made in support of a bail determination.

First, there is no historical basis for concluding that a clear and convincing burden of proof must be allocated to the State. While the rule against excessive bail has deep roots in this country's common-law heritage (indeed, in the text of the Constitution itself), there is no settled tradition on where the burden of proof should lie in bail determination decisions. Where there is no settled tradition, a state's allocation of the burden of persuasion to the criminal defendant does not violate the Due Process Clause. *Cf. Medina v. California*, 505 U.S. 437 (1992) (state's

allocation of burden to criminal defendant in competency determination did not violate history and tradition because there was no settled view on where the burden should lie).

Second, the allocation of a clear and convincing standard of proof to the state is not required by the concept of fundamental fairness in operation. Setting reasonable bail presents state trial courts with the difficult task of weighing the specific facts of a case against many, often contravening factors, and often in the face of scant evidence. Those determinations often turn on the persuasive value of the information presented to the court. Accordingly, trial courts should be afforded "considerable discretion" in making those challenging determinations. *Ex parte Ramirez-Hernandez*, 642 S.W.3d 907, 924 (Tex. App. 2022). Requiring state judges to make initial bail determinations only by clear and convincing evidence of every factual consideration unnecessarily limits their discretion and is impractical given the limited time the state has to accumulate evidence about the criminal defendant relevant to such a determination—much of which is uniquely within the knowledge of the criminal defendant himself or herself.

In contrast to the limited criminal jurisdiction of the federal government, states have general criminal jurisdiction. "Preventing and dealing with crime is much more the business of the States than it is of the Federal Government." *Medina* 505 U.S. at 445 (cleaned up). Because of this, the federal government usually has the benefit of exhaustively investigating the criminal defendant it is charging prior to the initiation of federal criminal process, which is usually initiated by grand jury indictment.

By contrast, state and local law enforcement officers engage primarily in general community policing. The bulk of state criminal cases are initiated by warrantless arrests. Initial bail determinations in such cases are especially difficult because the state often lacks any detailed knowledge about the defendant outside of

the arresting officer's observation of the offense for which the defendant was arrested. In addition, the short time the state has to acquire information about the defendant outside of the criminal activity for which the defendant was arrested weighs in favor of a very relaxed evidentiary standard. *Cf. State v. Zhukovskyy*, 174 N.H. 430, 432, 265 A.3d 27, 29 (2021) (law did not require trial court to hold evidentiary bail hearing when the parties disputed facts relevant to dangerousness). Thus, allocating the burden of persuasion to the state on all factual issues pertinent to an initial bail determination is unworkable and inefficient because the bulk of the pertinent information necessary for the determination is usually known only to the arrestee.

Even in *Bearden*, the Court did not require the State to bear the burden of proof relating to ability to pay. In *Bearden*, the State of Georgia filed a petition to revoke Bearden's probation because he had not paid the $550 balance of fines and restitution as ordered. Bearden was notified of the petition and was given the opportunity to be heard at a hearing on the petition. Bearden and his wife both testified about their lack of income and assets and of his repeated efforts to obtain work. Without considering the testimony of Bearden and his wife, the Georgia court automatically revoked Bearden's probation strictly based on Bearden's failure to pay as ordered the balance owed. On appeal, the United States Supreme Court held that fundamental fairness prohibited Georgia from sentencing Bearden to imprisonment simply because he failed to pay, without considering the reasons Bearden provided for his inability to pay, and determining that he had not made sufficient bona fide efforts to pay. *Bearden v. Georgia,* 461 U.S. 660, 673 (1983). The Supreme Court accordingly reversed the revocation of Bearden's probation and remanded for a new sentencing hearing. *Id.*, 461 U.S. at 662, 673-74. The decision in *Bearden* was therefore based upon the sentencing court's failure/refusal to consider evidence presented—not upon the State's failure to prove the alleged violations were willful.

*See Winbush v. State*, 2018 OK CR 38, 433 P.3d 1275 (State need not prove ability to pay).

A constitutional bail-determination process need not apply a one-size-fits-all burden allocation. A fair and workable process would instead place the risk of nonpersuasion on the party expected to have access to information pertinent to the factor under review. For example, there is nothing unfair about placing the burden of showing inability to pay on the criminal defendant since information about the defendant's ability to pay is more within the criminal defendant's knowledge than it is the State's. This would also apply to other facts that are uniquely within the knowledge of the criminal defendant, such as his reputation, mental condition, length of residence in the community, family ties and relationships, employment status, employment record, and financial condition. Other factors, while perhaps within the knowledge of the State and the criminal defendant are rarely disputed. For example, the criminal defendant's criminal history, the present charge against him, and his past history of appearing or failing to appear are all facts usually known by both the State and the criminal defendant. This information is accessible through a search of court records and court services typically provides a summary of this information to the State, PD and the court. The state judges should be permitted to allocate the burdens to the party whom they believe should have access to the information. Thus, any order entered by this Court should not address the issue of burden allocation or standard of proof but should simply declare that the pertinent factors should be considered and the court's decision should be explained in a manner that allows the parties and public to understand its basis.

### Plaintiffs' Requested Injunctive Relief

Fed. R. Civ. P. 65(d) states: "…Every order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail--and not by referring to the

~ 11 ~

complaint or other document--the act or acts restrained or required…" Fed. R. Civ. P. 65(d). "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard,* 414 U.S. 473, 476 (1974); *see also Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd*., 824 F.2d 665, 669 (8th Cir. 1987) ("Broad language in an injunction that essentially requires a party to obey the law in the future is not encouraged and may be struck from an order for injunctive relief.").

Plaintiffs seek specific injunctive relief solely against the Presiding Judge which includes:

> The Presiding Judge, in an administrative capacity, is hereby ENJOINED as follows:
> 1. The Presiding Judge shall maintain a schedule of pretrial release hearing dockets that will allow all class members to appear within 48 hours of arrest.
> 2. The Presiding Judge shall provide for the creation of publicly accessible records of pretrial release hearing determinations, as described in Paragraph 2(h)[7] of the Declaratory Relief, above. The

---

[7] Paragraph 2(h) of the proposed declaratory judgment reads: "h.A public written record of the rulings and findings required by paragraphs 2(f) and 2(g), identifying the evidence on which those determinations were made."

2(f) reads: "f. If an order of detention is entered at the pretrial release hearing— including a de facto order of detention resulting from the imposition of a financial condition of release that the arrestee cannot immediately afford to pay—a ruling stating the reasons for detention, including the evidence on which a finding of danger or flight risk is based, and the reasons that available alternative conditions are insufficient."

"2(g) reads: g. If a financial condition of pretrial release is imposed at the hearing— whether it is imposed in the first instance, or is imposed as an endorsement of or modification to a financial condition imposed prior to the pretrial release hearing— a ruling that the person can afford the full assigned amount with his own immediately available resources and the evidence on which the ruling is based, or, in the alternative, a ruling as would be required for an order of detention, as described in paragraph 2(f)."

Presiding Judge shall have the discretion to determine the means for creating complete and accurate records, for example by assigning court reporters to attend pretrial release hearings, instructing pretrial release hearing judges to prepare written orders, or capturing audio or audio/video recordings of pretrial release hearing proceedings.

Plaintiffs also seek injunctive relief jointly against the Sheriff and the Presiding Judge which includes:

> The Sheriff and the Presiding Judge, in an administrative capacity, are hereby ENJOINED as follows:
> 1. The Sheriff and Presiding Judge shall provide an in-person or virtual forum for pretrial release hearings that allows:
>     a. All participants to hear and see one another.
> b. Arrestees and their attorneys to communicate confidentially before and throughout the appearances.
> c. Arrestees and their attorneys to examine all documentary evidence to be relied on in making any pretrial release determination, with adequate time and opportunity for review and confidential discussion.
> d. Arrestees and their attorneys to present documentary and testimonial evidence and argument.

Plaintiffs continue to seek from this Court an order mandating an outcome determinative process, removal of judicial discretion, and federal oversight into state criminal procedure. Both the requested injunction and the incorporated proposed declaratory judgment include vague, unworkable and ill-defined terms without clear legal standards. Additionally, the injunctive relief would amount to an order to continue what the court is already doing.

### *Hearings held within 48 Hours of Arrest*

The current bond docket schedule (February through May) has weekday bond dockets set for 9:30am and the weekend or holiday bond docket set for 9 am. *See Feb. – May Bond Docket*, attached as Exhibit 9. So for instance, currently for the month of May, weekend bond dockets are scheduled for Sundays and there is no bond docket on Memorial day. Plaintiffs seek a requirement that bail determinations

~ 13 ~

be made "no later than 48 hours after arrest". How granular is the proposed timing standard? For instance, in the following hypothetical, a PC affidavit indicates someone is arrested at 8:53am Friday morning and booked in to the jail at 9:37 am the same Friday morning (too late to appear on that morning's 9:30am docket). This person is then scheduled for the 9am Sunday docket (after the 8:53 am arrest, but before the 9:37am booking). However, he is not called for his turn in front of the judge until 10:33 am on Sunday. Is that a violation of the requested injunctive relief?

Or, take a scenario, in which someone is arrested at 8:30am on Thursday, and booked into the jail at 10:45am on Thursday. However, this arrestee is not competent or is unavailable for the Friday docket for whatever reason (inebriation, illness, etc.) and does not appear until the Sunday 9am docket. He is not called for his turn until 10:33 am on Sunday. Would that violate the injunction?

Plaintiffs base their request for a hard 48 hour deadline on the *Riverside* requirement that probable cause be reviewed within 48 hours.[8] However, it is not the case that arrestees are entitled to an adversarial probable cause "hearing" and all that is required is that a court determine that probable cause exists within 48 hours of arrest. The judges on the bond docket generally review for probable cause prior to and as part of the preparation for the bond dockets and the timing of those findings are not at issue here. Bail determinations are separate and distinct from a probable cause determination, and while the two can be linked for efficiency purposes, there is not constitutional requirement that bail determinations occur under a strict 48 hour limit. And in fact, the Bail Reform Act, 18 U.S.C. § 3142(f)(2) permits a delay of up to three days upon request of the government or five days upon request of the defendant.

---

[8]*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

*"Affordability" and Availability of Resources*

Plaintiffs' proposal uses some version of "affordability". *See, e.g.* ¶¶ 2(f) and 2(g) of proposed declaratory judgment. That term, however, does not have an objective definition which could be easily applied. Is affordability some percentage of disposable income? Which costs are essential and which are discretionary? What is a reasonable essential cost? Who decides? At what point does a bond determination move out of a due process "affordability" realm and into the Eighth Amendment "excessive" realm? Is it akin to Justice Stewart's obscenity standard – the parties will know it when they see it?

Do Plaintiffs mean to equate affordable with indigent? But affordability is not synonymous with indigency. Unlike some jurisdictions, Oklahoma does not have a statutory indigency standard. Rather, a determination of indigency for purposes of a criminal proceeding is governed by Rule 1.14 of the Rules of the Court on Criminal Appeals. (*See 22 O.S. Ch. 18 Appx. Rules of the Court of Criminal Appeals, Rule 1.14 and Form 13.3*, attached as Exhibit 10). An indigency determination requires the consideration of several factors and is not the product of a rote calculation.

Similarly, what is the legal standard for "his own immediately available resources"? Should ownership of or access to illiquid assets be considered? Does "immediate" mean on his person at the time of arrest? What about a bond determination the day before pay day? How will this Court apply an "immediately available resources" determination when called to enforce the judgment?

*Proposed Requirements for Representation*

PDs are specially appointed and available for purposes of the bond docket. 19 O.S. § 138.5[9] provides the mechanism by which public defenders can be appointed

---

[9] 19 O.S. § 138.5 states:

A. It shall be the duty of the office of the county indigent defender to represent as counsel anyone who appears for arraignment without aid of counsel, and who has been informed by the judge that it is his right to have counsel, and who desires counsel, but is unable to employ such aid; and upon order of a district judge of such county he shall investigate any matter pending before the judge and report to him in the manner prescribed by the judge.

B. When a defendant or, if applicable, his parent or legal guardian requests representation by the county indigent defender, such person shall submit an appropriate application, the form of which shall state that such application is signed under oath and under the penalty of perjury and that a false statement may be prosecuted as such. The application shall state whether or not the defendant has been released on bond. In addition, if the defendant has been released on bond, the application shall include a written statement from the applicant that he or she has contacted three (3) attorneys, licensed to practice law in this state, and the applicant has been unable to obtain legal counsel. A nonrefundable application fee of Fifteen Dollars ($15.00) shall be paid to the court clerk at the time the application is submitted, and no application shall be accepted without payment of the fee; except that the court may, based upon the financial information submitted, waive the fee, if the person is in custody or if the court determines that the person does not have the financial resources to pay the fee. Any fee collected pursuant to this subsection shall be retained by the court clerk as an administrative fee and deposited in the court fund. Before the court appoints the county indigent defender based on the application, the court shall advise the defendant or, if applicable, his or her parent or legal guardian that the application is signed under oath and under the penalty of perjury. A copy of the application shall be sent to the prosecuting attorney or the Office of the Attorney General, whichever is appropriate, for review, and, upon request, the court shall hold a

as counsel of record in a criminal matter, the bond docket has not traditionally been considered an "arraignment" for purposes of appointing counsel. The PD assigned to the docket receives all the pertinent information before the docket and participates in the docket. The court does not and cannot dictate the manner or contours of the PDs representation of their clients. The Chief Public Defender makes staffing decisions and the individual PDs represent their clients as they see fit. The court does not deny arrestees the ability to present evidence or argument if the arrestee or attorney has evidence available. It should also be noted for the Court that as recently as 2022, Judge Frizzell in the Northern District of Oklahoma found that the Bail Reform Act allows the parties to proceed in a detention hearing by proffer without offending due process. *U.S. v. Quapaw*, 2022 WL 3359365, *7 (unpublished).[10] (pretrial detainee challenging the detention order on the basis of

---

hearing on the issue of the eligibility for appointment of the county indigent defender.

C. If the defendant is admitted to bail and the defendant or another person on behalf of the defendant posts a bond, other than by personal recognizance, the court may consider such fact in determining the eligibility of the defendant for appointment of the county indigent defender; provided, however, such consideration shall not be the sole factor in the determination of eligibility.

[10]"The U.S. Supreme Court has concluded the procedural safeguards included in the Bail Reform Act are sufficient to withstand a facial procedural due process challenge. *United States v. Salerno*, 481 U.S. 739, 752 (1987). This is because pretrial detention is regulatory, not punishment. *Id*. at 748. The Court also noted that the protections afforded by the Bail Reform Act "are more exacting than those we found sufficient in the juvenile context" and, further, "far exceed[ed]" what the Court required in Gerstein to effect limited post-arrest detention until a probable cause determination is made. *Id*. at 752.

"A pretrial detention hearing ... is neither a discovery device for the defense nor a trial on the merits," *U.S. v. Smith*, 79 F.3d 1208, 1210 (1996), and permitting the

the sufficiency of the information the government put forward. Quapaw argued the government must rely on "evidence" rather than "information". The court rejected that theory.)

### *Adequacy of the Record*

What is the standard for "consideration of alternative, non-monetary release conditions"? The Special Judges on the bond docket are all aware of the alternatives available, and the bond hearing findings form includes a section for imposing alternatives. These judges are confronted with all the alternate conditions each time they complete a bond findings form. They use their judicial discretion to order various alternatives when they find it necessary and appropriate. As with all deliberations, they may not go through each available option and announce why one is rejected or approved, but that does not mean each has not been duly considered before a decision.

The Special Judges are already producing a written record of their rulings and findings at the bond docket. The findings become a public record if charges are filed for the offense. Pursuant to state law, some filed forms may only be accessible directly from the court clerk rather than online. Like most counties in Oklahoma, Tulsa is currently suffering from a critical court reporter shortage. Pursuant to 20

---

government to proceed by proffer does not violate a defendant's procedural due process rights. Rather, the liberty interest at stake is akin to that considered in Gerstein and the same standards apply. *U.S. v. Delker*, 757 F.2d 1390, 1397 (1985) ("The effect of the findings in a detention hearing and a preliminary hearing (*Gerstein*) hearing is the same: each hearing determines whether the accused may be detained pending trial."). Mr. Quapaw is not entitled to "the full panoply of adversary safeguards." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). The court concludes "[a] right to require the Government to produce its witnesses against him would complicate the hearing to a degree out of proportion to the liberty interest at stake." *Smith*, 79 F.3d at 1210. Permitting the government to proceed in a pretrial detention hearing through proffer does not offend due process."

O.S. § 106.1, the Fourteen Judicial District has 25 court reporter positions currently allocated (1 for Pawnee County, 24 for Tulsa County). There are currently twelve (12) court reporter vacancies in Tulsa County. Of the twelve (12) filled court reporter positions in Tulsa County, one is currently on maternity leave and another is retiring on November 1, 2024. Proceedings that are recorded in lieu of a court reporter's presence require the production of an official transcript by a court reporter for use in the record. *See* 20 O.S. § 106.4.

## CONCLUSION

Based upon the current bond docket proceedings, Defendant State Judges request the injunctive relief against the Presiding Judge as proposed by Plaintiffs be rejected by the Court as unnecessary. As for the proposed declaratory judgment, Defendant State Judges request that any such order to be entered provide clear, workable, objective standard rather than the ambiguous language proposed by Plaintiffs.

Respectfully submitted,

/s/Stefanie E. Lawson

**STEFANIE E. LAWSON, OBA#22422**
**ERIN M. MOORE, OBA#20787**
**DEVAN A. PEDERSON, OBA#16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:  (405) 521-3921
Facsimile:   (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
        erin.moore@oag.ok.gov
        devan.pederaon@oag.ok.gov
*Attorneys for Defendants State Judges*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of April 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and I further certify that on this date a true and correct copy of the foregoing was served via the ECF System to all counsel who are ECF registrants:


/s/Stefanie E. Lawson
Stefanie E. Lawson