1           IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF OKLAHOMA

3

4    RICHARD FELTZ, on behalf of
     himself and all others similarly
5    situated, et al.,

6              Plaintiffs,

7    vs.                        Case No. CIV-18-298-SPF

8    VIC REGALADO, Tulsa County
     Sheriff, in his official
9    capacity, et al.,

10             Defendants.

11   ------------------------------

12

13

14

15         TRANSCRIPT OF HEARING ON SCOPE OF RELIEF

16         BEFORE THE HONORABLE STEPHEN P. FRIOT

17             UNITED STATES DISTRICT JUDGE

18             MAY 2, 2024; 10:30 A.M.

19

20

21

22

23

24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer-aided transcription.

```
1                        APPEARANCES

2  REPRESENTING THE PLAINTIFFS:  Ms. Hayley Elizabeth Horowitz,
   Still She Rises, 608 East 46th Street North, Tulsa, OK 74126
3
   Ms. Phoebe Anne Kasdin, Still She Rises, 567 E. 36th St. North,
4  Tulsa, OK 74106

5  Mr. Alexander Karakatsanis, Civil Rights Corps, 910 17th
   St. NW, Ste. 200, Washington, DC 20006
6

7  REPRESENTING VIC REGALADO:  Mr. Douglas Allen Wilson and
   Mr. Michael Shouse, Tulsa County District Attorney's Office,
8  218 W. 6th Street, Suite 935, Tulsa, OK 74119

9  REPRESENTING TAMMY BRUCE AND OTHER JUDGES:  Mr. Devan A.
   Pederson and Ms. Stefanie Erin Lawson, Office of the Attorney
10 General, Litigation Section, 313 NE 21st Street, Oklahoma City,
   OK 73105
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (PROCEEDINGS HAD ON MAY 2, 2024.)

2          THE COURT:  Good morning.  We're here in Civil

3    18-298, Richard Feltz and others v. Regalado and others for a

4    hearing on scope of relief.  I do have a seating chart here,

5    but for benefit of the record, starting at the plaintiffs'

6    table, I'll ask counsel to give your appearances on the record.

7          MS. HOROWITZ:  Hayley Horowitz for Still She Rises.

8          MR. KARAKASTASANIS:  Alex Karakatsanis, Civil Rights

9    Corps.

10          MS. KASDIN:  Phoebe Kasdin from Still She Rises.

11          MR. WILSON:  Douglas Wilson with the DA's office for

12    the sheriffs.

13          MR. SHOUSE:  Mike Shouse, Tulsa County District

14    Attorney's Office.

15          MR. PEDERSON:  Devan Pederson, Oklahoma Attorney

16    General's Office.

17          MS. LAWSON:  Stephanie Lawson, Oklahoma Attorney

18    General's Office.

19          THE COURT:  Thank you.  And let me make a note here.

20      And I'm certainly well aware there are other individuals

21    present who have some interest in this matter.  I did meet

22    briefly with counsel in chambers, not discussing the merits at

23    all and not discussing the matters that are formally before the

24    Court this morning, but addressing the possibility of

25    mediation.  And we'll address that further, I certainly hope,

1    in due course.

2        I'll share with you one thing that I did mention to

3    counsel when I met with counsel just now.  And that is -- well,

4    first of all, without seeming fatuous about it, yes, this is a

5    very serious matter.  And it deserves the best attention that

6    all of us can give it.  It has certainly gotten quality

7    attention at all stages from counsel on both sides.  I have

8    benefited from high-quality advocacy on both sides.  And you

9    don't need me to tell you that in a case like this, with the

10   complexities of a case like this, that's pretty important.  And

11   I have benefited from quality advocacy on both sides.

12       Another matter that I mentioned in our brief conference is

13   that there is a couple of things that I hope the parties have

14   discerned from the order that I entered a month ago.  And my

15   hope is that the plaintiffs sensed from my order a certain

16   sense of restraint, and I hope the defendants sensed from my

17   order a certain sense of resolve.  Those two things are not

18   inconsistent with each other, and I think, given the very

19   nature of this case, both of those -- both of those notions are

20   relevant to the way I think about this case.

21       I'll also say, really without hesitation, that with the

22   benefit of the follow-up memoranda that have been filed and

23   that I certainly appreciate and have thoroughly reviewed, I am

24   -- I'm not going to say that I'm pleasantly surprised because

25   this is the sort of a thing where if you set yourself up to be

1    surprised, then you're going to be surprised, but I'm also

2    impressed with the number of areas of at least substantial

3    agreement on some aspects of what a final order ought to look

4    like.

5        Now, we're here this morning to talk about the tender

6    spots.  And are there some tender spots?  Yes, there are some

7    tender spots.  Let there be no doubt about that.  But that

8    said, I am certainly impressed with the areas of substantial

9    agreement that are discernable from a comparison of the

10   plaintiffs' memorandum and the plaintiffs' proposed final order

11   and the corresponding documents from the defendant, judges, and

12   from the sheriff.  So frankly, in a word, I find that

13   encouraging.  So we'll just have to take it one step at a time

14   from here.

15       You all have every right to expect that I'm fully prepared

16   for this hearing.  And the answer to that is, yes, I am fully

17   prepared for this hearing.  I do have some issues that I don't

18   think will come as any surprise to anyone that I want to

19   address, and I'll have some questions for counsel on both sides

20   on those issues.  And when I -- as I work my way through those,

21   I wouldn't want anyone to think for a minute that I'm

22   foreclosing any prepared argument that anyone has and -- on

23   other issues that I might not ask questions on.

24       And I would -- let's see.  Do we have a lectern?

25       (OFF-THE-RECORD DISCUSSION ABOUT THE LECTERN.)

1           THE COURT:  If we can, let's move that lectern up
2   about 15 feet.
3       And I'm going to give you -- speaking of Judge Eagan, I'll
4   give you the short version of this.  Judge Eagan and I -- just
5   a dear, dear person.  She and I -- she and I had our White
6   House interviews on the same day in May, 22 years ago.  As a
7   matter of fact, she told me this morning it might have been
8   this day in May, 22 years ago.  And we both, of course, had
9   cleared a couple of hurdles by the time we got to our White
10  House interviews.  And hers was an hour before mine, and we had
11  breakfast together.
12      And so she goes for her White House interview, and I'm
13  idling across the street from the White House in Lafayette
14  Park.  And she came out, and I'm just going to go no further
15  than to say she prepared me for my interview.  And so I have --
16  so I told her, I said, Claire, if there's ever anything I can
17  do for you, you just let me know.  Well, this is it.  Here we
18  are.  And she's a dear person.  And I enjoyed renewing my
19  friendship with her this morning.
20      I'd like to -- I'll invite plaintiffs' counsel to the
21  lectern.  I have -- I'm going to start out with some questions,
22  but I don't mean my comments to foreclose any prepared comments
23  that you may have.
24      And, Ms. Horowitz, it'll come as no surprise to you,
25  perhaps, that a place I want to start is with something that

1    nags at me.  And that is what I'll generically refer to as the
2    48-hour rule.  And let me preface that by saying one thing that
3    nags at me on that is -- and I think this is true in the
4    District Court of Tulsa County based on things I've looked at,
5    as well as, certainly, in federal court.  And that is that the
6    foundation of a workable -- with emphasis on "workable" -- bail
7    hearing system is the ability to produce accurate and useful
8    reports, what we in federal court call a "pretrial report,"
9    with reliable information on short notice.
10       And the reason that I mention that is that, even in the
11   best of conditions, there's only so much time that can --
12   that's realistically available for a bail hearing or a bond
13   hearing or a detention hearing, whatever we want to call it.
14   And very often, the foundation of a fair bond hearing is what
15   we in our court call a "pretrial report."  And I'm looking at
16   one, and it covers the defendant's history and his residence
17   and his family ties, his employment history, his -- even his
18   health, his prior record.  This one goes on several pages.  And
19   a summary of the facts leading to the arrest or the indictment
20   and a comment on civil proceedings that he was involved in and
21   assessment of the risk of nonappearance, the assessment of
22   danger to the community, and a recommendation.
23       Well, I'm not saying that every case has to result in
24   something like that, but in a situation in which reliable
25   information is the coin of the realm, such as calling upon a

1  judge to make a release decision or a detention decision in a

2  time-compressed environment, it's not really over the top for

3  me to say, as I do, that a reliable, timely pretrial report is

4  really the foundation of a workable system.

5  So here we have an arrestee arrested at ten o'clock on a

6  Friday night.  And a rigid 48-hour rule would mean that this

7  report's got to be generated by ten o'clock Sunday night, and

8  then it's got to be -- and then the arrestee has to be heard on

9  the issue of release or detention.  And I hope you gather from

10 me that I'm chafing under the idea that we would have a rigid

11 48-hour rule that would have only dire emergency as an

12 exception to it.  And I need you to help me on that.  Where are

13 we headed on that?

14         MS. HOROWITZ:  So I guess I have a short answer and a

15 long answer.  The short answer being this is what the law says,

16 and I'll explain that; and then the longer answer of why the

17 law says that and why it should and needs to apply in this

18 case.

19 So for the short answer -- and a lot of this is in our

20 brief, but I'm just going to articulate the points that I think

21 are most salient -- is that, you know, the Supreme Court said

22 so in Riverside.  And defendants have made much of the fact,

23 and this is true, that Riverside is talking about probable

24 cause hearings and probable cause hearings are a very different

25 animal from bail hearings.  But the Riverside opinion is very

1   clearly written to say that probable cause hearings can happen

2   quickly and these other sorts of proceedings of arraignments

3   and detention hearings need more time, and that's why they said

4   -- that is explicitly why they set the 48 hours, because the

5   Supreme Court determined that that was enough time.  And I --

6              THE COURT:  And forgive the interruption.

7              MS. HOROWITZ:  Sure.

8              THE COURT:  But would you agree with me that there is

9   at least arguably an incrementally more time urgency on a

10  probable cause determination than on a bail hearing?

11             MS. HOROWITZ:  I would not agree because I think that

12  the -- the standards of what needs to be shown and why, you

13  know, the Fourth Amendment and Fourteenth Amendment require

14  different things before the state can deprive somebody of their

15  liberty, but the liberty interest is the same.  So if there is

16  no valid ground for holding somebody under either the Fourth

17  Amendment or under the Fourteenth Amendment, the loss to the

18  plaintiff is the same.  I think that -- and this is when I get

19  into the second point of why this is the rule, it is a

20  balancing-of-interest determination.

21      And so the State's interest -- I think this is primarily

22  the defendants' argument and primarily what you are focused on,

23  is that the State may have a different interest in a probable

24  cause hearing than in a bail hearing.  But on the plaintiffs'

25  side, what's at stake is whether or not they're in jail without

1    constitutional justification.

2              THE COURT:  But the logistics of making it happen are

3    more complex at a bail hearing.

4              MS. HOROWITZ:  Right.  And just to finish the first

5    point of the Supreme Court said so, and then I'll explain why I

6    don't think that's a problem here, is that -- and I want to cite

7    to Page 55 of the Riverside opinion, specifically where they

8    specifically say, For arraignment and for detention hearings,

9    this will -- this 48-hour period will give state courts time to

10   review records and draft charging documents and arrange for the

11   appearance of counsel and make appropriate bail determinations.

12   So that is baked into the Riverside opinion.

13       And so your question of why that -- and I just want to add

14   the other part -- thing that is baked in here is an escape

15   hatch -- as you're saying, the unusual case.  And you use the

16   word "dire emergency," the Supreme Court says "genuine

17   emergency," and I do think that those are very different.  And

18   as I talk about what -- the logistics that you're focusing on,

19   I think it's important, as a headline point, to say that the

20   report that you're holding up is not sort of the norm, that if

21   there is a case where there is a reason for the State to need

22   to investigate or need to -- it's an unusual case, it's an

23   extraordinary case, which is what the Supreme Court has built

24   in there, that there is, in an individual case, the

25   opportunity.

1    The defendants emphasize in their own briefing -- and we

2  agree -- that most of the information here is coming from the

3  defendant, that the State is not actually going out and

4  investigating.  That's not part of their process; it's not

5  intended; and that the judge does rely on proffers or sworn

6  testimony or other evidence from the defendant.  And so that

7  type of report, if it were required in a specific case, that

8  would be one of the extraordinary circumstances that's allowed

9  for.  But I want to put that sort of in the framework of what I

10  was saying before of why this is the correct balance in this

11  case.

12    And so when doing that, I want to separate out the due

13  process claim from the equal protection claim because the due

14  process claim has different interests on the State side from

15  the equal protection claim.  And on the due process claim, the

16  State's interest there is showing a right to detain anyone.

17  Can the State keep an innocent -- a presumptively innocent --

18  person in jail awaiting adjudication of their trial?  Have they

19  -- and that's this two-part test of, you know, have they shown

20  a compelling interest?  Is there, you know, risk of flight or

21  danger to the community; and is incarceration of this person

22  sufficiently tailored because there were no other alternatives

23  that would mitigate against that identified risk?

24    But in the equal protection context, the interest of the

25  State is a little bit different here.  And this is why the Bail

1   Reform Act doesn't really apply, because the federal government

2   doesn't do this.  The State has already made the determination

3   that all the plaintiffs in our class do not need to be jailed

4   for the interest of public safety or appearance in court.  This

5   is all people who are on the bail schedule, that if they had the

6   $50, the $500, the $100,000, they would go home.

7       And so the determination here is not whether incarceration

8   is necessary to protect public safety and appearance in court;

9   it's whether there is an alternative to whatever the money bail

10  is accomplishing.  So is there -- given that this person can be

11  out with money bail, is there an equivalent condition to money

12  bail that would mitigate any risk that might be presumed by the

13  nature of the offense?  And in this case, our record is very,

14  very clear from their experts, from our experts, that there's

15  no evidence at all that money bail is actually doing anything

16  to mitigate any risk.

17      And so the State's interest here -- and that's especially

18  true of public safety.  I mean, in Oklahoma, defendants don't

19  forfeit their bonds if they're rearrested.  And we have the

20  same -- you know, their expert, Morris, found that she couldn't

21  find any causal relationship between public safety and

22  appearance rates and a money bail condition.  And their expert,

23  Dr. Krahl, found that he was not aware -- said he was not aware

24  of anything in literature on the literature of the efficacy of

25  bond that suggested that monetary bond is actually contributing

1   to either of those factors.

2        And our expert, Professor Ouss, she, in her report,

3   explained how, in fact, a money bail condition for people who

4   are being released is often likely to reduce appearance rates

5   and to put public safety more at risk because of the

6   instability that it contributes to the payor's life.

7        And so when we're talking about a balancing of interests

8   of what's -- you know, what stands to be lost and what stands

9   to be -- what stands to be lost of the plaintiff, it is that

10  same liberty interest that is at issue in the Fourth Amendment

11  context.  In this context, there is two separate independent

12  interests, which is making sure that they are only detaining

13  people who can't be safely released; but then this added layer

14  of -- this independent layer -- it's not an added layer, it's

15  an independent ground, that they have already determined these

16  people can be safely released.  It's the question of whether

17  there can be a condition that serves the same purpose as money

18  bail.

19       And so I think it's -- that's, you know, when we talk

20  about, as you were saying, whether there's -- whether this

21  hearing is as important as the probable cause hearing, whether

22  the interests are skewed in a different way, if anything, I

23  think they're skewed more in plaintiffs' favor.

24            THE COURT:  Well, I understand that.  The interest at

25  stake for the locked-up individual is the same either way.

```
1           MS. HOROWITZ:  Right.

2           THE COURT:  I mean, if he spends another night in

3    jail because of delay in the probable cause hearing or because

4    of a delay in a bail hearing, I bet you that night feels the

5    same either way.  So I think the liberty interest at stake is

6    the same either way.  But -- and we can talk practicalities or

7    law; and, frankly, we're here today to talk about both.

8        I'll add another layer.  A Spanish speaker arrested at ten

9    o'clock on a Friday night, and he -- he's pounding the table

10   for a sure-enough, meaningful, individualized bail hearing by

11   ten o'clock Sunday night.  How does that work?

12          MS. HOROWITZ:  So I'm -- thank you for asking that

13   question because it brings me back to your actual concern which

14   I strayed a little bit from, which is the logistics and the

15   practicality of requiring the State to accomplish this in 48

16   hours.  And, as I said before, I think the Supreme Court is very

17   clear that they -- and they said that they did this for -- to

18   articulate a clear boundary.  At Page 55 to 56 of the Riverside

19   opinion, they say, like, we don't want this sort of uncertainty.

20   We want a clear boundary.  We're setting it 48 hours because

21   the State should be able to do this, unless there's a good

22   reason not to.  I think it's very clear that, to go beyond that

23   48 hours, there needs to be a reason.  And I do think that

24   there is a factual determination element to this of the State

25   needing to establish what the State interest is in detaining
```

1   people longer than this presumptively excessive 48 hours.

2        And so I know we've talked about mediation, and this is

3   one of the issues that I think may benefit from a little bit

4   more of a factual presentation to the Court, but the record is

5   already very strong.  The defendants have submitted a --

6   recordings of recent bail hearings from this month where there

7   is there a Spanish interpreter who is actually present at the

8   bond docket every single day.  And so the defendants would need

9   to make a showing that there is some extraordinary

10  circumstance, given the nature of these bail hearings, given

11  the -- whatever the circumstances are in Tulsa County that take

12  it -- that allow them to operate beyond that sort of hard,

13  clear rule that the Supreme Court has set.

14       And the factual record just doesn't provide them with the

15  material to do that because, as noted, they emphasize the

16  defendants are the ones who are bringing all the information.

17  The defendants are -- you know, they -- of course, the

18  defendant, if they're not prepared and want to waive, we're not

19  -- that's not at issue here.  The question's what the State has

20  to offer.  And the State is getting its information from

21  documents that are prepared for the probable cause hearing --

22  the arrest information; the history which they can pull up, you

23  know, on the computer in an instant; and the defendant's own

24  testimony, which is available, you know, from the moment of

25  arrest.

1      And there just hasn't been a showing that there is a

2   factual need or that there is, in fact, a State interest that

3   would allow this Court to grant them greater leeway than the

4   Supreme Court has already laid down, a hard deadline.

5          THE COURT:  And this is slightly off the subject but

6   still sticks in my mind.  I believe it was the sheriff's

7   memorandum that made it clear two or three times that it should

8   also be clearly understood that the -- whatever the time limit

9   is, that that time limit is waivable by the defendant.  And I

10  assume the plaintiffs have no problem recognizing that, that if

11  there is a case that's got some complexity, from the standpoint

12  of the issues that would logically relate to release or

13  detention, then the arrestee should have the clear ability to

14  say, No, I don't want to have a bail hearing in 48 hours

15  because it's going to take another couple of days for us to

16  marshal our case in favor of release.  And I assume the

17  plaintiffs don't have any problem with giving an arrestee that

18  prerogative.

19          MS. HOROWITZ:  Heaven, no.  But -- we don't have a

20  problem obviously with plaintiffs being able to waive their

21  rights.  They're always allowed to waive their rights if the

22  waiver is informed and knowing.

23      Because we have not had an opportunity yet to engage with

24  the new information and proposals that the defendants submitted

25  two days ago, that's one of the issues that I would -- I am

1  hopeful that mediation and further discussion will allow us to

2  come back to the Court with a more detailed and thorough

3  response to that, because I do think that we may have different

4  opinions about what waiver looks like and whether that is

5  something that needs to be in the Court's order.  Just based on

6  the factual record that we already have that, you know, if a

7  person is drunk when they're arrested or if a person is on

8  suicide watch or if they, you know, didn't get notice of what

9  the hearing was but didn't feel like getting out of bed that

10 morning, that the jail staff informs the judge that the person

11 has waived and the judge accepts that.

12      So we, I think, will want to be thoughtful about how that

13 -- if that right of waiver is encompassed in the Court's final

14 order, how it goes in there.

15          THE COURT:  That's understood.

16      And, by the way, I'm going to go more or less topically,

17 and I want to hear -- rather than go through all my questions

18 that I have for you and then have the defendants respond to

19 those questions, I want to go topically.  And so at this point,

20 unless you have anything to add on my concern about the 48-hour

21 rule, I'm going to offer the defendants an opportunity to

22 respond on that point.

23          MS. HOROWITZ:  Of course.  Thank you, Your Honor.

24          MR. PEDERSON:  Thank you, Judge.  Devan Pederson for

25 the defendants.

1      Plaintiffs' position that Riverside requires 48 hours is

2  distinguishable because Riverside was based on, obviously, the

3  probable cause determination and 48 hours is the reasonable

4  amount of time for a probable cause determination.  That's very

5  different than what we're doing here with the bail

6  determination.  The probable cause determination can be an ex

7  parte review of a police officer's document.  For example, the

8  officer arrests a soon-to-be criminal defendant, writes a

9  report that says the basis for the arrest, if it's warrantless,

10  "I observed defendant violate X law by doing whatever," the

11  judge can simply review that piece of paper ex parte and

12  determine whether there's probable cause to hold him or not.

13      That is, compared to a bail determination hearing, a

14  different thing.  And I think it would warrant giving a bail

15  determination hearing a little more time than perhaps Riverside

16  would for a probable cause determination.

17      As far as how strict the 48-hour rule or whatever the time

18  period we decide it should be is, we would suggest that there

19  should be some leeway.  Like, for example, an order could say,

20  Within X number of hours, the bail -- the initial bail

21  determination -- individualized bail determination should be

22  made unless the Court finds, for good cause, that additional

23  time is needed.  And the Court would need to state what the

24  good cause is, and that would be an abuse of discretion type of

25  standard.

1      For example, some of the things plaintiffs' counsel

2  discussed and the Court brought up, if they -- if they refuse

3  to come and the jail doesn't have enough manpower to force them

4  to come, maybe that could be good cause.  Obviously, if they

5  waive it, that would be good cause.

6          THE COURT:  What would be some other, what I'll call

7  it, "exigencies" that would justify more delay?

8          MR. PEDERSON:  We think that -- for example, if the

9  timing of the arrest hit just that sweet spot where it's going

10  to -- where the time to the next bond docket is going to be 49

11  hours later or 51 hours later, you know, the Court could

12  perhaps find that, based on the timing of the arrest, there was

13  no -- there's no evidence of unnecessary delay by any executive

14  branch official; therefore, maybe we'll find good cause for

15  letting it slide to 51 hours, something like that.  I would

16  need to think through the scenarios for that, but other things

17  would be, you know, obviously illness, incapacity of the

18  defendant, things of that nature.

19      If it would assist the Court -- and I realize this is not

20  what this hearing's for.  We do have Judge Guten here who could

21  likely offer more detailed facts than I could.  If the Court

22  wants to inquire, he's willing to answer, but I'll do the best

23  that I can.  Those are the things that come to my mind as far

24  as exigencies.  I don't -- I think that the requirement to be

25  an emergency or, you know, some high standard like that, might

 1   be a little too much.  And if we give the judges some

 2   discretion to use good judgment in deciding, Okay, well, you

 3   know, this guy has been delayed 80 hours, you know, that's too

 4   long because I don't see anything to justify that amount of

 5   time, just something to give them some leeway if things are

 6   otherwise procedurally appropriate.

 7        Yes, I'm ready for the next topic.

 8             THE COURT:  The record already speaks to this, and --

 9   but I've slept since I've read it.  I just went -- a few

10   minutes ago, you heard me go chapter and verse through what I

11   call a "pretrial report."  What would typically be seen in the

12   District Court of Tulsa County by way of a preliminary hurry-up-

13   type workup to put some information on paper for a judge making

14   a detention decision?

15             MR. PEDERSON:  My understanding is that pretrial

16   services goes into the jail and does a cursory workup on each

17   person who's going to appear and takes down basic information,

18   family, and -- do they take into consideration the financial

19   considerations?  And I believe there's a -- I have a form I can

20   look at and --

21             THE COURT:  Well, there's a form attached to the

22   judge's response that's a kind of a questionnaire type of

23   thing.

24             MR. PEDERSON:  Yes.  Yes, it is.

25             THE COURT:  Okay.  Well, is that the long and the

1  short of it, then, the answers to that questionnaire?

2          MR. PEDERSON:  I think that's the main thing they

3  work with, and they prepare a report, which includes things

4  like prior criminal history based on NCIC, and they distribute

5  that report to the public defender, to the Court, and to the

6  State.

7          THE COURT:  Okay.  Okay.  Very well.  I think we've

8  covered the ground on that, at least from the judges'

9  perspective.  I'll certainly offer the sheriff an opportunity

10  to respond on that issue if he so desires.

11          MR. WILSON:  Thank you, Judge.

12      I would point out, you had mentioned that the foundation

13  of a workable bail hearing typically begins with the production

14  of a pretrial report on short notice.  And, interestingly

15  enough, that's not statutory requirement in Oklahoma.  The

16  Board of County Commissioners of Tulsa County has chosen to

17  exercise authority under a specific Oklahoma statute to create

18  a pretrial services division that serves the district court.

19  They basically give the district court what they need to help

20  people get out of jail.

21          THE COURT:  Yeah, I don't see how a metropolitan

22  court could work without it.

23          MR. WILSON:  Yeah.  But that's not the norm in

24  Oklahoma.

25          THE COURT:  Yeah.

 1          MR. WILSON:  And, you know, it would not be a stretch

 2   to think that whatever decision issues from this Court, other

 3   -- the other 76 counties are going to have to pay attention to

 4   that or possibly face repercussions in terms of lawsuits.  Just

 5   because Tulsa County right now has a pretrial services

 6   division, it doesn't mean that if the county were to go on hard

 7   times, it couldn't simply just cancel it because it could.

 8   It's not a requirement.  It's an interesting facet of Oklahoma

 9   law that the statutes pertaining to pretrial matters are few

10   and far between.

11          THE COURT:  Yes, and I certainly wouldn't want to be

12   misunderstood.  I'm not, by any stretch, thinking about, in my

13   order, getting down into the weeds so far as to mandate a

14   pretrial report.  I'm not going there.  The only reason I

15   mention it is that, given the realities of how these things

16   have to be handled on short notice, every tick of the clock

17   matters.  And if you get accurate information condensed into a

18   document that both sides work from, that can be key to making

19   it workable.  And that's the reason I mention it, as opposed to

20   anything that I'm going to mandate.

21          MR. WILSON:  Exactly.  And, you know, there are just

22   -- when you compare the resources of the federal government to

23   compile information on a defendant that they've targeted but

24   not yet arrested, to the resources of Tulsa County when

25   someone's brought in right off the street, they may even be

1  from out of state.  They may be a serial rapist or whatever who

2  has no connection to Oklahoma and --

3           THE COURT:  Your point, I think, is

4  disproportionately more defendants in federal court have been

5  looked at for a while before they're picked up --

6           MR. WILSON:  Yes, sir.

7           THE COURT:  -- as opposed to somebody arrested on a

8  Friday night on South Utica in Tulsa.  So there's -- in that

9  sense, with a good many federal defendants, they already know a

10  little bit about the individual and can hand that information

11  promptly over to pretrial services.

12          MR. WILSON:  Yes, sir, I would say the vast majority

13  of folks arrested in Tulsa County are arrested because the

14  officer sees them in commission of a crime or the crime is

15  afoot and they've been dispatched to the scene.  It's a

16  spur-of-the-moment kind of thing, as opposed to development

17  over time.

18      I would also like to just suggest that, you know, money is

19  at least some evidence of some person's responsibility.  I

20  understand that drug dealers make money, people can win the

21  lottery and so forth, but there is at least a rational basis

22  for using money as an indication as to whether or not that

23  person is tethered to the social norms of society.  And I think

24  bail can be traced back to the Roman times.

25          THE COURT:  And that's a little bit off the

1   subject --

2           MR. WILSON:  Okay.

3           THE COURT:  -- of this particular topic.  I really am

4   interested in going on a topical basis.

5           MR. WILSON:  I would like to address a comment that

6   was made by plaintiffs' counsel about the folks in jail being

7   presumptively innocent.  You know, everyone's there because of

8   probable cause that they committed a crime.  They start off

9   with handcuffs; they start off being brought downtown; they're

10  fingerprinted; they're mug-shotted.  This is not what you do to

11  folks who are presumptively innocent.  This is what you do with

12  folks whom you have actual -- you have probable cause to

13  believe committed a crime.

14      Now, at trial, it is important that everything that

15  occurred at the arrest and post-arrest not be brought up to the

16  jury.  All that's wiped away, and the jury is told, Listen,

17  this person is presumed innocent, and they're presumed innocent

18  until the State proves its case beyond a reasonable doubt.  It

19  is an evidentiary burden at trial.  But in the field --

20          THE COURT:  How do you square that with Judge

21  Rehnquist's language in the Salerno case, among others, in

22  which, from the minute of contact with law enforcement, this

23  individual is presumed innocent?

24          MR. WILSON:  Then why are they handcuffed?

25          THE COURT:  You'll have to ask Justice Rehnquist.

1          MR. WILSON:  Well, exactly.  And I think the reality

2    suggests that the abstract may not coincide with the reality.

3    You know, the Bever brothers, who slaughtered their family in

4    Broken Arrow here about six years ago, were found just outside

5    the home in a wooded area, soaked in their family members'

6    blood.  And when the police came upon them and they had their

7    knives and their bulletproof vests on and everything, I'm sure

8    the first thought that police had was not, "I presume these

9    guys are innocent."  You know, there are some, you might say --

10   to use the liberality with which Judge Rehnquist spoke, there

11   are some more innocent than others.

12        You know, the probable cause that someone committed a

13   crime can be a smoking gun.  They can be caught red-handed.

14   That's different from a conspiracy case where whether or not

15   one or two of the people involved in the conspiracy, you can

16   prove every element, is debatable, there's a range in there.

17   And I think the failure to recognize the range is not to think

18   clearly.  Reasons why someone may not be able to attend their

19   bail hearing -- in addition to waiver, of course -- would be

20   intoxication; it would be medical issues; they may, in fact, be

21   in the hospital; there are folks who are incompetent.

22        We've got, I think, 100 or more folks right now in the

23   Tulsa jail who are incompetent to stand trial.  If they can't

24   help in their own defense at trial, how do they help in their

25   own bail hearing?  There are some folks who are just

```
1    emotionally unstable.  And while they might be able to appear on
2    Friday, they can't do it today.  And I think that practice
3    would show that the list goes on and on and on.
4          Thank you, Judge.
5              THE COURT:  Thank you.  And on that -- I think we
6    have probably dwelt long enough -- albeit that's an important
7    subject, the 48-hour issue, I think we've probably dwelt long
8    enough on that.
9         I want -- I have another question for plaintiffs' counsel
10   and on a slightly different topic.  And that is:  It's clear,
11   from plaintiffs' summary judgment briefs, that viewing it
12   narrowly, plaintiffs are not attacking the preset bond
13   schedule, as such, as long as we understand that by the end of
14   the due process compliant bond hearing, nobody will be detained
15   solely because of indigence; is that fair?
16             MS. HOROWITZ:  I would say, for purposes of what we
17   submitted to the Court for the remedies phase, with our big
18   disclaimer footnote, yes.  We still have a difference of
19   opinion with Your Honor, and we still think that we are not
20   arguing that a bond schedule is illegal.  We are arguing that a
21   bond schedule that calls for the detention of people who can
22   pay and people who can't pay is violative of the equal
23   protection clause.  I recognize you disagree with us for that
24   first 48-hour period.
25             THE COURT:  In terms of what I referred to in my
```

```
 1   order as whether there is an equal protection violation, the
 2   minute the arrestee gets to the courthouse.
 3             MS. HOROWITZ:  Correct.  And to just give an example
 4   of what that would look like in practice, there's nothing
 5   stopping the State from doing what the federal system does,
 6   which is saying all people arrested for larceny are released.
 7   If you want to attach nonmonetary conditions, you can.  But --
 8   or they attach money bail, but there's evidence that that
 9   doesn't do anything --
10             THE COURT:  Well, cash bail is required in my court
11   once in a blue moon maybe.
12             MS. HOROWITZ:  Right.  And there --
13             THE COURT:  Cash bail.  Or even less frequently, a
14   surety bond.  I talked to one of our magistrates recently, and
15   he couldn't remember the last time a surety bond had been
16   required.
17             MS. HOROWITZ:  And I think the factual record in this
18   case shows that it's really not doing much.  And we're not
19   saying cash bond is not allowable.  If the defendants decide
20   that they wanted to have a bond schedule that says, you know,
21   for all these offenses, we presume that you're not a danger to
22   society, and we presume that you can be safely released --
23   which they do.  If they apply that to everybody, regardless of
24   wealth, if they want to detain -- as they do for certain, like,
25   you know, first-degree murder and all that, if they wanted to
```

1   expand that category and say, you know, there may be people in

2   here where the risk of flight is high because of the nature of

3   the charges or because -- or the danger -- risk of danger is

4   high because of the charges, we need to actually have a hearing

5   to see whether that's true in this case and, in this case,

6   whether monetary bail will serve a purpose.  That would look a

7   lot more like the State.

8          THE COURT:  Okay.  Let me put two -- give you two

9   possible rulings that a Tulsa County judge might make at the

10  end of a bail hearing.  One would be:  I find that no condition

11  or combination of conditions will reasonably assure the

12  appearance of the defendant or the safety of the community.

13  And the defendant is -- or the arrestee is, therefore,

14  detained, pending trial.

15      The other version would be:  I find that no condition or

16  combination of conditions will reasonably assure the appearance

17  of the defendant or the safety of the community.  And I,

18  therefore, set bond at a million dollars.

19      Legally, what's the difference between those two as long

20  as that finding is made?

21          MS. HOROWITZ:  I don't think there is a difference.

22  I mean, we would take issue with the finding in terms of

23  whether or not there's a factual, you know, record and basis

24  for those opinions and whether the Court has cited any

25  evidence.  We are not saying that it's unconstitutional to set

1  unaffordable bond.  We are saying it's unconstitutional to set
2  unaffordable bond that will detain without treating it like a
3  detention order.

4      So for the purposes of our due process argument -- not the
5  equal protection argument, which I'll get to in a second.  For
6  purposes of our due process argument, we would treat those two
7  orders exactly the same.  They both require that same finding
8  that you said but also a factual record to support it.  In
9  terms of the equal protection clause, that also would be fine,
10 except that they're only doing that for people who can't afford
11 to pay in the first instance.  And that was the difference that
12 I articulated just now, that it is only the people who can't
13 afford to pay who are required to wait in jail for 48 hours and
14 then have a hearing where it's decided; whereas, for anybody
15 who can afford to pay, the State just determines that they can
16 go home, even though that money bail isn't actually doing
17 anything.

18          THE COURT:  Okay.  Thank you.

19     For defense counsel, the question I put to Ms. Horowitz
20 just now is basically for clarification.  If you want to -- if
21 you have anything to add, you're certainly welcome to, but I'm
22 also prepared to go on to my next question for the plaintiffs.

23          MR. WILSON:  Judge, I would just point out that the
24 bail -- I would just point out that the Bail Reform Act has one
25 presumption for minor crimes and then a reverse presumption for

1    crimes that I believe are ten years or more or violent crimes.

2            THE COURT:  Yeah.  Under Section 3142 of the statutes

3    that we look at, yes, there is a rebuttable presumption for a

4    crime punishable by ten years or more, child molestation, that

5    sort of thing.  There's a list of causes for arrest that

6    trigger the rebuttable presumption.  The defense counsel in

7    federal court and a magistrate judge in federal court would be

8    quick to point out that the cases also say that it doesn't take

9    a whole lot to get back into the conventional analytical

10   framework by way of evidence to rebut that rebuttable

11   presumption and to put the issue of detention or release in

12   play as it ordinarily is.  But, yes, you are correct.  For

13   openers, there's -- if it's -- potentially carries ten years or

14   more or is one of another list of -- offenses on another list

15   in Section 3142(f), yes, there is a rebuttable presumption;

16   you're absolutely right.

17           MR. WILSON:  Thank you, Judge.

18           THE COURT:  You bet.

19           THE COURT:  Anything further on this narrow issue?

20           MR. PEDERSON:  Not on this narrow issue.

21           THE COURT:  Very well.  I have -- and, again, I'm

22   proceeding very topically, and I -- and I don't mean to

23   foreclose, ultimately, presentations that you may be prepared

24   to make on other issues, but I do have a question now for

25   plaintiffs' counsel.

 1      Bearing in mind the very nature of a detention hearing, a

 2  hearing held on an accelerated basis in a busy court, first of

 3  all, I presume that the plaintiffs would agree that counsel for

 4  an arrestee should be permitted to make a proffer, as opposed

 5  to being required to present evidence the old-fashioned way at

 6  a detention hearing; am I right about that?

 7          MS. HOROWITZ:  That the parties may choose to proceed

 8  by proffer, we agree with that.

 9          THE COURT:  And do the defendants have a problem with

10  that working both ways, that the State can also -- obviously,

11  subject to objection, subject to rebuttal, subject to

12  argument -- that the State can also proffer information that

13  may be relevant but is not reflected in a pretrial report or a

14  probable cause affidavit?

15          MS. HOROWITZ:  Yes.  We agree with that.  And there

16  is some argument in the AG's brief about whether the defendant

17  can be forced to proceed by proffer or it has to be given the

18  option to proceed by proffer.  We do not agree with them that

19  the ability to present evidence is not an option, and we

20  disagree with their reading of the case law on that.

21      They cite a case from the Third Circuit called Dekler

22  (sic) where the Third Circuit upheld a ruling by the release

23  hearing judge that did not allow the presentation of witnesses

24  on the grounds that the judge ultimately didn't rely on the

25  evidence that was presented by that witness and that that

 1  evidence did not contribute to the judge's opinion and

 2  explicitly said, Our holding would be very different if this

 3  evidence ultimately went to the issue that the judge relied on

 4  in ordering detention.

 5          THE COURT:  Okay.  Refresh my recollection.  What

 6  case was that?

 7          MS. HOROWITZ:  This was U.S. v. Dekler (sic),

 8  D-E-K-L-E-R, I believe, unless I mistyped it.  It's in the

 9  judicial defendants' brief.  I apologize.  I do not have the

10  full citation.

11          THE COURT:  Okay.  Again, from the defendants'

12  perspective -- the sheriff and the judicial defendants, that was

13  just a matter of clarification; but if there's anything you'd

14  like to add or comment on on that narrow subject, you're

15  certainly welcome to do so.

16          MR. PEDERSON:  Yes, Judge.  For the judges, I just

17  want to point out that if there's a determination that at the

18  initial bail determination -- the initial individualized bail

19  determination that is occurring within the 48 hours that the

20  person should be held without bail, then that's not -- that's

21  not the final decision.  Obviously, that person could then say,

22  Okay, I want a full-blown evidentiary hearing, and I want to

23  show that all the Brill factors -- I want to bring evidence and

24  testimony.  That's certainly how I think we would see something

25  like that being done.  That initial determination --

1          THE COURT:  Now, walk me through that again.

2          MR. PEDERSON:  Yes.  They bring someone in, and they

3   say, They've been charged with serious crime.  And the judge

4   says, Well, I find this person will be a danger to the

5   community; and, therefore, they're held without bail.

6          THE COURT:  And I take it that not infrequently

7   happens?

8          MR. PEDERSON:  It happens.

9          THE COURT:  More often than an eclipse?

10         MR. PEDERSON:  No.  It could happen.

11         THE COURT:  Okay.

12         MR. PEDERSON:  Or whatever reason they decide the

13  person should be held without bail, a true detention order;

14  you're ordering them detained, and you're using that initial

15  little form that they use at the 48 hour -- that wouldn't be

16  the final decision.  That person could then say, Okay, now I

17  demand my Brill hearing because you've detained me.  I want my

18  Brill hearing.  And that could be set relatively quickly, and

19  that would be a full-blown evidentiary hearing, where the judge

20  would be required to write full-blown findings of fact and

21  conclusions of law as to why they're being detained with no

22  bail.

23      So I just wanted to point out that it's not, you know, a

24  decision that the 48-hour period isn't final.  They could

25  determine that for now, but say, Okay, I'm holding you now

```
 1   without bail, pending your filing for an evidentiary hearing
 2   and convincing me, based on Brill, the Oklahoma Brill case, and
 3   I will then do a Brill order, making my findings of fact and
 4   conclusions of law, which is something more than our 48-hour
 5   form does right now.  And does that make sense?  We have a form
 6   that we use --
 7            THE COURT:  And there's a slew of them attached to --
 8            MR. PEDERSON:  Yes.  Let me find the citation.  The
 9   form the judges use at the 48-hour individualized bail
10   determination is at Document 403(6).  It's Exhibit 6.  So if
11   they were to find bail is denied and this is a true detention
12   order, then there would be a subsequent full-blown evidentiary
13   hearing if the criminal defendant chose to seek a hearing.
14            THE COURT:  Well, that's the same form that we have,
15   maybe 20 examples of all filled out, at Attachment 5 to the
16   judges' brief.
17            MR. PEDERSON:  I'm sorry, Judge.  Could you --
18            THE COURT:  Sure.  The blank form at Exhibit 6 to the
19   judges' brief is -- appears to be the same form that we have
20   filled out in about 20 iterations of it at Attachment 5 for the
21   judges' brief.
22            MR. PEDERSON:  Yes.
23            THE COURT:  Okay.
24            MR. PEDERSON:  Oh, thank you.  Yes, that's correct.
25   It's also 403(5).
```

1    THE COURT:  And you're telling me that at what

2 interval after arrest does -- is there a proceeding that

3 results in this form being prepared and filed?

4    MR. PEDERSON:  This is the form that we use at that

5 initial bail determination hearing.  The Court goes through and

6 considers the factors, makes whatever notes, considers the

7 alternatives to monetary release conditions, such as GPS,

8 random UAs, no-contact order, et cetera.

9    THE COURT:  Now, am I to understand that you're

10 telling me that the way things work now is that after this

11 determination is made, it is routine for there to be a full

12 follow-on Brill hearing?

13    MR. PEDERSON:  Only if there is -- only if there's a

14 finding that bail is denied altogether.  Am I correct --

15 clients, shake your head yes or no.  I'm being told that I'm not

16 correct on that.  I'm sorry, Judge.

17    May I have one moment?

18    THE COURT:  Sure.  Go ahead.

19    (OFF-THE-RECORD DISCUSSION AT THE DEFENSE TABLE.)

20    MS. HOROWITZ:  Your Honor, I'm happy to tell you what

21 my understanding is of the record.  And if Judge Guten wants to

22 correct it --

23    MR. PEDERSON:  Okay.  Thank you, Judge.  I've been

24 corrected by the client.  The procedure is that if bail is

25 denied at the initial 48 hours, then in addition to the form

 1   that's at 403(5), 403(6), there's also a written findings of

 2   fact and conclusions of law, which is more detailed than this

 3   form, and it's based on the evidence at the initial bail

 4   determination.  The person could always, of course, move to

 5   reconsider, but it's not automatic, as I may have improperly

 6   implied earlier.

 7            THE COURT:  Okay.  Thank you.  Again, that's a bit of

 8   a digression, but a valuable digression from what I was

 9   inquiring about.

10       Is there anything further from the plaintiffs on this

11   particular point?

12            MS. HOROWITZ:  Yeah.  I mean, I just want to -- two

13   points:  one, reiterate the point that we're just -- I want to

14   start -- go back to where you started, which is that a monetary

15   bond that a person cannot afford is a detention order.  And we

16   can brief this again.  It's in our briefing everywhere, that

17   every appellate court in the country that has considered this

18   has treated it that way.  In Tulsa County, it is treated

19   differently.

20       And, you know, Exhibit 5, I think, is very helpful to show

21   that money bond is not being treated as -- that it's just not

22   seen as a detention order.  That, you know, there's -- look at

23   like Page 15, for example, there's no threat to self or others;

24   there's no risk of failure to appear; no financial resources

25   are available; $30,000 bond set.  And if you compare this with

1  the audio recording and look up the jail website, this person is

2  still incarcerated, I think, more than a week later. I don't

3  remember what the date is today.

4  But what we are asking is where you started, which is that

5  this is -- if this person is going to be -- unless the Court is

6  finding that this $30,000 is affordable and the person will be

7  released, then this is -- this is, in fact, a detention order,

8  and they need to be doing whatever they're doing in their

9  actual detention orders. There is a process in place that the

10 standards need to be the same. The state law standards may be

11 different from the federal standards, and we're asking for the

12 federal standards in all cases. But they're doing what needs to

13 be done; they're just not treating this as a detention order.

14          THE COURT: While you're there, let me move on to the

15 next subject. And that is -- I'm looking at Page 17 of

16 plaintiffs' memorandum filed on April 17th. And plaintiffs

17 say, in substance, that they're leaving the method of recording

18 up to the presiding judge so that she may choose the approach

19 that is most compatible with the Court's available resources.

20 And my question on that point would be: What would

21 plaintiffs suggest would be the minimum requirements for some

22 sort of memorialization of the proceedings at a bail hearing?

23          MS. HOROWITZ: I think that there's two

24 considerations here; one being the -- whatever written sheet

25 that comes out of this that -- like, they have a checklist for

```
 1   the sheriff's purposes and for sort of a checklist purpose, and
 2   then there's the question of the evidentiary basis.  And if the
 3   Court has the resources and wants to and chooses to write a
 4   full-blown opinion, making findings and identifying the facts,
 5   we, of course, don't object to that.  We're not saying that
 6   it's required.
 7        We do think that there needs to be a clear
 8   straightforward -- something that looks like the form they're
 9   using, but slightly different, because we don't think it
10   accomplishes all the federal constitutional requirements, but
11   something that is a clear -- just for workability for the
12   sheriff and for -- mostly for the sheriff to have a clear form
13   that shows that this hearing has happened.
14             THE COURT:  What does the sheriff need to know other
15   than this person stays or goes?
16             MS. HOROWITZ:  And I think that's important, and
17   we've tried very, very hard.  So I -- the sheriff has expressed
18   concern throughout the entirety of the case that we take to
19   heart and understand and respect that the sheriff is not
20   supposed to be digging through court records and determining
21   whether the Court has done its job and has met legal standards.
22   There needs to be a very clear record that the sheriff can just
23   look at on its face:  Has this person had a hearing?  Has a
24   finding been made?
25        For appellate purposes and for due process purposes and
```

```
 1   for the person to know what they're being detained on or for
 2   what reasons and to be able to appeal and challenge those
 3   reasons, there needs to be also access to a more robust record
 4   that articulates the factual basis and the, you know,
 5   evidentiary standards.  And right now they are reporting.  That
 6   reporting would be fine with us.  A court reporter would be
 7   fine with us.  A written summary of evidence would be fine with
 8   us.
 9          THE COURT:  I'm -- I hear you saying, then, that a
10   simple audio recording, as long as it's intelligible and
11   accessible, would satisfy due process.
12          MS. HOROWITZ:  Yes, that is our position.
13          THE COURT:  Okay.  Again, from the defendants'
14   perspective, I was asking that predominantly as a matter of
15   clarification.  But if the defendants care to add anything to
16   that, I would certainly be -- I'm -- you should -- in terms of
17   -- again, we're talking about a combination of legalities and
18   practicalities.  That's where we are.  And I was hoping to hear
19   that there's not a due process objection to a reliable audio
20   recording.  I have heard that, and so you're certainly welcome
21   to add, but I've heard what I want to hear in terms of, yes,
22   plaintiffs are not going to be in Denver saying Judge Friot
23   screwed up when he said that a reliable audio recording is
24   sufficient.
25          Anything you care to add to that?
```

1          MR. WILSON:  Judge, I would just say that it's my

2    understanding that a number of Oklahoma courts use an audio

3    system to record what goes on in their courtroom, so it's

4    obviously doable.  What the plaintiff just described, in terms

5    of having the sheriff review that, is setting up the sheriff as

6    a court of review, to which we briefed.

7          THE COURT:  Yeah, that's been very well covered, and

8    I do recognize that the plaintiffs' proposed order would enjoin

9    the sheriff affirmatively to release -- to review papers and

10   release an arrestee if this, this, and this has not been

11   satisfied.  And you respond to that quite adequately in your

12   brief.  I see -- I have, I think, a pretty good understanding of

13   the arguments on both sides of that.

14      Okay.  Next question is again for the plaintiffs.  I'm

15   looking at Page 11 of the judges' brief, and let me quote.  Page

16   11 of the judges' brief.  "For example, there is nothing unfair

17   about placing the burden of showing inability to pay on the

18   criminal defendant since information about the defendants'

19   ability to pay is more within the defendants' knowledge than it

20   is the State's."  That makes sense to me.  And, again, we're

21   talking about legalities under the Fourteenth Amendment, as well

22   as practicalities.  On the face of it, I don't take exception to

23   that, and I'm wondering if the plaintiffs do.

24          MS. HOROWITZ:  We take exception to -- so I want to

25   distinguish between the burden of production and the burden of

1  persuasion.  And this is something that Your Honor referenced

2  before about there being a presumption that's very easy to

3  overcome in the federal system.  And I'd refer the Court to a

4  case, U.S. v. Cook.  It's 880 F.2d. 1158.  It's a Tenth Circuit

5  case, and it talks about this in great detail, about what a

6  presumption means and how you deal with the fact that the

7  defendant has information to -- the defendant has most of the

8  information.  And it resolves that by setting up sort of a

9  three-step process.

10      The -- if some -- this is what the presumption is.  If some

11  evidence exists but detention is necessary or, in the equal

12  protection case, that monetary bond is the only useful thing to

13  address any risk, if that evidence exists, then it is okay for

14  the judge to rule on that evidence if it's strong enough that

15  detention is necessary, that bond -- you know, monetary bond is

16  the only thing that could work.  However, the defendant needs

17  the opportunity to present evidence.  It's not on the government

18  to go out and dig up evidence and disprove ties to community,

19  disprove employment, disprove access to monetary resources.

20  However, you know, this is all part of the opportunity for -- to

21  be heard and to present evidence, to present witnesses.  The

22  defendant can carry the burden of using those procedural

23  protections to put evidence on the record.

24          THE COURT:  Actually, you're addressing a problem a

25  little broader than my question.  My question's really pretty

1  narrow.  Is there any legal problem with requiring the arrestee

2  to establish his indigence as opposed to requiring the State to

3  establish that the arrestee is not indigent?

4         MS. HOROWITZ:  So it would be the same analysis,

5  which is that the defendant can bear the burden of production

6  of whatever resources they have.  Once the -- I will say that

7  the thing that's missing in that analysis, though, is that

8  there is no presumption that the defendant can afford.  We have

9  deposition testimony that the Court actually presumes that a

10  person who is still in jail after having monetary bond assigned

11  cannot afford.  So there is already a presumption that this

12  person cannot afford to pay.

13     So unlike the U.S. v. Cook case or the presumptions that

14  are in federal court where it starts with the State having

15  proffered some evidence that detention is necessary, we're

16  starting here with the only evidence being that the person

17  cannot afford to pay.  The defendant also needs to be given the

18  opportunity to present additional evidence; I'm on Social

19  Security disability, I'm unemployed, I have no bank account,

20  whatever that might be.

21     The burden of persuasion on indigence on every other

22  factual matter remains on the State to prove.  So the burden of

23  production is just who's responsible for bringing the evidence.

24  But once the evidence is on the record, it's not that the

25  defendant has to convince the judge, based on that evidence,

1  that they're indigent; the burden remains on the State to prove

2  that that evidence adds up to ability to pay.

3       But I do think that that point about everybody in court is

4  presumed unable to pay, at least the amount that has been

5  assigned to them already, I think for lower amounts, the burden

6  of production can be on the defendant to put forth evidence of

7  what they can and can't afford.  But the burden of persuasion,

8  once that evidence is on there, is for the State to convince

9  the judge that, given all this evidence in the record, the

10 person can, in fact, afford to pay.

11            THE COURT:  Thank you.

12      The defendants care to address that?

13            MR. PEDERSON:  Yes, Your Honor.  If an arrestee

14 appears and they've been charged or -- charged with a crime for

15 which there is a preset bond, the Court certainly takes into

16 consideration as strong evidence that they're still in jail,

17 and they use that to help them determine whether the person can

18 afford at least a preset amount.  It would tend to suggest that

19 they cannot since they're still in jail.

20      I don't know that this Court needs to craft an order that

21 discusses formal burdens of proof.  We would just respectfully

22 request that the standard be something along the lines of the

23 Court -- the state judges should simply announce the basis of

24 their finding.  They need not refer to formal burdens.  They

25 could just say, The Court finds so-and-such amount is

1    affordable for these reasons, and that could be that.

2         I mean, doing the clear and convincing or who's got the

3    burden on one thing and who's got the burden on another, I just

4    think that that might be too much in the weeds for the type of

5    small little hearing that we have.  I mean, there are all kinds

6    of due process complaint hearings in a administrative-type

7    setting, like at a school.  You get called to the principal's

8    office, and you tell them -- you have an opportunity to tell

9    them your side of the story.  There's -- I don't know that

10   there need to be formal burdens of proof or who bears the risk

11   of nonpersuasion at these things.  That's all I would throw out

12   there.

13        And I'm listening to see if the Court has any follow-up

14   questions.

15             THE COURT:  I understand your point.  And in terms of

16   the practicalities of it, you make a good point.  But I think

17   I've adequately covered that topic, unless the sheriff has

18   anything to add.

19             MR. WILSON:  Judge, I would just point out that the

20   legal presumption referenced by one judge in his deposition,

21   other judges may feel differently.  There's certainly no

22   statute or court rule to that effect, to my knowledge.

23             THE COURT:  Understood.

24        Okay.  And, by the way, so everyone understands how we're

25   going to go, I'm going to go until about noon.  And what we

1    have covered so far is useful, so we probably will resume after

2    a midday break.  I don't know that we're going to go far into

3    the afternoon after a midday break, but I'm not in a frame of

4    mind to hurry this up so that we can all -- that we can be

5    finished by noon, because this is all very helpful to me.

6         And I do have another question at this point for the

7    plaintiffs.

8         I'm looking at -- bear with me just a minute here.  Okay.

9    As you're well aware, the plaintiffs are proposing an order

10   that states that if certain conditions are satisfied or

11   perhaps, better put, not satisfied, then the sheriff is

12   enjoined to release an arrestee.  And the sheriff responds,

13   Wait just a minute.  That kind of puts me in a bind to make

14   these determinations at my peril if I'm wrong.

15        And so my question, Ms. Horowitz, on this particular

16   point, is this:  If the order that I enter states with some

17   elaboration that arrestees are entitled to a prompt, due

18   process compliant bail hearing, then is there really a need to

19   enjoin the sheriff to enforce that on a day-to-day basis?  The

20   sheriff is not comfortable with putting that duty on him.  And

21   my question is whether it's really necessary to put that duty

22   on him if there is in place an order that makes clear what is

23   required.

24            MS. HOROWITZ:  I think it's helpful -- I want to make

25   two points about why, yes, but also where I think we can

1   productively go from here to make this issue less fraught.  I
2   think that the reference to the permanent injunction standards,
3   the four elements of the permanent injunction make clear that it
4   is an appropriate area for injunctive relief.  Primarily, I
5   mean, you know, whether we've prevailed on the merits that
6   people can't be detained without this hearing, the nature of
7   the harm to the plaintiff of not getting -- of not getting
8   injunctive relief and then the balance of the harms to both
9   sides.
10       And for plaintiffs who are not receiving a hearing
11  appropriately, if there is -- if there is noncompliance or if
12  there is -- yes, if the hearings are not in every case
13  complying with the state's -- with the Court's order, the harm
14  to the plaintiff is obvious.
15       I do think, in my second point of where I think we can go
16  from here, I -- Mr. Wilson may not be as optimistic -- I do not
17  think that -- I think that we will be able to, through
18  mediation, potentially craft a solution that the sheriff is
19  comfortable with.  And I understood Mr. Wilson to be concerned
20  that I was suggesting that the sheriff would have to listen to
21  these audio recordings and determine whether the hearings were
22  sufficient.
23       And my goal was to very specifically create two different
24  forms of record; one that is a checklist that we would agree
25  the sheriff can rely on, and one being for purposes of the

1  person to use on appeal or, you know, to understand the basis
2  of their detention.  And I am optimistic that, through
3  mediation, we may be able to agree on a form that we think
4  would provide a sufficient record of the constitutional
5  requirements having been met that the sheriff also agrees is a
6  clear enough yes/no.  And I would ask for an opportunity for us
7  to re-present this issue to you once we've had a chance to talk
8  about that because I -- unless I'm misunderstanding the
9  sheriff's concerns, we understand them, we share them, and I
10  think that we can address them.
11        THE COURT:  Thank you.
12     Anything to add on that score from counsel for either the
13  judges or the sheriff?
14        MR. WILSON:  Yes.  Oklahoma has established three
15  branches of the government, and there's an executive, there's a
16  judiciary, and there's a legislative.  They've assigned -- the
17  State has assigned the detention of arrestees to the executive
18  branch as a ministerial task.  And it has assigned the release
19  of arrestees to the judicial branch as a discretionary task.
20  No one has ever said that this organization or framework for
21  Oklahoma's government is unconstitutional.
22     And the decision that the plaintiffs are requesting would
23  recast the framework and foundations of the Oklahoma
24  government, and I don't think that can be done, and I'd just
25  like to point out that these -- what we're talking about here

1  in this case is not an unconstitutional statute or an

2  unconstitutional court rule, or an unconstitutional State

3  Constitution provision, these are case-by-case adjudications by

4  special judges on a daily bond docket.  The complaint is that

5  the procedures vary from case to case.  There's no consistency.

6  Sometimes they're done this way, sometimes that; different

7  judges do it differently.

8      And their ultimate complaint is that not every single

9  detainee is receiving the procedural due process and equal

10  protection rights to which they are due.  Those rights are

11  provided by the Court, not the sheriff.

12      And there is a case I'd like to read from, Sandoval v.

13  City of Boulder.  It was an employment law case.  And the issue

14  was whether or not it was a single employer or a joint

15  employer.  The two employers were both government entities, and

16  the Tenth Circuit -- the case cite is 388 F.3d, 1312, specific

17  page is 1323, 2004 case.  Says, Absent some indication that the

18  State's decision was motivated by a desire to circumvent the

19  civil rights law or other laws, principle of comity counsel

20  federal courts not to be too quick to erase organizational

21  dividing lines drawn by the State authorities.

22      Now, if this is good law with respect to a couple state

23  entities who employ folks, certainly it has all the more force

24  when you're talking about dividing the powers of government

25  between the three branches, giving the executive branch the

1   ministerial task of accepting everyone that comes into jail and

2   the ministerial task of releasing everyone according to the

3   judge's decision.

4           THE COURT:  Well, on this particular point, the

5   plaintiffs' proposed injunction attempts to reduce it to a

6   purely ministerial matter:  Does the sheriff see this, this,

7   and this?  And if not, then the arrestee goes home.

8           MR. WILSON:  If the complaint is that these judges

9   who know the law now are not following the law, then these same

10  judges will just check all the boxes on the form.  That doesn't

11  solve the problem that they're here to solve.  To solve the

12  problem, the procedures in court need to change.

13          THE COURT:  Thank you.

14          MR. WILSON:  Thank you, Judge.

15          THE COURT:  Very well.

16      I don't know that anything further is necessary on this

17  unless one side or the other -- okay.

18      I now have a question for the judges' counsel.  And this

19  first one is very practical.  And, again, for the fourth time,

20  we're here talking about legalities at the end of the day; it's

21  legalities that matter and practicalities.  And I've got to

22  look at the legalities through the lens of practicality.

23      On page 3 of the sheriff's brief, the sheriff introduces

24  me to the concept of this rolling list.  And I see the

25  practical reason for the rolling list as proposed by the

1    sheriff.  And my question for the judges is quite simply:  Does

2    that trigger any uneasiness, that method that the sheriff calls

3    the rolling list, does that trigger any unease for the judges?

4              MR. PEDERSON:  May I confer very briefly?

5              THE COURT:  Absolutely.  Absolutely.

6         (SHORT PAUSE IN PROCEEDINGS.)

7              MR. PEDERSON:  Judge, I apologize, I'm just not fully

8    up to speed on this.  I'm being told that the rolling list is

9    not continuously updated; it's just the daily bond docket.  And

10   I'm not -- I apologize.  I'm not prepared to discuss this right

11   at this --

12             THE COURT:  That's fair.  I understand.  You bet.

13   This would be a time that I could take a midday break, but I do

14   note with appreciation the presence of Judge Guten and the

15   presiding judge.  If you all have a problem this afternoon, then

16   I'll just -- I'm just going to forge ahead.  On the other hand,

17   if you're available to resume this afternoon, then we can take a

18   midday break.

19             JUDGE MOODY:  May I speak, Your Honor?

20             THE COURT:  Surely.

21             JUDGE MOODY.  I, unfortunately, cannot be here this

22   afternoon.  I have a double homicide trial that's starting on

23   Monday, and I'm having a Burks hearing this afternoon.  So I,

24   unfortunately, can't here be.  I'm not sure if Judge Guten can.

25   And if he's able to, I will defer to him.

 1            JUDGE GUTEN:  Thank you.  Your Honor, I also have some

 2    evidentiary hearings that are scheduled for trials that are set

 3    for Monday.  I can be here maybe by 2:30, certainly by three

 4    o'clock.

 5            THE COURT:  Well, we'll continue.  And I respect the

 6    presence of Judge Guten and the presiding judge.  We will

 7    continue.

 8        And, as a matter of fact, my next question gets me into a

 9    fairly meaty subject that's already received some attention.

10    And my next question is going to be for counsel for the judges.

11    And that is whether I should embody in my order a clear and

12    convincing standard of proof.  And, as I mentioned, I believe,

13    in a footnote in my order, I don't know that I've ever seen the

14    case in which that made a difference, the difference between

15    preponderance versus clear and convincing, because I think it's

16    human nature that any finder of fact has himself or herself

17    convinced, and I don't know that the difference between a

18    preponderance and clear and convincing proof is very often, if

19    ever, determinative.

20        But, anyway, I'm looking at the Brill v. Gurich decision.

21    I can't help but add that Judge Noma Gurich is responsible for

22    one of the most miserable Sunday afternoons I ever spent in my

23    life.  About 30 years ago, I was putting out yard signs for her

24    as a district judge.  That election was in August, and it was a

25    blazing hot August day, and the Oklahoma red clay was so hard

1   that I couldn't pound her yard signs without using a pipe to

2   make the hole.  And I have never let Judge Noma Gurich forget

3   that.  It's sad that such a great person has her name attached

4   to this Brill decision, but that's the way it is.

5        Anyway, I'm looking at the Brill v. Gurich decision, and

6   where the Court of Criminal Appeals is laying out very clearly

7   its requirements for a detention hearing, it says, The burden

8   of proof as to the provisions of Article II, Section 8, which

9   is the right to bail provision of the Oklahoma Constitution, is

10  that of clear and convincing evidence.  Okay?

11       So the Court of Criminal Appeals has established, at least

12  insofar as Article II, Section 8 is concerned, which begins,

13  All persons shall be bailable by sufficient sureties except

14  that bail may be denied for five categories of offenders.  The

15  Court of Criminal Appeals, unless this has changed -- and this

16  is your chance to tell me this has changed somehow -- the Court

17  of Criminal Appeals has already said that the standard of proof

18  is clear and convincing evidence.  Has that changed in some

19  way?

20            MR. PEDERSON:  Not that I'm aware of, Judge.  I

21  believe that's still -- Brill is still good law.  I think the

22  distinction we would make is that Brill applies to detention

23  orders and not, as plaintiff refers to, you know, de facto

24  detention orders.  And the key difference being that a

25  detention order, it's abundantly clear and inarguable whether

1   it's a detention order.  If they're to be detained with no

2   opportunity for release, that's a detention order -- everyone

3   agrees.  If we talk -- start talking about de facto detention

4   orders, then it's whether they can afford it or not.  And

5   different people can disagree on that.

6        And it shouldn't be the same standard for -- and what

7   plaintiff and the Court have called "de facto detention orders"

8   just because when you take into account the -- whether or not

9   something's affordable, that's something that's going to be

10  very problematic to show by clear and convincing evidence.  And

11  at these initial hearings, too, when we're, you know, using

12  proffers and such, clear and convincing proffer, I mean, it

13  doesn't really fit the type of thing we're doing.  And, again,

14  we would just suggest that -- go ahead.

15            THE COURT:  Well, in the Brill decision, after saying

16  that the standard under Article II, Section 8 is clear and

17  convincing evidence, the Court of Criminal Appeals concluded

18  that paragraph by saying, "The facts the judge uses to support

19  a finding that no condition or combination of conditions will

20  reasonably assure the safety of any other person and the

21  community shall be supported by clear and convincing evidence."

22       In other words, whether it's a de facto detention order or

23  a detention order based on that sort of a finding, I gather,

24  from this, that the Court of Criminal Appeals has already done

25  my work for me.  And --

1        MR. PEDERSON:  The point I'd make on that is that the

2   Brill hearing is not required to occur in the very short amount

3   of time.  A Brill hearing, in my thinking, is usually something

4   where it's different than this daily 30-to-40-person docket of

5   people rolling in.  The Brill hearing is more where you're

6   saying, you know, I should be allowed to be released on certain

7   terms, and I'm going to call witnesses and present evidence, and

8   it makes sense in that case if the Court determines that no

9   bail for you because you're a danger, that that be a

10  determination made by clear and convincing evidence because

11  there, you know, we're actually hearing evidence.

12      We're hearing witnesses and the reasoning from the State,

13  from the criminal defendant, as opposed to these much more

14  quick daily docket hearings.  It would be extremely difficult

15  to find these factors by clear and convincing evidence because

16  a lot of times it could be, you know, based on criminal history

17  or the crime charged immediately based on the PC affidavit.

18        THE COURT:  But do you get that sort of a

19  differentiation between the types of hearings out of the Brill

20  decision?  Because what I'm saying the Court of Criminal

21  Appeals say is that the burden of proof, as to the provisions

22  of Article II, Section 8, which is, I take, to be their way of

23  saying, The burden of proof, as to release or detention, is

24  clear and convincing.  But if I'm supposed to read a

25  distinction out from the Brill decision in terms of whether

1   it's what type of a hearing it is or how soon after arrest it

2   occurs, I need you to point that out for me.

3          MR. PEDERSON:  Well, you know, I think Brill is

4   correct with respect to the Oklahoma Constitution.  I don't

5   think federal due process requires any certain standard on the

6   facts underlying a bail determination, such as dangerousness,

7   risk of flight.  You know, if that's a federal standard, then,

8   you know, Brill can't be changed by statute.  Brill can't be

9   changed by subsequent decision.  I think it would just be

10  better to leave the federal due process standard at a

11  preponderance or not address the standard; just say that the

12  standard is that the judge has to announce their reasoning.

13         THE COURT:  That anticipates a question I'm going to

14  have for Ms. Horowitz in about a minute.

15         MR. PEDERSON:  So you know, our argument's always

16  been, you know, in Medina, if there's not a, you know,

17  historical traditional burden of proof or the allocation of the

18  burden or whether the standard should be clear and convincing,

19  beyond a reasonable doubt, et cetera, if there's no traditional

20  standard in the context of the case, then the State can do what

21  it wants and it'll comport with due process unless it's unfair

22  in operation, all the -- as outlined in the Medina case.

23  That's our position.

24         THE COURT:  Thank you.

25         MR. PEDERSON:  Thank you.

1          THE COURT:  Okay.  Ms. Horowitz, now I have a

2   question.  You heard me say a minute ago, flippantly, Why has

3   not the Court of Criminal Appeals already done my job for me?

4   And if I read Article II, Section 8 or a determination made as

5   to release or detention as being, really, as a matter of law

6   within the ambit of Article II, Section 8, then why should we

7   layer my order on top of what the Court of Criminal Appeals has

8   already said in terms of the standard of proof?

9          MS. HOROWITZ:  Because the defendants are not

10  complying with it.  And just to -- I want to -- and I want to

11  clarify a factual matter, which is that there is one bail

12  hearing for everybody, and it's on the form in Exhibit 5.  The

13  last box is the sort of Brill standard, plus other statutory

14  requirements, where is from that one detention hearing that if

15  the order -- if the Court orders somebody detained, then --

16  they explicitly order somebody detained, then they use the

17  clear and convincing evidence standard and the findings that

18  we're asking for.

19      But if they order somebody to pay money that they can't

20  afford to pay, they don't actually go through that process.

21  There is no second, separate, later hearing.  And we can -- I

22  mean, I can find out whether the defendants agree with that,

23  but I believe it's undisputed, that there is just one hearing.

24  But that the defendants are treating monetary bail as a release

25  condition, even when there is affirmative evidence, let alone

1  the State not having proven that the person can't afford to pay

2  it.  And so the order is needed to clarify that the standards

3  that they are already applying to detention orders apply to all

4  sorts of detention orders, even if they are couched as monetary

5  bail conditions.

6           THE COURT:  Thank you.

7       Anything further on this point?  Yes, sir.

8           MR. WILSON:  Judge, may I approach the bench?

9           THE COURT:  Surely.  You may approach the clerk.

10          MR. WILSON:  Okay.  This isn't really a sheriff's

11  concern.  I would just --

12          THE COURT:  Whatever it is, do you have a copy for

13  plaintiffs' counsel?

14          MR. WILSON:  Yes.

15      I would just point out that there is a statute in Oklahoma

16  that addresses the clear and convincing burden with respect to

17  bail.  And it's the exception rather than the rule.  And I

18  would think if it was the rule, they would say so.

19          THE COURT:  Well, that's -- okay.  That's to trigger

20  the rebuttable presumption.  Okay.  Anything further on this

21  point?

22          MR. WILSON:  No, sir.

23          MS. HOROWITZ:  I'm not sure if this is helpful to

24  Your Honor, but I just -- I think that this statute supports

25  the argument that we were making before, that the State is just

1   saying what I was saying before, which is that there is a

2   presumption here, but the burden remains -- just to clarify --

3   that the Brill burden remains on even when there is this

4   presumption, the State still has to make that showing by clear

5   and convincing evidence, so I don't think it's actually

6   contradictory.

7           THE COURT:  Thank you.  That's understood.

8       Okay.  And next I have a question for the sheriff.  And

9   you may remain seated while I ask this question, Mr. Wilson,

10  but I do have a question for you.

11      I'm looking at Page 12 of your brief filed on the 29th of

12  last month.  And in the middle of Page 12, you quote the

13  plaintiffs' proposed verbiage -- or part of the plaintiffs'

14  proposed verbiage for a notice the sheriff would be required to

15  give to every arrestee.  And I'll be the first to agree with you

16  that that verbiage is a little edgy and a little argumentative.

17  It might fundamentally be accurate, but it's still a little bit

18  edgy, but you probably discern from my order that it's

19  important, in my view, for the arrestee to know, going into the

20  hearing, what the issues are, what might or might be in play

21  that would result in him being detained or released, what he and

22  his counsel need to be prepared to address and so forth, which

23  means that the arrestee going into the hearing should also --

24  should have been informed, one way or another, as to what

25  exactly is in play at the bail hearing.

1      So my question for the sheriff is, okay, fine.  This

2  verbiage is a little bit edgy.  But what would be wrong with

3  including a toned-down version of that in a notice that, as a

4  purely ministerial matter, the sheriff is expected to give to

5  every arrestee before his bond hearing?

6          MR. WILSON:  Judge, the sheriff has never been

7  requested to provide notice in the past; certainly does not

8  object to providing notice in the future.  He's not a

9  constitutional scholar.  We believe that the notice should be

10 drafted either by the presiding judge or by this Court.

11 Frankly, there's kind of an issue with who delivers the notice.

12 I think the person who is being detained in jail should know

13 who's friend, who's foe, and who's neutral.  I think it would

14 make more sense to have the public defender deliver the notice,

15 and then the public defender can go into great detail about that

16 arrestee's rights.  I just think it's placing the sheriff's

17 office in the position of being an adviser to the arrestee, and

18 that's not the case.

19         THE COURT:  Well, what -- I think you're

20 overcomplicating it because --

21         MR. WILSON:  Okay.

22         THE COURT:  -- I would not require the sheriff to do

23 anything that would amount to giving advice to an arrestee.

24 And maybe I'm oversimplifying it, but I envision, when an

25 arrestee is booked in, that they are given a piece of paper,

 1  and it probably wouldn't need to be any bigger than a piece of

 2  paper like this (indicating) that -- with a stack of them right

 3  there that says, In the event that you have a bail hearing,

 4  here is going to be what is involved in the Court's

 5  determination at that hearing.  And maybe that's signed by the

 6  presiding judge or somebody other than the sheriff -- and you

 7  would probably say anybody other than the sheriff.

 8       But what I'm looking at is reducing that to just the

 9  purest, to use your word, ministerial functions by the sheriff

10  to accomplish what -- something that I think is important, is

11  for an arrestee to know what's at stake at this hearing that's

12  going to be held.

13            MR. WILSON:  And I anticipate that kind of an order

14  from this Court.  It's just that the kind of folks that we get

15  in our jail, not all of them are literate, not all of them speak

16  English, some of them are incompetent.  There are people who

17  read one word, and they interpret it to be a different word.

18  And they will look to the person who hands them that sheet of

19  paper to explain.  Now, we can do more than just a sheet of

20  paper.  We can put up a poster in booking.  We can -- we have

21  kiosks that are in every pod, jail pod, kind of like, you know,

22  a monitor that inmates can use to communicate with medical and

23  stuff like that, receive information about the handbook.  We can

24  have the notice there.  But there's still going to be a number

25  of folks who don't understand, can't read --

1           THE COURT:  That goes with the territory.

2           MR. WILSON:  Yeah.

3           THE COURT:  And I would not consider requiring the

4    sheriff to elaborate on what's within the four corners of this

5    notice.

6           MR. WILSON:  Understood.

7           THE COURT:  Okay.  Very well.

8           MR. WILSON:  Thank you.

9           THE COURT:  Anything further on that point?

10          MS. HOROWITZ:  Just a quick point, that we did not

11   intend it to be edgy.  We hear you; we take your point.  I

12   would --

13          THE COURT:  You did not --

14          MS. HOROWITZ:  Did not intend it to be edgy.  I

15   realize that we read your order differently than the defense

16   does and differently than you may have intended to write it.  It

17   was an effort to boil down into simple, understandable language.

18   And, reading it again, it's not that simple.  I do think we can

19   do a better job, and I take your point.  And I would just add

20   this to the list of things that I think that we should try to

21   work together and come back to you with either a joint proposal

22   or edited proposals of something for you to consider.

23          THE COURT:  Well, that's in the event that the matter

24   goes to a contested conclusion.

25          MS. HOROWITZ:  Or in the -- right.  Or in the event

1  that we may be able to reach agreement on it.  I hear your

2  point.  I understand.  I think I understand the objections from

3  both, and we are willing to try and make -- come up with a form,

4  a sheet, language, that the sheriff is comfortable with.

5          THE COURT:  Very well.

6      Mr. Pederson?

7          MR. PEDERSON:  We would just point out that we don't

8  have any objection to -- we would encourage the PDs to provide

9  their clients notice of what's going on at the hearing and

10  encourage the sheriff to hand out a piece of paper that says

11  so.  As far as our power to order those things, that may be

12  over the border of our ability -- like, for example, to order

13  the public defender, You must be in the jail or provide certain

14  things, I don't know that we could do that, but we could

15  certainly encourage them to do that.

16          THE COURT:  Well, I don't envision that my order would

17  go in that direction.  What -- the sheriff is the one who has

18  the body, so to speak.  Okay?  And so, as a practical matter,

19  the easiest way to give the arrestee what I consider to be due

20  process required notice of what's at stake in this hearing and

21  what's at issue in this hearing, is for them to routinely be

22  given this piece of paper when they're booked in.  And the piece

23  of paper would not be itself an order of any kind, but it would

24  give them a bare-bones understanding, if the person is capable

25  of understanding.  And in our court, like yours, some are, some

1   aren't.  But a bare-bones understanding of the sort of hearing

2   that might be upcoming and what the determinative matters may

3   be in that hearing.  And whether it's signed by the presiding

4   judge or who -- I don't think the sheriff is volunteering to

5   sign it, and I don't think that the sheriff should be the one

6   to sign it.  But that's really all I'm looking at.

7           MR. PEDERSON:  I understand.  I understand.  Thank

8   you.

9           THE COURT:  Okay.  Thank you.

10      Okay.  I've got another question for the sheriff.  Bear

11  with me just a moment.  I'm looking at Paragraph -- or Page 13,

12  rather, of the sheriff's brief where the sheriff says, I think,

13  correctly, "There are no undisputed material facts that the

14  sheriff has ever interfered with the opportunity of either of

15  the plaintiffs' lawyers to confidentially meet with his or her

16  client in preparation for his bail hearing."

17      And in terms of providing counsel for an arrestee access

18  to his or her client, I'm not really focused on anything that's

19  in this record that would suggest to me that the sheriff has

20  actively interfered with access by a lawyer to the client.

21  What I feel I must facilitate is access by counsel to the

22  client before the hearing for private conversation before a

23  bail hearing and for private conversation during the bail

24  hearing.

25      And so looking at that discussion by the sheriff on Page 13

1    of your brief, my question is:  Does the sheriff propose that I

2    just declare that the arrestees are entitled to consult

3    privately with counsel before and during the hearing and leave

4    it up to the sheriff and the judges to work out the details?

5    And to clarify that, basically -- how, from the sheriff's

6    perspective, as a practical matter and legal matter, how do I

7    assure an opportunity for private consultation before and during

8    the hearing?

9              MR. WILSON:  Well, the sheriff is under a common-law

10   duty to provide transport of the prisoners to and from court

11   and to allow the prisoners to consult confidentially with their

12   attorneys.  In the 15 years I've been doing this, I've never

13   known anyone to complain that's not taken place, except during

14   COVID, when there was a period of time when there were strict

15   restrictions as to who could come in the jail.  There were still

16   iPads and those kind of devices provided to the prisoners so

17   they could communicate with their counsel through that means.

18   And because there is not an injury with respect to this issue

19   that traces to the sheriff, I don't think relief can issue

20   against the sheriff on this thing.

21         Certainly, to the extent the Court declares the rights of

22   the parties, the sheriff will adhere to that and also to all

23   the orders of the presiding judge or the bond docket judge, as

24   he's required to carry out their orders.

25         Thank you.

1            THE COURT:  Thank you.

2       And I'll offer the judges and then plaintiffs an

3   opportunity to address that point, if you care to.

4            MR. PEDERSON:  The judges have essentially the same

5   perspective on that as the sheriff.  The issue is -- it's not

6   one of practicality, so much.  I think something could be done.

7   Obviously, it would seem to be not too complicated.  The issue

8   is like a technical legal issue is -- could a declaratory

9   judgment be crafted vis-a-vis the judges to make this happen.

10  And I just -- I'm not sure it could because I don't know if

11  that's the judge's responsibility.  Certainly, they can do

12  nothing to interfere with the right to have this information

13  conveyed to the --

14           THE COURT:  In other words, the judges' suggestions

15  would be, at this point, that the matter of physical access of

16  counsel to client is in the sheriff's ballpark and not something

17  that the judges ought to be directly involved with?

18           MR. PEDERSON:  Yes, Judge.  Yes, sir.

19           THE COURT:  Thank you.

20           MR. PEDERSON:  Thank you.

21           THE COURT:  That's -- you could read my order with

22  one eye closed and the other one almost closed and understand

23  that this Court, based on its reading of the law, puts a lot of

24  importance on meaningful access of counsel to an arrestee.  And

25  so, as far as I'm concerned, we're past the legalities of that

1    issue.  And my question is:  How do we deal with it as a

2    practical matter?

3        Viewing it in that light, if the plaintiffs have anything

4    to add at this point, I'll be happy to hear you.

5            MS. HOROWITZ:  Just that we are probably amenable to

6    that, to leaving that out of an injunctive order and leaving it

7    a declaratory judgment.  I do just want to preserve the

8    opportunity.  There is evidence in the record -- and this is

9    from the court liaison officer's deposition -- that the jail

10   was not providing opportunity -- access -- opportunities to

11   confer privately.  And I hear Mr. Wilson's point about that

12   being during COVID.  I just want an opportunity to confirm that

13   we are in agreement on that factual matter.

14       The other just footnote that I want to have a future

15   opportunity to tell the Court, whether or not we are objecting

16   to this, is that this also ties into the questions of the

17   logistics of the docket itself, which I don't know if you intend

18   to get to later on in this argument.  There is a question about

19   who appears where and whether the defense attorney is able to

20   both confer with their client and have access to the information

21   that they need, given the logistics of the bond docket.  And so

22   I would like the opportunity to explore that a little bit more

23   in that context.

24           THE COURT:  Yeah, well, the information in one of

25   these briefs, about Teams, using Teams, that's new information

1    to me.

2              MS. HOROWITZ:  And it's evolving information for us.

3              THE COURT:  Okay.  Very well.

4              MR. WILSON:  If I may?

5              THE COURT:  Surely.

6              MR. WILSON:  Just one thing I want to respond to.  In

7    terms of the counsel appearing on behalf of their client at

8    these hearings, one of the parties not before the Court is the

9    public defender and to the extent the public defender doesn't

10   make an appointment to see their client in the jail and doesn't

11   come to the bond hearing dockets, there's nothing the sheriff

12   can do to fix that.  There's no authority he has to compel

13   that.  It's my understanding that currently the public defender

14   attends the bond docket by video from out of state.  The

15   sheriff can't fix that.

16             THE COURT:  The public defender appears from out of

17   state?

18             MR. WILSON:  That's my understanding, Judge.

19             THE COURT:  Okay.  Anything further on this point?

20             MR. PEDERSON:  As far as the public defender who

21   appears out of state, it's my understanding that's a very

22   temporary situation, in that we don't anticipate that that's

23   going to continue.  I just offer that as background

24   information.

25             THE COURT:  Okay.  Very well.  I have -- I have gone

1  through the questions that I had.  But, as I have already said

2  at least once, I don't intend to foreclose presentations that

3  either side has prepared themselves to make with respect to the

4  issues before us today, which is scope and -- scope of relief

5  and practical contours of relief.  So proceeding in the normal

6  way, I'm first going to offer plaintiff to add anything to what

7  we've already covered, and then I will certainly offer the

8  defendants the same opportunity.

9          MS. HOROWITZ:  Your Honor, may I just take two

10  minutes to go through my notes?

11          THE COURT:  Surely.

12      Let me interrupt with a question.  When are the judicial

13  defendants that are here due in court?

14          JUDGE MOODY:  1:30.

15          JUDGE GUTEN:  Same for me, sir.

16          THE COURT:  Okay.  Why don't we take about a

17  15-minute break, and then we'll resume, and we'll go until

18  we're done.

19      Court will be in recess.

20      (RECESS HAD.)

21          THE COURT:  We're not quite to -- yes, we are.  We

22  are afternoon.

23      Good afternoon.  We're resuming in Civil 18-298, Feltz and

24  others vs. Regalado and others in our motion hearing, with

25  counsel and the parties mostly present as before.

1    And, Ms. Horowitz, when we recessed, I had indicated --

2    and I would reiterate that in covering matters topically as I

3    have, I did not mean to foreclose additional matters that

4    counsel on either side would want to cover, so this is your

5    opportunity.

6         MS. HOROWITZ:  There's one issue, and then just a

7    little, like, closing takeaway.  And one thing that I just want

8    to say before we leave the courtroom is, as I noted at the

9    beginning, our proposed order was drafted very much --

10   designed, in terms of motive and effort, to give effect to the

11   order that you issued.  I do want to -- just in terms of where

12   we disagree with your order, I just want to highlight that

13   48-hour period just one more time as we have argued today that

14   that 48-hour time is required by Supreme Court precedent, by

15   the facts on the ground.

16       But that legally, we actually don't think that the

17   defendants have shown that there is any actual need for that

18   order as a matter of balancing, as well as, you know, the equal

19   protection arguments that we made before, that it is a creature

20   of their decision to make their initial detention determination

21   based on wealth rather than any sort of, you know -- that is

22   not supported by any State interest.  That goes both to the

23   logistics and to the substantive understanding.  So I just want

24   to highlight that one point.

25       In terms of just the takeaway, I think I want to go back

1   to what Your Honor started this conference with, which was the
2   point that we are not as far apart as you might have feared.  I
3   think that that is true, and I also think that, at least from
4   plaintiffs' perspective, to the extent that there did -- the
5   size of daylight that there was at the beginning of this
6   hearing seems even smaller to us now.  I think it's pretty
7   clear that what we're asking for is what they are already doing
8   or required to do for people who are ordered detained
9   explicitly and that our request is to expand that to the people
10  who are, in fact, being detained, as this Court and every
11  circuit court has held they have to be treated equivalently.
12      I think that there are specific administrative concerns
13  that they have raised in terms of the -- some of the specific
14  relief that we've asked for.  And just want to reiterate the
15  point that we've heard that.  Some of that, we think, is not
16  baseless -- does not have a basis, for example, the 48-hour
17  rule.  And we would like the opportunity, if Your Honor is
18  inclined to give them more than 48 hours, to use this process to
19  help us make the factual record that that is actually -- that
20  there is no evidence to support that need and that it would be
21  contrary to the law.
22      On the other points, I think that we can come back to Your
23  Honor with a closer together -- or a proposal that would face
24  less objection from the defendants if we can't actually settle
25  the case.

```
1              THE COURT:  Well, do I hear you suggesting that if
2    mediation is unavailing that you would like the opportunity to
3    submit a revised proposed judgment?
4              MS. HOROWITZ:  If you are amenable to that, I do think
5    that we could make your job easier by proposing things that take
6    into -- we've heard the points that you've made about your
7    concerns.  We've heard the points that the defendants made about
8    their concerns, and we do think that there are workable
9    solutions that we would like to propose, especially once we've
10   had an opportunity to explore and understand in more detail
11   what some of those concerns are and discuss with defendants.
12   We would like an opportunity, if we do not resolve the case, to
13   --
14             THE COURT:  I'm not going to establish that step
15   today, but I'll say for all concerned that if, unfortunately,
16   mediation is unavailing, I would not be a bit surprised to hear
17   from the parties that they -- in light of that experience, they
18   would like to submit a revised proposed order.  And I would be
19   equally surprised if I didn't grant leave to do that.  That
20   makes sense.  But there's no need for me to memorialize that
21   today.
22             MS. HOROWITZ:  Understood.  And appreciate it, Your
23   Honor.
24             THE COURT:  Very well.
25        And I'll be happy to hear anything further from the
```

1  defendants.

2          MR. PEDERSON:  Just a few minor cleanup issues from

3  earlier.

4      Back when we were talking about Topic No. 1, which is the

5  48-hour rule and the Rehnquist language in Salerno about the

6  presumption of innocence, et cetera, obviously, there's, you

7  know, two ways the presumption of innocence is used; one is as a

8  formal trial procedure, and the other is in a rhetorical sense.

9  I think he was meaning it in a rhetorical sense, but the point

10  isn't lost that freedom prior to trial is the norm.  We would

11  understand that.  But we would also point out that the judicial

12  determination of probable cause diminishes the liberty interest

13  of the person for whom probable cause has been found.  And once

14  you pass that Fourth Amendment procedural barrier, you do have

15  -- the individual does have a diminished liberty interest.

16  It's not the same as a free individual.  I just wanted to make

17  that point.

18      Also, we would concur with the -- doing the post-mediation

19  supplemental proposed order.  We've heard the Court's position

20  on that.  As far as the recording goes, it's our position --

21  well, first, for background, we have been using Teams to stream

22  these hearings.  Currently, people are not allowed to record

23  them.  I think we could continue to stream those on Teams, but

24  as far as recording goes, I'm not sure that that's necessary

25  for due process.  I think that our number one point is that due

1  process is met by the judges announcing their rulings clearly

2  and articulating the basis for the rulings and filling out the

3  written order.  And we would argue that that suffices for the

4  recording requirement.

5      Our only issue with recording is that, you know, for how

6  long would we be required to keep the recordings.  There's

7  expense for data storage, et cetera.  We can all discuss that

8  with counsel and attempt to work something out.

9          THE COURT:  Well, and here's -- this is your chance to

10  set me straight on this.  It strikes me that one element --

11  certainly not the be-all and end-all, but one element of a

12  hearing worthy of the name by a judge at the district court

13  level is a hearing that results in a reviewable record.  And

14  it's one thing to have this form filled out, and I'm not

15  deprecating that, but as a judge who has been reversed a time

16  or two in the last 22 years, I'm also keenly aware that a

17  reviewable record is an element of practical due process.  And

18  if I'm wrong about that, I need to be set straight.

19          MR. PEDERSON:  There are situations, in rural counties

20  especially, where not everything is recorded.  I suppose that --

21  I'm not sure that violates due process.  And I would think that

22  in the event there's no record there, there are ways for the

23  parties to articulate what occurred.  You know, the attorneys

24  can agree on stipulated -- a stipulated -- as to what the Court

25  ruled and the basis for it.  If there is a recording, we would

1  ask that there be consideration of how long the recording would

2  have to be kept because keeping a bunch of recordings would

3  cause us to incur expenses for data storage and et cetera.  You

4  know, how long do we have to keep those for the court reporter

5  to be able to transcribe them, because the recordings themselves

6  would not be court records, just as the recordings of this

7  Court proceeding is not a court record.

8         THE COURT:  Well, plaintiffs have indicated no real

9  problem with just an audio recording as opposed to requiring a

10  court reporter to be there every time.  And so I view that as

11  -- I'm not going to call it a concession, but an accommodation,

12  a sensible accommodation.  But you're saying even that might be

13  problematic.

14         MR. PEDERSON:  Well, I think the audio recording is

15  much -- I agree, that is a concession as to storing audio

16  recordings easier than storing video and audio.

17         THE COURT:  Let alone requiring a living, breathing

18  reporter to be there every time.

19         MR. PEDERSON:  Exactly.

20         THE COURT:  Right.

21         MR. PEDERSON:  That would be a tremendous cost to

22  have the reporter there every time.

23      Let's see.  With respect to the plaintiffs' proposed

24  declaratory judgment on No. 1, at Page 2 of their proposal, the

25  second line:  Under the Fourteenth Amendment, an arrestee

 1  awaiting trial in Tulsa County may not be detained on

 2  unaffordable bail or otherwise.  We would prefer to just strike

 3  out the "unaffordable bail or otherwise."  It seems to

 4  introduce a substantive component instead of a procedural

 5  component.  And we would just say --

 6          THE COURT:  Show me -- you're looking at the

 7  plaintiffs' draft?

 8          MR. PEDERSON:  Yes, Your Honor.  Plaintiffs' draft on

 9  Page 2 at Paragraph 1, their proposed declaratory relief.

10          THE COURT:  Okay.  Hold on.  Let me --

11          MR. PEDERSON:  Yes.

12          THE COURT:  Page 2, Paragraph 1.  Now, where?

13          MR. PEDERSON:  On the second line, it refers to, you

14  know, they may not be detained on unaffordable bail or

15  otherwise.  We think it would be just better to leave it as

16  "shall not be detained unless they're afforded a prompt

17  individualized due process compliant hearing."  Just take out

18  the reference to "unaffordable bail or otherwise."

19          THE COURT:  That's noted.

20          MR. PEDERSON:  And, as we already discussed, on their

21  -- plaintiffs' proposed declaratory relief, paragraph 2, sub a,

22  they had that "shall occur no later than 48 hours, absent a

23  bona fide emergency," et cetera.  We would propose striking

24  that and just say "absent good cause warranting a longer time

25  or waiver by the defendant."

1          THE COURT:  That's noted.

2          MR. PEDERSON:  And we'll just stick with what we've

3    briefed on the clear and convincing standard.

4        And that's all we have.  Thank you.

5          THE COURT:  Thank you.

6          MR. WILSON:  Thank you, Judge.

7        The sheriff has submitted a proposed order for declaratory

8    relief against him that the plaintiffs are entitled the notice

9    of their bail determination hearing in such a manner that will

10   allow them to prepare and meaningfully participate in the

11   hearing.  Also, for injunctive relief against him, that he will

12   make available to every person booked into the county jail on

13   state charges written notice of the bail determination hearing

14   in a format to be written either by the presiding judge or this

15   Court.

16       The only other part of the relief that we've suggested and

17   I'd like to clear up is with respect to the rolling list.  The

18   concern with this list was that the public defender be appointed

19   as soon as possible.  It would be generated -- could be

20   generated multiple times a day.  I mean, it's just pressing a

21   button on the computer as to who's booked in, minus who's been

22   released.  Right?  And could be provided to the interested

23   parties, but really everyone could ignore it except for the

24   public defender, because with an order from the presiding judge

25   that points the public defender to represent everyone on the

1   rolling list, the public defender would be able to get notice

2   within three or four hours of a homeless person that's been

3   booked into the county jail and not have to wait for the daily

4   bond docket list to show up 24 hours later.

5        So that was the purpose of the rolling list.  The last

6   rolling list that occurs prior to the bond docket would be the

7   bond docket list, you know.

8        I did want to point out that in all the cases I've read --

9   and there's been a lot of them -- I found none of them that

10  suggest that injunctive relief should be issued against the

11  sheriff based on case-by-case determinations at the daily bond

12  docket.

13       The ex parte Young case is a case that was based upon the

14  unconstitutionality of a statute.  And if you want to keep that

15  statute from being enforced, you enjoin the folks who enforce

16  it.  That makes sense.  That's how I've always understood that

17  kind of relief.  I went through the cases that the Court cites

18  in its order.  The McNeil case is a case that involves

19  probation arrest warrants.  And these probation arrest warrants

20  Docket 190- --

21            THE COURT:  The cases that I cite in my order on what

22  issue now?

23            MR. WILSON:  On -- it's actually enjoining the

24  sheriff.  Let me find where that's at.

25            THE COURT:  In the neighborhood of Page 27?

1           MR. WILSON:  I believe so.  Actually on Page 30.

2           THE COURT:  Okay.

3           MR. WILSON:  Subsection -- well, 27 of your order,

4    subsection c, injunctive relief is available against the Tulsa

5    County Sheriff.

6           THE COURT:  Right.

7           MR. WILSON:  Okay.  So in the McNeil case, that was a

8    case involving probation arrest warrants.  And if you go to

9    Docket 199 in the district court on that case, they submit

10   hundreds and hundreds of these probation arrest warrants.  And

11   they issue -- because I suspect the probationers are requesting

12   that the probation be revoked for one reason or another.  And

13   the judge is issuing an arrest warrant and, at the same time,

14   placing a bond amount on that arrest warrant.  It's obvious, on

15   its face, that the bond amount isn't being determined at an

16   individualized hearing because it's an out-of-custody arrest

17   warrant.

18        The sheriff is never required to enforce a court order

19   unconstitutional on its face, and that's what McNeil is talking

20   about.  The case-by-case determinations by the special judges at

21   the bond docket should be presumed to be correct.  The sheriff

22   should never be in the position of having to decide whether or

23   not the judges that order him what to do are doing their job

24   correctly or not.

25        The next case that's cited is the Guill case, G-U-I-L-L.

1    And in that case, most of the relief was deemed moot.  There

2    was one issue that had to do with the public defender, but the

3    court denied both parties' motions for summary judgment on

4    that, so no injunction issued.  In the Nashville case, that

5    case was an action to enjoin the court clerk from enforcing an

6    unconstitutional statute.  Again, just like ex parte Young, a

7    bright-line test, the statute's unconstitutional; you can't

8    enforce it.

9         The next one is Doe.  In that case, the attorney general

10   was enjoined from enforcing an unconstitutional state law --

11   again, a bright line test, just like ex parte Young.  And the

12   last case that was cited, the Michigan Department of

13   Corrections case, that is actually an employment law case where

14   an employee of the Department of Corrections had been let go,

15   and the Court's order was to reinstate him.  And the

16   reinstatement issued against the DOC, the warden, and I think

17   his supervisor.

18        So everybody there were people who could reinstate the

19   plaintiff, and that was the injunction -- reinstating.  In our

20   case, as I've explained earlier -- and I won't go on about

21   it -- we've got the executive branch, whom the sheriff works

22   for, and the judicial branch, whom the judges work for.

23   They're not the same employer.  If anything, they're distinctly

24   different.  And, in fact, both the judge and the sheriff run

25   for office.  They're constitutional publicly elected officials.

1  And you get in a situation that the issue with letting someone

2  go from the jail is always the person you let go that commits

3  another crime.  God forbid it be a heinous crime.

4        THE COURT:  Trust me, I've been on that knife's edge

5  a bunch of times.  You don't need to persuade me of anything as

6  to how difficult some of these decisions are.

7        MR. WILSON:  And for these two officials who work for

8  different branches of the state government, for the judge to

9  look at someone on their bond docket and think, you know, This

10  is one if I let go, it's just -- it's going to come back and

11  haunt me.  I'll just delay it, and then the sheriff will have to

12  let him go.  He's shifting the responsibility to the sheriff,

13  and because of the way the State of Oklahoma government is set

14  up, that can't be done.  In some of the cases, I will say, that

15  I've read had to do with the constitutionality of the bail

16  schedule, but that's not at issue in this case.

17      And that's all I've got.  Thank you.

18        THE COURT:  Anything further from either side?

19      Hearing nothing, I'll make some concluding -- very brief

20  concluding comments.  As I've said, both in the conference room

21  this morning and here, I have benefited from quality advocacy on

22  both sides, and I'll repeat that.  Not only do I repeat that, I

23  appreciate that.  And I also applaud the parties' receptiveness

24  to mediation.  And I'm not going to just dwell on that.  But one

25  thing I'm going to say without hesitation is that I don't live

1   and work in the Tulsa County courthouse.  I had some matters

2   there in my former life, but I don't live and work there.

3        And I'm in the running for being the person in the worst

4   position in this courtroom to craft an order that truly conforms

5   to how things can be made to work or should be made to work in

6   that courthouse, accommodating the legitimate constitutional

7   interests of the plaintiffs and the realities of that

8   courthouse.  And that's the reason that I am -- I applaud the

9   parties' amenability to mediation.  That makes sense from so

10  many perspectives.

11       If this matter needs to go to a contested conclusion,

12  sobeit.  As I told the plaintiffs this morning, I hope you sense

13  a certain sense of restraint in my order that I filed a month

14  ago, and I hope the defendants sense a certain sense of resolve

15  in that order.  Both are there.  I'll do my job if required.

16  But the parties are in so much better position to craft an

17  outcome that accommodates their respective interests than I am,

18  that there's just no comparison.

19       And it's in that spirit that I thank you for your presence

20  here today.  I thank you for your quality advocacy.  I do look

21  forward to hearing from you, I would hope, as to a -- an

22  agreed-upon mediator within about ten days, and we'll just take

23  it one step at a time from there.  And with that, again, I do

24  thank you for being here.  And I will look forward to hearing

25  from you.

```
1        Court will be in recess.

2        (COURT ADJOURNED.)

3               CERTIFICATE OF OFFICIAL REPORTER

4          I, Tracy Thompson, Federal Official Realtime Court

5   Reporter, in and for the United States District Court for the

6   Western District of Oklahoma, do hereby certify that pursuant

7   to Section 753, Title 28, United States Code that the foregoing

8   is a true and correct transcript of the stenographically

9   reported proceedings held in the above-entitled matter and that

10  the transcript page format is in conformance with the

11  regulations of the Judicial Conference of the United States.

12               Dated this 6th day of June 2024.

13

14               /S/ Tracy Thompson
                 -------------------------------
15               Tracy Thompson, RDR, CRR
                 Federal Official Court Reporter
16

17

18

19

20

21

22

23

24

25
```