**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

RICHARD FELTZ and ASHTON LEE
DENNIS, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

v.

        Case No. 18-cv-0298-SPF-JFJ

VIC REGALADO, *et al.,*

        Defendants.

**DEFENDANT STATE JUDGES'
RESPONSE TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF
<u>AND BRIEF IN SUPPORT</u>**

August 19, 2025

ERIN M. MOORE, OBA#20787
STEFANIE E. LAWSON, OBA#22422
DEVAN A. PEDERSON, OBA#16576
Assistant Attorneys General
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
erin.moore@oag.ok.gov
devan.pederaon@oag.ok.gov
*Attorneys for Defendants State Judges*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

DEFENDANT STATE JUDGES' RESPONSE TO PLAINTIFFS' MOTION
 FOR INJUNCTIVE RELIEF .................................................................1

Partial History of the Bond Docket .......................................................1

*Since The Court's Ruling on Summary Judgment* ...............................1

*Evolution of Bond Docket Prior to the Ruling on Summary Judgment*..............2

The Evolution of Plaintiffs' Requested Relief .......................................4

*Relief Requested in Second Amended Complaint [Doc. 259]* ...........5

*Relief Requested in Motion for Summary Judgment [Docs. 368 & 369]*..........6

*Relief Requested in Motion for Injunctive Relief [Doc. 421-1]*.......................10

*Proposition I: The Proposed Injunction should be denied as Plaintiffs seek to enjoin the Presiding Judge to act outside the administrative authority which invades the role of the Special Judges presiding over the Bond Docket* ......................................................................................................15

*Proposition II: The stale record and the changes to the Bond Docket and relief requested since the summary judgment ruling requires finding either abstention or mootness*...............................................................17

*1. The claims against the Presiding Judge are moot* .........................25

*2. The claims against the Special Judges are moot* ...........................25

*Proposition III: Procedural Due Process does not require the relief requested by Plaintiffs*..............................................................................26

CONCLUSION ...................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 S. Ct. 1055 (1997) ............................................................................23

*Beattie v. U.S.*,
   949 F.2d 1092 (10th Cir. 1991) ...........................................................................23

*Bowen v. State*,
   1972 OK CR 146, 497 P.2d 1094 .........................................................................15

*Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*,
   7 F.3d 1492 (10th Cir. 1993) ...............................................................................23

*Chamber of Commerce v. U.S. Dep't of Energy*,
   627 F.2d 289 (D.C. Cir. 1980) .............................................................................23

*Citizen Ctr. v. Gessler*,
   770 F.3d 990 (10th Cir. 2014) .............................................................................24

*Collins v. Daniels*,
   916 F.3d 1302 (10th Cir. 2019) ...........................................................................23

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) .............................................................................................18

*Colpitt v. Herrington*,
   1974 OK CIV APP 5, 519 P.2d 553 .....................................................................15

*Copar Pumice Co., Inc. v. Morris*,
   2009 WL 5201799 (D.N.M. October 23, 2009) ...................................................27

*Cox v. Phelps Dodge Corp.*,
   43 F.3d 1345 (10th Cir. 1994) .............................................................................22

*Cty. of L.A. v. Davis*,
   440 U.S. 625 (1979) .............................................................................................22

*Disability Law Ctr. v. Millcreek Health Ctr.*,
   428 F.3d 992 (10th Cir. 2005) .............................................................................21

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) .............................................................................................26

*eBay, Inc. v. MercExchange*, LLC,
   547 U.S. 126 S.Ct. 1837 ......................................................................................27

*F.T.C. v. Accusearch Inc.*,
   570 F.3d 1187 (10th Cir. 2009) ..........................................................................27

*Fletcher v. U.S.*,
   116 F.3d 1315 (10th Cir. 1997) ..........................................................................23

*Gerstein v. Pugh*,
   420 U.S. 103 (1975) ...........................................................................................19

*Habecker v. Town of Estes Park, Colo.*,
   518 F.3d 1217 (10th Cir. 2008) ..........................................................................21

*Harper v. Dist. Ct. of Okla. Cty.*,
   1971 OK CIV APP 182 P.2d 891 .................................................................. 7, 16

*Jackson v. Los Lunas Cmty. Program*,
   880 F.3d 1176 (10th Cir. 2018) ..........................................................................18

*Jordan v. Sosa*,
   654 F.3d 1012 (10th Cir. 2011) ..........................................................................24

*Joseph A. ex rel., Corrine Wolfe v. Ingram*,
   275 F.3d 1253 (10th Cir. 2002 ...........................................................................20

*Klein-Becker USA, LLC v. Englert*,
   711 F.3d 1153 (10th Cir. 2013) ..........................................................................27

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ...........................................................................................18

*McClendon v. City of Albuquerque*,
   100 F.3d 863 (10th Cir. 1996) ............................................................................18

*McKesson Corp. v. Hembree*,
   2018 WL 4621833, *3 (N.D. Okla. Sept. 26, 2018) ..........................................23

*Mink v. Suthers*,
   482 F.3d 1244 (10th Cir. 2007) ..........................................................................21

*Nicodemus v. Dist. Ct. of Okla. Cty.*,
   1970 OK CR 83, 473 P.2d 312 ...........................................................................15

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ...........................................................................................19

*O'Donnell v. Harris County*,
   892 F.3d 147 (5th Cir. 2018) ..............................................................................27

*Phelps v. Hamilton*,
   122 F.3d 1309 (10th Cir. 1997) ..........................................................................20

iii

*Powell v. McCormack,*
  395 U.S. 486 (1969) ...................................................................................22

*Prison Legal News v. Fed. Bureau of Prisons,*
  944 F.3d 868 (10th Cir. 2019) ............................................................ 23,24

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
  601 F.3d 1096 (10th Cir. 2010) .......................................................... 23, 24

*S. Utah Wilderness Alliance v. Smith,*
  110 F.3d 724 (10th Cir. 1997) ............................................................ 18, 24

*S. Utah Wilderness Alliance v. Smith,*
  110 F.3d 727 (10th Cir. 1997) ...................................................................23

*Servants of Paraclete v. Does,*
  204 F.3d 1005 (10th Cir. 2000) .................................................................17

*Snyder v. Com. of Mass.,*
  291 U.S. 97 (1934) ....................................................................................29

*Southwest Stainless, LP v. Sappington,*
  582 F.3d 1176 (10th Cir. 2009) .......................................................... 26, 27

*Sprint Commc'ns, Inc. v. Jacobs,*
  571 U.S. 69 (2013) ....................................................................................18

*State of N.M. ex rel. N.M. State Highway Dept. v. Goldschmidt,*
  629 F.2d 665 (10th Cir. 1980) ...................................................................21

*State v. Kolaco,*
  2020 WL 7334176 (Del. Super. Ct. Dec. 14, 2020)..................................30

*U.S. v. Quapaw,*
  2022 WL 3359365 (N.D. Okla. Aug. 15, 2022)........................................29

*Unified Sch. Dist. No. 259, Sedgwick Cnty. Kan. v. Disability Rights Ctr. of Kan.,*
  491 F.3d. 1143 (10th Cir. 2007) ................................................................22

*United States v. Jones,*
  768 F.3d 1096 (10th Cir. 2014) .................................................................27

*United States v. Lawson,*
  2020 WL 6110969 (E.D. Ky. Oct. 16, 2020) ............................................30

*United States v. Or. State Med. Soc'y,*
  343 U.S. 326 (1952) ..................................................................................18

*United States v. Vera-Flores,*
  496 F.3d 1177 (10th Cir. 2007) .................................................................22

iv

*Utah Animal Rights Coalition v. Salt Lake City Corp.*,
  371 F.3d 1248 (10th Cir. 2004) ................................................................22

*Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*,
  114 F.3d 1513 (10th Cir. 1997) ...............................................................27

*Vazquez Diaz v. Commonwealth*,
  167 N.E.3d 822 (Mass. 2021) ...................................................................30

*Walker v. United Parcel Serv., Inc.*,
  240 F.3d 1268 (10th Cir. 2001) ...............................................................22

*Warren v. Am. Bankers Ins.*,
  507 F.3d 1239 (10th Cir. 20017) ..............................................................17

*Webb v. Mo. Pac. R. Co.*,
  98 F.3d 1067 (8th Cir 1996) .....................................................................18

*WildEarth Guardians v. Public Service Co. of Colorado*,
  690 F.3d 1174 (10th Cir. 2012) ........................................................... 21, 22

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
  681 F.3d 1208 (10th Cir. 2012) ...............................................................24

*Younger v. Harris*,
  401 U.S. 37 (1971) ...................................................................................18

**Statutes**

42 U.S.C. § 1981(a) .......................................................................................22

22 O.S. § 1108.1 ...........................................................................................21

20 O.S. § 106.4 .............................................................................................29

**Other Authorities**

Civil Rights Act of 1991, Pub.L. No. 102–166, § 102 ...............................22

**Rules**

42 U.S.C. § 1983 ...........................................................................................16

Fed. R. Civ. P. 54(b) .....................................................................................17

12 O.S. § 39 ...................................................................................................4

20 O.S. §§ 123 & 124 ...................................................................................15

20 O.S.Supp. 1969 § 120 .............................................................................15

22 O.S. § 162 ................................................................................................15

LCR2 ................................................................................................... 5, 6, 7, 8

v

**Constitutional Provisions**

U.S. Const. art. III, § 2 ..........................................................................23

**DEFENDANT STATE JUDGES'**
**RESPONSE TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**
**AND BRIEF IN SUPPORT**

Defendant State Judges hereby submit their Response to Plaintiffs' Motion for Injunctive Relief [Doc. 421] and respectfully request the Court deny Plaintiffs' Motion the reasons set forth below. In support of Defendant State Judges' position, the Court is shown the following:

**Partial History of the Bond Docket**

*Since The Court's Ruling on Summary Judgment*

Since the Court's April 3, 2024 ruling on the motions for summary judgment, Doc. 397, and the hearing on May 2, 2024, several changes to the Bond Docket have occurred. These changes were made in an honest and good faith manner to resolve the Court's concerns about the process provided to the class. Defendant State Judges believe they have satisfied the Court's concerns.

1. A written notice was developed and given to the Sheriff to hand out to arrestees. The notice is attached as Exhibit 1. The Sheriff provides this notice to arrestees at booking.

2. The Special Judges open every bond docket with an oral advisement about the nature and purpose of the proceedings. The script of the oral notice is attached as Exhibit 2, and a sample of one day's oral notice by a Special Judge as video recorded is attached as Exhibit 3.[1]

3. A bench card was developed to aid the Special Judges and is a guide for them when exercising their judicial authority to make bail determinations in individual cases. This bench card is in addition to other materials available to

---

[1] Exhibit 3 contains the entire bond docket for May 14, 2025 and is being filed conventionally per ECF policy. The oral advisement begins at approximately 08:00 mark and lasts to approximately 10:35 mark.

the Special Judges which aid the court as a whole acting in conformity and with efficiency. None of these materials tell a Special Judge how to decide a particular matter, and nor should they. This supplemental bench card is attached as Exhibit 4.

4. A new form order was developed to memorialize the bail determination decision and the factors found by the Special Judge when making their judicial decision. The form order is attached as Exhibit 5. The form order specifically includes findings about dangerousness, flight risk, and ability to pay.

5. Pretrial Services has expanded its questionnaire to elicit more financial and resource information from arrestees. The completed questionnaires are distributed to the Special Judges, District Attorneys, and Public Defenders ("PD") prior to each bond docket. The questionnaire is attached as Exhibit 6. The previous questionnaire was filed with other briefing. *See* Doc. 403-2.

6. The Public Defender is physically present in the jail courtroom and with the arrestees/defendants during the hearing. *See* Declaration of Lora Howard, Tulsa County Public Defender, Exhibit 7.

### *Evolution of Bond Docket Prior to the Ruling on Summary Judgment*

As Judge Musseman described in his deposition, the implementation of a separate bond docket is "a process and not an event"; (*see Musseman Depo,* attached as Exhibit 8 at p. 105, ln 22 - p. 106, ln 8) and has continued to evolve from its inception to the present as course corrections, improvements, and technology upgrades have been made over the years. To that end, there have been various changes and updates to the process since discovery closed over four (4) years ago in January 2021.

Since March 2021, the arrestees appear by video through MS Teams from a courtroom at the jail. The MS Teams format allows each participant to be seen and heard. The judge is in a courtroom in the courthouse during the week and may appear

remotely on the weekend or a holiday. The Assistant District Attorney ("ADA") and defense attorneys have the option to appear from the jail, the courthouse, or remotely. The PDs now appear from the jail and have no discretion in this matter, except in exigent circumstances. *See* Decl. of L. Howard, Ex. 7. The court, the ADA, and the assistant public defender all have copies of each questionnaire, the probable cause affidavit, and a summary of the criminal history prepared by court services.

The courtroom in the courthouse used for the bond docket is open to the public during the week and since January 2022, the MS Teams link has been published on the Tulsa County District Court website. *Tulsa County District Court Website of Bond Docket* - https://www.tulsacountydistrictcourt.org/vh_bond.html, attached as Exhibit 9. The link allows viewers to participate in the proceedings should the need arise, though recording the proceedings without the express permission of the presiding judge is prohibited by Local Rule. Rules for Tulsa County, Rule 11. *See Rule 11,* attached as Exhibit 10.

The bond docket judge calls each arrestee to the podium and announces the charges of arrest and probable cause determination for the offenses of arrest.[2] The docket sheet, also distributed to the PD and ADA indicates the identity, offense(s) of arrest, and preset bond (if any) for each arrestee. The judge then reviews the pretrial packet and asks questions of the arrestee. The PD and the ADA are invited

---

[2] Defendant State Judges have attached a video recording of the bond docket proceedings held on May 14, 2025, along with the bond docket sheet and the bond determination findings. The bond docket sheet is Exhibit 11 (Only one name is redacted as all others appearing now have their Bond Determination Orders in their respective CM or CF case). The bond determination findings are attached as Exhibit 12 (Only one has redactions as all others are filed in a CM or CF case). The recording is not an official court record and is provided solely as a demonstration of a typical docket for this Court's convenience. The docket sheets are also not public records. The bail findings forms become public record once they are filed with the Court Clerk.

to make argument or present witnesses. The court then announces the conditions of release. The court memorialized its findings and decision on a bond docket findings form.[3] The bond determination order is then filed with the NF[4] case and transferred to the CF or CM in the event the DA files charges (for people arrested without a warrant). Those arrested pursuant to a warrant already have a CM or CF file created and the bond findings are filed in the case.

To alleviate confusion as to how the form orders were to be filed, the Presiding Judge issued an Administrative Order in March 2024 requiring each Bond Docket Findings Order to be filed of record when/if a case is charged. *See AO-2024-8*, attached as Exhibit 13. AO-2024-8 is directed to the processes of the Court Clerk only. These orders are available as a portable document file ("pdf") on the Oklahoma Supreme Court Network ("OSCN") unless prohibited by statute.[5]

### The Evolution of Plaintiffs' Requested Relief[6]

To illustrate the evolution of Plaintiffs' requested injunctive relief, set forth below are three different requests for relief made by Plaintiffs. These requests have evolved significantly over time. Defendant State Judges have noted specifically how each request for relief has been addressed by the Defendant State Judges or is not appropriate for relief on a line-by-line basis. The argument supporting Defendant State Judges' position follows this section. *See Propositions I, II, and III, infra.*

---

[3] The old form mentioned here was discontinued on or about May 14, 2025 when the new form, Exhibit 5, was implemented. *See* Declaration of Judge Dawn Moody, Exhibit 14.

[4] NFs, or "not filed" case numbers and contents (typically the pc affidavit and any bond information) are not publicly available via OSCN.

[5] Oklahoma bars certain documents in criminal cases from being posted online. *See* 12 O.S. § 39. All documents in public case files are available from the court clerk.

[6] A chart of various requests for relief made by Plaintiffs is attached as Exhibit 15.

4

***Relief Requested in Second Amended Complaint [Doc. 259]***

In the Second Amended Complaint, Plaintiffs requested the following injunctive and declaratory relief:

a. An order and judgment preliminarily and permanently enjoining Defendants the Tulsa County Board, Sheriff Regalado, and the Tulsa County District Court Presiding Judge LaFortune from using secured financial conditions of release to detain Plaintiffs and class members without ensuring a due process-compliant inquiry into and findings concerning a person's ability to pay, without due process-compliant consideration of and findings concerning alternatives,[7] without findings concerning the necessity of detention, and without appointing counsel to assist at due process-compliant bail hearings[8] and meaningfully challenge pretrial detention;

b. A declaration that the Defendants violate Plaintiffs' and class members' constitutional rights by requiring secured financial conditions of release without findings concerning ability to pay[9] and necessity of detention, and by issuing and enforcing de facto orders of wealth-based pretrial detention without consideration of alternatives[10] and without findings that such detention is necessary to serve a compelling interest;

c. A declaration that the Defendants violate Plaintiffs' and class members' right to procedural due process under the Fourteenth Amendment by depriving people who are arrested of speedy, individualized release hearings with notice, counsel, the opportunity to be heard and to confront evidence, and findings on the record[11] that the government met its burden to demonstrate by clear and convincing evidence that no alternative condition or combination of conditions would be sufficient to serve its compelling interests;

---

[7]  *See* LCR2 and Bail Determination Order Form, Ex. 5.

[8]  *See* LCR2.

[9]  The Bail Determination Order Form, Ex. 5, expressly provides for findings about these matters.

[10]  *Id.*

[11]  The Bail Determination Order Form plus the Notice, Ex. 1, satisfy this request for relief.

Doc. 259 at 32-33.

### *Relief Requested in Motion for Summary Judgment [Docs. 368 & 369]*

Plaintiffs filed a motion for summary judgment and a separate brief in support.

In those two documents, Plaintiffs requested the following relief:

Declaratory Relief Against All Defendants

Plaintiffs are granted the following declaratory relief against all defendants.

Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, secured pretrial release conditions may not be imposed without hearings, and due process requires that:

1) the hearings be conducted within a reasonable time after arrest;[12]

2) arrested individuals be given notice of the issues to be decided, and their right to be heard and to present evidence;[13]

3) attorneys [sic] be represented by counsel, with the opportunity for confidential communication between the attorney and client before and during the hearing;[14]

4) an inquiry be made into the arrested individual's ability to pay;[15]

5) consideration be given to alternative conditions of release, unless it is determined by clear and convincing evidence that any imposed monetary condition imposed is immediately affordable by the arrested person; and,

6) findings be made on the record[16] applying the clear and convincing standard of evidence and explaining why an arrestee does not qualify for alternative conditions of release, in any case in which pretrial

---

[12] LCR2 satisfies this request for relief.

[13] The Notice, Ex. 1, satisfies this request for relief.

[14] LCR2 and the assistant public defenders appearing in the jail courtroom satisfies this request for relief. *See* Declaration of L. Howard, Ex. 7.

[15] The expanded questionnaire and the Bail Determination Order form satisfies this request for relief. *See* Questionnaire, Ex. 6 and Bail Determination Order form, Ex. 5.

[16] AO-2024-8, Ex. 13, directs all Bail Determination Order to be filed of record by the Court Clerk in subsequent CM or CF cases such that the Bail Determination Order satisfies this request for relief.

detention is ordered or a secured bond is imposed that the individual has not be found able to pay by clear and convincing evidence.

<u>Injunctive and Declaratory Relief Against the Tulsa County Sheriff and Tulsa County District Court Presiding Judge</u>

Against Defendants Tulsa County Sheriff and Tulsa County Presiding Judge, Plaintiffs are granted summary judgment and the following declaratory and injunctive relief:

The Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution prohibit issuance or enforcement of, and the Tulsa County Sheriff and Tulsa County Presiding Judge are hereby ENJOINED from issuing or enforcing,[17] any secured financial condition of release upon an individual who has not received a prompt hearing[18] on pretrial release conditions at which a judicial officer provided, at a minimum, the procedural and substantive safeguards described as follows:

A. Procedural Requirements. At any court appearance (i.e., initial appearance or bail hearing) that could result in pretrial detention or imposition of a secured bond that an arrested individual cannot pay, the individual must be given a meaningful, individualized hearing that includes:

1. Notice to the individual of the purpose of the hearing;[19]
2. The opportunity to be heard and present evidence;[20]
3. Representation by counsel;[21]
4. Consideration of alternative, nonmonetary release conditions;[22]

---

[17] The Presiding Judge does not have authority to review, issue or interfere with the Bail Determination Orders issued by the Special Judges. *See Harper v. Dist. Ct. of Okla. Cty.*, 1971 OK CIV APP 182, 484 P.2d 891.

[18] LCR2 satisfies this request for relief.

[19] The Notice, Ex. 1, satisfies this request for relief.

[20] LCR2 satisfies this request for relief.

[21] LCR2 and the assistant public defenders appearing in the jail courtroom satisfies this request for relief. *See* Declaration of L. Howard, Ex. 7.

[22] The Bail Determination Order form, Ex. 5, satisfies this request for relief.

5. Consideration of the necessity of detention in relation to the government's compelling interests (i.e., protecting community safety and against nonappearance);[23] and

6. Verbal or written findings of fact regarding these factors,[24] applying the clear and convincing evidence standard.

B. Timing. The meaningful, individualized hearing must take place within a reasonable time period after arrest, and no later than 48 hours from arrest.[25]

C. Appointment of Counsel. Counsel must be provided free of charge at the hearing[26] to any individual who is indigent, and to any individual who cannot secure paid counsel in time for the hearing. Before and during any court proceeding at which release conditions and/or detention are being considered, the individual shall be allowed to communicate fully, expediently, and confidentially with their counsel.[27]

D. Ability to Pay. The individual's social and economic circumstances shall be considered[28] when setting conditions of release.

1. Generally. Prior to an individual being given a release condition that includes monetary bail, the individual shall receive an inquiry into their immediate ability to pay the full amount of the monetary bail.[29]

2. Inquiry Process

---

[23] The expanded questionnaire and the Bail Determination Order form satisfies this request for relief. *See* Questionnaire, Ex. 6 and Bail Determination Order form, Ex. 5.

[24] AO-2024-8, Ex. 13, and the Bail Determination Order form, Ex. 5, combined satisfy this request for relief.

[25] LCR2 satisfies this request for relief.

[26] The assistant public defenders appearing in the jail courtroom satisfies this request for relief. *See* Declaration of L. Howard, Ex. 7.

[27] *Id*.

[28] The expanded questionnaire and the Bail Determination Order form satisfies this request for relief. *See* Questionnaire, Ex. 6 and Bail Determination Order form, Ex. 5.

[29] *Id*.

a. The purpose of the inquiry shall be to determine the amount of money the defendant can pay, using the defendant's own financial resources as would be available within twenty-four (24) hours of bond being set.

b. Such inquiry shall allow the prosecutor, defense counsel, and the individual the opportunity to provide the court with information pertinent to the individual's ability to pay monetary bail. This information may be provided by proffer[30] and may include statements by the individual's relatives or other persons who are present at the hearing and have information about the individual's ability to pay monetary bail.

c. All information regarding the individual's ability to pay monetary bond shall be admissible if it is relevant and reliable, regardless of whether it would be admissible under the rules of evidence applicable at criminal trials.

E. Protections Against Unaffordable Bond.

1. Because the imposition of an unaffordable bond creates a de facto detention order, the judicial officer shall not impose a secured monetary bond on an individual who is unable to pay except where a judge finds based on clear and convincing evidence that:

a. The individual poses a risk of non-appearance in court or a risk to public safety; and

b. No less restrictive alternative condition, or combination of conditions, can sufficiently address the specific risks identified, as documented by written or verbal findings.

2. The evidentiary burden is on the State to prove that the individual poses a risk of non- appearance or a risk to public safety, and that no less restrictive alternative condition or combination of conditions can address the specific risks identified.

Doc. 368 at ECF p. 5-9.

---

[30] The May 14, 2025 recording of the Bond Docket, Ex. 3, shows the Special Judge accepting evidence via proffer.

### *Relief Requested in Motion for Injunctive Relief [Doc. 421-1]*

<u>Plaintiffs' Proposed Terms of Injunctive Relief Against the Presiding Judge and Sheriff</u>
<u>Written Notice of Bond Hearing Rights</u>

1. The Sheriff shall continue to distribute the Notice[31] of Bond Docket Rights that appears as Exhibit 3 to Plaintiffs' June 20, 2025 Motion for a Remedial Order, in accordance with current jail policy. Within ten business days of this Order, the Sheriff shall amend the method of distribution of the Notice as follows:

a. The Sheriff shall distribute the Notice to all persons booked into the jail with one or more pre-arraignment charges.

b. The Sheriff shall distribute the Notice at booking as recipients enter the custody of the Tulsa County Jail. At the same time that he provides the notice, the Sheriff shall provide each recipient, in writing, with the date and time of their scheduled bail hearing. The Sheriff's agent who distributes the Notice and the date and time of the hearing shall orally advise the recipient that they will have a hearing at the date and time indicated in writing, that the purpose of the hearing will be to determine whether they need to stay in jail or can be released, and that the written Notice contains more information about the hearing.

2. Within 30 days after entry of this Order, the Presiding Judge shall distribute to the Sheriff and Plaintiffs' counsel a revised written Notice that advises class members, in plain and simple terms, of their right to a bail hearing, and that:

a. The purpose of the hearing is to determine whether they will be detained or released while their case proceeds;[32]

b. They have the right to a lawyer at the hearing and to talk to the lawyer privately before and at any time during the hearing, and the court will appoint a free lawyer if they cannot afford one;[33]

c. At the hearing, they have the right to present evidence and witnesses about relevant facts,[34] including for example, whether:

---

[31] The written Notice, Ex. 1, is distributed to arrestees at booking. *See* Sheriff Discovery Responses at Int. No. 1, Ex. 16.

[32] Bullet point 2 of the Notice, Ex. 1, includes this information.

[33] Bullet points 3 and 4 of the Notice, Ex. 1, includes this information.

[34] The last bullet point of the Notice, Ex. 1, includes this information.

i. The bail that has been set for them is more than they can afford, and the amount that they can afford,[35] if any;

ii. Connections they have to the community[36] that will encourage them to stay in the area and come back to court; and

iii. The likelihood that they will not be a danger[37] to anyone, including, for example, a lack of recent serious criminal history.

d. If they have family members, neighbors, or other community members who have information to show that they are not a risk to the community and will likely return to court, they may invite those witnesses to come to the jail on the morning of their bond docket to speak with their attorney and determine whether to testify.

e. If a bond is set, the judge must decide whether they can afford the amount, and must tell them what evidence the decision is based on;

f. If the judge assigns a bond that the judge does not find they can pay, the judge must

i. Explain why releasing them from jail might be dangerous to the community or lead to them missing court; and

ii. Explain why releasing them with other restrictions—such as requiring them to stay away from certain places or to give up all firearms—would not be good enough [sic] ensure the community's safety and their appearance in court.

g. They are entitled to a free written summary, written transcript, or audio or audio/video recording of the judge's ruling and explanation, and the process by which they can request and obtain this record.[38]

3. One week after receiving the form Notice from the Presiding Judge under Paragraph 2 of this order, the Sheriff shall distribute it in the manner prescribed in Paragraph 1, in lieu of the Notice currently being distributed.

---

[35] Plaintiffs' proposal continues to use some version of "affordability" in the proposed injunction. That term, however, still does not have an objective definition which could be easily applied. Plaintiffs continue to ask this Court to invade the province of the Oklahoma Legislature by creating a standard without citation to case law that creates presumption of unaffordability. Unlike some jurisdictions, Oklahoma does not have a statutory indigency standard.

[36] The last bullet point of the Notice, Ex. 1, includes this information.

[37] The third, seventh and last bullet points of the Notice, Ex. 1, address this request.

[38] The eighth bullet point in the Notice, Ex. 1, addresses this request for relief.

<u>Oral Notice of Bond Hearing Rights</u>

4. Within ten business days after the entry of this Order, the Presiding Judge shall distribute to the Sheriff, Plaintiffs' counsel, and all judicial officers eligible to preside over bond dockets the Advisement for Arrestees at Bond, as it is found at page 3 of Exhibit 10 to Plaintiffs' June 20, 2025 Motion for Injunctive Relief, except that the Advisement shall be amended to include, in plain and simple terms, a notice that:
a. If a bond is set, the judge must decide whether the person can afford the amount, and must tell them what evidence the decision is based on;
b. If the judge assigns a bond that the judge does not find the person can pay, the judge must
i. Explain why releasing them from jail might be dangerous to the community or lead to them missing court; and
ii. Explain why releasing them with other restrictions—such as requiring them to stay away from certain places or to give up all firearms—would not be good enough [sic] ensure the community's safety and their appearance in court.

5. Within two business days of distributing the revised Advisement, and at all times thereafter, the Sheriff and Presiding Judge shall ensure that copies of the Advisement are affixed to any desk or bench at which a judge is anticipated to sit while adjudicating bond hearings.

<u>Bond Docket Bench Card</u>[39]

6. Within three weeks after entry of this order, the Presiding Judge shall distribute to the Sheriff, Plaintiffs' counsel, and all judicial officers eligible to preside over bond dockets the Bond Docket Bench Card that is found at page 2 of Exhibit 10 to Plaintiffs' June 20, 2025 Motion for a Injunctive Relief, except that the Bench Card shall be amended to specify that:
(a) An attorney cannot waive an arrestee's appearance if the attorney has not advised the arrestee and obtained their informed consent.

---

[39] Plaintiffs request for the creation of a particular document with specific information is improper for several reasons. *See Propositions I (Presiding Judge's authority) and III (not required by due process), infra.*

12

(b) A person who cannot afford a bond and is not a flight or safety risk must be given a bond they can afford. If they cannot afford a bond, they must be released on personal recognizance.[40]

(c) A finding that someone can pay "some" amount of bond or has "some resources" is not an adequate ability-to-pay finding. The finding must be based on evidence that the person can afford the specific amount imposed.

(d) A person cannot be given a monetary bond and referred to pretrial unless they can afford the bond, or there is no other way to keep the community safe and ensure their appearance. If a person can safely be released on conditions, those conditions must be imposed and an affordable bond set; if the person cannot afford a bond, they must be released on PR.[41]

7. Within two business days of distributing the revised Bench Card, and at all times thereafter, the Sheriff and Presiding Judge shall ensure that copies of the Bench Card are affixed to any desk or bench at which a judge is anticipated to sit while adjudicating bond hearings.

<u>Bond Hearings Conducted from a Single Location</u>[42]

8. Within 30 days of this Order, the Sheriff and Presiding Judge shall ensure that bond docket proceedings are conducted, absent extenuating circumstances, with the presiding judicial officer physically located in the Tulsa County Jail Courtroom.

9. The Sheriff shall accommodate in the jail courtroom any attorney who indicates an intent to represent a client or potential client at their bail hearing, for the purpose of effecting that representation.

10. The Sheriff and Presiding Judge shall maintain a mechanism for witnesses and members of the public to attend bond dockets by audio/video connection. Within 30 days of this Order, the Sheriff shall also provide a mechanism for witnesses to attend bail hearings either in

---

[40] This request for relief improperly mandates an outcome determination.

[41] *Id.*

[42] This request infers there is a bright line constitutional standard. The limited case law that Defendant State Judges have been able to find indicates this request is not proper. *See Proposition III, infra.*

person in the jailhouse courtroom, or by providing access to a location within the Tulsa County Jail from which the witnesses can appear by audio/video connection. Any witnesses appearing virtually must be able to hear and see, and be heard and seen by, the judge, the arrestee, and the arrestee's attorney. The Presiding Judge and the Sheriff shall publish prominently on the Tulsa County District Court's and the Sheriff's Office's public websites, respectively, instructions for witnesses to appear, virtually or in person, at bail hearings. The Sheriff shall ensure that up-to-date and accurate instructions remain prominently displayed on the public website of the Sheriff's Office.

11. If unusual health, security, weather, or other circumstances generally affecting operation of the court, bar, and/or jail make in-person appearances on bond docket by judges, attorneys and witnesses temporarily impossible, the Presiding Judge and Sheriff shall facilitate the virtual appearances of arrestees and attorneys intending to represent them, with the assistance of technology that enables arrestees and their attorneys to see and be seen by, and hear and be heard by, the adjudicator and all attorneys, witnesses, and members of the public appearing at or attending the hearing. In such circumstances, the Presiding Judge and Sheriff shall, with the assistance of technology, enable each arrestee to confer in private and without financial cost with their retained or appointed counsel before and throughout the course of their bail hearing. In the event that extraordinary circumstances require arrestees and/or attorneys to appear at bail hearings virtually, the Presiding Judge and the Sheriff shall publish prominently on the Tulsa County District Court's and the Sheriff's Office's public websites, respectively, instructions for virtual attendance as early as is practicable.

12. The Presiding Judge shall provide for the creation of audio recordings of all bail hearings conducted in accordance with this order, and their preservation as part of the court's record. The Sheriff shall provide prompt technical support and accommodation and jail access as needed for the Presiding Judge to effectuate this provision. The Presiding Judge shall provide for docket entries to be generated for each class member's bail hearing, that indicate, in addition to the date, time and outcome of the bail hearing, that an audio recording was made of the proceedings, and the process by which the arrestee, their attorney, or any other member of the public can obtain the transcript or recording

14

promptly and without charge, if applicable. The requirements in this paragraph shall be implemented within 30 days of this Order's entry.[43]

*See* Doc. 421-1 ECF p. 2-8.

**Proposition I: The Proposed Injunction should be denied as Plaintiffs seek to enjoin the Presiding Judge to act outside the administrative authority which invades the role of the Special Judges presiding over the Bond Docket.**

Statutorily, Special Judges are generally assigned certain types of matters; however, a special judge may hear any matter when no party objects to the special judge deciding a non-statutorily enumerated matter. *See* 20 O.S. §§ 123 & 124; *see also Colpitt v. Herrington*, 1974 OK CIV APP 5, ¶ 14, 519 P.2d 553; *see also Bowen v. State*, 1972 OK CR 146, ¶ 9, 497 P.2d 1094 ("[I]f there is no pretrial objection, a special judge may hear any justiciable matter properly before the district court."). Constitutionally, special judges are not limited; rather, the Oklahoma Constitution only provides that special judges may be limited by statute. Okla. Const. Art. VII, § 8(h). When Oklahoma judges are acting as a magistrate, there is no difference between a Special Judge and a District Judge. *See* 22 O.S. § 162; *see also Nicodemus v. Dist. Ct. of Okla. Cty.*, 1970 OK CR 83, ¶ 13, 473 P.2d 312 ("In the fulfillment of his duties as a magistrate, any judge of the district court, including a special judge, in a criminal proceeding over which he has jurisdiction, is not under the supervision of any other judge or judges of the district court, except for administrative purposes, 20 O.S.Supp. 1969 § 120 [20-120].").

---

[43] Procedural Due Process simply requires the creation of a record capable of review. There is a written order form filed of record in each case that satisfies procedural due process. However, already in place are statutes for the creation of a transcript of a proceeding by a court reporter, including when an indigent individual requests the transcript, should an individual request this additional means of memorializing the hearing at the beginning of the hearing. Audio recordings are not self-authenticating records for admissibility purposes. The requested relief by Plaintiffs is not warranted. *See Proposition III, infra.*

15

The scope of the administrative authority of the Defendant Presiding Judge is bound by state law. The Presiding Judge's authorities are set forth in the Oklahoma Constitution, statutes, rules, and case law. The Presiding Judge of a judicial administrative district may not interfere with an assigned magistrate's judicial decisions. *See Harper v. Dist. Ct. of Okla. Cty.*, 1971 OK CIV APP 182, 484 P.2d 891. Plaintiffs request that the Presiding Judge dictate how the Special Judges will conduct the hearings including announcements of findings. *See* Doc. 421 ECF p. 4-6. It is completely outside the scope of the Presiding Judge's authority and infringes upon the judicial autonomy of each Special Judge who is a magistrate and has full control over the proceedings before him or her. The role of the Presiding Judge is to assign dockets, not dictate how Special Judges conduct the proceedings on the dockets over which they preside.

Plaintiffs' proposed injunction, on its face, seeks to improperly direct the Presiding Judge to carry out judicial functions outside of her administrative authority and which are solely within the Special Judges' judicial authority, to wit: announcements including content of opening remarks for a docket held by a particular judge; how evidence and testimony will be presented; who and when individuals will be permitted to present to the judge; announcing decisions; and content of decisions. Again, these are clearly judicial functions particular to the judge presiding over a proceeding and not administrative acts to be dictated by the Presiding Judge. The Presiding Judge cannot be enjoined for another judge's judicial functions and no injunction for judicial acts can be entered at this time. *See* 42 U.S.C. § 1983.

***Proposition II: The stale record and the changes to the Bond Docket and relief requested since the summary judgment ruling requires finding either abstention or mootness.***

First, the modifications made during this litigation obviate the need for injunctive and declaratory relief. Further, Defendant State Judges have included previous requests for relief made by Plaintiffs to illustrate how the relief requested has evolved during the course of the litigation, *see supra*. Plaintiffs' requested relief has always been overbroad; however, the final request makes abundantly clear that extensive federal oversight and auditing of the state criminal process and courthouses is requested, *e.g* bench card guidance requiring specific outcomes, a specific directive for placement of such written guidance, a ban on dual location proceedings, and a dictate for how court files should be created and organized. Plaintiffs' request for relief has gone from approximately one page to four pages when single spaced. *See The Evolution of Plaintiffs' Requested Relief, supra.* In light of Plaintiffs' ever-expanding and particular requests for relief at this juncture, the Court should now find *Younger/O'Shea* abstention appropriate.[44]

Second, a stale record cannot support injunctive relief. If an injunction is meant to "undo existing conditions", then a record that no longer "illuminates or explains the present" cannot warrant that sort of remedy. *See United States v. Or.*

---

[44] An interlocutory order may be revised at any time prior to the entry of a final judgment as part of the inherent powers of a district court. *See* Fed. R. Civ. P. 54(b); *Warren v. Am. Bankers Ins.*, 507 F.3d 1239, 1243 (10th Cir. 20017). Basis for revisiting an interlocutory order "include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "[R]econsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.... It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

17

*State Med. Soc'y*, 343 U.S. 326, 333 (1952). Injunctive relief must remedy current and ongoing harms, and changed circumstances may warrant revising or dissolving an injunction. *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1201-02, 1206-07 (10th Cir. 2018). "[P]ast exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).   Injunctive relief is only proper if "the record shows 'a real threat of future violation or a contemporary violation of a nature likely to continue to recur.'" *Webb v. Mo. Pac. R. Co.*, 98 F.3d 1067, 1068 (8th Cir 1996)(alterations omitted)(quoting *United States v. Or. State Med. Soc'y*, 343 U.S. 326 (1952). "If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed." *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). Discovery closed in January 2021. The information and data collected and relied on by the parties, the experts, and the Court at summary judgment is nearly five years old and is not an accurate portrait of the current Bond Docket. Implemented practice changes to the Bond Docket, *supra*, show this relief sought by Plaintiffs is now moot. Finally, Plaintiffs have not met their burden to show that an injunction is narrowly tailored and necessary, *see Proposition III, infra*.

### A. Abstention should be granted.

"Federal courts are courts of limited jurisdiction," wielding "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a federal court possesses jurisdiction, however, it has a "virtually unflagging obligation" to exercise it. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). *Younger v. Harris*, 401 U.S. 37 (1971), is "a far-from-novel exception to this general rule." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (internal quotation marks and citation omitted).

The Supreme Court has held that comity and federalism prohibit federal courts from constant supervision and/or excessive interference with state court procedures. *O'Shea v. Littleton,* 414 U.S. 488 (1974). In *O'Shea*, class plaintiffs brought suit against Cairo, IL criminal practices alleging the county magistrate and judge engaged in racial and wealth discrimination by, *inter alia*, setting higher bail and giving harsher sentences to black defendants. The *O'Shea* plaintiffs sought declaratory and injunctive relief. The plaintiffs requested "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials." *Id.* at 500. The Supreme Court recognized that such an injunction "would disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim ab initio." *Id.* at 501. Such overreaching federal oversight, the Supreme Court found, would constitute "an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris* ... and related cases sought to prevent." *Id.* at 500. The Supreme Court then went on to consider whether the relief plaintiffs were seeking was even available from federal courts. The Supreme Court relied on *Younger* and explained that the relief requested by the plaintiffs in *O'Shea* "would contemplate interruption of state proceedings *to adjudicate assertions of noncompliance*". *O'Shea*, at 500 (emphasis added). The Court further noted that the enforcement of any such injunction would necessarily require "continuous supervision by the federal court over the conduct of" the state judicial officers "in the course of future criminal trial proceedings." *O'Shea* at 501. Plaintiffs here are requesting binding guidance to dictate outcomes in bail proceedings, inherently inviting Federal Court intervention in individual bail decisions. *See* Doc. 421-1 ECF p. 5-6.

Tension exists between the line of cases developed from *Younger*. *O'Shea* and its progeny represent one branch, and *Gerstein v. Pugh*, 420 U.S. 103 (1975) and its

progeny represent another. The two lines of cases are distinguished by the nature of relief plaintiffs sought. In *O'Shea*, the relief was characterized by particularized relief creating an avenue for regular Federal oversight and/or interference to enforce the injunction.    The *Gerstein* line of cases recognizes the propriety of more general relief – defendant must do or not do X.    The relief does not require Federal participation beyond whether or not X is generally provided or happening.

The Tenth Circuit has applied *O'Shea* abstention in cases similar to the case at bar. In *Phelps v. Hamilton*, 122 F.3d 1309 (10th Cir. 1997), the plaintiffs requested "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future criminal [proceedings]." *Phelps,* at 1317 (*quoting O'Shea* at 500). Much like the Supreme Court in *O'Shea*, the Tenth Circuit determined abstention was appropriate in *Phelps* because the requested relief would have modified future proceedings in state court. Similarly, in *Joseph A. ex rel., Corrine Wolfe v. Ingram*, 275 F.3d 1253 (10th Cir. 2002), the Tenth Circuit relied on *O'Shea* and *Younger* abstention when plaintiffs requested enforcement of a consent decree with terms which specifically prohibited a state agency "from recommending a range of planning options" to the New Mexico Children's Court.[45] The Tenth Circuit concluded that abstention was supported when "federal court oversight of state court proceedings is required. *Joseph A*., at 1272.

Similar to the requested relief in *Phelps* and *Joseph A*., the relief Plaintiffs and the class now seek, by its very nature, requires federal court oversight of individual state court proceedings to enforce an injunction or declaration or to confirm implementation of the same. Plaintiffs seek particularized outcomes based on its terms, i.e. ¶5, 7 (requiring Presiding Judge to affix copies of Plaintiffs preferred

---

[45] Much like the Plaintiffs' request here to mandate particular outcomes through a bench card which would be required under Plaintiffs' proposed injunction.

language to furniture), ¶6(b)(d)[46] (requiring specific outcomes - "must" release arrestees on recognizance bonds).[47] Plaintiffs request an injunction that will set the site of state court proceedings, the type of record, and the mechanism for creating, storing and indexing the record. The only way to assess the adequacy of the individual hearings is by reviewing individual proceedings. Such assessment would require analysis of outcomes – such that Plaintiffs actually seek outcome determinative relief. In other words, adequacy of the hearing would be raised if the criminal defendant (or these Plaintiffs) did not agree with or like the ruling which set bail regardless of the procedures employed.

### B. Mootness requires dismissal.

The existence of a live case or controversy is a constitutional prerequisite under Article III and therefore mootness is a threshold issue to Federal court jurisdiction. *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005). "'Without a live, concrete controversy, we lack jurisdiction to consider claims no matter how meritorious.'" *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008) (quoting *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007)). Injunctive relief requests are subject to Article III mootness. *See WildEarth Guardians v. Public Service Co. of Colorado*, 690 F.3d 1174, 1190-91 (10th Cir. 2012); *State of N.M. ex rel. N.M. State Highway Dept. v. Goldschmidt*, 629 F.2d 665, 668-69 (10th Cir. 1980). A case becomes moot "'when the issues

---

[46] Plaintiffs seek an injunction requiring a highly specific bench card which directs outcomes. Plaintiffs have provided no case where procedural due process required creation or use of a bench card pursuant to an injunction.

[47] Oklahoma judges are bound to follow statutory requirements when determining bond. Plaintiffs' request would require Special Judges to act in contravention to 22 O.S. § 1108.1 by releasing arrestees on personal recognizance who are not statutorily eligible for personal recognizance. The constitutionality of this statute is not before the Court. *See* Nesbit Bail Order, Ex. 17.

presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Cty. of L.A. v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)(*quoting Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)).

When injunctive relief does not redress plaintiffs' particular injuries, the injunctive relief requested is rendered moot. *See WildEarth Guardians v. Public Service Co*., 690 F.3d at 1191 (*citing United States v. Vera-Flores*, 496 F.3d 1177, 1180 (10th Cir. 2007)). Similarly, if the injunction would have no present-day effect, the injunctive relief request is also rendered moot. *See Utah Animal Rights Coalition v. Salt Lake City Corp*., 371 F.3d 1248, 1257 (10th Cir. 2004)("The alleged violation took place in 2001, the Olympics have come and gone, and neither temporary restraining order, preliminary injunction, nor permanent injunction could have any present-day effect.").

Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuits. *See Unified Sch. Dist. No. 259, Sedgwick Cnty. Kan. v. Disability Rights Ctr. of Kan.*, 491 F.3d. 1143, 1147 (10th Cir. 2007) ("Actions seeking a declaratory judgment must comport with the same mootness principles as any other suit." (internal quotation marks omitted)). As the Tenth Circuit noted in *Cox v. Phelps Dodge Corp*., "[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an *advisory opinion* is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." 43 F.3d 1345, 1348 (10th Cir. 1994) (brackets, en dash, and internal quotation marks omitted and emphasis added), superseded by statute on other grounds, Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1071, 1072 (codified at 42 U.S.C. § 1981(a)), as recognized in *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001).

There are two forms of mootness, constitutional and prudential. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010) (citations omitted); *see also Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980) (per curiam) ("The doctrine of mootness has two distinct branches."). Constitutional mootness considers whether a federal court has jurisdiction over actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S. Ct. 1055 (1997) (internal quotation marks omitted). A court may also consider the prudential-mootness doctrine. This doctrine generally applies only to requests for injunctive or declaratory relief. *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1492 (10th Cir. 1993) ("All the cases in which the prudential mootness concept has been applied have involved a request for prospective equitable relief by declaratory judgment or injunction."); *see Fletcher v. U.S.*, 116 F.3d 1315, 1321 (10th Cir. 1997); *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 727 (10th Cir. 1997). However, "[t]he court must decide whether a case is moot as to 'each form of relief sought.'" *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019)).

"With respect to injunctive relief and the question of mootness, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *McKesson Corp. v. Hembree*, No. 17-CV-323-TCK-FHM, 2018 WL 4621833, *3 (N.D. Okla. Sept. 26, 2018) (quoting *Beattie v. U.S.*, 949 F.2d 1092, 1094 (10th Cir. 1991) (quotation marks and citation omitted)). The party requesting relief must "demonstrate a good chance of being likewise injured in the future." *Id.* (quoting *Beattie*, 949 F.2d at 1093). "If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be

23

dismissed." *Id.* (quoting *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997)).

"'Generally, a claim for prospective injunction becomes moot once the event to be enjoined has come and gone.' *Citizen Ctr. v. Gessler*, 770 F.3d 990, 907 (10th Cir. 2014). A claim for declaratory relief that does not 'settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff' is moot, *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quotations omitted), because it fails to 'seek[] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant,' *Jordan [v. Sosa]*, 654 F.3d [1012,] 1025 [(10th Cir. 2011)]." *Prison Legal News*, 944 F.3d at 880.

The Tenth Circuit described the prudential mootness doctrine as follows:

Prudential mootness doctrine often makes its appearance in cases where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief she seeks. Sometimes the plaintiff will seek an injunction against the enforcement of a regulation the relevant agency later offers to withdraw on its own. Sometimes the plaintiff will seek an order forcing a department to take an action that it eventually agrees to take voluntarily. However, it comes about though, once the plaintiff has a remedial promise from a coordinate branch in hand, we will generally decline to add the promise of a judicial remedy to the heap. While deciding the lawsuit might once have had practical importance, given the assurances of relief from some other department of government it doesn't any longer.… Though a remedial promise may not be enough to kill a case constitutionally, it can be enough to bring it to an end all the same as a matter of equity.

*See Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210-1211 (10th Cir. 2012) (citations omitted); *Jordan v. Sosa*, 654 F.3d at 1024 ("a court may dismiss a case under the prudential-mootness doctrine if the case is so attenuated and that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant" (citations internal quotations and internal emphasis omitted)).

### 1. *The claims against the Presiding Judge are moot.*

The requests for injunctive and declaratory relief against the Presiding Judge are either constitutionally or prudentially moot. The Presiding Judge has helped develop and implement various documents to address this Court's summary judgment ruling. The documents are legally appropriate. The notice adequately provides information to arrestees about the bond hearing without setting expectations for any particular outcome. The advisement and bench card provide appropriate guidance to Special Judges and participants to promote consistency and efficiency [48] without overstepping into each Special Judge's judicial discretion/independence. The Bail Determination Order form provides a mechanism to create an appropriate record by the Special Judges. Statutory law and criminal rules already provide how a transcript of any proceeding is created should a party or their attorney (which they all have) request a transcript at the beginning of their hearing. The Presiding Judge can do no more. A blatant usurpation of a Special Judge's judgment would occur if the Presiding Judge did more. The law does not require the outcomes as laid out by Plaintiffs in their requested injunction. The video technology being used allows each person in the hearing to see and hear the other participants. There is no deficiency with the current video-based format as arrestees and their counsel are together and have the ability to confer privately. Contrary to Plaintiffs' request, the Presiding Judge cannot remedy the individual outcomes ordered by the Special Judges.

### 2. *The claims against the Special Judges are moot.*

The only declaratory relief Plaintiffs seek is a declaration that "matches perfectly the language in Judicial Defendants' bench card." Doc. 421 ECF p. 34.

---

[48] Defendant State Judges collectively opted for development of a supplemental bench card to aid in the operation of the bond docket to address issues raised by this case and the Court's order on summary judgment.

Plaintiffs appear to be shifting a facial challenge to the bond proceedings in Tulsa County to an as-applied challenge for individual arrestees. Plaintiffs approve of the language in the bench card and do not dispute that it is available for the Special Judges to consult. Instead, Plaintiffs complain that the Special Judges are not using their judicial discretion properly in individual cases and are misinterpreting and misapplying the guidance in the bench card when making these individualized bond decisions. Arrestees are provided sufficient notice of the purpose of the hearing through the written notice and opening remarks by the Special Judge at the beginning of the Bond Docket; counsel is present with the arrestee in the jail; and the Bail Determination Order form provides an adequate record. Therefore, the request for declaratory relief against the Special Judges is moot.

**Proposition III: Procedural Due Process does not require the relief requested by Plaintiffs.**

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.*

The Tenth Circuit developed a test for courts to apply when determining whether a permanent injunction is appropriate: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction if issues, will not adversely affect the public interest." *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009). *See Klein-Becker USA, LLC v.*

26

*Englert*, 711 F.3d 1153, 1164 (10th Cir. 2013). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay, Inc. v. MercExchange*, LLC, 547 U.S. at 391, 126 S.Ct. 1837. *See Southwest Stainless, LP v. Sappington*, 582 F.3d at 1191 ("'The district court's discretion in this context is necessarily broad and a strong showing of abuse must be made to reverse it.'" *quoting F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1201 (10th Cir. 2009)). "An injunction is an 'extraordinary remedy' to prevent future violations, and should be used sparingly." *Copar Pumice Co., Inc. v. Morris*, No. 07-0079, 2009 WL 5201799, at *15 (D.N.M. October 23, 2009)(Browning, J.)(*quoting Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 114 F.3d 1513, 1522 (10th Cir. 1997)).

At its base, procedural due process requires notice and an opportunity to be heard. *United States v. Jones*, 768 F.3d 1096, 1105 (10th Cir. 2014). This Court found for the purposes of this case that the deficiencies in the Tulsa County bail system included "skimpy" notice, inadequate opportunity to present evidence, inadequate written findings, and ineffective communication between the public defenders and arrestees. *See* Doc. 397 at 62. However, the Court also noted "[t]he relief the court is prepared to grant will be the relief necessary to protect plaintiffs' due process and equal protection rights, as those rights have now been determined to exist. Importantly, that relief will be 'narrowly tailored to cure the constitutional deficiencies' the court has identified. *O'Donnell v. Harris County*, 892 F.3d 147, 166 (5th Cir. 2018)." Doc. 397 at 72.

Plaintiffs wholly fail to support their request for the detailed, overly specific relief they seek.[49]  Plaintiffs do not dispute that notice is given, and in fact, notice is given twice (once in written form at the jail, and once via announcement by judge at the beginning of the docket), but Plaintiffs' claim the notice is "inadequate" and request specific, detailed information which is neither required nor necessary. Plaintiffs further admit the notice contains an "abundance of information about procedural rights," Doc. 421 ECF p. 8, but argue that the notice must include an explanation of the specific legal standard for bail decisions. Plaintiffs further argue the notice is inadequate because time constraints and dense wording make it ineffective. Plaintiffs' solution is to add more dense language about specific legal standards and require another oral notice or explanation of the plain language already included in the written notice. Plaintiffs do not propose a metric or enforcement mechanism to ensure that all arrestees take responsibility for the information being provided to them.[50]

Plaintiffs continue to seek from this Court an order mandating an outcome determinative process, removal of judicial discretion, and federal oversight into state criminal procedure. Both the requested injunction and the incorporated request for declaratory relief, include overbroad, unworkable and ill-defined terms without clear

---

[49]  Plaintiffs do not cite to any authority to support the specific detailed relief they request. Plaintiff instead rely on specific instances (just less than 25% of the 398 bond hearings over the course of the two week discovery period) which are outside the scope of the Presiding Judge's authority to control and therefore beyond the scope of available injunctive relief. *See e.g.*, Doc. 421 ECF p. 19-20. For example, Plaintiffs complain about particular bail determinations without grappling with whether any of the arrestees were eligible for another outcome. *See e.g.*, 427-12 ECF p. 3, 5, 9, 14; 427-11 ECF p. 15, 16. *But see*, 427-10 ECF p. 17 among completed forms cited as offending "constitutionally inadequate" form though arrestee was granted a PR bond and released that day. *See* Personal Recognizance Bond, Ex. 18.
[50]  Assistant public defenders appear from the jail for bond docket and presumably, know the legal standards and elicit information from the arrestees for argument.

legal standards. The injunctive relief would amount to an order to continue what the court is already doing, but with Plaintiffs preferred language and outcomes.

Plaintiffs also complain about the Court accepting proffers of an appropriate bond amount from counsel for the defendant and the state in these proceedings. In their summary judgment briefing, however, Plaintiffs' request for relief states that proffers for evidence are acceptable. *See* Doc. 368 ECF p. 8 (D.2.b.), *supra*. The form orders generally reflect the bail requests proffered by counsel in each matter. Plaintiffs' complaints as to this type of evidence and argument further illuminates the oversight into the criminal proceedings sought by Plaintiffs. Plaintiffs' request is not appropriate and justifies abstention. *See* May 14, 2025 Bail Determinations, Ex. 12.[51]

Plaintiffs additionally request an injunction regarding creation, storage, indexing, and access of audio recordings. The system Plaintiffs seek is not required for a hearing to be due process compliant, and Plaintiffs provide no support for the assertion.   All that due process requires is a record be created which can be used for review. "[U]nder the Fourteenth Amendment, it is not enough that 'another method may seem to [this court's] thinking to be fairer or wiser or to give a surer promise of protection to the prisoner.'" Doc. 397 ECF p. 72 (quoting *Snyder v. Com. of Mass.*, 291 U.S. 97, 105 (1934)).

In lieu of the presence of a court reporter, each courtroom is equipped with a handheld audio recorder that can be used upon request. Oklahoma statutes govern this process. *See* 20 O.S. § 106.4 and Judge's Discovery Responses at Int. No. 1, Ex. 19. Once a recording is made, it is available for transcription by a certified court reporter, if needed. Just like any other record, if a party qualifies for free transcripts

---

[51] *U.S. v. Quapaw*, No. 22-CR-222-GKF-2, 2022 WL 3359365, *7 (N.D. Okla. Aug. 15, 2022) (unpublished) ("Permitting the government to proceed in a pretrial detention hearing through proffer does not offend due process.").

through the court fund application, a certified transcript of the recording will be made available free of charge. Notably, Oklahoma does not require a transcript for appeal or review, as the record can be completed via affidavit under Rule 2.2(C) of the Court of Criminal Appeals Rules.[52]

Plaintiffs also request that all participants in the hearing be in the same location. However, the use of Microsoft Teams to allow the remote appearance of arrestees and their counsel from the jail does not create a *per se* constitutional violation; therefore, this practice should not be enjoined. Plaintiffs provide no authority in their Motion to support their contention and requested relief. The scant case law addressing the constitutionality of a defendant's virtual attendance is provided for the Court's consideration but does not support the sweeping injunctive relief requested. *See Vazquez Diaz v. Commonwealth*, 167 N.E.3d 822 (Mass. 2021) (suppression hearing); *State v. Kolaco,* No. 1910010939, 2020 WL 7334176 (Del. Super. Ct. Dec. 14, 2020) (same); *United States v. Lawson*, No. 5:20-CR-060-GFVT-MAS-1, 2020 WL 6110969 (E.D. Ky. Oct. 16, 2020) (same).

## CONCLUSION

As set forth above, based upon the current bond docket proceedings, the Presiding Judge requests the injunctive and declaratory relief against her as proposed by Plaintiffs be rejected by the Court. As for the proposed declaratory judgment against the Special Judges, Defendant State Judges, likewise, request that any such order to be rejected on abstention or mootness grounds.

---

[52] "**Transcript Not Available.** If no transcript has been previously prepared and no tape recording is available for any portion of the trial proceedings, the trial attorneys may stipulate or submit affidavits as to what transpired during the proceeding not transcribed or recorded. The trial judge shall enter an order adjudicating any matters upon which the attorneys cannot agree regarding what transpired during the unrecorded or untranscribed proceedings."

Respectfully submitted,

*s/Stefanie E. Lawson*
ERIN M. MOORE, OBA#20787
STEFANIE E. LAWSON, OBA#22422
DEVAN A. PEDERSON, OBA#16576
Assistant Attorneys General
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: stefanie.lawson@oag.ok.gov
erin.moore@oag.ok.gov
devan.pederaon@oag.ok.gov
*Attorneys for Defendants State Judges*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of August 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and I further certify that on this date a true and correct copy of the foregoing was served via the ECF System to all counsel who are ECF registrants:

*s/Stefanie E. Lawson*
Stefanie E. Lawson