# United States District Court
## NORTHERN DISTRICT OF OKLAHOMA

RICHARD FELTZ and ASHTON LEE DENNIS, on behalf of themselves and all others similarly situated,

    Plaintiffs,

vs.

VIC REGALADO, in his official capacity as Tulsa County Sheriff, to the extent he is named as a state actor (not as a county actor);[1] TAMMY BRUCE, STEPHEN CLARK, JULIE DOSS, THERESA DREILING, OWEN EVANS, MARY ANN GODSBY, DAVID GUTEN, BILL HIDDLE, ANN KEELE, JAMES KEELEY, DEBORAH LUDI LEITCH, ANTHONY J. MILLER, KEVIN C. MORRISON, KIRSTEN PACE, WILMA PALMER, APRIL SEIBERT, RODNEY B. SPARKMAN, and TANYA WILSON, in their official capacities as Tulsa County Special Judges; and DAWN MOODY, in her official capacity as Presiding Tulsa County District Court Judge,

    Defendants.

) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )

Case No. 18-cv-298-SPF-JFJ

---

## RESPONSE BRIEF TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF (DOC. #421) BY DEFENDANT VIC REGALADO, IN HIS OFFICIAL CAPACITY AS TULSA COUNTY SHERIFF, TO THE EXTENT HE IS NAMED AS A STATE ACTOR (NOT AS A COUNTY ACTOR)

---

[1] *See* Doc. #306, p. 32.

# TABLE OF CONTENTS

Page

I.    SHERIFF'S INTRODUCTION …………………….…………    1


II.   SPECIFIC OBJECTIONS TO PLAINTIFFS'
      PROPOSED TERMS OF INJUNCTIVE RELIEF ………………    3

   A. The Sheriff Objects to ¶¶ 1(b) and 3 of the Proposed
      Relief as impractical micromanaging of the details involved
      in delivering Notice to pre-arraignment detainees ………..    3

   B. The Sheriff Objects to the majority of ¶ 2 of the Proposed
      Relief other than the Bail Hearing Notice should advise
      pre-arraignment detainees of their upcoming bail hearing
      and state that its purpose is to determine whether they
      need to stay in jail or can be released pending trial ……….    6

   C. The Sheriff Objects to ¶¶ 5 and 7 of the Proposed Relief
      because he has no duties with respect to the Judge's
      accessories or the Judge's desk or bench …………………..    8

   D. The Sheriff Objects to ¶ 12 of the Proposed Relief because
      he has no duty to provide technical support for the Judges    9

   E. The Sheriff Objects to ¶ 8 of the Proposed Relief: while
      The Sheriff can hire additional detention officers with tasers
      And ratchet up security to accommodate Judges, Assistant
      District Attorneys, Assistant Public Defenders, and Court
      Staff at bond docket proceedings in the Jail, switching the
      venue from video court to in person proceedings will not
      remedy the perceived problems caused by the Public
      Defender's Office.  It will, however, increase the risk of
      Harm  to those in attendance ……………………………….    10

i

# TABLE OF CONTENTS (continued)

Page

**(1) The PD's Office can be present in the Jail
and in the Courthouse** …………………………….. 12

**(2) Video/Audio Glitches can be overcome by
repeating what was missed** ……………………… 14

**(3) Documents can be reproduced anywhere anytime
with technology** ………………………………….. 15

**(4) The PD's Office can begin each day at 7:30 a.m. in the Jail** 16

**(5) The PD's Office can show up late, fail to communicate,
fail to object, and fail to disclose documents in person
as easily as in video court** ………………………… 18

III.    CONCLUSION  …………………………………………... 19

## ATTACHED EXHIBITS

Affidavit of Stacie Holloway ………………………………  Exhibit A

Affidavit of Peggy A. Haddock ……………………………. Exhibit B

Revised Bond Docket Notice ……………………………… Exhibit C

# TABLE OF CONTENTS (continued)

## TABLE OF AUTHORITIES

Page

*Ex parte Young*, 209 U.S. 123 (1908) ………………………………….. 2

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973) ………………………………… 4, 6-7

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ………………………………… 4, 6-8

*Petuskey v. Cannon*, 1987 OK 74, 742 P.2d 1117 ………………………… 9

*Polk County v. Dodson*, 454 U.S. 312 (1981) ……………………………… 19

## STATUTES

Page

Okla. Const. art. 2, § 4 …………………………………………………. 11

Okla. Const. art. 7, § 7 ……………………………………………….. 1

19 O.S. § 516(B) ……………………………………………………… 2

19 O.S. § 221 …………………………………………………………. 9

20 O.S. §§ 22-23 ……………………………………………………… 1

20 O.S. §§ 92.1-92.27 ………………………………………………… 1

20 O.S. § 95.1 ………………………………………………………... 1

20 O.S. § 125 ………………………………………………………... 8

20 O.S. § 1301 ………………………………………………………… 9-10

20 O.S. § 1304 ………………………………………………………… 9-10

# TABLE OF CONTENTS (continued)

Page

22 O.S. § 1105.3 ……………………………………………………….. 9

57 O.S. § 47 ………………………………………………………… 2

### ATTORNEY GENERAL OPINIONS

1985 OK AG 27 ………………………………………………… 2

1999 OK AG 23 ………………………………………………… 2

2002 OK AG 34 ………………………………………………… 2

# I.
## SHERIFF'S INTRODUCTION

The Court granted Plaintiffs summary judgment in their suit for prospective declaratory and injunctive relief to recalibrate the pre-arraignment bail procedures used by the Defendants Presiding Judge and Special Judges of the Fourteenth Judicial District,[1] portions of which are implemented at their direction by the Defendant Tulsa County Sheriff. *See* Rule 12 Order at 32, Doc. #306 ("Surviving Claims"); Summary Judgment Order at 69, Doc. #397.

> But the case is not ready for entry of judgment. The relief the court is prepared to grant will be the relief necessary to protect plaintiffs' due process and equal protection rights, as those rights have now been determined to exist. Importantly, that relief will be narrowly tailored to cure the constitutional deficiencies the court has identified. And under the Fourteenth Amendment, it is not enough that another method may seem to this court's thinking to be fairer or wiser or to give a surer promise of protection to the prisoner.

Summary Judgment Order at 69, Doc. #397 (citations, quotation marks and brackets omitted). After giving the parties sufficient time to work toward agreement on as many issues as possible, what remains is "a hearing on the scope

---

[1] Oklahoma's trial courts are state courts of general jurisdiction referred to as "District Courts." The State Constitution provides that "[t]he State shall be divided by the Legislature into judicial districts, each consisting of an entire county or of contiguous counties[, t]here shall be one District Court for each judicial district, … [and t]he District Court shall have unlimited original jurisdiction of all justiciable matters." *Okla. Const.* art. 7, § 7. *See also* 20 O.S. §§ 22-23, 92.1-92.27, 95.1. Although the Fourteenth Judicial District includes the contiguous counties of Tulsa and Pawnee (*see* https://www.oscn.net/courts/tulsa), this case is limited to the pre-arraignment bail procedures used by the Fourteenth Judicial District in Tulsa County. *See* Second Amended Complaint, Doc. #259.

of injunctive and declaratory relief." *Id*. at 72. The Court will address the scope of appropriate declaratory relief, *see* Corrected Order for Briefs at 2, Doc. #413, but has requested briefing on the scope of injunctive relief. This brief is tendered by the Sheriff in response to Plaintiffs' Motion for Injunctive Relief, Doc. #421.

*Ex parte Young*, 209 U.S. 123 (1908), permits injunctive relief against the Tulsa County Sheriff, as a state actor, "based on his role in carrying out the orders and procedures of state-court judges." Rule 12 Order at 20, Doc. #306. Plaintiffs are entitled to narrowly tailored relief against Defendant Vic Regalado, in his official capacity as Tulsa County Sheriff, "to the extent he is named as a state actor (not as a county actor)." *Id*. at 32. The Court's injunctive relief will be crafted to avoid establishing the Sheriff "as a 'pseudo-appellate court' in reviewing the process afforded by the Tulsa County judges in setting conditions of release."[2] Summary Judgment Order at 32, Doc. #397.

---

[2] Deputy sheriffs attend judicial proceedings held by the District Court, but their attendance is solely for security, not jurisprudence. Sheriffs "have a constitutional duty to transport prisoners" to and from Court, *see* 2002 OK AG 34, ¶ 27, and a statutory duty to "coordinate and administer courthouse security." 19 O.S. § 516(B). With respect to those held in his custody at the county jail, every sheriff must conform, in all respects, to the rules and directions of the district judge. *See* 57 O.S. § 47. Sheriff Regalado does not oversee the state judiciary. On the contrary, "[t]he sheriff is an officer of the court and is subject to its orders and direction." 1999 OK AG 23, ¶ 9. "It is not only the power, but the duty, of sheriffs in their various jurisdictions … [to] carry out the mandates, orders and directions of the courts." 1985 OK AG 27, ¶ 2.

II.
SPECIFIC OBJECTIONS TO PLAINTIFFS'
PROPOSED TERMS OF INJUNCTIVE RELIEF

**A. The Sheriff Objects to ¶¶ 1(b) and 3 of the Proposed Relief as impractical micromanaging of the details involved in delivering Notice to pre-arraignment detainees.**

The Sheriff understands that he is to distribute to pre-arraignment detainees at the time of their booking the Notice of Hearing approved by this Court ("Notice of Hearing"). He is currently distributing the Revised Notice of Hearing submitted herewith as Exhibit C. *See* Affidavit of Stacie Holloway, ¶¶ 4-5, Ex. A. It is expected that the Court's final order in this Case will determine the four corners of the Court-Approved Notice of Hearing. The Sheriff does not object to delivering such notice to pre-arraignment detainees on behalf of the judiciary.

When an arrestee is brought to the Jail to be booked in on state charges, he and the arresting officer remain in the pre-booking area until the officer has completed the paperwork. *Id*. at ¶ 6. After the officer slides the booking paperwork through the booking window, the arrestee is ushered through a slider into the search room where he is subjected to a search of his person. *Id*. at ¶ 7. The arrestee then leaves the search room and upon passing through a body scanner enters the secured part of the Jail. *Id*. at ¶ 8. Next, booking officers take his mug shot and fingerprints and give him his telephone PIN number. *Id*. at ¶ 9. He is then advised of the criminal charges under which he has been booked, of his right to

3

post bail in the amount set forth in the preset bond schedule for each charge and thereby secure release from Jail before trial, and he is given a list of bondsmen. *Id*. at ¶ 10.  He is subsequently advised that if he does not bond out and is admitted to the Jail for housing, there will be a bond docket proceeding the next morning **and he is hand-delivered a copy of Exhibit C, the Revised Notice of Hearing, for which he signs a receipt**.[3] *Id*. at ¶ 11. The arrestee is also given at this time the Jail's Inmate Handbook, its Zero Tolerance Policy for Sexual Misconduct, and Prison Rape Elimination Act ("PREA") documentation (for which he also signs a receipt). *Id*. at ¶ 12. Afterward, he is scheduled for a medical intake screening and told that while he awaits his medical screening, he is free to use the telephones on the booking floor. *Id*. at ¶ 13. Following his medical screening, he either bonds out or is dressed out to be housed in a Jail pod. *Id*. at ¶ 14.

Generally, notice is deemed effective upon hand-delivery, which occurs at booking. Plaintiffs want more – more than what a defendant receives upon service

---

[3] The Sheriff had previously excluded from Notice those brought to jail by way of an arrest warrant; however, the Sheriff now understands such practice to be deficient and has changed his policy to make sure those arrested on arrest warrants also receive the Notice of Hearing. *See* Affidavit of Stacie Holloway, ¶ 5, Ex. A. The Sheriff has also offered to post Notice of Hearing on the walls of the jail and to the electronic kiosk used daily in each pod by detainees. Exhibit C goes far beyond the "notice of the alleged [post-conviction supervision] violation" required by *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973), and provides considerably more notice than even the expansive notice requirements for revocation of parole hearings announced by the Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 486-87 (1972).

of a summons, more than what is disclosed in the filing of a criminal information or indictment, in fact, more than just notice: Plaintiffs want to control when each detainee receives the Notice (upon entering the jail), to couple delivery of the Notice with written notice of the date and time of their scheduled bail hearing, and require an agent of the Sheriff to "orally advise the recipient that they will have a hearing at the date and time indicated in writing, that the purpose of the hearing will be to determine whether they need to stay in jail or can be released, and that the written Notice contains more information about the hearing." Plaintiffs' Proposed Terms of Injunctive Relief Against the Presiding Judge and Sheriff, ¶ 1(b), Doc. #421-1. Plaintiffs' requested micromanaging will inevitably spawn multiple claims by prisoners alleging "the Sheriff's agent didn't do this, that or the other *with m*e at the right time like he was ordered to do so by the federal court; my rights have been violated." This sort of micromanaging is nonsense.

The Sheriff does not object to using his best efforts to distribute the Notice of Hearing at the same time he distributes the list of Bondsmen, that is, while his deputy is explaining the criminal charges under which the detainee has been booked and the amount of bail required by the preset bond schedule for each

charge. This would be a natural time to deliver the Notice of Hearing.[4] However, if someone should slip by without receiving Notice of Hearing, deputies should be able to deliver Notice as soon as possible without penalty. The purpose, after all, is to give notice. The Sheriff should not be required to engage in any pre-scripted conversation with the inmate. He is not an agent for the Public Defender's Office.

Plaintiffs' Proposed Relief that involves micromanaging the Sheriff's task of distributing Notice of Hearing violates the "necessary" and "narrowly tailored" restrictions that expressly apply to any injunctive relief in this case. *See* Summary Judgment Order at 69, Doc. #397.

**B. The Sheriff Objects to the majority of ¶ 2 of the Proposed Relief other than the Bail Hearing Notice should advise pre-arraignment detainees of their upcoming bail hearing and state that its purpose is to determine whether they need to stay in jail or can be released pending trial.**

Pre-arraignment detainees are entitled to *notice* of their bail hearing, not to an educational treatise on the procedural due process rights of indigent defendants in the Northern District of Oklahoma circa 2025. The Notice required by *Gagnon* and *Morrissey* was never intended to educate arrestees on the rules that govern judges (those rules are myriad, complex and involve a healthy amount of judicial discretion). It is enough that their counsel at bond docket proceedings knows the

---

[4] The Notice of Hearing is currently delivered by Classifications Officers (specialized booking officers) with the other documents for which the detainee is required to sign a receipt as evidence of delivery.

governing law. Counsel is authorized to speak on behalf of their client. Their client should remain silent and only speak when recognized by the Court to speak or when spoken to.

The Court has ruled that pre-arraignment detainees are entitled at the very least to the same procedural due process rights as a convicted offender accused of violating their post-conviction supervision. *See* Summary Judgment Order at 58-59, Doc. #397. The Court writes that with respect to notice, "[t]hat offender has a right to (i) written notice of the claimed violations (by analogy, written notice of the standards governing the pretrial release decision) …." *Id*. at 59.

In reviewing the two cases cited by the Court in framing the foregoing analogy (*Gagnon* and *Morrissey*), the following quote from the Supreme Court in *Morrissey* appears to govern: "[T]he parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation." *Morrissey v. Brewer*, 408 U.S. 471, 486-87 (1972). With respect to a bail determination hearing, that would mean the detainee should be given notice that a bail hearing will take place and that its purpose is to determine whether they need to stay in jail or can be released pending trial.

Plaintiffs' 1½-page proposed Notice, *see* Plaintiffs' Motion at 2-4 (¶ 2), goes way beyond the there-will-be-a-bail-hearing-in-the-morning-to-determine-whether-

you-will-be-detained-or-released-while-your-case-proceeds Notice described by the Court in *Morrissey* (by analogy to post-supervision parole hearings) and by Plaintiffs. *See id*. at ¶ 2(a) ("The purpose of the hearing is to determine whether they will be detained or released while their case proceeds.").

The additional items of notice in Plaintiffs' Proposed Relief beyond ¶ 2(a) devolve into an advocacy treatise on the procedural due process rights of indigent defendants in the Northern District of Oklahoma circa 2025; their presence is not constitutionally required. The additional items of notice in Plaintiffs' Proposed Relief beyond ¶ 2(a) violate the "necessary" and "narrowly tailored" restrictions that expressly apply to any injunctive relief in this case. *See* Summary Judgment Order at 69, Doc. #397.

## C. The Sheriff Objects to ¶¶ 5 and 7 of the Proposed Relief because he has no duties with respect to the Judge's accessories or the Judge's desk or bench

Plaintiffs' Proposed Relief asks this Court to enjoin the Sheriff to "ensure that copies of the Advisement [for Arrestees at Bond] [and Bench Card] are affixed to any desk or bench at which a judge is anticipated to sit while adjudicating bond hearings." Plaintiffs' Motion at ¶¶ 5, 7. The Judges of the Fouteenth Judicial District each have a secretary-bailiff[5] and an assigned deputy court clerk to assist

---

[5] 20 O.S. § 125.

them, as well as the entire District Court Clerk's Office[6] and the entire Court Services staff.[7] They all stand ready to serve the Court.

Plaintiffs' Proposed Relief enjoining the Sheriff to "ready the judge's desk" violates the "necessary" and "narrowly tailored" restrictions that expressly apply to any injunctive relief in this case. *See* Summary Judgment Order at 69, Doc. #397. There is no authority for the Sheriff to "ready the Judge's desk."

## D. The Sheriff Objects to ¶ 12 of the Proposed Relief because he has no duty to provide technical support for the Judges

Plaintiffs' Proposed Relief asks this Court to enjoin the Sheriff to "provide prompt technical support … as needed for the Presiding Judge to [provide for the creation of audio recordings of all bail hearings conducted in accordance with this order, and their preservation as part of the court's record]." The Sheriff does not serve as the judiciary's IT department, and Plaintiffs have cited no authority to the contrary. The "fees, fines, costs and forfeitures … collected by the court clerk … shall be used … [to] defray[] the expenses of holding court in said county[, including] … compensation of bailiffs, … office supplies, … furniture, fixtures,

---

[6] 19 O.S. § 221. *See also Petuskey v. Cannon*, 1987 OK 74, ¶ 20, 742 P.2d 1117 ("the District Court Clerk is 'judicial personnel' as the term is used in Rule 2 of Administration of Courts, *supra*. He is an arm of the court, whose duties are ministerial, except for those discretionary duties provided by statute. As such, the Court Clerk is subject to the control of the Supreme Court, and the supervisory control it has passed down to the Administrative District Judge in his Judicial Administrative District in the performance of his ministerial functions.").

[7] 22 O.S. § 1105.3.

and equipment, [and] renovating, remodeling, and maintenance of courtrooms." 20 O.S. §§ 1301, 1304. There is no authority to transfer this obligation to the Sheriff.

Plaintiffs' Proposed Relief enjoining the Sheriff to "provide prompt technical support [for audio recordings]" violates the "necessary" and "narrowly tailored" restrictions that expressly apply to any injunctive relief in this case. *See* Summary Judgment Order at 69, Doc. #397.

**E. The Sheriff Objects to ¶ 8 of the Proposed Relief: while the Sheriff can hire additional detention officers with tasers and ratchet up security to accommodate Judges, Assistant District Attorneys, Assistant Public Defenders, and Court Staff at bond docket proceedings in the Jail, switching the venue from video court to in person proceedings will not remedy the perceived problems caused by the Public Defender's Office. It will, however, increase the risk of harm to those in attendance.**

Plaintiffs are dissatisfied with the Office of the Public Defender but cannot honestly talk about it because it will not advance their cause: they did not sue the Public Defender's Office ("PD's Office"). So, they have taken their complaints about the PD's Office and framed them into false choices that would appear to require scuttling the technology used to conduct video court from the Jail.

However, that technology is necessary to accommodate victims under the Oklahoma Constitution:

> To secure justice and due process for victims throughout the criminal and juvenile justice systems, *a victim of a crime shall have the following rights, which shall be protected by law in a manner no less vigorous than the rights afforded to the accused*: to be treated with fairness and respect for the victim's safety, dignity and privacy; upon

request, ***to reasonable and timely notice of and to be present at all proceedings involving the criminal or delinquent conduct; to be heard in any proceeding involving release***, plea, sentencing, disposition, parole and any proceeding during which a right of the victim is implicated; to reasonable protection; upon request, to reasonable notice of any release or escape of an accused; … upon request, to confer with the attorney for the state; and to be informed of all rights enumerated in this section.

Okla. Const. art. 2, § 34. It is unsafe, unreasonable and unfair in 2025 to force victims of a crime (within 48 hours of their victimization) to attend bond docket proceedings inside the Jail with upwards of 70 unrestrained inmates in a crowded courtroom where they could easily be subject to intimidation and/or retaliation.[8]

Video court allows victims to be present in the Tulsa County Courthouse watching the proceedings by video, and should they desire, to testify by video, while the inmates participate by video from the Tulsa County Jail. Under the Oklahoma Constitution, the victim's rights with respect to these proceedings "[must] be protected by law in a manner no less vigorous than the rights afforded to the accused." *Id*. Plaintiffs' Requested Relief envisions the continued use of video court "for members of the public to attend bond docket." Plaintiffs' Proposed Terms of Injunctive Relief Against the Presiding Judge and Sheriff, ¶ 10, Doc. #421-1. Video court during bond docket should continue for all concerned.

---

[8] The bond docket courtroom in the Jail is only 1081 square feet and is located in the secured portion of the Jail.

Placing the decisionmakers and opposing counsel in the same crowded room with recently arrested inmates who may be negatively impacted by the decisions made in that room increases the risk of harm to attendees who would otherwise attend by video from the Courthouse.  Such risks should not be undertaken lightly.

> [T]here have been upwards of 70 plus arrestees in the jail courtroom at once, many whom are alleged to have committed violent crimes and many with violent histories. There have been fights that break out during the bond docket within that Jail courtroom. There have also been times when arrestees have made negative comments to Judges and Assistant District Attorneys during the bond docket, giving cause for concern that the inmate may seek to harm that individual. Furthering this concern, the arrestees are rarely restrained by handcuffs, and detention personnel in the Jail carry only tasers.

Affidavit of Peggy A. Haddock, ¶ 30, Ex. B.  Additionally, the more folks from outside the jail enter to work inside the jail, the greater the security risk to all concerned: visitors, jail staff and inmates alike.

A child who demands an ice cream cone, while claiming she will die from starvation if she doesn't get it, creates a false choice to get what she wants. Plaintiffs' ten-page fantasy on the need to scuttle technology and move the bond docket hearings exclusively within the Jail is animated with dozens of such false choices.  *See* Plaintiffs' Motion at 5-15, Doc. #421.

### (1) The PD's Office can be present in the Jail <u>and</u> in the Courthouse

The Tulsa County Public Defender's Office consists of forty-five (45) attorneys, an office manager, nine (9) support staff, two (2) court navigators, and

four (4) investigators. *See* Affidavit of Peggy Haddock, ¶ 33, Ex. B. Since August 22, 2019, by local court rule, the Tulsa County District Court has ordered that the PD's Office shall represent the accused for purposes of the daily bond docket proceedings. *See* Rule CR2 of the Local Rules of the Tulsa County District Court ("the accused shall be represented by court appointed counsel"). Stuart Southerland, First Assistant Public Defender for the PD's Office, has testified that "the appointment [of the PD's Office] would be solely for the purpose of consulting – hopefully consulting with someone before the docket, [and for] making the argument for bond." Deposition of Stuart Southerland, at pp. 9:20-9:22, 47:9-47:12, Doc. #369-5 at 48. *See also id*. at 47:2-48.19. With very limited exceptions (pro se representation or private counsel hired on the spot), "If they appear, [the PD's Office] represent[s] them." *Id*. at 47:23.

Sheriff Regalado makes his jail available twenty-four hours a day seven days a week for defense counsel to meet with detainees. *See* Affidavit of Stacie Holloway, ¶ 3, Ex. A. The Sheriff does not deny the PD's Office access to any detainees or inmates in the Jail.[9] *Id*.

So, when the Plaintiffs argue that if the Public Defender appears in the Courthouse with the Judge and Assistant District Attorney, he is prohibited from

---

[9] During COVID-19 protocols, physical contact may have been restricted but video and audio consultation always remained available to the PD's Office.

appearing in the Jail with his client, or vice-versa, that is simply a false choice. *See* Plaintiffs' Motion at 5-6, 10-12, Doc. #421. One member of the PD's Office can be in the Courthouse and a staff member in the Jail, and the two of them can communicate privately by cell phone to coordinate representation of the accused. *See* Affidavit of Stacie Holloway, ¶¶ 22-23, Ex. A. Wireless internet is available throughout the Jail, and members of the PD's Office sign an Electronics Agreement Form with the Jail that allows them to use their smart phones, laptops, I-Pads, etc. *Id.* at ¶ 22. These electronic devices can be used to transmit photographs of documents, access shared files, access OSCN, send text messages, and allow the Public Defender in the Courthouse to speak privately with the accused in the Jail. *Id.* at ¶ 23.

### (2) Video/Audio Glitches can be overcome by repeating what was missed

When someone in attendance at a hearing cannot hear what was said or cannot see what is being shown, they simply ask the speaker to repeat it or display it again. This is done in person and can also be done by audio/video connection. The Judge, Jail personnel, and attorneys have never refused to repeat what was said when asked. *See* Affidavit of Peggy A Haddock, ¶ 9, Ex. B.

It is the responsibility of the Public Defender's Office to demand clarity. However, not every syllable or pixel lost in transmission is vital to the fair presentation of claims in an adversary system. The decision of the PD's Office not

to object to an audio or video glitch constitutes waiver of any error. If mere repetition does not suffice, the hearing can be recessed and resumed later that day or the next morning to correct technical problems. Recurring issues can be addressed through equipment and software upgrades. Suggesting that audio and/or video glitches require in person hearings is a false choice. *See* Plaintiffs' Motion at 5-8, Doc. #421.

### (3) Documents can be reproduced anywhere anytime with technology

Anita Wright with the Tulsa County Sheriff's Office emails arrest & booking reports/PC affidavits, arrest warrants and a list of who is appearing on that day's bond docket to the Court, the District Attorney's Office, and the Public Defender's Office ([mailto:tulsapdbonddocket@oscn.net](mailto:tulsapdbonddocket@oscn.net)) as early as 6:30 a.m. and rarely after 7:30 a.m. *See* Affidavit of Peggy A. Haddock, ¶ 18, Ex. B. 19.

A Pretrial Packet (consisting of a cover sheet with an accused's basic information and photograph, completed social/financial/community ties questionnaire, and criminal history background) is emailed by Court Services to the Court, the Public Defender's Office ([mailto:tulsapdbonddocket@oscn.net](mailto:tulsapdbonddocket@oscn.net)), and the District Attorney's Office generally between 7:30am and 8:30am every day. *See* Affidavit of Peggy A. Haddock, ¶ 19, Ex. B.

The Assistant Public Defender's decision not to object to the use of a particular document constitutes a waiver of any error. Because the documents are

digital, they can be in two places at once. Suggesting that the Judge's possession of a document requires in person hearings is a false choice. *See* Plaintiffs' Motion at 10-12, Doc. #421.

**(4) The PD's Office can begin each day at 7:30 a.m. in the Jail**

The Sheriff's Office, Court Services, the Judge and the District Attorney's Office begin work on the daily bond docket, at the very least, by 7:30 a.m. to 8:00 a.m. every day. *See* Affidavit of Peggy A. Haddock, ¶¶ 15, 18-19, Ex. B. The bond docket hearing begins at 9:30 a.m.[10] *See* Affidavit of Stacie Holloway, ¶ 15, Ex. A. By arriving at the Jail at 7:30 a.m., one or more members of the PD's Office would have two (2) hours to meet and discuss the issues with the accused prior to the bond docket hearing and to meet with those inmates who have elected not to appear for that morning's bond docket. The PD's Office used to have an assistant public defender assigned *full time* to the bond docket and she was able to conduct the arrestee interviews prior to the beginning of each bond docket. *See* Affidavit of Peggy A. Haddock, ¶ 27, Ex. B.

Some arrestees advise TCSO personnel that they do not want to attend the daily bond docket proceeding. TCSO honors their choice. *See* Affidavit of Stacie

---

[10] The Tulsa County Sheriff's Office has never failed to perform its duty to present pre-arraignment detainees charged with state crimes to a Tulsa County Judge on the days and at the times and at the place and by means commanded by the judiciary. *See* Affidavit of Stacie Holloway, ¶¶ 15-16, Ex. A.

Holloway, ¶ 17, Ex. A. They are then rescheduled to appear on the next day's bond docket proceeding. *Id*. Many who choose not to attend are still sleeping it off, inebriated, being medically treated, etc. *Id*. Because these detainees are scheduled on the bond docket, the Public Defender's Office represents them, may meet with them prior to the bond docket, and can certainly honor their decision not to appear by waiving their appearance.  They will be rescheduled for the next day.  *Id*.

By meeting with arrestees prior to the bond docket hearing, relevant documents can be identified and shared, and strategies developed for the hearing. Because they know they are going to represent arrestees at the next day's bond docket, the PD's Office could begin their interviews immediately after the arrestee is housed in a Jail pod. Suggesting that time prevents the Assistant Public Defenders from doing their job is a false choice.  *See* Plaintiffs' Motion at 5, 9, 12, Doc. #421.

There is a natural tension between holding a pretrial release hearing *immediately after arrest* and providing the accused with *the due time necessary to process* the events, meet with the Public Defender or her assistant, review documents, strategize, contact witnesses, and be given the opportunity to sober up, dust himself off from the fight, and look presentable for the hearing on his pretrial release.  The amount of due process suitable for the daily bond docket thus exists in constant tension between immediacy and preparedness. When the District

Attorney's Office receives supplemental police reports the morning of the bond docket that they intend to use at the hearing, every attempt is made to provide these reports to the assistant public defender as soon as possible. *See* Affidavit of Peggy A. Haddock, ¶ 23, Ex. B. The assistant public defender can raise any objection they see fit and proceedings can be shifted in time to accommodate just about anything. There is no pressing need by the Court or the State to rush the proceedings atop and over the accused's interest in pretrial liberty.

### (5) The PD's Office can show up late, fail to communicate, fail to object, and fail to disclose documents in person as easily as in video court

A bucket with a hole in it needs to be patched; moving the bucket from one place to another will not stop the leak. If the PD's Office is not prepared for the bond docket hearing, it does not matter where the hearing is held: by video court or in person at the Jail. Although the purpose of a bond docket hearing is not addressed to the merits of an accused's crime, if the accused admits to a crime during bond docket the State can use that admission against the accused. Arrestees who are encouraged to speak at bond docket often launch into "inappropriate topics," but the PD's Office in the Jail currently jumps in to mute the accused's microphone – preventing the State from receiving this open court admission. If everyone attends in person at the Jail, this technological safeguard is forfeited.

Assistant Public Defenders who do not spend several hours meeting with the arrestees and preparing for the bond docket will be behind the curve, fail to make timely objections, allow relevant documents to go unread, and issues will be ignored, making getting through the bond docket as fast as possible the primary goal: this will happen if the proceedings are held exclusively within the Jail just as it has happened through the years by video court. *See* Affidavit of Peggy A. Haddock, ¶¶ 4-6, 11-28, 33, Ex. B. To the lackadaisical barrister, the forum matters not. The same formulaic chants of community ties, inability to pay, and lack of a flight risk will be routinely offered up time and again regardless of applicability. Changing from video court to in-Jail proceedings only will not resolve the assistant public defender's lack of preparation. The bucket still leaks.

### III.
### CONCLUSION

Plaintiffs strategically chose to omit the Office of Public Defender as a defendant in this case. The Public Defender's Office has a platoon of attorneys together with interns and assistants. Nevertheless, the named Defendants have zero control over that office. *See Polk County v. Dodson*, 454 U.S. 312, 321 (1981). The Judges have secretary-bailiffs, deputy court clerks, the entire District Court Clerk's Office, and the entire Court Services staff to meet their needs. The Sheriff should not be distracted from providing security.

Plaintiffs have framed their case and pretzeled their concerns regarding the Public Defender's Office into complaints about technology and ridiculously transparent false choices. When this case is over, Plaintiffs remedy lies against the Public Defender's Office. In the meantime, an artificial and inherently insufficient remedy should be avoided. The Court can only grant "necessary" and "narrowly tailored" relief against the Judges, and to a lesser extent, the Sheriff. Plaintiffs have intentionally placed complete relief on the shelf. It must wait until another day.

Respectfully submitted,

s/ *Douglas A. Wilson*
Douglas A. Wilson, OK Bar No. 13128
Mike Shouse, OK Bar No. 33610
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 933
Tulsa, OK 74119
douglas.wilson@tulsacounty.org | (918) 596-8795
mshouse@tulsacounty.org | (918) 596-4825

ATTORNEYS FOR DEFENDANT VIC REGALADO, TULSA COUNTY SHERIFF

20

<u>CERTIFICATE OF MAILING & ELECTRONIC NOTICE</u>

I hereby certify that on August 19, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Alexander Karakatsanis    Kristina Michelle Saleh
Allison M. Holt-Ryan     Phoebe Anne Kasdin
Devan A Pederson      Stefanie Erin Lawson
Erin Morgan Moore     Vassi Iliadis
Hayley Elizabeth Horowitz

        /s/ Douglas A. Wilson
        Douglas A. Wilson

# United States District Court
## NORTHERN DISTRICT OF OKLAHOMA

RICHARD FELTZ and ASHTON LEE DENNIS,    )
on behalf of themselves and all others similarly    )
situated,    )
        )
       Plaintiffs,    )
vs.    )   Case No. 18-cv-298-SPF-JFJ
        )
VIC REGALADO, et al.    )
        )
       Defendants.    )

**EXHIBIT A**

## AFFIDAVIT OF STACIE HOLLOWAY

STATE OF OKLAHOMA   )
               ) ss.
COUNTY OF TULSA     )

I, Stacie Holloway, of lawful age, upon my oath and subject to the penalties of perjury, state:

1.    I have personal knowledge of the statements made in this affidavit.

2.    I have been employed by the Tulsa County Sheriff's Office ("TCSO") since 2003, and I currently serve as Jail Administrator of the David L. Moss Criminal Justice Center, also known as the Tulsa County Jail ("Jail").

3.    The Tulsa County Jail is accessible twenty-four (24) hours a day, seven (7) days a week, for counsel to meet with detainees and inmates. TCSO does not deny the Public Defender's Office access to any detainees or inmates in the Jail.

4.    Since April 2, 2025, TCSO has distributed to everyone brought to the Jail arrested on new state charges the Revised Notice of Rights attached as Exhibit C to the Sheriff's Brief in Opposition to Plaintiffs' Motion for Injunctive Relief.

5.    TCSO understands that the Sheriff has been directed by the Judges of the Fourteenth Judicial District to distribute at booking Exhibit C to every arrestee booked into the jail on one or more pre-arraignment state court charges ("pre-arraignment detainees"). Distribution currently takes place to people arrested on new state charges and on arrest warrants. TCSO shall continue this practice unless and until otherwise ordered by the Court.

6.    When an arrestee is brought to the Jail to be booked in on state charges, he and the arresting officer remain in the pre-booking area until the officer has completed the paperwork.

7.    After the officer slides the completed booking paperwork through the booking window, the arrestee is ushered through a slider into the search room where he is subjected to a search of his person.

8.    The arrestee then leaves the search room and upon passing through a body scanner enters the secured part of the Jail.

9.    Next, booking officers take his mug shot and fingerprints and give him his telephone PIN number.

10.    He is then advised of the criminal charges under which he has been booked, of his right to post bail in the amount set forth in the preset bond schedule for each charge and thereby secure release from Jail pending trial, and he is given a list of bondsmen.

11.    He is further advised that if he does not bond out and is admitted to the Jail for housing, there will be a bond docket proceeding the next morning and he is given a copy of Exhibit C, the Revised Bond Docket Notice, for which he signs a receipt.

12.    He is also given at this time the Jail's Inmate Handbook, its Zero Tolerance Policy for Sexual Misconduct, and Prison Rape Elimination Act ("PREA") documentation, for which he also signs a receipt.

13.    Afterward, he is scheduled for a medical intake screening and told that while he awaits his medical screening, he is free to use the telephones on the booking floor.

14.    Following his medical screening, he either bonds out or is dressed out to be housed in a Jail pod.

15.    TCSO works with the Presiding Judge of the Fourteenth Judicial District to present pre-arraignment detainees to a Tulsa County Judge on the days and at the times and at the place and by means commanded by the judiciary. Since mid-August 2024, that has meant delivering yesterday's pre-arraignment detainees charged with state crimes to the bond docket room in the Tulsa County Jail 365 days a year at 9:30am where they participate by video link with the bond docket judge (who is physically located in the Tulsa County Courthouse) for individualized bail determination hearings.

16.    TCSO has never failed to perform its duty to present pre-arraignment detainees charged with state crimes to a Tulsa County Judge on the days and at the times and at the place and by means commanded by the judiciary.

17.    Some pre-arraignment detainees advise TCSO personnel that they do not want to attend the daily bond docket proceeding, and TCSO honors their choice not to attend. They are

2

then rescheduled to appear on the *next day's* bond docket proceeding. Many who choose not to attend are still sleeping it off, inebriated, being medically treated, etc.

18.    When detainees and inmates are due in Court at the Tulsa County Courthouse ("Courthouse"), they are shuttled back and forth from Court in a van holding approximately 15 or less inmates. The inmates are handcuffed and leg shackled.

19.    Inmates brought to the Courthouse are supervised by an armed deputy at all times and often have to wait until the entire group is finished with Court before returning to the Jail.

20.    All bond docket proceeedings are conducted in the bond docket room in the Jail in which inmates come down from their housing area to a courtroom where they sit in chairs, unrestrained, and wait to appear by video before the Judge, who himself appears by video. The number of inmates brought to the bond docket room can range on average from 20-70 inmates depending on the day of the week and the number of inmates booked into Jail the prior day.

21.    Inmates going to video court within the jail require a detention officer to supervise them as they wait to appear and are able to go back immediately when done to their housing area. Detention officers are present in the bond docket room, but armed guards are not present. Firearms are generally not permitted in the secure area of the Jail.

22.    A wireless internet connection is available throughout the Jail, and members of the Public Defender's Office may sign an Electronics Agreement Form with the Jail that allows them to use their smart phones, laptops, Apple pads, etc., while inside the Jail.

23.    These electronic devices can be used to, among other things, allow the Assistant Public Defender in the Courthouse to speak privately with the accused in the Jail.

FURTHER AFFIANT SAYETH NOT.

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

August 19, 2025
Tulsa, Oklahoma

Stacie Holloway, Jail Administrator

3

# United States District Court

## NORTHERN DISTRICT OF OKLAHOMA

EXHIBIT
**B**

RICHARD FELTZ and ASHTON LEE DENNIS, )
on behalf of themselves and all others similarly )
situated, )
                 )
   Plaintiffs, )
vs. )        Case No. 18-cv-298-SPF-JFJ
                 )
VIC REGALADO, et al. )
                 )
   Defendants. )

## AFFIDAVIT OF PEGGY A. HADDOCK

STATE OF OKLAHOMA  )
           ) ss.
COUNTY OF TULSA    )

I, Peggy A. Haddock, of lawful age, upon my oath and subject to the penalties of perjury, state:

1.  I have personal knowledge of the statements made in this affidavit.

2.  From 2014 to 2022, I worked as an Assistant Public Defender with the Tulsa County Public Defender's Office.

3.  I have been employed as Bond Docket Prosecutor by the Tulsa County District Attorney's Office since August 2023.

4.  Prior to March 20, 2025, some public defenders chose to go to the Tulsa County Jail ("Jail") to meet with the arrestees and attend the bond docket hearing from the Jail, but this was generally the exception rather than the rule.

5.  However, since March 2025, assistant public defenders have been attending the bond docket hearings from the Jail. The State has never prevented defense attorneys from attending bond docket proceedings from the Jail.

6.  For over one year, within the past two years, the assistant public defender who regularly represented the arrestees at the bond docket hearing attended virtually from another state.

7.  New microphones have recently been installed in the video courtroom at the Jail. The audio quality is noticeably better.

8.     The issue with the frames being too small in Microsoft Teams is easily fixed by "pinning" the courthouse view.  This enlarges the chosen screen.

9.     While technological glitches happen from time to time, the judge, Jail personnel, and attorneys have never refused to repeat what was said when asked.

10.    Defense attorneys are not excluded from courtroom conversations.  While it is true that the people in both the Jail courtroom and the Tulsa County Courthouse ("Courthouse") do engage in unrelated conversations from time to time, there are no ex parte conversations regarding the arrestee's case. Additionally, the judge oftentimes conducts unrelated business while the defense attorneys are conversing with their clients. These conversations may be completely improper for the general public to hear (e.g. when an officer brings in an arrest warrant on an unrelated case).

11.    Defense counsel's staff are never excluded from the bond docket proceedings in the Courthouse or in the Jail.

12.    Defense attorneys often converse with the arrestees in the midst of the bond docket hearing because they failed to arrive at the Jail before 9:30 a.m. to meet with the people scheduled to be on that day's bond docket.

13.    Upon information and belief, some assistant public defenders do not get to the Jail until 5-10 minutes prior to the bond docket hearing, while the inmates are usually in the Jail courtroom 30-45 minutes beforehand.

14.    Additionally, some assistant public defenders do not read the Information until immediately prior to or even during the bond docket hearing.

15.    The judge who usually presides over the bond docket is known to arrive at the Courthouse for preparation between 7:30 a.m. and 8:00 a.m. The regularly assigned assistant district attorneys begin preparation by 7:30 a.m.

16.    On one day in June 2025, no one from the Public Defender's Office appeared at the Jail or at the Courthouse for the bond docket. The bond docket was continued to 1:30 that afternoon to send someone from the Public Defender's Office to the Jail. At 1:30, the PD's Office asked for more time to interview the arrestees, although there had been ample time for arrestee interviews.

17.    The issue regarding assistant public defenders receiving documents different from the Court and assistant district attorneys is moot.  The Judge and State previously received the full NCIC in addition to the Pretrial Packet prior to the bond docket and the assistant public defenders received only the Pretrial Packet. The Judge and State now receive only the Pretrial Packet prior to the bond docket.  The NCIC is no longer distributed.

18.    Anita Wright with the Tulsa County Sheriff's Office emails arrest & booking/PC affidavits, arrest warrants and a list of who is appearing on the bond docket that day to

the Court, the Public Defender's Office (tulsapdbonddocket@oscn.net) and the District Attorney's Office as early as 6:30 a.m. and rarely after 7:30 a.m. The lack of preparation by assistant public defenders is not caused by the Court or the State.

19.    A Pretrial Packet (consisting of a cover sheet with photo, completed social/financial/community ties questionnaire, and criminal history background) is emailed by Court Services to the Court, the Public Defender's Office (tulsapdbonddocket@oscn.net) and the District Attorney's Office generally between 7:30 a.m. and 8:30 a.m. every day.

20.    These documents are sent via email at the same time to all parties; therefore, all parties have the same amount of time to review the same information.

21.    The issue as to the State and Judge sharing information has occurred on a rare occasion when (1) the case was passed from a prior day and (2) when the State receives supplemental and/or amended PC Affidavits prior to the bond docket.

22.    When a case is passed from one day to the next, both the Court and the District Attorney's Office have procedures in place to ensure that relevant information from today's docket is passed along to the Judge and Assistant District Attorney who will be handling the bond docket the next day.  Sometimes this results in the State and Judge sharing information needed to pass the case.  The Public Defender's Office appears not to have such a procedure in place.

23.    Sometimes the State receives supplemental PC Affidavits for use at the bond docket hearing.  Such information typically comes directly from the Tulsa Police Department in an encrypted format and is therefore not distributed by email to both parties together with the other daily bond docket records.  When this occurs, a hard copy of this information is provided to the Public Defender's Office prior to the bond docket, together with instructions to forward to the assistant public defender handling the bond docket for that day. The State has no knowledge of who that assistant public defender will be. Unfortunately, more times than not, the Public Defender's Office does not forward the information. Both the Court and the Assistant District Attorney have been accommodating when this happens. There have been times when the judge has left the bench to email the information during the proceedings. One time, the Assistant District Attorney took a picture on her phone and forwarded the information to the assistant public defender.

24.    When an arrestee is represented by someone other than the Public Defender's Office, neither the accused nor his private counsel announce the matter until the accused is called to the podium.  Any resulting lack of preparation or failure to receive documents is not caused by the Court or by the State.

25.    As to the defense attorneys not being able to speak with the arrestees in private, having the judge and assistant district attorney at the Jail courtroom would only exacerbate this issue, rather than solve it. With the assistant district attorney and judge in the Courthouse by video, the assistant public defender can mute the microphone so that neither the Court

3

nor the State may hear their conversation. If the Assistant District Attorney and Judge were in the Jail during these conversations, they would overhear them. Or, disrupting proceedings further, the assistant public defender would have to remove themselves into another room or across the room from the podium in order to speak privately, which would cause further delay in the proceedings. As stated before, sometimes the PD's Office does not speak with the arrestee until during the bond hearing when the arrestee is called to the podium.

26.    This can be rectified by the defense counsel arriving at the jail in time to allow for conversations with the accused prior to Video Court. If defense counsel is unable to be at the Jail with sufficient time to conduct the interviews, another solution would be to have two people from the Public Defender's Office go to the Jail to interview the arrestees.

27.    The Public Defender's Office used to have an assistant public defender assigned full time to the bond docket and she was able to conduct the arrestee interviews prior to the beginning of each bond docket.

28.    When arrestees "waive" appearance, the Judge asks defense counsel whether they have an objection to the waiver, believe it is a knowing and voluntary waiver, or if they want the hearing passed to give defense counsel time to speak with the arrestee. This decision is solely made by defense counsel.

29.    To require victims of a crime to go to the Jail in order to testify is both traumatic and dangerous, as the victims' and arrestees' families would be put in the same room as their assailant(s).

30.    Having the Judge and Assistant District Attorney at the jail courtroom also poses a major safety concern. In the past, there have been upwards of 70 plus arrestees in the jail courtroom at once, many whom are alleged to have committed violent crimes and many with violent histories. There have been fights that break out during the bond docket within that Jail courtroom. There have also been times when arrestees have made negative comments to Judges and Assistant District Attorneys during the bond docket, giving cause for concern that the inmate may seek to harm that individual. Furthering this concern, the arrestees are rarely restrained by handcuffs, and detention personnel in the Jail carry only tasers.

31.    Requiring members of the community, including witnesses and victims, to attend bond docket from the Jail is a public safety risk.

32.    However, members of the community, including family members and victims of crimes, often wish to attend bond docket proceedings. Furthermore, under Marsy's law, victims of crimes have the right under the Oklahoma constitution to attend any and all hearings they wish regarding their case. If we require victims to attend from the Jail, this could cause unnecessary public safety concerns and risk of witness intimidation or other harmful consequences.

4

33.    Attached to this Affidavit is a copy of the most current phone list for the Office of the Public Defender showing the Office employs forty (45) attorneys, an office manager, nine (9) support staff, two (2) court navigators, and four (4) investigators.

FURTHER AFFIANT SAYETH NOT.

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.


August 19, 2025
Tulsa, Oklahoma

_____
Peggy A. Haddock

# TULSA COUNTY PUBLIC DEFENDER'S OFFICE (918) 596-5530   FAX (918) 596-5559-Civil   (918) 596-5540-Criminal

LORA HOWARD - Chief | 5535
GLEN BLAKE – Dep. Chief | 5516
STACEY CRAWFORD (office mgr.) | 4542

**APPEAL DIVISION:**
BRIAN JONES | 8642

**INVESTIGATORS:**
DANIEL ARELLANES | 8683
AARON BELL | 4562
SAMANTHA DAVIS | 5534
ANGLIC PERMETTER | 5410

**CRIMINAL DIVISION:**
JANAY CLOUGHERTY | 8623
FENELLA FLANAGAN | 8587
JACK GORDON | 5536
GREGG GRAVES | 8535
LIZ HELLMAN | 5549
KATE HUNTER | 6733
JESS HANEY | 8638
BARRETT HOLDER | 4640
KYLE KILLAM | 4581
BLISS LOWE | 5547
CHRISTINE MESCHER | 5558
AMANDA MIMS | 8645
LEAH PERDUE | 5554
COURTNEY RAINBOLT | 5548
BRIAN RAYL | 5538
MARI RIERA | 4691
REID ROGEZ | 8403
HANNA ROBERTS | 5994

PIERRE ROBERTSON | 5557
SARA ROSSON | 8641
ASHLEY SALISBURY | 8588
NICK VANGILDER | 6716
GREYSON VAUGHN | 5533
PATRICK WEIGANT | 8404

**APP TEAM:**
HANNAH SUMMY | 8589
BRETT PALMER | 5544
ZACH STEGMAN | 5546

**MENTAL HEALTH DIVISION:**
JONNA REYNOLDS | 5949

**CIVIL DIVISION:**
CHEYENNE BARNARD | 5994-8567
STEPHANIE COLLINGWOOD | 4561-8567
SADIE TEMPLE | 8531-8567
MARCI JEFFERSON | 8567

**SUPPORT STAFF:**
ABBY MAYS | 5530
RYAN HOWARD | 8537
CINDY PATTERSON | 8536
GLENDA ROBERTS | 8538
SANDI RODRIGUEZ | 5530
DANIELLE JONES | 5699
CYNDI WOLF (staff supervisor) | 8639
ALANA HIGGINS | 4735

**JUVENILE DIVISION:**
KELLEY FELDHAKE | 5541
KATHRYN GARDNER | 4962
LANDES BAUTER | 8466
JENNIFER KERN | 8647
SUTTON MURRAY | 4937
CHANCE BENNETT | 4756
BRITTANY JAMESON (JDL) | 5948
LEXIE NEWMAN (JD) | 8465
JUVENILE INTERN | 8586

**COURT NAVIGATORS:**
ANGELA RENEAU
PD Cell | (918) 264-4143
MARIJA MILENKOVIC | 4584
PD Cell | (918) 388-7453

PHONE ROOM | 5551

July 1, 2025

**NOTICE**

If you have been booked on <u>new charges</u>, **YOU HAVE THE FOLLOWING RIGHTS**:

### YOU HAVE THE RIGHT TO A BOND HEARING WITHIN 48 HOURS OF ARREST

- Jail staff will tell you the date and time of your bond hearing.

- At the hearing, a judge will decide whether you must stay in jail or if you can be released. If you have been assigned a bond amount that you cannot afford, the bond hearing is an opportunity for you to argue for different release conditions.

### YOU HAVE THE RIGHT TO AN ATTORNEY AT YOUR BOND HEARING

- If you don't have an attorney, you will be offered one free of charge at the hearing.

- You have the right to speak to the attorney privately before the judge considers your case, and at any time during the hearing. If you would like to speak to the attorney, tell the judge.

### YOU HAVE THE RIGHT TO BE CONSIDERED FOR BAIL ON THE CURRENT CHARGES.

- The judge will decide if you are likely to threaten the community's safety or fail to appear for court if released.

- If the judge finds you are likely to threaten community safety or fail to appear for court, the judge can require you to pay bail and/or impose non-monetary conditions, such as requiring you to stay away from certain people or places or by requiring you to wear an electronic monitor.

- The judge can order you held without bond or impose conditions for your release that may or may not have a financial component.

- The Court will issue a written order form following your hearing.  If you would like a copy of that form, ask the judge or your attorney.

### YOU HAVE THE RIGHT TO PARTICIPATE AT YOUR BOND HEARING

- You have the right to see and hear the judge and everyone who speaks to the judge about your case during your hearing. You also have the right to see during your hearing any documents, information, or other evidence shown to the judge about your case, or criminal history.  The Public Defenders have copies of the information given to the judge.

-  You have the right to ask your attorney to make arguments for your release, present helpful information or evidence about your finances and your connections to the community, challenge any documents or other evidence considered by the judge, and question any witnesses who speak in court against you.

EXHIBIT
**C**

**Please direct any questions about the hearing or this notice to your attorney.**

JAIL STAFF IS UNABLE TO ANSWER QUESTIONS ABOUT THIS NOTICE

Last Revised 4/2/2025