UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD FELTZ and ASHTON DENNIS, on behalf of themselves and all other similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>VIC REGALADO, *et al.*,<br><br>*Defendants*. | Case No. 18-CV-0298-SPF-JFJ |

**PLAINTIFFS' BRIEF IN FURTHER SUPPORT OF INJUNCTIVE RELIEF AND IN REPLY TO JUDICIAL DEFENDANTS' OPPOSITION**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Benjamin v. Fraser*, 246 F.3d 157 (2nd Cir. 2001) .................................................................. 1

*Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016) .................................................................. 2

*CF & I Steel Corp. v. United Mine Workers of America.* 507 F.2d 170 (10th Cir. 1974) ............... 2

*Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245 (10th Cir. 2022) ..... 5, 6

*Dean v. Coughlin*, 804 F.2d 207 (2d Cir. 1986) ...................................................................... 7

*Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321 (3d Cir. 2021) ................................. 9

*Joseph A. by Wolfe v. New Mexico Dep't of Hum. Servs.*, No. cv-80-623, 2003 WL 27385532
    (D.N.M. Jan. 16, 2003) ...................................................................................................... 6

*Joseph A. ex. rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253 (10th Cir. 2002) ................................ 5

*Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014) ................................................................ 8

*M.G. ex rel. Garcia v. Armijo*, 117 F.4th 1230 (10th Cir. 2024) ................................................ 8

*Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024) ................................................................ 8, 9

*Mayer v. Chicago*, 404 U.S. 189 (1971) ................................................................................ 9

*Phelps v. Hamilton*, 122 F.3d 1309 (10th Cir. 1997) ................................................................ 6

*Ridley v. Philips Petroleum Co.*, 427 F.2d 19 (10th Cir. 1970) ................................................ 11

*Rocky Mntn. Christian Church v. Bd. of Cnty. Cmm'rs*, 613 F.3d 1229 (10th Cir. 2010) ............ 12

*Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081 (10th Cir. 2003) ...................... 8

*Schmidt v. Lessard*, 414 U.S. 473 (1974) .............................................................................. 11

*Todaro v. Ward*, 565 F.2d 48 (2d Cir. 1977) ........................................................................... 7

*Torres v. Collins* Mo. 220cv26, 2023 WL 6166523 (E.D. Tenn. Spt. 21, 2023) ........................... 9

*Vazquez Diaz v. Commonwealth*, 487 Mass. 336 (2021) ................................................................ 10

**Statutes**

19 O.S. § 138.2 ................................................................................................................................ 3

**Rules**

Fed. R. Civ. P. 65 .......................................................................................................................... 10

Tulsa Cnty. Local Crim. Rule 2 ..................................................................................................... 2

As Defendants have adjusted their bail hearing procedures, Plaintiffs have sharpened their requested injunctive relief. Now, in addition to their request for a declaration,[1] Plaintiffs seek several narrow adjustments to procedures already designed and implemented by the Defendants over the last year. Judicial Defendants argue relief is unnecessary given recent reforms, but they do not counter Plaintiffs' factual showing that constitutional injuries persist. Judicial Defendants also complain that Plaintiffs' proposed modifications are excessively disruptive, but they cite no evidence that the injunction will impose costs or disrupt state processes. Plaintiffs' requested measures will "safeguard . . . detainees' constitutional rights at minimal cost to the [Defendants] and without impairing [their] institutional concerns." *Benjamin v. Fraser*, 246 F.3d 157, 187-88 (2nd Cir. 2001). The motion should therefore be granted.

## I.      A Remedial Order Is Required Because of Ongoing Constitutional Injury

Arguing that recent reforms moot Plaintiffs' claims, Judicial Defendants ignore Plaintiffs' factual showing of ongoing constitutional violations. A substantial number of class members still do not receive bond hearings because they are deemed to have "waived" appearance without advice or consent. *See* Doc. 421 at 13-15. Class members continue to be routinely detained on money bonds without findings of their ability to pay or the need for their detention. *See id*. at 15-21. Due to the hearings' audio-visual setup, class members still struggle to see and hear courtroom proceedings and to access documents and present witnesses. *See id.* at 5-13. Defendants do not counter this evidence, simply asserting without citation or argument that "[t]he video technology being used allows each person in the hearing to see and hear the other

---

[1] Per the Court's instruction, *see* Doc. 413 at 2, Plaintiffs do not elaborate on their outstanding request for declaratory relief, *see* Doc. 401 at 2-9 & 401-1 at 1-5. But they still seek that relief, and the additional declaratory term requested in the present motion, *see* Doc. 421 at 29-30.

participants." Doc. 428 at 25. The evidentiary record leaves no question that class members continue to "suffer[] actual injury that can be redressed by a favorable judicial decision"; the case is therefore not moot. Doc. 306 (Ruling on Defs.' Mot. to Dismiss) at 13 (citing *Brown v. Buhman*, 822 F.3d 1151, 1165-66 (10th Cir. 2016)).

Plaintiffs are entitled to remedies to avoid not only current but anticipated future harms. "To justify an order restraining . . . violations it must appear that they bear some resemblance to that which the [defendant] has committed or that danger of their commission in the future is to be anticipated from the course of [defendant's] conduct in the past." *CF & I Steel Corp. v. United Mine Workers of America*. 507 F.2d 170, 174 (10th Cir. 1974). Plaintiffs risk erosion of Defendants' incomplete reforms if this case is resolved without a remedy. Defendants have adopted reforms throughout the litigation reluctantly and with a history of backsliding. In September 2023, while summary judgment motions were pending, Defendants quietly clawed back scheduled bond hearings from seven to five or six days per week. They did so without any local rule, administrative order, or other formal vehicle, and left dozens of class members each week in jail without hearings for more than 48 hours in contravention of their own Local Criminal Rule 2. *See generally*, Doc. 391 (Pls.' Suppl. Sum. J. Br.).

Plaintiffs' request for equitable relief focuses in part on gaps in Defendants' most recent reforms, but it is also needed to ensure that Defendants maintain tenuous amended practices. The most recent reforms' timing does not instill confidence that they will remain in place if this Court does not issue an order. The notice, bench card, and order form now in use were adopted immediately after Plaintiffs announced they would seek an injunction, nearly a year after the Court's April 2024 summary judgment ruling. *See* Ex. 1 (Parties' Joint Ltr, Mar. 10, 2025); ECF 421 at 2-5 (notice and bench card in use since March and April 2025). Even if the Court

overlooks this timing and Defendants' previous unwinding of reforms, and presumes they will maintain recent changes, that presumption cannot apply to perhaps the most significant recent change in bond docket practice, over which Defendants have no control. On March 20, 2025, assistant public defenders began appearing from inside the jail where they can confer with their clients (but not access all evidence or hear all arguments). *See* Doc. 430, Ex. B (Haddock Aff.) ¶¶ 4-5; Doc. 427-6 (Ali Aff..) ¶ 23. While the Public Defender "serve[s] at the pleasure of [the district] judges," 19 O.S. § 138.2, she retains oversight of her office's day-to-day practices. The Public Defender is not a party to the lawsuit, and as long as hearings occur in two places, she has discretion over where her staff appears.

For years until this spring, assistant public defenders chose to appear remotely or from the courthouse. *See* Doc. 430, Ex. B (Haddock Aff.) ¶¶ 4-5; Doc. 421-11 (Ali Second Decl.) ¶ 22. The Public Defender changed that practice days after Plaintiffs advised the Court that they would seek an order for judges to appear in person, in part "because conducting the bond docket virtually impedes access to counsel." Ex. 1 (Parties' Joint Ltr., Mar. 10, 2025) at 4. The Public Defender attests she has now "directed the assistant public defenders . . . to appear on the docket from the courtroom in the [jail]" and presently has "no intention of changing this policy." Doc. 428-7 ¶ 2. Plaintiffs have not had discovery into communications between Defendants and the Public Defender leading up to this change. These communications can be examined if the Court schedules an evidentiary hearing; they would shed light on what prompted the Public Defender's policy change and, in turn, its degree of precarity.

But regardless of the Public Defenders' motivations in this instance, the record already shows that bond docket reforms are vulnerable if no remedy is granted, including to recissions made at the Public Defender's behest. Public Defenders face pressures that test their capacity to

3

maintain systemic reforms. For example, the September 2023 reduction in scheduled bond dockets and resulting increase in class members' pre-hearing detention times followed a joint appeal from the Public Defender and District Attorney, citing budget cuts. Doc. 388-1.

The Presiding Judge and Sheriff, as parties to this action, have an obligation to remedy logistical decisions that have systematically deprived class members of access to counsel for years, among other constitutional injuries. Class members should not have to rely on the Public Defender's priorities remaining unchanged after this litigation resolves. Plaintiffs are entitled to remedies that will guard against both the ongoing injuries detailed in Plaintiffs' opening brief and threatened future constitutional injuries, such as less frequent hearings and loss of counsel.

## II. Plaintiffs' Proposed Relief Is Properly Tailored to Avoid Undue Intrusion

Judicial Defendants also ask, once again, for the Court to abstain from remedying Plaintiffs' constitutional injuries. *But see* Doc. 48 (Judge Eagan rejecting *Younger* abstention); Doc. 397 at 29-36 (Sum. J. Opinion rejecting *O'Shea* abstention). The Court has previously explained at length that *O'Shea* abstention is to avoid getting "the district court heavily involved in monitoring and, when necessary, disrupting individual state-court criminal proceedings." Doc. 397 at 31 (citing *O'Shea*, 414 U.S. at 492, 493 n.1, 500-501). Plaintiffs' proposed injunction does not raise concerns of "ongoing monitoring of the substance of state proceedings" or "intensive, context specific legal inquiry." *Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245, 1260 (10th Cir. 2022) (internal quotation marks and alterations omitted). It involves administrative, system-level, clear-cut remedies—a bench card, notice forms, hearings conducted in one location, and recordkeeping—which do not portend case-level meddling in specific adjudications.

4

Judicial Defendants accuse Plaintiffs of attempting to "mandate particular outcomes through a bench card," Doc. 428 at 20 n. 45; the phrase is nonsensical. Requiring distribution of a bench card that articulates legal standards does not "require[e] specific outcomes" in individual cases. *Id*. at 21. The Tenth Circuit has warned against this type of imprecise application of *O'Shea* any time an injunction abuts state court proceedings. In *Joseph A. ex. rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253 (10th Cir. 2002), the Tenth Circuit instructed the district court to review an injunctive order governing state child welfare proceedings under *O'Shea,* but to avoid reflexive, wholesale abstention. The Court called for a provision-by-provision analysis to eliminate only terms that would dictate the type of information or arguments that could be heard in the underlying state adjudications. *Id*. at 1272-73.

On remand, the district court analyzed whether each provision "require[d] or implicat[ed] federal judicial review of the [state court] decisions and/or whether . . . compliance depend[ed] on the appropriateness of plans proposed or developed by the [State] or those ordered by the . . . Court." *Joseph A. by Wolfe v. New Mexico Dep't of Hum. Servs.*, No. cv-80-623, 2003 WL 27385532, at *5 (D.N.M. Jan. 16, 2003). The district court found abstention inappropriate because compliance with the injunction's terms turned on whether a state agency, *e.g*, held timely conferences and made written records—in other words, whether it turned on administrative requirements. *Id*. The injunction's provisions did not run afoul of *O'Shea* because they did "not explicitly, or indirectly through their timing requirements, constrain the [Court's] options," or "categorically restrict the [State's] attorneys in what they may present or recommend to the . . . Court nor curtail the freedom, independence, or vigorousness of their advocacy." *Id*. at *5; *see also Phelps v. Hamilton*, 122 F.3d 1309, 1314 (10th Cir. 1997) (denying request to

5

"monitor the local district attorney's office to insure that [plaintiffs] are not prosecuted under valid state laws for any occurrences related to their alleged protected speech and activity").

Plaintiffs' injunction here does not implicate *O'Shea* because the Court will "not be required to monitor the substance of individual cases on an ongoing basis to provide the relief." *Courthouse News Serv.*, 53 F.4th at 1260. Plaintiffs ask the Court to ensure that the Presiding Judge distributes literature stating accurate legal principles. They do not ask the Court to ensure those legal principles are applied in individual cases. If the requested relief is granted, the Court will clarify the law in its declaration, and the Presiding Judge will be enjoined only to reiterate the law in her bench card. Special Judges will not be enjoined by this Court to apply the law in their individual proceedings.

Plaintiffs' requests are "particular," but they are not unduly intrusive, "ever-expanding" or "extensive." *See* Doc. 428 at 17. Plaintiffs "[used] as [their] guide [Defendants' own] plan subject to minor modifications," which, the Second Circuit observes, is the mark of a well-crafted governmental injunction. *Dean v. Coughlin*, 804 F.2d 207, 214 (2d Cir. 1986). Plaintiffs seek "specific and limited" amendments to procedures already in place, amendments "carefully tailored to cure the infirmities [that] offend the constitution and no more." *Todaro v. Ward*, 565 F.2d 48, 52 n.7 (2d Cir. 1977). Specifically, Plaintiffs seek modification of notices and bench cards the Presiding Judge already distributes, universal use of a recording system the Court has already adopted, and the physical presence of judges in a room Defendants have already set up. The proposed injunction accommodates three cautions evident in Supreme Court case law governing equitable remedies against state agencies: "(1) not to use a sledgehammer where a more delicate instrument will suffice, (2) not to move too quickly where it appears that the state, in the exercise of its administrative authority, will in its own way adopt reforms bringing its

6

system into compliance with the Constitution, and (3) to give the state a reasonable opportunity to remedy a constitutional deficiency, imposing upon it a court-devised solution only if the state plan proves to be unfeasible or inadequate for the purpose." *Dean v. Coughlin*, 804 F.2d 207, 213 (2d Cir. 1986). The proposed injunction is respectful, workable, and targeted toward injuries that remain after Defendants have had eighteen months to implement the Court's summary judgment ruling.

### III. Plaintiffs' Proposed Relief Is Properly Tailored to Remedy Ongoing Harm

Judicial Defendants object that Plaintiffs' precise proposed remedies are not constitutionally mandated, *see* Doc. 428 at 15-16, but that is not the standard that applies. Having found constitutional injuries, the Court may craft equitable remedies to avoid ongoing harm, as long as they do not impose disproportionate cost on Defendants or the public. *See Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014) (four-part test for permanent injunction). "[T]he district court has broad power to deal with unique intricacies of each case, for breadth and flexibility are inherent in equitable remedies." *M.G. ex rel. Garcia v. Armijo*, 117 F.4th 1230, 1249 (10th Cir. 2024). The Court may consider all "potential remedial options, or combination of options" and choose from "a number of potential remedies [that] are available that can give full relief," without undue interference. *Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1101 (10th Cir. 2003). In this case, however, due process and equal protection also require the measures Plaintiffs request.

Notice: Judicial Defendants object generally to a "notice [that] include[s] an explanation of the specific legal standard for bail decisions," Doc. 428 at 28, but the Court already reasoned that class members are entitled to "written notice of the standards governing the pretrial release decision." Doc. 397 at 59. Plaintiffs therefore request notice stating that either a bond must be

7

found affordable, or detention must be found necessary. *See Martinez v. Clark*, 124 F.4th 775, 768 (9th Cir. 2024) (in immigration context, "due process requires . . . the government to prove dangerousness or risk of flight by clear and convincing evidence . . . to justify the denial of bond" (alterations omitted)); *see also* Doc. No. 443 (Pls.' Reply to Sheriffs' Opp. to Mot. for Injunction) Part II (showing the notice is constitutionally required).

Judicial Defendants also object to preserving bond docket recordings, because due process does not *per se* require recordings. Doc. 428 at 15 n 43. But due process *does* require "contemporaneous records of bond hearings." *Martinez*, 124 F.4th at 786. "Given the substantial individual interest in liberty, the relatively high value of additional safeguards, and the minimal burden on the Government," due process requires "a record . . . of sufficient completeness for adequate and effective appellate review." *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 335 (3d Cir. 2021) (internal quotation marks and alterations omitted) (quoting *Mayer v. Chicago*, 404 U.S. 189, 194 (1971) (requiring the "functional equivalent" of a transcript in criminal trial)); *accord Torres v. Collins* Mo. 220cv26, 2023 WL 6166523, at *10 (E.D. Tenn. Spt. 21, 2023). Judicial Defendants do not dispute that bond docket minutes and order forms routinely fail to capture the legal and factual bases for the court's rulings. *See* Doc. 421 at 16-21. Judicial Defendants, not Plaintiffs, proposed the solution of audio recordings, to be preserved for subsequent transcriptions. *Id*. at 21. Judges are already technologically equipped with portable recording devices. *Id*. But an injunction is needed because recordings are currently not captured unless individual class members affirmatively ask for their own appearances to be put on the record. *See id*; Doc. 428, at 29; Ex. 2 (Ali Second Decl.) ¶5. When recordings are preserved, transcripts are readily obtained, but class members have no way to know that they can or should make a request to preserve, and Public Defenders never make the request on their behalf. Ex. 2

(Ali Second Decl.) ¶¶5, 7. Consequently, as a rule, no constitutionally adequate records are made of bond hearings, although the means of preservation sit ready. Judicial Defendants have identified no cost or logistical barriers to systematically using the available technology to preserve recordings.

Finally, Judicial Defendants object to a requirement that bond hearings be conducted from a single location because virtual hearings do "not create a *per se* constitutional violation." Doc. 428 at 30. But as Judicial Defendants' own cited case law establishes, a video conference may not violate "the defendant's right to be present, *so long as the video conferencing technology provides adequate safeguards*." *Vazquez Diaz v. Commonwealth*, 487 Mass. 336, 341 (2021) (emphasis added). Defendants' set-up does not. *See* Doc. 421 at 5-13. Defendants have had nearly 18 months and thousands of hearings to correct the shortcomings. The judge's physical presence at the hearing will avoid further constitutional injury to class members, and Judicial Defendants raise no practical objection to the proposed remedy.

### IV.  The Presiding Judge Can Implement the Injunction's Requirements

The Presiding Judge complains that she has no authority to implement the injunction, but she does so without reference to its terms. Doc. 428 at 15-16. "The specificity provisions of Rule 65(d) . . . [were] designed to prevent uncertainty [by] those faced with injunctive orders," *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974), and it is important to reference the injunction's terms to evaluate the Presiding Judge's ability to comply. The injunction requires the Presiding Judge to (1) draft and furnish to the Sheriff a written Notice, Doc. 421-1 at 2 ¶ 2; (2) draft an oral advisement and bench card, distribute them among the parties to this lawsuit, and affix them to judicial benches, *id*. at 4-6 ¶¶ 4-7; (3) arrange the bond docket's logistics so that judicial officers do, and witnesses may, appear from the jail, and so that all participants may appear remotely in

9

exigent circumstances, *id*. at 6 ¶¶ 8, 10-11; and (4) provide for audio recordings to be captured and stored in all bond docket proceedings, *id*. at 7 ¶ 12. The Court has repeatedly found the Presiding Judge to have state law authority over such administrative matters. *E.g.*, Doc. 306 at 21. And presiding judges have performed identical or nearly identical tasks throughout the life of this lawsuit. *See e.g.*, Doc. 157-2 (Admin. Order establishing bond docket); Ex. 3 (Mussman Dep. describing creation of bench card) at 116-17; Ex. 4 (bench card); Doc. 428 at 1-4 & related exhibits (describing presiding judge's creation of bond docket, bench cards, order forms, oral advisement, notice forms, and policies for recording and indexing bond docket findings). The Presiding Judge has power and authority to implement Plaintiffs' proposed injunctive relief and has identified no costs to the state of doing so. If circumstances change, and the injunction's terms become unduly burdensome or impossible to implement, Defendants can always petition the Court for a modification. *See Ridley v. Philips Petroleum Co.*, 427 F.2d 19, 23 (10th Cir. 1970). In the meantime, Plaintiffs are entitled to the equitable relief they seek.

## V. Conclusion

Plaintiffs' proposed injunction is "narrowly tailored to remedy the harm[s] shown," and it is within the court's power to grant, because it is not "so out of proportion to the harm as to constitute an abuse of discretion." *Rocky Mntn. Christian Church v. Bd. of Cnty. Cmm'rs*, 613 F.3d 1229, 1239-40 (10th Cir. 2010). The Court must balance Plaintiffs' interests in the requested measures against Defendants' asserted interests, *id*., and while Defendants have denied the need for any relief, they do not identify any practical costs or concerns if Plaintiffs' proposed relief or is granted. Balancing the parties' interests, Plaintiffs' injunction is more than "adequately support[ed]" by "reason[]," and should be granted. *Id*.

Dated: September 16, 2025    Respectfully Submitted,

/s/ Hayley Horowitz
Hayley Horowitz
Phoebe Kasdin
Still She Rises, Inc.
608 E. 46th Street North
Tulsa, OK 74126
hayleyh@stillsherises.org
phoebek@stillsherises.org
918-392-0867

*Attorneys for Plaintiffs*

11

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document and its exhibits were served on September 16, 2025 via the Northern District of Oklahoma CM-ECF system upon all counsel of record.

*/s/ Hayley Horowitz*