4:18-cv-00298-SPF-JFJ
Exhibit 1



March 10, 2025

Hon. Stephen P. Friot
United States District Court Judge
William J. Holloway, Jr. United States Courthouse
200 N.W. 4th Street
Oklahoma City, Oklahoma 73102
*Via E-mail*: lori_gray@okwd.uscourts.gov

**<center>*Re*: Feltz v. Regalado, 18-cv-298</center>**

Your Honor,

At the request of the parties, the Court directed us to advise by today whether we have settled the case or require the Court's intervention. We have not yet reached a settlement. The parties submit this letter stating their respective positions for how they would like the case to proceed. Plaintiffs request a May 15, 2025 deadline for Plaintiffs to submit briefs asking the Court to address any aspects of relief that have not been resolved as of that date. Defendants do not object to this request.

<u>Plaintiffs' Position</u>

Plaintiffs begin by emphasizing that all parties' counsel have worked, and continue to work, productively and in good faith, particularly over the last two months. Plaintiffs believe that after several months of hard work, the parties reached mutual agreement as to the principles of any settlement; since the start of this year, we have focused on logistical changes to implement those principles.

However, from Plaintiffs' perspective, this significant progress has not yet meaningfully changed how the bond docket is carried out day-to-day, in part because the parties have not reached agreement on all changes that Plaintiffs believe are necessary, and in part because actors on the ground have not yet had much time to apply the changes that have been agreed to. A May 15 briefing deadline will provide the parties with both necessary and sufficient time to finish implementing the changes already agreed to, and confirm whether or not we can agree on all outstanding issues.

The parties have made varying degrees of progress in four different areas of concern:

1.    *Timeliness of hearings.*

The Tulsa District Court has fully resolved one of Plaintiffs' major timeliness concerns by conducting bond hearings every day, regardless of weekends and holidays, to ensure prompt appearance for every arrestee. Defendants have maintained this schedule consistently, even throughout days last month when the courthouse was otherwise closed due to extreme weather.

Plaintiffs remain concerned, however, about the frequency with which arrestees are deemed to have waived their appearance at the hearing, or the hearing altogether, based on statements by jail staff that the arrestees could not be brought to the docket or chose not to attend. Counsel for Plaintiffs and the Judicial Defendants have resolved this matter in principle, agreeing that any absent arrestee's hearing will be scheduled for the next day's docket, unless a defense attorney represents to the court that they have spoken with the arrestee, and the arrestee has elected to waive. That agreement, however, has not been reliably implemented. For example, at the bond docket on Friday, March 7, 2025, Plaintiffs' counsel observed the Court proceed with four bond hearings in absentia without the arrestees' consent. Plaintiffs are optimistic that this matter can be fully resolved without this Court's intervention before the requested briefing deadline, given counsel have reached agreement.

2.    *Notice of Rights and Requisite Findings*

In an effort to address arrestees' right to notice, and to promote adequate findings before anyone is detained on unaffordable bond, the parties have agreed to employ four tools:

*First*, a written advisement to be distributed to arrestees as part of the jail intake process that describes the bond docket's purpose, and various procedural protections such as the right to counsel, the right to see and hear evidence, and the legal standards that will be applied.

*Second*, a bench card that reminds the bond docket judges of various procedural requirements for bond docket, such as the right to counsel, the right to see and hear evidence, and the findings that must be made prerequisite to a person's detention on bond.

*Third*, an oral advisement of rights to be delivered by the bond docket judge to provide similar information as is included on the written notice distributed at the jail.

*Fourth*, a revised bond docket order form that invites the judge to identify the documents and testimony he or she has reviewed; find whether the arrestee is a flight or safety risk; if money bond is imposed, find whether the bond is affordable and, if not, whether alternative conditions of release have been considered and found inadequate; and identify the evidence on which each finding is based.

The parties have made tremendous progress on these forms, working through many versions as we resolve differences on substance, phrasing, and format. A form of each document has been implemented at the court and in the jail over the course of the last two weeks. Plaintiffs have two main outstanding concerns in this area.

First, the written and oral notices of rights, as currently drafted, are incomplete. To provide one example: they do not advise arrestees that the judge must find safety or flight risks, and consider affordability and alternatives, if imposing monetary bond. In addition, at the bond docket proceedings that Plaintiffs' counsel observed over the past week, the judge has not delivered the oral advisement. Plaintiffs are guardedly hopeful that between now and May 15, we will be able to resolve this issue, because Plaintiffs understand the state judges' concerns to be about phrasing and presentation rather than substance.

Second, the bench card and findings card have not prompted a change in the findings made and recorded by bond docket judges before imposing unaffordable bail. For example, on Friday, March 7, 2025, Plaintiffs' counsel observed the bond docket judge impose monetary bonds in twenty-one cases, without, in any of them, finding whether or why the person was a flight or safety risk; finding that the person could pay the amount imposed; or stating that she had considered other options and found them to be inadequate or why.

One arrestee's case is illustrative, a person who was detained on possession of a pellet or bb gun after conviction of a felony. The judge recited the charges of arrest and the preset bond amount, made a finding of probable cause to detain, and invited the attorneys present to speak. After hearing their arguments, she noted that the arrestee was a retired member of the national guard and stated that a bb gun qualifies as a firearm for purposes of the possession statute. She asked if the arrestee knew anyone who could help him make a $2500 bond, and he replied that he did not. The judge stated that ability to pay is only one factor and noted that she also weighs criminal history. She stated that weighing all the factors together, she was ordering the arrestee to post a $2500 bond and surrender all firearms if he is released from jail.

Plaintiffs' counsel takes no position on whether this bond was appropriate, whether the arrestee presented a danger to the community or risk of flight, or whether the surrender of firearms alone or in combination with other restrictions or a bond he could afford would have been sufficient to address any risk. Instead, Plaintiffs offer this case as one of nearly two dozen on the March 7 docket in which the court imposed a monetary bond without either finding it affordable or articulating grounds for detention. Plaintiffs' counsel has not seen the order form completed in this arrestee's case, but have seen forms completed on other, recent dockets. Counsel notes that judges routinely skip over sections and do not make the findings the forms call for.

Plaintiffs are mindful that the order forms, notices, and bench cards are new. The actors on the ground tasked with carrying them out have barely had an opportunity to familiarize themselves with the materials. Plaintiffs have asked for a May 15 briefing date to allow enough time for the parties to make a good faith effort to use the tools we are

negotiating and determine what changes need to be made to effectuate the rights identified in this Court's summary judgment order.

### 3.    *Access to Counsel and to Evidence*

In this area, too, the parties have agreed that arrestees have the right to see and hear all evidence against them and to present their own, and to have unfettered access to counsel during their bond hearings. However, no meaningful progress has been made on this front. Currently, the judge attends bond docket from the courthouse or, on some weekends and holidays, from home, while arrestees congregate in a courtroom at the jail. The parties have begun, but not yet completed, discussion about the logistical possibility of the judge presiding in person at the jail. Prior to today, Plaintiffs had not had an opportunity to see the logistical details presented by the Sheriff to the Court, below. Plaintiffs appreciate the information and look forward to working with all parties between now and May 15 to understand and work through all options and considerations before turning to the Court for possible intervention.

This option would resolve multiple concerns. First, the court and jail have not yet figured out a mechanism for delivering documentary evidence to the arrestees, including items that the court has in advance of the hearing, such as arrest reports and criminal history, and materials that are offered to the judge during the course of the hearing, such as probable cause affidavit supplements. Second, audio and video problems continue to plague the hearings. At the March 7, 2025 docket, Plaintiff's counsel observed three cases in which portions of the assistant district attorney's argument were not audible via the video feed because of her microphone's position, and one conversation with a witness in the courtroom during which the witness could be neither seen nor heard. In addition, the television monitor at the jail is split between views of the judge, the two counsel tables, and any spectators attending remotely, making it extremely difficult, if not impossible, for the arrestee to see and follow who is speaking when. Additionally, and most importantly, conducting the bond docket virtually impedes access to counsel. The current set up forces defense attorneys to choose between attending the docket from the courtroom, where they cannot communicate with their clients, or the jail, where they will suffer from the same lack of access to relevant information that their clients now experience.

Given the lack of progress on these problems, Plaintiffs are not optimistic that they can be solved if the docket continues to proceed from two locations. However, after failing to find other solutions, the parties have only begun in the last several weeks to explore the possibility of conducting the hearing fully at the jail and to understand all related logistical considerations. Plaintiffs are confident that setting a May 15 deadline will allow the parties to complete that analysis.

### 4.    *Transcripts or Recordings*

The parties have not yet figured out procedures for either transcribing or recording bond hearings. Plaintiffs understand that both methods would require additional resources that are not presently available but have not gained meaningful insight into the nature of those resources or the options for obtaining them. Plaintiffs recognize that defense counsel

also do not have access to that information without the assistance of other state agencies. Plaintiffs hope that we can make progress on that matter before the May 15 deadline we have requested, and are prepared either to resolve that issue among the parties if possible or present it to the Court if not.

<u>Judicial Defendants' Position</u>

Judicial Defendants agree that the timeliness of the bond docket has largely been remedied – the dockets are happening daily. We are still working through the implementation of the waiver or passing of arrestees that do not appear on the scheduled docket for whatever reason.
Judicial Defendants agree that there are four documents in discussion, the scope and final language for each is still being negotiated. Judicial Defendants disagree with Plaintiffs' framing of the completeness of the forms and the required information. As to Plaintiffs' contention that implementing the new forms has not prompted adequate in findings, it appears to be a disagreement on the outcome of the decisions. Judicial Defendants acknowledge that some of the form orders have been incomplete, though we hope that as the judges get more comfortable with the new form orders all the necessary information will be reflected on the form order.

The Public Defenders assigned to the bond docket are receiving the packet of information at the same time the judges and the DA's receive it. If the NCIC becomes relevant to the discussion, it is shared with the PD for review. The adequacy of the information shared with the PD's versus the arrestees continues to be in dispute and may be an issue for briefing as the parties are not aligned on the required scope of relief for this issue.

The Judicial Defendants are working toward a robust written form order for use while the relevant non-party state agencies explore the infrastructure needs for recording, indexing, and storage system which would comply with current state law. We expect to have some clarity on the costs and feasibility of such a system soon.

<u>Defendant Sheriff Regalado's Position</u>

The Tulsa County Sheriff's Office provides 24/7/365 access to defense counsel wanting to visit with their client at the Tulsa County Jail.

Within the past few weeks, employees of the Sheriff's Office have been handing out to each inmate booked into the jail the Notice of Rights that was agreed to by the parties.
The Sheriff advises that the bond docket could be conducted at the jail, and provides the following rough outline of what you can expect by conducting bond docket in the jail. A diagram is available to the parties showing bond docket room. On the south side of the room, just to the right of the entryway, is the Judge's bench.

*Judge's Bench*
- Room for Judge in center chair, clerk on one side, bailiff on other side
- Computer, large screen monitor, printer, land line telephone, video camera aimed at the podium

- Ethernet land line connection

*Bond Docket Room*
- Entry to the left of Judge's Bench, and back entrance in Northwest corner
- 76 chairs, back row for females, in front of back row on East side is a long narrow table where Family and Children's Services and Women's Justice Team usually sit
- Podium in front of Judge's Bench facing forward
- Chairs arranged on the east and west sides with a center aisle beginning ten feet or so behind the podium
- Open seven days a week, but used at other times for various dockets
- Can accommodate 1 judge, 4 judicial assistants, 2 court services personnel, ADA, PD, and 5-6 detention officers (and F&CS, WJT mentioned above)

*Judicial Staff, ADAs and PDs*
- Requires each person complete 16 to 40 hours of annual American Correctional Association (ACA) training covering such matters as suicide prevention, con games, contraband, etc.
- Park in front of David L. Moss (no charge)
- Enter lobby and be escorted to Bond Docket Room; once ACA training is complete, you can go to from Bond Docket Room unescorted if you like
- Need credentials every time you arrive (Tulsa County ID badge)
- May execute an Electronics Agreement Form with the Jail in which you agree that the electronics you take to the Bond Docket Room will be used for personal business only (covers I-phone, laptops, I-watch, Apple pads, etc.)
- No opaque purses permitted; use of clear bags is permitted; may bring medicine, snacks and water bottles, but no cans, metal tumblers or glass
- Wireless internet connection available throughout Jail

*TCSO Staff*
- Will require the hiring of at least 3 additional detention officers with tasers

*Inmates*
- No handcuffs or shackles, except for those inmates who come from restrictive housing who are both handcuffed and shackled (½ dozen or so every day)

*Witnesses*
- Present a range of problems, including need for background check, gang affiliation, potential assaults, unpredictability, contraband, message transmission, fentanyl, domestic violence victims, accomplices, etc.
- Therefore, witnesses can enter the lobby and will be escorted to the upstairs visitation area where the witness can testify in private by video link to the courtroom
- After giving their testimony, the witness can walk down the stairs back into the DLM lobby and out the front door (no contact or off the record communication)

Respectfully submitted,

/s/ Hayley Horowitz
Hayley Horowitz
Phoebe Kasdin
Still She Rises, Inc.
608 E. 46th Street North
Tulsa, OK 74126
hayleyh@stillsherises.org
phoebek@stillsherises.org
*Attorneys for Plaintiffs*

/s/ Stefanie E. Lawson
Stefanie E. Lawson
Erin M. Moore
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
stefanie.lawson@oag.ok.gov
erin.moore@oag.ok.gov
*Attorneys for Defendants State Judges*

/s/ Douglas A. Wilson
Douglas A. Wilson
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 933
Tulsa, OK 74119
douglas.wilson@tulsacounty.org
(918) 596-8795
*Attorney for Defendant Vic Regalado,*
*Tulsa County Sheriff*

cc: All counsel of record, *via email*