# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD FELTZ and ASHTON DENNIS, on behalf of themselves and all other similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>VIC REGALADO, *et al.*,<br><br>*Defendants*. | Case No. 18-CV-0298-SPF-JFJ |

# PLAINTIFFS' BRIEF IN FURTHER SUPPORT OF INJUNCTIVE RELIEF AND IN REPLY TO SHERIFF'S OPPOSITION

# **TABLE OF AUTHORITIES**

**Cases**

*Armstrong v. Manzo*, 380 U.S. 545 (1965) .................................................................................. 4

*Bearden v. Georgia*, 461 U.S. 660 (1983) ................................................................................... 5

*Hartman v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114 (9th Cir. 2013) ................................. 10

*Jones v. Flowers*, 547 U.S. 220 (2006) ....................................................................................... 3

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1979) .................................................. 3

*Mullane v. Central Hannover Bank & Trust Co.* U.S. 306 (1950) ........................................... 2, 4

*Prairie Bd. Potawatomi Nation v. Wagnon*, 476 F.3d 818 (10th Cir. 2007) .............................. 10

*Rocky Mntn. Christian Church v. Board of County Com'rs*, 614 F.3d 1229 (10th Cir. 2010) ....... 10

*Vitek v. Jones*, 445 U.S. 480 (1980) ............................................................................................ 5

**Statutes**

19 O.S. § 516(B) .......................................................................................................................... 6

While Plaintiffs and the Sheriff agree on certain of the proposed injunctions terms, *see infra* Part I, the Sheriff objects to many of its provisions, in large part because he believes the Public Defender, rather Defendants, should be held responsible for remedying Plaintiffs' injuries. Even with the Sheriff's account of alleged flaws in the Public Defender's performance, however, the undisputed evidentiary record establishes that Plaintiffs suffer Fourteenth Amendment injuries, and that the Sheriff has the power to remedy those injuries by providing class members with improved notice and implementing certain changes to the bond docket's set-up, at little to no cost. The Sheriff should be ordered to implement these measures to protect class members' constitutional interests.

I. **Plaintiffs' Proposed Method for Distributing Written Notice Is Low-Cost and Likely to Be Effective**

The parties agree that the Sheriff should distribute a written notice to all pre-arraignment arrestees on their booking into jail, Doc. 430 at 3 & 4 n.3; Exs. 1 & 2 at 1 ¶ 1(a), and that the distribution will occur, to the best of jail staff's ability, when booking officers hand out other information relating to class members' bail. *Id*. at 3-4; Exs. 1 & 2 at 1 ¶ 1(b).[1] But the Sheriff does not agree to the other terms of distribution requested by Plaintiffs. He does not want to provide class members with the dates and times of their scheduled bond hearings; and he does not want to orally state that the hearings are to decide whether class members can be released, or that the written notice contains more information about the hearings. *See* Exs. 1 & 2 at 1 ¶ 1(b). Booking officers have historically, but unofficially and inconsistently, provided this type of

---

[1] The Sheriff's agreement was predicated on edits to Plaintiffs' proposed language. Plaintiffs accept the Sheriff's edits and have revised their proposed injunction accordingly. *See* Exs. 1 & 2 at 1 ¶ 1(b). Attached as Exhibit 1 is a copy of the revised injunction. Exhibit 2 is also the revised injunction, but it shows track changes so that the court can readily identify the revisions. These documents also have different language bolded and un-boded than appeared in the version originally submitted because Defendants' briefing revealed different points of agreement and disagreement than Plaintiffs previously understood.

1

information to class members. *See* Ex. 3 (Anita Wright Dep.) at 119:25-121:1. The Sheriff does not explain his reluctance to provide it systematically beyond general objections that requiring him to do so is "micromanaging," unnecessary, and not narrowly tailored, and that he "is not an agent for the Public Defender's Office." Doc. 430 at 6.

    The Sheriff is not an agent of the Public Defender, but he is an agent of the state in this matter, Doc. 306 at 32 (Order finding that the Sheriff, as a State Actor, is a proper defendant), and it is the state's obligation, when depriving class members of their liberty, to comply with due process requirements, including provision of adequate notice. Doc. 397 at 59-60. Class members entering the jail are in the Sheriff's custody at all times between booking and their bond docket appearances, and they have little time and opportunity during that period to learn about the hearing, decide whether to appear, gather evidence, summon witnesses, and prepare arguments, all without access to an attorney. Without adequate notice from the Sheriff, in whose custody they are trapped, they will have no way to do any of those things.

    Handing someone written notice satisfies due process in many other contexts, but notice that may be sufficient in one context is insufficient in another where it is not "reinforced by steps likely to attract the parties' attention to the proceeding." *Mullane v. Central Hannover Bank & Trust Co.*, 339 U.S. 306, 316 (1950). The record shows that handing class members a notice form among other papers, without more, does not reliably convey to them the information on the paper in time for them to make use of it. *See* 421-7 (Smith Decl.) ¶¶ 7-8 (also at Doc.427-2. If the Sheriff *wanted* arrestees to read the notice right away, he would draw their attention to it, flagging its importance and time sensitivity. And indeed, "when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the [person] might

2

reasonably adopt to accomplish it." *Jones v. Flowers*, 547 U.S. 220, 229 (2006) (internal quotation marks and citations omitted).

Telling class members when their bond hearing will occur, that their bond hearing will determine whether they can be released, and that the notice contains more information is a well-designed approach "to apprise the affected individual of, and permit adequate preparation for, an impending hearing," *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 15 (1979). It is also an approach that will cost the Sheriff little. "[A]ssessing the adequacy of a particular form of notice requires balancing the interests of the State against the individual interest sought to be protected by the Fourteenth Amendment." *Jones*, 547 U.S. at 229. That balancing lands decisively in favor of Plaintiffs' requested mechanism for distributing notice at the jail.

## II. The Substance of Plaintiffs' Proposed Notice Is Necessary to Afford Class Members Meaningful Bond Hearings

The Sheriff agrees that written notice should advise class members that they will have a hearing to determine whether they will stay in jail or be released, *see* Ex. 1 at 1-2 ¶ 2 & 2(a), but he objects to conveying any additional information.[2] Doc. 430 at 7-8. The Sheriff does not dispute the accuracy of the Plaintiffs' additional language but says it is unnecessary. *Id*. This blanket dismissal is misplaced. The "content of [adequate] notice" is a fact-intensive and "intensely practical matter," and "will depend on appropriate accommodation of the competing interests involved." *Goss v. Lopez*, 419 U.S. 565, 578-79 (1975). The Sheriff does not suggest he

---

[2] When they filed their motion, Plaintiffs understood that the Sheriff had fewer objections to the scope of Plaintiffs' requested notice, because some of the information he now opposes is included in the notice the Sheriff already distributes, including information about the right to an attorney, the right to present evidence, and the types of facts that will matter at the bail hearing. *Compare* Ex. 1 at 2 ¶ 2(b), (c) *with* Doc. 430 at Ex. C. Because of this, Plaintiffs had originally bolded paragraphs 2(b) and (c) of their proposed injunction to indicate the Defendants' lack of objection. *See* Dkt. No. 461-1 at 2 ¶¶ 2(b), (c). Those paragraphs have been un-bolded in the copies attached to this brief to indicate the Sheriff's objection. *See* Exs. 1 & 2 ¶¶ 2(b), (c).

3

has an institutional interest in the scope of the notice, beyond the public interest in clear language. *See* Doc. 430 at 7-8. More or less information on the paper he hands out costs the Sheriff nothing. Plaintiffs' requested information should therefore be included if it serves not only "to apprise interested parties of the pendency of the [hearing, but to] afford them an opportunity to present their objections" to continued detention. *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965).

Each item of notice that Plaintiffs request is necessary for class members to have meaningful hearings. Knowing that they will have an attorney at the hearing is important for class members who must "choose . . . whether to appear or default, acquiesce or contest," *Mullane*, 339 U.S. at 314. For class members whose lawyers do not come to the jail at all, or do not meet with their clients before the hearing begins, *see* Doc. 430, Ex. B ¶¶ 12-13, 25, notice that they can ask to speak privately with the attorney to ask questions or share information is vital.

It is also crucial for class members to know in advance what the applicable legal standards and relevant factors will be, Ex. 1 at 2-3 ¶¶ 2(c), (f), and to learn as soon as possible that they have the right to present evidence and witnesses, and the mechanisms to do so, *id*. at 2 ¶¶ 2(c), (d). "Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure." *Lankford v. Idaho*, 500 U.S. 110, 126 (1991). It "is essential to afford the" person whose liberty is at stake "an opportunity to challenge the contemplated action and to understand the nature of what is happening to him." *Vitek v. Jones*, 445 U.S. 480, 496 (1980); *see also Lankford*, 500 U.S. at 120, 122 (due process requires "adequate notice of the critical issue that the judge [is] actually" contemplating, to allow for the advancement of relevant information and arguments). Class members cannot adequately challenge their detention on

4

unaffordable money bail without knowing the legal standard that applies to that decision: that they present so great a risk of flight or dangerousness that no less restrictive condition of release can reasonably assure community safety or court appearance. *See* Doc.. 421-1 at ¶ 3(e), (f); *see also Bearden v. Georgia*, 461 U.S. 660, 672 (1983) (explaining that detention due to inability to pay is permissible "[o]nly if the sentencing court determines that alternatives to imprisonment are not adequate in a particular situation to meet the State's interest[s]").

Here, the need to provide class members with advance notice of these elements is especially important, because most relevant "positive information—the facts which might provide a sound basis for release conditions that don't amount to a de facto order of detention—will mostly be known only to the arrestee." Doc. 397 (Sum. J. Order) at 54. That "counsel at bond docket proceedings knows the governing law" is inadequate, Doc. 430 at 6-7, because by the time class members arrive for the docket, it will be too late to muster any documentary evidence or witnesses who may help. Class members are entitled to know that they have a right to release on unaffordable bail if the state does not establish that keeping them in jail is the only way to ensure the community's safety or their appearance in court. They are also entitled to know what kinds of information the judge will consider in making the determination. Notice of these items is necessary for Plaintiffs to participate in a meaningful hearing. And including these items on the paper he hands out costs the Sheriff nothing.

The Sheriff's concern that Plaintiffs' proposed notice is too long and dense should not prevent the Court from granting relief. The notice that is eventually distributed need not incorporate the injunction's language word-for-word. In negotiating the notice that Defendants began to distribute in March, the parties cooperatively and successfully boiled complex information into simple language and a readable format. But they disagreed about the scope of

5

information that needed to be conveyed. The injunction gives the Presiding judge 30 days to prepare and distribute among the parties proposed "plain and simple language" for the notice, and it gives the parties another week before the Sheriff distributes the notice to class members. Ex. 1 at 1 ¶ 2 & 3 ¶ 3. Plaintiffs are confident that, in that time, the parties will cooperate to design a notice that conveys the necessary language in digestible form.

### III. The Sheriff Can and Should Be Required to Implement Technological and Logistical Measures to Be Carried Out Inside the Jail

The Sheriff does not object to Plaintiffs' proposals for updating the oral advisement or the bench card, Ex. 1 at 3-5 ¶¶ 4, 6, but he opposes an order requiring him to place the new materials on the judges' bench. Doc. 430 at 8-9. He similarly opposes an order requiring him to provide technical support as needed to create audio records of bond hearings, Ex. 1 at 8 ¶ 12. Plaintiffs do not dispute that the judges have the assistance of bailiffs and clerks, and the judiciary has its own IT department. However, some of the logistical measures needed to carry out the injunction will have to occur inside the jail, particularly if the Court orders that hearings take place with the judges on site.

The Sheriff administers the jail and has a "statutory duty to 'coordinate and administer courthouse security.'" Doc. 430 at 2 n.2 (quoting 19 O.S. § 516(B)). Even if courthouse employees provide the tape and the manpower for the bench cards, the Sheriff will need to admit them to the premises. The tape recorders that judges use will presumably need to be carried into the jail with the Sheriff's permission. If power sources are required, the Sheriff will need to provide the outlets. The injunction therefore appropriately assigns responsibility jointly to the Presiding Judge and the Sheriff to carry out its logistical obligations.

6

## IV. The Undisputed Evidence Confirms that In-Person Hearings Can Cure Plaintiffs' Constitutional Injuries at de Minimis Cost

The Sheriff's objections to in-person hearings misunderstand Plaintiffs' request and misconstrue the undisputed evidence. The Sheriff has two objections: attendees will not be safe, and Plaintiffs' injuries will not be redressed. Neither objection survives an accurate read of Plaintiffs' requests or the evidentiary record.

### A. The Sheriff's insinuation that bond docket attendees will be physically unsafe in the jail is belied by the record.

The Sheriff professes concern for attendees' safety in the jailhouse courtroom, with a particular focus on witnesses. Doc. 430 at 10-12. But Plaintiffs do not demand that witnesses be admitted to the jailhouse courtroom. They ask for witnesses to be accommodated at the jail and leave to the Defendants' discretion whether to include witnesses "in person in the jailhouse courtroom, or by providing access to a location within the Tulsa County Jail from which the witnesses can appear by audio/video connection." Ex. 1 at 5 ¶ 10.

Plaintiffs did not come up with the idea of witnesses appearing by video from somewhere in the jail; it was proposed by the Sheriff. In a March 10, 2025 letter to the Court, the Sheriff observed that admitting witnesses to the jailhouse courtroom, which is located in a secure portion of the jail, would raise security and logistical concerns, but that witnesses could be accommodated in a public section of the jail: "[W]itnesses can enter the lobby and will be escorted to the upstairs visitation area where the witnesses can testify in private by video link to the courtroom. After giving their testimony, the witness can walk down the stairs back into the DLM lobby and out of the front door (no contact or off the record communication [with arrestees])." Doc. 442-1 at 6. In his opposition brief, the Sheriff does not raise any objection to implementing this plan, which balances the jail's security interests with the class members'

7

constitutional interests. Accommodating witnesses on site allows defense attorneys, who can move between secured and unsecured portions of the jail, to confer with their clients and interview witnesses and so prepare a meaningful case against unnecessary detention.

The Sheriff's security concerns about other bond docket attendees is more amorphous and undermined by all available concrete evidence. The Sheriff muses that placing judges and prosecutors in the same room as criminal defendants "increases the risk of harm to attendees."[3] Doc. 430 at 12. The concern is theoretical, resting on an assistant district attorney's vague claims about "fights that break out during the bond docket within the Jail courtroom" and "times when arrestees have made negative comments to Judges and Assistant District Attorneys during bond docket." *Id*. The ADA provides no information about the nature or frequency of these alleged fights, or any indication about whether she has personally witnessed any fights.[4]

Testimony presented by Plaintiffs' witness confirms that fights in the courtroom, to the extent they have occurred, are extraordinarily rare. Elshaddai Ali, a paralegal for Plaintiffs' counsel, has observed bond docket proceedings on 40 occasions since March, usually virtually and once from inside the jailhouse court. She has never witnessed a physical altercation, seen or heard anything that made her feel unsafe, or perceived that any other attendees felt unsafe. Doc. 442-2 (Ali Second Decl.) ¶¶ 4, 8-9. The people responsible for evaluating and ensuring jail safety are the Sheriff's employees, but he offers no testimony or documents from them evidencing concrete concerns about judges' safety in the jail.

---

[3] Nothing in the proposed injunction requires prosecutors to attend the docket in person at the jail. The injunction requires the court to maintain a link for the public, including witnesses, to attend virtually. Ex. 1 at 5-6 ¶10. If prosecutors feel unsafe in the jail and believe the audio-video set up allows for unimpaired remote participation, *see* Doc. 430 at Ex. B (A.D.A. Haddock Aff.) ¶¶ 7-9, they may continue to appear by video.

[4] Several portions of the witness's testimony appear not to be based in personal knowledge *E.g.* Doc. 430 at Ex. B ¶¶ 13-15, 31-32

In any event, the Sheriff assures the Court that he can provide sufficient security for in-person jailhouse hearings. Doc. 430 at 10. Despite a passing and unsubstantiated reference in the Sheriff's brief to a need for "additional detention officers with tasers," *id.*, no evidence produced in discovery or in support of the Sheriff's brief shows that judges' presence in the jail will disrupt jail operations or require additional expenditures.

### B. In-Person Hearings Will Remedy Many of Class Members' Constitutional Injuries

The Sheriff argues that Defendants should not be subjected to injunctive relief because the Public Defender could adopt strategies to overcome the constitutional infirmities in Defendants' remote set-up. For example, the Sheriff suggests, the Public Defender might assign two defense lawyers to every docket, with one in the courthouse and one in the jail, communicating privately by phone and emailing documents to each other. Doc. 430 at 10, 18-19. Whether the Public Defender has a legal obligation to adopt such extraordinary measures to facilitate their clients' simultaneous access to evidence and confidential attorney communications is not before the Court. Plaintiffs have sued the Judicial Defendants and the Sheriff, and they are entitled to equitable relief against these government officials who "clearly have assisted or currently assist in . . . giving effect" to the policies and practices that cause class members' ongoing harm, and who have the power to implement remedial measures. *Prairie Bd. Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007); *see also Hartman v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (plaintiffs entitled to equitable relief against officials "who can appropriately respond" to injunction).

This Court can order the Presiding Judge and Sheriff to take narrow, concrete steps to provide class members with due process-compliant hearings. Plaintiffs' interests in being able to hear and see the judge, access documentary evidence, and communicate with their attorneys

9

without hampering their attorneys' ability to argue on their behalf far outweigh the de minimis costs Defendants will incur if the injunction is granted. Plaintiffs' proposed injunction is manifestly reasonable and should be imposed. *See Rocky Mntn. Christian Church v. Board of County Com'rs*, 614 F.3d 1229, 1240 (10th Cir. 2010) (court has power to grant injunction where legal violation has occurred, and plaintiffs' interests in relief outweigh costs to defendants).

Dated: September 16, 2025

Respectfully Submitted,

/s/ Hayley Horowitz
Hayley Horowitz
Phoebe Kasdin
Still She Rises, Inc.
608 E. 46th Street North
Tulsa, OK 74126
hayleyh@stillsherises.org
phoebek@stillsherises.org
918-392-0867

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document and its exhibits were served on September 16, 2025 via the Northern District of Oklahoma CM-ECF system upon all counsel of record.

*/s/ Hayley Horowitz*