# United States District Court
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD FELTZ and ASHTON LEE DENNIS, on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs, )<br>vs. )<br><br>VIC REGALADO, in his official capacity as Tulsa County Sheriff, to the extent he is named as a state actor (not as a county actor);[1] TAMMY BRUCE, STEPHEN CLARK, JULIE DOSS, THERESA DREILING, OWEN EVANS, MARY ANN GODSBY, DAVID GUTEN, BILL HIDDLE, ANN KEELE, JAMES KEELEY, DEBORAH LUDI LEITCH, ANTHONY J. MILLER, KEVIN C. MORRISON, KIRSTEN PACE, WILMA PALMER, APRIL SEIBERT, RODNEY B. SPARKMAN, and TANYA WILSON, in their official capacities as Tulsa County Special Judges;[2] and DAWN MOODY, in her official capacity as Presiding Tulsa County District Court Judge,[3]<br><br>Defendants. ) | Case No. 18-cv-298-SPF-JFJ |

## SHERIFF VIC REGALADO'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE COURT'S FINAL ORDER AND JUDGMENT (DOC. #455)

---

[1] *See* Doc. #306, at 31-32.

[2] The District Court's current directory identifies the following individuals as Special Judges: Kasey Baldwin, Tammy Bruce, Janay Clougherty, Gary Davis, Julie Doss, Melissa East, Mike Esmond, Mary Ann Godsby, Travis Horton, Kevin Keller, Greg Lavender, Deborrah Ludi Leitch, J. Anthony Miller, Charles Kevin Morrison, Wilma Palmer, Loretta Radford, April Seibert, Rodney Sparkman, Shannon Taylor, and Tanya Wilson. *See* https://www.oscn.net/courts/tulsa.

[3] David Guten now serves as Tulsa County's Presiding Judge. *Id*.

Defendant Vic Regalado, as a state actor based on his role in carrying out the orders and policies of state-court judges regarding the daily bond docket ("sheriff"),[4] respectfully submits the following Brief in Opposition to Plaintiffs' Motion to Amend the Court's Final Order and Judgment ("Motion"), Doc. #455. It should not be interpreted for or against the Court's Final Order and Judgment; rather, this brief in opposition is aimed solely at *Plaintiffs' proposed modifications*. Defendant Sheriff reserves any right that he may have to address *the Court's* Final Order and Judgment at the proper time.

---

[4] "[T]he complaint indicates that detentions and conditions of release are controlled by policies of the Tulsa judges. … This is appropriate because, under Oklahoma law, it is judges, not sheriffs, who determine policies regarding the bail system. Furthermore, a sheriff who does not comply with judicial policies on this subject may be guilty of a felony and removed from office. Thus, the sheriff has no discretion … whether to carry out the directives of the Tulsa judges concerning detention and release of arrestees. The sheriff has not, in any meaningful sense, set "a policy" of complying with the Tulsa judges' directives. Rather, compliance is required by law. … Here, it is the judges' policies, rather than the sheriff's policy of compliance, that are the moving force behind the conduct challenged in this action. The claims alleged against the sheriff named as a county actor fail because the complaint identifies no legally sufficient policy or custom as to which the sheriff, as the source of the allegedly unconstitutional acts of confinement challenged in this action, is the moving force. To the extent the sheriff is named as a county actor he is entitled to dismissal, with prejudice." Rule 12 Order, at 17-19, Doc. #306. The Court retained the sheriff as a defendant as a state actor under the doctrine of *Ex Parte Young*. *See* SJ Order, at 27, Doc. #397. The Court has variously phrased the sheriff's role as state actor: "*based on his role in carrying out the orders and procedures of state-court judges*," Rule 12 Order, at 20, Doc. #306; "*based on his role in carrying out the orders and policies of state-court judges regarding the pre-trial detention procedures challenged in this action*," *id.*; "[sheriff remains a defendant] as a state actor, i.e., *as a person who carries out the allegedly unconstitutional policies and directives of the Tulsa judges.*" *Id.* at 31.

I.

<u>INTRODUCTION</u>

The Court's Injunction instructs the sheriff that he cannot commit [the prohibited act][5] *unless* the special judge[6] has followed [the required judicial procedure].[7] The Plaintiffs' proposed modification changes, obfuscates, and scrambles the Court's Injunction by imposing policymaking requirements on the sheriff, and "deeming" that the sheriff commits [the prohibited act] if he fails to

---

[5] The Court's Injunction prohibits the sheriff "from detaining, or ordering or facilitating the detention of, class members (including individuals arrested on warrants) due to inability to satisfy court-imposed financial requirements …" Final Order, at 5, Doc. #448. This is referred to herein as "the prohibited act."

[6] "The evidence shows that arrestees appear before special judges who determine matters related to their detention and conditions of release. … [The] special judges [have] authority and control over the way they conduct the pre-trial detention matters that come before them. To be sure, their control is a shared control in the sense that it is limited by law, by the presiding judge's actions in his supervisory capacity (such as the creation of the bond docket), and by local court rules (such as CR2). That said, evidence shows, and there is no debate, that the special judges retain significant authority over the way they handle detention proceedings." Rule 12 Order, at 28-29, Doc. #306. "CR 2 makes it clear that 'the conditions of release are within the sole discretion of the trial court [i.e., special judges].'" SJ Order, p. 16, Doc. #397.

[7] Under the Court's Injunction, the sheriff cannot commit the prohibited act "unless a detention hearing is validly waived or there have been express, recorded and reviewable judicial findings, after notice and hearing, (i) that detention is necessary in order to reasonably assure the safety of the community or to reasonably assure the arrestee's appearance as required, and (ii) that alternative conditions would be insufficient to reasonably assure the safety of the community or to reasonably assure the arrestee's appearance as required." Final Order, at 5, Doc. #448. This is referred to as "the required judicial procedure."

[implement protocols][8] necessary to ensure [the prohibited act] does not occur unless the special judge has followed [the required judicial procedure]. *See* Exhibit A to Motion, at 5, Doc. #455-1.

Plaintiffs' proposed modification should be denied for imposing policymaking on a subordinate, changing the nature of the Court's Injunction from prohibitory to requiring unspecified policymaking, imposing an unworkable absolute guarantee, violating Rule 65(d)'s limitations on the scope of an injunction, and for being outside the proper scope of a Rule 59(e) motion. With respect to the Court's Declaratory Judgment, the Court has already explained why it does not include the "opportunity to communicate with counsel before hearings" portion of Plaintiffs' proposed amendment (¶ 9).[9] *Id.* at 4-5.

## II.
## STANDARD OF REVIEW

A Rule 59(e) motion to amend judgment may be granted when the movant presents one of the following circumstances: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to

---

[8] "provide and maintain the infrastructure, policies, and procedures." Motion, at 5, Doc. #455.

[9] "Further comment … on the subject of access to arrestees by defense counsel is not necessary because it now appears that counsel have unimpeded access to arrestees for the purpose of preparing for the bond docket." MFO, at 10, Doc. #447.

correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted). Plaintiffs' proposed modification is not based on a change in the law or on new evidence.

A motion to reconsider "is not appropriate to revisit issues already addressed or [to] advance arguments that could have been raised in prior briefing." *Ferluga v. Eickhoff*, 236 F.R.D. 546, 549 (D. Kan. 2006) citing *Servants of the Paraclete*, 204 F.3d at 1012. However, it may be used to bring to the Court's attention that it has misinterpreted "the facts, a party's position, or the controlling law." *Servants of the Paraclete,* 204 F.3d at 1012.

Regarding the Injunction that would result from Plaintiffs' proposed modifications, Rule 65(d)(1) states that "[e]very order granting an injunction … must:

> (A) state the reasons why it issued;
>
> (B) state its terms specifically; and
>
> (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."

Fed.R.Civ.P. 65(d)(1). "[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."

*Schmidt v. Lessard*, 414 U.S. 473, 475 (1974) citing *International Longshoremen's Assn. v. Philadelphia Marine Trade Assn.*, 389 U.S. 64, 74-76 (1967). *See also* 11A Wright & Miller, *Federal Practice and Procedure* § 2955 (3d ed. 2025). "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt,* 414 U.S. at 475.

### III.
### WHAT THIS CASE DOES NOT INVOLVE

It is as important to understand what this case does not involve as it is to understand what is involved. This case is not a root-and-branch attack on the secured bail system. In that vein, plaintiffs do not claim that bond schedules are inherently unconstitutional. Thus, plaintiffs explain that their due process claim, "described with specificity, is that people may not be subjected to de facto pretrial detention orders without the government establishing that their detention is necessary, regardless of whether reasonable bail, unreasonable bail, or no bail is set." Otherwise stated, plaintiffs point out that they "do not seek to have their bail reduced, or to have this Court order that any bail amount imposed be affordable."

Nor do plaintiffs assert that Tulsa County's CR 2, as such, is unconstitutional.

Finally, of utmost importance is the fact that plaintiffs do not seek (and the court assuredly will not grant) (i) an injunction against state criminal prosecutions, or (ii) relief which would facilitate the pretrial release of arrestees who pose a flight risk or a danger to the community.[10]

Plaintiffs do not challenge any constitutional provision or state statute as being unconstitutional. *See* Second Amended Complaint ("SAC"), Doc. #259.

Plaintiffs do not challenge any local court rule or administrative order as being unconstitutional. *See* SAC, Doc. #259; SJ Order, p. 23, Doc. #397.

Plaintiffs do not challenge any order, directive, procedure, or policy promulgated by the Presiding Judge as being unconstitutional. *See* SAC, Doc. #259; Rule 12 Order, Doc. #306; SJ Order, Doc. #397.

Orders, directives, procedures, and policies promulgated by the county sheriff as policymaker are not at issue. *See* Rule 12 Order, at 17-19, Doc. #306. The county sheriff as a county actor has been dismissed with prejudice. Rule 12 Order, at 31, Doc. #306.

---

[10] The first three paragraphs in this section III are a direct quote (citations omitted) from the Court's Order on Summary Judgment, at 22-23, Doc. #397. Undersigned counsel found this section extremely helpful in focusing on the issues before the Court. It is hoped that its extension in this section of "What This Case Does Not Involve," will likewise prove helpful.

There were no facts established in the summary judgment record concerning the sheriff other than he obeys the mandatory language of Tulsa County rules CR 1 and CR2, with no judicial involvement, involving release of arrestees pursuant to the preset bond schedule. SJ Order, at 8, Doc. #397.

IV.

PLAINTIFFS' PROPOSED CHANGE TO THE COURT'S INJUNCTION IMPOSES POLICYMAKING REQUIREMENTS ON A SUBORDINATE

Plaintiffs propose to modify the Court's Injunction as detailed in the following, red-lined version highlighting their proposed changes:

> The defendants Presiding Judge and Sheriff and all persons within the ambit of Rule 65(d)(2), Fed.R.Civ.P.,[11] are ENJOINED from detaining, or ordering or facilitating the detention of, class members (including individuals arrested on warrants) due to inability to satisfy court-imposed financial requirements unless a detention hearing is validly waived or there have been express, recorded and reviewable judicial findings, after notice and hearing, (i) that detention is necessary in order to reasonably assure the safety of the community or to reasonably assure the arrestee's appearance as required, and (ii) that alternative conditions would be insufficient to reasonably assure the safety of the community or to reasonably assure the arrestee's appearance as required. Defendants will be deemed to facilitate detentions in violation of this Order if they fail to provide and maintain the infrastructure, policies, and procedures necessary to ensure that class members are not detained due to the inability to satisfy court-imposed financial requirements without the findings and procedures set forth in the Declaratory Judgment part of this Order.

Exhibit A to Motion, at 5, Doc. #455-1.

---

[11] Because the Court's Injunction automatically binds the Tulsa Judges, their officers, agents, servants, and employees, and other persons in active concert or participation with them, as long as they receive actual notice of it, *see* Fed.R.Civ.P. 65(d)(2), specifically naming the Sheriff is unnecessary and could be misleading.

Because the sheriff is sued in this case as "a state actor, i.e., as a person who carries out the allegedly unconstitutional policies and directives of the Tulsa judges," Rule 12 Order, at 31, Doc. #306, he cannot be enjoined as a policymaker. Reconfiguring the chain of command between the Tulsa Judges and the sheriff creates "[u]ndue intrusion into the operation of two branches of the government of a state which is a sovereign entity in our federal system." SJ Order, at 25, Doc. #397 (citation and quotation marks omitted). "[This] is not [appropriate]." *Id*. As a policymaker, the sheriff has been dismissed with prejudice. *See* Rule 12 Order, at 31, Doc. #306. The sheriff is a subordinate state actor who carries out the orders of the Tulsa Judges with respect to the daily bond docket.[12] *See* Rule 12 Order, at 17-

---

[12] In the approximate fifteen months that passed between the Court's granting summary judgment in favor of Plaintiffs on their equal protection and procedural due process claims, the parties worked together "on reforms necessary to secure the rights of plaintiffs and class members as adjudicated in the SJ Order ... [which] resulted in several agreed modifications to Tulsa County's handling of detention hearings, with attention also to related matters such as defense counsel's pre-hearing access to arrestees."  MFO, pp. 2, 5, Doc. #447. In addition to arrestees' counsel being given access to the Tulsa County jail "twenty-four (24) hours a day, seven (7) days a week" to "meet with detainees and inmates," *id.* at 9, every arrestee is given sufficient written notice of their detention hearing upon being booked into the jail, *id.* at 10, and no one has ever complained that the sheriff refuses to transfer arrestees to the daily bond docket as ordered by the Court. "A sheriff is an officer of the court, and subject to its orders and directions." *Conner v. Drummond*, 1935 OK 507, ¶ 5, 46 P.2d 447, 448. There have been several changes to the daily bond docket procedures since this Court issued its Final Order Granting Declaratory and Injunctive Relief, Doc. #448, but none of them have been initiated by the sheriff. *See* Affidavit of Peggy Haddock, attached Exhibit A; and Affidavit of Stacie Holloway, ¶ 4, attached Exhibit B.

19, Doc. #306. Not surprisingly, no reasons are articulated in the proposed Injunction explaining why the sheriff is required to promulgate policies governing the daily bond docket.[13] The Injunction cannot change his function under state law from subordinate state actor to policymaker. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) ("final policymaking authority" is a legal issue to be determined by the court based on state and local law).

V.
## PLAINTIFFS' PROPOSED CHANGE TO THE COURT'S INJUNCTION CHANGES THE NATURE OF THE INJUNCTION FROM PROHIBITORY TO REQUIRING UNSPECIFIED POLICYMAKING

Plaintiffs' proposed amendment to the Court's Injunction finds ("deems") the sheriff in contempt if he fails to implement the protocols *necessary to ensure* that the prohibited act does not occur absent the required judicial procedure. Their proposed Injunction rests on the unspoken, untested, unproven assumption that there exists a combination of unidentified protocols – whether infrastructure, policies, or procedures[14] – that can be implemented by the policymaker (*see* last section as to why this cannot be the sheriff) that will automatically result in

_____

[13] It is certainly opportunistic for Plaintiffs to try and goad the sheriff into crafting and enforcing his own *ultra vires* policies governing the court's bond docket; if the deprivation of an arrestee's constitutional rights can be attributed to the sheriff's decision as a final policymaker, then the county might be sued under *Monell* for unlimited monetary damages plus attorneys' fees.

[14] All three terms (infrastructure, policies, and procedures) lack objective content and are undefined in the Plaintiffs' proposed Injunction. *See* Doc. #455-1.

constitutionally compliant bond docket proceedings and their resultant constitutionally compliant detentions of arrestees who cannot afford bail. Plaintiffs postulate "there must be a way," click their ruby slippers together twice and command the policymaker "to implement the way." Such magical insight folds under the weight of reality.

In real life, the Court's Declaratory Judgment paves the way. With this pronouncement, the special judges *know* what is required of them. Plaintiffs' proposed modification of the Court's Injunction, however, takes aim solely at the Presiding Judge – the only policymaker among defendants.[15] The proposed modification fails in every respect to articulate what is required of the policymaker (other than perfect results). "[A] federal court [is required to] frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *International Longshoremen's Assn.*, 389 U.S. at 76.

The sheriff anticipates that Plaintiffs look forward to interpreting their own suggested language to require a "release from jail" when the special judge fails to follow the required judicial procedure. But the Court has already stated it "assuredly will not grant … relief which would facilitate the pretrial release of

---

[15] The administrative and supervisory authority of the Presiding Judge is set forth in the Supreme Court's Rules on Administration of Courts, Rules 1-3, 5, 8-10, 14-15, 20 O.S. Ch.1, App. 2. The Presiding Judge is subject to the superintending control and administrative authority of the Chief Justice of the Supreme Court. *Id*. at Rules 1-3, 5-7, 10, 12-13.

arrestees who pose a flight risk or a danger to the community," SJ Order, at 26, Doc. #397, and that the relief granted will be no more than required "to assure that Tulsa County's secured bail system will not *systematically* detain arrestees solely because of their indigence." *Id*. at 69 (emphasis added). Plaintiffs' proposed Injunction, to the extent it seeks release *whenever* the judicial procedure has been inadequate, is a case-by-case determination (not focused on the underlying system) that could facilitate the pretrial release of arrestees who pose a flight risk or a danger to the community. Adding ambiguity to this danger, it is devoid of any direction as to who, when and exactly how someone determines the special judge has not followed the required judicial procedure to trigger such a release. Plaintiffs' proposed modification is inedible pie in the sky.

## VI.
## PLAINTIFFS' PROPOSED CHANGES TO THE COURT'S INJUNCTION IMPOSES AN UNWORKABLE ABSOLUTE GUARANTEE

Plaintiffs' proposed changes require magical protocols that either force upon the special judge the required judicial procedures (which, as anyone who has ever spent decades before various judges knows, it is impossible to guarantee perfect procedure by every judge in every case every time) or that prevent enforcement of an Order of detention impugned with latent procedural defects. Latent means hidden, and Plaintiffs' proposal fails to designate who brings to light the hidden procedural defects in the special judge's Order of Detention. Still, whenever

someone unable to afford bail is detained following inadequate judicial procedure, the sheriff and the Presiding Judge are "deemed" to be in contempt based on the failure of the Presiding Judge's procedures to *ensure* constitutional compliance.

The proposed "finding of a violation" through use of the word "deemed" is premised on an absolute guarantee, shown *in red italics* below, whose suffocating paragraph is riddled with a stacking of negatives (**shown in bold**) so complex it is not easily understood by those facing a contempt citation for violating it:

> Defendants will be deemed to facilitate detentions in **violation** of this Order if they **fail** to provide and maintain the infrastructure, policies, and procedures *necessary to ensure* that class members **are not** detained due to the **inability** to satisfy court-imposed financial requirements **without** the findings and procedures set forth in the Declaratory Judgment part of this Order.

Such language is confusing and oppressive. Plaintiffs' proposed Injunction unlawfully imposes strict liability on the sheriff for the policymaker's failure when, under the law of the case, only the Presiding Judge is policymaker.

The sheriff's contempt hinges on the successful or unsuccessful policymaking decisions of the Presiding Judge, rather than on whether the sheriff performed or failed to perform specific acts. The latter benchmark is required under Rule 65(d) which requires every Injunction to "state its terms specifically[,] and … describe in reasonable detail … the act or acts restrained or required."

The absolute guarantee of the Plaintiffs' proposed Injunction is unworkable, unreasonable, and onerous to a fault. Rule 65(d) was designed "to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt*, 414 U.S. at 475.

## VII.
## PLAINTIFFS' PROPOSED CHANGE
## TO THE COURT'S INJUNCTION VIOLATES
## RULE 65(d)'s LIMITATIONS ON THE SCOPE OF AN INJUNCTION

Because "an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt,* 414 U.S. at 475. Under the Plaintiffs' proposed modification, the subordinate sheriff knows not what to do. Such cannot be the foundation for contempt.

## VIII.
## PLAINTIFFS' PROPOSED CHANGE TO
## THE COURT'S INJUNCTION IS OUTSIDE
## THE SCOPE OF A MOTION TO AMEND JUDGMENT

Plaintiffs have waited eight years to raise their bizarre injunction request at the fifty-ninth minute of the eleventh hour. It is inappropriate in this Motion to Amend Judgment for Plaintiffs to "advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012. Because their proposal is supported by neither the law, the facts, nor prior argument, Plaintiffs cannot claim that the Court has somehow misinterpreted "the facts, a party's

13

position, or the controlling law." *Id*. And clearly their bizarre request is not needed "to correct clear error or prevent manifest injustice." *Id*. "[C]lear error occurs only when … after reviewing the record, we have the definite and firm conviction that a mistake has been made." *Shaw v. Smith*, 166 F.4th 61, 74 (10th Cir. 2026). Plaintiffs' proposed Injunction, *most definitely and firmly*, does not present such a case. Nor does "manifest injustice 'exist where ... a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered.'" *Kinyua v. Republic of Sudan*, 326 F.R.D. 16, 21 (D.C. 2018) rev'd and vacated on other grounds by *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019).

## IX.
## PLAINTIFFS' PROPOSED ADDITION
## TO THE COURT'S DECLARATORY RELIEF (¶ 9)
## CONCERNING THE "OPPORTUNITY TO COMMUNICATE
## WITH COUNSEL BEFORE HEARINGS" IS UNWARRANTED

Plaintiffs' request to amend the Court's Declaratory Judgment to add that "Class members are entitled to … an opportunity to communicate effectively and confidentially with counsel before … the hearings" suggests that the current policy and practice of making the Tulsa County jail available to the arrestees' counsel "twenty-four (24) hours a day, seven (7) days a week" to "meet with detainees and inmates," is not enough. SJ Order, at 9, Doc. #397. Such access is obviously adequate access. "Further comment … on the subject of access to arrestees by

defense counsel is not necessary because it now appears that counsel have unimpeded access to arrestees for the purpose of preparing for the bond docket." MFO, at 10, Doc. #447. A motion to amend judgment "is not appropriate to revisit issues already addressed." *Servants of the Paraclete*, 204 F.3d at 1012.

X.

<u>CONCLUSION</u>

Sheriff Vic Regalado respectfully requests this Court to enter an Order denying Plaintiffs' proposed amendment to its Final Injunction, and denying Plaintiffs' proposed amendment of its Final Declaratory Judgment to the extent it seeks to add language about an "opportunity to communicate with counsel before hearings."

Respectfully submitted,

s/ *Douglas A. Wilson*
Douglas A. Wilson, OK Bar No. 13128
Mike Shouse, OK Bar No. 33610
Tulsa County District Attorney's Office
218 West Sixth Street, Suite 933
Tulsa, OK 74119
douglas.wilson@tulsacounty.org | (918) 596-8795
mshouse@tulsacounty.org | (918) 596-4825

ATTORNEYS FOR DEFENDANT VIC REGALADO, TULSA COUNTY SHERIFF

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 2, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Alexander Karakatsanis                Kristina Michelle Saleh
Allison M. Holt-Ryan                  Phoebe Anne Kasdin
Devan A Pederson                      Stefanie Erin Lawson
Erin Morgan Moore                     Vassi Iliadis
Hayley Elizabeth Horowitz

                                    /s/ Douglas A. Wilson
                                    Douglas A. Wilson

# United States District Court
## NORTHERN DISTRICT OF OKLAHOMA

RICHARD FELTZ and ASHTON LEE DENNIS,   )
on behalf of themselves and all others similarly   )
situated,   )
   )
      Plaintiffs,   )
**vs.**   )   Case No. 18-cv-298-SPF-JFJ
   )
VIC REGALADO, et al.   )
   )
      Defendants.   )

**EXHIBIT A**

### AFFIDAVIT OF PEGGY A. HADDOCK

STATE OF OKLAHOMA   )
   ) ss.
COUNTY OF TULSA   **)**

I, Peggy A. Haddock, of lawful age, upon my oath and subject to the penalties of perjury, state:

1. I have personal knowledge of the statements made in this affidavit.

2. I have been employed as Bond Docket Prosecutor by the Tulsa County District Attorney's Office since August 2023.

3. Since this Court's issuance of the *Final Order Granting Declaratory and Injunctive Relief*, the physical arrangements for the detention hearings have been improved in the following manners:

   A. The cameras in the courtroom have been adjusted to present a larger and clearer view of the person speaking, specifically the judge and those sitting at the witness stand and counsel tables;
   B. When a support person for the detainee is present in the courtroom, the judge has them move to a position where the detainee can see and hear them;
   C. When anyone other than the judge or counsel speak, that person now sits at the witness stand;
   D. If a witness is not able to be present at the courthouse, they are allowed to testify via the Teams link where the witness is clearly visible and able to be heard.

4. At the beginning of the detention hearings, the judge begins the audio recording device and clearly states her name, the date, and that she is recording the detention hearings. My understanding is that the recordings are downloaded by the judge's bailiff under the specific date for the bond docket.

5.  Prior to beginning *every* detention hearing, the judge makes a verbal announcement, This announcement includes, among other statements, "If you do not have an attorney, an Assistant Public Defender is here today to represent you at this hearing if you would like. You have a right to talk to the Assistant Public Defender in private at any time before I consider your case, or while I am considering it. You can make that request when you are called up. Please let me know when you are called up if you do not want the Assistant Public Defender to represent you today." This announcement is said in English and is then translated into any language that is needed for the particular day.

6.  There have been occasions when an arrestee requests that the assistant public defender not represent them because they have a private attorney. When this happens, the judge asks the arrestee if they want the hearing passed to the next day to afford the private attorney the opportunity to be present or if they want to proceed with the public defender's office for bond purposes. When an arrestee requests that a private attorney represent them for the bond hearing, and the hearing will be past 48 hours after arrest, the judge explains the right to a hearing within 48 hours. The judge then asks if the arrestees understand the 48 hours right and if they want to waive the 48 hours or continue with the public defender.

7.  There have also been times when the arrestee does not want any attorney to represent them and they are allowed to proceed pro se.

8.  Since this Court's issuance of the *Final Order Granting Declaratory and Injunctive Relief*, the State presents its case first, thus ensuring that the burden of proof is on the State and not the defense.

9.  The Plaintiffs assert in the *Plaintiff's Motion to Amend the Court's Final Order and Judgment* that "even after adoption of a local rule providing representation by counsel at detention hearings, defendants have, periodically and for long stretches of time, conducted hearings without allowing class members to meet with – or even, at times, to see or hear - the defense attorneys purportedly representing them" (page 3). These issues should be resolved as the public defenders now attend the hearings from the jail and are afforded ample opportunity to meet with the arrestees prior to the hearings. However, even after this Court's issuance of the *Final Order Granting Declaratory and Injunctive Relief*, the public defenders do not always show up to the jail in time to speak with the arrestees prior to the hearing and wait until the arrestee is called to the podium. There was a recent occasion when no one from the public defender's office appeared at the jail until *after* the scheduled hearing time. In fact, the judge stepped off the bench in order to inform the PD's office of the need to have a public defender present. The hearings were not conducted until an assistant public defender appeared at the jail and was given time to speak with the arrestees. Some defense attorneys do not show up to the jail until 9:15 a.m., which does not provide enough time to speak with all of the arrestees prior to the hearings. The issues of defense attorneys not being prepared or timely is beyond the control of the Defendants.

2

FURTHER AFFIANT SAYETH NOT.

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

Peggy A. Haddock

# United States District Court

### NORTHERN DISTRICT OF OKLAHOMA

RICHARD FELTZ and ASHTON LEE DENNIS, )
on behalf of themselves and all others similarly )
situated, )
 )
   Plaintiffs, )
vs. ) Case No. 18-cv-298-SPF-JFJ
 )
VIC REGALADO, et al. )
 )
   Defendants. )

**EXHIBIT B**

### AFFIDAVIT OF STACIE HOLLOWAY

STATE OF OKLAHOMA )
 ) ss.
COUNTY OF TULSA )

I, Stacie Holloway, of lawful age, upon my oath and subject to the penalties of perjury, state:

1. I have personal knowledge of the statements made in this affidavit.

2. I have been employed by the Tulsa County Sheriff's Office ("TCSO") since 2003, and I currently serve as Jail Administrator of the David L. Moss Criminal Justice Center, also known as the Tulsa County Jail ("Jail").

3. The Tulsa County Jail is accessible twenty-four (24) hours a day, seven (7) days a week, for counsel to meet with detainees and inmates. TCSO does not deny the Public Defender's Office access to any detainees or inmates in the Jail.

4. I have read the Affidavit of Peggy A. Haddock submitted as an exhibit to the Sheriff's Brief in Opposition to Plaintiffs' Motion to Amend the Court's Final Order and Judgment (Doc. #455). The changes to the daily bond docket procedure noted by Ms. Haddock following the Court's issuance of its *Final Order Granting Declaratory and Injunctive Relief* were neither directly nor indirectly initiated by the county sheriff or his staff.

5. Counsel for the Tulsa Judges requested the sheriff install a larger television screen in the jail's courtroom. Pursuant to the judges' request, I ordered a large 75-inch television screen several weeks ago, and upon its arrival, it will replace the current smaller screen.

FURTHER AFFIANT SAYETH NOT.

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

March 2, 2026
Tulsa, Oklahoma

Stacie Holloway, Jail Administrator