**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RICHARD FELTZ and ASHTON DENNIS, on behalf of themselves and all others similarly situated,<br><br>   *Plaintiffs*,<br><br>v.<br><br>VIC REGALADO, Tulsa County Sheriff, in his Official Capacity, *et al.*,<br><br>   *Defendants*. | Case No. 18-CV-0298-SPF-JFJ |

**PLAINTIFFS' REPLY TO SHERIFF REGALADO'S OPPOSITION TO MOTION TO AMEND THE FINAL ORDER**

The Sheriff opposes Plaintiffs' proposed modifications based on a misreading of their scope and import. The Court's Declaration describes the required elements of a Constitutional detention hearing, and its Injunction prohibits the Sheriff from "facilitating" class members' detentions when those elements are not satisfied. Doc. 448 (Final Order). Plaintiffs' proposed modification defines "facilitation" to mean failure to adopt adequate measures to provide the protections listed in the Declaration. Doc. 455-1 (Pls.' Proposed Order) at 5. This requested clarification does not, as the Sheriff argues, impose new or unworkable obligations on him.

I.  **The Sheriff Can Be Enjoined to Ensure that Jail Policies Do Not Violate the Declaration**

The Sheriff, who oversees the Tulsa County Jail's operation, objects to the proposed clarification because it treats him as a policymaker by requiring him to ensure that jail policies do not violate class members' rights as they have been articulated in the Court's Declaration. The Sheriff misconstrues the Court's prior *Monell* ruling—that the Sheriff is not a *final county*

policymaker—to mean that he "cannot be enjoined as a policymaker" in this case at all. Doc. 460 (Sheriffs' Opp.) at 8. The Court's *Monell* analysis does not mean that the Sheriff makes no jail policies relevant to class members' injuries for which he can be enjoined, but rather that when he does adopt and enforce relevant jail policies, he acts as an agent of the state, rather than a final policymaker for Tulsa County, and so does not expose the county to liability under § 1983 for his conduct. *See McMillan v. Monroe Cnty., Ala.*, 520 U.S. 781, 784-85 (1997) (question under *Monell* was whether defendant sheriff's policy setting was done on behalf of county or state); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986) ("a particular official—even a policymaking official" can have "discretion in the exercise of particular functions" without "giv[ing] rise to municipal liability based on an exercise of that discretion").

It is undisputed that the Sheriff can—and does—set jail policies that affect class members' rights as articulated in the Court's Declaration. *See* Doc. 306 (Order on Mots. to Dismiss) at 17 n.17; 19 Okla. Stat. § 513 ("The sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself . . ."); *Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999) ("[u]nder Oklahoma law, a county sheriff is in charge of the jail"). Per the Sheriff's own account, during the course of this lawsuit, he has adopted certain policies to address plaintiffs' claims. For example, he cites the jail's "*current policy and practice* of making the Tulsa County jail available to the arrestees' counsel [at all times]." Doc. 460 (Sheriff's Opp.) at 14-15 (emphasis added); *see also id.* at 8 n.12 (detailing various "reforms" adopted by the Sheriff in jail operations following negotiations among the parties, including distribution of notice forms at the jail).

The Sheriff acknowledges that "he may be a proper party subject to injunction," even if he is sued only as an agent of the state, and not a final policymaker for the county. Doc. 116

(Sheriff's Reply re. Discovery Stay) at 5; *compare* Doc. 460 (Sheriff's Opp.) at 8 (claiming Sheriff was dismissed "[a]s a policymaker" writ large and cannot be held responsible for relevant jail policies) *with* Doc. 306 (Order on Mots. to Dismiss) at 16 ("[n]o matter the source of the authority for the sheriff's alleged detention of arrestees in unconstitutional circumstances," he can be enjoined with respect to those acts that are "a 'but for' cause of plaintiffs' injuries"). The Court's previous *Monell* ruling does not mean that an injunction can address jail infrastructure and practices but must ignore jail policies that facilitate violations of class members' constitutional rights.

## II.     The Proposed Modification Does Not Impose Additional or Vague Obligations on the Sheriff.

Plaintiffs' proposed modification does not expand the scope of the injunction or render it vague by requesting that one of its terms be defined using the specific requirements of the accompanying Declaration. The Sheriff incorrectly argues that the proposed modification converts a prohibitory injunction into a mandatory one, imposing unclear obligations, and requiring large scale "release[s] from jail." Doc. 460 (Sheriff's Opp.) at 10-11, 13. The proposed modification does not impose any new obligations on the Sheriff. It leaves in place the Court's prohibition on facilitating illegal detentions and clarifies only what that prohibition entails: the Sheriff facilitates illegal detention if he jails people without policies to ensure that the basic safeguards identified Declaration have been provided.

The Sheriff admits that the Declaratory Judgment "paves the way" to understanding what the law requires and allows the special judges to "*know* what is required of them," but he insists that, as applied to him, the proposed order imposes "a combination of unidentified protocols" that require "magical insight" to discern. *Id*. at 9-10. The proposed amended order is as clear with respect to the Sheriff as he admits it is for the special judges. It requires that, if the Sheriff

jails class members, he adopt well-designed measures to guard against illegal detention, *i.e.*, detention without the procedures described in the Declaration: prompt post-arrest notice of the right to a detention hearing, Doc. 455-1 (Pls.' Proposed Order) at 2 ¶ 2; a hearing, *id*. at 2-3 ¶ 2(a), with enumerated procedural protections, such as the ability to present evidence and hear and see all participants, *id*. at 2-3 ¶ 3; and a record of findings that court-imposed financial requirements are affordable or that detention is necessary and alternatives inadequate, *id*. at 3-4 ¶¶ 5, 7.

His obligation under the proposed modification is to put in place administrative safeguards, not to exercise independent judgment about whether any particular hearing satisfied constitutional requirements. *See* Doc. 455-1 (Pls.' Proposed Order) at 5 (requiring sheriff to "provide and maintain the [necessary] infrastructure, policies, and procedures" as a prerequisite to detention). Plaintiffs do not ask the Sheriff to review judicial proceedings or make case-by-case determinations about the adequacy of bail proceedings.

The modified injunction also does not require the Sheriff to release anyone from jail or secure "perfect results," *see* Doc. 460 (Sheriff's Opp.) at 10. It does not mandate any particular outcome in any individual case. Rather, by incorporating the terms of the Declaration, the proposed modification makes clear that *the Sheriff's policies must be effectively designed* to ensure that individuals are not detained unless they have received the procedures the Constitution requires. The proposed modification nowhere requires—as the Sheriff claims—perfect, error-free execution of those measures "by every judge in every case every time." Doc. 460 (Sheriff's Opp.) at 11.

The proposed order's description of the measures that must be adopted to avoid contempt satisfies Rule 65. A "district court [is] not required to pre-determine every act required

to be performed by [a government actor] to ensure that [class members] are not subjected to further irreparable harm," as long as it makes clear the standards that will govern "any potential review of . . . compliance  or noncompliance with [an injunction's] terms." *M.G. through Garcia v. Armijo*, 117 F.4th 1230, 1250-51 (10th Cir. 2024) (affirming preliminary injunction that required state agency to "take . . . immediate and affirmative steps to arrange . . . corrective treatment of in-home shift nursing services . . . at [a specified] level").

### III.    Plaintiffs' Request for Modification Is Timely

The Sheriff argues that Plaintiffs "have waited eight years" to seek clarification of, and correct potential oversights in, an injunction that the Court issued 28 days before Plaintiffs filed their motion. Doc. 460 (Sheriff's Opp.) at 13. The Sheriff does not explain how Plaintiffs could have acted to clarify aspects of the Court's final order without waiting "until after [the] final order had been entered." *Id*. at 13-14 (internal quotation marks omitted). Plaintiffs' request was properly made within the time established by the Federal Rules of Civil Procedure for altering or amending a judgment. Fed. R. Civ. P. 59(e).

### IV.    Plaintiffs' Request to Include an Overlooked Term of Declaratory Relief Does Not Seek Relitigation of Issues

Plaintiffs have asked the Court to amend its order to include a declaration that class members are entitled to counsel, if the Court "*inadvertently* omitted a declaration that access to counsel is required." Doc. 455 (Pls.' Mot. to Amend) at 3.[1] Even as the Sheriff nonetheless accuses Plaintiffs of attempting to "revisit issues already addressed," he encourages the Court to

---

[1] Plaintiffs' opening brief contains a typo when it states: " . . . Plaintiffs are unsure whether the Court deliberately or inadvertently omitted [the requested items of declaratory relief]. If the **former**, Plaintiffs ask for a declaration . . . ." Doc. 455 (Pls.' mot to amend) at 3 (emphasis added). Plaintiffs meant the "latter." Plaintiffs seek a modification of the order if the omission was inadvertent; they do not seek to relitigate the issue if the omission was deliberate.

leave out of its final order a Declaration that access to counsel is a necessary element of a constitutionally compliant detention hearing, because current jail policy is "obviously adequate" to provide such access. Doc. 460 (Sheriff's Opp.) at 14-15. This Rule 59 motion is not a proper vehicle for revisiting whether the Sheriff's recent policy changes render Plaintiffs' claims moot. If the Court inadvertently omitted access to counsel when specifying class members' rights at detention hearings, the omission should be corrected.

**V.     Conclusion**

Far from expanding the final order's scope or rendering it vague, Plaintiffs' proposed modifications will clarify exactly what is required of Defendants. The Court should grant the motion and enter the proposed amended final order.

Dated: March 16, 2026

<div style="margin-left:50%">

Respectfully Submitted,
/s/ Hayley Horowitz
Hayley Horowitz
Phoebe Kasdin
Still She Rises, Inc.
608 E. 46th Street North
Tulsa, OK 74126
hayleyh@stillsherises.org
phoebek@stillsherises.org
918-392-0867
*Attorneys for Plaintiffs*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on March 16, 2026 via the Northern District of Oklahoma CM-ECF system upon all counsel of record.

*/s/ Hayley Horowitz*