**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| RICHARD FELTZ and ASHTON LEE DENNIS, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | Case No. 18-cv-0298-SPF-JFJ |
| VIC REGALADO, Tulsa County Sheriff, in his Official Capacity, et al., | ) ) ) ) | |
| Defendants. | ) | |

**ORDER ON
PLAINTIFFS' MOTION TO AMEND THE FINAL ORDER AND JUDGMENT**

Before the court is Plaintiffs' Motion to Amend the Court's Final Order and Judgment, doc. no. 455, filed on February 9, 2026 (Motion). With the filing of responses and replies, the Motion is at issue. After careful consideration, the court concludes that the Motion should be granted in part and denied in part.

This order should be read against the backdrop of (i) the court's order granting in part and denying in part the parties' motions for summary judgment, Feltz v. Regalado, 751 F.Supp.3d 1198 (N.D. Okla. 2024) (SJ Order), (ii) the Memorandum re: Final Order Granting Declaratory and Injunctive Relief, doc. no. 447 (Memorandum),[1] and (iii) the Final Order Granting Declaratory and Injunctive Relief itself, doc. no. 448 (Final Order). Plaintiffs seek two amendments to the declaratory provisions of the Final Order. And they seek two amendments to the one-paragraph injunction set forth in the Final Order.

---

[1] The "division of labor" between the SJ Order and the Memorandum is that the SJ Order adjudicates the merits of plaintiffs' claims and the Memorandum explains the reasons for which relief of various kinds was granted (or not) in the Final Order.

A. Summary of relief sought in the Motion

    1.  The proposed amendments to the declaratory provisions

The two amendments plaintiffs seek are:  First, they seek a declaration that an arrestee's detention hearing must "[o]ccur promptly after arrest, within 48 hours absent unusual circumstances."  Doc. no 455-1, at 4.  Second, they seek a declaration that arrestees are entitled to representation by counsel at detention hearings (including appointed counsel for indigents) and that they must have "an opportunity to communicate effectively and confidentially with counsel before and during the hearings."  *Id.* at 4-5.

    2.  The proposed amendments to the injunction

By way of modification of the injunctive relief, plaintiffs ask the court to remove the Special Judges from the operation of the injunction (thus making it apply only to the Presiding Judge–in his administrative capacity–and the Sheriff) and to add a provision to the injunction stating in substance that "Defendants" will be deemed to "facilitate" detentions in violation of the Final Order if they fail to take certain actions.  *Id.* at 5.

The "facilitating" request apparently arises from the limitation on availability of injunctive relief against state judges under 42 U.S.C. § 1983.  Under § 1983, injunctive relief may not be granted against a state judge acting in a judicial (as opposed to administrative) capacity unless, as relevant here, "a declaratory decree was violated."  Since, at this point, injunctive relief operating directly against the Special Judges acting in their judicial capacity is statutorily barred, plaintiffs want the Presiding Judge,[2] acting in his administrative capacity, to be exposed to

_____

[2] Plaintiffs seek to apply the "facilitate" language generically to all defendants.  Doc. no. 455-1, at 5 ("Defendants will be deemed to facilitate . . . .").  But the operative language of this proposed amendment mandates "the infrastructure, policies and procedures necessary" to ensure that class

enforcement by this court if he "facilitate[s]" violations of the injunction by failing to maintain "the infrastructure, policies, and procedures necessary to ensure" that class members are not detained in violation of their rights as adjudicated in this case.

B. The standard governing a motion under Rule 59(e), Fed.R.Civ.P.

Rule 59(e) was adopted to clarify that the district court has the power "to rectify its own mistakes in the period immediately following the entry of judgment." White v. New Hampshire Dep't of Emp. Sec., 455 U.S. 445, 450 (1982). *See, generally,* 12 *Moore's Federal Practice*, §59.30 (Matthew Bender 3d Ed. 2025). The rule generally has been invoked "only to support reconsideration of matters properly encompassed in a decision on the merits." White, 455 U.S. at 451. A Rule 59(e) motion may be premised on any of four basic grounds: (1) an intervening change in the law, (2) newly discovered evidence, (3) correction of clear legal error, and (4) prevention of manifest injustice. *Moore*, § 59.30[5].

C. Discussion and conclusions

   1. The proposed amendments to the declaratory provisions

      a. The 48-hour requirement

Plaintiffs point out, correctly, that the court has determined that an arrestee is entitled to a due process-compliant detention hearing within 48 hours of arrest. SJ Order, at 1242. But the declaratory judgment portion of the Final Order does not include an explicit declaration to that effect. Plaintiffs "ask the Court to correct this if it was an error and not a deliberate decision." Doc. no. 461, at 4. The omission of a 48-hour requirement was deliberate. Some explanation is required.

The eight paragraphs of declaratory relief granted in the Final Order encompassed constitutional deficiencies in Tulsa County's pretrial release system

---

members' rights are not violated. Based on plaintiffs' arguments in support of this amendment, it appears that it is aimed predominantly if not entirely at the Presiding Judge, not the Sheriff.

that were (i) unquestionably serious, (ii) had been clearly demonstrated and (iii) were continuing.

By the time this case got to the point that entry of a final order was appropriate, Tulsa County's pretrial release system had been modified in several respects. *See, generally*, SJ Order at 1208. This included the adoption of Tulsa County CR 2, requiring a detention hearing within 48 hours. *Id*. at 1208, 1209. At the time the SJ Order was entered, there was, nevertheless, a possibility that, in some situations, an arrestee might not get a detention hearing within 48 hours. *Id*. at 1210, 1235. Before the SJ Order was entered, the Tulsa County court adopted a bond docket schedule "that reduces the bond docket to six days a week instead of seven [as had been required in CR 2] except when holidays occur," doc. no. 388, at 2, "as long as those holidays do not result in a delay of more than 48 hours from the previous bond docket." Doc. no. 388-1. In their present motion, plaintiffs assert that, "at times" since the adoption of CR 2 (embodying the 48-hour requirement), the Tulsa County court has "maintained bond docket schedules that routinely preclude class members from appearing for detention hearings within 48 hours of arrest." Doc. no. 455, at 3. But plaintiffs cite no affidavits or other evidentiary materials indicating that, as of the time of filing the present motion, there is in fact a problem with timeliness of detention hearings.

By way of further background, it is also true that, in the SJ Order, the court pointed out, citing County of Riverside v. McLaughlin, 500 U.S. 44, 57-58 (1991), that the Supreme Court has held that there is a constitutional requirement of a probable cause hearing within 48 hours of arrest–with dictum indicating that bail hearings would be in the same category of urgency. SJ Order, at 1235.[3]

---

[3] It is probably necessary for this court to acknowledge, also, that, in wrestling with how to handle the 48-hour requirement sought by plaintiffs, it was mindful that in federal court, a detention

Against this backdrop, the court concludes that the Motion should be denied to the extent that it seeks the inclusion of a 48-hour rule in the declaratory judgment portion of the Final Order.  As for the four bases for a Rule 59(e) motion set forth in part B, above, there has been no intervening change in the law and there is no newly discovered evidence.  There was neither a "clear legal error" nor a need to "prevent[] manifest injustice" because, by the time the Final Order was entered (following several iterations of modification of Tulsa County's detention procedures), it was far from clear that judicial imposition of a 48-hour requirement was necessary.  If the court is wrong about that, the § 1983 exclusion of judicial officers acting in a judicial capacity will not stand in the way of a grant of injunctive relief against the Presiding Judge, acting in his administrative capacity.  "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."  United States v. Swift & Co., 286 U.S. 106, 114, 52 S. Ct. 460, 462, 76 L. Ed. 999 (1932).  Thus, "[t]he power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible."  New York State Ass'n for Retarded Child. Inc. v. Carey, 706 F.2d 956, 967 (2d Cir. 1983).  *See also*, Blankenship v. Metro. Gov't of Nashville & Davidson Cnty., No. 3:19-CV-00146, 2022 WL 3206393, at *4 (M.D. Tenn. Aug. 8, 2022).[4]

b.  The right to counsel and to effective communication with counsel

To repeat, by the time this action got to the point that the matter was ripe for decisions as to what need, and need not, be included in a final order, the court was not writing on a clean slate (or, perhaps more accurately, on the same slate that was

---

hearing may, on motion of the government (and over the objection of the arrestee), be delayed for up to three days, *excluding* weekends and holidays.  18 U.S.C. § 3142(f)(2).

[4] As is discussed in more detail below at n. 11, additional declaratory relief is potentially available if that should become necessary (given the limitations set forth in 42 U.S.C. § 1983) as a prerequisite to additional injunctive relief.

before the court when this case was filed eight years ago).  In contrast to the outright denial of pre-hearing access to counsel, as noted at earlier stages (SJ Order, at 1211, Memorandum, at 8), counsel are now given access to the Tulsa County jail "twenty-four (24) hours a day, seven (7) days a week" to "meet with detainees and inmates," aff. of Jail Administrator Stacie Holloway, doc. no. 430, ex. A, ⁋ 3.  Plaintiffs do not suggest otherwise with respect to detention-related procedures presently in place (referring, instead, to the egregious deficiencies with respect to access to counsel that were addressed in the SJ order).  And the court sees no reason to apprehend that counsel are denied the opportunity to confer with their clients during detention hearings.  Likewise, with respect to any declaration that arrestees "are entitled to representation by counsel at detention hearings," as proposed by plaintiffs, doc. no. 455-1, at 4, there is nothing in the record now before the court that suggests that any of the defendants are violating the right to counsel of any arrestees (indigent or otherwise).[5]  To be sure, there were some serious communication-related problems implicating effective assistance of counsel at the summary judgment stage and later at the final order stage, but paragraphs 2, 3 and 6(a) of the declaratory judgment portion of the Final Order fairly address those matters to the extent that they still presented live issues at the Final Order stage.[6]

Accordingly, applying the same reasoning as is set forth above with respect to the 48-hour requirement, the court concludes that the Motion should be denied with respect to the proposed amendments relating to representation by, and communication with, defense counsel.

---

[5] In the Memorandum, the court stated (citing cases) that a "bail hearing is a critical stage of a prosecution, triggering the right to the effective assistance of counsel."  Doc. no. 447, at 9, n. 5.

[6] Questions as to whether defense counsel themselves are adequately fulfilling their roles are not before this court.

2.  The proposed amendments to the injunction

   a.  Exclusion of the Special Judges

Plaintiffs seek modification of the injunction to make it "clearly limited to the Sheriff and Presiding Judge–excluding the Special Judges who conduct detention hearings–and to non-judicial action."  Doc. no. 455, at 4.  On this point, plaintiffs have satisfied the "clear error" standard.  Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  Thus, the Special Judges, acting in their judicial capacity, may not be subjected to injunctive relief unless they have violated some provision of the declaratory judgment portion of the Final Order.  The Motion will be granted to correct this error.  An amended version of the Final Order will be entered.[7]

   b.  Deeming defendants to have facilitated detentions in violation of the Final Order if they fail to take specified actions

This proposed amendment to the injunction would state that:

> Defendants will be deemed to facilitate detentions in violation of this Order if they fail to provide and maintain the infrastructure, policies, and procedures necessary to ensure that class members are not detained due to the inability to satisfy court-imposed financial requirements without the findings and procedures set forth in the Declaratory Judgment part of this Order.

Doc. no. 455, at 5.

The Final Order, as entered, enjoins the defendants from (among other things) "facilitating" the detention of class members in violation of the operative provisions of the injunction.  Doc. no. 448, at 5.  As can be seen, plaintiffs' proposed

---

[7] As for where this leaves the Special Judges, the Sheriff puts it quite well: "In real life, the Court's Declaratory Judgment paves the way.  With this pronouncement, the special judges *know* what is required of them."  Doc. no. 460, at 10 (emphasis in original).

7

amendment would spell out some affirmative steps required in order to avoid being "deemed" to facilitate detentions in violation of the injunction.

Plaintiffs appropriately acknowledge the court's expression of concern, in the Memorandum (doc. no. 447, at 4), about "undue intrusion" into the defendants' operation of their respective government agencies.[8] Doc. no. 455, at 5. On this narrow issue, that concern carries the day.

For two reasons, the court declines to adopt this proposed amendment. First, it is unnecessary. The injunction, as entered, effectively requires the defendants against whom it operates to do *whatever may be reasonably required* to comply with their constitutional obligations, as adjudicated in the SJ Order and the Final Order. *See, e.g.,* Peppers v. Barry, 873 F.2d 967, 969 (6th Cir. 1989) (enjoined parties obligated to take "all reasonable steps within their power to comply"). This remains true regardless of whether compliance requires "infrastructure, policies, and procedures" or any other resources or measures. "The standard is whether 'the defendants took all reasonable steps within their power to comply with the court's order,' which includes whether the defendants have 'marshal[ed] their own resources, assert[ed] their high authority, and demand[ed] the results needed from subordinate persons and agencies in order to effectuate the course of action required by the [court's order].'" Gnesys, Inc. v. Greene, 437 F.3d 482, 493 (6th Cir. 2005) (quoting from Glover v. Johnson, 934 F.2d 703, at 708 (6th Cir. 1991)).

Second, the court is mindful that "the federal courts in devising a remedy must take into account the interests of state and local authorities in managing their own affairs, consistent with the Constitution." Milliken v. Bradley, 433 U.S. 267, 280–

---

[8] This concern was also articulated in the SJ Order: "Injunctive relief is appropriate. Undue intrusion into the operation of two branches of the government of a state which is 'a sovereign entity in our federal system,' Allen v. Cooper, 589 U.S. 248, 254, 140 S.Ct. 994, 206 L.Ed.2d 291 (2020) (quoting Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)), is not." SJ Order, at 1218.

81 (1977).  It is, thus, more consonant with the role of this court vis-à-vis the sovereign represented by the defendants to wait and see whether there will be violations (and–let there be no doubt–to take appropriate action in that event), rather than to get into the business of mandating "infrastructure, policies, and procedures."[9] Otherwise stated, the court's focus is on mandating, with reasonable clarity, a constitutionally compliant *outcome* with respect to Tulsa County detention procedures rather than on mandating any particular way to get there.[10]

Conclusion

For the reasons set forth in this order, the Motion is **GRANTED** with respect to the exclusion of the Special Judges from the injunction and **DENIED** in all other respects.

The court hastens to emphasize, with respect to the three amendments that the court has declined to adopt, that if the relief granted in the Final Order should turn out to be too tepid, some fairly expeditious (and efficacious) avenues for redress are available.  If more rights and corresponding obligations need to be "declared," that can be done.  28 U.S.C. § 2202.[11]  Supplemental injunctive relief is available if

---

[9] As the court said at the hearing on scope of relief two years ago:  "I hope you [plaintiffs] sense a certain sense of restraint in [the SJ Order] that I filed a month ago, and I hope the defendants sense a certain sense of resolve in that order."  Transcript of Hearing on Scope of Relief, doc. no, 407, at 81.

[10] It may be easier to understand why the Final Order reads the way it does if it is borne in mind that the court, in crafting that order, did not set out to impose a comprehensive "best practices" regime for detention hearings and related matters.  To the contrary, the specific declaratory and injunctive provisions were, for the most part, written into the order only to address specific constitutional violations–such as denial of the right to consult privately with counsel before and during the detention hearing.  *See,* SJ Order, at 1210-11, 1232, 1240 (court liaison/detention officer testified that counsel does not have the opportunity to meet with arrestee prior to the detention hearing).

[11] The "further relief" available under § 2202 includes both injunctive and declaratory relief. Duberry v. D.C., No. CV 14-1258 (RC), 2020 WL 13337792, at *5 (D.D.C. Feb. 28, 2020).  The grant of authority to order further relief "is broad enough to permit the court to grant additional

9

declaratory rulings are ignored.  42 U.S.C. § 1983; 28 U.S.C. § 2202.  Thus, given the flexible equitable framework in which matters of relief may be addressed at this stage of this case, if the court needs to circle back and consider granting some additional declaratory or injunctive relief even apart from the matters that have been specifically addressed, that avenue is available.  For these reasons, the court suggests, once again, that we should all be mindful that restraint and resolve can coexist.  And they do coexist in the court's approach to this case.

DATED this 12th day of May, 2026.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

18-0298p057.docx

---

relief long after the declaratory judgment has been entered, provided that the party seeking relief is not barred by laches."  Wright, Miller and Kane, *Federal Practice and Procedure*, § 2771, p. 658 (2016).  As has been noted, the authority to grant additional declaratory relief is, of course, potentially significant in situations in which, under § 1983, a declaratory adjudication is a prerequisite to a grant of injunctive relief.